CLERK, U.S. DISTRICT COURT

APR - 5 2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ RS _____ DEPUTY

KATHRYN C. WANNER (Cal. Bar No. 269310)
Email: wannerk@sec.gov
M. LANCE JASPER (Cal. Bar No. 244516)
Email: jasperml@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone:  (323) 965-3998
Facsimile:  (213) 443-1904

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>ZACHARY J. HORWITZ; AND 1INMM CAPITAL, LLC,<br><br>Defendants. | Case No. **2:21-CV-02927-CAS-GJSx**<br><br>**DECLARATION OF LORRAINE PEARSON IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S *EX PARTE* APPLICATION FOR AN ORDER (1) FREEZING ASSETS; (2) REQUIRING AN ACCOUNTING; (3) PROHIBITING DESTRUCTION OF DOCUMENT; AND (4) TO SET HEARING ON ORDER TO SHOW CAUSE**<br><br>**(FILED UNDER SEAL)** |

## <u>DECLARATION OF LORRAINE PEARSON</u>

I, Lorraine Pearson, declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I have personal knowledge of the matters set forth herein, except as otherwise noted, and, if called as a witness, I could and would competently testify under oath to the facts stated herein.

2.      I am a certified public accountant employed by Plaintiff Securities and Exchange Commission (the "SEC") in its Los Angeles Regional Office.  I have been employed by the SEC within the Division of Enforcement since October 1984.  I have been licensed with the State of California since 1981.  I have been a certified fraud examiner since 2010.

3.      In the course of my duties with the SEC, I analyze bank records, financial records, and other books and records of companies, I make calculations and observations based upon those records, and conduct related inquiries and investigations.  The documents that I analyze in the course of my duties with the SEC are of the type reasonably relied upon by accountants in forming opinions and inferences about, among other things, the finances of a company and its sources and uses of money.

### <u>Bank Accounts</u>

4.      During the course of the SEC's investigation entitled *In the Matter of 1inMM, LLC* and pursuant to my duties as an accountant with the SEC, I reviewed certain bank records produced to the SEC during the investigation (including underlying detail such as account statements, account opening documents, trading authorization agreements, signature cards, wires, copies of items deposited, checks, money movement or move money reports, ACH transactions, and/or gain loss information) for the following accounts:

   a.      City National Bank Account No. XXXX0290 in the name of 1INMM Capital, LLC for the period January 1, 2016 (hereinafter "1inMM Business Account") through February 23, 2021.

b.  City National Bank Account No. XXXXX2944 in the name of 1INMM Capital, LLC for the period March 27, 2017 (hereinafter "1inMM Business Account #2") through February 23, 2021.

c.  City National Bank Account No. XXXXX5270 in the name of Zachary Horwitz for the period of January 22, 2013 (hereinafter "Horwitz Personal Account") through February 26, 2021.

d.  City National Bank Account No. XXXXX1130 in the name of 1INMM Productions, LLC for the period of January 1. 2016 (hereinafter "1inMM Productions Account") through February 23, 2021.

e.  City National Bank Account No. LN XXXX9641in the name of Zachary Horwitz for the period of February 14, 2013 (hereinafter "Horwitz credit line account") through December 4, 2019.

f.  City National Bank Account No. XXXXX0616 in the name of One N Million Productions, LLC for the period of August 24, 2012 (hereinafter "One N Million Productions account") through March 31, 2016.

g.  City National Bank Account No. XXXXX1710 in the name of Rogue Black LLC for the period of June 15, 2017 (Hereinafter "Rogue Black account") through September 23, 2021.

h.  City National Bank Account No. XXXXX7302 in the name of LayJax Ventures LLC for the period of November 15, 2018 (hereinafter the "LayJax account") through February 23, 2021.

i.  City National Bank Account No. XXXXX0501 in the name of MJLZ Trust (hereinafter the "MJLZ Trust account") for the period of December 26, 2019 through February 23, 2021.

5.  Attached hereto as **Exhibit 1** is a true and correct copy of the declarations of the custodian of records for City National Bank which were produced

1   to the SEC.

2        6.    Based on my review of the account opening documents for the 1inMM

3   Business Account, I have determined that Zachary Horwitz is the sole authorized

4   signatory on the account.  Attached hereto as **Exhibit 2** is a true and correct copy of

5   the signature card which was produced to the SEC.

6        7.    Based on my review of the account opening documents for the 1inMM

7   Business Account #2, I have determined that Zachary Horwitz is the sole authorized

8   signatory on the account.  Attached hereto as **Exhibit 3** is a true and correct copy of

9   the signature card which was produced to the SEC.

10       8.    Based on my review of the account opening documents for the Horwitz

11  Personal Account, I have determined that Zachary Horwitz is the sole authorized

12  signatory on the account.  Attached hereto as **Exhibit 4** is a true and correct copy of

13  the signature card which was produced to the SEC.

14       9.    Based on my review of the account opening documents for the 1inMM

15  Productions Account, I have determined that Zachary Horwitz is the sole authorized

16  signatory on the account. Attached hereto as **Exhibit 5** is a true and correct copy of

17  the signature card which was produced to the SEC.

18       10.    Based on my review of the loan documents for the Horwitz credit line

19  account, I have determined that Zachary Horwitz is the borrower on the account.

20  Attached hereto as **Exhibit 6** is a true and correct copy of the loan documents which

21  were produced to the SEC.

22       11.    Based on my review of the account opening documents for the One N

23  Million Productions account, I have determined that Zachary Horwitz is the sole

24  authorized signatory on the account. Attached hereto as **Exhibit 7** is a true and

25  correct copy of the signature card which was produced to the SEC.

26       12.    Based on my review of the account opening documents for the Rogue

27  Black account, I have determined that Zachary Horwitz is the sole authorized

28  signatory on the account. Attached hereto as **Exhibit 8** is a true and correct copy of

the signature card which was produced to the SEC.

13.     Based on my review of the account opening documents for the LayJax account. I have determined that Zachary Horwitz is the sole authorized signatory on the account. Attached hereto as **Exhibit 9** is a true and correct copy of the signature card which was produced to the SEC.

14.     Based on my review of the account opening documents for the MJLZ account, I have determined that Zachary Horwitz is a non-signing grantor on the account.  Attached hereto as **Exhibit 10** is a true and correct copy of the new account information sheet which was produced to the SEC.

**Total Amount Raised from Investors**

15.     Horwitz raised investor funds pursuant to promissory notes issued by 1inMM (the "Promissory Notes").  Based on my review, I noted that investor funds were deposited to the 1inMM Business Account, the 1inMM Business Account #2, and the Horwitz Personal Account.  I identified investor funds using the bank account records as described above, combined with information provided by investors.  I prepared a summary of funds received from investors.

16.     Horwitz raised a total of at least $690,000,000 from investors, from at least the following investors:

a.      $490,000,000 from the investor group JJMT;

b.      $80,000,000 from the investor group Movie Fund;

c.      $78,600,000 from the investor group SAC Entities;

d.      $21,000,000 from the investor group Vausse Films, and

**e.**      $20,400,000 from the investor group Pure Health.

**Total Unpaid Principal**

17.     In late 2019, Horwitz began defaulting on the outstanding Promissory Notes.  Based on my review of the bank account records as described above, combined with information provided by investors, I prepared a summary of the amount that remains outstanding on the Promissory Notes.

18.     The total unpaid principal is at least $234,700,000, consisting of the following amounts owed to investors:

      a.    $165,000,000 owed to the investor group JJMT;

      b.    $22,000,000 owed to the investor group Movie Fund;

      c.    $29,700,000 owed to the investor group SAC Entities;

      d.    $8,000,000 owed to the investor group Vausse Films, and

      **e.**    $10,000,000 owed to the investor group Pure Health.

**Bank Account Analysis**

19.     I analyzed the cash flows in and out of the accounts listed above during specific time periods in order to determine the use of investor funds.  I noted that there were transfers among the 1inMM Business Account, the 1inMM Business Account #2 and the Horwitz Personal Account.  Based on my review of the account records described above, I have made the following observations and calculations regarding deposits to and disbursements from the 1inMM Business Account, the 1inMM Business Account #2 and the Horwitz Personal Account during specific time periods.

**Use of Investor Funds for Ponzi Payments**

20.     Based on my review of the 1inMM Business Account, I identified certain disbursements made to investors as Ponzi payments based on the fact that all the money in the bank account at the time the payments were made consisted of investor funds.  During March 2017, Horwitz made payments from the 1inMM Business Account to investors using funds raised from investors, including, but not limited to, payments of $883,667, $713,758 and $721,128.

21.     During November 2018, Horwitz made payments from the 1inMM Business Account to investors using funds raised from investors, including, but not limited to, payments of $399,575, $945,412, $929,680 and $982,560.

22.     During June 2019, Horwitz made payments from the 1inMM Business Account to investors using funds raised from investors, including, but not limited to,

payments of $500,000, $931,387, $1,168,900 and $1,173,940.

**Use of Investor Funds to Purchase the Bolton Road Property**

23.    As of March 26, 2018 the Horwitz Personal Account had a balance of $103,584, which consisted of funds from investors.

24.    On the next day, the account received $2,225,564 of funds from an investor via wire transfer, bringing the account total to $2,329,148.

25.    On March 28, 2018, $1,600,000 of investor funds was transferred to the Horwitz Personal Account from the 1inMM Business Account #2 and $1,700,000 of investor funds was transferred to the Horwitz Personal Account from the 1inMM Business Account.  The total balance in the account of $5,629,148 consisted of investor funds.

26.    On that same day, March 28, 2018, $5,556,401 was transferred from the Horwitz Personal Account to Escrow of the West to complete the purchase of the property at 9615 Bolton Road, Los Angeles, CA 90034.  This payment was made using investor funds.

27.    Earlier that year, on January 30, 2018, a $171,375 wire transfer to Escrow of the West was made from the Horwitz Personal Account as an initial payment on the Bolton Road property.  This payment was made using investor funds, as the entire balance in the account prior to the wire transfer consisted of investor funds.

28.    In total, $5,727,776 in investor funds were used to purchase the Bolton Road property.

**Use of Investor Funds for Other Personal Uses**

29.    Horwitz transferred funds from the 1inMM Business Account and the 1inMM Business Account #2 to the Horwitz Personal Account, and investors wired funds directly to that account.  Horwitz used funds from that account for personal spending, including the following examples of 2018 expenditures:

      a.    Payments to American Express of $1,842,840;

b.    Payments to an interior decorator of $691,800;

c.    Payments for high-end automobiles of $165,408;

d.    Payments for chartered jet flights of $137,072, and

e.    Payments for a luxury watch subscription service of $54,600.

Horwitz also used funds from the Horwitz Personal Account for other personal uses, including, but not limited to, payments of at least $124,582 in 2016 and 2017 for trips to Las Vegas, of which approximately $58,000 was paid to Red Carpet VIP.

**Transfers from the Two 1inMM Business Accounts**

30.    Based on my review of the bank accounts records described above, I noted that there were transfers of funds from the 1inMM Business Account and the 1inMM Business Account #2 to the Horwitz Personal Account, the 1inMM Productions Account, the Rogue Black Account, and the LayJax Account.

**Ending Bank Account Balances**

31.    Based on my review of the bank account records described above, I identified the following ending bank account balances:

a.    The 1inMM Business Account had a balance of $3,224 as of February 26, 2021;

b.    The 1inMM Business Account #2 had a balance of approximately $5 as of February 26, 2021;

c.    The Horwitz Personal Account had a balance of $3,297 as of February 26, 2021;

d.    The 1inMM Productions Account had a balance of $306 as of February 3, 2021;

e.    The Horwitz credit line account had a balance due of $1,137,762 as of December 4, 2019;

f.    The One N Million Productions account had a balance of $0 as of March 31, 2016;

g.    The Rogue Black account had a balance of $9,317 as of February

1 26, 2021;

2  h. The LayJax account had a balance of approximately $173 as of

3   February 26, 2021, and

4  i. The MJLZ Trust account had a balance of $665.

5 **Latest Bank Transfers**

6  32. Based on my review of the bank account records described above, I

7 identified the following bank account activity during the last month for which

8 account activity was produced to the SEC:

9  a. The 1inMM Business Account had minimal activity;

10  b. The 1inMM Business Account #2 received $23,756 from the

11   Rogue Black account and transferred $23,756 to the Horwitz

12   Personal Account;

13  c. The Horwitz Personal Account received $30,000 transferred from

14   a "Tr Invst A/C," $23,756 from the 1inMM Business Account #2,

15   and $18,000 from the MJLZ Trust Account. It paid $33,762 to

16   American Express, $18,769 to a mortgage company, and $11,980

17   to the 1inMM Productions Account;

18  d. The 1inMM Productions Account had minimal activity during the

19   month ended February 3, 2021;

20  e. The Horwitz credit line account received payments of $1,350,000

21   and made advances of $1,380,250 during the month ended

22   December 4, 2019;

23  f. The One N Million Productions account had minimal activity;

24  g. The Rogue Black account received $15,625 in PPP loan proceeds,

25   paid $23,969 to American Express and transferred $23,756 to the

26   1inMM Business Account #2;

27  h. The LayJax account had minimal activity, and

28  i. The MJLZ account transferred $18,000 to the Horwitz Personal

1           Account.

2         I declare under penalty of perjury under the laws of the United States of

3  America that the foregoing is true and correct.

4         Executed this *1st* day of April 2021 in Los Angeles, California.

5

6

7                                    Lorraine Pearson

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1



## *DECLARATION AS TO BUSINESS RECORDS*

*State of California, County of Los Angeles, ss:*

*I, the undersigned, hereby declare and state as follows:*

1.  *I am employed by **City National Bank**, a national banking association ("CNB"), which is engaged in the general business of banking.  My place of employment is at 350 South Grand Ave, 4th Floor, Los Angeles, CA 90071.*

2.  *I am a duly authorized custodian of the records, or qualified witness, and have authority to certify the records herein described.*

3.  *City National Bank responds to the **SEC Subpoena** in the matter of **1NMM Capital, LLC.***

4.  *Furnished herewith are true copies of all the records described in the **SEC Subpoena** redacted as indicated in the particular document redacted, except as hereinafter stated. If you contend text was improperly redacted, please contact us to discuss. If you believe a document was improperly omitted from the production, please contact us to discuss. Pursuant to stipulation between the subpoenaing party and CNB, we are providing an initial production of deposit account records consisting of signature cards, statements checks, deposits with offset, cashier checks and wires.*

5.  *The records consist of the following:*

| *Account Number* | *Account Name* | *Time Period* | *Documents Produced* |
|---|---|---|---|
| *123711130* | *1NMM Productions, LLC* | *01/01/2016 to 01/22/2021* | *Signature card, statements, checks, deposits with offsets and wires* |
| *123820290* | *1NMM Capital, LLC* | *01/01/2016 to 01/22/2021* | *Signature card, statements, checks, deposits with offset and wires* |
| *127412944* | *1NMM Capital, LLC* | *03/27/2017 (open) to 01/22/2021* | *Signature, statements and wires* |

6.  *CNB may not have fully redacted personal information on the records being produced.  For example, if copies of checks have been produced, account numbers reflected on checks (whether on the face or reverse of the check) have not been redacted.  Statute(s) or local court rule(s) may require full or partial redaction of information contained in the produced records before filing with the Court.  Please ensure compliance.*

7.  *CNB objects to the Subpoena to the extent it seeks confidential information or information protected by any applicable privilege, including without limitation the attorney-client privilege or the attorney work product doctrine, and any and all other rights and privileges which protect such information from disclosure.  CNB asserts the privilege to the extent it applies.  To the extent any document subject to such a privilege is inadvertently produced, such production shall not be considered a waiver of said privilege and CNB expressly reserve the right to assert said privilege.*

8.  *To the extent included within the request, CNB has not produced documents routinely delivered to an identified defined party at opening and periodically thereafter such as the Account Agreement and Disclosures, Fee Schedules, Privacy Notice, etc., and further has not produced general mailings such as product offerings (for example, an invitation to purchase debit cards during holiday seasons) or notices related to a particular product such as changes in rates and/or terms.  If particular documents within these categories are desired, please contact the undersigned.*

9.  *To the extent included within the request, CNB has not produced general customer e-mails received by an identified defined party and others.  For example, a general product solicitation or invitation to a business forum or summary of clients using a particular product sent to or identifying tens, hundreds or thousands of customers with a single line identifying an identified defined party as a recipient of the e-mail or a party using the product will not be produced.*

10. *CNB's e-mail retrieval system only has e-mails on CNB's computer systems as of June 1, 2008, regardless of when a particular e-mail was sent or received.  (All e-mails on the system as of June 1, 2008, regardless of the sent/received date are available; anything deleted from the system before June 1, 2008 is not available.  For example, an e-mail sent or received on January 1, 2002 and not deleted by all CNB employees who sent or received the e-mail prior to June 1, 2008 is available and will be produced if within the date parameters identified in the subpoena but an e-mail sent May 30, 2008 and deleted May 31, 2008 cannot be retrieved and so cannot be produced, regardless of whether it is within the date parameters identified in the subpoena.)*

11. *To the extent included within the request, CNB has not searched for documents other than those identified as produced in paragraph 5 above or identified as unable to furnish in paragraph 14 below. If you wish to discuss the absence of particular documents or production of additional documents, or contend additional documents are within the scope of your request, please contact the undersigned.*

12. *The bank records, true copies of which are furnished herewith, were prepared by or received by the personnel of **City National Bank** in the ordinary course of business, at or near the time of the applicable act, condition or event.*

Exhibit 1 Page 10

13.   *The records produced were copied from the original or copies maintained by City National Bank as a business record.*

14.   *Following is a list of records described in the subpoena, which cannot be furnished, because the bank does not have the records so described:* **NONE.**

**TO: Securities and Exchange Commission**
**ATTN: ENF-CPU**
**ADDRESS: 6315 Bren Mar Drive, Suite 175**
**Alexandria, VA 22312**

*Executed at Los Angeles, California, this 2nd day of February 2021.*

*I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own personal knowledge and, if called, I would so testify.*

_____

**Sadiqa Anthony**
**Vice President**

Exhibit 1 Page 11



## *DECLARATION AS TO BUSINESS RECORDS*

*State of California, County of Los Angeles, ss:*

*I, the undersigned, hereby declare and state as follows:*

1. *I am employed by **City National Bank**, a national banking association ("CNB"), which is engaged in the general business of banking.  My place of employment is at 350 South Grand Ave, 4th Floor, Los Angeles, CA 90071.*

2. *I am a duly authorized custodian of the records, or qualified witness, and have authority to certify the records herein described.*

3. *City National Bank responds to the **SEC Request** in the matter of **1INMM Capital LLC.***

4. *Furnished herewith are true copies of all the records described in the **SEC Request** redacted as indicated in the particular document redacted, except as hereinafter stated. If you contend text was improperly redacted, please contact us to discuss. If you believe a document was improperly omitted from the production, please contact us to discuss.*

5. *The records consist of the following:*

| *Account Number* | *Account Name* | *Time Period* | *Documents Produced* |
|---|---|---|---|
| REDACTED *5270* | *Zachary Horwitz* | *01/22/2013 (open) to 02/26/2021* | *Statements, checks, deposits with offset and wires* |
| REDACTED *9641* | *Zachary Horwitz* | *02/04/2013 to 12/04/2019* | *Loan documents and dtatements* |

6. *CNB may not have fully redacted personal information on the records being produced.  For example, if copies of checks have been produced, account numbers reflected on checks (whether on the face or reverse of the check) have not been redacted.  Statute(s) or local court rule(s) may require full or partial redaction of information contained in the produced records before filing with the Court.  Please ensure compliance.*

7. *CNB objects to the Subpoena to the extent it seeks confidential information or information protected by any applicable privilege, including without limitation the attorney-client privilege or the attorney work product doctrine, and any and all other rights and privileges which protect such information from disclosure.  CNB asserts the privilege to the extent it applies.  To the extent any document subject to such a privilege is inadvertently produced, such production shall not be considered a waiver of said privilege and CNB expressly reserve the right to assert said privilege.*

8. *To the extent included within the request, CNB has not produced documents routinely delivered to an identified defined party at opening and periodically thereafter such as the Account Agreement and Disclosures, Fee Schedules, Privacy Notice, etc., and further has not produced general mailings such as product offerings (for example, an invitation to purchase debit cards during holiday seasons) or notices related to a particular product such as changes in rates and/or terms.  If particular documents within these categories are desired, please contact the undersigned.*

9. *To the extent included within the request, CNB has not produced general customer e-mails received by an identified defined party and others.  For example, a general product solicitation or invitation to a business forum or summary of clients using a particular product sent to or identifying tens, hundreds or thousands of customers with a single line identifying an identified defined party as a recipient of the e-mail or a party using the product will not be produced.*

10. *CNB's e-mail retrieval system only has e-mails on CNB's computer systems as of June 1, 2008, regardless of when a particular e-mail was sent or received.  (All e-mails on the system as of June 1, 2008, regardless of the sent/received date are available; anything deleted from the system before June 1, 2008 is not available.  For example, an e-mail sent or received on January 1, 2002 and not deleted by all CNB employees who sent or received the e-mail prior to June 1, 2008 is available and will be produced if within the date parameters identified in the subpoena but an e-mail sent May 30, 2008 and deleted May 31, 2008 cannot be retrieved and so cannot be produced, regardless of whether it is within the date parameters identified in the subpoena.)*

11. *To the extent included within the request, CNB has not searched for documents other than those identified as produced in paragraph 5 above or identified as unable to furnish in paragraph 14 below. If you wish to discuss the absence of particular documents or production of additional documents, or contend additional documents are within the scope of your request, please contact the undersigned.*

12. *The bank records, true copies of which are furnished herewith, were prepared by or received by the personnel of **City National Bank** in the ordinary course of business, at or near the time of the applicable act, condition or event.*

13. *The records produced were copied from the original or copies maintained by City National Bank as a business record.*

Exhibit 1 Page 12

14.  Following is a list of records described in the subpoena, which cannot be furnished, because the bank does not have the records so described: **None.**

**TO: Hillary Slevin**
**ADDRESS: 280 S Beverly Drive, Suite 205**
**Beverly Hills, CA 90212**

Executed at Los Angeles, California, this 8th day of March 2021.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own personal knowledge and, if called, I would so testify.

