FILED
CLERK, U.S. DISTRICT COURT

APR -5 2021

CENTRAL DISTRICT OF CALIFORNIA
BY: _____RS_____ DEPUTY

KATHRYN C. WANNER (Cal. Bar No. 269310)
Email: wannerk@sec.gov
M. LANCE JASPER (Cal. Bar No. 244516)
Email: jasperml@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone:  (323) 965-3998
Facsimile:   (213) 443-1904

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

SECURITIES AND EXCHANGE
COMMISSION,

        Plaintiff,

    vs.

ZACHARY J. HORWITZ; AND
1INMM CAPITAL, LLC,

        Defendants,

Case No. **2:21-CV-02927-CAS-GJSx**

**DECLARATION OF LANCE JASPER IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S *EX PARTE* APPLICATION FOR AN ORDER (1) FREEZING ASSETS; (2) REQUIRING AN ACCOUNTING; (3) PROHIBITING DESTRUCTION OF DOCUMENTS; AND (4) TO SET HEARING ON ORDER TO SHOW CAUSE**

**(FILED UNDER SEAL)**

## DECLARATION OF LANCE JASPER

I, Lance Jasper, declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I have personal knowledge of the matters set forth herein, except as otherwise noted, and, if called as a witness, I could and would competently testify under oath to the facts stated herein.

2.      I am an attorney admitted to practice law by the State Bar of California and by this Court.  I am currently an Attorney in the Division of Enforcement in the Securities and Exchange Commission's ("SEC") Los Angeles Regional Office.

3.      In the course of my duties as an Attorney with the SEC, I investigate violations of the federal securities laws.  My responsibilities include, among other things: (i) subpoenaing documents and witnesses; (ii) obtaining and analyzing documents; (iii) taking testimony; (iv) interviewing witnesses; and (v) making recommendations concerning whether there have been violations of the statutes and regulations enforced by the SEC.

4.      I make this declaration in support of the above-captioned action.  I assisted in the SEC investigation underlying this action (the "Investigation").

5.      Attached hereto as **Exhibit 1** is a true and correct copy of a document produced to the SEC by JJMT Capital, LLC ("JJMT Capital") in connection with the Investigation.

6.      Attached hereto as **Exhibit 2** is a true and correct copy of a document produced to the SEC by SAC Advisory, LLC ("SAC Advisory") in connection with the Investigation.

7.      Attached hereto as **Exhibit 3** is a true and correct copy of a document produced to the SEC by Pure Health Enterprises, Inc. ("Pure Health") in connection with the Investigation.

8.      Attached hereto as **Exhibit 4** is a true and correct copy of a document produced to the SEC by JJMT Capital in connection with the Investigation.

9.      Attached hereto as **Exhibit 5** is a true and correct copy of a document

1

1  produced to the SEC by JJMT Capital in connection with the Investigation.

2       10.    Attached hereto as **Exhibit 6** is a true and correct copy of a document

3  produced to the SEC by JJMT Capital in connection with the Investigation.

4       11.    Attached hereto as **Exhibit 7** is a true and correct copy of a document

5  produced to the SEC by Movie Fund, LLC ("Movie Fund") in connection with the

6  Investigation.

7       12.    Attached hereto as **Exhibit 8** is a true and correct copy of a document

8  produced to the SEC by JJMT Capital in connection with the Investigation.

9       13.     Attached hereto as **Exhibit 9** is a true and correct copy of a document

10  produced to the SEC by Pure Health in connection with the Investigation.

11      14.    On or about March 11, 2021, in connection with the Investigation, I

12  spoke with counsel for JJMT Capital via telephone.  During that call, I asked JJMT

13  Capital to produce a list of individuals and entities who provided funds to JJMT

14  Capital for the purpose of investing in promissory notes issued by 1inMM Capital,

15  LLC.  On March 12, 2021, JJMT Capital produced a list that contains more than 150

16  individuals and entities.  Counsel for JJMT represented to me that the list includes the

17  "JJMT noteholders" with "principal outstanding" from JJMT Capital's investments in

18  promissory notes issued by 1inMM Capital.

19      15.    On or about March 25, 2021, in connection with the Investigation, I

20  spoke via telephone with two individuals who identified themselves as

21  representatives of SAC Advisory, Fortune Film Fund One, LLC and Fortune Film

22  Fund Two, LLC.  During that call, the representatives of those entities informed me

23  that approximately 50 investors had contributed funds to those entities for the purpose

24  of investing in promissory notes issued by 1inMM Capital, LLC.  During the same

25  call, the representatives of those entities explained to me that they had direct

26  interactions with Defendant Horwitz in connection with investments in promissory

27  notes issued by 1inMM, and that Defendant Horwitz knew, including from those

28  interactions, that the representatives' entities obtained funds from multiple investors

1  for the purpose of investing in promissory notes issued by 1inMM.

2      16.   On or about February 24, 2021, in connection with the Investigation, I

3  spoke via telephone with a person who identified himself as Scott Cohen.  Mr. Cohen

4  informed me that his company, Cohen Distributions, LLC ("Cohen Distributions"),

5  provided funds to JJMT Capital for the purpose of investing in promissory notes

6  issued by 1inMM Capital, LLC.  Attached hereto as **Exhibit 10** is a true and correct

7  copy of an email I received from Mr. Cohen in connection with the Investigation.

8      17.   On or about March 22, 2021, in connection with the Investigation, I

9  spoke via telephone with a person who identified herself as S. Wong.  Ms. Wong

10  informed me that she provided funds to Cohen Distributions in connection with

11  investments involving 1inMM Capital, LLC.

12      18.   Attached hereto as **Exhibit 11** is a true and correct copy of a

13  document produced to the SEC by Pure Health in connection with the Investigation.

14      19.   Attached hereto as **Exhibit 12** is a true and correct copy of a document

15  produced to the SEC by JJMT Capital in connect with the Investigation.

16      20.   Attached hereto as **Exhibit 13** is a true and correct copy of a document

17  produced to the SEC by Pure Health in connection with the Investigation.

18      21.   There is no **Exhibit 14** to this declaration.

19      22.   Attached hereto as **Exhibit 15** is a true and correct copy of a document

20  produced to the SEC by JJMT Capital in connection with the Investigation.

21      23.   Attached hereto as **Exhibit 16** are true and correct copies of excerpts of

22  documents produced to the SEC by Escrow of the West in connection with the

23  Investigation.

24      24.   Attached as **Exhibit 17** is a true and correct copy of an image that I

25  captured from Zillow.com on March 29, 2021.

26      25.   Attached as **Exhibit 18** is a true and correct copy of an image that I

27  captured from Zillow.com on March 29, 2021.

28      26.   Attached as **Exhibit 19** is a true and correct copy of an image that I

1   captured from Zillow.com on March 29, 2021.

2          27.    Attached as **Exhibit 20** is a true and correct copy of an image that I

3   captured from Zillow.com on March 29, 2021.

4          28.    Attached as **Exhibit 21** is a true and correct copy of an image that I

5   captured from Redfin.com on or about March 30, 2021.

6          29.    Attached as **Exhibit 22** is a true and correct copy of a document

7   produced to the SEC by JJMT Capital in connection with the Investigation.

8          30.    On February 24, 2021, in connection with the Investigation, I caused

9   SEC subpoenas for documents and testimony to be issued to Defendants Zachary J.

10  Horwitz and 1inMM Capital, LLC.  Those subpoenas set March 12, 2021 as the date

11  for those Defendants to produce documents to the SEC and to provide sworn

12  testimony in the Investigation.  Attached hereto as **Exhibits 23** and **24** are true and

13  correct copies of those subpoenas.

14         31.    On or about Tuesday, March 9, 2021, I received an email from Michael

15  J. Quinn of the law firm Vedder Price.  Attached hereto as **Exhibit 25** is a true and

16  correct copy of that email.

17         32.    On Thursday, March 11, 2021, I spoke via telephone with an individual

18  who identified himself as Ryan Hedges of Vedder Price.  During that call, Mr.

19  Hedges asked for an extension of the deadlines for Defendant Horwitz to produce

20  documents to the SEC and to appear for testimony in the Investigation.  I agreed to a

21  two-week extension, to March 26, 2021, for Defendant Horwitz to produce

22  documents.  I declined to move the scheduled date for Defendant Horwitz's

23  testimony until Defendant Horwitz's counsel could suggest a specific day on which

24  Defendant Horwitz would agree to appear for testimony.  I asked Mr. Hedges to let

25  me know as soon as possible when Defendant Horwitz would be able to appear for

26  that testimony.

27         33.    To my knowledge, following the March 11, 2021 call with Mr. Hedges, I

28  received no further communications from or on behalf of Defendant Horwitz.  To my

knowledge, Defendant Horwitz did not appear for testimony on March 12, 2021.  To my knowledge, Defendant Horwitz has not produced any of the documents called-for by the subpoena issued to him in the Investigation, the extended deadline for which has now passed.  To my knowledge, 1inMM Capital also has not produced any documents in the Investigation.

34.     Attached hereto as **Exhibit 26** is a true and correct copy of an email that I received from Ryan Spiegel, who has identified himself to me as one of the individuals responsible for managing SAC Advisory.

35.     Attached hereto as **Exhibit 27** is a true and correct copy of a document that I received as an attachment to the email in Exhibit 26.

36.     Attached hereto as **Exhibit 28** is a true and correct copy of a document that I received as an attachment to the email in Exhibit 26.

37.     Attached hereto as **Exhibit 29** is a true and correct copy of a document produced to the SEC by SAC Advisory in connection with the Investigation.

38.     Attached hereto as **Exhibit 30** is a true and correct copy of excerpts of documents produced to the SEC by Los Angeles County in connection with the Investigation.  Counsel for Los Angeles Country represented to me that the excerpts come from the records of the Los Angeles County Treasurer and Tax Collector's Office.

39.     Attached hereto as **Exhibit 31** is a true and correct copy of a document that I printed from the California Secretary of State website on March 31, 2021.

40.     Attached hereto as **Exhibit 32** is a true and correct copy of a document that I printed from the Nevada Secretary of State website on March 31, 2021.

41.     Attached hereto as **Exhibit 33** is a true and correct copy of a document that I printed on March 31, 2021 from www.sec.gov.  Based on my experience as an employee of the SEC, I understand www.sec.gov to be the SEC's public-facing website.

42.     On April 1, 2021, I conducted a public records search using a real

property database available to me through LexisNexis.  Attached hereto as **Exhibit 34** is a true and correct copy of an image I captured from results returned by that search.

43.    Attached hereto as **Exhibit 35** is a true and correct copy of an image I captured from imbd.com on April 1, 2021.

44.    Attached hereto as **Exhibit 36** is a document produced to the SEC in connection with the Investigation by the Los Angeles County Registrar-Recorder/County Clerk.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st day of April 2021 in Los Angeles, California.


*/s/ Lance Jasper*
Lance Jasper

# EXHIBIT 1



February 9, 2021

Kendall Brill Kelly LLP



**Re:**   *Demand for Payment and Information*

Dear Sirs:

As you know, our firm represents JJMT Capital, LLC, a Delaware limited liability company ("JJMT") in connection with various matters, including with respect to its effort to collect amounts owed by 1inMM Capital, LLC, a California limited liability company ("1inMM") to JJMT. Patrick Somers previously confirmed that Kendall Brill Kelly LLP ("KBK") represents 1inMM.

This letter is being sent on behalf of JJMT to you, as representative of and counsel to, 1inMM. As you are no doubt aware, 1inMM is in default under a series of promissory notes delivered to JJMT, including, without limitation, each of the promissory notes described on the attached Exhibit A (the "Notes"). JJMT has repeatedly made demand to 1inMM for payment in full of the Notes, but no payments have been made to JJMT on any of the Notes in over thirteen (13) months.

If 1inMM would have made payment in full of each of the Notes on the maturity date set forth in such Note, the total amount paid by 1inMM to JJMT would have been **$222,601,828.00** (the "Stated Note Obligations"). However, since no payments have been made on any of the Notes prior to, or since, their respective maturity dates and 1inMM is in default under the Notes, the Notes have been accruing default interest in accordance with the terms of the applicable Notes and will continue to accrue interest until each such Note is paid in full (the "Default Interest" and together with the Stated Note Obligations, the "Outstanding Note Obligations").

JJMT understands from 1inMM that (i) 1inMM used the proceeds of the Notes to purchase distribution rights (the "Distribution Rights") in and to motion pictures (collectively, the "Films") and (ii) 1inMM subsequently sublicensed a portion of the Distribution Rights to HBO (as defined below), Netflix (as defined below) or other third parties in exchange for payments required to be made by such third party licensees to 1inMM (the "Platform Payment Obligations").

Exhibit 1 Page 7

Ann Arbor | Birmingham | Detroit | Grand Haven | Grand Rapids | Kalamazoo | Lansing | Naples, FL | Novi



Kendall Brill Kelly LLP
February 9, 2021
Page 2

Each of the Notes also contains a reference to an "Assignment of Rights" agreement which is attached to each such Note pursuant to which 1inMM "unconditionally and irrevocably" assigns to JJMT its right, title and interest in the Films until JJMT is paid in full with respect to such Note. The rights assigned by 1inMM to JJMT pursuant to the Assignment of Rights agreement unquestionably includes the Distribution Rights and the Platform Payment Obligations.

JJMT understands from 1inMM that the reason 1inMM is unable to pay amounts owed to JJMT is a direct result of **both** (i) Warner Media LLC, Home Box Office, Inc. or HBO Latin America Holdings or any of their subsidiaries or affiliates (collectively, "<u>HBO</u>") and (ii) Netflix, Inc. ("<u>Netflix</u>") failing to pay amounts owed to 1inMM in accordance with written agreements with 1inMM.

To date, despite repeatedly demanding (and not receiving) payment from 1inMM, JJMT has elected not to initiate formal proceedings to collect the Outstanding Note Obligations and has elected not to exercise its rights under the "Assignment of Rights" clauses under the Note.

However, JJMT's patience has reached its limitation and JJMT's confidence that 1inMM is competently working to collect amounts that 1inMM has represented to JJMT are owed by HBO and Netflix is diminishing by the day.

Further, KBK's unwillingness to engage with Varnum to discuss 1inMM's strategy with respect to its collection efforts or to provide any progress update with respect to those efforts is completely unacceptable to JJMT.

**<u>Therefore, JJMT hereby demands that on or before 5:00 p.m. Eastern Standard Time on February 16, 2021 (the "Deadline")</u>:**

- **<u>1inMM make payment of $283,465,695.00 to JJMT</u>**, which amount represents the Stated Note Obligations plus a default interest rate of 2.5% per month (compounding daily). JJMT and 1inMM have previously discussed the 2.5% default interest rate (which was subject to contingencies to be fulfilled by 1inMM) and JJMT is willing to agree to such rate so long as payment is made by the Deadline.

- In the event 1inMM does not believe that the amounts set forth above will be paid by the Deadline, **<u>KBK must provide a written summary to Varnum of</u>**:

  o Status of discussions with HBO and Netflix;

  o Anticipated amounts and payment dates for all past due Platform Payment Obligations by HBO and Netflix.



Kendall Brill Kelly LLP
February 9, 2021
Page 3

- o Summary of all key actions taken by 1inMM and/or KBK against, or with respect to, HBO, Netflix or the Platform Payment Obligations since January 1st, 2021.

- o Confirmation that KBK has been actively, and directly involved, in discussions and communications with HBO and Netflix on behalf of 1inMM.

In the event these demands are not met prior to the Deadline, then JJMT will promptly pursue one or more of the following courses of action:

- ▪ JJMT, as the assignee of the Films, Distribution Rights and Platform Payment Obligations, will contact all relevant persons at HBO and/or Netflix to inform them that:

  - o 1inMM assigned all of its rights in the Films, Distribution Rights and Platform Payment Obligations to JJMT; and

  - o All future payments by HBO or Netflix with respect to any of the Films must be made directly to JJMT.

- ▪ JJMT will commence formal legal action against 1inMM, HBO, Netflix and all other appropriate parties.

In addition, this letter serves as notice to 1inMM of a potential dispute. JJMT formally demands preservation of all documents[1] that are currently in 1inMM's possession relating to JJMT, HBO, Netflix, Pathe International or any of the Notes, Films, Distribution Rights or Platform Payment Obligations.

For the sake of clarity, nothing in this letter constitutes a waiver of any of any of JJMT's rights, including, without limitation, all rights and claims against 1inMM, HBO or Netflix, all of which are expressly reserved.

Very truly yours,

**VARNUM**

17531120

---

[1] The terms "document" and "documents" shall have the broad meaning given to those the words under the applicable court rules and shall include all physical and electronic documents, whether in final form or otherwise.

Ann Arbor | Birmingham | Detroit | Grand Haven | Grand Rapids | Kalamazoo | Lansing | Naples, FL | Novi

Exhibit 1 Page 9

**FOIA Confidential Treatment Requested**

JJMT-SEC-0004799

Exhibit A
List of Promissory Notes

**Netflix-related Promissory Notes (53)**

| Related Content (Film Title) | Loan Date | Maturity Date | Principal Loan Amount (USD) | Amount Due (USD) | Amount Due with Interest (USD) |
|---|---|---|---|---|---|
| Active Measures | 12/17/2018 | 12/17/2019 | $1,425,500 | $1,998,825 | $2,821,964 |
| Divide & Conquer: The Story of Roger Ailes | 12/17/2018 | 12/17/2019 | $1,398,000 | $1,994,700 | $2,816,140 |
| Howlers | 12/26/2018 | 12/26/2019 | $55,000 | $400,000 | $400,000 |
| One Million American Dreams | 12/28/2018 | 12/28/2019 | $1,405,000 | $1,995,750 | $2,792,227 |
| Burn The Stage: The Movie | 12/28/2018 | 12/28/2019 | $1,418,250 | $1,997,737 | $2,795,007 |
| Nativity Rocks! | 1/18/2019 | 1/18/2020 | $1,428,000 | $1,999,200 | $2,751,386 |
| Free Solo | 1/22/2019 | 1/22/2020 | $1,419,500 | $1,997,925 | $2,740,594 |
| Tulip Fever | 1/24/2019 | 1/24/2020 | $1,422,000 | $1,998,300 | $2,736,599 |
| Minha Vida Em Marte | 2/11/2019 | 2/11/2020 | $1,410,500 | $1,996,575 | $2,696,245 |
| BTS World Tour: Love Yourself In Seoul | 2/11/2019 | 2/11/2020 | $1,396,000 | $1,994,400 | $2,693,308 |
| Yuli | 2/26/2019 | 2/26/2020 | $1,410,250 | $1,996,537 | $2,663,110 |
| Lucia's Grace | 2/26/2019 | 2/26/2020 | $1,397,500 | $1,994,625 | $2,660,560 |
| Total Dhamaal | 3/19/2019 | 3/19/2020 | $1,412,250 | $1,996,837 | $2,613,562 |
| Ploey: You Will Never Fly Alone | 3/19/2019 | 3/19/2020 | $1,415,500 | $1,997,325 | $2,614,200 |
| Luka Chuppi | 3/22/2019 | 3/22/2020 | $1,355,000 | $1,988,250 | $2,595,905 |
| Sai de Baixo: O Filme | 3/22/2019 | 3/22/2020 | $1,415,000 | $1,997,250 | $2,607,655 |
| Cinderela Pop | 3/28/2019 | 3/28/2020 | $1,417,500 | $1,997,625 | $2,595,296 |
| El Angel | 4/12/2019 | 4/12/2020 | $1,414,500 | $1,997,175 | $2,564,984 |
| A Prayer Before Dawn | 4/18/2019 | 4/18/2020 | $1,412,500 | $1,996,875 | $2,551,964 |
| Swimming With Men | 4/18/2019 | 4/18/2020 | $1,410,000 | $1,996,500 | $2,551,485 |
| Dogman | 4/23/2019 | 4/23/2020 | $1,415,000 | $1,997,250 | $2,541,961 |
| An Unexpected Love | 4/29/2019 | 4/29/2020 | $1,413,500 | $1,997,025 | $2,529,153 |
| HEAD OVER HEELS 3 (De Pernas Pro Ar 3) | 5/15/2019 | 5/15/2020 | $1,415,000 | $1,997,250 | $2,496,345 |
| After | 5/15/2019 | 5/15/2020 | $1,411,500 | $1,996,725 | $2,495,689 |
| Mia and The White Lion | 5/29/2019 | 5/29/2020 | $1,409,750 | $1,996,462 | $2,466,771 |
| The Queens Corgi | 5/30/2019 | 5/30/2020 | $1,412,500 | $1,996,875 | $2,465,251 |
| Amazing Grace | 6/14/2019 | 6/14/2020 | $1,410,750 | $1,996,612 | $2,436,686 |
| Birds of Passage | 6/14/2019 | 6/14/2020 | $1,412,500 | $1,996,875 | $2,437,007 |
| Fisherman's Friends | 6/18/2019 | 6/18/2020 | $1,407,500 | $1,996,125 | $2,428,084 |
| An American in Paris | 6/18/2019 | 6/18/2020 | $1,412,000 | $1,996,800 | $2,428,905 |
| Sgt. Stubby: An American Hero | 6/28/2019 | 6/28/2020 | $1,409,500 | $1,996,425 | $2,408,543 |
| Solteras | 7/17/2019 | 7/17/2020 | $1,417,000 | $1,997,550 | $2,372,506 |
| MYSTIFY: MICHAEL HUTCHENCE | 7/17/2019 | 7/17/2020 | $1,408,000 | $1,996,200 | $2,370,902 |
| Dolce Fine Giornata | 7/30/2019 | 7/30/2020 | $1,407,500 | $1,996,125 | $2,345,580 |
| The Days To Come | 7/30/2019 | 7/30/2020 | $1,405,750 | $1,995,862 | $2,345,271 |
| Lo Nunca Visto | 8/5/2019 | 8/5/2020 | $1,414,000 | $1,997,100 | $2,337,088 |
| Lizzie | 8/20/2019 | 8/20/2020 | $1,411,750 | $1,996,762 | $2,308,020 |

