KATHRYN C. WANNER (Cal. Bar No. 269310)
Email: wannerk@sec.gov
M. LANCE JASPER (Cal. Bar No. 244516)
Email: jasperml@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

## Western Division

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>ZACHARY J. HORWITZ; AND 1INMM CAPITAL, LLC,<br><br>Defendants. | Case No. 2:21-cv-02927-CAS-GJS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION THAT RECEIVER BE APPOINTED**<br><br>Date: January 10, 2022<br>Time: 10:00 a.m.<br>Ctrm: 8D<br>Judge: The Hon. Christina A. Snyder |

## I. INTRODUCTION

Plaintiff Securities and Exchange Commission ("SEC") requests the appointment of a permanent equity receiver in this action against Zachary J. Horwitz ("Horwitz") and 1inMM Capital, LLC ("1inMM"). In April 2021, this court granted an emergency asset freeze order against Horwitz and 1inMM for operating a Ponzi scheme in which they raised over $690 million from investors. This court also instituted an asset freeze over Horwitz and 1inMM and halted a pending sale of Horwitz's residence, which subsequently was sold with net proceeds of more than $1.4 million going to the court registry for the benefit of investors. The criminal authorities charged and arrested Horwitz contemporaneously with the Commission's emergency filing in April 2021. On October 4, 2021, Horwitz agreed to plead guilty to one count of securities fraud.

An equity receiver is appropriate here to marshal investor assets that were misappropriated into a variety of third party business enterprises by Horwitz for his personal benefit. Notably, none of these business enterprises are alleged to have been involved in the fraud alleged in the SEC's Complaint. However, Horwitz invested significant funds into these investments, including approximately $1.6 million invested in several startup companies through an entity called LayJax Ventures, LLC ("LayJax") and approximately $21.5 million invested in the production of at least seven independent movies through an entity called Rogue Black, LLC ("Rogue Black"). Horwitz is a member, manager, and half-owner of both LayJax and Rogue Black. Both LayJax and Rogue Black have ongoing business activities, expenses, and expected profits, all of which require management in order to maximize value. However, Horwitz who is out on bond, but expected to be criminally sentenced on January 3, 2022, is not in a position to make these business decisions. Moreover, additional third-parties may also have liability to 1inMM's investors as a result of money they received from Horwitz and 1inMM during the course of Horwitz's scheme. Therefore, we request the court appoint a permanent receiver over 1inMM,

1

and over all assets held by, for the benefit of, or under the direct or indirect control of Horwitz, including Horwitz's interests in LayJax and Rogue Black, and the funds held in the Court Registry, and to identify any other significant assets that may be available to compensate investors.

## II. STATEMENT OF FACTS

### A. Procedural History

In early April 2021, the SEC filed an injunctive action against Horwitz and 1inMM. (Dkt. 1.) The SEC also alleged that Horwitz had dissipated almost all the funds raised, leaving only a de minimis amount in his primary bank account and in 1inMM's bank accounts. (Dkt. 5 at 20). This court granted an asset freeze against Horwitz and 1inMM, preventing the sale of his multi-million dollar home purchased with investor funds. (Dkt. 18.) Subsequently, the Court granted the parties' joint *Ex Parte* Application for limited relief from the asset freeze to allow the sale of Horwitz's home to be completed, but to deposit the net proceeds from the sale into the Court Registry Investment System, and not allow Defendants to access those funds. (Dkt. 28.) On May 10, 2021, $1,417,517.16 was received into the Court Registry from the sale of the house. (Dkt. 37.)

On April 6, 2021, the Court issued an order granting the SEC's application to freeze "all assets, funds or other property of Defendants," including, but not limited to, certain real property and bank accounts. (Dkt. 18.) On May 14, 2021, the Court issued a further order extending the order freezing all of defendants' assets "pending further action by this Court." (Dkt. 43.) This freeze order remains in effect.

On May 4, 2021, the United States Attorney's Office for the Central District of California filed an indictment charging Horwitz with: (1) five counts of securities fraud, in violation of Section l0(b) of the Exchange Act, SEC Rule l0b-5, and 15 U.S.C. §78ff; (2) six counts of wire fraud, in violation of 18 U.S.C. § 1343; and (3) two counts of aggravated identify theft, in violation of 18 U.S.C. § 1028A(a)(l). *United States v. Horwitz*, No. 2:21-cr-00214-MCS-1 (the "Criminal Action"), Dkt.

2

25.  On October 4, 2021, Horwitz pled guilty to one count of securities fraud, with sentencing currently scheduled for January 3, 2021.  (Criminal Action Dkt. 47.)  Horwitz is out of custody on a million dollar secured bond.  (Criminal Action Dkt. 6.)