_____
**Sadiqa Anthony**
**Vice President**

Exhibit 1 Page 13



## *DECLARATION AS TO BUSINESS RECORDS*

*State of California, County of Los Angeles, ss:*

*I, the undersigned, hereby declare and state as follows:*

1.  *I am employed by **City National Bank**, a national banking association ("CNB"), which is engaged in the general business of banking.  My place of employment is at 350 South Grand Ave, 4th Floor, Los Angeles, CA 90071.*

2.  *I am a duly authorized custodian of the records, or qualified witness, and have authority to certify the records herein described.*

3.  *City National Bank responds to the **SEC Request** in the matter of **1INMM Capital, LLC**.*

4.  *Furnished herewith are true and correct copies of all the records described in the **SEC Request** redacted as indicated in the particular document redacted, except as hereinafter stated. The records were made at or near the time by--or from information transmitted by--employees of City National Bank with knowledge of the matter contained.  The records were at all times kept in the course of a regularly conducted activity of the bank business.  The making of the record was a regular practice of City National banking activity.   The bank records, true copies of which are furnished herewith, were prepared by or received by the personnel of **City National Bank** in the ordinary course of business, at or near the time of the applicable act, condition or event. The records produced were copied from the original or copies maintained by City National Bank as a business record.*

5.  *The records consist of the following:*

| *Account Number* | *Account Name* | *Time Period* | *Documents Produced* |
|---|---|---|---|
| *123820290* | *1INMM Capital, LLC* | *02/09/2021 to 02/23/2021* | *Statements* |
| *127412944* | *1INMM Capital, LLC* | *02/09/2021 to 02/23/2021* | *Statements* |
| *123711130* | *1INMM Productions, LLC* | *02/09/2021 to 02/23/2021* | *Statements and checks* |
| *127697302* | *Layjax Ventures LLC* | *11/15/2018 (open) to 02/23/2021* | *Signature card, New Account Information Sheet, statements and wires* |
| *123640616* | *One N Million Productions, LLC* | *08/24/2012 (open) to 03/31/2016 (close)* | *Signature card, New Account Information Sheet, statements, checks and wires* |
| *127451710* | *Rogue Black LLC* | *06/15/2017 to 02/23/2021* | *Statements, checks and wires* |
| *127890501* | *MJLZ Trust* | *12/26/2019 (open) to 02/23/2021* | *Statements and wires* |
| *FXDEP 94002634* | *Rogue Black LLC* | *07/28/2017 (open) to 02/23/2021* | *Statements (last activity was 09/14/2017)* |
| *FXDEP 94003026* | *Rogue Black LLC* | *03/06/2019 (open) to 02/23/2021* | *Statements (last activity was 05/09/2019)* |

6.  *Following is a list of records described in the subpoena, which cannot be furnished, because the bank does not have the records so described: **None.***

7.  *This letter and the accompanying documents contain highly confidential, sensitive, proprietary, personal, and nonpublic information. Pursuant to 17 C.F.R. §200.83(c)(1), City National Bank respectfully requests that the Submission, in its entirety, be treated as a nonpublic and confidential matter, exempt from production under the Freedom of Information Act, 5 U.S.C. §§ 552(b)(3), (b)(4), (b)(6), and (b)(7) ("FOIA"), 18 U.S.C. § 1905, the SEC rules pertaining to confidential information, and any other applicable law or regulation, and that the Submission and any information contained therein not be published, made part of any public record, or made available to any person.  In particular, but not to the exclusion of any other grounds, the Submission is exempt from disclosure under FOIA pursuant to §§ 200.80(b)(3), (b)(4), (b)(6), and (b)(7).  Should any person request an opportunity to inspect or copy this letter, the Submission, or any of the related material described above, City National Bank requests that it be notified immediately of any such request and be furnished promptly with all written material pertaining to such request. City National Bank further requests that it thereafter be notified promptly of any determinations with respect to such request and be given ten days' written notice prior to any intended release so that it may submit additional material substantiating this claim. If the government determines that confidential treatment is not warranted with respect to the Submission or related materials, City National Bank respectfully requests ten days' notice prior to any intended release so that it may pursue any available remedies.*

***TO: U.S. Securities and Exchange Commission***
***ATTN: Lance Jasper***
***ADDRESS: 100 F Street, N.E.***
***Washington, DC 20549***

Exhibit 1 Page 14

Executed at Los Angeles, California, this 4th day of March 2021.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own personal knowledge and, if called, I would so testify.

_____
**Sadiqa Anthony**
**Vice President**

224950.1

Exhibit 1 Page 15



## *DECLARATION AS TO BUSINESS RECORDS*

*State of California, County of Los Angeles, ss:*

*I, the undersigned, hereby declare and state as follows:*

1.  *I am employed by **City National Bank**, a national banking association ("CNB"), which is engaged in the general business of banking.  My place of employment is at 350 South Grand Ave, 4th Floor, Los Angeles, CA 90071.*

2.  *I am a duly authorized custodian of the records, or qualified witness, and have authority to certify the records herein described.*

3.  *City National Bank responds to the **SEC Request** in the matter of **1INMM Capital LLC.***

4.  *Furnished herewith are true copies of all the records described in the **SEC Request** redacted as indicated in the particular document redacted, except as hereinafter stated. If you contend text was improperly redacted, please contact us to discuss. If you believe a document was improperly omitted from the production, please contact us to discuss.  Records provided herein are supplement to records previously provided.  Pursuant to stipulation between subpoenaing party and CNB, we are providing these supplemental records for the time period of 01/01/2018 through 03/31/2018 and wires in PDF formant.*

5.  *The records consist of the following:*

| *Account Number* | *Account Name* | *Time Period* | *Documents Produced* |
| --- | --- | --- | --- |
| REDACTED*5270* | *Zachary Horwitz* | *01/01/2018 to 03/31/2018* | *Signature card, New Account Information Sheet, and Wires* |

6.  *CNB may not have fully redacted personal information on the records being produced.  For example, if copies of checks have been produced, account numbers reflected on checks (whether on the face or reverse of the check) have not been redacted.  Statute(s) or local court rule(s) may require full or partial redaction of information contained in the produced records before filing with the Court.  Please ensure compliance.*

7.  *CNB objects to the Subpoena to the extent it seeks confidential information or information protected by any applicable privilege, including without limitation the attorney-client privilege or the attorney work product doctrine, and any and all other rights and privileges which protect such information from disclosure.  CNB asserts the privilege to the extent it applies.  To the extent any document subject to such a privilege is inadvertently produced, such production shall not be considered a waiver of said privilege and CNB expressly reserve the right to assert said privilege.*

8.  *To the extent included within the request, CNB has not produced documents routinely delivered to an identified defined party at opening and periodically thereafter such as the Account Agreement and Disclosures, Fee Schedules, Privacy Notice, etc., and further has not produced general mailings such as product offerings (for example, an invitation to purchase debit cards during holiday seasons) or notices related to a particular product such as changes in rates and/or terms.  If particular documents within these categories are desired, please contact the undersigned.*

9.  *To the extent included within the request, CNB has not produced general customer e-mails received by an identified defined party and others.  For example, a general product solicitation or invitation to a business forum or summary of clients using a particular product sent to or identifying tens, hundreds or thousands of customers with a single line identifying an identified defined party as a recipient of the e-mail or a party using the product will not be produced.*

10. *CNB's e-mail retrieval system only has e-mails on CNB's computer systems as of June 1, 2008, regardless of when a particular e-mail was sent or received.  (All e-mails on the system as of June 1, 2008, regardless of the sent/received date are available; anything deleted from the system before June 1, 2008 is not available.  For example, an e-mail sent or received on January 1, 2002 and not deleted by all CNB employees who sent or received the e-mail prior to June 1, 2008 is available and will be produced if within the date parameters identified in the subpoena but an e-mail sent May 30, 2008 and deleted May 31, 2008 cannot be retrieved and so cannot be produced, regardless of whether it is within the date parameters identified in the subpoena.)*

11. *To the extent included within the request, CNB has not searched for documents other than those identified as produced in paragraph 5 above or identified as unable to furnish in paragraph 14 below. If you wish to discuss the absence of particular documents or production of additional documents, or contend additional documents are within the scope of your request, please contact the undersigned.*

12. *The bank records, true copies of which are furnished herewith, were prepared by or received by the personnel of **City National Bank** in the ordinary course of business, at or near the time of the applicable act, condition or event.*

13. *The records produced were copied from the original or copies maintained by City National Bank as a business record.*

Exhibit 1 Page 16
SEC-CNB-E-0003426

14. *Following is a list of records described in the subpoena, which cannot be furnished, because the bank does not have the records so described:* **None.**

**TO: ENF-CPU**
**ATTN: U.S. Securities and Exchange Commission**
**ADDRESS: 6315 Bren Mar Drive, Suite 175**
**Alexandria, VA 22312**

*Executed at Los Angeles, California, this 23ᵗʰ day of March 2021.*

*I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own personal knowledge and, if called, I would so testify.*

Jennifer Martinez- Electronic signature

Unable to provide a wet signature at this time.

_____
**Jennifer Martinez**
**Vice President**

Exhibit 1 Page 17

# EXHIBIT 2



 **CITY NATIONAL BANK**
The way up.™

**BUSINESS ACCOUNT AGREEMENT**

## GENERAL ACCOUNT INFORMATION

Account Holder(s) ("Client")/dba: 1INMM CAPITAL, LLC, A CA LIMITED LIABILITY COMPANY

Type of Account: Business Checking      Account Number: 123820290

Mailing Address: 5550 WILSHIRE BLVD #523 LOS ANGELES, CA 90036

Telephone: Information on File      E-Mail/Fax: Information on File

## MINIMUM NUMBER OF SIGNATURES REQUIRED FOR AUTHORIZED WITHDRAWAL: 1

Signature Message Code: NONE

## CHECK CARD AUTHORIZATION

By signing below, I/We authorize and instruct CNB to issue a Check Card to each Account Owner and Authorized Signer unless otherwise restricted. I/We agree that the additional terms and conditions of the City National Bank Check Card Agreement and Electronic Funds Transfer Disclosure Statement, which will be provided with the card(s), will govern the account(s) and Check Card(s) issued. If these terms, conditions, fees and any charges thereto are not acceptable to me/us, I/We will close the account or discontinue the service.

---

**Taxpayer Information**

BY SIGNING THE "AGREEMENT BY CLIENT" BELOW, I/WE DECLARE UNDER PENALTY OF PERJURY THAT THE CORRECT TAXPAYER IDENTIFICATION NUMBER OF THE ACCOUNT HOLDER TO BE USED FOR TAX REPORTING PURPOSES IS: 46-3677551

THE ACCOUNT HOLDER IS NOT SUBJECT TO BACKUP WITHHOLDING BECAUSE OF UNDERREPORTING OF INTEREST OR DIVIDENDS AND IS A U.S. PERSON (INCLUDING A U.S. RESIDENT ALIEN), UNLESS CHECKED HERE:

☐ The account holder is subject to backup withholding and has not been notified by the Internal Revenue Service that backup withholding has been terminated.

NON-RESIDENT ALIENS AND FOREIGN ENTITIES (Check here only if applicable):

☐ The account holder is exempt from backup withholding and information reporting. An appropriate IRS Form W-8, foreign status certificate, has been completed.

Government Regulation may require that CNB report interest income information.

---

## CERTIFICATION OF AUTHORITY

By signing the "Agreement by Client" below, each signer declares under penalty of perjury under the laws of the state where signed that the following is true and correct: (1) The signer holds the title, office, or position indicated and is authorized by the Client to make this declaration and sign the Agreement on behalf of the Client; (2) if the Client is (a) a sole proprietorship, the signer is the sole proprietor; (b) a partnership, the signer is a general partner, or a managing partner; (c) a limited liability company, the signer is the Manager or Member designated to act on behalf of the Client or the signers are all of the Managers or Member so designated; (3) The signer is authorized to enter into deposit, fund transfer, brokerage, investment and treasury management agreement and deposit service agreement(s) on behalf of Client and to designate person(s) authorized to (a) act on behalf of Client and (b) designated persons as "Authorized Signers" on any accounts of Client established hereunder; and (4) When signed below no other person's signature or authorization is required to make the Agreement by Client binding and enforceable on the Client. (5) This authorization is in addition to all other authorizations now in existence.

IMAGED BY:

MAR 2 9 2017

CENTRAL OPS #025
NEW ACCOUNTS SERVICES

Exhibit 2 Page 18

**1INMM CAPITAL, LLC A CA LIMITED LIABILITY COMPANY**     **ACCOUNT # 123820290**

## AGREEMENT BY CLIENT

On behalf of the named Client, by signing below I/we acknowledge receipt of the Account Agreement and Disclosures and applicable disclosures and fee schedule(s) containing the terms, conditions and fees governing the account(s), products and services designated above and any accounts designated under "Additional Accounts" below and any products and services later contracted for, as amended by disclosures and fee schedule(s) provided at the time of contracting. I/We agree that these terms, conditions and fees govern each account established with City National Bank ("CNB") or City National Securities, Inc. ("CNS") and each service now or later contracted for, as amended by later disclosures. I/We agree that CNB or CNS may provide additional terms, conditions and fees from time to time, depending upon the products and services selected by me/us and that CNB or CNS may amend or change these terms, conditions and fees from time to time on any required notice. If any terms, conditions, fees and any changes thereto are not acceptable to me/us, I/we will close the account(s) or discontinue the service. Where applicable, my/our continued use of the products and/or services after receipt of the terms, conditions, fees and amendments constitute my/our acceptance of such terms, conditions, fees and amendments thereto. I/We agree that the Authorized Signer(s) may withdraw funds and initiate and confirm payment orders pursuant to the security procedure selected respecting the account(s) and each Authorized Signer may establish additional accounts with CNB or CNS in the same name(s) and subject to the same signing authority stated above, contract for additional services for the account(s), and otherwise give instruction to CNB or CNS. If I/We indicated we would like information about the products and services of CNS, you are authorized to share information about me/us between CBS and CNS.

## FURTHER AGREEMENT FOR TREASURY MANAGEMENT

Capitalized terms used in this Authorization and Agreement, not otherwise defined, have the meanings given to them in the City National Bank Treasury Management Services Disclosure and Agreement (the "Agreement").

By signing below, the undersigned, on behalf of the Business Organization named below (the "Client"), acknowledges receipt of the Agreement and agrees to adhere to the terms and conditions contained in the Agreement, any applicable User Documentation, setup forms, related documents, and any other disclosures provided to the Client with regard to the provision of one or more City National Bank Treasury Management Services.

**The Agreement supersedes other treasury management service agreements between the Client and CNB. For certain Treasury Management Services, the Agreement authorizes on page 5 the Client's System Administrator to assign passwords, user names, and Personal Identification Numbers to persons that will enable the persons to conduct transactions on deposit accounts set up on the Treasury Management Service, notwithstanding the signing authority identified in the deposit agreement. The System Administrator may also designate one or more other persons to perform these same functions the System Administrator is authorized to perform (each such person being called a "User Administrator"). THE AGREEMENT ALSO PROVIDES FOR BINDING ARBITRATION OF DISPUTES.**

The Client may from time to time request CNB to provide one or more of the Services described in the Agreement. Subject to CNB's approval, the Client may begin to use any Service requested once CNB has received all required forms properly completed and the Client has successfully fulfilled any applicable user requirements, including but not limited to testing and training.

Further, the undersigned represents and warrants that the Client has taken all actions required to authorize the undersigned on behalf of the Client to execute and deliver this Authorization and Agreement and any other documents CNB may require with respect to a Service and that, when signed by the undersigned, this Authorization and Agreement is the valid and binding act of the Client.

I/We certify to CNB and CNS that all the information on this Agreement is true and correct. I/We authorize CNB to obtain a ChexSystem or other similar report on Client and to report information. I/We authorize CNB to obtain a ChexSystem or other similar consumer report on each of us signing below and to report information. If I ask, CNB will tell me whether a consumer report was ordered and, if one was ordered, the name and address of the consumer reporting agency that furnished it.

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid back up withholding.**

SIGN IN BLACK INK ONLY AND ON THE SIGNATURE LINE BELOW

Signature: _[signature]_

Name/Title: ZACHARY HORWITZ / Managing Member

Date: 12 - 13 - 2013   Place of Signing: LOS ANGELES, CA
                                              (City and State)

**AUTHORIZED SIGNERS (SIGN IN BLACK INK ONLY AND SIGN IN BOX BELOW)**

| | |
|---|---|
| X _[signature]_<br>Sign here | Name: ZACHARY HORWITZ _____<br><br>Title: Managing Member _____<br><br>Restriction/Alias Name/Facsimile: _____ |

Exhibit 2 Page 19

**1INMM CAPITAL, LLC A CA LIMITED LIABILITY COMPANY**   ACCOUNT # 123820290

## BANK USE ONLY

| Today's Date / Time | Opened By | Opening Deposit   $0.00 |
|---|---|---|
| 10/1/2013 8:26 AM   12-16-13 | Liz Roseman | |
| **Supersedes Card Dated**   TEMP. MAA | Superseded By | |
| Officer(s): 06672, 06630 | LLC Operating Agreement<br>___ Attached   ___ Not in writing per _____ | Is the entity doing business in the state the account is opened? Yes or No.<br>Yes |
| Original Opening Date   10-1-13 | Reviewed By | |
| Date Closed | Reason Closed | Type of Business/NAICS Code<br>FEATURE FILM FINANCE   **525990** |

**ADDITIONAL ACCOUNTS**
Client authorizes the following additional accounts:

| ACCOUNT INFORMATION | | OPENED | | REVIEWED BY | DATE CLOSED | CLOSING REASON |
|---|---|---|---|---|---|---|
| TYPE | ACCOUNT NO. | DATE | BY | | | |
| 075 | 127412944 | 3/27/17 | RF | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Exhibit 2 Page 20

# EXHIBIT 3

高



**CITY NATIONAL BANK**
The way up.™

**BUSINESS ACCOUNT AGREEMENT**



### GENERAL ACCOUNT INFORMATION

Account Holder(s) ("Client")/dba: 1INMM CAPITAL, LLC, A CA LIMITED LIABILITY COMPANY

Type of Account: Business Checking      Account Number: 123820290

Mailing Address: 5550 WILSHIRE BLVD #523 LOS ANGELES, CA 90036

Telephone: Information on File      E-Mail/Fax: Information on File

## MINIMUM NUMBER OF SIGNATURES REQUIRED FOR AUTHORIZED WITHDRAWAL: 1

Signature Message Code: NONE

## CHECK CARD AUTHORIZATION

By signing below, I/We authorize and instruct CNB to issue a Check Card to each Account Owner and Authorized Signer unless otherwise restricted. I/We agree that the additional terms and conditions of the City National Bank Check Card Agreement and Electronic Funds Transfer Disclosure Statement, which will be provided with the card(s), will govern the account(s) and Check Card(s) issued. If these terms, conditions, fees and any charges thereto are not acceptable to me/us, I/We will close the account or discontinue the service.