A-1

Exhibit 1 Page 10

**FOIA Confidential Treatment Requested**

| Related Content (Film Title) | Loan Date | Maturity Date | Principal Loan Amount (USD) | Amount Due (USD) | Amount Due with Interest (USD) |
|---|---|---|---|---|---|
| The Public | 8/20/2019 | 8/20/2020 | $1,402,500 | $1,995,375 | $2,306,417 |
| The Current War | 8/22/2019 | 8/22/2020 | $1,410,500 | $1,996,575 | $2,304,008 |
| Samson | 8/28/2019 | 8/28/2020 | $1,405,500 | $1,995,825 | $2,291,797 |
| Guardians of the Tomb | 8/30/2019 | 8/30/2020 | $1,410,500 | $1,996,575 | $2,288,887 |
| Run The Race | 9/13/2019 | 9/13/2020 | $1,411,500 | $1,996,725 | $2,264,696 |
| Storm Boy | 9/13/2019 | 9/13/2020 | $1,409,500 | $1,996,425 | $2,264,356 |
| Polaroid | 9/27/2019 | 9/27/2020 | $1,409,750 | $1,996,462 | $2,238,455 |
| Pavarotti | 9/27/2019 | 9/27/2020 | $1,412,000 | $1,996,800 | $2,238,834 |
| Little Italy | 9/30/2019 | 9/30/2020 | $1,407,500 | $1,996,125 | $2,232,557 |
| Every Day | 10/11/2019 | 10/11/2020 | $1,413,750 | $1,997,062 | $2,213,473 |
| The Inhabitant | 10/11/2019 | 10/11/2020 | $1,407,500 | $1,996,125 | $2,212,435 |
| Mirreyes Contra Godinez | 10/11/2019 | 10/11/2020 | $1,409,500 | $1,996,425 | $2,212,767 |
| Bodies At Rest | 10/23/2019 | 10/23/2020 | $1,414,500 | $1,997,175 | $2,191,843 |
| Journey to China: The Mystery of Iron Mask | 10/24/2019 | 10/24/2020 | $1,411,250 | $1,996,687 | $2,189,504 |
| The Hole in the Ground | 10/25/2019 | 10/25/2020 | $1,414,500 | $1,997,175 | $2,188,237 |
| City of Lies | 10/25/2019 | 10/25/2020 | $1,410,800 | $1,996,620 | $2,187,629 |
| **Totals** | | | | **$104,220,590** | **$128,301,848** |

Exhibit 1 Page 11

FOIA Confidential Treatment Requested

JJMT-SEC-0004801

## HBO-related Promissory Notes (113)

| Related Content (Film Title) | Loan Date | Maturity Date | Principal Loan Amount (USD) | Amount Due (USD) | Amount Due with Interest (USD) |
|---|---|---|---|---|---|
| 68 Kill | 6/3/2019 | 12/3/2019 | $730,000 | $321,207 | $412,958 |
| Greener Grass | 6/11/2019 | 12/11/2019 | $731,500 | $1,003,376 | $1,423,591 |
| Looks That Kill | 6/11/2019 | 12/11/2019 | $734,000 | $992,368 | $1,407,973 |
| Depraved | 6/12/2019 | 12/12/2019 | $747,500 | $1,013,207 | $1,436,356 |
| Our House | 6/12/2019 | 12/12/2019 | $743,000 | $1,008,994 | $1,430,384 |
| Come To Daddy | 6/12/2019 | 12/12/2019 | $741,750 | $1,001,469 | $1,419,716 |
| Mon Chien Stupide | 6/20/2019 | 12/20/2019 | $985,500 | $1,235,422 | $1,739,881 |
| Love at Second Sight | 6/20/2019 | 12/20/2019 | $920,850 | $1,163,033 | $1,637,934 |
| Bad Seeds | 6/21/2019 | 12/21/2019 | $920,500 | $1,167,735 | $1,643,203 |
| The Big Bad Fox and Other Tales | 6/21/2019 | 12/21/2019 | $960,800 | $1,215,162 | $1,709,940 |
| The Diggers | 6/27/2019 | 12/27/2019 | $736,500 | $993,980 | $1,391,809 |
| A Perfect Plan | 6/27/2019 | 12/27/2019 | $735,850 | $1,001,491 | $1,402,326 |
| The Sound of Philadelphia | 6/28/2019 | 12/28/2019 | $748,500 | $1,014,864 | $1,419,883 |
| Nosferatu | 7/9/2019 | 1/9/2020 | $741,500 | $1,000,728 | $1,387,486 |
| Strain 100 | 7/9/2019 | 1/9/2020 | $738,500 | $1,005,837 | $1,394,569 |
| Awoken | 7/11/2019 | 1/11/2020 | $740,000 | $1,000,583 | $1,385,003 |
| The Shed | 7/11/2019 | 1/11/2020 | $736,750 | $996,424 | $1,379,246 |
| Blood Quantum | 7/12/2019 | 1/12/2020 | $735,000 | $998,865 | $1,381,487 |
| 100 Dinge | 7/18/2019 | 1/18/2020 | $977,500 | $1,224,807 | $1,685,633 |
| Mirai | 7/18/2019 | 1/18/2020 | $940,200 | $1,183,053 | $1,628,169 |
| Unstoppable | 7/18/2019 | 1/18/2020 | $951,400 | $1,196,195 | $1,646,256 |
| Peel | 7/19/2019 | 1/19/2020 | $950,750 | $1,192,906 | $1,640,379 |
| Coyote Lake | 7/26/2019 | 1/26/2020 | $740,000 | $998,704 | $1,365,439 |
| Wasp Network | 7/26/2019 | 1/26/2020 | $744,500 | $1,006,638 | $1,376,287 |
| Line of Descent | 7/26/2019 | 1/26/2020 | $736,500 | $997,221 | $1,363,412 |
| The Opening Act | 7/26/2019 | 1/26/2020 | $742,500 | $1,003,934 | $1,372,590 |
| Anniversary Nightmare | 7/26/2019 | 1/26/2020 | $744,000 | $1,008,352 | $1,378,630 |
| High Strung Free Dance | 8/12/2019 | 2/12/2020 | $741,500 | $1,001,942 | $1,351,944 |
| All The Devil's Men | 8/12/2019 | 2/12/2020 | $745,500 | $1,003,639 | $1,354,234 |
| Matriarch | 8/12/2019 | 2/12/2020 | $744,000 | $1,005,142 | $1,356,262 |
| Look Away | 8/13/2019 | 2/13/2020 | $743,500 | $1,007,261 | $1,358,003 |
| Wild Rose | 8/13/2019 | 2/13/2020 | $746,200 | $1,008,937 | $1,360,263 |
| Ophelia | 8/13/2019 | 2/13/2020 | $741,750 | $1,003,153 | $1,352,465 |
| Red Joan | 8/13/2019 | 2/13/2020 | $955,700 | $1,207,144 | $1,627,488 |
| Possum | 8/13/2019 | 2/13/2020 | $943,500 | $1,184,441 | $1,596,880 |
| Then Came You | 8/14/2019 | 2/14/2020 | $949,500 | $1,197,727 | $1,613,464 |
| Little Woods | 8/14/2019 | 2/14/2020 | $935,500 | $1,176,522 | $1,584,898 |
| Wajwala 2 | 8/15/2019 | 2/15/2020 | $910,250 | $1,150,018 | $1,547,920 |
| Stratton | 8/23/2019 | 2/23/2020 | $745,650 | $1,002,916 | $1,341,062 |

A- 3

Exhibit 1 Page 12

FOIA Confidential Treatment Requested

| Related Content (Film Title) | Loan Date | Maturity Date | Principal Loan Amount (USD) | Amount Due (USD) | Amount Due with Interest (USD) |
|---|---|---|---|---|---|
| April's Daughter | 8/23/2019 | 2/23/2020 | $742,500 | $999,405 | $1,336,367 |
| Jungle | 8/23/2019 | 2/23/2020 | $743,800 | $1,004,983 | $1,343,825 |
| Buckout Road | 8/29/2019 | 2/29/2020 | $742,500 | $998,135 | $1,327,001 |
| Dead Trigger | 8/29/2019 | 2/29/2020 | $742,000 | $1,003,258 | $1,333,812 |
| How to Talk to Girls at Parties | 8/29/2019 | 2/29/2020 | $743,500 | $1,005,293 | $1,336,517 |
| The Man With the Iron Heart | 9/6/2019 | 3/6/2020 | $744,500 | $1,006,638 | $1,331,712 |
| House of The Disappeared | 9/6/2019 | 3/6/2020 | $740,250 | $1,009,775 | $1,335,862 |
| Spacewalk | 9/6/2019 | 3/6/2020 | $742,500 | $1,009,619 | $1,335,656 |
| Bel Canto | 9/12/2019 | 3/12/2020 | $738,500 | $998,747 | $1,314,764 |
| Blue Iguana | 9/12/2019 | 3/12/2020 | $736,500 | $998,186 | $1,314,026 |
| A.I. Rising | 9/13/2019 | 3/13/2020 | $743,750 | $1,004,659 | $1,321,459 |
| Armed | 9/13/2019 | 3/13/2020 | $744,650 | $1,004,764 | $1,321,597 |
| The Haunting of Sharon Tate | 9/17/2019 | 3/17/2020 | $940,500 | $1,179,669 | $1,546,554 |
| Junglee | 9/17/2019 | 3/17/2020 | $954,500 | $1,203,949 | $1,578,386 |
| Luce | 9/17/2019 | 3/17/2020 | $977,250 | $1,224,591 | $1,605,448 |
| The Kindness of Strangers | 9/18/2019 | 3/18/2020 | $951,000 | $1,191,698 | $1,561,039 |
| Wish Man | 9/18/2019 | 3/18/2020 | $918,500 | $1,160,194 | $1,519,771 |
| The Kid | 9/18/2019 | 3/18/2020 | $952,500 | $1,205,045 | $1,578,523 |
| Operation Red Sea | 9/26/2019 | 3/26/2020 | $744,500 | $1,011,083 | $1,315,754 |
| Time Freak | 9/26/2019 | 3/26/2020 | $739,500 | $999,907 | $1,301,210 |
| Bitter Harvest | 9/27/2019 | 3/27/2020 | $742,250 | $999,845 | $1,300,059 |
| How to Train Your Husband | 10/4/2019 | 4/4/2020 | $738,500 | $998,060 | $1,290,283 |
| Kindred Spirits | 10/4/2019 | 4/4/2020 | $743,500 | $1,005,360 | $1,299,720 |
| Next Level | 10/4/2019 | 4/4/2020 | $744,800 | $1,005,182 | $1,299,490 |
| Doorman | 10/8/2019 | 4/8/2020 | $742,500 | $1,003,117 | $1,292,558 |
| Walkaway Joe | 10/8/2019 | 4/8/2020 | $739,750 | $999,698 | $1,288,152 |
| Sweet Inspirations | 10/9/2019 | 4/9/2020 | $739,800 | $999,647 | $1,287,027 |
| Assimilate | 10/9/2019 | 4/9/2020 | $740,500 | $1,003,820 | $1,292,399 |
| The Wolf Hour | 10/16/2019 | 4/16/2020 | $977,650 | $1,223,137 | $1,565,719 |
| The Burnt Orange Heresy | 10/16/2019 | 4/16/2020 | $940,200 | $1,166,897 | $1,493,727 |
| Sweetness in the Belly | 10/16/2019 | 4/16/2020 | $980,200 | $1,226,534 | $1,570,067 |
| Can You Keep a Secret | 10/17/2019 | 4/17/2020 | $965,000 | $1,200,765 | $1,535,816 |
| Galveston | 10/17/2019 | 4/17/2020 | $959,500 | $1,199,091 | $1,533,675 |
| Zeroville | 10/18/2019 | 4/18/2020 | $973,500 | $1,217,976 | $1,556,548 |
| Dark Was The Night | 10/21/2019 | 4/21/2020 | $744,700 | $1,006,417 | $1,283,008 |
| Colette | 10/21/2019 | 4/21/2020 | $743,500 | $1,005,293 | $1,281,575 |
| Measure of Man | 10/21/2019 | 4/21/2020 | $743,000 | $1,004,871 | $1,281,037 |
| Malicious | 10/25/2019 | 4/25/2020 | $744,250 | $1,006,277 | $1,278,613 |
| Juliet, Naked | 10/25/2019 | 4/25/2020 | $740,500 | $1,001,260 | $1,272,238 |
| Malevolent | 10/25/2019 | 4/25/2020 | $744,000 | $1,001,962 | $1,273,130 |
| Maine | 10/28/2019 | 4/28/2020 | $739,800 | $1,001,985 | $1,270,019 |

A- 4

Exhibit 1 Page 13

FOIA Confidential Treatment Requested

| Related Content (Film Title) | Loan Date | Maturity Date | Principal Loan Amount (USD) | Amount Due (USD) | Amount Due with Interest (USD) |
|---|---|---|---|---|---|
| Endings, Beginnings | 10/28/2019 | 4/28/2020 | $742,500 | $1,003,964 | $1,272,528 |
| William | 10/28/2019 | 4/28/2020 | $740,000 | $1,000,584 | $1,268,244 |
| Strange But True | 10/30/2019 | 4/30/2020 | $739,850 | $992,952 | $1,256,500 |
| Christmas Camp | 10/30/2019 | 4/30/2020 | $736,500 | $995,011 | $1,259,105 |
| Fear Bay | 10/31/2019 | 4/30/2020 | $741,500 | $1,002,582 | $1,268,686 |
| General Commander | 10/31/2019 | 4/30/2020 | $740,000 | $999,843 | $1,265,220 |
| Allagash | 11/6/2019 | 5/6/2020 | $739,500 | $1,001,392 | $1,260,937 |
| Judy Small | 11/13/2019 | 5/13/2020 | $742,100 | $1,007,140 | $1,260,889 |
| 7 Days to Vegas | 11/13/2019 | 5/13/2020 | $738,250 | $1,005,496 | $1,258,831 |
| Now is Everything | 11/13/2019 | 5/13/2020 | $739,500 | $1,001,800 | $1,254,204 |
| Living and Knowing You're Alive | 11/13/2019 | 5/13/2020 | $925,500 | $1,157,920 | $1,449,659 |
| Le Dindon | 11/13/2019 | 5/13/2020 | $923,500 | $1,157,145 | $1,448,688 |
| Mon Cousin | 11/13/2019 | 5/13/2020 | $932,250 | $1,169,041 | $1,463,582 |
| Stray Dolls | 11/14/2019 | 5/14/2020 | $740,000 | $1,003,180 | $1,254,898 |
| Monsters of Man | 11/14/2019 | 5/14/2020 | $738,750 | $1,001,006 | $1,252,179 |
| Fourmi | 11/15/2019 | 5/15/2020 | $965,000 | $1,210,399 | $1,512,867 |
| Andy | 11/15/2019 | 5/15/2020 | $958,500 | $1,204,834 | $1,505,912 |
| The Assistant | 11/25/2019 | 5/25/2020 | $746,150 | $1,008,258 | $1,249,883 |
| Banksy and the Rise of Outlaw Art | 11/25/2019 | 5/25/2020 | $746,800 | $1,009,066 | $1,250,884 |
| Olympic Dreams | 11/26/2019 | 5/26/2020 | $744,800 | $1,003,416 | $1,242,857 |
| Lost Transmissions | 11/26/2019 | 5/26/2020 | $746,150 | $1,004,467 | $1,244,159 |
| The Encounter | 11/26/2019 | 5/26/2020 | $744,500 | $1,006,294 | $1,246,422 |
| Obsession | 11/26/2019 | 5/26/2020 | $747,000 | $1,008,416 | $1,249,050 |
| An Acceptable Loss | 11/29/2019 | 5/29/2020 | $744,500 | $1,005,893 | $1,242,852 |
| Goalie | 11/29/2019 | 5/29/2020 | $744,000 | $1,005,320 | $1,242,144 |
| I Met a Girl | 11/29/2019 | 5/29/2020 | $742,500 | $1,001,850 | $1,237,857 |
| The Pale Door | 11/29/2019 | 5/29/2020 | $746,500 | $1,006,596 | $1,243,721 |
| Body Brokers | 12/5/2019 | 6/5/2020 | $746,500 | $1,007,417 | $1,238,603 |
| Satanic Panic | 12/5/2019 | 6/5/2020 | $743,500 | $1,002,654 | $1,232,747 |
| Villain | 12/6/2019 | 6/6/2020 | $741,500 | $1,002,590 | $1,231,655 |
| Heidi: Queen of the Mountain | 12/6/2019 | 6/6/2020 | $743,000 | $1,003,874 | $1,233,232 |
| VFW | 12/6/2019 | 6/6/2020 | $739,500 | $996,071 | $1,223,646 |
| Disturbing the Peace | 12/6/2019 | 6/6/2020 | $745,000 | $1,002,578 | $1,231,640 |
| **Totals** | | | | **$118,381,238** | **$155,163,847** |

A- 5

Exhibit 1 Page 14

FOIA Confidential Treatment Requested

JJMT-SEC-0004804

# EXHIBIT 2

SAC Advisory Group, LLC

| Title | Maturity | Wire Out | Amount | Wire In | Amount | |
|---|---|---|---|---|---|---|
| Hunt For Truth | 2/22/2017 | 8/19/2016 | 342,600.00 | 2/22/2017 | 450,350.00 | |
| Girl Who Invesnted Kissing | 2/11/2018 | 8/8/2017 | 658,750.00 | 2/12/2018 | 857,757.00 | |
| The Solar System | 8/15/2018 | 2/13/2018 | 620,000.00 | 8/16/2018 | 792,720.00 | |
| Brick Mansions | 1/5/2019 | 6/29/2018 | 2,691,700.00 | 1/7/2019 | 3,364,624.00 | Grouped |
| Red Snake | 1/4/2019 | 6/29/2018 | 2,691,700.00 | 1/7/2019 | 3,364,624.00 | Grouped |
| Everly | 1/6/2019 | 6/29/2018 | 2,691,700.00 | 1/7/2019 | 3,364,624.00 | Grouped |
| WER | 1/5/2019 | 6/29/2018 | 2,691,700.00 | 1/7/2019 | 3,364,624.00 | Grouped |
| POMS | 3/6/2019 | 9/4/2018 | 690,100.00 | 3/6/2019 | 879,877.00 | |
| The Bay of Silence | 3/20/2019 | 9/19/2018 | 720,000.00 | 3/20/2019 | 900,000.00 | |
| Mrs. Lowry and Son | 3/24/2019 | 9/21/2018 | 710,650.00 | 3/25/2019 | 906,078.00 | |
| Million Dollar Nomad | 4/20/2019 | 10/24/2018 | 710,200.00 | 4/22/2019 | 887,750.00 | |
| Deadwall Hotel | 4/20/2019 | 10/23/2018 | 720,640.00 | 4/22/2019 | 900,800.00 | |
| 10 Minutes Gone | 7/11/2019 | 1/11/2019 | 2,928,700.00 | 7/12/2019 | 2,687,599.00 | Grouped |
| Medieval | 7/11/2019 | 1/11/2019 | 2,928,700.00 | 7/12/2019 | 2,687,599.00 | Grouped |
| Stage Mother | 7/11/2019 | 1/11/2019 | 2,928,700.00 | 7/12/2019 | 2,687,599.00 | Grouped |
| Ride Like a Girl | 7/14/2019 | 1/11/2019 | 2,928,700.00 | 7/15/2019 | 2,759,919.00 | Grouped |
| Ana | 7/14/2019 | 1/14/2019 | 1,470,200.00 | 7/15/2019 | 2,759,919.00 | Grouped |
| Windows of the World | 7/14/2019 | 1/14/2019 | 1,470,200.00 | 7/15/2019 | 2,759,919.00 | Grouped |
| You and Me | 9/13/2019 | 3/12/2019 | 727,500.00 | 9/13/2019 | 923,925.00 | |
| Still | 9/21/2019 | 3/20/2019 | 744,500.00 | 9/23/2019 | 908,290.00 | |
| The Corrupted | 9/27/2019 | 3/26/2019 | 733,500.00 | 9/30/2019 | 1,799,500.00 | |
| Mortal | 9/28/2019 | 3/26/2019 | 741,500.00 | 9/30/2019 | 1,799,500.00 | |
| Hearts Beat Loud | 10/23/2019 | 4/23/2019 | 743,650.00 | 10/28/2019 | 1,808,223.00 | |
| Lexi | 10/24/2019 | 4/23/2019 | 738,500.00 | 10/28/2019 | 1,808,223.00 | |
| The Quarry | 11/13/2019 | 5/10/2019 | 745,250.00 | 11/18/2019 | 909,205.00 | |
| The Virtuoso | 11/17/2019 | 5/16/2019 | 725,500.00 | 11/20/2019 | 885,110.00 | |
| A Violent Separation | 11/17/2019 | 5/16/2019 | 712,500.00 | 11/22/2019 | 869,250.00 | |
| The Etruscan Smile | 12/27/2019 | 6/26/2019 | 742,500.00 | NA | NA | |
| Acceleration | 1/18/2020 | 7/17/2019 | 743,750.00 | NA | NA | |
| Trauma Center | 1/18/2020 | 7/17/2019 | 741,275.00 | NA | NA | |
| Grand Isle | 1/18/2020 | 7/17/2019 | 1,485,250.00 | NA | NA | Grouped |