In June 2021, prior to answering the complaint, Defendants moved to stay this action in its entirety pending the disposition of Horwitz's criminal case.  (Dkt. 46.) In July 2021, the court granted the motion solely as to Horwitz, ruling that the SEC's action may proceed as to 1inMM which does not have the same Fifth Amendment privilege against self-incrimination concerns as does Horwitz.  (Dkt. 50.)

In August 2021, third party Rogue Black petitioned this Court for relief to modify the asset freeze in order to open a new bank account to allow Rogue Black to deposit funds and pay certain reasonable necessary business expenses.  (Dkt. 53.) The court granted the unopposed request, allowing Rogue Black to open a new account to receive payments in connection with the films it produced and to withdraw funds for payment of the ordinary and necessary business expenses that Rogue Black identified.  (Dkt. 54.)

As of the date of this filing, defendant 1inMM has not answered or otherwise responded to the Complaint.  1inMM waived service of the summons on April 13, 2021, giving it 60 days to answer or otherwise respond to the Complaint.  (Dkt. 35.)

### B.   Additional Sources of Assets for Recovery for Investors

At the time of the SEC's emergency filing of this action, the SEC had identified Horwitz' personal residence as the only significant remaining asset purchased with investor money.  (Dkt. 5 at p. 8.)  The SEC has now identified assets in addition to Horwitz's personal residence that may be available for recovery if appropriately managed by a Receiver -- in particular, third party business investments obtained through misappropriated investor money.

First, Horwitz invested at least $1,668,092 in LayJax.  *See* Declaration of Lorraine Pearson ("Pearson Decl.") at ¶ 11.  The majority of these funds came directly from Horwitz's personal bank account (ending in 5270) to the LayJax

3

business account (ending in 7302).  *Id.* at ¶ 11(f).  During the course of the fraud, Horwitz transferred funds from both of 1inMM business bank accounts to his personal bank account.  (Dkt. 6 at ¶ 29.)  LayJax is a California limited liability company with its principal place of business in Los Angeles, California.  Declaration of Kathryn Wanner ("Wanner Decl.") ¶ 2, Ex. 1.  It is now registered in California under the name Haus Capital, LLC.  *Id.* at ¶ 3, Ex. 2.  Horwitz is a half-owner and one of two member-managers of LayJax.  *Id.* at ¶ 4, Ex. 3.  LayJax's business purpose was to invest in start-up companies, and has invested in numerous start-up companies, including food and beverage companies and beauty and wellness companies.  *Id.* at ¶ 5.  These investments remain outstanding.  *Id.*  Should these investments prove lucrative, Horwitz, through his investment of misappropriated 1inMM investor funds, is entitled to his contractual portion of the returns on these investments.

   Second, Horwitz invested at least $21,513,968 in Rogue Black.  Pearson Decl. at ¶ 10.  The vast majority of these funds ($21,506,468) came directly from 1inMM's two business bank accounts to the Rogue Black account (ending in 1710).  *Id.* at ¶ 12.  Rogue Black is a Delaware limited liability company with its principal place of business in New York, New York.  Wanner Decl. at ¶ 7, Ex. 5.  Horwitz is a half-owner and one of two member-managers of Rogue Black through his entity ZJH Enterprises, LLC.  Declaration of Andrew Esbenshade ("Esbenshade Decl." at ¶ 2.  Horwitz is also a signatory on Rogue Black's bank accounts, other than the account opened with the Court's August 2021 approval.  *(*Dkt. 6 at  ¶ 12.)  Rogue Black is a film production company.  (Dkt. 52 at ¶ 3 (Goldstein Declaration in support of Rogue Black's Ex Parte Application to Modify Account Freeze).  Since inception, Rogue Black has produced at least seven independent films and has two more films in the late stages of production.  Wanner Decl. at ¶ 8.

///

///

### C. LayJax and Rogue Black Require Ongoing Management to Protect and Maximize Investments

Ongoing management - including business and economic decisions - of both LayJax and Rogue Black are required to protect the already invested funds at issue. First, by the terms of its Operating Agreement, Horwitz is one of two managers of LayJax. Wanner Decl. at ¶ 6, Ex. 4. As a manager, Horwitz has responsibilities and powers pertaining to managing the company. Similarly, Rogue Black is an ongoing business concern, which still has two films in the late stages of production. *Id.* at ¶ 8. As a member-manager of Rogue Black, Horwitz has rights and responsibilities to protect and maximize the investment of 1inMM investor funds in Rogue Black.

Moreover, Rogue Black has already had to petition this Court for relief from the asset freeze in order to open a bank account to receive deposits and make disbursements authorized by the Court. (Dkt. 53.) Rogue Black required this relief because it was expecting significant monetary returns from films that it had produced, and it needed to deposit those returns in order to protect them, as well as to pay ongoing expenses in order to maximize the value of other outstanding film projects. *Id.* Specifically, Rogue Black also acknowledged that it expected "to incur additional business expenses in the future," and that it would need "further relief from this Court." (Dkt. 53 Declaration of Anya J. Goldstein at ¶ 13.)