---

**Taxpayer Information**

BY SIGNING THE "AGREEMENT BY CLIENT" BELOW, I/WE DECLARE UNDER PENALTY OF PERJURY THAT THE CORRECT TAXPAYER IDENTIFICATION NUMBER OF THE ACCOUNT HOLDER TO BE USED FOR TAX REPORTING PURPOSES IS: 46-3677551

THE ACCOUNT HOLDER IS NOT SUBJECT TO BACKUP WITHHOLDING BECAUSE OF UNDERREPORTING OF INTEREST OR DIVIDENDS AND IS A U.S. PERSON (INCLUDING A U.S. RESIDENT ALIEN), UNLESS CHECKED HERE:

☐ The account holder is subject to backup withholding and has not been notified by the Internal Revenue Service that backup withholding has been terminated.

NON-RESIDENT ALIENS AND FOREIGN ENTITIES (Check here only if applicable):

☐ The account holder is exempt from backup withholding and information reporting. An appropriate IRS Form W-8, foreign status certificate, has been completed.

Government Regulation may require that CNB report interest income information.

---

### CERTIFICATION OF AUTHORITY

By signing the "Agreement by Client" below, each signer declares under penalty of perjury under the laws of the state where signed that the following is true and correct: (1) The signer holds the title, office, or position indicated and is authorized by the Client to make this declaration and sign the Agreement on behalf of the Client; (2) if the Client is (a) a sole proprietorship, the signer is the sole proprietor; (b) a partnership, the signer is a general partner, or a managing partner; (c) a limited liability company, the signer is the Manager or Member designated to act on behalf of the Client or the signers are all of the Managers or Member so designated; (3) The signer is authorized to enter into deposit, fund transfer, brokerage, investment and treasury management agreement and deposit service agreement(s) on behalf of Client and to designate person(s) authorized to (a) act on behalf of Client and (b) designated persons as "Authorized Signers" on any accounts of Client established hereunder; and (4) When signed below no other person's signature or authorization is required to make the Agreement by Client binding and enforceable on the Client. (5) This authorization is in addition to all other authorizations now in existence.

IMAGED BY:

MAR 2 9 2017

CENTRAL OPS #025
NEW ACCOUNTS SERVICES

Exhibit 3 Page 21

**1INMM CAPITAL, LLC A CA LIMITED LIABILITY COMPANY**          ACCOUNT # 123820290

## AGREEMENT BY CLIENT

On behalf of the named Client, by signing below I/we acknowledge receipt of the Account Agreement and Disclosures and applicable disclosures and fee schedule(s) containing the terms, conditions and fees governing the account(s), products and services designated above and any accounts designated under "Additional Accounts" below and any products and services later contracted for, as amended by disclosures and fee schedule(s) provided at the time of contracting. I/We agree that these terms, conditions and fees govern each account established with City National Bank ("CNB") or City National Securities, Inc. ("CNS") and each service now or later contracted for, as amended by later disclosures. I/We agree that CNB or CNS may provide additional terms, conditions and fees from time to time, depending upon the products and services selected by me/us and that CNB or CNS may amend or change these terms, conditions and fees from time to time on any required notice. If any terms, conditions, fees and any changes thereto are not acceptable to me/us, I/we will close the account(s) or discontinue the service. Where applicable, my/our continued use of the products and/or services after receipt of the terms, conditions, fees and amendments constitute my/our acceptance of such terms, conditions, fees and amendments thereto. I/We agree that the Authorized Signer(s) may withdraw funds and initiate and confirm payment orders pursuant to the security procedure selected respecting the account(s) and each Authorized Signer may establish additional accounts with CNB or CNS in the same name(s) and subject to the same signing authority stated above, contract for additional services for the account(s), and otherwise give instruction to CNB or CNS. If I/We indicated we would like information about the products and services of CNS, you are authorized to share information about me/us between CBS and CNS.

## FURTHER AGREEMENT FOR TREASURY MANAGEMENT

Capitalized terms used in this Authorization and Agreement, not otherwise defined, have the meanings given to them in the City National Bank Treasury Management Services Disclosure and Agreement (the "Agreement").

By signing below, the undersigned, on behalf of the Business Organization named below (the "Client"), acknowledges receipt of the Agreement and agrees to adhere to the terms and conditions contained in the Agreement, any applicable User Documentation, setup forms, related documents, and any other disclosures provided to the Client with regard to the provision of one or more City National Bank Treasury Management Services.

**The Agreement supersedes other treasury management service agreements between the Client and CNB. For certain Treasury Management Services, the Agreement authorizes on page 5 the Client's System Administrator to assign passwords, user names, and Personal Identification Numbers to persons that will enable the persons to conduct transactions on deposit accounts set up on the Treasury Management Service, notwithstanding the signing authority identified in the deposit agreement. The System Administrator may also designate one or more other persons to perform these same functions the System Administrator is authorized to perform (each such person being called a "User Administrator"). THE AGREEMENT ALSO PROVIDES FOR BINDING ARBITRATION OF DISPUTES.**

The Client may from time to time request CNB to provide one or more of the Services described in the Agreement. Subject to CNB's approval, the Client may begin to use any Service requested once CNB has received all required forms properly completed and the Client has successfully fulfilled any applicable user requirements, including but not limited to testing and training.

Further, the undersigned represents and warrants that the Client has taken all actions required to authorize the undersigned on behalf of the Client to execute and deliver this Authorization and Agreement and any other documents CNB may require with respect to a Service and that, when signed by the undersigned, this Authorization and Agreement is the valid and binding act of the Client.

I/We certify to CNB and CNS that all the information on this Agreement is true and correct. I/We authorize CNB to obtain a ChexSystem or other similar report on Client and to report information. I/We authorize CNB to obtain a ChexSystem or other similar consumer report on each of us signing below and to report information. If I ask, CNB will tell me whether a consumer report was ordered and, if one was ordered, the name and address of the consumer reporting agency that furnished it.

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid back up withholding.**

SIGN IN BLACK INK ONLY AND ON THE SIGNATURE LINE BELOW

Signature: _____

Name/Title: ZACHARY HORWITZ / Managing Member

Date: 12 - 13 - 2013    Place of Signing: Los Angeles, CA

                                             (City and State)

**AUTHORIZED SIGNERS (SIGN IN BLACK INK ONLY AND SIGN IN BOX BELOW)**

X _____ Sign here _____                 Name ZACHARY HORWITZ _____

                                        Title: Managing Member _____

                                        Restriction/Alias Name/Facsimile: _____

Exhibit 3 Page 22

1INMM CAPITAL, LLC A CA LIMITED LIABILITY COMPANY          ACCOUNT # 123820290

## BANK USE ONLY

| Today's Date / Time 10/1/2013 8:26 AM  l 2 -16-13 | Opened By Liz Roseman | Opening Deposit   $0.00 |
|---|---|---|
| Supersedes Card Dated  TEMP. MAA | Superseded By | |
| Officer(s): 06672, 06630 | LLC Operating Agreement ___ Attached ___ Not in writing per _____ | Is the entity doing business in the state the account is opened? Yes or No.                    Yes |
| Original Opening Date  10-1-13 | Reviewed By | |
| Date Closed | Reason Closed | Type of Business/NAICS Code FEATURE FILM FINANCE      **525990** |

ADDITIONAL ACCOUNTS
Client authorizes the following additional accounts:

| ACCOUNT INFORMATION | | OPENED | | REVIEWED BY | DATE CLOSED | CLOSING REASON |
|---|---|---|---|---|---|---|
| TYPE | ACCOUNT NO. | DATE | BY | | | |
| 075 | 127412944 | 3/27/17 | RF | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Exhibit 3 Page 23

# EXHIBIT 4

**CITY NATIONAL BANK**
The way up.℠

**PERSONAL**

M   A   A

**GENERAL ACCOUNT INFORMATION**

Account Holder(s) ("Client"):    ZACHARY HORWITZ

| Type of Account: | Personal Checking | Account Number: | REDACTED 5270 |
| Mailing Address: | 5600 WILSHIRE BLVD # 358 LOS ANGELES, CA 90036 | | |

Telephone: Information on File          E-Mail/Fax:   Information on File

## MINIMUM NUMBER OF SIGNATURES REQUIRED FOR AUTHORIZED WITHDRAWAL:  1

Signature Message Code:   NONE

| Taxpayer Information |
|---|
| BY SIGNING THE "AGREEMENT BY CLIENT" BELOW, I/WE DECLARE UNDER PENALTY OF PERJURY THAT THE CORRECT TAXPAYER IDENTIFICATION NUMBER OF THE ACCOUNT HOLDER TO BE USED FOR TAX REPORTING PURPOSES IS:  REDACTED 0571 |
| ~~THE ACCOUNT HOLDER IS NOT SUBJECT TO BACKUP WITHHOLDING BECAUSE OF UNDERREPORTING~~ OF INTEREST OR DIVIDENDS AND IS A U.S. PERSON (INCLUDING A U.S. RESIDENT ALIEN), UNLESS CHECKED HERE: |
| ☐ The account holder is subject to backup withholding and has not been notified by the Internal Revenue Service that backup withholding has been terminated. |
| NON-RESIDENT ALIENS AND FOREIGN ENTITIES (Check here only if applicable): |
| ☐ The account holder is exempt from backup withholding and information reporting. An appropriate IRS Form W-8, foreign status certificate, has been completed. |
| **Government Regulation may require that CNB report interest income information.** |

Account Title :

ZACHARY HORWITZ

Account Number:

REDACTED5270

**AGREEMENT BY CLIENT**

On behalf of the named Client, by signing below I/we acknowledge receipt of the Account Agreement and Disclosures and applicable disclosures and fee schedule(s) containing the terms, conditions and fees governing the account(s), products and services designated above and any accounts designated under "Additional Accounts" below and any products and services later contracted for, as amended by disclosures and fee schedule(s) provided at the time of contracting. I/We agree that these terms, conditions and fees govern each account established with City National Bank ("CNB") or City National Securities, Inc. ("CNS") and each service now or later contracted for, as amended by later disclosures. I/We agree that CNB or CNS may provide additional terms, conditions and fees from time to time, depending upon the products and services selected by me/us and that CNB or CNS may amend or change these terms, conditions and fees from time to time on any required notice. If any terms, conditions, fees and any changes thereto are not acceptable to me/us, I/we will close the account(s) or discontinue the service. Where applicable, my/our continued use of the products and/or services after receipt of the terms, conditions, fees and amendments constitute my/our acceptance of such terms, conditions, fees and amendments thereto. I/We agree that the Authorized Signer(s) may withdraw funds and initiate and confirm payment orders pursuant to the security procedure selected respecting the account(s) and each Authorized Signer may establish additional accounts with CNB or CNS in the same name(s) and subject to the same signing authority stated above, contract for additional services for the account(s), and otherwise give instruction to CNB or CNS. If I/We indicated we would like information about the products and services of CNS, you are authorized to share information about me/us between CBS and CNS.

**FURTHER AGREEMENT FOR TREASURY MANAGEMENT**

Capitalized terms used in this Authorization and Agreement, not otherwise defined, have the meanings given to them in the City National Bank Treasury Management Services Disclosure and Agreement (the "Agreement").

By signing below, the undersigned, on behalf of the Business Organization named below (the "Client"), acknowledges receipt of the Agreement and agrees to adhere to the terms and conditions contained in the Agreement, any applicable User Documentation, setup forms, related documents, and any other disclosures provided to the Client with regard to the provision of one or more City National Bank Treasury Management Services.

**The Agreement supersedes other treasury management service agreements between the Client and CNB. For certain Treasury Management Services, the Agreement authorizes on page 5 the Client's System Administrator to assign passwords, user names, and Personal Identification Numbers to persons that will enable the persons to conduct transactions on deposit accounts set up on the Treasury Management Service, notwithstanding the signing authority identified in the deposit agreement. The System Administrator may also designate one or more other persons to perform these same functions the System Administrator is authorized to perform (each such person being called a "User Administrator"). THE AGREEMENT ALSO PROVIDES FOR BINDING ARBITRATION OF DISPUTES.**

The Client may from time to time request CNB to provide one or more of the Services described in the Agreement. Subject to CNB's approval, the Client may begin to use any Service requested once CNB has received all required forms properly completed and the Client has successfully fulfilled any applicable user requirements, including but not limited to testing and training.

Further, the undersigned represents and warrants that the Client has taken all actions required to authorize the undersigned on behalf of the Client to execute and deliver this Authorization and Agreement and any other documents CNB may require with respect to a Service and that, when signed by the undersigned, this Authorization and Agreement is the valid and binding act of the Client.

I/We certify to CNB and CNS that all the information on this Agreement is true and correct. I/We authorize CNB to obtain a ChexSystem or other similar report on Client and to report information. I/We authorize CNB to obtain a ChexSystem or other similar consumer report on each of us signing below and to report information. If I ask, CNB will tell me whether a consumer report was ordered and, if one was ordered, the name and address of the consumer reporting agency that furnished it.
**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid back up withholding.**

Date: _____     Place of Signing (City and State): _____

**AUTHORIZED SIGNERS (SIGN IN BLACK INK ONLY AND SIGN IN BOX BELOW)**

| | |
|---|---|
| X<br>Sign here | Name:   ZACHARY HORWITZ<br><br>Title:   Individual-Primary<br><br>Restriction/Alias Name/Facsimile: |

1/22/2013

City National Bank
Revised 10/7/2011

Exhibit 4 Page 25

Account Title :
ZACHARY HORWITZ

Account Number:
REDACTED 5270

## BANK USE ONLY

| Today's Date / Time | Opened By | Opening Deposit    $0.00 |
|---|---|---|
| 1/22/2013 3:12 PM   2-4-13 | Bianca Delao | |
| Supersedes Card Dated | Superseded By | |
| TEMP CARD NO SIGS | | |
| Officer(s): 06672, 06630 | | |
| Original Opening Date | Reviewed By | |
| 1-2-13 | | |
| Date Closed | Reason Closed | |

ADDITIONAL ACCOUNTS
Client authorizes the following additional accounts:

| ACCOUNT INFORMATION | | OPENED | | REVIEWED BY | DATE CLOSED | CLOSING REASON |
|---|---|---|---|---|---|---|
| TYPE | ACCOUNT NO. | DATE | BY | | | |

RECEIVED

FEB 0 4 2013

CENTRAL OPS. #025
NEW ACCOUNTS SERVICES

1/22/2013

Page 3 of 3

City National Bank
Revised 10/7/2011

Exhibit 4 Page 26

# EXHIBIT 5



 The way up.™     BUSINESS ACCOUNT AGREEMENT

## GENERAL ACCOUNT INFORMATION

Account Holder(s) ("Client")/dba:   1INMM CAPITAL, LLC, A CA LIMITED LIABILITY COMPANY

Type of Account:   Business Checking          Account Number:   123820290

Mailing Address:   5550 WILSHIRE BLVD #523 LOS ANGELES, CA 90036

Telephone:   Information on File          E-Mail/Fax:  Information on File

## MINIMUM NUMBER OF SIGNATURES REQUIRED FOR AUTHORIZED WITHDRAWAL: 1

Signature Message Code:   NONE

## CHECK CARD AUTHORIZATION

By signing below, I/We authorize and instruct CNB to issue a Check Card to each Account Owner and Authorized Signer unless otherwise restricted. I/We agree that the additional terms and conditions of the City National Bank Check Card Agreement and Electronic Funds Transfer Disclosure Statement, which will be provided with the card(s), will govern the account(s) and Check Card(s) issued. If these terms, conditions, fees and any charges thereto are not acceptable to me/us, I/We will close the account or discontinue the service.

---

**Taxpayer Information**

BY SIGNING THE "AGREEMENT BY CLIENT" BELOW, I/WE DECLARE UNDER PENALTY OF PERJURY THAT THE CORRECT TAXPAYER IDENTIFICATION NUMBER OF THE ACCOUNT HOLDER TO BE USED FOR TAX REPORTING PURPOSES IS: 46-3677551

THE ACCOUNT HOLDER IS NOT SUBJECT TO BACKUP WITHHOLDING BECAUSE OF UNDERREPORTING OF INTEREST OR DIVIDENDS AND IS A U.S. PERSON (INCLUDING A U.S. RESIDENT ALIEN), UNLESS CHECKED HERE:

☐ The account holder is subject to backup withholding and has not been notified by the Internal Revenue Service that backup withholding has been terminated.

NON-RESIDENT ALIENS AND FOREIGN ENTITIES (Check here only if applicable):

☐ The account holder is exempt from backup withholding and information reporting. An appropriate IRS Form W-8, foreign status certificate, has been completed.

Government Regulation may require that CNB report interest income information.

---

### CERTIFICATION OF AUTHORITY

By signing the "Agreement by Client" below, each signer declares under penalty of perjury under the laws of the state where signed that the following is true and correct: (1) The signer holds the title, office, or position indicated and is authorized by the Client to make this declaration and sign the Agreement on behalf of the Client; (2) if the Client is (a) a sole proprietorship, the signer is the sole proprietor; (b) a partnership, the signer is a general partner, or a managing partner; (c) a limited liability company, the signer is the Manager or Member designated to act on behalf of the Client or the signers are all of the Managers or Member so designated; (3) The signer is authorized to enter into deposit, fund transfer, brokerage, investment and treasury management agreement and deposit service agreement(s) on behalf of Client and to designate person(s) authorized to (a) act on behalf of Client and (b) designated persons as "Authorized Signers" on any accounts of Client established hereunder; and (4) When signed below no other person's signature or authorization is required to make the Agreement by Client binding and enforceable on the Client. (5) This authorization is in addition to all other authorizations now in existence.

IMAGED BY:

MAR 2 9 2017

CENTRAL OPS #025
NEW ACCOUNTS SERVICES

Exhibit 5 Page 27

**1INMM CAPITAL, LLC A CA LIMITED LIABILITY COMPANY**          **ACCOUNT # 123820290**

**AGREEMENT BY CLIENT**

On behalf of the named Client, by signing below I/we acknowledge receipt of the Account Agreement and Disclosures and applicable disclosures and fee schedule(s) containing the terms, conditions and fees governing the account(s), products and services designated above and any accounts designated under "Additional Accounts" below and any products and services later contracted for, as amended by disclosures and fee schedule(s) provided at the time of contracting. I/We agree that these terms, conditions and fees govern each account established with City National Bank ("CNB") or City National Securities, Inc. ("CNS") and each service now or later contracted for, as amended by later disclosures. I/We agree that CNB or CNS may provide additional terms, conditions and fees from time to time, depending upon the products and services selected by me/us and that CNB or CNS may amend or change these terms, conditions and fees from time to time on any required notice. If any terms, conditions, fees and any changes thereto are not acceptable to me/us, I/we will close the account(s) or discontinue the service. Where applicable, my/our continued use of the products and/or services after receipt of the terms, conditions, fees and amendments constitute my/our acceptance of such terms, conditions, fees and amendments thereto. I/We agree that the Authorized Signer(s) may withdraw funds and initiate and confirm payment orders pursuant to the security procedure selected respecting the account(s) and each Authorized Signer may establish additional accounts with CNB or CNS in the same name(s) and subject to the same signing authority stated above, contract for additional services for the account(s), and otherwise give instruction to CNB or CNS. If I/We indicated we would like information about the products and services of CNS, you are authorized to share information about me/us between CBS and CNS.

**FURTHER AGREEMENT FOR TREASURY MANAGEMENT**

Capitalized terms used in this Authorization and Agreement, not otherwise defined, have the meanings given to them in the City National Bank Treasury Management Services Disclosure and Agreement (the "Agreement").

By signing below, the undersigned, on behalf of the Business Organization named below (the "Client"), acknowledges receipt of the Agreement and agrees to adhere to the terms and conditions contained in the Agreement, any applicable User Documentation, setup forms, related documents, and any other disclosures provided to the Client with regard to the provision of one or more City National Bank Treasury Management Services.

**The Agreement supersedes other treasury management service agreements between the Client and CNB. For certain Treasury Management Services, the Agreement authorizes on page 5 the Client's System Administrator to assign passwords, user names, and Personal Identification Numbers to persons that will enable the persons to conduct transactions on deposit accounts set up on the Treasury Management Service, notwithstanding the signing authority identified in the deposit agreement. The System Administrator may also designate one or more other persons to perform these same functions the System Administrator is authorized to perform (each such person being called a "User Administrator"). THE AGREEMENT ALSO PROVIDES FOR BINDING ARBITRATION OF DISPUTES.**

The Client may from time to time request CNB to provide one or more of the Services described in the Agreement. Subject to CNB's approval, the Client may begin to use any Service requested once CNB has received all required forms properly completed and the Client has successfully fulfilled any applicable user requirements, including but not limited to testing and training.

Further, the undersigned represents and warrants that the Client has taken all actions required to authorize the undersigned on behalf of the Client to execute and deliver this Authorization and Agreement and any other documents CNB may require with respect to a Service and that, when signed by the undersigned, this Authorization and Agreement is the valid and binding act of the Client.