Exhibit 2 Page 15

| Title | Maturity | Wire Out | Amount | Wire In | Amount | |
|---|---|---|---|---|---|---|
| Hard Night Falling | 1/18/2020 | 7/17/2019 | 1,485,250.00 | NA | NA | Grouped |
| Pharaoh's War | 1/19/2020 | 7/19/2019 | 1,478,500.00 | NA | NA | Grouped |
| The Dare | 1/19/2020 | 7/19/2019 | 1,478,500.00 | NA | NA | Grouped |
| Real | 2/26/2020 | 8/26/2019 | 744,000.00 | NA | NA | |
| Journey's End | 2/27/2020 | 8/26/2019 | 742,650.00 | NA | NA | |
| Killing Gunther | 3/17/2020 | 9/13/2019 | 740,500.00 | NA | NA | |
| 3 From Hell | 3/26/2020 | 9/25/2019 | 744,500.00 | NA | NA | |
| Bottom of the 9th | 4/3/2020 | 10/1/2019 | 1,480,000.00 | NA | NA | Grouped |
| Cruel Peter | 4/3/2020 | 10/1/2019 | 1,480,000.00 | NA | NA | Grouped |
| City of Rock | 4/10/2020 | 10/9/2019 | 1,480,250.00 | NA | NA | Grouped |
| A Question of Faith | 4/10/2020 | 10/9/2019 | 1,480,250.00 | NA | NA | Grouped |
| The Burnt Orange Heresy | 4/30/2020 | 10/29/2019 | 1,486,550.00 | NA | NA | Grouped |
| Judy | 4/30/2020 | 10/29/2019 | 1,486,550.00 | NA | NA | Grouped |
| Welcome to the Circle | 5/3/2020 | 11/4/2019 | 1,485,300.00 | NA | NA | Grouped |
| Four Good Days | 5/3/2020 | 11/4/2019 | 1,485,300.00 | NA | NA | Grouped |
| Dirt | 5/20/2020 | 11/19/2019 | 745,800.00 | NA | NA | |
| Abduction | 5/20/2020 | 11/20/2019 | 745,800.00 | NA | NA | |
| American Fighter | 5/21/2020 | 11/22/2019 | 746,150.00 | NA | NA | |
| The Booksellers | 5/21/2020 | 11/21/2019 | 2,983,450.00 | NA | NA | Grouped |
| Lady Driver | 5/21/2020 | 11/21/2019 | 2,983,450.00 | NA | NA | Grouped |
| Prey | 5/21/2020 | 11/21/2019 | 2,983,450.00 | NA | NA | Grouped |
| Nuclear | 5/21/2020 | 11/21/2019 | 2,983,450.00 | NA | NA | Grouped |
| **Total** | | | **38,192,165.00** | | **23,490,977.00** | |
| **Currently Invested** | | | **19,316,225.00** | | | |

Fortune Film Fund One, LLC

| Title | Maturity | Wire Out | Amount | Wire In | Amount |
|---|---|---|---|---|---|
| Stockholm | 4/20/2018 | 10/19/2017 | 697,050.00 | 4/20/2018 | 905,670.00 |
| Light of My Life | 4/24/2018 | 10/19/2017 | 710,000.00 | 4/25/2018 | 936,250.00 |
| Muse | 5/29/2018 | 11/27/2017 | 682,750.00 | 5/29/2018 | 885,090.00 |
| Haunt | 7/23/2018 | 1/22/2018 | 625,700.00 | 7/23/2018 | 815,711.00 |
| Altitude | 11/2/2018 | 5/1/2018 | 702,380.00 | 11/2/2018 | 895,534.00 |
| Black Water | 11/2/2018 | 5/1/2018 | 675,520.00 | 11/5/2018 | 861,288.00 |
| Realive | 11/25/2018 | 5/30/2018 | 690,700.00 | 11/26/2018 | 880,642.00 |

Exhibit 2 Page 16

| Title | Maturity | Wire Out | Amount | Wire In | Amount | |
|---|---|---|---|---|---|---|
| Body at Brighton Rock | 2/6/2019 | 8/2/2018 | 685,400.00 | 2/6/2019 | 873,885.00 | |
| Rattlesnakes | 5/9/2019 | 11/9/2018 | 737,000.00 | 5/9/2019 | 1,852,320.00 | Grouped |
| River Runs Red | 5/9/2019 | 11/9/2018 | 715,800.00 | 5/9/2019 | 1,852,320.00 | Grouped |
| Remember Me | 6/14/2019 | 12/14/2018 | 730,500.00 | 6/17/2019 | 931,387.00 | |
| Patient Zero | 8/22/2019 | 2/20/2019 | 730,200.00 | 8/21/2019 | 890,844.00 | |
| Vampires vs. The Bronx | 11/14/2019 | 5/10/2019 | 742,250.00 | 11/18/2019 | 905,545.00 | |
| Slasher Party | 11/14/2019 | 5/10/2019 | 737,500.00 | 11/18/2019 | 899,750.00 | |
| The Great Alaskan Race | 12/27/2019 | 6/26/2019 | 745,500.00 | NA | NA | |
| Mary Shelley | 2/26/2020 | 8/26/2019 | 743,850.00 | NA | NA | |
| American Fright Fest | 5/20/2020 | 11/19/2019 | 1,492,300.00 | NA | NA | Grouped |
| Outback | 5/20/2020 | 11/19/2019 | 1,492,300.00 | NA | NA | Grouped |
| **Total** | | | **12,844,400.00** | | **12,533,916.00** | |
| **Currently Invested** | | | **2,981,650.00** | | | |

Fortune Film Fund Two, LLC

| Title | Maturity | Wire Out | Amount | Wire In | Amount | |
|---|---|---|---|---|---|---|
| Donnybrook | 7/24/2018 | 2/12/2018 | 728,500.00 | 7/24/2018 | 932,295.00 | |
| Not the End | 8/16/2018 | 2/12/2018 | 685,350.00 | 8/16/2018 | 882,817.00 | |
| The Motive | 8/16/2018 | 2/13/2018 | 705,700.00 | 8/16/2018 | 909,514.00 | |
| The DMZ | 9/20/2018 | 3/20/2018 | 620,185.00 | 9/20/2018 | 797,475.00 | |
| Eric Clapton: Life in 12 Bars | 11/2/2018 | 5/1/2018 | 741,500.00 | 11/5/2018 | 945,412.00 | |
| Never Grow Old | 2/10/2019 | 8/2/2018 | 708,550.00 | 2/11/2019 | 903,401.00 | |
| Offical Secrets | 3/6/2019 | 9/4/2018 | 740,500.00 | 3/6/2019 | 944,137.00 | |
| Scary Stories to Tell in the Dark | 3/7/2019 | 9/4/2018 | 685,000.00 | 3/7/2019 | 873,375.00 | |
| Silencio | 3/13/2019 | 9/12/2018 | 742,500.00 | 3/14/2019 | 946,687.00 | |
| Nowhere Mind | 3/20/2019 | 9/19/2018 | 725,800.00 | 3/20/2019 | 925,395.00 | |
| Feral | 3/24/2019 | 9/24/2018 | 695,200.00 | 3/25/2019 | 886,380.00 | |
| I Hate New York | 4/20/2019 | 10/22/2018 | 735,000.00 | 4/23/2019 | 937,125.00 | |
| Family of Fear | 5/9/2019 | 11/9/2018 | 738,500.00 | 5/9/2019 | 941,587.00 | |
| The Tracker | 8/21/2019 | 2/20/2019 | 742,700.00 | 8/21/2019 | 2,709,254.00 | Grouped |
| Deadman Standing | 8/21/2019 | 2/20/2019 | 740,500.00 | 8/21/2019 | 2,709,254.00 | Grouped |
| Vault | 8/22/2019 | 2/20/2019 | 737,500.00 | 8/21/2019 | 2,709,254.00 | Grouped |
| London Rampage | 9/13/2019 | 3/12/2019 | 733,250.00 | 9/13/2019 | 1,796,328.00 | Grouped |
| Down's Revenge | 9/13/2019 | 3/12/2019 | 739,150.00 | 9/13/2019 | 1,796,328.00 | Grouped |

Exhibit 2 Page 17

| | | | | | |
|---|---|---|---|---|---|
| Madonna | 9/21/2019 | 3/20/2019 | 746,250.00 | 9/23/2019 | 1,810,175.00 | Grouped |
| State Like Sleep | 9/22/2019 | 3/20/2019 | 737,500.00 | 9/23/2019 | 1,810,175.00 | Grouped |
| The Kill Team | 9/27/2019 | 3/26/2019 | 745,100.00 | 9/30/2019 | 909,022.00 |
| Warning Shot | 10/23/2019 | 4/23/2019 | 745,000.00 | 10/28/2019 | 908,000.00 |
| To The Stars | 11/13/2019 | 5/10/2019 | 742,000.00 | 11/18/2019 | 905,240.00 |
| The Yellow Birds | 2/23/2020 | 8/21/2019 | 2,228,950.00 | NA | NA | Grouped |
| SMART Chase | 2/23/2020 | 8/21/2019 | 2,228,950.00 | NA | NA | Grouped |
| The Super | 2/23/2020 | 8/21/2019 | 2,228,950.00 | NA | NA | Grouped |
| First Reformed | 3/16/2020 | 9/13/2019 | 741,200.00 | NA | NA |
| Leatherface | 3/17/2020 | 9/13/2019 | 742,500.00 | NA | NA |
| 7 Days in Entebbe | 3/26/2020 | 9/25/2019 | 742,850.00 | NA | NA |
| Feedback | 3/26/2020 | 9/25/2019 | 744,150.00 | NA | NA |
| Iron Sky:The Coming Race | 4/3/2020 | 10/1/2019 | 744,800.00 | NA | NA |
| Loro | 4/30/2020 | 10/29/2019 | 744,500.00 | NA | NA |
| The Drone | 5/20/2020 | 11/19/2019 | 746,200.00 | NA | NA |
| **Total** | | | **24,096,385.00** | | **20,863,619.00** |
| **Currently Invested** | | | **7,435,150.00** | | |

| | | | | |
|---|---|---|---|---|
| **Total Invested Over Term** | | | **75,132,950.00** | **Total Paid** | **56,888,512.00** |
| **Currently Invested** | | | **29,733,025.00** | | |

Exhibit 2 Page 18

# EXHIBIT 3

**PURE HEALTH TOTALS - ONLY PRINCIPLE**

| Movie | Contract Signed | Due Date | TOTAL NET INVESTMENT | PURE HEALTH | VAUSSE FILMS | ▉ | ▉ | ▉ | ▉ | TOTALS VERIFIED |
|---|---|---|---|---|---|---|---|---|---|---|
| Watchlist | May 29th | Nov 29th | $738,250 | $222,275 | $2,000,475 | | | | | $2,222,750 |
| Run with the Hunted | May 29th | Nov 29th | $744,500 | | | | | | | $0 |
| Arctic | May 29th | Nov 29th | $740,000 | | | | | | | $0 |
| Don't Open Your Eyes | June 24th | Dec 24th | $739,500 | | $1,331,910 | | $147,990 | | | $1,479,900 |
| You Might be the Killer | June 24th | Dec 24th | $740,400 | | | | | | | $0 |
| Clara | June 24th | Dec 24th | $737,500 | $237,500 | | $500,000 | | | | $737,500 |
| Killer Man | July 22nd | Jan 22nd | $743,250 | | | | $371,625 | $371,625 | | $743,250 |
| Screeners | Aug 1st | Feb 1st | $743,500 | | | | $176,000 | | $567,500 | $743,500 |
| Foreplay | Aug 1st | Feb 1st | $744,850 | $148,510 | $1,336,590 | | | | | $1,485,100 |
| Dauntless | Aug 1st | Feb 1st | $740,250 | | | | | | | $0 |
| Legend of the Ancient Sword | Aug 26th | Feb 26th | $744,700 | | | | $372,350 | | $372,350 | $744,700 |
| The Titans | Aug 26th | Feb 26th | $743,500 | $74,350 | $669,150 | | | | | $743,500 |
| Roads | Sept 23rd | March 23rd | $740,200 | $74,020 | $666,180 | | | | | $740,200 |
| Pegasus | Sept 23rd | March 23rd | $739,650 | $189,650 | | $550,000 | | | | $739,650 |
| Trouble | Sept 23rd | March 23rd | $742,500 | | | | $210,000 | | $532,500 | $742,500 |
| El Fotografo | October 17th | April 17th | $739,500 | $221,850 | $1,996,650 | | | | | $2,218,500 |
| The Skin of the Wolf | October 17th | April 17th | $739,200 | | | | | | | $0 |
| The Bar | October 17th | April 17th | $739,800 | | | | | | | $0 |
| The Insult | October 17th | April 17th | $739,000 | | | | $100,000 | | $639,000 | $739,000 |
| La Melodie | October 18th | April 18th | $739,850 | $189,850 | | $550,000 | | | | $739,850 |
| Sleeping in Plastic | Nov 18th | May 18th | $743,500 | | | | $565,000 | | $2,412,300 | $2,977,300 |
| Clown Fear | Nov 18th | May 18th | $745,800 | | | | | | | $0 |
| Cranson Academy | Nov 18th | May 18th | $745,200 | | | | | | | $0 |
| The Butcher | Nov 18th | May 18th | $742,800 | | | | | | | $0 |
| Mary | Nov 29th | May 29th | $745,500 | $95,500 | | $650,000 | | | | $745,500 |
| | | | | | | | | | | |
| TOTAL | | | $18,542,700 | $1,453,505 | $8,000,955 | $2,250,000 | $1,942,965 | $371,625 | $4,523,650 | $18,542,700 |

| NET INVESTMENT | TOTALS OWED | PERCENTAGES |
|---|---|---|
| PURE HEALTH | $18,542,700 | |
| ▉ | $1,453,505 | 7.84% |
| BRETT CRAVATT | $8,000,955 | 43.15% |
| ▉ | $2,250,000 | 12.13% |
| ▉ | $1,942,965 | 10.48% |
| ▉ | $4,895,275 | 26.40% |
| | | 100% |

Exhibit 3 Page 19

# EXHIBIT 4

**PROMISSORY NOTE**

**$ (1,994,700.00)**                                                                    **(12/17/2018)**

Promise. 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, JJMT CAPITAL LLC, a Delaware Limited Liability company located at  (███████████████████████ ███████████████ ), (the "Payee") an amount equal to (ONE MILLION NINE HUNDRED NINETY-FOUR THOUSAND SEVEN HUNDRED) Dollars ($1,994,700.00) in lawful money  of the United States of America, which sum shall be due and payable on (12/17/2019)  (the "Maturity Date"), in one (1) balloon payment, in  like money at said office. Payment date shall be no later than TWELVE (12) months post confirmed funds transfer from Payee to Maker in the amount of (ONE MILLION THREE HUNDRED NINETY-EIGHT THOUSAND) Dollars ($1,398,000.00).

Prepayment Option. Maker may pay down at any time any portion of the  principal sum outstanding without any prepayment penalty.

Assignment of Rights. See Appendix A

Compounding of Unpaid Payments. The undersigned agrees that time is of the  essence and that in the event payment of principal or interest due under this Note is not  made when due, giving effect to any grace period which maybe applicable, the  outstanding balance of unpaid payments hereof shall immediately bear interest at  the rate of ten (10) percent per month, for so long as  such event of default continues.

Validity of Agreement to Conform to Law. All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 4 Page 20

JJMT-SEC-0000066

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

<u>Maker's Default</u>. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

<u>Collection Costs</u>. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

<u>Waiver of Notice</u>. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 4 Page 21

JJMT-SEC-0000067

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

<u>Death of Maker</u>. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

<u>Extensions Granted by Payee.</u> All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

<u>Litigation Fees</u>. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

<u>General Provisions.</u> Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 4 Page 22

JJMT-SEC-0000068

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.

_____                    _12/20/18_____

1INMM Capital, LLC                                          Date
Zachary Horwitz, Manager

Exhibit 4 Page 23

JJMT-SEC-0000069

APPENDIX A

<u>ASSIGNMENT</u>

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at ██████████ ████████████████████ ("Assignor") and JJMT CAPITAL LLC, a Delaware Limited Liability company located at ██████████████████████████ ("Assignee") is dated effective as of ( 12 / 17 / 2018).

For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($1,994,700.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "DIVIDE AND CONQUER: THE STORY OF ROGER AILES" (the "Picture") based on the original screenplay entitled "ACTIVE MEASURES" directed by Alexis Bloom.

1.  Assignor hereby represents and warrants:

    1.1.  That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.
    1.2.  That, as of the effective date hereof, Assignor has the right to enter into this Assignment.
    1.3.  That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.  Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.  Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.  Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

Exhibit 4 Page 24

JJMT-SEC-0000070

5. This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

6. This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (17)th DAY OF December 2018.

1INMM CAPITAL, LLC ("Assignor")          JJMT CAPITAL LLC ("Assignee")

By: _____          By: _____

Its: _____          Its: _____

Exhibit 4 Page 25

JJMT-SEC-0000071

# EXHIBIT 5

**PROMISSORY NOTE**

**$ (1,994,625.00)**                                                     **(02/27/2019)**

<u>Promise</u>. 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, JJMT CAPITAL LLC, a Delaware Limited Liability company located at ( ███████████████ ███████████ ), (the "Payee") an amount equal to <u>(ONE MILLION NINE HUNDRED NINETY-FOUR THOUSAND SIX HUNDRED TWENTY-FIVE)</u> Dollars ($<u>1,994,625.00</u>) in lawful money  of the United States of America, which sum shall be due and payable on (02/27/2020)  (the "Maturity Date"), in one (1) balloon payment, in  like money at said office. Payment date shall be no later than TWELVE (12) months post confirmed funds transfer from Payee to Maker in the amount of (ONE MILLION THREE HUNDRED NINETY-SEVEN THOUSAND FIVE HUNDRED) Dollars ($1,397,500.00).

<u>Prepayment Option</u>. Maker may pay down at any time any portion of the  principal sum outstanding without any prepayment penalty.

<u>Assignment of Rights.</u> See Appendix A

<u>Compounding of Unpaid Payments</u>. The undersigned agrees that time is of the  essence and that in the event payment of principal or interest due under this Note is not  made when due, giving effect to any grace period which maybe applicable, the  outstanding balance of unpaid payments hereof shall immediately bear interest at  the rate of ten (10) percent per month, for so long as  such event of default continues.

<u>Validity of Agreement to Conform to Law.</u> All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 5 Page 26

JJMT-SEC-0001105

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 5 Page 27

JJMT-SEC-0001106

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

Death of Maker. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

Extensions Granted by Payee. All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

Litigation Fees. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

General Provisions. Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 5 Page 28

JJMT-SEC-0001107

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.

_____          _____
                                                                    2/18/19

1INMM Capital, LLC                                    Date
Zachary Horwitz, Manager

Exhibit 5 Page 29

JJMT-SEC-0001108

APPENDIX A

ASSIGNMENT

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at 3129-A S. La Cienega Ave. Los Angeles, CA 90016 Assignor") and JJMT CAPITAL LLC, a Delaware Limited Liability company located at ██████████████████████ ("Assignee") is dated effective as of  (02 / 27 / 2019).

For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($1,994,625.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "LUCIA'S GRACE" (the "Picture") based on the original screenplay entitled "LUCIA'S GRACE" directed by Gianni Zanasi.

1.  Assignor hereby represents and warrants:

    1.1.   That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.
    1.2.   That, as of the effective date hereof, Assignor has the right to enter into this Assignment.
    1.3.   That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.  Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.  Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.  Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

5.  This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights

Exhibit 5 Page 30

JJMT-SEC-0001109

and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

6. This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (27)th DAY OF February 2019.


1INMM CAPITAL, LLC ("Assignor")          JJMT CAPITAL LLC ("Assignee")


By: _____          By: _____

Its: Managing Partner                    Its: Managing Partner


Exhibit 5 Page 31

JJMT-SEC-0001110

# EXHIBIT 6

LICENSE AGREEMENT

This License Agreement ("Agreement") is entered into as of March 4th, 2019 (the "Effective Date") by and between 1inMM Capital LLC, with its principal place of business at ███████████████████ ("Licensor") and NETFLIX, INC., a California Corporation, with its principal place of business at ████████████████ ████████████████████████ ("Netflix").

### Recitals

Licensor is a Distributor and owner of all rights hereby granted for "Yuli" (the "Title"), directed by Iciar Bollain  and "Lucia's Grace" (the "title"), directed by Gianni Zanasi.

Netflix is a digital platform.

Licensor and Netflix desire to enter into a relationship whereby Licensor will grant Netflix, among other things, a license to distribute the Title to subscribers within the Territory, as defined below, all in accordance with the terms and conditions set forth below.

### Agreement

In consideration of the mutual promises contained herein and such other good and valuable consideration, the parties agree as follows:

1. **Definitions.**

    1.1. "Affiliate" shall mean any business entity which Licensor and Netflix directly or indirectly controls, is controlled by, or is under common control with, where "control" is defined as the ownership of at least fifty percent (50%) of the equity or beneficial interest of such entity or the right to vote for or appoint a majority of the board of directors or other governing body of such entity or otherwise possesses the power to direct the affairs of the entity.

    1.2. "Basic TV" shall mean the delivery and/or exhibition of a motion picture, television show or other entertainment product by means of cable, satellite or any other electronic or non-tangible means (whether analog or digital, or via the Internet or any other electronic or non-tangible medium now known or hereafter devised) where the consumer is charged a recurring fee and/or periodic access charge for the first or lowest tier(s) of service (including a tier that is required to be purchased or accessed before access to other programming services is permitted), regardless of whether such exhibition is on a regularly scheduled basis or made available to the viewer on an on demand basis at the consumer's discretion.

    1.3. "Electronic Sell-Through" or "EST" shall mean the delivery and/or exhibition of a motion picture, television show or other entertainment product, solely on a non-ad supported basis, where the timing and/or selection of same is not pre-determined, but rather is at the consumer's discretion, and for which, and the right to permanently download, retain and/or have access to same, the consumer is charged a transactional fee.

    1.4. "Free TV" shall mean the delivery and/or exhibition of a motion picture, television show or other entertainment product by means of over the air signals (including the retransmission of such signals by cable, satellite or any other electronic or non-tangible means) whether analog or digital, or via the Internet solely on one (1) website owned and operated by one (1) free-to-air broadcaster and branded as such broadcaster's website, where the consumer (i) is not charged a fee (except for the license fee, if any, payable for the right to use a television set in certain territories) and (ii) is required to view or is otherwise exposed to commercial interruptions (display or interstitial).

    1.5. "High Definition" shall mean a resolution of greater than or equal to 720p.

Exhibit 6 Page 32

JJMT-SEC-0003898

1.6.　"Home Video" shall mean the commercial release of a motion picture, television show or other entertainment product for purchase and/or rent on optical media, such as DVD and/or Blu-ray disc.

1.7.　"Internet Transmission" shall mean the transmission of data via Internet Protocol, including without limitation through use of client software contained on a Blu-ray disc or other optical media.

1.8.　"License Fees" shall mean, collectively, as set forth in more detail in Section 4.1.

1.9.　"Licensed Languages" shall mean, for each Title hereunder, (i) its original language, (ii) neutral or Mexican Spanish (in subtitled form (and, if available, dubbed form) if the original language is other than Spanish), and (iii) Brazilian Portuguese (in subtitled form, if available (and, if available, dubbed form) if the original language is other than Brazilian Portuguese).