Horwitz's partner and member-manager in Rogue Black has also had to incur significant out of pocket expenses in running Rogue Black and has not been able to receive his contractually approved salary despite continuing to operate the company and bring value. Esbenshade Decl. at ¶ 2. Specifically, at this time, the remaining member-manager of Rogue Black has incurred or will incur before the end of the year approximately $49,115 in expenses for business items such as bookkeeping services, tax preparation, company expenses such as phone and internet, film storage, and legal expenses and fees. *Id.* at ¶ 3. This same member-manager has indicated that he supports the SEC's request for a receiver in this action. *Id.* at ¶ 4.

III. **LEGAL ARGUMENT**

    A. **The SEC's Relief Sought is Necessary to Protect and Maximize Existing Assets**

The appointment of a receiver over assets held by Horwitz and 1inMM is necessary and appropriate in these circumstances. District courts generally have broad discretion to appoint an equity receiver in Commission actions. *See SEC v. Wencke*, 622 F.2d 1363, 1365 (9th Cir. 1980). The breadth of this discretion "arises out of the fact that most receiverships involve multiple parties and complex transactions." *SEC v. Capital Consultants, LLC*, 397 F.3d 733, 738 (9th Cir. 2005) (quotation omitted). Courts look to several factors in determining whether to appoint a receiver, including marshaling and preserving the assets and clarifying the financial affairs of the entities. *Wencke,* 622 F.2d at 1372. Other courts have also looked to the integrity of management, the collection of revenue, and the need for proper distribution of investor funds. *See, e.g., SEC v. Credit First Fund*, 2006 U.S. Dist. LEXIS 96697, *49-50 (C.D. Cal. Feb. 13, 2006); *SEC v. Fifth Ave. Coach Lines, Inc.*, 289 F. Supp. 3, 42 (S.D.N.Y. 1968).

A receiver may be appointed over assets held by, for the benefit of, or under the control of an individual defendant, as well as over a corporate entity. *See, e.g., SEC v. Stanford, et al.*, No. 09-CV-0298 (N.D. Tex. Feb. 17, 2009) (appointing receiver to oversee assets owned or controlled jointly or individually by business entities and individual defendants); *see also In re Sanctuary Belize Litigation*, 408 F. Supp. 3d, 650, 663 (D. Md. 2019) (ordering receiver to take exclusive custody, control, and possession of all assets held by or for the benefit of individual defendants that the receiver values at $1,000 or more); *FTC v. Business Card Experts, Inc.*, 2007 WL 1266636 at *8 (Apr. 27, 2007) (ordering transfer of assets to receiver held individually or jointly by any individual defendant, for the benefit of any individual defendant, or that are under the direct or indirect control of any individual defendant).

Here, a receiver is necessary to identify and manage assets held by Horwitz and

1inMM that may provide additional recovery for investors, including the interests Horwitz obtained in LayJax and Rogue Black by providing a total of more than $23 million in funds to those entities, most of which came directly from the 1inMM business bank accounts. Horwitz is not an acceptable custodian of those interests, given his fraudulent conduct and his guilty plea in the criminal proceedings against him. However, without this relief, Horwitz who remains out of custody on a bond, could decide to take advantage of his contractual rights over these assets.

Specifically, in the case of LayJax, a receiver is necessary to assess and marshal the value of LayJax's investments through the exercise, as needed, of Horwitz's rights and interests as a half-owner, member, and manager entitled to priority distributions. For Rogue Black, a receiver is necessary to assess and maximize the value of the films already produced by Rogue Black, to assist in the judicious use of resources to complete two films in the late stages of production, and to monetize those assets for investors using Horwitz's rights as a half-owner, member and manager.

### B. The SEC's Relief Sought Is Also Necessary to Identify Other Assets for Recovery

A receiver is further justified by the potential to recover from third-parties who received funds from 1inMM, including any net-winners in Horwitz's scheme, and to identify and pursue other significant assets that may be available for recovery. *See, e.g., SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986) (primary purpose of equity receivership is to promote orderly and efficient administration of the estate for the benefit of investors) (citations omitted).

A receiver is also justified to assist with pursuing an efficient collection and distribution of assets to the hundreds of victims of Horwitz's scheme, some of whom are proceeding independently in investor suits to recover available assets. Since the Commission filed its emergency action, certain of Horwitz's investors have already filed lawsuits against 1inMM and other investors in an effort to recover funds for

themselves. *See Blake Michael Whitmore, et al. v. Zachary Horwitz, et al.*, Case No. 21-cv-3393 (C.D. Cal); *see also Gould v. Crookston,* Case No. 2021-L-010149, in the Circuit Court of Cook County.