I/We certify to CNB and CNS that all the information on this Agreement is true and correct. I/We authorize CNB to obtain a ChexSystem or other similar report on Client and to report information. I/We authorize CNB to obtain a ChexSystem or other similar consumer report on each of us signing below and to report information. If I ask, CNB will tell me whether a consumer report was ordered and, if one was ordered, the name and address of the consumer reporting agency that furnished it.
**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid back up withholding.**

SIGN IN BLACK INK ONLY AND ON THE SIGNATURE LINE BELOW

Signature: _____

Name/Title: ZACHARY HORWITZ / Managing Member

Date: 12 - 13 - 2013    Place of Signing: LOS ANGELES, CA
                                              (City and State)

**AUTHORIZED SIGNERS (SIGN IN BLACK INK ONLY AND SIGN IN BOX BELOW)**

Name: ZACHARY HORWITZ _____

Title: Managing Member _____

Restriction/Alias Name/Facsimile: _____

Exhibit 5 Page 28

**1INMM CAPITAL, LLC A CA LIMITED LIABILITY COMPANY**          ACCOUNT # 123820290

## BANK USE ONLY

| Today's Date / Time 10/1/2013 8:26 AM  12-16-13 | Opened By Liz Roseman | Opening Deposit   $0.00 |
|---|---|---|
| Supersedes Card Dated  TEMP. MAA | Superseded By | |
| Officer(s): 06672, 06630 | LLC Operating Agreement __ Attached __ Not in writing per _____ | Is the entity doing business in the state the account is opened? Yes or No.          Yes |
| Original Opening Date  10-1-13 | Reviewed By | |
| Date Closed | Reason Closed | Type of Business/NAICS Code  FEATURE FILM FINANCE      525990 |

**ADDITIONAL ACCOUNTS**
Client authorizes the following additional accounts:

| ACCOUNT INFORMATION | | OPENED | | REVIEWED BY | DATE CLOSED | CLOSING REASON |
|---|---|---|---|---|---|---|
| TYPE | ACCOUNT NO. | DATE | BY | | | |
| 075 | 127412944 | 3/27/17 | RF | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Exhibit 5 Page 29

# EXHIBIT 6


CITY NATIONAL BANK
AN RBC COMPANY

# DISBURSEMENT REQUEST AND AUTHORIZATION

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,140,000.00 | 03-19-2019 | 03-01-2020 | 00001 | | REDACTED 9641 | MM | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item. Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** ZACHARY HORWITZ
9615 BOLTON RD
LOS ANGELES, CA 90034

**Lender:** City National Bank, a national banking
Entertainment Banking - Premier Bank
400 North Roxbury Drive, Suite 100
Beverly Hills, CA 90210

SIGN HERE

**LOAN TYPE.** This is a Preferred Variable Rate Disclosable Open-end Line of Credit Loan to an Individual with a Credit Limit of $1,140,000.00.

**PRIMARY PURPOSE OF LOAN.** The primary purpose of this loan is for:

☒ **Personal, Family, or Household Purposes or Personal Investment.**

☐ **Business (Including Real Estate Investment).**

**SPECIFIC PURPOSE.** The specific purpose of this loan is: Personal Expenses (P090).

**DISBURSEMENT INSTRUCTIONS.** I understand that no loan proceeds will be disbursed until all of Lender's conditions for making the loan have been satisfied. Please disburse the loan proceeds of $1,140,000.00 as follows:

**Amount paid on my account:** $1,140,000.00
$1,140,000.00 Payment on Loan # 32019641/00001(RENEWAL)

**Credit Limit:** $1,140,000.00

**AUTOMATIC PAYMENTS.** I hereby authorize Lender automatically to deduct from my Checking account, numbered 123705270, the amount of any loan payment. If the funds in the account are insufficient to cover any payment, Lender shall not be obligated to advance funds to cover the payment. At any time and for any reason, I or Lender may voluntarily terminate Automatic Payments.

**CONSUMER PURPOSE.** The Obligations have been incurred for a consumer purpose and I understand that Automatic Payments are not a condition for granting credit to me. This authorization for Automatic Payments is being granted solely at my option.

**LOAN PROCEEDS.** Any telephone requests for advances against this Credit Line shall be credited to Borrower's account number 123705270 at City National Bank.

**FINANCIAL CONDITION. BY SIGNING THIS AUTHORIZATION, I REPRESENT AND WARRANT TO LENDER THAT THE INFORMATION PROVIDED ABOVE IS TRUE AND CORRECT AND THAT THERE HAS BEEN NO MATERIAL ADVERSE CHANGE IN MY FINANCIAL CONDITION AS DISCLOSED IN MY MOST RECENT FINANCIAL STATEMENT TO LENDER. THIS AUTHORIZATION IS DATED MARCH 19, 2019.**

**BORROWER:**

X
ZACHARY HORWITZ

LaserPro, Ver. 18.4.20.085 Copr. Finastra USA Corporation 1997, 2019. All Rights Reserved. - CA C:\HARLAND\CFI\LPL\I20.FC TR-89724 PR-112



CITY NATIONAL BANK
AN RBC COMPANY

# PERSONAL CREDIT LINE AGREEMENT (STOCKS/BONDS)

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,140,000.00 | 03-19-2019 | 03-01-2020 | 00001 | | REDACTED 9641 | MM | |

References in the boxes above are for our use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** ZACHARY HORWITZ
9615 BOLTON RD
LOS ANGELES, CA 90034

**Lender:** City National Bank, a national banking association
Entertainment Banking - Premier Bank
400 North Roxbury Drive, Suite 100
Beverly Hills, CA 90210

| Interest Rate and Interest Charges | |
|---|---|
| **Annual Percentage Rate (APR) for Cash Advances** | **5.500%**<br>This APR will vary with the market based on the Prime Rate. |
| **Penalty APR and When It Applies** | **5.750%**<br>This APR will vary with the market based on the Prime Rate.<br>This APR may be applied to your account if you discontinue your authorization to have the Minimum Payment automatically deducted from your checking or savings account at Lender that you have designated ("Designated Deposit Account") or if such Designated Deposit Account is closed for any reason.<br>**How Long Will the Penalty APR Apply?** If your APR is increased for this reason, the Penalty APR will apply indefinitely. |
| **Paying Interest** | You will be charged interest from the transaction date. |

| Fees | |
|---|---|
| **Annual Fee** | **None** |
| **Penalty Fees**<br>• Late Payment | <br>**$10** |

**How We Will Calculate Your Balance:** We use the following method to calculate your balance: Daily Balance (including new transactions). See your account agreement for more details.

**Billing Rights.** Information on your rights to dispute transactions and how to exercise those rights is provided in your account agreement.

**CREDIT LIMIT:  $1,140,000.00**                            **DATE OF AGREEMENT:  March 19, 2019**

**Introduction.**  This PERSONAL CREDIT LINE AGREEMENT (STOCKS/BONDS) ("Agreement") governs your line of credit (the "Credit Line" or the "Credit Line Account") issued through City National Bank, a national banking association.  In this Agreement, the words "Borrower," "you," "your," and "Applicant" mean each and every person who signs this Agreement, including all Borrowers named above.  The words "we," "us," "our," "Beneficiary," and "Lender" mean City National Bank, a national banking association.  **You agree to the following terms and conditions:**

**Promise to Pay.**  You promise to pay City National Bank, a national banking association, or order, the total of all credit advances, accrued interest and interest charges, together with all fees, charges, costs and expenses for which you are responsible under this Agreement or under "a Pledge Agreement" which secures your Credit Line. You will pay your Credit Line according to the payment terms set forth below.  **If there is more than one Borrower, each is jointly and severally liable on this Agreement.  This means we can require any Borrower to pay all amounts due under this Agreement, including credit advances made to any Borrower.  Each Borrower authorizes any other Borrower, on his or her signature alone, to cancel the Credit Line, to request and receive credit advances, and to do all other things necessary to carry out the terms of this Agreement.  We can release any Borrower from responsibility under this Agreement, and the others will remain responsible.**

**Term.**  The term of your Credit Line will begin as of the date of this Agreement ("Opening Date") and will continue until March 1, 2020 ("Maturity Date").  All indebtedness under this Agreement, if not already paid pursuant to the payment provisions below, will be due and payable upon maturity.  The draw period of your Credit Line will begin on a date, after the Opening Date, when the Agreement is accepted by us and you have met all of our conditions for the Credit Line (the "Effective Disbursement Date").  You may obtain credit advances during this period ("Draw Period").  You agree that we may renew or extend the period during which you may obtain credit advances or make payments.  You further agree that we may renew or extend your Credit Line Account.

**Minimum Payment.**  Your "Regular Payment" will equal the amount of your accrued interest.  You will make 11 of these payments.  You will then be required to pay the entire balance owing in a single balloon payment.  If you make only the "Minimum Payments", you will not repay any of the principal balance by the end of the payment stream and a final balloon payment will be due at maturity of the Credit Line.  Your payments will be monthly. Your "Minimum Payment" is your Regular Payment, plus any amounts past due and all fees and charges.  An increase in the Annual Percentage Rate (also known as "APR") may increase the amount of your Regular Payment and the final balloon payment due at maturity of the Credit Line.  You agree to pay not less than the Minimum Payment on or before the due date indicated on your periodic billing statement.

**Balloon Payment.**  Your Credit Line Account is payable in full upon maturity in a single balloon payment.  You must pay the entire outstanding principal, interest, and any other fees and charges then due.  **Unless otherwise required by applicable law, we are under no obligation to refinance the balloon payment at that time.  You may be required to make payments out of other assets you own or find a lender, which may be us, willing to lend you the money. If you refinance the balloon payment, you may have to pay some or all of the closing costs normally associated with a new credit line account, even if you obtain refinancing from us.**

**How Your Payments Are Applied.**  Unless otherwise agreed or required by applicable law, payments and other credits will be applied to the outstanding balance of your Credit Line Account in the following order: first, to the past due amount that appeared on your billing statement; second, to the unpaid interest that was billed and included in the current amount due appearing on your billing statement; third, to the unpaid principal amount that was billed and included in the current amount due appearing on your billing statement; fourth, to late payment fees and other charges that were included in the current amount due appearing on your billing statement; and last, to the unpaid principal balance of your Credit Line Account.

**Receipt of Payments.**  All payments must be made in U.S. dollars and must be received by us consistent with any payment instructions provided on or with your periodic billing statement.

**Credit Limit.**  This Agreement covers a revolving line of credit for the principal amount of One Million One Hundred Forty Thousand & 00/100 Dollars ($1,140,000.00), which will be your "Credit Limit" under this Agreement.  You may borrow against the Credit Line, repay any portion of the amount borrowed, and re-borrow up to the amount of the Credit Limit.  Your Credit Limit is the maximum amount you may have outstanding at any one time.  You agree not to attempt, request, or obtain a credit advance that will make your Credit Line Account balance exceed your Credit Limit.  Your Credit Limit will not be increased should you overdraw your Credit Line Account.  If you exceed your Credit Limit, you agree to repay immediately the amount by which your Credit Line Account exceeds your

Exhibit 6 Page 32

Credit Limit, even if we have not yet billed you. Any amount greater than the Credit Limit will be secured by the security agreement covering your property.

**Charges to your Credit Line.** We may charge your Credit Line to pay other fees and costs that you are obligated to pay under this Agreement or any other document related to your Credit Line. Any amount so charged to your Credit Line will be a credit advance and will decrease the funds available, if any, under the Credit Line. However, we have no obligation to provide any of the credit advances referred to in this paragraph.

**Credit Advances.** Beginning on the Effective Disbursement Date of this Agreement, you may obtain credit advances under your Credit Line as follows:

**Credit Line Checks.** Writing a preprinted "Credit Line Check" that we will supply to you.

**Telephone Request.** Requesting a credit advance from your Credit Line to be applied to your designated account by telephone. Except for transactions covered by the federal Electronic Fund Transfers Act and unless otherwise agreed in your deposit account agreement, **you acknowledge and you agree that we do not accept responsibility for the authenticity of telephone instructions and that we will not be liable for any loss, expense, or cost arising out of any telephone request, including any fraudulent or unauthorized telephone request, when acting upon such instructions believed to be genuine.**

**Requests By Mail.** Requesting an advance by mail.

**Requests in Person.** Requesting a credit advance in person at any of our authorized locations.

If there is more than one person authorized to use this Credit Line Account, you agree not to give us conflicting instructions, such as one Borrower telling us not to give advances to the other.

**Limitations on the Use of Checks.** We reserve the right not to honor Credit Line Checks in the following circumstances:

**Credit Limit Violation.** Your Credit Limit has been or would be exceeded by paying the Credit Line Check.

**Post-dated Checks.** Your Credit Line Check is post-dated. If a post-dated Credit Line Check is paid and as a result any other check is returned or not paid, we are not responsible.

**Stolen Checks.** Your Credit Line Checks have been reported lost or stolen.

**Unauthorized Signatures.** Your Credit Line Check is not signed by an "Authorized Signer" as defined below.

**Termination or Suspension.** You are in default or otherwise are in violation of this Agreement or would be so if we paid the Credit Line Check.

If we pay any Credit Line Check under these conditions, you must repay us, subject to applicable laws, for the amount of the Credit Line Check. The Credit Line Check itself will be evidence of your debt to us together with this Agreement. Our liability, if any, for wrongful dishonor of a check is limited to your actual damages. Dishonor for any reason as provided in this Agreement is not wrongful dishonor. We may choose not to return Credit Line Checks along with your periodic billing statements; however, your use of each Credit Line Check will be reflected on your periodic statement as a credit advance. We do not "certify" Credit Line Checks drawn on your Credit Line.

**Transaction Requirements.** The following transaction limitations will apply to the use of your Credit Line:

**Credit Line Credit Line Check, Telephone Request, Request By Mail and In Person Request Limitations.** There are no transaction limitations for the writing of Credit Line Checks, requesting an advance by telephone, requesting an advance by mail or requesting an advance in person.

**Limitation on All Access Devices.** You may not use any access device, whether described above or added in the future, for any illegal or unlawful transaction, and we may decline to authorize any transaction that we believe poses an undue risk of illegality or unlawfulness. Notwithstanding the foregoing, we may collect on any debt arising out of any illegal or unlawful transaction.

**Authorized Signers.** The words "Authorized Signer" on Credit Line Checks as used in this Agreement mean and include each person who (a) signs the application for this Credit Line, (b) signs this Agreement, or (c) has executed a separate signature authorization card for the Credit Line Account.

**Lost Credit Line Checks.** If you lose your Credit Line Checks or if someone is using them without your permission, you agree to let us know immediately. The fastest way to notify us is by calling us at (310) 297-8000. You also can notify us at our address shown at the beginning of this Agreement. Exhibit 6 Page 33

## PERSONAL CREDIT LINE AGREEMENT (STOCKS/BONDS)

**Loan No: 00001**                                    (Continued)                                    **Page 4**

**Future Credit Line Services.** Your application for this Credit Line also serves as a request to receive any new services (such as access devices) which may be available at some future time as one of our services in connection with this Credit Line. You understand that this request is voluntary and that you may refuse any of these new services at the time they are offered. You further understand that the terms and conditions of this Agreement, together with any specific terms covering the new service, will govern any transactions made pursuant to any of these new services.

**Collateral.** You acknowledge this Agreement is secured by CITY NATIONAL BANK SECURITIES ACCOUNT NUMBER 48197210 IN THE NAME OF SUSAN M. KOZLOWSKI, TRUSTEE OF THE SUSAN M. KOZLOWSKI REVOCABLE LIVING TRUST.

**Periodic Statements.** If you have a balance owing on your Credit Line Account or have any account activity, we will send you a periodic statement, unless prohibited by applicable law. It will show, among other things, credit advances, interest charges, fees, other charges, payments made, other credits, your "Previous Balance," and your "New Balance." Your statement also will identify the Minimum Payment you must make for that billing period and the date it is due.

**When Interest Begins To Accrue.** Interest on credit advances under your Credit Line will begin to accrue on the date credit advances are posted to your Credit Line. There is no "grace period" which would allow you to avoid paying interest on your Credit Line credit advances.

**Method Used to Determine the Balance on Which Interest Will Be Computed.** A daily interest charge will be imposed on all credit advances made under your Credit Line imposed from the date of each credit advanced based on the balance in your Credit Line account for each day during the statement period. The daily balance in your Credit Line Account consists of (a) the beginning balance, plus (b) the amount of any new Credit Line Checks and advances and any other charges posted to your Credit Line Account that day, minus (c) the amount of any payments or other credits posted to the principal balance of your Credit Line Account that day, minus (d) the amount of unpaid interest, late charges and other charges posted to your Credit Line Account that day. A negative daily balance is considered zero. Interest will be assessed on the last day of the statement period. The interest for the statement period will be the sum of the daily interest accrued during the statement period         .

**Method of Determining the Amount of Interest Charges.** The interest charged to your Credit Line is determined by applying the applicable daily "Periodic Rate" to the balance described herein.

**Periodic Rate and Corresponding Annual Percentage Rate.** The Periodic Rate and the corresponding Annual Percentage Rate on your Credit Line are subject to change from time to time based on changes in an independent index which is the latest Prime Rate most recently published by *The Wall Street Journal* (shown in what is currently called the "Money Rates" table) and, if more than one rate is published, the highest of the rates will be used (the "Index"). The Index is not necessarily the lowest rate charged by us on our loans. If the Index becomes unavailable during the term of this Credit Line Account, we may designate a substitute index, which is beyond our control, after notice to you. The Annual Percentage Rate on your Credit Line is based upon the Index described below.

The Periodic Rate and the corresponding Annual Percentage Rate on your Credit Line will increase or decrease as the Index increases or decreases from time to time. If the Periodic Rate and corresponding Annual Percentage Rate increases, it will have the effect disclosed in the "Minimum Payment" paragraph. We will determine the Periodic Rate and the corresponding Annual Percentage Rate as follows: We start with the current Index as disclosed below. To determine the Periodic Rate that will apply to your account, we take the value of the Index, then divide the value by 365 days. To obtain the Annual Percentage Rate we multiply the Periodic Rate by the number of days in a year (366 during leap years). This result is the Annual Percentage Rate. In no event will the Periodic Rate result in a corresponding Annual Percentage Rate that is less than 2.500%, nor will the Periodic Rate or corresponding Annual Percentage Rate exceed the maximum rate allowed by applicable law. Adjustments to the Periodic Rate and the corresponding Annual Percentage Rate resulting from changes in the Index will take effect daily. Today the Index is 5.500% per annum, and therefore the initial corresponding Annual Percentage Rate and the Periodic Rate on your Credit Line are as stated below:

### Current Rates

| Range of Balance or Conditions | Margin Added to Index | Corresponding Annual Percentage Rate | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 0.000% | 5.500% | Exhibit 6 Page 34 |

**Notwithstanding any other provision of this Agreement, we will not charge interest on any undisbursed loan proceeds.**

**Preferred Variable Rate.** The annual percentage rate under this Credit Line Account is a preferred variable rate which is subject to the following rules and provisions:

**Description of Event That Would Cause Lender to Increase the Annual Percentage Rate.** You discontinue your authorization to have the Minimum Payment automatically deducted from your checking or savings account at Lender that you have designated ("Designated Deposit Account") or if such Designated Deposit Account is closed for any reason.

**How the New Rate ("Penalty APR") Will Be Determined.** As described above, the Annual Percentage Rate under this Credit Line Account is variable based on the Index value plus a margin. Should the event described above occur, the Annual Percentage Rate will be increased as follows: by increasing the margin on your account by 0.250 percentage points to arrive at the Penalty Margin.

The increase in the Periodic Rate and corresponding Annual Percentage Rate due to termination of this preferred rate is a Penalty APR. Such rate increase will have the effect disclosed in the "Minimum Payment" paragraph. Your Periodic Rate (and the corresponding Annual Percentage Rate) will continue to adjust from time to time, based on changes in the Index, as described in the "Periodic Rate and Corresponding Annual Percentage Rate" paragraph above. We will mail or deliver a notice of the increase to you as required by law before we impose a Penalty APR. We may apply the Penalty APR to all balances, including those that result from transactions that occur before or after the effective date of the increase. The Penalty APR will apply indefinitely.

**Current Penalty APR**

| Range of Balance or Conditions | Margin Added to Index | Corresponding Annual Percentage Rate | Daily Periodic Rate |
|---|---|---|---|
| All Balances | 0.250% | 5.750% | 0.01575% |

**Fees Imposed On the Credit Line.** You agree to pay the following fees:

**Penalty Fees.** You agree to pay the following penalty fees:

**Late Payment Fee.** If you do not make your payment within 10 days after the "Payment Due Date" shown on your periodic statement, in addition to our rights in default, **we may charge you $10.00**.

**Right to Credit Advances.** Beginning on the Effective Disbursement Date, we will honor your requests for credit advances up to your Credit Limit so long as: (A) you are not in default under the terms of this Agreement; (B) this Agreement has not been terminated or suspended.