1.10.　"Netflix-Enabled Device" or "NED" shall mean any device capable of receiving data via Internet Transmission, subject to the security and copy protection specifications set forth in Section 2.5 or otherwise agreed to by the parties, including without limitation (i) a desktop or laptop computer; (ii) a television set; (iii) a set top box, including a box that offers an integrated personal digital video recorder (DVR); (iv) a DVD and/or Blu-ray player; (v) a game console; (vi) a portable device, including without limitation a mobile phone or tablet; or (vii) a device with a web browser interface or other like capability.

1.11.　"Netflix Service" shall mean a global subscription service that provides subscribers with on-demand access to movies and television content, and delivers such content through Internet Transmission to NEDs (including User Interfaces on same) and/or, currently in the United States only, in optical disc format (e.g., DVD, Blu-ray).

1.12.　"Pay Per View" or "PPV" shall mean the delivery and/or exhibition of a motion picture, television show or other entertainment product, where the timing and/or selection of same is pre-determined, and not at the consumer's discretion, where the consumer is required to view the content over a limited period of time, and for which the consumer is charged a transactional fee.

1.13.　"Pay TV" shall mean the delivery and/or exhibition of a motion picture, television show or other entertainment product by means of cable, satellite or any other electronic or non-tangible means (whether analog or digital, or via the Internet or any other electronic or non-tangible medium now known or hereafter devised) where the consumer is charged a recurring fee and/or periodic access charge in addition to or in a greater amount than any fee payable in order to receive Basic TV, regardless of whether such exhibition is on a regularly scheduled basis or made available to the viewer on an on demand basis at the consumer's discretion.

1.14.　"Source Material" shall mean the source files for the Titles and associated trailers, artwork, promotional materials and metadata (including without limitation audio and closed captioning files), the delivery specifications for which are detailed in Schedule B attached hereto.

1.15.　"Start Date" shall mean, for each Title, the date such Title may first be made available for exhibition on and distribution, as detailed on Schedule A attached hereto or, on the notifications Licensor shall provide to Netflix pursuant to Section 3.1.3.

1.16.　"Subscription Video-on-Demand" or "SVOD" shall mean the delivery and/or exhibition of motion pictures, television and/or other entertainment products on a commercially uninterrupted basis where the consumer is charged a recurring fee and/or periodic access charge for the service.

1.17.　"Taxes" shall mean all federal, state, local, foreign and other net income, gross income, gross receipts, sales, use, value added, goods and services, consumption, ad valorem, transfer, franchise, profits, withholding, payroll, excise, stamp, real or personal property, customs, duties or other taxes, fees, assessments or charges of any

Exhibit 6 Page 33

JJMT-SEC-0003899

kind whatsoever, including any related penalties and interest, imposed by any federal, territorial, state, local, or foreign government or any agency or political subdivision of any such government.

1.18. "Term" shall mean the period commencing on the Effective Date and ending on the expiration date of the last to expire Title License Period.

1.19. "Territory" shall mean the following countries and each of their respective territories, possessions, commonwealths, and trusteeships:

Mexico;

Central America, including Belize, Costa Rica, Guatemala, El Salvador, Honduras, Nicaragua and Panamá;

South America, including Argentina, Bolivia, Brazil, Chile, Colombia, Ecuador, Paraguay, Peru, Uruguay and Venezuela; and

The Caribbean Basin Islands, including Anguilla, Antigua, Barbuda, Aruba, Barbados, British Virgin Islands, Dominica, Dominican Republic, Grenada, Guadeloupe, Haiti, Jamaica, Martinique, Montserrat, the Netherland Antilles, St. Kitts and Nevis, St. Lucia, St. Vincent and the Grenadines, Trinidad, Tobago, and the Turk and Caicos Islands.

1.20. "Theatrical" shall mean the exhibition of a motion picture, television show or other entertainment product or program (regardless of the means of delivery) in conventional, drive-in or special format (e.g., iMax) theaters that are open to the general public and for which an admission fee is charged.

1.21. "User Interfaces" shall mean web applications built using Application Programming Interfaces (commonly known as APIs) released by Netflix, which applications enable subscribers and potential subscribers to link to or otherwise use the Netflix Service on NEDs.

1.22. "Video-on-Demand" or "VOD" shall mean the delivery and exhibition of a motion picture, television show or other entertainment product, where the timing and/or selection of same is not scheduled, but rather is at the consumer's discretion, where the consumer can view the content over a limited period of time, and for which the consumer is charged a transactional fee.

1.23. "Years" shall mean three (3) successive periods of twelve (12) calendar months during the Term, the first of which shall begin on as detailed on Schedule A.

## 2. Grant of Licenses.

2.1. Title License.

2.1.1. Licensor grants to Netflix during the Term the exclusive right and license to exhibit and distribute the Title (and associated Source Material) in any or all of the Licensed Languages within the Territory solely by way of Internet Transmission via SVOD and AVOD, the Netflix Service to NEDs (including User Interfaces on same).

2.1.2. Licensor also grants to Netflix during the Term a limited, non-exclusive right and license to copy, install, compress, uncompress, encode, encrypt, decode, decrypt, display, use, cache, store and transmit the Titles (and associated Source Material) for purposes of such approved exhibition and distribution.

2.2. Marketing and Promotion.

2.2.1. Trademark License.  Licensor grants to Netflix during the Term a limited, non-exclusive right and license to copy, install, display, use, cache, store, transmit, exhibit and distribute Licensor's trademark(s) and logo(s) identified on Schedule

Exhibit 6 Page 34

JJMT-SEC-0003900

C (collectively, "Licensor Marks") for purposes of exercising its rights under this Section 2.

2.2.2. Marketing; Pre-promotion. Subject to Section 5.4, Netflix may, commencing sixty (60) calendar days prior to each Title's Start Date, market and promote the availability of such Title through the any Service here granted.

2.2.3. Introductory Segments; Promotion To Non-Subscribers. Licensor grants to Netflix during the Term a limited, non-exclusive right and license to cut each Title to create short promotional clips, each of which shall consist of no more than three (3) consecutive minutes in length of a Title, an "Introductory Segment". Licensor further grants to Netflix during the Term a limited, non-exclusive right and license to (a) exhibit and distribute, solely by way of Internet Transmission, Source Material (excluding Titles) and Introductory Segments to subscribers and potential subscribers for purposes of marketing and promoting the availability of the Titles through the Netflix Service and (b) copy, install, compress, uncompress, encode, decode, encrypt, decrypt, display, use, cache, store and transmit such materials for purposes of such approved exhibition and distribution. For the avoidance of doubt, Netflix need not encrypt Introductory Segments or trailers.

2.3. Encryption; Copy Protection. Netflix shall, at all times during the Term, implement security and copy protection technologies with respect to each Title, including geo-filtering and encryption technologies, that are at least as protective as the then-current industry standard in the Territory and which shall be no less protective than those provided by Netflix to other platforms in the Territory. Once terminated this Agreement by any cause, Netflix shall destroy, eliminate and/or return to Licensee any and all protection copy.

2.4. Geo-filtering. Netflix shall, at all times during the Term, implement geo-filtering technology to restrict access to Titles, via the Netflix Service, to subscribers within the Territory that is at least as protective as the then-current industry standard in the Territory and which shall be no less protective than those provided by Netflix to other platforms in the Territory. Notwithstanding the foregoing, Licensor acknowledges that Netflix cannot guarantee that current geo-filtering technology shall be effective in every instance.

2.5. For the avoidance of doubt, Netflix may offer the Netflix Service, including the Titles licensed hereunder, on NEDs where a subscriber is required to use a third party service (including without limitation a User Interface) and/or make payment to such third party to use the Netflix Service (whether such payment is for an additional charge in order to access the Netflix Service and/or for the relevant subscription fee for the Netflix Service itself). Such third parties may also offer interactive features, such as on-screen chat functionality or simultaneous or coordinated viewing. By way of example only, the Netflix Service may be offered through a game console such as the Microsoft Xbox, wherein use of the Netflix Service by subscribers through such NED requires the payment of a recurring, material fee to Microsoft Corporation and/or payment of the relevant Netflix Service subscription fee to Microsoft Corporation.

2.6. Notwithstanding anything to the contrary in this Agreement, but without in any way limiting Netflix's security and related obligations pursuant to Sections 2.5 and 2.6 or Netflix's indemnification obligations pursuant to Section 6.3, Netflix shall not be responsible or liable for any acts or omissions of, or resulting from a consumer's use of, a third party NED and/or any third party software (including any User Interface).

2.7. Exclusivity; Holdbacks. Netflix shall be the exclusive SVOD and AVOD licensee in the Territory during such Title's Title License Period. Further, during the period commencing on the first day of the Term and continuing through the expiration of the Title License Period, as applicable, Licensor (and its Affiliates) shall not, and shall not license or permit any third party to, license, exhibit, distribute or otherwise

Exhibit 6 Page 35

JJMT-SEC-0003901

exploit such Title in the Territory other than on a Theatrical, Home Video, VOD, or purely EST, (e.g., no Basic TV exploitation, no Pay TV exploitation, no SVOD exploitation, no AVOD).  Holdback against Free TV and Basic Cable only during the first 18 months. Licensor acknowledges that this provision and Licensor's performance of its obligations under this Section is essential to Netflix and its willingness to enter into this Agreement.

3.   **License Fees.**

3.1.   License Fees.  Netflix shall pay Licensor the License Net Fee of $4,200,000.00 (Four Million Two Hundred Thousand US Dollars and 00/100), including Taxes and withholdings, agreeing both parties that any and all discounts, withholdings, taxes or similar will be absorbed by the Netflix.

3.2.   Payment Details.  License Fee shall be due and payable as follows: the amount of $4,200,000.00 (100%) for two (2) Titles due 365 days after the delivery of the required materials as established in this Agreement and as defined on Schedule A.

3.3.   Taxes. Each party shall, as set forth in more detail in Section 5, indemnify the other for failure to pay any Taxes payable by such party pursuant to this Section and/or applicable law.

4.   **Delivery.**

4.1.   Source Material.  Licensor shall create and deliver, at its sole expense, Source Material for each Title set forth on Schedule A as of the Effective Date to Netflix no later than ninety (90) calendar days prior to the applicable Start Date or such other date agreed to in writing by the parties.  Source Material shall be loaned to Netflix for the purpose of encoding and shall be, at Licensor's option, either destroyed or, with written notice, returned to Licensor within ninety (90) calendar days of accepted delivery.  Licensor shall also provide, at Netflix's request, accurate music cue sheets for each Title.

4.2.   Specifications.  All Source Material shall be provided to Netflix in accordance with the specifications set forth in, and accompanied by all information required by, Schedule B.  For the avoidance of doubt, in the event that Source Material is provided in encrypted format, including for example on DVD, Netflix shall be permitted to decrypt such media as necessary prior to encoding and/or encode directly from such media.  Notwithstanding anything to the contrary in this Agreement, no advertising elements (pre-roll, bugs, bumpers, placards, etc.) or overlay branding (either Licensor's or any other third party's) shall be included before, after or within any Source Material for a Title delivered hereunder. Source Material shall be delivered in the highest quality and resolution available to Licensor (e.g., if not available in 1080p, then delivered in 1080i, or if not available in 1080i, then delivered in 720p), including without limitation High Definition

4.3.   Acceptance.  Upon Netflix's receipt of the Source Material for a Title, Netflix shall have thirty (30) calendar days in which to send Licensor written notice of its acceptance ("Notice of Acceptance") or rejection ("Notice of Rejection") of the Source Material for that Title, such acceptance or rejection to be determined by Netflix based solely upon whether such material complies with Schedule B.

4.4.   Rejection.  Upon Licensor's receipt of a Notice of Rejection, if any, Licensor shall, without delay and at its sole expense, replace the defective Source Material.  In the event that Licensor is unable to provide an acceptable Source Material replacement, Netflix shall not be obligated to pay any License Fee with respect to the relevant Title.

Exhibit 6 Page 36

JJMT-SEC-0003902

5. **Representations and Warranties; Indemnification; Limitation on Liability.**

5.1.    Netflix.  Netflix represents, warrants and covenants that (i) it has the full right, power, legal capacity and authority to enter into and fully perform its obligations under this Agreement; (ii) there are not now any liens, claims, encumbrances, legal proceedings, agreements or understandings which might conflict or interfere with, limit, derogate from, be inconsistent with any of Netflix's representations, warranties or covenants contained in this Section 6.1. (iii) it has satisfied and shall satisfy during the Term all third party obligations of any kind with respect to the obligations acquired by this Agreement and with any third party, including the viewers of Netflix; (iv) Netflix's distribution and other exploitation of the Titles (and associated Source Material and Introductory Segments) granted by this Agreement to Netflix shall not violate or infringe any rights of any third party, including without limitation any third party intellectual property rights, contract rights, moral rights, rights of publicity, and rights of privacy, or defame or constitute unfair competition against such third party; and (v) Netflix's distribution and other exploitation of same in accordance with this Agreement shall not violate any applicable law, rule or regulation.

5.2.    Licensor.  Licensor represents, warrants and covenants that (i) it has the full right, power, legal capacity and authority to enter into and fully perform its obligations under this Agreement, and neither it nor an Affiliate has entered into an agreement with another party which is inconsistent with the terms of this Agreement or would otherwise prevent Licensor from fulfilling its obligations as to the Titles or under this Agreement; (ii) it has and shall maintain during the Term all necessary rights, titles, authorizations, consents and interests, including without limitation from all third party rights holders for each Title, necessary to grant Netflix the licenses granted in this Agreement, including without limitation the right to license to Netflix, on an exclusive basis in accordance with Section 3.2, the Titles designated and delivered by Licensor hereunder; (iii) it has satisfied and shall satisfy during the Term all third party obligations of any kind with respect to the Titles (and associated Source Material and Introductory Segments) and their distribution and exploitation in accordance with this Agreement, including without limitation all guild residuals and participations, and Netflix shall have no obligation for any such past, current or future charges or similar payments; (iv) Netflix's distribution and other exploitation of the Titles (and associated Source Material and Introductory Segments) and Licensor Marks in accordance with this Agreement shall not violate or infringe any rights of any third party, including without limitation any third party intellectual property rights, contract rights, moral rights, rights of publicity, and rights of privacy, or defame or constitute unfair competition against such third party; and (v) the Titles (and associated Source Material and Introductory Segments) and Netflix's distribution and other exploitation of same in accordance with this Agreement shall not violate any applicable law, rule or regulation.

5.3.    Indemnification.

5.3.1.    Licensor will defend, indemnify and hold harmless Netflix, its directors, officers and employees from any and all loss, damage, claim, liability or expense (including legal fees and costs) actually incurred as a result of a third party claim ("Claim") to the extent arising out of a breach or alleged breach of the representations and warranties made in Section 6.1 or (ii) any failure by Licensor to pay any Taxes required to be paid to any governmental entity on monies earned by Licensor hereunder or as a result of Licensor's performance of its obligations hereunder.

5.3.2.    Netflix will defend, indemnify and hold harmless Licensor, its directors, officers, employees from any and all Claim to the extent arising out of a breach or alleged breach of (i) the representations and warranties made in Section 6.2 and/or (ii) any failure by Netflix to pay any Taxes required to

Exhibit 6 Page 37

JJMT-SEC-0003903

be paid by Netflix to any governmental entity on monies earned by Netflix hereunder or as a result of Netflix's performance of its obligations hereunder.

**6. Confidentiality.**

6.1 Confidential Information.  Each party acknowledges and agrees that all business and technical information provided to it by the other party pursuant to this Agreement constitutes confidential and/or proprietary information of the other party ("Confidential Information").  Confidential Information shall includes all oral, written or recorded confidential and/or proprietary information about or related to the disclosing party or its business, including without limitation the terms and conditions of this Agreement.  Notwithstanding the foregoing, Confidential Information does not include information that (i) is or becomes publicly available without breach of this Agreement; (ii) can be shown by documentation to have been known to the receiving party prior to its receipt from the disclosing party; (iii) is rightfully received from a third party who did not acquire or disclose such information by a wrongful or tortious act; (iv) can be shown by documentation to have been developed by the receiving party without reference to any Confidential Information; or (v) that the receiving party becomes legally obligated to disclose to a governmental entity with jurisdiction over it.

6.2 Use of Confidential Information.  Neither party shall use the other's Confidential Information for its own use or for any purpose other than as necessary to perform or enforce its rights and/or obligations under this Agreement or as required by law, or disclose such information to any third party (except for attorneys, accountants, and/or the third party contractors identified in Section 9.3, provided such parties have reason to know such information and are bound to a confidentiality agreement at least as protective as this Section 7).  Each party shall take all reasonable measures to protect the secrecy of and avoid disclosure of Confidential Information, which measures shall be no less than reasonable care and shall include all of those measures that the receiving party uses to protect its own Confidential Information.  This Section 7 shall survive expiration or earlier termination of this Agreement.

**7. Termination.**

7.1.    Either party may terminate this Agreement:

7.1.1.  in the event of a material uncured breach or default by the other party of any of its obligations under this Agreement, provided that (i) notice is provided to the other party in writing and (ii) such breach or default is not cured within thirty (30) calendar days following the date such notice is deemed given, unless such breach or default is by nature uncurable in which case this Agreement shall be terminable on the date of notice; or

7.1.2.  in the event that the other party (i) institutes or otherwise becomes a party, voluntarily or involuntarily, to a proceeding alleging or pertaining to the insolvency or bankruptcy of that party; (ii) is dissolved or liquidated; (iii) makes an assignment of its material assets for the benefit of creditors; and/or (iv) initiates or is subject to reorganization proceedings.  This Agreement shall be terminable on the date written notice is deemed given to such party.

7.2.    No Waiver.  Waiver by either party of a single breach or default or a succession of breaches or defaults shall not deprive such party of the right to terminate this Agreement by reason of any subsequent breach or default.

Exhibit 6 Page 38

JJMT-SEC-0003904

7.3.    Effect of Termination or Expiration.  Upon termination or expiration of this Agreement, the licenses granted hereunder shall immediately terminate. Nothing herein shall be construed to release either party from any obligation that matured prior to the effective date of such termination or expiration (or which may continue beyond such termination or expiration) or to relieve the defaulting party from any and all liabilities at law or in equity to the other for breach of this Agreement.  Further, in the event that this Agreement is terminated due to a material breach or default of Licensor, Licensor shall refund or credit to Netflix, at Netflix's option and within thirty (30) calendar days of the effective date of such termination, a prorated amount of the aggregate License Fees paid to Licensor, calculated as of the effective date of such termination and based upon the amount of time remaining in the relevant Title License Periods.

7.4.    Survival.  Those rights and obligations, which by their very nature are intended to survive termination or expiration of this Agreement, shall survive, including without limitation Sections 1, 2.8, 4.3, 6.3, 6.4, 7, and 8.

## 8.  General Provisions.

8.1.    Governing Law; Dispute Resolution.  This Agreement was fully negotiated and entered into in, and shall be governed by and construed and enforced in accordance with the federal laws of United States of Mexico without regard to its rules on conflict of laws or any other rules that would result in the application of a different body of law.  The parties consent to the exclusive jurisdiction and venue of the Federal and State Courts located in Mexico, Federal District for purposes of any proceeding arising out of or relating to this Agreement.

8.2.    Third Party Contractors.  Netflix may use third party contractors (e.g., backend fulfillment providers that encode, encrypt, store and/or host content) to exercise its rights and fulfill its obligations pursuant to Section 2; provided, however, that Netflix shall be fully responsible for any act or omission, or failure of any right or obligation of this Agreement by such a contractor in the event that such an act, failure or omission, if performed by Netflix instead of such contractor, would constitute a breach by Netflix of this Agreement.

8.3.    Notice.  Notices and other communications required or permitted to be given hereunder shall be given in writing and delivered in person, sent via certified mail or email, or delivered by nationally-recognized courier service, properly addressed and stamped with the required postage, if applicable, to the applicable individuals and addresses specified in the signature block below. Notice shall be deemed effective upon receipt.

8.4.    Assignment.  Neither this Agreement nor any rights, licenses or obligations hereunder may be assigned by either party without the prior written approval of the non-assigning party, which shall not be unreasonably withheld or delayed.  Notwithstanding the foregoing, either party may assign this Agreement to any parent of such party, wholly-owned subsidiary of such party, or any acquirer of all or of substantially all of such party's equity securities or assets, provided that such party provides the non-assigning party with prompt written notice.  Any purported assignment not in accordance with this section shall be void.  Subject to the foregoing, this Agreement will benefit and bind the parties' successors and assigns.

8.5.    Severability.  If any provision of this Agreement, other than a provision going to the essence of the Agreement, is held to be unenforceable pursuant to

Exhibit 6 Page 39

JJMT-SEC-0003905

Section 9.1, such decision shall not affect the validity or enforceability of any other provision of this Agreement. Any provision of this Agreement held invalid or unenforceable shall, to the extent practicable, be substituted with a valid and enforceable provision that achieves the results contemplated by the parties in the original provision.

8.6.   Headings. The headings of Sections and subsections in this Agreement are provided for convenience only and shall not affect its construction or interpretation.

8.7.   Counterparts. This Agreement may be executed in two counterparts, each of which will be deemed to be an original copy of this Agreement and all of which together shall constitute one and the same Agreement.

8.8.   Entire Agreement. This Agreement supersedes all prior or contemporaneous negotiations and agreements (whether oral or written) between the parties with respect to the subject matter thereof and constitutes, along with its Exhibits, a complete and exclusive statement of the terms and conditions of the Agreement between the parties with respect to such subject matter. This Agreement may not be amended or modified except by the written agreement of both parties. The language of this Agreement is English, and any translations shall have no effect and shall not be binding.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives as of the date first written above.

1INMM CAPITAL LLC                                    NETFLIX INC.