Finally, a receiver would be able to take over management and distribution of the funds held in the Court Registry after the sale of Horwitz's home purchased with investor funds.

### C. The Relief Sought Is Consistent with the Purpose of the Asset Freeze and Stay of the Civil Action against Horwitz

The appointment of a receiver over assets held by Horwitz and 1inMM is consistent with the purpose of the Court's ongoing asset freeze and the stay of the civil action against Horwitz. First, the Court's asset freeze remains ongoing, freezing all of Defendants' assets. The purpose of the asset freeze is to protect assets and preserve them for collection. *See* Dkt. 50 at fn. 3 ("[T]he Court's prior orders freezing all of defendants' assets, which ameliorate the risk that Horwitz could dissipate assets during a stay.") Here, a receiver over assets obtained through investor funds will continue to protect, preserve, and maximize those assets.

Second, appointment of a Receiver over assets held by Horwitz and 1inMM would be consistent with the terms of the stay of the civil action against Horwitz. Horwitz's counsel has confirmed that Horwitz does not oppose the appointment of a Receiver. Wanner Decl. at ¶ 10. Moreover, by appointing a receiver over these assets, the Court can take Horwitz out of the assessment of how to protect and maximize the funds, and avoid situations where Horwitz could be required to weigh in on business decisions, but may not do so due to his Fifth Amendment concerns.

### IV. THE SEC'S RECEIVER RECOMMENDATION

The SEC recommends that Michele Vives of Douglas Wilson Companies be appointed receiver in this action. Attached as Exhibit 6 to the Wanner Declaration is a copy of a letter which sets forth her qualifications, the qualifications of her firm, a proposal to provide services as a receiver, and additional information on her firm and

8

1 their services.

2     Ms. Vives sent the information attached as Exhibit 6 to the Wanner Declaration to the SEC at the request of counsel for the SEC in this action, who solicited this information in conformity with internal SEC procedures for selecting candidates to recommend for appointment by federal district courts as receivers in SEC actions. The SEC obtained proposals from two other qualified receiver candidates and evaluated all three proposals before selecting Ms. Vives as its recommended candidate for receiver in this action. If the Court desires, the SEC will provide information regarding these or other candidates.

    The SEC is recommending Ms. Vives for several reasons. Ms. Vives is an experienced receiver with significant experience who has also addressed receivership matters with smaller asset values. Ms. Vives is associated with Douglas Wilson Companies, which provides services including receivership, forensic accounting, business planning, consulting and other related work. Douglas Wilson Companies has on staff a certified public accountant and other team members who can quickly analyze the value of investments and assist with determining how to maximize value. In the SEC's experience, it is more economical to have a receiver that has such capabilities in-house, in contrast to a receiver that would need to hire, for example, an outside or separate forensic accounting firm or other professionals to perform necessary receivership duties. Moreover, Ms. Vives and her firm have extensive experience with managing receivership entities, as is stated in the attached information. Ms. Vives' regular hourly rate as a receiver is $450 per hour. However, Ms. Vives has agreed to discount her rate for this matter to $405 per hour, which is reasonable, particularly in view of her substantial experience.

///
///
///
///

For these reasons, and given Ms. Vives' impressive qualifications, as set forth in the proposal attached as Exhibit 6, the SEC respectfully recommends that the Court appoint Ms. Vives as receiver in this matter.

Dated:  December 8, 2021

Respectfully submitted,

*/s/ Kathryn C. Wanner*
Kathryn C. Wanner
Counsel for Plaintiff
Securities and Exchange Commission

# PROOF OF SERVICE

I am over the age of 18 years and not a party to this action. My business address is:

    U.S. SECURITIES AND EXCHANGE COMMISSION,
    444 S. Flower Street, Suite 900, Los Angeles, California 90071
    Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On December 8, 2021, I caused to be served the document entitled **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION THAT RECEIVER BE APPOINTED** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices. I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service. Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission. The transmission was reported as complete and without error.

    I declare under penalty of perjury that the foregoing is true and correct.

Date: December 8, 2021        */s/ Kathryn C. Wanner*
                                       KATHRYN C. WANNER

*SEC v. Zachary Horwitz, et al.*
**United States District Court – Central District of California**
**Case No. 2:21-cv-02927-CAS-GJS**
**LA-5212**

SERVICE LIST

Michael J. Quinn, Esq.
Ryan C. Hedges, Esq.
Vedder Price
1925 Century Park East, Suite 1900
Los Angeles, CA 90067
Email: mquinn@vedderprice.com
Email: rhedges@vedderprice.com
***Attorneys for Defendant Zachary J. Horwitz***
*(served via CM/ECF)*