**Default.** We may declare you to be in default if any one or more of the following events occur: (A) you fail to pay a Minimum Payment when due; (B) an event of default occurs under the security agreement for the Property; (C) the Property is further encumbered in any way, voluntarily or involuntarily; (D) you die; (E) you make any false or misleading statements on your Credit Line application; (F) you violate any provision of this Agreement or any other agreement with us; (G) any garnishment, attachment, or execution is issued against any material asset owned by you; (H) you exceed your Credit Limit; (I) you file for bankruptcy or other insolvency relief, or an involuntary petition under the provisions of the Bankruptcy Code is filed against you; (J) we in good faith believe ourselves insecure.

**Lender's Rights.** If you are in default, we may terminate or suspend your Credit Line Account without prior notice. However, we will notify you in writing of our action as soon as practicable.

**Suspension.** If we suspend your Credit Line, you will lose the right to obtain further credit advances. However, all other terms of this Agreement will remain in effect and be binding upon you, including your liability for any further unauthorized use of any Credit Line access devices.

**Termination.** If we terminate your Credit Line, your Credit Line will be suspended and the entire unpaid balance of your Credit Line Account will be immediately due and payable, without prior notice except as may be required by law, and you agree to pay that amount plus all interest, fees, and other amounts due under this Agreement.

**Collection Costs.** We may hire or pay someone else to help collect this Agreement if you do not pay. You will pay us that amount. This includes, subject to any limits under applicable law, our attorneys' fees and our legal

Exhibit 6 Page 35

expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. You also will pay any court costs, in addition to all other sums provided by law.

**Access Devices.** If your Credit Line is suspended or terminated, you must immediately return to us all Credit Line Checks and any other access devices. Any use of Credit Line Checks or other access devices following suspension or termination may be considered fraudulent. You will also remain liable for any further use of Credit Line Checks or other Credit Line access devices not returned to us.

**Delay in Enforcement.** We may delay or waive the enforcement of any of our rights under this Agreement without losing that right or any other right. If we delay or waive any of our rights, we may enforce that right at any time in the future without advance notice. For example, not terminating your account for non-payment will not be a waiver of our right to terminate your account in the future if you have not paid.

**Termination by you.** If you terminate this Agreement, you must notify us in writing at the address shown on your periodic billing statement or other designated address and return all Credit Line Checks and any other access devices to us. Despite termination, your obligations under this Agreement will remain in full force and effect until you have paid us all amounts due under this Agreement.

**Prepayment.** You may prepay all or any amount owing under this Credit Line at any time without penalty, except we will be entitled to receive all accrued interest, fees, and other charges, if any. Payments in excess of your Minimum Payment will not relieve you of your obligation to continue to make your Minimum Payments. Instead, they will reduce the principal balance owed on the Credit Line. You agree not to send us payments marked "paid in full", "without recourse", or similar language. If you send such a payment, we may accept it without losing any of our rights under this Agreement, and you will remain obligated to pay any further amount owed to us. **All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: City National Bank, a national banking association, City Loan Center - Loan Services Center, P. O. Box 60938 Los Angeles, CA 90060.**

**Notices.** All notices will be sent to your address as shown in your Credit Line application. Notices will be mailed to you at a different address if you give us written notice of a different address. You agree to advise us promptly if you change your mailing address.

**Annual Review.** You agree that you will provide us with a current financial statement, a new credit application, or both, annually, on forms provided by us. Based upon this information we will conduct an annual review of your Credit Line Account. You also agree we may obtain credit reports on you at any time, at our sole option and expense, for any reason, including but not limited to determining whether there has been an adverse change in your financial condition. We may require a new appraisal of the Property which secures your Credit Line at any time, including an internal inspection, at our sole option and expense. You authorize us to release information about you to third parties as described in our privacy policy and our Fair Credit Reporting Act notice, provided you did not opt out of the applicable policy, or as permitted by law. Based upon a material adverse change in your financial condition (such as termination of employment or loss of income), we may suspend your Credit Line.

**Transfer or Assignment.** Without prior notice or approval from you, we reserve the right to sell or transfer your Credit Line Account and our rights and obligations under this Agreement to another lender, entity, or person, and to assign our rights under the security agreement. Your rights under this Agreement belong to you only and may not be transferred or assigned. Your obligations, however, are binding on your heirs and legal representatives. Upon any such sale or transfer, we will have no further obligation to provide you with credit advances or to perform any other obligation under this Agreement.

**Notify Us of Inaccurate Information We Report To Consumer Reporting Agencies.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: City National Bank, a national banking association City Loan Center - Loan Services Center P. O. Box 60938 Los Angeles, CA 90060-0938.

**ADDITIONAL PROVISIONS.** The following changes and additions are made to this Agreement:

1. **Change to "Credit Advances" section.** The **Credit Advances** section is revised to add the following sentence: "You also may obtain credit advances by such other methods as we may make available from time to time."

2. **Change to "Periodic Rate and Corresponding Annual Percentage Rate" section.** The third and fourth sentences in the second paragraph in the **Periodic Rate and Corresponding Annual Percentage Rate** section are revised in their entirety to state as follows: "We will determine the Periodic Rate and the corresponding Annual Percentage

**PERSONAL CREDIT LINE AGREEMENT (STOCKS/BONDS)**

Rate as follows: We start with the current Index and then add a certain Margin as disclosed below, but in no event will such sum be less than 2.50%. To determine the Periodic Rate that will apply to your account, we add a margin to the value of the Index, which sum will in no event be less than 2.50%, and then divide by the number of days in a year (daily)."

3. **New "Financial Statement Certification" section.** The following new section is added to the Agreement:

"**Financial Statement Certification.** Borrower represents and promises to Lender that (a) the most recent financial statements Borrower has given to Lender are true and correct in all respects, (b) they fairly represent Borrower's financial condition as of the date shown on the statements, and (c) no material adverse change has occurred in Borrower's financial condition since that date. Borrower further represents and promises to Lender that the most recent federal income tax return and all schedules attached to such return ("Federal Tax Return") that I have given to Lender are a true and correct copy of such Federal Tax Return filed with the Internal Revenue Service for the tax period ending on the date indicated in such Federal Tax Return".

**Governing Law. This Agreement will be governed by federal law applicable to us and, to the extent no~~t~~ by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by us in the State of California.**

**SIGN HERE**

**Choice of Venue.** If there is a lawsuit, you agree upon our request to submit to the jurisdiction of the courts of Los Angeles County, State of California.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Interpretation.** You agree that this Agreement, together with the security agreement, is the most reliable evidence of your agreements with us. If we go to court for any reason, we can use a copy, filmed or electronic, of any periodic statement, this Agreement, the security agreement or any other document to prove what you owe us or that a transaction has taken place. The copy, microfilm, microfiche, or optical image will have the same validity as the original. You agree that, except to the extent you can show there is a billing error, your most current periodic statement is the most reliable evidence of your obligation to pay.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Acknowledgment and Amendments.** You understand and agree to the terms and conditions in this Agreement. You acknowledge that, subject to applicable laws, we have the right to change the terms and conditions of the Credit Line program. You also understand and agree that you may be subject to other agreements with us regarding transfer instruments or access devices which may access your Credit Line. Any person signing below may request a modification to this Agreement, and, if granted, the modification will be binding upon all signers. By signing this Agreement, you acknowledge that you have read this Agreement. You also acknowledge receipt of a completed copy of this Agreement, including the Fair Credit Billing Notice.

**BORROWER:**

X _____
ZACHARY HORWITZ

Exhibit 6 Page 37

**PERSONAL CREDIT LINE AGREEMENT (STOCKS/BONDS)**

Loan No: 00001                          (Continued)                                    Page 8

# BILLING ERROR RIGHTS

### YOUR BILLING RIGHTS

### KEEP THIS DOCUMENT FOR FUTURE USE

**This notice tells you about your rights and our responsibilities under the Fair Credit Billing Act.**

**What To Do If You Find A Mistake On Your Statement**

If you think there is an error on your statement, write us at the address listed on your statement.

In your letter, give us the following information:
- Account information: Your name and account number.
- Dollar amount: The dollar amount of the suspected error.
- Description of problem: If you think there is an error on your bill, describe what you believe is wrong and why you believe it is a mistake.

You must contact us:
- Within 60 days after the error appeared on your statement.
- At least 3 business days before an automated payment is scheduled, if you want to stop payment on the amount you think is wrong.

You must notify us of any potential errors in writing. You may call us, but if you do we are not required to investigate any potential errors and you may have to pay the amount in question.

**What Will Happen After We Receive Your Letter**

When we receive your letter, we must do two things:
1. Within 30 days of receiving your letter, we must tell you that we received your letter. We will also tell you if we have already corrected the error.
2. Within 90 days of receiving your letter, we must either correct the error or explain to you why we believe the bill is correct.

While we investigate whether or not there has been an error:
- We cannot try to collect the amount in question, or report you as delinquent on that amount.
- The charge in question may remain on your statement, and we may continue to charge you interest on that amount.
- While you do not have to pay the amount in question, you are responsible for the remainder of your balance.
- We can apply any unpaid amount against your credit limit.

After we finish our investigation, one of two things will happen:
- If we made a mistake: You will not have to pay the amount in question or any interest or other fees related to that amount.
- If we do not believe there was a mistake: You will have to pay the amount in question, along with applicable interest and fees. We will send you a statement of the amount you owe and the date payment is due. We may then report you as delinquent if you do not pay the amount we think you owe.

If you receive our explanation but still believe your bill is wrong, you must write to us within 10 days telling us that you still refuse to pay. If you do so, we cannot report you as delinquent without also reporting that you are questioning your bill. We must tell you the name of anyone to whom we reported you as delinquent, and we must let those organizations know when the matter has been settled between us.

If we do not follow all of the rules above, you do not have to pay the first $50 of the amount you question even if your bill is correct.



**SECURITY AGREEMENT**
**STOCK/BOND COLLATERAL**
(Third Party Hypothecation - California)

In consideration of the covenants and agreements contained herein, and financial accommodations given, to be given or continued, the undersigned Owner hereby, pursuant to the *California Uniform Commercial Code* ("*Code*"), grants to **City National Bank**, a national banking association ("CNB"), as secured party, a security interest in all of the Collateral described in the Collateral Description below. The security interest created by this Agreement attaches immediately upon execution hereof, or as soon as Owner acquires rights to the Collateral, and secures payment of any and all of (a) Debtor's indebtedness (including all debts, obligations, or liabilities now or hereafter existing, absolute or contingent, direct or indirect, matured or unmatured and including undisbursed future advances) to CNB; (b) amounts due CNB for its performance of Owner's and Debtor's obligations under this Agreement; and (c) amounts due CNB in its enforcement of its rights and remedies under this Agreement (collectively, the "Indebtedness").

**OWNER(S)**

a. Susan M. Kozlowski, Trustee of The
   Susan M. Kozlowski Revocable Living Trust
   Name

   XXX-XX-0001
   Social Security or Employer Number

b. REDACTED
   Calabasas, CA REDACTED
   Mailing Address

**DEBTOR(S)**

a. Zachary Horwitz
   Name

   XXX-XX-0571
   Social Security or Employer Number

b. 9615 Bolton Road
   Los Angeles, CA 90034
   Mailing Address

**SECURED PARTY—CITY NATIONAL BANK** (Transit and A.B.A. No.: **16-16066/1220**)

Mailing Address:      City National Bank-Entertainment Premier Bank #661
                      400 North Roxbury Drive, Fifth Floor
                      Beverly Hills, CA 90210

**COLLATERAL DESCRIPTION:**

Financial Assets held in City National Bank securities account number 48197210 or any successor securities account, in the name of Susan M. Kozlowski, Trustee of The Susan M. Kozlowski Revocable Living Trust, all financial assets credited to the securities account, all securities entitlements with respect to the financial assets in the securities account, any and all investment property or assets maintained or recorded in the securities account, and all substitutions for, replacements of, and proceeds of the sale or other disposition of, any of the foregoing, including without limitation, cash proceeds, and all records relating to any of the foregoing.

| Advance and Maintenance Values | | |
|---|---|---|
| Collateral | Advance Value | Maintenance Value |
| **Cash Held in Brokerage and Trust Accounts** | 95% | 95% |
| **Banker's Acceptance**[ii] | 90% | 90% |
| **Non-Negotiable and Negotiable Certificates of Deposit issued by CNB and held at CNB** | 100% | 100% |
| **Non-Negotiable Certificates of Deposit held at CNB and issued by any institution other than CNB if such issuing institution is rated A or higher by S&P or A2 or higher by Moody's** | 70% | 75% |
| **Non-Negotiable Certificates of Deposit held at CNB and issued by any institution other than CNB if such issuing institution is rated less than A by S&P or A2 by Moody's** | Not Eligible | Not Eligible |
| **Non-Negotiable Certificates of Deposit held at any institution other than CNB** | Not Eligible | Not Eligible |
| **Brokered Certificates of Deposits held at CNB** | 85%- up to the maximum FDIC Insurance Limit | 85% |
| **Brokered Certificates of Deposits held at any institution other than CNB** | Not Eligible | Not Eligible |
| **Certificate of Deposit Account Registry Service CDs held at City National Securities, Inc.** | 85%- up to the maximum FDIC Insurance Limit | 85% |
| **Certificate of Deposit Account Registry Service CDs held at any institution other than City National Securities, Inc.** | Not Eligible | Not Eligible |
| **Negotiable Certificates of Deposit- Held at City National Securities, Inc.** | 90% | 90% |
| **Negotiable Certificates of Deposit – Held at any institution other than CNB or City National Securities, Inc.** | Not Eligible | Not Eligible |
| **Account Cash (excluding Cash held in Brokerage and Trust Accounts)** | 100% | 100% |
| **U.S. Government Agency (excluding GNMA, FNMA and FHLMC)** | | |
| Maturities (months) | | |
| Less than or equal to 60 | 90% | 90% |
| Greater than 60 and less than or equal to 120 | 85% | 85% |
| Greater than 120 | 80% | 85% |
| **U.S. Treasury Bills** | 90% | 90% |

| Advance and Maintenance Values | | | Advance Value | Maintenance Value |
|---|---|---|---|---|
| **Collateral** | | | | |
| **Municipal Bonds** | | | | |
| Term (months) | Moody's | Standard & Poor's | | |
| Less than or equal to 60 | Greater than or equal to Aa2 | Greater than or equal to AA | 85% | 85% |
| Greater than 60 and less than or equal to 120 | | | 80% | 85% |
| Greater than 120 | | | 75% | 80% |
| Less than or equal to 60 | Greater than or equal to Baa1 and less than Aa2 | Greater than or equal to BBB+ and less than AA | 75% | 80% |
| Greater than 60 and less than or equal to 120 | | | 70% | 75% |
| Greater than 120 | | | 65% | 70% |
| **Municipal Bonds rated below BBB+ by Standard & Poor's or below Baa1 by Moody's regardless of Term** | | | Not Eligible | Not Eligible |
| **Variable Rate Demand Notes** | | | | |
| Term (months) | Moody's | Standard & Poor's | | |
| Any | Greater than or equal to Aaa | Greater than or equal to AAA- | 90% | 95% |
| Any | Greater than or equal to Aa3 and less than Aaa | Greater than or equal to AA- and less than AAA- | 85% | 90% |
| Any | Greater than or equal to A3 and less than Aa3 | Greater than or equal to A- and less than AA- | 80% | 85% |
| Any | Greater than or equal to Baa3 and less than A3 | Greater than or equal to BBB- and less than A- | 70% | 75% |
| **Variable Rate Demand Notes rated below BBB- by Standard & Poor's or below Baa3 by Moody's regardless of Term** | | | Not Eligible | Not Eligible |
| **Corporate Bonds and Convertible Corporate Bonds** | | | | |
| Term (months) | Moody's | Standard & Poor's | | |
| Less than or equal to 60 | Greater than or equal to Aa2 | Greater than or equal to AA | 85% | 85% |
| Greater than 60 and less than 120 | | | 80% | 85% |
| Greater than or equal to 120 | | | 75% | 80% |
| Less than or equal to 60 | Greater than or equal to Baa1 and less than Aa2 | Greater than or equal to BBB+ and less than AA | 75% | 80% |
| Greater than 60 and less than 120 | | | 70% | 75% |
| Greater than or equal to 120 | | | 65% | 70% |
| **Corporate Bonds and Convertible Corporate Bonds rated below Baa1 by Moody's or below** | | | Not Eligible | Not Eligible |

032-019641.1.Security Agreement Stock Bond Collateral (Third Party Pledge) - California Rev. 1.2019.031919lm.docx
205498.2
Exhibit 6 Page 41

| Advance and Maintenance Values | | |
|---|---|---|
| **Collateral** | **Advance Value** | **Maintenance Value** |
| **BBB+ by Standard & Poor's regardless of Term** | | |
| **Commercial Paper[iii]** | 90% | 90% |
| **"Margin Stocks" (as defined in Federal Reserve Board Regulation U, as amended from time to time) – Price per share greater than or equal to $10[v]** | | |
| Market Capitalization | | |
| Less than $1 billion | 50% | 60% |
| Greater than or equal to $1 billion and less than $7.5 billion | 60% | 70% |
| Greater than or equal to $7.5 billion | 70% | 75% |
| **"Margin Stocks"  – Price per share less than $10 or not traded on a primary recognized exchange** | Not Eligible | Not Eligible |
| **Equity Real Estate Investment Trusts** | | |
| Price per share greater than or equal to $5 | 60% | 70% |
| Price per share less than $5 | Not Eligible | Not Eligible |
| **Unit Investment Trust Equities** | | |
| Price per share | | |
| Greater than or equal to $10 | 60% | 70% |
| Greater than or equal to $5 and less than $10 | 50% | 70% |
| **Unit Investment Trust Equities and Unit Investment Trust Fixed Income – Price per share less than $5** | Not Eligible | Not Eligible |
| **Unit Investment Trust Fixed Income – Price per share greater than or equal to $5** | 60% | 70% |
| **GNMA, FNMA, FHLMC** | | |
| Maturities less than or equal to 5 years | 90% | 90% |
| Maturities greater than 5 years | 80% | 85% |
| **Equity Linked Notes** | 75% | 80% |
| **Exchange Traded Notes (ETN)** | 50% | 55% |
| **American Depository Receipts –** | | |
| Price per share[i] greater than or equal to $5 | 50% | 55% |
| Price per share less than $5 or not on Primary Exchanges | Not Eligible | Not Eligible |

032-019641.1.Security Agreement Stock Bond Collateral (Third Party Pledge) - California Rev. 1.2019.031919lm.docx
205498.2
Exhibit 6 Page 42

| Advance and Maintenance Values | | |
|---|---|---|
| Collateral | Advance Value | Maintenance Value |
| **Exchange Traded Funds – Price per share greater than or equal to $5** | | |
| Sector | | |
| Balanced | 70% | 75% |
| Corporate/Government/Treasury, Municipal Fixed Income | 75% | 80% |
| Domestic Equity | 65% | 70% |
| Real Estate/REITS, International and Global Equity, International and Fixed Income, | 50% | 55% |
| **Exchange Traded Funds – Price per share less than $5** Exchange Traded Funds in the Hedge/Commodity/Currency Sector or in any other Sector not specified above | Not Eligible | Not Eligible |
| **Money Market Mutual Funds[iv]** | 100% | 100% |
| **Mutual Funds – Price per share greater than or equal to $5** | | |
| Sector | | |
| Domestic Large Cap Growth, Value and Core Stock, Equity Income Stock | 70% | 75% |
| Domestic Mid Cap Growth, Value and Core Stock, Multi Cap Growth, Value and Core Stock | 60% | 65% |
| General Taxable Bonds | 80% | 85% |
| Global Stock, High Yield Taxable Corporate Bonds, Emerging Markets, European Region, Latin America Region, Pacific Ex-Japan Region, Japanese World Taxable Bond, Small Cap Growth, Value and Core Stock, Specialty Equity Stock, Health/Biotech, Natural Resources, Environmental, Science and Technology, Utility, Financial Services, Real Estate, Gold Funds | 50% | 55% |
| High Yield Municipal Bonds, Municipal bonds, single State Bonds or Long Term Corporate Taxable Bonds | 75% | 80% |
| Intermediate Term Taxable or Tax Exempt Bonds | 85% | 85% |
| Short Term Taxable or Tax Exempt Bonds | 90% | 90% |
| Mutual Funds – Other | 60% | 70% |
| **Mutual Funds – Price per share less than $5** | Not Eligible | Not Eligible |
| **If Loan governed by Regulation U, all securities and instruments set forth above or listed below[vi]** | Not Eligible | Not Eligible |
| **Any security or instrument that isn't listed above, including, without limitation, (i) high yield corporate bonds (junk bonds), (ii) bearer bonds, (iii) U.S. Savings Bonds – Series EE, (iv) hedge funds and alternative financial investments, (v) mortgage REITS, (vi) hybrid REITS, (vii) FREITS, (viii) mortgage backed securities that are interest only (IO), principal only (PO), indexed** | Not Eligible | Not Eligible |

| Advance and Maintenance Values | | |
|---|---|---|
| **Collateral** | **Advance Value** | **Maintenance Value** |
| securities, mortgage strips, structured notes and inverse floaters, (ix) "when issued" stocks or bonds, (x) repurchase agreements and reverse repurchase agreements, (xi) equity options, (xii) restricted stock, (xiii) stocks with covered calls, (xiv) equity options, (xv) foreign debt instruments, (xvi) foreign stocks, (xvii) partnership interests, (xviii) non-liquid assets, and (xix) non-marginable securities. | | |
| Any assets held outside of CNB other than those held at City National Securities, Inc. (in which case the applicable Advance Values and Maintenance Values as set forth above or listed below shall govern) | Not Eligible | Not Eligible |

i. Price Per Share refers to the price per share of a security as of the date of CNB loan approval or, if the particular Collateral security is subsequently added to the investment account, then to the price per share of the security as of the date it is added to the investment account.

ii. To be eligible as Collateral, the bank creating the banker's acceptance(s) must have a short term rating of P-1 by Moody's, or A-1+ or A-1 by Standard & Poor's.

iii. To be eligible as Collateral, the commercial paper must be third-rate (P2/A2) or higher by a nationally recognized rating agency such as Moody's or Standard & Poor's.

iv. Money Market Mutual Funds with check writing privileges shall be deemed Not Eligible.

v. Royal Bank of Canada Stock (RY) shall be deemed Not Eligible.

vi. CNB does not make loans governed by Regulation U (i.e., loans made for the purpose of purchasing or carrying margin stock which are secured by margin stock).