By: _____                          By: _____
Name: Zachary Horwitz                                Name: Funa Maduka
Title: MANAGING PARTNER                              Title: VP, Content Acquisition

Exhibit 6 Page 40

JJMT-SEC-0003906

**Schedule A-1**
**Titles**

| | |
|---|---|
| TITLE: | YULI |
| YEAR: | 2019 |
| START DATE: | MARCH 04TH, 2019 |
| LICENSE PERIOD: | 36 MONTHS **EXCLUSIVE** for AVOD and SVOD; 18 months for any other licensed right according to the terms conditions of the Agreement. |
| LICENSE PLATFORM: | SVOD, PAY TV, BASIC TV, AVOD |
| LICENSE NET FEE: | $2,100,000.00 |
| FORMAT: | HD |
| TERRYTORY: | ALL LATIN AMERICA INCLUDING BRAZIL |

———————————————————————————————————————

| | |
|---|---|
| TITLE: | LUCIA'S GRACE |
| YEAR: | 2019 |
| START DATE: | MARCH 04TH, 2019 |
| LICENSE PERIOD: | 36 MONTHS **EXCLUSIVE** for AVOD and SVOD; 18 months for any other licensed right according to the terms conditions of the Agreement. |
| LICENSE PLATFORM: | SVOD, PAY TV, BASIC TV, AVOD |
| LICENSE NET FEE: | $2,100,000.00 |
| FORMAT: | HD |
| TERRYTORY: | ALL LATIN AMERICA INCLUDING BRAZIL |

———————————————————————————————————————

Exhibit 6 Page 41

JJMT-SEC-0003907

**Schedule B**
**Source Material Requirements and Specifications**

NETFLIX, INC ("NTFLX") will determine the appropriate source for it's encoding. Examples of sources are listed below. If Content Provider does not have the source NTFLX requests, then NTFLX and Content Provider will mutually agree upon the source.

Per the agreement, it is the Content Provider's obligation to deliver Source Material compliant with the specifications below to NTFLX.

*Requirements*

**Primary Digital Assets**

| File Type (in order of preference) |
|---|
| 1.  High Definition – MPEG-2 (80 Mbps) |
| 2.  Standard Definition – MPEG-2 (50 Mbps) |

We accept .mpg for MPEG-2 files. For a given title, only one contiguous file can be delivered. Titles cannot be delivered as multi-part files, i.e., if a title is 90 minutes in duration, a single file with 90-minute duration must be delivered. Two (2) files with 45-minute durations will not be accepted. Below in section *3 Primary Digital Asset Specifications* are the technical details for the acceptable formats.

**Please ensure that all files do not contain bars and tones, advertisements, slates, ratings cards, FBI warning cards, placards, overlay branding or website link callouts before, during and/or after the program. Also, no commercial blacks can be contained in the program. There are no exceptions to these requirements. All files must consist of the feature program with one (1) second of black at the head and tail of the program.**

Exhibit 6 Page 42

FOIA Confidential Treatment Requested             JJMT-SEC-0003908

## Digital Video Prerequisites

We require 16x9 (1:1 PAR for HD, 32:27 PAR for SD) versions if available. The following information and table specify the priority order in which NTFLX will accept content.

1. **16x9 (1:1 PAR for HD, 32:27 PAR for SD)**
2. **We will only accept 4x3 content if 16x9 (1:1 PAR for HD, 32:27 for SD) sources do not exist.**
3. HD sources must be in 23.976p format. 60i or 50i sources will only be accepted if feature was originally shot in 60i or 50i.
4. Please refer to the table below for quick reference.

| Preference Priority | Format | DAR | PAR | Frame Rate | Scan Type |
|---|---|---|---|---|---|
| 1 | HD 1920x1080 | 16x9 | 1:1 | 23.976 | Progressive |
| 2 | HD 1920x1080 | 16x9 | 1:1 | 25 or 29.97 or 59.94 | Interlaced or Progressive |
| 3 | HD 1280x720 | 16x9 | 1:1 | 23.976 | Progressive |
| 4 | HD 1280x720 | 16x9 | 1:1 | 25 or 29.97 or 59.94 | Progressive |
| 5 | SD 720x480 | 16x9 | 32:27 | 23.976 | Progressive |
| 6 | SD 720x480 | 16x9 | 32:27 | 25 or 29.97 | Interlaced or Progressive |
| 7 | SD 720x480 | 4x3 | 8:9 | 23.976 | Progressive |
| 8 | SD 720x480 | 4x3 | 8:9 | 25 or 29.97 | Interlaced or Progressive |

## Digital Audio Prerequisites

Titles with surround sound require 5.1 audio. When 5.1 audio is supplied an additional 2-channel Left Total + Right Total mix (2-channel stereo mix) must be supplied on the same audio track as well. We require a single audio track that contains all 8 channels (6 channels for the 5.1 and 2 channels for the LT/RT mix). We do not accept multi-track audio files.

If a conformed 5.1 audio source is not available, stereo audio (or mono audio if the program is an old black-and-white movie, documentary, etc., as long as the original source was mono) will be accepted.

We use standard channel assignments as shown below:
1. **5.1 audio + 2.0 audio channel assignments**
   a. Channel 1 – Left
   b. Channel 2 – Right
   c. Channel 3 – Center
   d. Channel 4 – LFE
   e. Channel 5 – Left Surround
   f. Channel 6 – Right Surround
   g. Channel 7 – Left Total
   h. Channel 8 – Right Total

Exhibit 6 Page 43

    **2. Stereo Comp audio only**
       a. Channel 1 – Left Total
       b. Channel 2 – Right Total

    **3. Mono Comp audio** (usually old black-and-white movies, etc.)
       a. Channel 1 – Mono Comp
       b. Channel 2 – Mono Comp

Primary Digital Asset Specifications

**MPEG-2 Specifications**

## High Definition – MPEG-2 (80 Mbps)

1. **Video Codec:** MPEG-2
2. **Profile ID:** High Profile
3. **Level ID:** High Level
4. **Video Bitrate:** 80 megabits
5. **Resolution:**
    a. 1920x1080
    b. 1280x720
6. **Audio Codec:**
    **a. Multi-Channel Assignment** (if available)
      i. Acceptable audio codecs
        1. Multi-channel PCM – 16bit, 48 kHz (Little Endian)
        2. Multi-channel AES3 LPCM (302m) – 16 bit, 48 kHz
      ii. Channel Mapping
        1. Channel 1 – Left
        2. Channel 2 – Right
        3. Channel  3 – Center
        4. Channel  4 – LFE
        5. Channel  5 – Left Surround
        6. Channel  6 – Right Surround
        7. Channel  7 – Left Total
        8. Channel  8 – Right Total
    **b. Stereo Assignment** (if multi-channel does not exist)
      i. Acceptable stereo audio codecs
        1. PCM – 16 bit, 48 kHz (Little Endian)
        2. Stereo AES3 LPCM (302m) – 16 bit, 48 kHz
        3. DVD LPCM – 16 bit, 48 kHz
        4. MPEG Layer 1 – 48 kHz, 448 kbps
      ii. Channel Mapping
        1. Channel  1 – Left Total
        2. Channel  2 – Right Total
7. **Frame rate:** *(frame rate should match source)*
    a. 23.976 progressive
    b. 25.00 progressive
    c. 25.00 interlaced
    d. 29.97 progressive
    e. 29.97 interlaced
    f. 59.94 progressive

Exhibit 6 Page 44

JJMT-SEC-0003910

8. **Aspect Ratio:**
   a. 1:1 square pixels
9. **Intra DC Precision:** 10-bit
10. **Chroma Format:** 4:2:2
11. **GOP Structure:** I-frame ONLY
12. **Closed Captioning:** As defined in section *3.3 Closed Captioning* below
13. **Stream Type:** Transport Stream

## Standard Definition – MPEG-2 (50 Mbps)

1. **Video Codec:** MPEG-2
2. **Profile ID:** High Profile
3. **Level ID:** High Level
4. **Video Bitrate:** 50 megabits
5. **Resolution:**
   a. NTSC or Film: 720x480
   b. PAL: 720x576
6. **Audio Codec:**
   a. PCM – 48 kHz or 44.1 kHz, 16-bit, stereo (Little Endian)
   b. DVD LPCM – 48 kHz, 16-bit, stereo
   c. MPEG Layer 1 – 48 kHz or 44.1 kHz, 16-bit, stereo with minimum data rate of 128 kbps
7. **Frame rate:** *(please ensure all files are de-interlaced, or have had Inverse-Telecine applied, to make sure the content is **progressive** and **not interlaced**)*
   a. 23.976 progressive
   b. 25.00 progressive
   c. 25.00 interlaced
   d. 29.97 progressive
   e. 29.97 interlaced
8. **Aspect Ratio:**
   a. 4x3 if standard
   b. 16x9 if anamorphic
9. **Intra DC Precision:** 10-bit
10. **Chroma Format:** 4:2:2
11. **GOP Structure:** I-frame ONLY
12. **Closed Captioning:** As defined in section *3.3 Closed Captioning* below
13. **Stream Type:** Transport Stream

### Subtitle as a Separate File

The preferred formats for subtitles are text-based WC3 Timed Text Markup Language (.dfxp) or SubRip (.srt) formats; otherwise they must be one of the acceptable formats listed below. The subtitle file must have time code that is conformed (synced) to the digital video file asset. Raster image-based subtitles will not be accepted.

Acceptable Text-Based Subtitle Files:
- DFXP
- SRT
- SAMI
- DailyScripts
- DVD Nav

Exhibit 6 Page 45

JJMT-SEC-0003911

- Softitler

Please ensure all subtitle files do not contain advertisements, placards, overlay branding or website link callouts.

If your text-based subtitle format is not listed above please contact NTFLX to discuss other options.

Please follow the file-naming convention specified in section *5 File-Naming Conventions*

**Closed Captioning**

## Closed Captions as Ancillary Data

This is the preferred method of delivery. The primary closed caption data must be carried within the video stream as Line21 data. For MPEG-2 video, the Line21 captions must be carried in the picture user data, as defined in "ATSC Standard: Digital Television Standard (A/53), Revision D, section 5.2."

Please ensure all caption files do not contain advertisements, placards, overlay branding or website link callouts.

## Closed Captioning as Separate File

If closed captioning must be delivered as a separate file, it must be submitted in one of the acceptable formats listed below. The closed caption file must have time code that is conformed (synced) to the digital video file asset. Raster image-based closed captioning will not be accepted.

Acceptable Closed Caption Files:
- SCC
- DFXP
- DailyScripts
- SDI Media
- Softitler
- DVD Nav

Please ensure all caption files do not contain advertisements, placards, overlay branding or website link callouts.

If your closed caption format is not listed above please contact NTFLX to discuss other options.

Please follow the file-naming convention specified in section *5 File Naming Conventions*

***Secondary Digital Assets Specifications***

**Alternate Language Audio as a Separate File**

If alternate language audio tracks are available, then they should be conformed to the primary digital audio/video asset delivered. Acceptable formats for alternate language audio tracks are stereo or multichannel AAC (in an MP4 wrapper) or AES3 LPCM audio

Exhibit 6 Page 46

JJMT-SEC-0003912

(in a MPEG-2 Transport Stream, .mpg). Either format should be encoded at the highest possible bitrate to maintain fidelity. Please follow the file-naming convention described below.

### Acceptable Alternate Language Audio Formats

1. **Audio Codec and Container:**
   a. AAC (Low Complexity) in an MP4 container (.mp4)
2. **Bitrate:** Highest bitrate possible
3. **Sample rate:** 44.1 kHz or 48 kHz
4. **5.1 Audio Channel Mapping:**
   a. Channel 1 – Left
   b. Channel  2 – Right
   c. Channel  3 – Center
   d. Channel  4 – LFE
   e. Channel  5 – Left Surround
   f. Channel  6 – Right Surround
5. **2.0 Audio Channel Mapping:**
   a. Channel 1 – Left Total
   b. Channel 2 – Right Total

***File-Naming Conventions***

**Primary Video Asset File-Naming**

The file-naming convention for the MPEG-2 file is as follows:
**[movieID]_[framerate]_[aspectratio]_[bitrate]_[countrycode].mpg**

The country code is used to specify for which country the asset has rights. If the asset has rights for a specific country, then the 2-letter country code should be used as defined by the ISO 3166-1-alpha-2 code specifications (http://www.iso.org/iso/english_country_names_and_code_elements). If the asset has global rights, then the word "global" should be used in place of the 2-letter country code.

### Example for High-Definition Files

60011152_24_178_80_us.mpg
60028202_60i_185_80_ca.mpg
60028204_60p_178_80_global.mpg

### Example for Standard-Definition Files

60028202_24_235_50_fr.mpg

**Alternate Language Audio File-Naming**

The audio filename should follow the same file-naming convention as the primary asset file name, with the addition of channel mapping with the file name:

**[movieID]_[framerate]_[aspectratio]_[channel1]_[channel2]_..._[channelX]_[2letterLanguageCode].[ext]**

Exhibit 6 Page 47

JJMT-SEC-0003913

Please use the 2-letter language codes as defined in the ISO 639-1 specifications (http://www.loc.gov/standards/iso639-2/php/code_list.php).

The filename should match the channel mapping of the audio file.

Examples:
70106666_24_178_80_L_R_C_Lfe_Ls_Rs_ca.mp4
70106666_24_178_80_LT_RT_fr.mpg
70106667_30_178_80_L_R_C_Lfe_Ls_Rs_es.mp4

**Subtitle File-Naming**

The file-naming convention of closed caption file is as follows:

**[movieID]_[framerate]_[aspectratio]_[2letterLanguageCode].scc**
or named exactly the same as the video asset except with "_2letterLanguageCode" post-fixed to the filename of the secondary Closed Caption (CC) file.

Please use the 2-letter language codes as defined in the ISO 639-1 specifications (http://www.loc.gov/standards/iso639-2/php/code_list.php).

Example:
60028202_24_235_es.scc
60028202_24_235_en.srt
72343234_30_133_fr.smi
72342123_24_178_pt.smi

**Closed Caption File-Naming**

The file-naming convention of the secondary closed caption file is as follows:

**[movieID]_[framerate]_[aspectratio]_[2letterLanguageCode].scc**

Or named exactly the same as the video asset except with "_2letterLanguageCode" post-fixed to the filename of the secondary Closed Caption (CC) file.

Please use the 2-letter language codes as defined in the ISO 639-1 specifications (http://www.loc.gov/standards/iso639-2/php/code_list.php).

Example:
60028202_24_235_es.scc
60028202_24_235_en.scc
60028202_24_235_fr.scc
60028202_24_235_pt.scc

Exhibit 6 Page 48

JJMT-SEC-0003914

*Metadata*

**Movie Content Metadata**

Movie metadata is required for all content and is to be submitted via the approved NTFLX Metadata Template to NTFLX@NTFLX.TV

All dubbed and/or subtitled content is to be accompanied with the relevant metadata in the original <u>and</u> alternate language to support the source delivered.

Sample metadata files via XMLs may also be submitted and require NTFLX approval prior to acceptance.

**Primary and Secondary Assets Metadata**

If metadata for the primary and secondary assets is available via vendor API or file (XML,TXT, etc.), NTFLX will require access to the API or sample file for approval prior to acceptance.

*Delivery*

**Network Delivery via Aspera**

Currently, NTFLX uses Aspera exclusively for network delivery. The Content Supplier must push content to NTFLX via Aspera. NTFLX will not pull content.

Please be prepared to provide the following information in order to set up an Aspera account.

- Public outbound IP address(es) for which your host(s) will use for transferring files to us via Aspera.
- Technical contact (name, e-mail and phone number) of the person responsible for setting up the Aspera connection on your end.

**Directory Structure and File Organization**

*The following folder structure must be followed to organize each group of conformed assets. A group of conformed assets must consist of one audio/video muxed primary digital asset and any of its other conformed digital assets.*

*Folder Structure of external hard drive:*

*E:.*
*+---[NFLXMovieID] – (directory)*
*        [DigitalAsset1a] – (file)*
*        [DigitalAsset1b] – (file)*
*        [DigitalAsset1c] – (file)*

*Example:*
*E:.*
*+---61234123*
*|   61234123_24_178_80_us.mpg*
*|   61234123_24_178_80_en.scc*
*|*

Exhibit 6 Page 49

JJMT-SEC-0003915

```
+---62345234
|   62345234_24_235_80_us.mpg
|
+---7712332
|   7712332_60i_133_80_en.scc
|   7712332_60i_133_80_es.srt
|   7712332_60i_133_80_us.mpg
|
+---79661231
    79661231_30_178_50_ca.mpg
    79661231_30_178_50_en.scc
    79661231_30_178_50_fr.srt
    79661231_30_178_50_LT_RT_es.mp4
    79661231_30_178_50_L_R_C_Lfe_Ls_Rs_fr.mp4
```

*Artwork*

High-resolution images are required for every title and must be submitted a minimum of 30 days in advance of licensing start date to NTFLX via any of these options:

    a.   Vendor-provided website

    b.   FTP (must request access from NTFLX)

    c.   Email: alebrije@alebrije.tv

Artwork is accepted in original and bilingual language formats for all content.

File-naming convention:
[NTFLXMovieID].png (or .tiff or .jpg)

If NTFLX movie ID not known, use movie title:
[MovieTitle].png (or .tiff or .jpg)

Examples:
60028202.jpg
Terminator2.jpg

Below are the requirements for submitting artwork to NTFLX. We seek the highest quality possible to ensure optimal display for the website and NTFLX-ready devices.

| Artwork Attribute | Description |
|---|---|
| Image Aspect Ratio | Box art: 1:1.40 (w:h) aspect ratio. Aspect ratio tolerance: 1:35 through 1:1.45. |
| Image Height (h) | Box art: 800 pixels minimum. Higher is better. |
| Image Width (w) | Box art: Depends on image height. For example, 570 (w) x 800 (h) when art is 1:1.40. |
| Image Resolution | 150 dpi |
| Pixel Aspect Ratio | Square (1.0) |
| Color Mode | RGB Color (8-bits/channel). Conversions from CMYK are undesirable. |
| File Format | Uncompressed (.png, .tiff, etc.). JPEGs acceptable with "maximum |

Exhibit 6 Page 50

JJMT-SEC-0003916

| | |
|---|---|
| | quality" compression. |
| Black Point | RGB 0 - 0 - 0 |
| White Point | RGB 255 - 255 - 255 |
| Color Profile | No color profiles assigned (a 2.1/2.2 gamma setting on calibrated monitors is assumed). |
| Image Area | Artwork should be two-dimensional and extend over entire image area. No extraneous graphics (borders, frames, drop shadows). |
| Graphical Elements | Art should not have graphical elements (such as Now on DVD, Widescreen, Coming Soon, Available on Blu-ray, etc.). |

Exhibit 6 Page 51

JJMT-SEC-0003917

# EXHIBIT 7

## PROMISSORY NOTE

**$ (999,619.00)**                                                                     **(6/13/19)**

Promise. 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, an corporation with addresses at ███████ █ ███████████████████ (the "Payee"), an amount equal to (NINE HUNDRED NINETY NINE THOUSAND SIX HUNDRED NINETEEN) Dollars ($999,619.00) in lawful money of the United States of America, which sum shall be due and payable on (12/13/19) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (SEVEN HUNDRED FORTY THOUSAND FIVE HUNDRED) Dollars ($740,500.00).

Prepayment Option. Maker may pay down at any time any portion of the  principal sum outstanding without any prepayment penalty.

Assignment of Rights. See Appendix A

Compounding of Unpaid Payments. The undersigned agrees that time is of the  essence and that in the event payment of principal or interest due under this Note is not  made when due, giving effect to any grace period which maybe applicable, the  outstanding balance of unpaid payments hereof shall immediately bear interest at  the rate of ten (10) percent per month, for so long as  such event of default continues.

Validity of Agreement to Conform to Law. All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 52

MOVIEFUND000268

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 53
MOVIEFUND000269

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

<u>Death of Maker</u>. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

<u>Extensions Granted by Payee.</u> All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

<u>Litigation Fees</u>. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

<u>General Provisions.</u> Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 54
MOVIEFUND000270

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.

_____                    ___06/13/19_____

1INMM Capital, LLC                          Date
Zachary Horwitz, Manager

Exhibit 7 Page 55
MOVIEFUND000271

APPENDIX A


ASSIGNMENT

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at ███████████ ███████████████████████████████ ("Assignor") and Movie Fund LLC, a Corporation located at ███████████ █ █████████████████████ ("Assignee") is dated effective as of (06/13/ 2019).

For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($999,619.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "BEHIND THE WALLS" (the "Picture") based on the original screenplay entitled "BEHIND THE WALLS" written by James Kondelik.

1.  Assignor hereby represents and warrants:

    1.1.    That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.
    1.2.    That, as of the effective date hereof, Assignor has the right to enter into this Assignment.
    1.3.    That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.  Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.  Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.  Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

5.  This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights

Exhibit 7 Page 56
MOVIEFUND000272

and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

6.  This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (13)th DAY OF JUNE 2019.

1INMM CAPITAL, LLC ("Assignor")                    MOVIE FUND LLC ("Assignee")

By: _____                    By: _____

Its: MANAGING PARTNER                             Its: _____

Exhibit 7 Page 57
MOVIEFUND000273

## PROMISSORY NOTE

**$ (1,004,304.00)**                                                                 **(6/12/19)**

Promise. 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, an corporation with addresses at (███████ ██████████████████████), (the "Payee"), an amount equal to (ONE MILLION FOUR THOUSAND THREE HUNDRED FOUR) Dollars ($1,004,304.00) in lawful money of the United States of America, which sum shall be due and payable on (12/12/19) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (SEVEN HUNDRED FORTY THOUSAND TWO HUNDRED FIFTY) Dollars ($740,250.00).

Prepayment Option. Maker may pay down at any time any portion of the  principal sum outstanding without any prepayment penalty.

Assignment of Rights. See Appendix A

Compounding of Unpaid Payments. The undersigned agrees that time is of the  essence and that in the event payment of principal or interest due under this Note is not  made when due, giving effect to any grace period which maybe applicable, the  outstanding balance of unpaid payments hereof shall immediately bear interest at  the rate of ten (10) percent per month, for so long as  such event of default continues.

Validity of Agreement to Conform to Law. All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 58
MOVIEFUND000274

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 59
MOVIEFUND000275

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

<u>Death of Maker</u>. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

<u>Extensions Granted by Payee.</u> All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

<u>Litigation Fees</u>. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

<u>General Provisions.</u> Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 60
MOVIEFUND000276

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.