**I.   WARRANTIES AND REPRESENTATIONS.**   Owner and Debtor warrant and represent:

1.   **Owner's Title.**   Owner has title to all Collateral; all Collateral is genuine; and, except as CNB has expressly consented to in writing, no other person, entity, agency or government has or purports to have any right, title, lien, encumbrance, claim or interest in any Collateral and there is no financing statement on file anywhere covering or affecting the Collateral.

2.   **Authority.**   Owner and Debtor have authority to enter into this Agreement.

3.   **Validity and Enforceability.**   All Collateral is bona fide, enforceable according to its terms and free from all defenses, claims, defaults, prepayments, setoffs and conditions precedent.   All persons obligated on Collateral have authority and capacity to contract.   All Collateral complies with all applicable laws concerning form, content, manner of preparation and execution.

4.   **Information.**   Debtor's most recent financial statements that have been delivered to CNB are true, complete and correct and fairly present the financial condition of Debtor as of the accounting period referenced on the statements, and there has been no material adverse change in the financial condition of Debtor since the date of such financial statements.   Debtor's most recent federal income tax return and all schedules attached to such return ("Federal Tax Return") that has been delivered to CNB is a true and correct copy of such Federal Tax Return filed with the Internal Revenue Service for the tax period ending on the date indicated in such Federal Tax Return.   Owner's most recent financial statements that have been delivered to CNB are true, complete and correct and fairly present the financial condition of Owner as of the accounting period referenced on the statements, and there has been no material adverse change in the financial condition of Owner since the date of such financial statements.   Owner's most recent Federal Tax Return that has been delivered to CNB is a true and correct copy of such Federal Tax Return filed with the Internal Revenue Service for the tax period ending on the date indicated in such Federal Tax Return.   Any and all other information now or hereafter supplied to CNB by Owner or Debtor or at either's request or instruction is complete, true and correct.

**II.   COVENANTS AND AGREEMENTS.**   Owner and Debtor covenant and agree:

1. **General Powers over Collateral.** CNB is authorized to transfer the Collateral to its own or nominee's name, and to perform any and all acts which CNB believes in good faith to be necessary or desirable to protect or preserve the Collateral, its value or CNB's security interest therein. These acts include, but are not limited to, voting, exercising options, warrants or conversion rights, tendering Collateral, entering into extension, reorganization, deposit, merger or consolidation agreements, compromising disputes and repledging the Collateral. Notwithstanding the foregoing, during any time when no Event of Default (as defined below) has occurred and is continuing, Owner shall be entitled to vote any voting Collateral and CNB will provide Owner with such proxies as may be necessary or appropriate to permit Owner to do so.

2. **Notice of Changes in Information, Name, Structure or Litigation.** Owner and Debtor shall immediately notify CNB of (a) any adverse changes in either of their financial conditions or operations or in any financial or other information provided to CNB; (b) any change in either of their residences, primary place of business, mailing addresses, names, trade names, and, if either is an organization, its identity or corporate structure; (c) any new openings of places of business by either of them; (d) any litigation pending or threatened against either of them or affecting the Collateral or having a material adverse effect upon either of their businesses, financial conditions or properties; and (e) any unpaid taxes of either of them which are more than fifteen (15) days delinquent.

3. **Reports; Verification; Inspection.** Owner shall provide CNB with such reports, accountings, documents and information as may be requested by CNB from time to time concerning the Collateral. Owner shall mark its books and records as requested by CNB to show CNB's security interest in the Collateral. Owner or Debtor shall permit CNB, when requested, to inspect either of their locations and the Collateral and to inspect, examine, audit and copy any of Debtor's or Owner's books, records, statements, correspondences and other data relating to either of their businesses and the Collateral. Owner shall assemble and make such Collateral and data available to CNB as requested by CNB.

4. **Defense of Title.** Owner and Debtor shall (a) appear in and defend any actions or proceedings purporting to affect CNB's security interest in or Owner's or CNB's rights, powers or title to any Collateral; (b) take such actions which CNB deems necessary to keep the Collateral free and clear from all liens, encumbrances, claims, rights, counterclaims or defenses of others; and (c) pay such costs, expenses and attorneys' fees related to such actions.

5. **Maintain Warranties.** Owner and Debtor shall maintain all of the Warranties and Representations stated above on an ongoing basis for all Collateral which Owner hereafter acquires or creates until all of the Indebtedness, and any rights of Debtor to future advances from CNB, are fully discharged.

6. **Undisbursed Indebtedness.** In the event that all or any portion of the Indebtedness is undisbursed, Debtor agrees that such amount will not be disbursed if, as a result of such disbursement, the total of (i) all disbursed Indebtedness plus (ii) all undisbursed Indebtedness consisting of outstanding letters of credit for Debtor's account, would exceed the total Advance Value of all Collateral.

7. **Decrease in Value of Collateral.** In the event that the total of (i) all disbursed Indebtedness, plus (ii) all undisbursed Indebtedness consisting of outstanding letters of credit for Debtor's account, exceeds the total Maintenance Value of all Collateral at any time while this Agreement remains in effect, either Debtor or Owner will promptly either (a) reduce the outstanding Indebtedness, or (b) provide additional collateral of the kind described above acceptable to CNB, in either case such that the total of (i) plus (ii) above does not thereafter exceed the Advance Value of the Collateral. In addition to CNB's rights under this Agreement, any other document between CNB and the Debtor or Owner and any of CNB's rights under applicable law, if Debtor or Owner fail to comply with the immediately preceding sentence or whenever in CNB's discretion it deems it desirable for its protection (and without the necessity of notice or demand to Debtor or Owner), including but not limited to extreme market volatility or trading volumes, an instance where a petition in bankruptcy or for the appointment of a receiver is filed by or against Debtor or Owner, or an attachment is levied against any of Debtor's or Owner's brokerage accounts pledged as collateral for the Indebtedness, or, if Debtor or Owner is a natural person, in the event of notice of Debtor's or Owner's death or incapacity, or in compliance with the orders of any exchange, CNB may, without prior demand, tender, and without any notice of the time or place of sale, all of which are expressly waived by Debtor and Owner, sell any or all securities or related contracts that may be in CNB's or any of CNB's affiliates' possession, at CNB's selection, or which CNB may be carrying for Debtor or Owner, or buy any securities, or related contracts relating thereto of which Debtor's or Owner's brokerage account or brokerage accounts may be short, in order to close out in whole or in part any commitment on Debtor's or Owner's behalf. CNB may also place stop orders with respect to such securities and such sale or purchase may be made at CNB's discretion on any exchange including before or after market hours where such business is then transacted, or at public auction or private sale with or without advertising, and neither

any demands, calls, tenders or notices which CNB may make or give in any one or more instances nor any prior course of conduct or dealings between CNB and Debtor or Owner shall invalidate the aforesaid waivers on Debtor's and Owner's part.

8.   **Dividends, Interest and Distributions.**  Owner assigns and agrees to deliver to CNB promptly upon receipt all increases, profits, proceeds, interest, dividends, distributions, stock splits, substitutions and replacements with respect to the Collateral, as well as any securities or other rights into which the Collateral may be converted or for which the Collateral may be tendered or exercised, all of which shall be held by CNB as additional Collateral hereunder. Pending Owner's delivery of any such additional Collateral to CNB, Owner shall not commingle such additional Collateral with any of Owner's other funds or property, but shall hold it separate and apart expressly in trust for CNB. Notwithstanding the foregoing, during any time when no Event of Default has occurred and is continuing, Owner shall be entitled to receive and retain cash dividends (other than liquidating or other capital distributions), interest payments and like cash payments and distributions with respect to the Collateral which do not represent payment or return of capital.

9.   **Taxes, Assessments, Charges, Liens.**  Owner shall pay and discharge when due all taxes, assessments, charges, liens and encumbrances now or hereafter affecting the Collateral.

10.   **Additional Documents.**  Owner and Debtor shall execute, acknowledge and deliver to CNB any additional documents, assignments or agreements that CNB, from time to time, deems necessary or advisable respecting the Collateral.

11.   **General Business Operation.**  Owner and Debtor shall keep accurate and complete records regarding their respective businesses and the Collateral.  Owner and Debtor shall conduct their respective businesses without voluntary interruption, except in the event of an emergency, and shall maintain all privileges, franchises, licenses and permits required to conduct their respective businesses.

12.   **Power of Attorney.**  In order to preserve and protect CNB's rights under this Agreement and in the Collateral, Owner and Debtor each appoint CNB as its respective true and lawful attorney in fact, with full power of substitution, to perform any and all acts which Owner or Debtor is obligated to do or CNB is entitled to do under this Agreement. This power of attorney includes, but is not limited to, the right to collect the proceeds and profits of the Collateral as Owner might collect; release Collateral; receive, open and dispose of all mail addressed to Owner and Debtor; notify the Post Office to change the addresses for delivery of mail addressed to Owner and Debtor to such address as CNB shall designate; and endorse Owner's and Debtor's names on all checks, drafts and other items remitted for payment with respect to the Collateral.  Nothing herein shall obligate CNB to exercise any of the rights granted by this power of attorney.  Owner and Debtor shall immediately reimburse CNB for any and all costs, attorneys' fees or expenses made or incurred by CNB (including attorneys' fees allocable to CNB's in-house counsel) while acting under this power of attorney.

13.   **Reimbursement.**  Owner and Debtor shall reimburse and pay CNB upon demand any and all expenses, costs and attorneys' fees incurred by CNB, or allocable to CNB's in-house counsel, whether or not a lawsuit is filed, in the enforcement or exercise of any of CNB's rights, powers or remedies or performance of any of Owner's or Debtor's obligations under this Agreement or the protection, preservation or disposition of the Collateral, with interest from the date of expenditure or when the fee became allocable at the rate set forth in Debtor's Indebtedness (and if this Agreement secures more than one of Debtor's Indebtedness, at the highest of the interest rates), or if the Indebtedness does not specify a rate of interest, at a rate of interest equal to CNB's Prime Rate, as it may exist from time to time, plus five percent (5.0%) per year, but in no event less than ten percent (10.0%) per year.

14.   **Debtor's Waivers.**  Debtor waives any rights to require CNB to proceed against any other person, to exhaust the Collateral or any other property securing the Indebtedness or to pursue any other remedies available to CNB.

15.   **Owner's Waiver.**  If Owner does not execute a separate contract of guaranty for Debtor's Indebtedness, to the extent Owner is deemed a guarantor or surety of Debtor's Indebtedness, Owner waives all rights and remedies that Owner may have as a guarantor or surety under the provisions of Title 13, commencing with Section 2787, of the *California Civil Code*, or any other provision of law.  In this regard, Owner waives (a) the right to require CNB to proceed against Debtor, or any other person liable for the Indebtedness, to proceed against or exhaust any Collateral or other security securing the Indebtedness, or to pursue any other remedy in CNB's power; (b) any defense arising by any reason, including any election of remedies, any disability, or the cessation from any cause whatsoever of the

8

liability of Debtor or any other person liable for the Indebtedness; and (c) any right of subrogation for the Indebtedness. Without limiting the generality of the foregoing, Owner waives all rights and defenses arising out of an election of remedies by the creditor, even though that election of remedies, such as non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation against the principal by the operation of Section 580d of the *California Code of Civil Procedure* or otherwise. For purposes of the waiver just given, the "Guarantor" referred to therein is Owner; the "creditor" referred to therein is CNB, and the "principal" is the Debtor. Owner authorizes CNB, from time to time, and without notice to Owner to (x) renew, compromise, extend, accelerate or otherwise change the time for payment or, otherwise alter the terms of the Debtor's Indebtedness, or (y) to grant or extend new Indebtedness to Debtor, which Indebtedness shall automatically be secured by this Agreement. Owner assumes the responsibility for being, at all times, informed of the financial condition of Debtor and any other person liable for the Indebtedness, and of all other circumstances bearing upon the risk of non-payment of the Indebtedness, which diligent inquiry would reveal, and agrees that CNB shall have no duty to advise Owner of information known to CNB regarding such condition or circumstances.

**III. EVENTS OF DEFAULT.** Owner and Debtor agree that the occurrence of any of the following shall constitute an "Event of Default" under this Agreement:

1. Debtor's failure to pay when due any principal, interest or other amount due under any of the Indebtedness.

2. Owner's or Debtor's failure to perform or observe any of the terms, provisions, covenants, agreements or obligations contained in this Agreement, including but not limited to Section 7 of Article II, above, notwithstanding any subsequent satisfaction of that Section caused by an increase in the value of the Collateral.

3. Any Warranty or Representation made in this Agreement is false or misleading or is believed by CNB in good faith to be false or misleading.

4. There shall occur an event of default or other violation of any term, condition, warranty, representation, or other provision of any promissory note, instrument or agreement evidencing any of the Indebtedness or executed in connection with any of the Indebtedness.

5. CNB in good faith deems itself insecure because the prospect of performance of any covenant or agreement in this Agreement is impaired, or the value or priority of CNB's security interest in any of the Collateral is impaired or unenforceable.

**IV. REMEDIES.** Upon the occurrence of an Event of Default, in addition to any other rights or remedies provided or allowed by law, Owner and Debtor understand and agree that CNB may, at its sole option, and without notice to Owner or Debtor, take one or more of the following actions:

1. **Acceleration of Maturity.** Declare all of Debtor's Indebtedness immediately due and payable.

2. **Performance of Debtor's Obligations by CNB.** Perform any of Owner's and Debtor's obligations under this Agreement.

3. **Possession and Protection.** Take possession of that Collateral not already in CNB's possession; require Owner or other persons in possession or control of Collateral to assemble it and make it available to CNB at such places as designated by CNB which are reasonably convenient to Owner and CNB; enter upon such properties where the Collateral might be located; and take such actions as CNB deems necessary or appropriate to protect its interest in the Collateral.

4. **Expenses.** Incur any expenses which CNB deems necessary in exercising any rights, remedies or powers under this Agreement or applicable law, including reasonable attorneys' fees and legal costs and expenses, whether or not a lawsuit is filed.

5. **Additional Collateral.** Demand that Debtor and Owner provide enough additional collateral to satisfy CNB.

6. **Setoff.** Exercise all rights of setoff to the same effect and in the same manner as if no Collateral had been given.

7. **Notice.** Notify other interested persons or entities of the default, acceleration and other actions by CNB.

8.  **Suit, Retention or Disposition of Collateral.**  Sue the Debtor or any other person or entity liable for Debtor's Indebtedness; retain the Collateral in satisfaction of the Indebtedness; dispose of the Collateral and apply the proceeds of disposition to the Indebtedness and the costs, expenses and attorneys' fees which CNB has incurred pursuant to this Agreement (including attorneys' fees allocable to CNB's in-house counsel) in such order and manner as CNB desires.

**V.  RULES TO CONSTRUE AGREEMENT.**  Owner and Debtor understand and agree that:

1.  **Definitions.**  All terms used to describe the Collateral which are defined in the *Code*, shall have the respective meanings as such terms are so defined.

2.  **Time of Essence.**  Time is of the essence of this Agreement.

3.  **Waiver.**  CNB's acceptance of partial or delinquent payments or failure of CNB to exercise any right or remedy shall not be a waiver of any obligation of Owner or Debtor or right of CNB nor constitute a modification of this Agreement, nor constitute a waiver of any other similar default subsequently occurring.

4.  **Complete Agreement.**  This Agreement, together with any exhibits, is intended by CNB,  Owner and Debtor as a final expression of their agreement and is intended as a complete statement of the terms and conditions of their agreement.

5.  **Assignments, etc.**  The provisions of this Agreement are hereby made applicable to and shall inure to the benefit of CNB's successors and assigns and bind Owner's and Debtor's heirs, legatees, devisees, administrators, executors, successors and assigns.

6.  **Law Governing.**  This Agreement shall be construed and governed by the laws of the State of California.

7.  **Multiple Owners or Debtors.**  When more than one Owner or Debtor signs this Agreement all agree that:

a.  **Construction**—whenever the words "Owner" or "Debtor" appear in this Agreement, they shall mean "each Owner" or "each Debtor," as the case may be.

b.  **Breach**—breach of any Covenant or Warranty by any Owner or Debtor may, at CNB's option, be treated as a breach by any other Owner or Debtor, as the case may be.

c.  **Liability**—the liability of each Owner or Debtor is joint and several and the discharge of any Owner or Debtor, for any reason other than full payment of  the Indebtedness, or any extension, forbearance, change of rate of interest, or acceptance, release or substitution of security or any impairment or suspension of CNB's remedies or rights against one Owner or Debtor, shall not affect the liability of any other Owner or Debtor.

d.  **Waiver**—all Debtors and Owners waive the right to require CNB to proceed against one Debtor or Collateral from one Owner before any other or pursue any other remedy in CNB's power.

8.  **Notice.**  All notices to be provided under this Agreement shall be in writing and delivered, if to Debtor, at the address stated in this Agreement, and if to CNB, at its address stated in this Agreement, or such other address as one party shall give notice of to the other party as provided herein.

9.  **Severability.**  If any provision of this Agreement shall be held to be prohibited or unenforceable under applicable law, such provision shall be ineffective only to the extent of such prohibition or unenforceability, without invalidating the remainder of such provisions or any remaining provisions of this Agreement.

10. **Headings.**  Section and subsection headings in this Agreement are included for convenience of reference only and shall not be a part of this Agreement for any purpose or be given any substantive effect.

11. **Amendment or Modification.**  No provision or term of this Agreement may be modified, amended or waived without the prior written consent of CNB.