_____                  ____06/12/19_____

1INMM Capital, LLC                                              Date
Zachary Horwitz, Manager

Exhibit 7 Page 61
MOVIEFUND000277

APPENDIX A

<u>ASSIGNMENT</u>

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at █████████ ███████████████████████████ ("Assignor") and Movie Fund LLC, a Corporation located at ███████ █ █ ███████████████████ ("Assignee") is dated effective as of (06/12/ 2019).

For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($1,004,304.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "DESOLATION" (the "Picture") based on the original screenplay entitled "DESOLATION" written by Matt Anderson.

1.  Assignor hereby represents and warrants:

    1.1.   That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.
    1.2.   That, as of the effective date hereof, Assignor has the right to enter into this Assignment.
    1.3.   That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.  Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.  Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.  Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

5.  This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights

Exhibit 7 Page 62
MOVIEFUND000278

and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

6.   This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (12)th DAY OF JUNE 2019.

1INMM CAPITAL, LLC ("Assignor")                    MOVIE FUND LLC ("Assignee")

By: _____              By: _____

Its: MANAGING PARTNER                            Its: _____

Exhibit 7 Page 63
MOVIEFUND000279

**PROMISSORY NOTE**

**$ (993,694.00)**                                                    **(6/13/19)**

Promise. 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, an corporation with addresses at (███████ ███████████████████), (the "Payee"), an amount equal to (NINE HUNDRED NINETY THREE THOUSAND SIX HUNDRED NINETY FOUR) Dollars ($993,694.00) in lawful money of the United States of America, which sum shall be due and payable on (12/13/19) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (SEVEN HUNDRED THIRTY NINE THOUSAND TWO HUNDRED) Dollars ($739,200.00).

Prepayment Option. Maker may pay down at any time any portion of the  principal sum outstanding without any prepayment penalty.

Assignment of Rights. See Appendix A

Compounding of Unpaid Payments. The undersigned agrees that time is of the  essence and that in the event payment of principal or interest due under this Note is not  made when due, giving effect to any grace period which maybe applicable, the  outstanding balance of unpaid payments hereof shall immediately bear interest at  the rate of ten (10) percent per month, for so long as  such event of default continues.

Validity of Agreement to Conform to Law. All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 64
MOVIEFUND000280

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 65
MOVIEFUND000281

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

Death of Maker. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

Extensions Granted by Payee. All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

Litigation Fees. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

General Provisions. Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 66
MOVIEFUND000282

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.

_____                    ____06/13/19_____

1INMM Capital, LLC                              Date
Zachary Horwitz, Manager

Exhibit 7 Page 67
MOVIEFUND000283

APPENDIX A

ASSIGNMENT

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at ███████████ ███████████████████████████ ("Assignor") and Movie Fund LLC, a Corporation located at ███████████ █ █ ████████████████ ("Assignee") is dated effective as of (06/13/ 2019).

For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($993,694.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "DON'T COME BACK FROM THE MOON" (the "Picture") based on the original screenplay entitled "DON'T COME BACK FROM THE MOON" written by DEAN BAKOPOULOS.

1.  Assignor hereby represents and warrants:

    1.1.   That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.
    1.2.   That, as of the effective date hereof, Assignor has the right to enter into this Assignment.
    1.3.   That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.  Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.  Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.  Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

Exhibit 7 Page 68
MOVIEFUND000284

5.  This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

6.  This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (13)th DAY OF JUNE 2019.

1INMM CAPITAL, LLC ("Assignor")          MOVIE FUND LLC ("Assignee")

By: _____          By: _____

Its: MANAGING PARTNER          Its: _____

Exhibit 7 Page 69
MOVIEFUND000285

**PROMISSORY NOTE**

**$ (1,002,619.00)**                                                    **(6/12/19)**

Promise. 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, an corporation with addresses at (███████ ██ ██████████████████), (the "Payee"), an amount equal to (ONE MILLION TWO THOUSAND SIX HUNDRED NINETEEN) Dollars ($1,002,619.00) in lawful money of the United States of America, which sum shall be due and payable on (12/12/19) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (SEVEN HUNDRED FORTY ONE THOUSAND FIVE HUNDRED) Dollars ($741,500.00).

Prepayment Option. Maker may pay down at any time any portion of the principal sum outstanding without any prepayment penalty.

Assignment of Rights. See Appendix A

Compounding of Unpaid Payments. The undersigned agrees that time is of the essence and that in the event payment of principal or interest due under this Note is not made when due, giving effect to any grace period which maybe applicable, the outstanding balance of unpaid payments hereof shall immediately bear interest at the rate of ten (10) percent per month, for so long as such event of default continues.

Validity of Agreement to Conform to Law. All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 70
MOVIEFUND000286

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 71
MOVIEFUND000287

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

<u>Death of Maker</u>. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

<u>Extensions Granted by Payee.</u> All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

<u>Litigation Fees</u>. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

<u>General Provisions.</u> Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 72
MOVIEFUND000288

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court sitting in the state of California, and waives any claim or defense that such forum is not convenient or proper, and consents to service of process by any means authorized by California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN TORT OR OTHERWISE.

_____          ___06/12/19_____

1INMM Capital, LLC                                    Date
Zachary Horwitz, Manager

Exhibit 7 Page 73
MOVIEFUND000289

APPENDIX A

ASSIGNMENT

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at █████████ ████████████████████████████████ and Movie Fund LLC, a Corporation located at ████████ █ █ █████████████████████████ ("Assignee") is dated effective as of (06/12/ 2019).

For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($1,002,619.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "PYEWACKET" (the "Picture") based on the original screenplay entitled "PYEWACKET" written by Adam MacDonald.

1.   Assignor hereby represents and warrants:

    1.1.   That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.

    1.2.   That, as of the effective date hereof, Assignor has the right to enter into this Assignment.

    1.3.   That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.   Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.   Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.   Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

5.   This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights

Exhibit 7 Page 74
MOVIEFUND000290

and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

6.  This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (12)th DAY OF JUNE 2019.

1INMM CAPITAL, LLC ("Assignor")                    MOVIE FUND LLC ("Assignee")

By: _____                       By: _____

Its: MANAGING PARTNER                             Its: _____

Exhibit 7 Page 75
MOVIEFUND000291

### PROMISSORY NOTE

**$ (1,004,638.00)**                                                    **(07/23/2019)**

Promise. 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, a corporation with addresses at (███████ ██████████████████), (the "Payee"), an amount equal to (ONE MILLION FOUR THOUSAND SIX HUNDRED THIRTY-EIGHT) Dollars ($1,004,638.00) in lawful money of the United States of America, which sum shall be due and payable on (01/23/2020) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (SEVEN HUNDRED FORTY-FOUR THOUSAND FIVE HUNDRED) Dollars ($744,500.00).

Prepayment Option. Maker may pay down at any time any portion of the principal sum outstanding without any prepayment penalty.

Assignment of Rights. See Appendix A

Compounding of Unpaid Payments. The undersigned agrees that time is of the essence and that in the event payment of principal or interest due under this Note is not made when due, giving effect to any grace period which maybe applicable, the outstanding balance of unpaid payments hereof shall immediately bear interest at the rate of ten (10) percent per month, for so long as such event of default continues.

Validity of Agreement to Conform to Law. All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 76
MOVIEFUND000292

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 77
MOVIEFUND000293

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

<u>Death of Maker</u>. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

<u>Extensions Granted by Payee.</u> All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

<u>Litigation Fees</u>. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

<u>General Provisions.</u> Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 78
MOVIEFUND000294

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.

_____                    _____7/23/2019_____

1INMM Capital, LLC                                              Date
Zachary Horwitz, Manager

Exhibit 7 Page 79
MOVIEFUND000295

APPENDIX A


ASSIGNMENT

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at (████████) ("Assignor") and Movie Fund LLC, a Corporation located at ( ████████ ██ ) ("Assignee") is dated effective as of (07/23/ 2019).

For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($1,004,638.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "AMONG THE SHADOWS" (the "Picture") based on the original screenplay entitled "AMONG THE SHADOWS" written by Mark Morgan.

1.  Assignor hereby represents and warrants:

    1.1.  That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.
    1.2.  That, as of the effective date hereof, Assignor has the right to enter into this Assignment.
    1.3.  That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.  Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.  Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.  Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

5.  This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

Exhibit 7 Page 80
MOVIEFUND000296

6.  This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (23)rd DAY OF JULY 2019.

1INMM CAPITAL, LLC ("Assignor")                    MOVIE FUND LLC ("Assignee")


By: _____          By: _____

Its: MANAGING PARTNER                          Its: _____

Exhibit 7 Page 81
MOVIEFUND000297

**PROMISSORY NOTE**

**$ (1,004,335.00)**                                                    **(08/05/2019)**

Promise. 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, a corporation with addresses at (███████ ███ ███████████████████ (the "Payee"), an amount equal to (ONE MILLION FOUR THOUSAND THREE HUNDRED THIRTY-FIVE) Dollars ($1,004,335.00) in lawful money of the United States of America, which sum shall be due and payable on (02/05/2020) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (SEVEN HUNDRED FORTY-SIX THOUSAND FIVE HUNDRED) Dollars ($746,500.00).

Prepayment Option. Maker may pay down at any time any portion of the principal sum outstanding without any prepayment penalty.

Assignment of Rights. See Appendix A

Compounding of Unpaid Payments. The undersigned agrees that time is of the essence and that in the event payment of principal or interest due under this Note is not made when due, giving effect to any grace period which maybe applicable, the outstanding balance of unpaid payments hereof shall immediately bear interest at the rate of ten (10) percent per month, for so long as such event of default continues.

Validity of Agreement to Conform to Law. All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 82
MOVIEFUND000298

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 83
MOVIEFUND000299

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

Death of Maker. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

Extensions Granted by Payee. All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

Litigation Fees. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

General Provisions. Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 84
MOVIEFUND000300

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.

_____            _____08/05/2019_____

1INMM Capital, LLC                                   Date
Zachary Horwitz, Manager

Exhibit 7 Page 85
MOVIEFUND000301

APPENDIX A

ASSIGNMENT

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at (███████████
███████████████████████) ("Assignor") and Movie Fund LLC, a Corporation located
at  (████████████████████) ("Assignee") is dated effective as of
(08/05/ 2019).

For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged,
Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto
Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the
universe, until assignee is paid ($1,004,335.00) at to which time all rights, title and interest of
every kind and nature revert back to Assignor and to that certain motion picture, currently entitled
"APPARITION" (the "Picture") based on the original screenplay entitled "APPARITION"
written by Waymon Boone.

1.  Assignor hereby represents and warrants:

    1.1.   That Assignor is the sole and exclusive owner of the rights and privileges granted
           or to be granted to Assignee hereunder.
    1.2.   That, as of the effective date hereof, Assignor has the right to enter into this
           Assignment.
    1.3.   That, as of the effective date hereof, no part of the rights herein conveyed has in
           any way been encumbered, conveyed, assigned, transferred or otherwise disposed
           of and all such rights are therefore free and clear of any and all liens, claims,
           charges or encumbrances whatsoever in favor of any party whatsoever.

2.  Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold
    them harmless from and against any and all claims, liability, losses, damages, costs, expenses
    (including but not limited to attorney's fees) arising out of any breach by Assignor of any
    warranty made by Assignor hereunder.

3.  Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which
    accrue after the date hereof.

4.  Assignor hereby waives the benefits of any provision of law known as "droit morale" or any
    similar law in any country of the world and agrees not to institute or permit any action or
    lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit
    morale" and Assignor agrees that Assignor shall not, under any circumstances (including
    without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the
    exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to
    Assignee or to obtain any other form of equitable relief, specific performance or otherwise,
    any right to which Assignor expressly waives.

5.  This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any
    person, firm or corporation. Assignee may assign this Assignment and the rights and services
    granted herein, together with the results and proceeds thereof, and the representations and
    warranties contained herein, to any person or entity.

Exhibit 7 Page 86
MOVIEFUND000302

6.  This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (5)th DAY OF AUGUST 2019.

1INMM CAPITAL, LLC ("Assignor")                    MOVIE FUND LLC ("Assignee")

By: _____                       By: _____

Its: MANAGING PARTNER                              Its: _____

Exhibit 7 Page 87

MOVIEFUND000303

**PROMISSORY NOTE**

**$ (1,003,639.00)**                                                                                 **(07/08/2019)**

<u>Promise.</u> 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, a corporation with addresses at (█████ █ ████████████████████), (the "Payee"), an amount equal to (<u>ONE MILLION THREE THOUSAND SIX HUNDRED THIRTY NINE</u>) Dollars (<u>$1,003,639.00</u>) in lawful money of the United States of America, which sum shall be due and payable on (<u>01/8/2020</u>) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (<u>SEVEN HUNDRED FORTY-FIVE THOUSAND FIVE HUNDRED</u>) Dollars (<u>$745,500.00</u>).

<u>Prepayment Option.</u> Maker may pay down at any time any portion of the principal sum outstanding without any prepayment penalty.

<u>Assignment of Rights.</u> See Appendix A

<u>Compounding of Unpaid Payments.</u> The undersigned agrees that time is of the essence and that in the event payment of principal or interest due under this Note is not made when due, giving effect to any grace period which maybe applicable, the outstanding balance of unpaid payments hereof shall immediately bear interest at the rate of ten (10) percent per month, for so long as such event of default continues.

<u>Validity of Agreement to Conform to Law.</u> All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 88
MOVIEFUND000304

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 89
MOVIEFUND000305

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

<u>Death of Maker</u>. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

<u>Extensions Granted by Payee.</u> All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

<u>Litigation Fees</u>. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

<u>General Provisions.</u> Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 90
MOVIEFUND000306

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.

|  |  |
|---|---|
| _____ | ____07/08/2019____ |
| 1INMM Capital, LLC | Date |
| Zachary Horwitz, Manager | |

Exhibit 7 Page 91
MOVIEFUND000307

APPENDIX A


ASSIGNMENT

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at (████████████ ████████████████████ ("Assignor") and Movie Fund LLC, a Corporation located at (██████████ █ █ ████████████) ("Assignee") is dated effective as of (07/08/ 2019).

For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($1,003,639.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "BRAHMS: THE BOY II" (the "Picture") based on the original screenplay entitled "BRAHMS: THE BOY II" written by Stacey Menear.

1.  Assignor hereby represents and warrants:

    1.1.  That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.
    1.2.  That, as of the effective date hereof, Assignor has the right to enter into this Assignment.
    1.3.  That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.  Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.  Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.  Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

5.  This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

Exhibit 7 Page 92
MOVIEFUND000308

6.  This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (8)th DAY OF JULY 2019.

1INMM CAPITAL, LLC ("Assignor")                    MOVIE FUND LLC ("Assignee")

By: _____                        By: _____

Its: MANAGING PARTNER                              Its: _____

Exhibit 7 Page 93
MOVIEFUND000309

**PROMISSORY NOTE**

**$ (997,395.00)**                                                                                  **(08/02/2019)**

Promise. 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, a corporation with addresses at (███████ █ ████████████████████ (the "Payee"), an amount equal to (NINE HUNDRED NINETY-SEVEN THOUSAND THREE HUNDRED NINETY-FIVE) Dollars ($997,395.00) in lawful money of the United States of America, which sum shall be due and payable on (02/02/2020) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (SEVEN HUNDRED THIRTY-SEVEN THOUSAND FIVE HUNDRED) Dollars ($737,500.00).

Prepayment Option. Maker may pay down at any time any portion of the principal sum outstanding without any prepayment penalty.

Assignment of Rights. See Appendix A

Compounding of Unpaid Payments. The undersigned agrees that time is of the essence and that in the event payment of principal or interest due under this Note is not made when due, giving effect to any grace period which maybe applicable, the outstanding balance of unpaid payments hereof shall immediately bear interest at the rate of ten (10) percent per month, for so long as such event of default continues.

Validity of Agreement to Conform to Law. All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 94
MOVIEFUND000310

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 95
MOVIEFUND000311

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

Death of Maker. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

Extensions Granted by Payee. All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

Litigation Fees. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

General Provisions. Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 96
MOVIEFUND000312

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.

_____                        _____08/02/2019_____

1INMM Capital, LLC                                                      Date
Zachary Horwitz, Manager

Exhibit 7 Page 97
MOVIEFUND000313

APPENDIX A


ASSIGNMENT

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at (███████████ ██████████████████████) ("Assignor") and Movie Fund LLC, a Corporation located at  (████████ █ █████████████████) ("Assignee") is dated effective as of (08/02/ 2019).


For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($997,395.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "CREATING CHAMPIONS" (the "Picture") based on the original screenplay entitled "CREATING CHAMPIONS" written by Tarshia Dutta.

1.  Assignor hereby represents and warrants:

    1.1.   That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.
    1.2.   That, as of the effective date hereof, Assignor has the right to enter into this Assignment.
    1.3.   That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.  Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.  Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.  Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

5.  This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

Exhibit 7 Page 98
MOVIEFUND000314

6.  This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (2)nd DAY OF AUGUST 2019.


1INMM CAPITAL, LLC ("Assignor")                    MOVIE FUND LLC ("Assignee")


By: _____                By: _____

Its: MANAGING PARTNER                             Its: _____

Exhibit 7 Page 99
MOVIEFUND000315

**PROMISSORY NOTE**

**$ (997,836.00)**                                                    **(08/02/2019)**

Promise. 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, a corporation with addresses at (███████ █ ████████████████████), (the "Payee"), an amount equal to (NINE HUNDRED NINETY-SEVEN THOUSAND EIGHT HUNDRED THIRTY-SIX) Dollars ($997,836.00) in lawful money of the United States of America, which sum shall be due and payable on (02/02/2020) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (SEVEN HUNDRED THIRTY-FIVE THOUSAND) Dollars ($735,000.00).

Prepayment Option. Maker may pay down at any time any portion of the  principal sum outstanding without any prepayment penalty.

Assignment of Rights. See Appendix A

Compounding of Unpaid Payments. The undersigned agrees that time is of the  essence and that in the event payment of principal or interest due under this Note is not  made when due, giving effect to any grace period which maybe applicable, the  outstanding balance of unpaid payments hereof shall immediately bear interest at  the rate of ten (10) percent per month, for so long as  such event of default continues.

Validity of Agreement to Conform to Law. All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 100
MOVIEFUND000316

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 101
MOVIEFUND000317

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

Death of Maker. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

Extensions Granted by Payee. All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

Litigation Fees. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

General Provisions. Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 102
MOVIEFUND000318

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.


THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.


_____                    _____08/02/2019_____

1INMM Capital, LLC                                              Date
Zachary Horwitz, Manager

Exhibit 7 Page 103
MOVIEFUND000319

APPENDIX A

ASSIGNMENT

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at (████████████ ████████████████████) ("Assignor") and Movie Fund LLC, a Corporation located at ( ██████ █ █████████████) ("Assignee") is dated effective as of (08/02/ 2019).

For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($997,836.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "FUNHOUSE" (the "Picture") based on the original screenplay entitled "FUNHOUSE" written by Jason William Lee.

1. Assignor hereby represents and warrants:

    1.1.   That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.

    1.2.   That, as of the effective date hereof, Assignor has the right to enter into this Assignment.

    1.3.   That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2. Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3. Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4. Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

5. This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

Exhibit 7 Page 104
MOVIEFUND000320

6. This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (2)nd DAY OF AUGUST 2019.

1INMM CAPITAL, LLC ("Assignor")                    MOVIE FUND LLC ("Assignee")

By: _____                      By: _____

Its: MANAGING PARTNER                              Its: _____

Exhibit 7 Page 105
MOVIEFUND000321

**PROMISSORY NOTE**

**$ (1,002,684.00)**                                                                                     **(09/04/2019)**

Promise. 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, a corporation with addresses at (███████ ██████████████████████), (the "Payee"), an amount equal to (ONE MILLION TWO THOUSAND SIX HUNDRED EIGHTY FOUR) Dollars ($1,002,684.00) in lawful money of the United States of America, which sum shall be due and payable on (03/04/2020) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (SEVEN HUNDRED FORTY-THREE THOUSAND FIVE HUNDRED) Dollars ($743,500.00).

Prepayment Option. Maker may pay down at any time any portion of the  principal sum outstanding without any prepayment penalty.

Assignment of Rights. See Appendix A

Compounding of Unpaid Payments. The undersigned agrees that time is of the  essence and that in the event payment of principal or interest due under this Note is not  made when due, giving effect to any grace period which maybe applicable, the  outstanding balance of unpaid payments hereof shall immediately bear interest at  the rate of ten (10) percent per month, for so long as  such event of default continues.

Validity of Agreement to Conform to Law. All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 106
MOVIEFUND000322

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 107
MOVIEFUND000323

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

<u>Death of Maker</u>. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

<u>Extensions Granted by Payee.</u> All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

<u>Litigation Fees</u>. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

<u>General Provisions.</u> Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 108
MOVIEFUND000324

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.

_____                    _____09/04/2019_____

1INMM Capital, LLC                                         Date
Zachary Horwitz, Manager

Exhibit 7 Page 109
MOVIEFUND000325

APPENDIX A


ASSIGNMENT

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at ███████ ████████████████████████████) ("Assignor") and Movie Fund LLC, a Corporation located at ( ████████ █ █ ████████████████████) ("Assignee") is dated effective as of (09/04/ 2019).

For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($1,002,684.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "INDIVISIBLE" (the "Picture") based on the original screenplay entitled "INDIVISIBLE" written by David G. Evans.

1.  Assignor hereby represents and warrants:

     1.1.    That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.

     1.2.    That, as of the effective date hereof, Assignor has the right to enter into this Assignment.

     1.3.    That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.  Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.  Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.  Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

5.  This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

Exhibit 7 Page 110
MOVIEFUND000326

6.   This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (4)th DAY OF SEPTEMBER 2019.


1INMM CAPITAL, LLC ("Assignor")                    MOVIE FUND LLC ("Assignee")


By: _____                        By: _____

Its: MANAGING PARTNER                              Its: _____

Exhibit 7 Page 111
MOVIEFUND000327

## PROMISSORY NOTE

**$ (1,008,696.00)**                                                   **(08/05/2019)**

Promise. 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, a corporation with addresses at (███████ ██ ██████████████████ (the "Payee"), an amount equal to (ONE MILLION EIGHT THOUSAND SIX HUNDRED NINETY-SIX) Dollars ($1,008,696.00) in lawful money of the United States of America, which sum shall be due and payable on (02/05/2020) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (SEVEN HUNDRED FORTY SIX THOUSAND FIVE HUNDRED) Dollars ($746,500.00).