Exhibit 6 Page 48

Dated:  March 19, 2019

**OWNER(S):**

**Susan M. Kozlowski, Trustee of The
Susan M. Kozlowski Revocable Living Trust**

**DEBTORS:**

**Zachary Horwitz**

# EXHIBIT 7





**CITY NATIONAL BANK**
The way up.

BUSINESS ACCOUNT AGREEMENT

## GENERAL ACCOUNT INFORMATION

Account Holder(s) ("Client")/dba    ONE N MILLION PRODUCTIONS, LLC, A CA LIMITED LIABILITY COMPANY

Type of Account    Business Checking                          Account Number    123640616

Mailing Address    5600 WILSHIRE BLVD #358 LOS ANGELES, CA 90036

Telephone    Information on File                E-Mail/Fax    Information on File

## MINIMUM NUMBER OF SIGNATURES REQUIRED FOR AUTHORIZED WITHDRAWAL: 1

Signature Message Code    NONE

## CHECK CARD AUTHORIZATION

By signing below, I/We authorize and instruct CNB to issue a Check Card to each Account Owner and Authorized Signer unless otherwise restricted I/We agree that the additional terms and conditions of the City National Bank Check Card Agreement and Electronic Funds Transfer Disclosure Statement, which will be provided with the card(s), will govern the account(s) and Check Card(s) issued If these terms, conditions, fees and any charges thereto are not acceptable to me/us I/We will close the account or discontinue the service

### Taxpayer Information

BY SIGNING THE "AGREEMENT BY CLIENT" BELOW, I/WE DECLARE UNDER PENALTY OF PERJURY THAT THE CORRECT TAXPAYER IDENTIFICATION NUMBER OF THE ACCOUNT HOLDER TO BE USED FOR TAX REPORTING PURPOSES IS   46-0831063

THE ACCOUNT HOLDER IS NOT SUBJECT TO BACKUP WITHHOLDING BECAUSE OF UNDERREPORTING OF INTEREST OR DIVIDENDS AND IS A U S PERSON (INCLUDING A U S RESIDENT ALIEN) UNLESS CHECKED HERE

☐ The account holder is subject to backup withholding and has not been notified by the Internal Revenue Service that backup withholding has been terminated

NON-RESIDENT ALIENS AND FOREIGN ENTITIES (Check here only if applicable)

☐ The account holder is exempt from backup withholding and information reporting An appropriate IRS Form W-8 foreign status certificate has been completed

**Government Regulation may require that CNB report interest income information**

### CERTIFICATION OF AUTHORITY

By signing the "Agreement by Client" below, each signer declares under penalty of perjury under the laws of the state where signed that the following is true and correct (1) The signer holds the title office, or position indicated and is authorized by the Client to make this declaration and sign the Agreement on behalf of the Client, (2) if the Client is (a) a sole proprietorship, the signer is the sole proprietor, (b) a partnership, the signer is a general partner, or a managing partner, (c) a limited liability company, the signer is the Manager or Member designated to act on behalf of the Client or the signers are all of the Managers or Member so designated, (3) The signer is authorized to enter into deposit, fund transfer brokerage, investment and treasury management agreement and deposit service agreement(s) on behalf of Client and to designate person(s) authorized to (a) act on behalf of Client and (b) designated persons as 'Authorized Signers' on any accounts of Client established hereunder, and (4) When signed below no other person's signature or authorization is required to make the Agreement by Client binding and enforceable on the Client (5) This authorization is in addition to all other authorizations now in existence

Exhibit 7 Page 50

123640616

## AGREEMENT BY CLIENT

On behalf of the named Client, by signing below I/we acknowledge receipt of the Account Agreement and Disclosures and applicable disclosures and fee schedule(s) containing the terms, conditions and fees governing the account(s), products and services designated above and any accounts designated under "Additional Accounts" below and any products and services later contracted for, as amended by disclosures and fee schedule(s) provided at the time of contracting. I/We agree that these terms, conditions and fees govern each account established with City National Bank ("CNB") or City National Securities, Inc. ("CNS") and each service now or later contracted for, as amended by later disclosures. I/We agree that CNB or CNS may provide additional terms, conditions and fees from time to time, depending upon the products and services selected by me/us and that CNB or CNS may amend or change these terms, conditions and fees from time to time on any required notice. If any terms, conditions, fees and any changes thereto are not acceptable to me/us, I/we will close the account(s) or discontinue the service. Where applicable, my/our continued use of the products and/or services after receipt of the terms, conditions, fees and amendments constitute my/our acceptance of such terms, conditions, fees and amendments thereto. I/We agree that the Authorized Signer(s) may withdraw funds and initiate and confirm payment orders pursuant to the security procedure selected respecting the account(s) and each Authorized Signer may establish additional accounts with CNB or CNS in the same name(s) and subject to the same signing authority stated above, contract for additional services for the account(s), and otherwise give instruction to CNB or CNS. If I/We indicated we would like information about the products and services of CNS, you are authorized to share information about me/us between CBS and CNS

## FURTHER AGREEMENT FOR TREASURY MANAGEMENT

Capitalized terms used in this Authorization and Agreement, not otherwise defined, have the meanings given to them in the City National Bank Treasury Management Services Disclosure and Agreement (the "Agreement")

By signing below, the undersigned, on behalf of the Business Organization named below (the "Client"), acknowledges receipt of the Agreement and agrees to adhere to the terms and conditions contained in the Agreement, any applicable User Documentation, setup forms, related documents, and any other disclosures provided to the Client with regard to the provision of one or more City National Bank Treasury Management Services

**The Agreement supersedes other treasury management service agreements between the Client and CNB. For certain Treasury Management Services, the Agreement authorizes on page 5 the Client's System Administrator to assign passwords, user names, and Personal Identification Numbers to persons that will enable the persons to conduct transactions on deposit accounts set up on the Treasury Management Service, notwithstanding the signing authority identified in the deposit agreement. The System Administrator may also designate one or more other persons to perform these same functions the System Administrator is authorized to perform (each such person being called a "User Administrator"). THE AGREEMENT ALSO PROVIDES FOR BINDING ARBITRATION OF DISPUTES**

The Client may from time to time request CNB to provide one or more of the Services described in the Agreement. Subject to CNB's approval, the Client may begin to use any Service requested once CNB has received all required forms properly completed and the Client has successfully fulfilled any applicable user requirements, including but not limited to testing and training

Further, the undersigned represents and warrants that the Client has taken all actions required to authorize the undersigned on behalf of the Client to execute and deliver this Authorization and Agreement and any other documents CNB may require with respect to a Service and that, when signed by the undersigned, this Authorization and Agreement is the valid and binding act of the Client

I/We certify to CNB and CNS that all the information on this Agreement is true and correct. I/We authorize CNB to obtain a ChexSystem or other similar report on Client and to report information. I/We authorize CNB to obtain a ChexSystem or other similar consumer report on each of us signing below and to report information. If I ask, CNB will tell me whether a consumer report was ordered and, if one was ordered, the name and address of the consumer reporting agency that furnished it

**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid back up withholding**

SIGN IN BLACK INK ONLY AND ON THE SIGNATURE LINE BELOW

Signature  _____

Name/Title  ZACHARY HORWITZ / Managing Member

Date  _8-28-2012_  Place of Signing  _Los Angeles, CA_
(City and State)

## AUTHORIZED SIGNERS (SIGN IN BLACK INK ONLY AND SIGN IN BOX BELOW)

X  _Sign here_

Name  ZACHARY HORWITZ

Title  Managing Member

Restriction/Alias Name/Facsimile  _____

Exhibit 7 Page 51

123640616

## BANK USE ONLY

| Today's Date / Time<br>8/24/2012 3 33 PM    09-13-18 | Opened By<br>Cris Gallardo | Opening Deposit   $0 00 |
|---|---|---|
| Supersedes Card Dated<br>**TEMPORARY CARD**<br>**NO SIGNATURE** | Superseded By | |
| Officer(s) 06672, 06630 | LLC Operating Agreement<br>___ Attached ___ Not in writing per _____ | Is the entity doing business in the state the account is opened? Yes or No<br>                                     Yes |
| Original Opening Date<br>   08-24-12 | Reviewed By | |
| Date Closed | Reason Closed | Type of Business/NAICS Code<br>FILM PRODUCTION |

## ADDITIONAL ACCOUNTS
Client authorizes the following additional accounts

| ACCOUNT INFORMATION | | OPENED | | REVIEWED BY | DATE CLOSED | CLOSING REASON |
|---|---|---|---|---|---|---|
| TYPE | ACCOUNT NO | DATE | BY | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

RECEIVED
SEP 13 2012
CENTRAL OPS #025
NEW ACCOUNTS SERVICES
SUPERSEDES

RECEIVED
SEP 13 2012
CENTRAL OPS. #025
NEW ACCOUNTS SERVICES

Exhibit 7 Page 52

# EXHIBIT 8

(Page 1 of 7)

# CITY NATIONAL BANK
### AN RBC COMPANY



## SUPERSEDURE AGREEMENT (BUSINESS)

Account Holder(s) ("Client"): ROGUE BLACK LLC, A DE LIMITED LIABILITY COMPANY
(including name changes)

Type of Account:   ANALYZED BUSINESS CHECKING        Account Number:   00127451710

## MINIMUM NUMBER OF AUTHORIZED SIGNATURES REQUIRED FOR WITHDRAWALS: 1
Signature Message Code:  NONE
Additional Accounts:   NONE

X _____
Sign here

Name:   ANDREW LEVITAS

Title:   Member

Restriction/Alias Name/Facsimile:  Update Signature

---

**Taxpayer Information**

BY SIGNING THE "AGREEMENT BY CLIENT" BELOW, I/WE CERTIFY UNDER PENALTIES OF PERJURY THAT:

1. THE CORRECT TAXPAYER IDENTIFICATION NUMBER OF THE ACCOUNT HOLDER TO BE USED FOR TAX REPORTING PURPOSES IS:82-1766781 _____ ; and,
2. THE ACCOUNT HOLDER IS NOT SUBJECT TO BACKUP WITHHOLDING DUE TO FAILURE TO REPORT INTEREST AND DIVIDEND INCOME; and,
3. THE ACCOUNT HOLDER IS A U.S. PERSON OR A U.S. RESIDENT ALIEN; and,
4. THE ACCOUNT HOLDER IS EXEMPT FROM FATCA REPORTING AND THE FATCA CODE (if any) ENTERED IS CORRECT.

EXCEPT (Check applicable box)

☐ The Account Holder is currently subject to backup withholding and has not been notified by the Internal Revenue Service that backup withholding has been terminated.

☐ The Account Holder is a Non-Resident Alien, Foreign Citizen or Foreign Entity and is exempt from backup withholding and information reporting and an appropriate IRS Form W-8, Foreign Status Certificate has been completed.

Exemption from backup withholding payee code (if any) _____   Exemption from FATCA reporting code for accounts outside US only _____
Government Regulation may require that CNB report interest income information.

## CERTIFICATION OF AUTHORITY

By signing the "Agreement by Client" below, each signer declares under penalty of perjury under the laws of the state where signed that the following is true and correct: (1) The signer holds the title, office, or position indicated and is authorized by the Client to make this declaration and sign the Agreement on behalf of the Client; (2) If the Client is (a) a sole proprietorship, the signer is the sole proprietor; (b) a partnership, the signer is a general partner, or a managing partner; (c) a limited liability company, the signer is the Manager or Member designated to act on behalf of the Client or the signers are all of the Managers or Member so designated; (3) The signer is authorized to enter into deposit, fund transfer, brokerage, investment and treasury management agreement and deposit service agreement(s) on behalf of Client and to designate person(s) authorized to (a) act on behalf of Client and (b) designated persons as "Authorized Signers" on any accounts of Client established hereunder; and (4) When signed below no other person's signature or authorization is required to make the Agreement by Client binding and enforceable on the Client. (5) This authorization is in addition to all other authorizations now in existence.

Account Title :                                    Account Number:
ROGUE BLACK LLC, A DE LIMITED LIABILITY COMPANY     00127451710

**AGREEMENT BY CLIENT**

On behalf of the named Client, by signing below I/we acknowledge receipt of the Account Agreement and Disclosures and applicable disclosures and fee schedule(s) containing the terms, conditions and fees governing the account(s), products and services designated above and any accounts designated under "Additional Accounts" below and any products and services later contracted for, as amended by disclosures and fee schedule(s) provided at the time of contracting. I/We agree that these terms, conditions and fees govern each account established with City National Bank ("CNB") or City National Securities, Inc. ("CNS") and each service now or later contracted for, as amended by later disclosures. I/We agree that CNB or CNS may provide additional terms, conditions and fees from time to time, depending upon the products and services selected by me/us and that CNB or CNS may amend or change these terms, conditions and fees from time to time on any required notice. If any terms, conditions, fees and any changes thereto are not acceptable to me/us, I/we will close the account(s) or discontinue the service. Where applicable, my/our continued use of the products and/or services after receipt of the terms, conditions, fees and amendments constitute my/our acceptance of such terms, conditions, fees and amendments thereto. I/We agree that the Authorized Signer(s) may withdraw funds and initiate and confirm payment orders pursuant to the security procedure selected respecting the account(s) and each Authorized Signer may establish additional accounts with CNB or CNS in the same name(s) and subject to the same signing authority stated above, contract for additional services for the account(s), and otherwise give instruction to CNB or CNS. If I/We indicated we would like information about the products and services of CNS, you are authorized to share information about me/us between CNB and CNS.

**FURTHER AGREEMENT FOR TREASURY MANAGEMENT**

Capitalized terms used in this Authorization and Agreement, not otherwise defined, have the meanings given to them in the City National Bank Treasury Management Services Disclosure and Agreement (the "Agreement").

By signing below, the undersigned, on behalf of the Business Organization named below (the "Client"), acknowledges receipt of the Agreement and agrees to adhere to the terms and conditions contained in the Agreement, any applicable User Documentation, setup forms, related documents, and any *other disclosures provided to the Client with regard to the provision of one or more City National Bank Treasury Management Services.*

The Agreement supersedes other treasury management service agreements between the Client and CNB. For certain Treasury Management Services, the Agreement authorizes on page 5 the Client's System Administrator to assign passwords, user names, and Personal *Identification Numbers to persons that will enable the persons to conduct transactions on deposit accounts set up on the Treasury Management Service, notwithstanding the signing authority identified in the deposit agreement. The System Administrator may also designate one or more other persons to perform these same functions the System Administrator is authorized to perform (each such person being called a "User Administrator"). THE AGREEMENT ALSO PROVIDES FOR BINDING ARBITRATION OF DISPUTES.*

The Client may from time to time request CNB to provide one or more of the Services described in the Agreement. Subject to CNB's approval, the Client may begin to use any Service requested once CNB has received all required forms properly completed and the Client has successfully fulfilled any applicable user requirements, including but not limited to testing and training.

Further, the undersigned represents and warrants that the Client has taken all actions required to authorize the undersigned on behalf of the Client to execute and deliver this Authorization and Agreement and any other documents CNB may require with respect to a Service and that, when signed by the undersigned, this Authorization and Agreement is the valid and binding act of the Client.

I/We certify to CNB and CNS that all the information on this Agreement is true and correct. I/We authorize CNB to obtain a ChexSystem or other similar report on Client and to report information. I/We authorize CNB to obtain a ChexSystem or other similar consumer report on each of us signing below and to report information. If I ask, CNB will tell me whether a consumer report was ordered and, if one was ordered, the name and address of the consumer reporting agency that furnished it.
The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid back up withholding.

**SIGN ON THE SIGNATURE LINE BELOW**

Signature:   _____

Name/Title: ZACHARY HORWITZ / Manager   _____

Date: _____   Place of Signing: _____

                                              (City and State)

Account Title :

ROGUE BLACK LLC, A DE LIMITED LIABILITY COMPANY

Account Number:

00127451710

**BANK USE ONLY**

| Today's Date/Time | Supersedes the Agreement Dated | Superseded By |
|---|---|---|
| 3/7/2019 10:33 AM | 06/15/2017 | Wileen Coleman |
| Reviewed By | Date Closed | |

Exhibit 8 Page 55







# BUSINESS ACCOUNT AGREEMENT

## GENERAL ACCOUNT INFORMATION

Account Holder(s) ("Client")/dba: ROGUE BLACK LLC, A DE LIMITED LIABILITY COMPANY

Type of Account: Business Checking    Account Number: 127451710

Mailing Address: 341 N CRESCENT HEIGHTS BLVD LOS ANGELES, CA 90048

Telephone: Information on File    E-Mail/Fax: Information on File

## MINIMUM NUMBER OF SIGNATURES REQUIRED FOR AUTHORIZED WITHDRAWAL: 1

Signature Message Code: NONE

---

### Taxpayer Information

BY SIGNING THE "AGREEMENT BY CLIENT" BELOW, I/WE CERTIFY UNDER PENALTIES OF PERJURY THAT:

1. THE CORRECT TAXPAYER IDENTIFICATION NUMBER OF THE ACCOUNT HOLDER TO BE USED FOR TAX REPORTING PURPOSES IS: 82-1786781 ; and,
2. THE ACCOUNT HOLDER IS NOT SUBJECT TO BACKUP WITHHOLDING DUE TO FAILURE TO REPORT INTEREST AND DIVIDEND INCOME; and,
3. THE ACCOUNT HOLDER IS A U.S. PERSON OR A U.S. RESIDENT ALIEN; and,
4. THE ACCOUNT HOLDER IS EXEMPT FROM FATCA REPORTING AND THE FATCA CODE (if any) ENTERED IS CORRECT.

EXCEPT (Check applicable box)

☐ The Account Holder is currently subject to backup withholding and has not been notified by the Internal Revenue Service that backup withholding has been terminated.

☐ The Account Holder is a Non-Resident Alien, Foreign Citizen or Foreign Entity and is exempt from backup withholding and information reporting and an appropriate IRS Form W-8, Foreign Status Certificate has been completed.

Exemption from backup withholding payee code (if any) _____ Exemption from FATCA reporting code for accounts outside US only _____
**Government Regulation may require that CNB report interest income information.**

---

### CERTIFICATION OF AUTHORITY

By signing the "Agreement by Client" below, each signer declares under penalty of perjury under the laws of the state where signed that the following is true and correct: (1) The signer holds the title, office, or position indicated and is authorized by the Client to make this declaration and sign the Agreement on behalf of the Client; (2) if the Client is (a) a sole proprietorship, the signer is the sole proprietor; (b) a partnership, the signer is a general partner, or a managing partner; (c) a limited liability company, the signer is the Manager or Member designated to act on behalf of the Client or the signers are all of the Managers or Member so designated; (3) The signer is authorized to enter into deposit, fund transfer, brokerage, investment and treasury management agreement and deposit service agreement(s) on behalf of Client and to designate person(s) authorized to (a) act on behalf of Client and (b) designated persons as "Authorized Signers" on any accounts of Client established hereunder; and (4) When signed below no other person's signature or authorization is required to make the Agreement by Client binding and enforceable on the Client. (5) This authorization is in addition to all other authorizations now in existence.

Exhibit 8 Page 56

Account Title :
ROGUE BLACK LLC, A DE LIMITED LIABILITY COMPANY

Account Number:
127451710

**AGREEMENT BY CLIENT**

On behalf of the named Client, by signing below I/we acknowledge receipt of the Account Agreement and Disclosures and applicable disclosures and fee schedule(s) containing the terms, conditions and fees governing the account(s), products and services designated above and any accounts designated under "Additional Accounts" below and any products and services later contracted for, as amended by disclosures and fee schedule(s) provided at the time of contracting. I/We agree that these terms, conditions and fees govern each account established with City National Bank ("CNB") or City National Securities, Inc. ("CNS") and each service now or later contracted for, as amended by later disclosures. I/We agree that CNB or CNS may provide additional terms, conditions and fees from time to time, depending upon the products and services selected by me/us and that CNB or CNS may amend or change these terms, conditions and fees from time to time on any required notice. If any terms, conditions, fees and any changes thereto are not acceptable to me/us, I/we will close the account(s) or discontinue the service. Where applicable, my/our continued use of the products and/or services after receipt of the terms, conditions, fees and amendments constitute my/our acceptance of such terms, conditions, fees and amendments thereto. I/We agree that the Authorized Signer(s) may withdraw funds and initiate and confirm payment orders pursuant to the security procedure selected respecting the account(s) and each Authorized Signer may establish additional accounts with CNB or CNS in the same name(s) and subject to the same signing authority stated above, contract for additional services for the account(s), and otherwise give instruction to CNB or CNS. If I/We indicated we would like information about the products and services of CNS, you are authorized to share information about me/us between CNB and CNS.

**FURTHER AGREEMENT FOR TREASURY MANAGEMENT**

Capitalized terms used in this Authorization and Agreement, not otherwise defined, have the meanings given to them in the City National Bank Treasury Management Services Disclosure and Agreement (the "Agreement").

By signing below, the undersigned, on behalf of the Business Organization named below (the "Client"), acknowledges receipt of the Agreement and agrees to adhere to the terms and conditions contained in the Agreement, any applicable User Documentation, setup forms, related documents, and any other disclosures provided to the Client with regard to the provision of one or more City National Bank Treasury Management Services.

The Agreement supersedes other treasury management service agreements between the Client and CNB. For certain Treasury Management Services, the Agreement authorizes on page 5 the Client's System Administrator to assign passwords, user names, and Personal Identification Numbers to persons that will enable the persons to conduct transactions on deposit accounts set up on the Treasury Management Service, notwithstanding the signing authority identified in the deposit agreement. The System Administrator may also designate one or more other persons to perform these same functions the System Administrator is authorized to perform (each such person being called a "User Administrator"). THE AGREEMENT ALSO PROVIDES FOR BINDING ARBITRATION OF DISPUTES.

The Client may from time to time request CNB to provide one or more of the Services described in the Agreement. Subject to CNB's approval, the Client may begin to use any Service requested once CNB has received all required forms properly completed and the Client has successfully fulfilled any applicable user requirements, including but not limited to testing and training.

Further, the undersigned represents and warrants that the Client has taken all actions required to authorize the undersigned on behalf of the Client to execute and deliver this Authorization and Agreement and any other documents CNB may require with respect to a Service and that, when signed by the undersigned, this Authorization and Agreement is the valid and binding act of the Client.