Prepayment Option. Maker may pay down at any time any portion of the  principal sum outstanding without any prepayment penalty.

Assignment of Rights. See Appendix A

Compounding of Unpaid Payments. The undersigned agrees that time is of the  essence and that in the event payment of principal or interest due under this Note is not  made when due, giving effect to any grace period which maybe applicable, the  outstanding balance of unpaid payments hereof shall immediately bear interest at  the rate of ten (10) percent per month, for so long as  such event of default continues.

Validity of Agreement to Conform to Law. All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 112
MOVIEFUND000328

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 113
MOVIEFUND000329

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

<u>Death of Maker</u>. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

<u>Extensions Granted by Payee.</u> All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

<u>Litigation Fees</u>. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

<u>General Provisions.</u> Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 114
MOVIEFUND000330

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court sitting in the state of California, and waives any claim or defense that such forum is not convenient or proper, and consents to service of process by any means authorized by California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN TORT OR OTHERWISE.

_____                    _____08/05/2019_____

1INMM Capital, LLC                                 Date
Zachary Horwitz, Manager

Exhibit 7 Page 115
MOVIEFUND000331

APPENDIX A

<u>ASSIGNMENT</u>

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at ███████ ██████████████████████████) ("Assignor") and Movie Fund LLC, a Corporation located at ( ████████ ██ ██████████████████████) ("Assignee") is dated effective as of (08/05/ 2019).

For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($1,008,696.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "KILL CHAIN" (the "Picture") based on the original screenplay entitled "KILL CHAIN" written by Ken Sanzel.

1.  Assignor hereby represents and warrants:

    1.1.  That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.
    1.2.  That, as of the effective date hereof, Assignor has the right to enter into this Assignment.
    1.3.  That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.  Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.  Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.  Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

5.  This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

Exhibit 7 Page 116
MOVIEFUND000332

6.  This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (5)th DAY OF AUGUST 2019.

1INMM CAPITAL, LLC ("Assignor")                    MOVIE FUND LLC ("Assignee")

By: _____                        By: _____

Its: MANAGING PARTNER                              Its: _____

Exhibit 7 Page 117
MOVIEFUND000333

**PROMISSORY NOTE**

**$ (1,005,316.00)**                                                                  **(09/05/2019)**

Promise. 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, a corporation with addresses at (█████ █          ██████████████████ ), (the "Payee"), an amount equal to (ONE MILLION FIVE THOUSAND THREE HUNDRED SIXTEEN) Dollars ($1,005,316.00) in lawful money of the United States of America, which sum shall be due and payable on (03/05/2020) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (SEVEN HUNDRED FORTY-THREE THOUSAND FIVE HUNDRED) Dollars ($743,500.00).

Prepayment Option. Maker may pay down at any time any portion of the  principal sum outstanding without any prepayment penalty.

Assignment of Rights. See Appendix A

Compounding of Unpaid Payments. The undersigned agrees that time is of the  essence and that in the event payment of principal or interest due under this Note is not  made when due, giving effect to any grace period which maybe applicable, the  outstanding balance of unpaid payments hereof shall immediately bear interest at  the rate of ten (10) percent per month, for so long as  such event of default continues.

Validity of Agreement to Conform to Law. All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 118
MOVIEFUND000334

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 119
MOVIEFUND000335

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

<u>Death of Maker</u>. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

<u>Extensions Granted by Payee.</u> All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

<u>Litigation Fees</u>. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

<u>General Provisions.</u> Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 120
MOVIEFUND000336

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.

_____                    _____09/05/2019_____

1INMM Capital, LLC                                        Date
Zachary Horwitz, Manager

Exhibit 7 Page 121
MOVIEFUND000337

APPENDIX A

ASSIGNMENT

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at (███████████████) ("Assignor") and Movie Fund LLC, a Corporation located at (███████████ █ █ ████████ 101) ("Assignee") is dated effective as of (09/05/2019).

For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($1,005,316.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "K.O." (the "Picture") based on the original screenplay entitled "K.O." written by Valentine Arnaud.

1.  Assignor hereby represents and warrants:

    1.1.   That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.
    1.2.   That, as of the effective date hereof, Assignor has the right to enter into this Assignment.
    1.3.   That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.  Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.  Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.  Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

5.  This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

Exhibit 7 Page 122
MOVIEFUND000338

6.  This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (5)th DAY OF SEPTEMBER 2019.

1INMM CAPITAL, LLC ("Assignor")              MOVIE FUND LLC ("Assignee")

By: _____              By: _____

Its: MANAGING PARTNER                      Its: _____

Exhibit 7 Page 123
MOVIEFUND000339

**PROMISSORY NOTE**

**$ (1,007,198.00)**                                                          **(07/09/2019)**

Promise. 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, a corporation with addresses at (███████ ██ ████████████████), (the "Payee"), an amount equal to (ONE MILLION SEVEN THOUSAND ONE HUNDRED NINETY EIGHT) Dollars ($1,007,198.00) in lawful money of the United States of America, which sum shall be due and payable on (01/09/2020) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (SEVEN HUNDRED FORTY-TWO THOUSAND) Dollars ($742,000.00).

Prepayment Option. Maker may pay down at any time any portion of the  principal sum outstanding without any prepayment penalty.

Assignment of Rights. See Appendix A

Compounding of Unpaid Payments. The undersigned agrees that time is of the  essence and that in the event payment of principal or interest due under this Note is not  made when due, giving effect to any grace period which maybe applicable, the  outstanding balance of unpaid payments hereof shall immediately bear interest at  the rate of ten (10) percent per month, for so long as  such event of default continues.

Validity of Agreement to Conform to Law. All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 124

MOVIEFUND000340

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 125
MOVIEFUND000341

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

Death of Maker. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

Extensions Granted by Payee. All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

Litigation Fees. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

General Provisions. Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 126
MOVIEFUND000342

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.

_____          _____7/09/2019_____

1INMM Capital, LLC                                    Date
Zachary Horwitz, Manager

Exhibit 7 Page 127
MOVIEFUND000343

APPENDIX A

ASSIGNMENT

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at (███████████ ███████████████████████████████) ("Assignor") and Movie Fund LLC, a Corporation located at  (███████████ █ █████████████████████) ("Assignee") is dated effective as of (07/09/ 2019).

For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($1,007,198.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "LOST GIRLS AND LOVE HOTELS" (the "Picture") based on the original screenplay entitled "LOST GIRLS AND LOVE HOTELS" written by Catherine Hanrahan.

1.   Assignor hereby represents and warrants:

    1.1.   That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.

    1.2.   That, as of the effective date hereof, Assignor has the right to enter into this Assignment.

    1.3.   That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.   Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.   Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.   Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

5.   This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

Exhibit 7 Page 128
MOVIEFUND000344

6. This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (9)th DAY OF JULY 2019.

1INMM CAPITAL, LLC ("Assignor")        MOVIE FUND LLC ("Assignee")

By: _____        By: _____

Its: MANAGING PARTNER        Its: _____

Exhibit 7 Page 129
MOVIEFUND000345

**PROMISSORY NOTE**

**$ (1,001,942.00)**                                                                           **(07/08/2019)**

<u>Promise.</u> 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, a corporation with addresses at (███████ ██ ████████████████), (the "Payee"), an amount equal to (<u>ONE MILLION ONE THOUSAND NINE HUNDRED FORTY-TWO</u>) Dollars (<u>$1,001,942.00</u>) in lawful money of the United States of America, which sum shall be due and payable on (<u>01/8/2020</u>) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (<u>SEVEN HUNDRED FORTY-ONE THOUSAND FIVE HUNDRED</u>) Dollars (<u>$741,500.00</u>).

<u>Prepayment Option.</u> Maker may pay down at any time any portion of the  principal sum outstanding without any prepayment penalty.

<u>Assignment of Rights.</u> See Appendix A

<u>Compounding of Unpaid Payments.</u> The undersigned agrees that time is of the  essence and that in the event payment of principal or interest due under this Note is not  made when due, giving effect to any grace period which maybe applicable, the  outstanding balance of unpaid payments hereof shall immediately bear interest at  the rate of ten (10) percent per month, for so long as  such event of default continues.

<u>Validity of Agreement to Conform to Law.</u> All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 130
MOVIEFUND000346

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 131
MOVIEFUND000347

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

<u>Death of Maker</u>. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

<u>Extensions Granted by Payee.</u> All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

<u>Litigation Fees</u>. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

<u>General Provisions.</u> Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 132
MOVIEFUND000348

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.

_____            _____07/08/2019_____

1INMM Capital, LLC                                         Date
Zachary Horwitz, Manager

Exhibit 7 Page 133
MOVIEFUND000349

APPENDIX A

ASSIGNMENT

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at (███████ ████████████████████████) ("Assignor") and Movie Fund LLC, a Corporation located at  (██████████ █ █████████████████████) ("Assignee") is dated effective as of (07/08/ 2019).

For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($1,001,942.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "MARFA" (the "Picture") based on the original screenplay entitled "MARFA" written by Andy Stapp.

1.  Assignor hereby represents and warrants:

    1.1.   That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.
    1.2.   That, as of the effective date hereof, Assignor has the right to enter into this Assignment.
    1.3.   That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.  Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.  Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.  Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

5.  This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

Exhibit 7 Page 134
MOVIEFUND000350

6. This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (8)th DAY OF JULY 2019.

1INMM CAPITAL, LLC ("Assignor")                    MOVIE FUND LLC ("Assignee")

By: _____                    By: _____

Its: MANAGING PARTNER                           Its: _____

Exhibit 7 Page 135
MOVIEFUND000351

**PROMISSORY NOTE**

**$ (1,000,921.00)**                                                    **(09/05/2019)**

<u>Promise.</u> 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, a corporation with addresses at ███████ ██ ████████████████ ), (the "Payee"), an amount equal to (<u>ONE MILLION NINE HUNDRED TWENTY-ONE</u>) Dollars (<u>$1,000,921.00</u>) in lawful money of the United States of America, which sum shall be due and payable on (<u>03/05/2020</u>) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (<u>SEVEN HUNDRED FORTY-THOUSAND TWO HUNDRED FIFTY</u>) Dollars (<u>$740,250.00</u>).

<u>Prepayment Option.</u> Maker may pay down at any time any portion of the  principal sum outstanding without any prepayment penalty.

<u>Assignment of Rights.</u> See Appendix A

<u>Compounding of Unpaid Payments.</u> The undersigned agrees that time is of the  essence and that in the event payment of principal or interest due under this Note is not  made when due, giving effect to any grace period which maybe applicable, the  outstanding balance of unpaid payments hereof shall immediately bear interest at  the rate of ten (10) percent per month, for so long as  such event of default continues.

<u>Validity of Agreement to Conform to Law.</u> All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 136

MOVIEFUND000352

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 137
MOVIEFUND000353

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

<u>Death of Maker</u>. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

<u>Extensions Granted by Payee.</u> All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

<u>Litigation Fees</u>. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

<u>General Provisions.</u> Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 138
MOVIEFUND000354

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.

_____                    _____09/05/2019_____

1INMM Capital, LLC                                    Date
Zachary Horwitz, Manager

Exhibit 7 Page 139
MOVIEFUND000355

APPENDIX A

ASSIGNMENT

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at (███████████ ██████████████████████) ("Assignor") and Movie Fund LLC, a Corporation located at ( ██████████ ██ ██████████████████ ("Assignee") is dated effective as of (09/05/2019).

For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($1,000,921.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "ONCE UPON A TIME IN VENICE" (the "Picture") based on the original screenplay entitled "ONCE UPON A TIME IN VENICE" written by Mark Cullen.

1.  Assignor hereby represents and warrants:

    1.1.   That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.
    1.2.   That, as of the effective date hereof, Assignor has the right to enter into this Assignment.
    1.3.   That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.  Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.  Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.  Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

5.  This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

Exhibit 7 Page 140
MOVIEFUND000356

6.   This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (5)th DAY OF SEPTEMBER 2019.

1INMM CAPITAL, LLC ("Assignor")               MOVIE FUND LLC ("Assignee")

By: _____                By: _____

Its: MANAGING PARTNER                          Its: _____

Exhibit 7 Page 141
MOVIEFUND000357

**PROMISSORY NOTE**

**$ (1,009,261.00)**                                                        **(07/09/2019)**

<u>Promise.</u> 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, a corporation with addresses at (███████ █████████████████), (the "Payee"), an amount equal to (<u>ONE MILLION NINE THOUSAND TWO HUNDRED SIXTY-ONE</u>) Dollars (<u>$1,009,261.00</u>) in lawful money of the United States of America, which sum shall be due and payable on (<u>01/09/2020</u>) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (<u>SEVEN HUNDRED FORTY-THREE THOUSAND FIVE HUNDRED</u>) Dollars (<u>$743,500.00</u>).

<u>Prepayment Option.</u> Maker may pay down at any time any portion of the principal sum outstanding without any prepayment penalty.

<u>Assignment of Rights.</u> See Appendix A

<u>Compounding of Unpaid Payments.</u> The undersigned agrees that time is of the essence and that in the event payment of principal or interest due under this Note is not made when due, giving effect to any grace period which maybe applicable, the outstanding balance of unpaid payments hereof shall immediately bear interest at the rate of ten (10) percent per month, for so long as such event of default continues.

<u>Validity of Agreement to Conform to Law.</u> All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 142
MOVIEFUND000358

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 143
MOVIEFUND000359

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

<u>Death of Maker</u>. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

<u>Extensions Granted by Payee.</u> All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

<u>Litigation Fees</u>. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

<u>General Provisions.</u> Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 144
MOVIEFUND000360

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.


THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.


_____                    _____7/09/2019_____

1INMM Capital, LLC                              Date
Zachary Horwitz, Manager

Exhibit 7 Page 145
MOVIEFUND000361

APPENDIX A

ASSIGNMENT

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at ██████████ ██████████████████████████ ) ("Assignor") and Movie Fund LLC, a Corporation located at  ( █████████ ██ █████████████████ ) ("Assignee") is dated effective as of (07/09/ 2019).

For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($1,009,261.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "ONLY" (the "Picture") based on the original screenplay entitled "ONLY" written by Takashi Doscher.

1.  Assignor hereby represents and warrants:

   1.1.   That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.
   1.2.   That, as of the effective date hereof, Assignor has the right to enter into this Assignment.
   1.3.   That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.  Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.  Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.  Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

5.  This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

Exhibit 7 Page 146
MOVIEFUND000362

6.   This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (9)th DAY OF JULY 2019.


1INMM CAPITAL, LLC ("Assignor")                    MOVIE FUND LLC ("Assignee")


By: _____                    By: _____

Its: MANAGING PARTNER                              Its: _____


Exhibit 7 Page 147
MOVIEFUND000363

PROMISSORY NOTE

**$ (1,004,559.00)**                                                                                 **(09/04/2019)**

Promise. 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, a corporation with addresses at (███████ ██         ███████████████), (the "Payee"), an amount equal to (ONE MILLION FOUR THOUSAND FIVE HUNDRED FIFTY-NINE) Dollars ($1,004,559.00) in lawful money of the United States of America, which sum shall be due and payable on (03/04/2020) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (SEVEN HUNDRED FORTY-FOUR THOUSAND EIGHT HUNDRED) Dollars ($744,800.00).

Prepayment Option. Maker may pay down at any time any portion of the  principal sum outstanding without any prepayment penalty.

Assignment of Rights. See Appendix A

Compounding of Unpaid Payments. The undersigned agrees that time is of the  essence and that in the event payment of principal or interest due under this Note is not  made when due, giving effect to any grace period which maybe applicable, the  outstanding balance of unpaid payments hereof shall immediately bear interest at  the rate of ten (10) percent per month, for so long as  such event of default continues.

Validity of Agreement to Conform to Law. All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 148
MOVIEFUND000364

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

<u>Maker's Default</u>. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

<u>Collection Costs</u>. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

<u>Waiver of Notice</u>. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 149
MOVIEFUND000365

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

<u>Death of Maker</u>. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

<u>Extensions Granted by Payee.</u> All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

<u>Litigation Fees</u>. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

<u>General Provisions.</u> Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 150
MOVIEFUND000366

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.

_____                          _____09/04/2019_____

1INMM Capital, LLC                                         Date
Zachary Horwitz, Manager

Exhibit 7 Page 151
MOVIEFUND000367

APPENDIX A


ASSIGNMENT

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at (████████) ("Assignor") and Movie Fund LLC, a Corporation located at  (████████ █ █ ████████) ("Assignee") is dated effective as of (09/04/2019).


For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($1,004,559.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "REBORN" (the "Picture") based on the original screenplay entitled "REBORN" written by Hai Lung Li.


1.  Assignor hereby represents and warrants:

    1.1.  That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.
    1.2.  That, as of the effective date hereof, Assignor has the right to enter into this Assignment.
    1.3.  That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.  Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.  Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.  Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

5.  This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

Exhibit 7 Page 152
MOVIEFUND000368

6.  This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (4)th DAY OF SEPTEMBER 2019.

1INMM CAPITAL, LLC ("Assignor")                    MOVIE FUND LLC ("Assignee")


By: _____            By: _____

Its: MANAGING PARTNER                    Its: _____

Exhibit 7 Page 153
MOVIEFUND000369

**PROMISSORY NOTE**

**$ (1,009,459.00)**                                                      **(08/05/2019)**

Promise. 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, a corporation with addresses at (█████  █          █████████████), (the "Payee"), an amount equal to (ONE MILLION NINE THOUSAND FOUR HUNDRED FIFTY-NINE) Dollars ($1,009,459.00) in lawful money of the United States of America, which sum shall be due and payable on (02/05/2020) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (SEVEN HUNDRED FORTY SIX THOUSAND TWO HUNDRED) Dollars ($746,200.00).

Prepayment Option. Maker may pay down at any time any portion of the  principal sum outstanding without any prepayment penalty.

Assignment of Rights. See Appendix A

Compounding of Unpaid Payments. The undersigned agrees that time is of the  essence and that in the event payment of principal or interest due under this Note is not  made when due, giving effect to any grace period which maybe applicable, the  outstanding balance of unpaid payments hereof shall immediately bear interest at  the rate of ten (10) percent per month, for so long as  such event of default continues.

Validity of Agreement to Conform to Law. All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 154
MOVIEFUND000370

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 155
MOVIEFUND000371

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

<u>Death of Maker</u>. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

<u>Extensions Granted by Payee.</u> All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

<u>Litigation Fees</u>. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

<u>General Provisions.</u> Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 156
MOVIEFUND000372

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.


THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.


_____                    _____08/05/2019_____

1INMM Capital, LLC                                               Date
Zachary Horwitz, Manager

Exhibit 7 Page 157
MOVIEFUND000373

APPENDIX A


ASSIGNMENT


This assignment ("Assignment") between 1INMM CAPITAL LLC, located at (█████████ ██████████████████) ("Assignor") and Movie Fund LLC, a Corporation located at  (██████████ █ █████████████) ("Assignee") is dated effective as of (08/05/ 2019).


For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($1,009,459.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "TESLA" (the "Picture") based on the original screenplay entitled "TESLA" written by Michael Almereyda.


1.   Assignor hereby represents and warrants:

    1.1.   That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.
    1.2.   That, as of the effective date hereof, Assignor has the right to enter into this Assignment.
    1.3.   That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.   Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.   Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.   Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

5.   This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

Exhibit 7 Page 158
MOVIEFUND000374

6.  This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (5)th DAY OF AUGUST 2019.

1INMM CAPITAL, LLC ("Assignor")                    MOVIE FUND LLC ("Assignee")

By: _____                    By: _____

Its: MANAGING PARTNER                          Its: _____

Exhibit 7 Page 159
MOVIEFUND000375

**PROMISSORY NOTE**

**$ (997,713.00)**                                                                **(10/14/2019)**

<u>Promise.</u> 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, a corporation with addresses at (█████ █ ████████████████████ (the "Payee"), an amount equal to <u>NINE HUNDRED NINETY-SEVEN THOUSAND SEVEN HUNDRED THIRTEEN)</u> Dollars (<u>$997,713.00</u>) in lawful money of the United States of America, which sum shall be due and payable on (<u>04/14/2020</u>) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (<u>SEVEN HUNDRED THIRTY-EIGHT THOUSAND FIVE HUNDRED</u>) Dollars (<u>$738,500.00</u>).

<u>Prepayment Option.</u> Maker may pay down at any time any portion of the  principal sum outstanding without any prepayment penalty.

<u>Assignment of Rights.</u> See Appendix A

<u>Compounding of Unpaid Payments.</u> The undersigned agrees that time is of the  essence and that in the event payment of principal or interest due under this Note is not  made when due, giving effect to any grace period which maybe applicable, the  outstanding balance of unpaid payments hereof shall immediately bear interest at  the rate of ten (10) percent per month, for so long as  such event of default continues.

<u>Validity of Agreement to Conform to Law.</u> All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 160
MOVIEFUND000376

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 161
MOVIEFUND000377

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

<u>Death of Maker</u>. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

<u>Extensions Granted by Payee.</u> All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

<u>Litigation Fees</u>. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

<u>General Provisions.</u> Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 162
MOVIEFUND000378

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.

_____                    _____10/14/2019_____

1INMM Capital, LLC                                         Date
Zachary Horwitz, Manager

Exhibit 7 Page 163
MOVIEFUND000379

APPENDIX A

ASSIGNMENT

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at (███████████ ██████████████████████) ("Assignor") and Movie Fund LLC, a Corporation located at  (██████████ █ █ ███████████████████) ("Assignee") is dated effective as of (10/14/2019).

For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($997,713.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "CHAMPION" (the "Picture") based on the original screenplay entitled "CHAMPION" written by Yong-wan Kim.

1.  Assignor hereby represents and warrants:

    1.1.  That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.
    1.2.  That, as of the effective date hereof, Assignor has the right to enter into this Assignment.
    1.3.  That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.  Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.  Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.  Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

5.  This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

Exhibit 7 Page 164
MOVIEFUND000380

6.  This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (14)th DAY OF OCTOBER, 2019.

1INMM CAPITAL, LLC ("Assignor")                     MOVIE FUND LLC ("Assignee")

By: _____                         By: _____

Its: MANAGING PARTNER                               Its: _____

Exhibit 7 Page 165

MOVIEFUND000381

**PROMISSORY NOTE**

**$ (999,265.00)**                                                    **(10/11/2019)**

Promise. 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, a corporation with addresses at (█████ █ ██████████████████), (the "Payee"), an amount equal to (NINE HUNDRED NINETY-NINE THOUSAND TWO HUNDRED SIXTY-FIVE) Dollars ($999,265.00) in lawful money of the United States of America, which sum shall be due and payable on (04/11/2020) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (SEVEN HUNDRED FORTY-TWO THOUSAND EIGHT HUNDRED) Dollars ($742,800.00).