I/We certify to CNB and CNS that all the information on this Agreement is true and correct. I/We authorize CNB to obtain a ChexSystem or other similar report on Client and to report information. I/We authorize CNB to obtain a ChexSystem or other similar consumer report on each of us signing below and to report information. If I ask, CNB will tell me whether a consumer report was ordered and, if one was ordered, the name and address of the consumer reporting agency that furnished it.
**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid back up withholding.**

SIGN IN BLACK INK ONLY AND ON THE SIGNATURE LINE BELOW

Signature:

Name/Title: ZACHARY HORWITZ/MANAGER

Date: 06/20/2017       Place of Signing: Los Angeles, CA.

(City and State)

**AUTHORIZED SIGNERS (SIGN IN BLACK INK ONLY AND SIGN IN BOX BELOW)**

Name: ANDREW LEVITAS

X _____
Sign here

Title: Member

Restriction/Alias Name/Facsimile:

Account Title :
ROGUE BLACK LLC, A DE LIMITED LIABILITY COMPANY

Account Number:
127451710

X _____
Sign here

Name:  ZACHARY HORWITZ

Title:  Manager

Restriction/Alias Name/Facsimile: _____

6/15/2017

**Page 3 of 4**

City National Bank
Revised 4/1/2017

Exhibit 8 Page 58

Account Title :
ROGUE BLACK LLC, A DE LIMITED LIABILITY COMPANY

Account Number:
127451710

## BANK USE ONLY

| Today's Date / Time<br>6/15/2017 3:39 PM | Opened By<br>Blanca Delao | Opening Deposit  $0.00 |
|---|---|---|
| Supersedes Card Dated | Superseded By | |
| Officer(s): 06627, 06692 | LLC Operating Agreement<br>__ Attached  __ Not in writing per _____ | Is the entity doing business in the state the account is opened?    No |
| Original Opening Date | Reviewed By | |
| Date Closed | Reason Closed | Type of Business/NAICS Code<br>FILM FINANCE |

ADDITIONAL ACCOUNTS
Client authorizes the following additional accounts:

| ACCOUNT INFORMATION | | OPENED | | REVIEWED BY | DATE CLOSED | CLOSING REASON |
|---|---|---|---|---|---|---|
| TYPE | ACCOUNT NO. | DATE | BY | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Exhibit 8 Page 59

# EXHIBIT 9



# CITY NATIONAL BANK
### AN RBC COMPANY

## BUSINESS ACCOUNT AGREEMENT

## GENERAL ACCOUNT INFORMATION

Account Holder(s) ("Client")/dba:  LAYJAX VENTURES LLC, A CA LIMITED LIABILITY COMPANY

Type of Account:     Business Ckg (B)                    Account Number:   127697302
Mailing Address:     9615 BOLTON RD LOS ANGELES, CA 90034
Telephone:   Information on File                         E-Mail/Fax:  Information on File

## MINIMUM NUMBER OF SIGNATURES REQUIRED FOR AUTHORIZED WITHDRAWAL:  1

Signature Message Code:   NONE

---

### Taxpayer Information

BY SIGNING THE "AGREEMENT BY CLIENT" BELOW, I/WE CERTIFY UNDER PENALTIES OF PERJURY THAT:

1. THE CORRECT TAXPAYER IDENTIFICATION NUMBER OF THE ACCOUNT HOLDER TO BE USED FOR TAX REPORTING PURPOSES IS: 83-2004250                ; and,
2. THE ACCOUNT HOLDER IS NOT SUBJECT TO BACKUP WITHHOLDING DUE TO FAILURE TO REPORT INTEREST AND DIVIDEND INCOME; and,
3. THE ACCOUNT HOLDER IS A U.S. PERSON OR A U.S. RESIDENT ALIEN; and,
4. THE ACCOUNT HOLDER IS EXEMPT FROM FATCA REPORTING AND THE FATCA CODE (if any) ENTERED IS CORRECT.

EXCEPT (Check applicable box)

☐ The Account Holder is currently subject to backup withholding and has not been notified by the Internal Revenue Service that backup withholding has been terminated.

☐ The Account Holder is a Non-Resident Alien, Foreign Citizen or Foreign Entity and is exempt from backup withholding and information reporting and an appropriate IRS Form W-8, Foreign Status Certificate has been completed.

Exemption from backup withholding payee code (if any) _____  Exemption from FATCA reporting code for accounts outside US only _____
**Government Regulation may require that CNB report interest income information.**

---

### CERTIFICATION OF AUTHORITY

By signing the "Agreement by Client" below, each signer declares under penalty of perjury under the laws of the state where signed that the following is true and correct: (1) The signer holds the title, office, or position indicated and is authorized by the Client to make this declaration and sign the Agreement on behalf of the Client; (2) if the Client is (a) a sole proprietorship, the signer is the sole proprietor; (b) a partnership, the signer is a general partner, or a managing partner; (c) a limited liability company, the signer is the Manager or Member designated to act on behalf of the Client or the signers are all of the Managers or Member so designated; (3) the signer is authorized to enter into deposit, fund transfer, brokerage, investment and treasury management agreement and deposit service agreement(s) on behalf of Client and to designate person(s) authorized to (a) act on behalf of Client and (b) designated persons as "Authorized Signers" on any accounts of Client established hereunder; and (4) When signed below no other person's signature or authorization is required to make the Agreement by Client binding and enforceable on the Client. (5) This authorization is in addition to all other authorizations now in existence.

IMAGED BY: _____

NOV 19 2018

CENTRAL OPS #025
NEW ACCOUNTS SERVICES

Account Title :

LAYJAX VENTURES LLC, A CA LIMITED LIABILITY COMPANY

Account Number:
127697302

**AGREEMENT BY CLIENT**

On behalf of the named Client, by signing below I/we acknowledge receipt of the Account Agreement and Disclosures and applicable disclosures and fee schedule(s) containing the terms, conditions and fees governing the account(s), products and services designated above and any accounts designated under "Additional Accounts" below and any products and services later contracted for, as amended by disclosures and fee schedule(s) provided at the time of contracting. I/We agree that these terms, conditions and fees govern each account established with City National Bank ("CNB") or City National Securities, Inc. ("CNS") and each service now or later contracted for, as amended by later disclosures. I/We agree that CNB or CNS may provide additional terms, conditions and fees from time to time, depending upon the products and services selected by me/us and that CNB or CNS may amend or change these terms, conditions and fees from time to time on any required notice. If any terms, conditions, fees and any changes thereto are not acceptable to me/us, I/we will close the account(s) or discontinue the service. Where applicable, my/our continued use of the products and/or services after receipt of the terms, conditions, fees and amendments constitute my/our acceptance of such terms, conditions, fees and amendments thereto. I/We agree that the Authorized Signer(s) may withdraw funds and initiate and confirm payment orders pursuant to the security procedure selected respecting the account(s) and each Authorized Signer may establish additional accounts with CNB or CNS in the same name(s) and subject to the same signing authority stated above, contract for additional services for the account(s), and otherwise give instruction to CNB or CNS. If I/We indicated we would like information about the products and services of CNS, you are authorized to share information about me/us between CNB and CNS.

**FURTHER AGREEMENT FOR TREASURY MANAGEMENT**

Capitalized terms used in this Authorization and Agreement, not otherwise defined, have the meanings given to them in the City National Bank Treasury Management Services Disclosure and Agreement (the "Agreement").

By signing below, the undersigned, on behalf of the Business Organization named below (the "Client"), acknowledges receipt of the Agreement and agrees to adhere to the terms and conditions contained in the Agreement, any applicable User Documentation, setup forms, related documents, and any other disclosures provided to the Client with regard to the provision of one or more City National Bank Treasury Management Services.

**The Agreement supersedes other treasury management service agreements between the Client and CNB. For certain Treasury Management Services, the Agreement authorizes on page 5 the Client's System Administrator to assign passwords, user names, and Personal Identification Numbers to persons that will enable the persons to conduct transactions on deposit accounts set up on the Treasury Management Service, notwithstanding the signing authority identified in the deposit agreement. The System Administrator may also designate one or more other persons to perform these same functions the System Administrator is authorized to perform (each such person being called a "User Administrator"). THE AGREEMENT ALSO PROVIDES FOR BINDING ARBITRATION OF DISPUTES.**

The Client may from time to time request CNB to provide one or more of the Services described in the Agreement. Subject to CNB's approval, the Client may begin to use any Service requested once CNB has received all required forms properly completed and the Client has successfully fulfilled any applicable user requirements, including but not limited to testing and training.

Further, the undersigned represents and warrants that the Client has taken all actions required to authorize the undersigned on behalf of the Client to execute and deliver this Authorization and Agreement and any other documents CNB may require with respect to a Service and that, when signed by the undersigned, this Authorization and Agreement is the valid and binding act of the Client.

I/We certify to CNB and CNS that all the information on this Agreement is true and correct. I/We authorize CNB to obtain a ChexSystem or other similar report on Client and to report information. I/We authorize CNB to obtain a ChexSystem or other similar consumer report on each of us signing below and to report information. If I ask, CNB will tell me whether a consumer report was ordered and, if one was ordered, the name and address of the consumer reporting agency that furnished it.
**The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid back up withholding.**

SIGN ON THE SIGNATURE LINE BELOW

Signature:

Name/Title:  ZACHARY HORWITZ / Managing Member

Date: _____    Place of Signing: _____

(City and State)

SIGN ON THE SIGNATURE LINE BELOW

Signature:

Name/Title:  PHIL HAUS / Non-Signer Managing Member

Date: _____    Place of Signing: _____

(City and State)

**AUTHORIZED SIGNERS (SIGN IN BOX BELOW)**

11/15/2018

City National Bank
Revised 7/28/2017

Exhibit 9 Page 61

Account Title :

LAYJAX VENTURES LLC, A CA LIMITED LIABILITY COMPANY

Account Number:

127697302

Name:  ZACHARY HORWITZ

Title:  Managing Member

Restriction/Alias Name/Facsimile:

Account Title :

LAYJAX VENTURES LLC, A CA LIMITED LIABILITY COMPANY

Account Number:

127697302

## BANK USE ONLY

| Today's Date / Time<br>11/15/2018 8:09 AM | Opened By<br>Tallan Singleton  *David Solis* | Opening Deposit  $0.00 |
|---|---|---|
| Supersedes Card Dated | Superseded By | |
| Officer(s): 06627. 06692 | LLC Operating Agreement<br>__ Attached __ Not in writing per _____ | Is the entity doing business in the state the account is opened?   Yes |
| Original Opening Date | Reviewed By | |
| Date Closed | Reason Closed | Type of Business/NAICS Code<br>PRIVATE EQUITY FUNDING |

### ADDITIONAL ACCOUNTS
Client authorizes the following additional accounts:

| ACCOUNT INFORMATION | | OPENED | | REVIEWED BY | DATE CLOSED | CLOSING REASON |
|---|---|---|---|---|---|---|
| TYPE | ACCOUNT NO. | DATE | BY | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

# EXHIBIT 10

# NEW ACCOUNT INFORMATION SHEET | CITY NATIONAL BANK
### AN RBC COMPANY

## OWNERSHIP TYPE

◯ Personal      ◉ Business

◯ Corporation   ◯ Sole Proprietor   ◯ LLC   ◯ LLP   ◯ GP   ◯ LP
◯ Association/Lodge   ⊗ Trust   ◯ Other

The business is held

◯ Publicly   ⊗ Privately

## IF AN RBC CLIENT OR COLLEAGUE

☐ Royal Bank of Canada   ☐ RBC U.S. Wealth Mgmt. Client   ☐ RBC Colleague   ☐ RBC Capital Markets Client

## GENERAL CITY NATIONAL BANK ACCOUNT INFORMATION

| Date | Cost Center | Account Number | Primary Officer Code | Secondary Officer Code | A.A. Composite |
|------|-------------|----------------|----------------------|------------------------|----------------|
| 12-24-19 | | | 6627 | ~~6677~~ 6692 | |

## CNB PRODUCT SELECTION

☐ CD   ☒ Checking
☐ Interest Checking   ☐ Money Market
☐ Savings   ☐ Packages

(A) = Analyzed Version available only. (N) = Non-Analyzed Version available only. (B) = Both Analyzed and Non Analyzed versions available.

## ANCILLARY CNB PRODUCTS

☐ CNB Credit Card   ☐ Treasury Management   ☐ Business Line/Loan Application
☐ Other

## BUSINESS/ENTITY ACCOUNT INFORMATION

Entity Name   MJLZ TRUST

Taxpayer Identification No. REDACTED 0571

Does this entity have an existing CIS Number at CNB?
◯ Yes   ⊗ No      CIS Number

### Email Address(es)                                          Clear Options

Primary Email Address (will be used to delivery eDisclosures unless a selection is made)
LKLINGER @ KANDIZLAW.COM

◯ Use different email for eDisclosures
◯ Opt out of eDisclosure
◯ Account(s) opened in branch

INTERNAL USE FOR ACCOUNT(S) OPENED IN BRANCH
1. Add account level status code "8"
2. Print the disclosure from Encore.

Describe the primary business activity:   TRUST

### Primary Address

| Country | Address |
|---------|---------|
| United States of America | 10866 WILSHIRE BLVD SUITE 1500 |

| City | State | Zip/Postal Code |
|------|-------|-----------------|
| LA | California | 90024 |

### Mailing Address

| Country | Address |
|---------|---------|
| United States of America | |

| City | State | Zip/Postal Code |
|------|-------|-----------------|
| | California | |

ID 18151E (Rev 11/2019)                Page 1 of 4                (025)

Exhibit 10 Page 64

Account Name:

**Phone Numbers**

| Primary | Secondary | Fax | International⁴ |
|---|---|---|---|
| 310-428-1444 | | | |

**Additional Entity Information**

| Country where business organized | State | Is the entity doing business in the state where the account is located? |
|---|---|---|
| United States of America | California | ◯Yes        ◯No |

☐ Check if entity is a charitable organization.

## ACCOUNT OWNER(S)

**ACCOUNT OWNER 1**       ☐ Check if this account owner is also an authorized signer.

| Legal Name¹ | Title |
|---|---|
| LESETE | |

| Is this an existing client? | CIS Number | Taxpayer Identification No.¹ | Laser/Facsimile Signature? |
|---|---|---|---|
| ◯Yes   ◯No | | | ◯Yes      ◯No |

**Home Address³**

| Country | Address |
|---|---|
| United States of America | |

| City | State | Zip/Postal Code |
|---|---|---|
| | California | |

**Phone and Email**

| Mobile (Required for Online Services) | Home | Fax | International⁴ |
|---|---|---|---|
| | | | |

Email Address (If different than Primary Email Address)

Citizenship?

| ◯U.S. Citizen | ◯Resident Alien | ◯Nonresident Alien | |
|---|---|---|---|

| Date of Birth¹ | Place of Birth | Mother's Maiden Name |
|---|---|---|

**Primary Identification**

Identification Type

| ◯Driver's License | ◯Passport | ◯State ID | ◯Military ID | ◯Alien Registration Card |
|---|---|---|---|---|

| Identification Number² | Issued By | Issue Date | Expiration Date |
|---|---|---|---|
| | California | | |

**Occupation Information**

| Occupation | Employer's Name | Employer Phone Number | International Phone Number⁴ |
|---|---|---|---|

**Employer Address**

| Country | Address |
|---|---|
| United States of America | |

| City | State | Zip/Postal Code |
|---|---|---|
| | California | |

**Secondary Identification (if required)** Examples: Second piece of primary identification or bank card, credit card, student ID.

| Type of Document | Issued By | Expiration Date | Identification Number³ | Signer Restriction |
|---|---|---|---|---|

¹ Federal regulation does not permit a financial institution to open an account without this information.
² Required information.
³ For credit card, enter only the last four digits.
⁴ IBS Insight refers to the international phone number as a non-North American phone number.

Exhibit 10 Page 65

Non Signing Grantors Zachary Horwitz - REDACTED 0571
Non Signing Grantors Mallory Horwitz- REDACTED 2139

# NEW ACCOUNT INFORMATION SHEET |||||||||||||||||| CITY NATIONAL BANK

AN RBC COMPANY

## OWNERSHIP TYPE
◯ Personal                    ◯ Business

## IF AN RBC CLIENT OR COLLEAGUE
☐ Royal Bank of Canada          ☐ RBC U.S. Wealth Mgmt. Client   ☐ RBC Colleague          ☐ RBC Capital Markets Client

## GENERAL CITY NATIONAL BANK ACCOUNT INFORMATION

| Date | Cost Center | Account Number | Primary Officer Code | Secondary Officer Code | A.A. Composite |
|------|-------------|----------------|---------------------|------------------------|----------------|
|      |             |                |                     |                        |                |

## CNB PRODUCT SELECTION
☐ CD                                    ☐ Checking
☐ Interest Checking                     ☐ Money Market
☐ Savings                               ☐ Packages

(A) = Analyzed Version available only, (N) = Non-Analyzed Version available only, (B) = Both Analyzed and Non Analyzed versions available.

## ANCILLARY CNB PRODUCTS
☑ Other

## ACCOUNT OWNER(S)
### ACCOUNT OWNER 1          ☐ Check if this account owner is also an authorized signer.

| Legal Name¹ | Title |
|-------------|-------|
| Leslie Hvart Klinger | TRUSTEE |

| Is this an existing client? | CIS Number | Taxpayer Identification No.¹ | Laser/Facsimile Signature? |
|-----------------------------|------------|------------------------------|----------------------------|
| ◯ Yes  ☑ No |  | REDACTED 3221 | ◯ Yes  ◯ No |

**Home Address³**

| Country | Address |
|---------|---------|
| United States of America | 10866 Wilshire Blvd Suite 1500 |

| City | State | Zip/Postal Code |
|------|-------|-----------------|
| LA | California | 90024 |

**Phone and Email**

| Mobile (Required for Online Services) | Home | Fax | International⁴ |
|---------------------------------------|------|-----|----------------|
| (316) 475-1444 |  |  |  |

Email Address (If different than Primary Email Address)
Klinger@kandklaw.com

**Citizenship?**
◉ U.S. Citizen          ◯ Resident Alien          ◯ Nonresident Alien

| Date of Birth¹ | Place of Birth | Mother's Maiden Name |
|----------------|----------------|----------------------|
| REDACTED 1946 | Chicago, IL | Auerbach |

**Primary Identification**

Identification Type
☑ Driver's License    ◯ Passport    ◯ State ID    ◯ Military ID    ◯ Alien Registration Card

| Identification Number² | Issued By | Issue Date | Expiration Date |  |
|------------------------|-----------|------------|-----------------|--|
| REDACTED | California | 03/26/2015 | REDACTED 2020 |  |

ID 18151E (Rev 11/2019)                    Page 1 of 2                                    (025)

Exhibit 10 Page 66

Account Name:

**Occupation Information**

| Occupation | Employer's Name | Employer Phone Number | International Phone Number⁴ |
|---|---|---|---|
| Attorney | Koffler Kitinger & Elliot | 310 - 476 - 1444 | |

**Employer Address**

| Country | Address |
|---|---|
| United States of America | 10866 Wilshire Bl, #1500 |

| City | State | Zip/Postal Code |
|---|---|---|
| Los Angeles | California | 90024 |

Secondary Identification (if required) Examples: Second piece of primary identification or bank card, credit card, student ID.

| Type of Document | Issued By | Expiration Date | Identification Number³ | Signer Restriction |
|---|---|---|---|---|
| | | | | |

¹ Federal regulation does not permit a financial institution to open an account without this information.
² Required information.
³ For credit card, enter only the last four digits.
⁴ IBS Insight refers to the international phone number as a non-North American phone number.

**CHECK TO ADD ADDITIONAL AUTHORIZED SIGNER(S)**
List only those authorized signers who are not listed in the Account Owner(s) section.

**CHECK TO ADD SIGNER RESTRICTIONS**

**CHECK CARDS FOR ADDITIONAL CARDHOLDER(S)**
☐ Cards are issued to all account owners. Check to issue cards to additional account owners.

**CHECK ORDERS**
☐ Business
☐ Personal
☐ Deposit Slips
☐ Self-Inking Endorsement Stamp

**CARD(S) ISSUED**
☐ Check Card(s)
☐ ATM Card(s)

**PURPOSE OF ACCOUNT** (Select the most applicable)
☐ Household          ☐ Charity                        ☐ Operating                      ☐ Payroll
☐ Petty Cash         ☐ Disbursement/Expense           ☐ Collect Mgmt Fee - Advisor     ☐ Hold Investor Funds
☐ Collect Management Fee - Property Manager            ☐ Other

**ANTICIPATED ACTIVITY** The items below are in relation to the new account(s) being opened, not the entire relationship. A response of 'TBD' is not sufficient. If the response is none, enter '0' (zero).

| ACCOUNT #1 | Purpose: |
|---|---|
| Dollar amount of cash deposited and withdrawn per month | Dollar amount of domestic wires received and sent per month |
| Dollar amount of international wires received and sent per month | Dollar amount of ACH credits and debits per month |
| Dollar amount of E-Deposits per month | Expected average balance |

Exhibit 10 Page 67