Prepayment Option. Maker may pay down at any time any portion of the principal sum outstanding without any prepayment penalty.

Assignment of Rights. See Appendix A

Compounding of Unpaid Payments. The undersigned agrees that time is of the essence and that in the event payment of principal or interest due under this Note is not made when due, giving effect to any grace period which maybe applicable, the outstanding balance of unpaid payments hereof shall immediately bear interest at the rate of ten (10) percent per month, for so long as such event of default continues.

Validity of Agreement to Conform to Law. All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 166
MOVIEFUND000382

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 167
MOVIEFUND000383

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

<u>Death of Maker</u>. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

<u>Extensions Granted by Payee.</u> All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

<u>Litigation Fees</u>. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

<u>General Provisions.</u> Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 168
MOVIEFUND000384

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.

_____     _____10/11/2019_____

1INMM Capital, LLC                              Date
Zachary Horwitz, Manager

Exhibit 7 Page 169
MOVIEFUND000385

APPENDIX A


ASSIGNMENT

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at (███████████ ███████████████████████) ("Assignor") and Movie Fund LLC, a Corporation located at  (█████████ ██ ██████████████████████) ("Assignee") is dated effective as of (10/11/2019).

For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($999,265.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "DETECTIVE K: SECRET OF THE LIVING DEAD" (the "Picture") based on the original screenplay entitled "DETECTIVE K: SECRET OF THE LIVING DEAD" written by Tak-Hwan Kim.

1.  Assignor hereby represents and warrants:

    1.1.   That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.
    1.2.   That, as of the effective date hereof, Assignor has the right to enter into this Assignment.
    1.3.   That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.  Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.  Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.  Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

5.  This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights and services

Exhibit 7 Page 170
MOVIEFUND000386

granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

6.   This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (11)th DAY OF OCTOBER, 2019.

1INMM CAPITAL, LLC ("Assignor")            MOVIE FUND LLC ("Assignee")

By: _____            By: _____

Its: MANAGING PARTNER                      Its: _____

Exhibit 7 Page 171
MOVIEFUND000387

PROMISSORY NOTE

**$ (1,006,697.00)**                                                    **(09/27/2019)**

Promise. 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, a corporation with addresses at (███████ █ ███████████████████), (the "Payee"), an amount equal to (ONE MILLION SIX THOUSAND SIX HUNDRED NINETY SEVEN) Dollars ($1,006,697.00) in lawful money of the United States of America, which sum shall be due and payable on (03/27/2020) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (SEVEN HUNDRED FORTY-FIVE THOUSAND ONE HUNDRED FIFTY) Dollars ($745,150.00).

Prepayment Option. Maker may pay down at any time any portion of the  principal sum outstanding without any prepayment penalty.

Assignment of Rights. See Appendix A

Compounding of Unpaid Payments. The undersigned agrees that time is of the  essence and that in the event payment of principal or interest due under this Note is not  made when due, giving effect to any grace period which maybe applicable, the  outstanding balance of unpaid payments hereof shall immediately bear interest at  the rate of ten (10) percent per month, for so long as  such event of default continues.

Validity of Agreement to Conform to Law. All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 172
MOVIEFUND000388

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 173
MOVIEFUND000389

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

<u>Death of Maker</u>. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

<u>Extensions Granted by Payee.</u> All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

<u>Litigation Fees</u>. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

<u>General Provisions.</u> Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 174
MOVIEFUND000390

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.

_____                         _____09/27/2019_____

1INMM Capital, LLC                                                    Date
Zachary Horwitz, Manager

Exhibit 7 Page 175
MOVIEFUND000391

APPENDIX A


ASSIGNMENT

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at ██████████ ██████████████████████████) ("Assignor") and Movie Fund LLC, a Corporation located at  ( ███████████████████████████) ("Assignee") is dated effective as of (09/27/2019).

For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($1,006,697.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "EL SILENCIO DE LA CIUDAD BLANCA" (the "Picture") based on the original screenplay entitled "EL SILENCIO DE LA CIUDAD BLANCA" written by Roger Danes.

1.  Assignor hereby represents and warrants:

    1.1.  That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.
    1.2.  That, as of the effective date hereof, Assignor has the right to enter into this Assignment.
    1.3.  That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.  Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.  Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.  Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

5.  This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

Exhibit 7 Page 176
MOVIEFUND000392

6.   This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (27)th DAY OF SEPTEMBER 2019.

1INMM CAPITAL, LLC ("Assignor")                    MOVIE FUND LLC ("Assignee")

By: _____                    By: _____

Its: MANAGING PARTNER                    Its: _____

Exhibit 7 Page 177
MOVIEFUND000393

**PROMISSORY NOTE**

**$ (997,160.00)**                                                        **(10/14/2019)**

<u>Promise.</u> 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, a corporation with addresses at (███████ ██ ████████████████████), (the "Payee"), an amount equal to (<u>NINE HUNDRED NINETY-SEVEN THOUSAND ONE HUNDRED SIXTY</u>) Dollars (<u>$997,160.00</u>) in lawful money of the United States of America, which sum shall be due and payable on (<u>04/14/2020</u>) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (<u>SEVEN HUNDRED FORTY THOUSAND SEVEN HUNDRED FIFTY</u>) Dollars (<u>$740,750.00</u>).

<u>Prepayment Option.</u> Maker may pay down at any time any portion of the  principal sum outstanding without any prepayment penalty.

<u>Assignment of Rights.</u> See Appendix A

<u>Compounding of Unpaid Payments.</u> The undersigned agrees that time is of the  essence and that in the event payment of principal or interest due under this Note is not  made when due, giving effect to any grace period which maybe applicable, the  outstanding balance of unpaid payments hereof shall immediately bear interest at  the rate of ten (10) percent per month, for so long as  such event of default continues.

<u>Validity of Agreement to Conform to Law.</u> All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 178
MOVIEFUND000394

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 179
MOVIEFUND000395

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

<u>Death of Maker</u>. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

<u>Extensions Granted by Payee.</u> All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

<u>Litigation Fees</u>. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

<u>General Provisions.</u> Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 180
MOVIEFUND000396

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.

_____                     _____10/14/2019_____

1INMM Capital, LLC                                          Date
Zachary Horwitz, Manager

Exhibit 7 Page 181
MOVIEFUND000397

APPENDIX A


ASSIGNMENT

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at (█████████
████████████████████) ("Assignor") and Movie Fund LLC, a Corporation located
at  (█████████ █ █████████████████) ("Assignee") is dated effective as of
(10/14/2019).


For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged,
Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto
Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the
universe, until assignee is paid ($997,160.00) at to which time all rights, title and interest of every
kind and nature revert back to Assignor and to that certain motion picture, currently entitled
"GIRLS VS GANGSTERS" (the "Picture") based on the original screenplay entitled "GIRLS VS
GANGSTERS" written by Barbara Wong Chun-Chun.

1.  Assignor hereby represents and warrants:

    1.1.  That Assignor is the sole and exclusive owner of the rights and privileges granted
          or to be granted to Assignee hereunder.
    1.2.  That, as of the effective date hereof, Assignor has the right to enter into this
          Assignment.
    1.3.  That, as of the effective date hereof, no part of the rights herein conveyed has in
          any way been encumbered, conveyed, assigned, transferred or otherwise disposed
          of and all such rights are therefore free and clear of any and all liens, claims,
          charges or encumbrances whatsoever in favor of any party whatsoever.

2.  Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold
    them harmless from and against any and all claims, liability, losses, damages, costs, expenses
    (including but not limited to attorney's fees) arising out of any breach by Assignor of any
    warranty made by Assignor hereunder.

3.  Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which
    accrue after the date hereof.

4.  Assignor hereby waives the benefits of any provision of law known as "droit morale" or any
    similar law in any country of the world and agrees not to institute or permit any action or
    lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit
    morale" and Assignor agrees that Assignor shall not, under any circumstances (including
    without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the
    exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to
    Assignee or to obtain any other form of equitable relief, specific performance or otherwise,
    any right to which Assignor expressly waives.

5.  This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any
    person, firm or corporation. Assignee may assign this Assignment and the rights and services
    granted herein, together with the results and proceeds thereof, and the representations and
    warranties contained herein, to any person or entity.

Exhibit 7 Page 182
MOVIEFUND000398

6.   This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (14)th DAY OF OCTOBER, 2019.

1INMM CAPITAL, LLC ("Assignor")                    MOVIE FUND LLC ("Assignee")

By: _____                        By: _____

Its: MANAGING PARTNER                              Its: _____

Exhibit 7 Page 183
MOVIEFUND000399

**PROMISSORY NOTE**

**$ (1,006,137.00)**                                               **(09/30/2019)**

Promise. 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, a corporation with addresses at (████████ █ ████████████████), (the "Payee"), an amount equal to (ONE MILLION SIX THOUSAND ONE HUNDRED THIRTY-SEVEN) Dollars ($1,006,137.00) in lawful money of the United States of America, which sum shall be due and payable on (03/30/2020) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (SEVEN HUNDRED FORTY-FOUR THOUSAND FIVE HUNDRED) Dollars ($744,500.00).

Prepayment Option. Maker may pay down at any time any portion of the principal sum outstanding without any prepayment penalty.

Assignment of Rights. See Appendix A

Compounding of Unpaid Payments. The undersigned agrees that time is of the essence and that in the event payment of principal or interest due under this Note is not made when due, giving effect to any grace period which maybe applicable, the outstanding balance of unpaid payments hereof shall immediately bear interest at the rate of ten (10) percent per month, for so long as such event of default continues.

Validity of Agreement to Conform to Law. All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 184
MOVIEFUND000400

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

<u>Maker's Default</u>. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

<u>Collection Costs</u>. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

<u>Waiver of Notice</u>. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 185
MOVIEFUND000401

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

<u>Death of Maker</u>. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

<u>Extensions Granted by Payee.</u> All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

<u>Litigation Fees</u>. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

<u>General Provisions.</u> Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 186
MOVIEFUND000402

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.

_____                _____09/30/2019_____

1INMM Capital, LLC                                    Date
Zachary Horwitz, Manager

Exhibit 7 Page 187
MOVIEFUND000403

APPENDIX A

ASSIGNMENT

This assignment ("Assignment") between 1INMM CAPITAL LLC, located at (████████████ ████████████████████) ("Assignor") and Movie Fund LLC, a Corporation located at  (██████████ ███) ("Assignee") is dated effective as of (09/30/2019).

For good and valuable consideration, the receipt and sufficiency of which hereby acknowledged, Assignor does hereby irrevocably and unconditionally sell, grant, convey, and assign unto Assignee all of Assignor's rights, title and interest of every kind and nature, throughout the universe, until assignee is paid ($1,006,137.00) at to which time all rights, title and interest of every kind and nature revert back to Assignor and to that certain motion picture, currently entitled "GUN CITY" (the "Picture") based on the original screenplay entitled "GUN CITY" written by Patxi Amezcua.

1.  Assignor hereby represents and warrants:

    1.1.  That Assignor is the sole and exclusive owner of the rights and privileges granted or to be granted to Assignee hereunder.
    1.2.  That, as of the effective date hereof, Assignor has the right to enter into this Assignment.
    1.3.  That, as of the effective date hereof, no part of the rights herein conveyed has in any way been encumbered, conveyed, assigned, transferred or otherwise disposed of and all such rights are therefore free and clear of any and all liens, claims, charges or encumbrances whatsoever in favor of any party whatsoever.

2.  Assignor shall indemnify Assignee, its successors, assigns, licensees and officers, and hold them harmless from and against any and all claims, liability, losses, damages, costs, expenses (including but not limited to attorney's fees) arising out of any breach by Assignor of any warranty made by Assignor hereunder.

3.  Assignee hereby assumes and agrees to be bound by all future obligations of Assignor which accrue after the date hereof.

4.  Assignor hereby waives the benefits of any provision of law known as "droit morale" or any similar law in any country of the world and agrees not to institute or permit any action or lawsuit on the ground that the Picture in any way constitutes an infringement of any "droit morale" and Assignor agrees that Assignor shall not, under any circumstances (including without limitation, the circumstances of a breach by Assignee) be entitled to enjoin the exhibition or other exploitation of the Picture, to terminate or rescind any rights granted to Assignee or to obtain any other form of equitable relief, specific performance or otherwise, any right to which Assignor expressly waives.

5.  This Assignment, and the rights granted hereunder, may not be assigned by Assignor to any person, firm or corporation. Assignee may assign this Assignment and the rights and services granted herein, together with the results and proceeds thereof, and the representations and warranties contained herein, to any person or entity.

Exhibit 7 Page 188
MOVIEFUND000404

6.  This Assignment shall be construed in accordance with the laws of the state of California and shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, licensees and assigns. This Assignment cannot be amended or modified except in a writing signed by all parties hereto.

IN WITNESS WHEREOF, THE PARTIES HERETO HAVE EXECUTED AND DELIVERED THIS ASSIGNMENT AS OF THE (30)th DAY OF SEPTEMBER 2019.

1INMM CAPITAL, LLC ("Assignor")                    MOVIE FUND LLC ("Assignee")

By: _____                By: _____

Its: MANAGING PARTNER                              Its: _____

Exhibit 7 Page 189
MOVIEFUND000405

**PROMISSORY NOTE**

**$ (997,615.00)**                                                    **(10/11/2019)**

Promise. 1INMM Capital, LLC, a limited liability entity established in the State of California, (the "Maker"), hereby promises to pay to Lender, Movie Fund LLC, a corporation with addresses at (███████ █ ████████████████████ (the "Payee"), an amount equal to (NINE HUNDRED NINETY-SEVEN THOUSAND SIX HUNDRED FIFTEEN) Dollars ($997,615.00) in lawful money of the United States of America, which sum shall be due and payable on (04/11/2020) (the "Maturity Date"), in one (1) balloon payment, in like money at said office. Payment date shall be no later than six (6) months post confirmed funds transfer from Payee to Maker in the amount of (SEVEN HUNDRED FORTY-TWO THOUSAND FIVE HUNDRED) Dollars ($742,500.00).

Prepayment Option. Maker may pay down at any time any portion of the  principal sum outstanding without any prepayment penalty.

Assignment of Rights. See Appendix A

Compounding of Unpaid Payments. The undersigned agrees that time is of the  essence and that in the event payment of principal or interest due under this Note is not  made when due, giving effect to any grace period which maybe applicable, the  outstanding balance of unpaid payments hereof shall immediately bear interest at  the rate of ten (10) percent per month, for so long as  such event of default continues.

Validity of Agreement to Conform to Law. All agreements between the undersigned and the holder of this Note are expressly limited so that in no contingency or event whatsoever, whether by reason of advancement of the proceeds hereof, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to the holder hereof for the use, forbearance or detention of money advanced hereunder exceed the highest lawful rate permissible under any law which a court of competent jurisdiction may deem applicable hereto. If, from any circumstances whatsoever, fulfillment of any provision hereof or any instrument securing this Note or any other agreement referred to herein, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law which a court of competent jurisdiction may deem applicable hereto, then, ipso facto, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any circumstances the holder hereof shall ever receive as interest an amount which would exceed the highest lawful rate, such amount which would be excessive interest shall be applied to the

Exhibit 7 Page 190
MOVIEFUND000406

reduction of the unpaid principal balance due hereunder and not to the payment of interest. This provision shall control every other provision of all agreements between the undersigned and the holder hereof.

Maker's Default. At the option of the holder hereof exercised by written notice to the undersigned, this Note shall become immediately due and payable upon the maker's failure to pay when due any payment of principal, interest or expenses due hereunder; or (b) failure in the performance or observance of any of the terms or conditions of any mortgage, deed of trust, security agreement or other agreement securing, guaranteeing or otherwise pertaining to this Note after giving effect to any applicable curative period which may be contained therein. Upon the occurrence of any of the following specified Events of Default, as defined under the standard conventions and terminology prescribed for promissory notes drafted under Warren's California Forms for Principal, Interest, Insolvency, Breach of Covenants, Breach of Representation and Warranties, (each herein called an "Event of Default") then, and in any such event, and at any time thereafter, if any Event of Default shall then be continuing, the Payee may, by written notice to the Maker, declare the principal of and accrued interest in respect of this Note to be forthwith due and payable, whereupon the principal of and such unpaid accrued interest in respect of this Note shall become forthwith due and payable without presentment, demand, protest or other notice of any kind, all of which are hereby expressly waived by the Maker. Furthermore, This note shall become due and payable before the above-mentioned maturity date immediately upon the happening of any of the following events affecting any maker or indorser thereof, to wit: voluntary or involuntary filing of a petition in bankruptcy or for reorganization, execution of an assignment for the benefit of creditors, calling meeting of creditors, appointment of liquidating agent or committee, offer of composition, entry of a judgment in excess of $ 10,000 which remains unsatisfied or for over 30 days, application for appointment or appointment of any receiver, issuance of warrant of attachment or death of any maker or indorser or on default of any other obligations to the Maker.

Collection Costs. If this Note or any installment of principal or interest is not paid when due, whether at maturity or by acceleration, the undersigned promises to pay all costs of collection, including without limitation, actual attorneys' fees, and all expenses in connection with the protection or realization of the assets and proceeds available this Note or the enforcement of any subsequent memorandum or agreement created in conjunction with this Note incurred by the holder hereof on account of such collection, whether or not suit is filed hereon or thereon; such costs and expenses shall include, without limitation, all costs, expenses and attorneys' fees actually incurred by the holder hereof in connection with any insolvency, bankruptcy, arrangement or other similar proceedings involving the undersigned, or involving any endorser or guarantor hereof, which in anyway affects the exercise by the holder hereof of its rights and remedies under this Note or under any mortgage, deed of trust, security agreement, guaranty or other agreement securing or pertaining to this Note.

Waiver of Notice. Presentment, demand, protest, notices of protest, dishonor and nonpayment of this Note and all notices of every kind are hereby waived by all parties to

Exhibit 7 Page 191
MOVIEFUND000407

this Note, whether the undersigned, principal, surety, guarantor or endorser, except as provided herein. To the extent permitted by applicable law, the defense of the statute of limitations is hereby waived by the undersigned.

<u>Death of Maker</u>. Maker of this note hereby waives all notice and demand and consent that this note shall become due and payable immediately upon the happening of any of said events. This note shall become due and payable on the Maturity Date, but payment shall be accelerated and become due and payable immediately if the Maker shall die. For the further security of the holder thereof, the undersigned covenants that so long as any part of the principal or interest of this note is outstanding and unpaid, it will not grant any security interest to any third party upon its property, or create any lien whatsoever thereon, without also thereby including therein this note, equally and ratably with every other evidence of debt, secured by any of the undersigned's property. If, while any part of the principal or interest is outstanding and unpaid, the maker hereof breaks this covenant, then the holder hereof may at his or its election, declare and make this note at once due and payable by written notice delivered to maker, and this remedy will be deemed cumulative and in addition to any other remedy available to the holder hereof. This note shall be paid without claim of set-off, counterclaim or deduction of any nature or for any cause whatsoever.

<u>Extensions Granted by Payee.</u> All indorsers hereunder agree that the holder of this note in case of non-payment thereof at maturity, or of any installment thereof when due, may grant to the maker or any indorser of said note any extension or extensions of time of payment thereof, in whole or in part, without notice to said indorsers or any of them and any such extension or extensions shall not affect in any way said indorsers' liability upon note, such indorsers hereby waiving demand, presentment of payment, notice of nonpayment and protest and do further agree that any holder of this note may in the event of default in the payment of principal of, or interest upon, this note or any installment thereof repossess and/or sell the (collateral) held as collateral security for the payment of this note without in any way relieving said indorsers, or any of them, of any liability by reason of such repossession and/or sale, applying the proceeds of sale of any such  asset less all costs to amount due under this note, and all indorsers agree to pay any deficiency on this note on demand.

<u>Litigation Fees</u>. In any action at law or in equity to enforce or construe any provisions or rights under this Note, the unsuccessful party or parties to such litigation, as determined by a court pursuant to a final offer, judgment or decree, shall pay to the successful party or parties all costs, expenses and reasonable attorneys' fees incurred by such successful party or parties (including, without limitation, such costs, expenses and fees on any appeal), which costs, expenses and attorneys' fees shall be included as part of any order, judgment or decree.

<u>General Provisions.</u> Principal and interest evidenced hereby are payable only in lawful money of the United States. The receipt of a check shall not, in itself, constitute payment hereunder unless and until paid in good funds. Whenever any payment on this Note shall be stated to be due on a day, which is not a business day, such payment shall be made on

Exhibit 7 Page 192
MOVIEFUND000408

the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note. This Note is to be governed by and construed in accordance with the laws of the State of California except to the extent United States federal law permits the holder to contract for, charge or receive a greater amount of interest. In any action brought under or arising out of this Note, the undersigned hereby consents to the in personam jurisdiction of any state or federal court  sitting in the state of California, and waives any claim or defense that such forum is not  convenient or proper, and consents to service of process by any means authorized by  California and/or Federal law.

THE UNDERSIGNED HEREBY WAIVES, AND COVENANTS THAT THE UNDERSIGNED WILL NOT ASSERT (WHETHER AS PLAINTIFF, DEFENDANT OR OTHERWISE), ANY RIGHT TO TRIAL BY JURY IN ANY FORUM IN RESPECT OF ANY ISSUE, CLAIM, DEMAND, ACTION OR CAUSE OF ACTION ARISING OUT OF OR BASED UPON THIS NOTE, THE SUBJECT MATTER HEREOF OR ANY DOCUMENT RELATING HERETO, IN EACH CASE WHETHER  NOW EXISTING OR HEREAFTER ARISING OR WHETHER IN CONTRACT OR IN  TORT OR OTHERWISE.

_____                    _____ 10/11/2019 _____

1INMM Capital, LLC                         Date
Zachary Horwitz, Manager

Exhibit 7 Page 193
MOVIEFUND000409