KATHRYN C. WANNER (Cal. Bar No. 269310)
Email: wannerk@sec.gov
M. LANCE JASPER (Cal. Bar No. 244516)
Email: jasperml@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### Western Division

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>              Plaintiff,<br><br>      vs.<br><br>ZACHARY J. HORWITZ; AND 1INMM CAPITAL, LLC,<br><br>              Defendants. | Case No. 2:21-cv-02927-CAS-GJS<br><br>**DECLARATION OF KATHRYN C. WANNER IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION THAT RECEIVER BE APPOINTED**<br><br>Date: January 10, 2022<br>Time: 10:00 a.m.<br>Ctrm: 8D<br>Judge: The Hon. Christina A. Snyder |

## <u>DECLARATION OF KATHRYN C. WANNER</u>

I, Kathryn C. Wanner, declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I am an attorney at law admitted to practice law in the State of California and before the United States District Court for the Central District of California.  I am employed as an attorney in the Los Angeles Regional Office of the U.S. Securities and Exchange Commission ("SEC"), and am counsel of record for the SEC in this case.  I have personal knowledge of the facts set forth in this Declaration and, if called and sworn as a witness, could and would competently testify thereto.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of the Articles of Organization for LayJax Ventures, LLC ("LayJax") which I obtained from the California Secretary of State website on December 1, 2021, showing that LayJax was organized as a California limited liability company with its principal place of business in Los Angeles, California.

3.      Attached hereto as **Exhibit 2** is a true and correct copy of the June 25, 2021 name change form for LayJax which I obtained from the California Secretary of State website on December 1, 2021, showing that LayJax is now registered in California under the name Haus Capital, LLC.

4.      Attached hereto as **Exhibit 3** is a true and correct copy of the February 19, 2019 Limited Liability Company Statement of Information form for LayJax which I obtained from the California Secretary of State website on December 1, 2021, showing that Horwitz is a half-owner and one of two member-managers of LayJax.

5.      I have reviewed business records produced to the SEC by LayJax as well as its website at https://www.hauscap.com.  According to my review of these records, LayJax's business purpose was to invest in start-up companies, and has invested in numerous start-up companies, including Dream Pops plant-based ice cream, Zitsticka, The Origin physical therapy, Bev, Elements Drinks, LivinCool, A Little Something Extra, Vizzari, Mapify, Wanderfuel, Liontea, and Miku Baby Monitor.

6.      Attached hereto as **Exhibit 4** is a true and correct copy of the Operating Agreement for LayJax.

7.      Attached hereto as **Exhibit 5** is a true and correct copy of the State of Delaware Department of State website showing Rogue Black, LLC ("Rogue Black") is a Delaware limited liability company.

8.      On or about July 21, 2021, counsel for Rogue Black informed me that since inception, Rogue Black has produced at least seven independent films and has two more films in the late stages of production.

9.      Attached hereto as **Exhibit 6** is a true and correct copy of a letter from Ms. Michele Vives of Douglas Wilson Companies which sets forth her qualifications, the qualifications of her firm, a proposal to provide services as a receiver, and additional information on her firm and their services.

10.      On or about November 5, 2021, pursuant to Local Rule 7-3, I spoke with Michael Quinn, counsel for Zachary Horwitz who informed me that he would not be opposing a Motion to Appoint a Receiver.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 8th day of December 2021, in Los Angeles, California.


*/s/ Kathryn C. Wanner*
Kathryn C. Wanner

## **PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action.  My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On December 8, 2021, I caused to be served the document entitled **DECLARATION OF KATHRYN C. WANNER IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION THAT RECEIVER BE APPOINTED** on all the parties to this action addressed as stated on the attached service list:

☐     **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐     **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐     **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐     **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐     **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐     **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒     **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐     **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  December 8, 2021                    */s/ Kathryn C. Wanner*
                                           KATHRYN C. WANNER

*SEC v. Zachary Horwitz, et al.*
**United States District Court – Central District of California**
**Case No. 2:21-cv-02927-CAS-GJS**
**LA-5212**

SERVICE LIST

Michael J. Quinn, Esq.
Ryan C. Hedges, Esq.
Vedder Price
1925 Century Park East, Suite 1900
Los Angeles, CA 90067
Email:  mquinn@vedderprice.com
Email:  rhedges@vedderprice.com
***Attorneys for Defendant Zachary J. Horwitz***
***(served via CM/ECF)***

# EXHIBIT 1

**Secretary of State**
**Articles of Organization**
Limited Liability Company (LLC)

**LLC-1**

2018 26810333

**FILED**
Secretary of State
State of California

**SEP 2 4 2018**

2 ce

This Space For Office Use Only

IMPORTANT — Read instructions before completing this form.

**Filing Fee - $70.00**

Copy Fees - First plain copy free; Additional copies: First page $1.00 & .50 for each attachment page; Certification Fee - $5.00

*Important!* LLCs may have to pay an annual minimum $800 tax to the California Franchise Tax Board. For more information, go to https://www.ftb.ca.gov.

**1. Limited Liability Company Name** (See Instructions – Must contain an LLC ending such as LLC or L.L.C. "LLC" will be added, if not included.)

LayJax Ventures, LLC

**2. Business Addresses**

| a. Initial Street Address of Designated Office in California - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 10866 WILSHIRE BLVD., SUITE 1500 | LOS ANGELES | CA | 90024 |

| b. Initial Mailing Address of LLC, if different than Item 2a | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 10866 WILSHIRE BLVD., SUITE 1500 | LOS ANGELES | CA | 90024 |

**3. Agent for Service of Process**

Item 3a and 3b: If naming an individual, the agent must reside in California and Item 3a and 3b must be completed with the agent's name and complete California street address.

Item 3c: If naming a California Registered Corporate Agent, a current agent registration certificate must be on file with the California Secretary of State and Item 3c must be completed (leave Item 3a-3b blank).

| a. California Agent's First Name (if agent is not a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| LESLIE | | KLINGER | |

| b. Street Address (if agent is not a corporation) - Do not list a P.O. Box | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 10866 WILSHIRE BLVD., SUITE 1500 | LOS ANGELES | CA | 90024 |

c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 3a or 3b

**4. Management** (Select only one box)

The LLC will be managed by:
☐ One Manager  ☑ More than One Manager  ☐ All LLC Member(s)

**5. Purpose Statement** (Do not alter Purpose Statement)

The purpose of the limited liability company is to engage in any lawful act or activity for which a limited liability company may be organized under the California Revised Uniform Limited Liability Company Act.

**6.** The Information contained herein, including in any attachments, is true and correct.

Organizer sign here

SHARON R. FLAVIN

Print your name here

2016 California Secretary of State
www.sos.ca.gov/business/be

Exhibit 1 Page 5

# EXHIBIT 2



**Secretary of State**

**Amendment to Articles of Organization of a Limited Liability Company (LLC)**

*Name Change Only*

| LLC-2-NA |

**FILED**
Secretary of State
State of California

JUN 25 2021

**IMPORTANT - *Read Instructions* before completing this form.**

**Filing Fee  -  $30.00**

**Copy Fees  -**  First page $1.00; each attachment page $0.50; Certification Fee - $5.00

**Note:** You must file a Statement of Information (Form LLC-12), to change the business address(es) of the LLC or to change the name or address of the LLC's manager(s) and/or agent for service of process, which can be filed online at llcbizfile.sos.ca.gov/SI.

This Space For Office Use Only

**1. LLC Exact Name** (Enter the exact name on file with the California Secretary of State.)

LAYJAX VENTURES, LLC

**2. LLC 12-Digit Entity (File) Number** (Enter the exact 12-digit Entity (File) Number issued by the California Secretary of State.)

| 2 | 0 | 1 | 8 | 2 | 6 | 8 | 1 | 0 | 3 | 3 | 3 |

**3. New LLC Name** (See Instructions – List the proposed LLC name exactly as it is to appear on the records of the California Secretary of State. The name must contain an LLC identifier such as LLC or L.L.C. "LLC" will be added, if not included.)

HAUS CAPITAL, LLC

**Signature**

By signing, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized by California law to sign.

Additional signatures set forth on attached pages, if any, are incorporated herein by reference and made part of this Form LLC-2-NA. (All attachments should be 8 ½ x 11, one-sided, legible and clearly marked as an attachment to this Form LLC-2-NA.)

_____
Sign here

| Phil Haus,              | Manager |
|                         | Print your name here |

LLC-2-NA (EST 11/2020)

2020 California Secretary of State
bizfile.sos.ca.gov

Exhibit 2 Page 6

## ADDENDUM
### Amendment to
### Articles of Organization of
## LAYJAX VENTURES, LLC
### a Limited Liability Company (LLC)
### Name Change Only

**Signature:**

By signing below, I affirm under penalty of perjury that the information herein is true and correct and that I am authorized by California law to sign. This Addendum is incorporated in the Amendment on Form LLC-2-NA changing the name of Layjax Ventures, LLC to Haus Capital, LLC filed herewith by reference and made part thereof.

_____
(Signature)

Zach Horwitz _____ Manager _____

20182681033

Exhibit 2 Page 7

# EXHIBIT 3

**LLC-12**

**Secretary of State**
**Statement of Information**
(Limited Liability Company)

19-A68237

**FILED**

In the office of the Secretary of State
of the State of California

**FEB 19, 2019**

**This Space For Office Use Only**

**IMPORTANT** — Read instructions **before completing this form.**

**Filing Fee – $20.00**

**Copy Fees** – First page $1.00; each attachment page $0.50;
Certification Fee - $5.00 plus copy fees

**1. Limited Liability Company Name** (Enter the exact name of the LLC.  If you registered in California using an alternate name, see instructions.)

LAYJAX VENTURES, LLC

| 2.  12-Digit Secretary of State File Number | 3.   State, Foreign Country or Place of Organization (only if formed outside of California) |
|---|---|
| 201826810333 | CALIFORNIA |

**4.  Business Addresses**

| | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| a. Street Address of Principal Office - Do not list a P.O. Box<br>10866 Wilshire Boulevard, Suite 1500 | Los Angeles | CA | 90024 |
| b. Mailing Address of LLC, **if different than item 4a**<br>10866 Wilshire Boulevard, Suite 1500 | City (no abbreviations)<br>Los Angeles | State<br>CA | Zip Code<br>90024 |
| c. Street Address of **California** Office, if Item 4a is not in California - Do not list a P.O. Box<br>10866 Wilshire Boulevard, Suite 1500 | City (no abbreviations)<br>Los Angeles | State<br>CA | Zip Code<br>90024 |

**5.  Manager(s) or Member(s)**

If no **managers** have been appointed or elected, provide the name and address of each **member**. At least one name **and** address must be listed. If the manager/member is an individual, complete Items 5a and 5c (leave Item 5b blank).  If the manager/member is an entity, complete Items 5b and 5c (leave Item 5a blank).  Note:  The LLC cannot serve as its own manager or member.  If the LLC has additional managers/members, enter the name(s) and addresses on Form LLC-12A (see instructions).

| a. First Name, if an individual - Do not complete Item 5b | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Zachary | | Horwitz | |

b. Entity Name - Do not complete Item 5a

| c. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 10866 Wilshire Boulevard, Suite 1500 | Los Angeles | CA | 90024 |

**6.  Service of Process** (Must provide either Individual **OR** Corporation.)

**INDIVIDUAL** – Complete Items 6a and 6b only.  Must include agent's full name and California street address.

| a. California Agent's First Name (if agent is **not** a corporation) | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Street Address (if agent is **not** a corporation) - **Do not enter a P.O. Box** | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | CA | |

**CORPORATION** – Complete Item 6c only.  Only include the name of the registered agent.

c. California Registered Corporate Agent's Name (if agent is a corporation) – Do not complete Item 6a or 6b
CORPORATION SERVICE COMPANY WHICH WILL DO BUSINESS IN CALIFORNIA       AS CSC - LAWYERS INCORPORATING SERVICE (C1592199)

**7.  Type of Business**

a. Describe the type of business or services of the Limited Liability Company
Consulting and Investments

**8.  Chief Executive Officer, if elected or appointed**

| a. First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |

| b. Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

**9.  The Information contained herein, including any attachments, is true and correct.**

| 02/19/2019 | Patrina O. Farrell | Senior Paralegal | |
|---|---|---|---|
| Date | Type or Print Name of Person Completing the Form | Title | Signature |

**Return Address (Optional)** (For communication from the Secretary of State related to this document, or if purchasing a copy of the filed document enter the name of a person or company and the mailing address. This information will become public when filed.  SEE INSTRUCTIONS BEFORE COMPLETING.)

Name:

Company:

Address:

City/State/Zip:

**Exhibit 3 Page 8**
2017 California Secretary of State
www.sos.ca.gov/business/be

**Attachment to Statement of Information** (Limited Liability Company)

**LLC-12A Attachment**

**19-A68237**

**A. Limited Liability Company Name**

LAYJAX VENTURES, LLC

This Space For Office Use Only

| **B. 12-Digit Secretary of State File Number** | **C. State or Place of Organization** (only if formed outside of California) |
|---|---|
| 201826810333 | CALIFORNIA |

**D. List of Additional Manager(s) or Member(s) -** If the manager/member is an individual, enter the individual's name and address. If the manager/member is an entity, enter the entity's name and address. Note: The LLC cannot serve as its own manager or member.

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| Phil | | Haus | |
| Entity Name | | | |

| Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| 10866 Wilshire Boulevard, Suite 1500 | Los Angeles | CA | 90024 |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |

| Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |

| Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |

| Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |

| Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |

| Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

| First Name | Middle Name | Last Name | Suffix |
|---|---|---|---|
| | | | |
| Entity Name | | | |

| Address | City (no abbreviations) | State | Zip Code |
|---|---|---|---|
| | | | |

Exhibit 3 Page 9

# EXHIBIT 4

**OPERATING AGREEMENT**
**OF**
**LAYJAX VENTURES, LLC**

**Confidential Treatment Requested**
**Under FOIA Exemptions**

Exhibit 4 Page 10

**PH000001**

THE MEMBERSHIP INTEREST ISSUED HEREUNDER HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR THE SECURITIES LAWS OF ANY STATE. THE MEMBERSHIP INTERESTS MAY NOT BE OFFERED FOR SALE, SOLD OR OTHERWISE TRANSFERRED EXCEPT PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT UNDER SUCH ACT AND APPLICABLE STATE SECURITIES LAWS OR PURSUANT TO AN APPLICABLE EXEMPTION FROM THE REGISTRATION REQUIREMENTS OF SUCH ACT AND SUCH LAWS OR PURSUANT TO A WRITTEN OPINION OF COUNSEL FOR THE COMPANY THAT REGISTRATION IS NOT REQUIRED.

THE SALE, ASSIGNMENT, HYPOTHECATION, PLEDGE, ENCUMBRANCE OR OTHER DISPOSITION (EACH, A "TRANSFER") OF A MEMBERSHIP INTEREST ISSUED HEREUNDER IS RESTRICTED BY THE CALIFORNIA REVISED UNIFORM LIMITED LIABILITY COMPANY ACT (THE "ACT") AND THE TERMS OF THIS OPERATING AGREEMENT. THE COMPANY WILL NOT REGISTER THE TRANSFER OF SUCH MEMBERSHIP INTEREST ON THE BOOKS OF THE COMPANY UNLESS AND UNTIL THE TRANSFER HAS BEEN MADE IN COMPLIANCE WITH THE ACT AND THIS OPERATING AGREEMENT, AND SUCH TRANSFER WILL NOT BE VALID UNLESS AND UNTIL SO REGISTERED.

## OPERATING AGREEMENT
## OF
## LAYJAX VENTURES, LLC
a California limited liability company

This OPERATING AGREEMENT (this AAgreement@) of LAYJAX VENTURES, LLC, a California limited liability company (the ACompany@) is hereby adopted as of _____, 2018, by and between ZACH HORWITZ ("Zach"), an individual, and PHIL HAUS ("Phil"), an individual, each of which is referred to herein as a "Member" and, collectively, the AMembers,@ with reference to the following (capitalized terms used and not otherwise defined in this Agreement shall have the meanings set forth in the AGlossary of Terms@ attached as **Appendix AA@** hereto, which Appendix is hereby incorporated by this reference):

## AGREEMENT

## 1.    FORMATION AND PURPOSE

**1.1    Organization; Governance.** Members have caused Articles of Organization for the Company to be filed with the California Secretary of State on _____, 20__, as File No. _____. The business and affairs of the Company shall be governed by the Articles and, where not inconsistent with the Articles, this Agreement and, where not inconsistent with the Articles or this Agreement, the Act.

1

**1.2     Principal Office; Agent.** The Company shall continuously maintain a principal office and registered agent in the State of California as required by the Act, each of which shall be as set forth in the annual statement of information filed by the Company with the California Secretary of State or otherwise as determined by the Managers, from time to time.

**1.3     Purpose.** The Company is formed and shall be conducted solely for the following purposes, and may not own assets or engage in business other than as set forth in this Section 1.3:

**1.3.1**   to buy, sell, invest in, dispose of, and otherwise deal with the capital of the Company; and

**1.3.2**   to conduct such other activities related to or incidental to the business described in Section 1.3.1 hereof; to exercise all other power necessary to, or reasonably connected with, such business as may be legally exercised by limited liability companies in the State of California; and to engage in all activities necessary, customary, convenient, or incident to any of the foregoing.

**1.4     Term.** The term of the Company shall commence as of the date of the filing of the Articles and shall continue in existence until the date (if any) set forth in the Articles, unless sooner dissolved pursuant to this Agreement or under the Act.

**2.     CAPITALIZATION AND FINANCING; TAX MATTERS**

**2.1     Capital Accounts and Capital Contributions.** For financial accounting purposes, a "**Capital Account**" shall be established and maintained for each Member in accordance with the following provisions: Each Member's Capital Account as of the first day of the Fiscal Year of this Agreement is as set forth in the tax return filed by the Company for such Fiscal Year. Each Member's Capital Account shall be credited with such Member's Capital Contribution, any income or gain allocated to such Member, and the amount of any Company liabilities assumed by such Member or which are secured by any property distributed to such Member. Each Member's Capital Account shall be reduced by the amount of cash distributed to such Member, any losses or deductions allocated to such Member, and the amount of any liabilities of such Member assumed by the Company or which are secured by any property contributed by such Member to the Company. For federal income tax purposes, such Capital Account shall be maintained for each Member in accordance with section 1.704-1(b)(2)(iv) of the Regulations. Zach shall make all Capital Contributions reasonably necessary, in Zach's sole discretion, to fund the general operations of the Company. In addition, Zach shall make Discrete Contributions to the capital of the Company with respect to any contemplated Investments.

**2.2     Advances and Loans.** A Member (directly or through an Affiliate) may, but shall
not be obligated to, advance funds to or on behalf of the Company as a loan upon such security and other terms as a Member may determine, in which case **(a)** such advance shall be a debt

2

owed by the Company to such person in such person's capacity as a creditor and not in such person's capacity as a Member, and **(b)** such advance shall be segregated in a loan payable account.

**2.3     Distributions.** Subject to Section 5.2 hereof, the Company may make distributions of Available Cash to the Members at such times and in such amounts as determined by the Managers. In order to provide Zach with safeguards regarding his Discrete Contributions with respect to an Investment, all of the Investment Return from each Investment shall be segregated on the books of the Company and distributed to the Members in accordance with the following order of priority:

**(a)**     First, all to Zach until Zach has cumulatively received an amount equal to Zach's Discrete Contribution with respect to that Investment;

**(b)**     Second, ninety-five percent (95%) to Zach and five percent (5%) to Phil until Zach has received an amount equal to Zach's Discrete Contribution with respect to that Investment; and

**(c)**     Third, to the Members equally.

Any other Available Cash shall be distributed to the Members as follows:

**(i)**     First, all to Zach until he cumulatively has received an amount equal to any Capital Contributions made by Zach that are not Discrete Contributions; and

**(ii)**     Second, to the Members equally.

**2.4     Allocations of Net Income and Net Loss. "Net Income" and "Net Loss,"** defined as the net income and net loss, respectively, of the Company, with respect to an Investment, for federal income tax purposes for each Fiscal Year, as determined by the accountants for the Company, shall be allocated to the Members as follows:

**2.4.1     Allocations of Net Loss.** Net Loss shall be allocated as follows:

**(a)**     First, to the Members in proportion to the positive balances (if any) of their Capital Accounts, until no Member shall have a positive Capital Account balance; and

**(b)**     Second, to the Members according to their Percentage Interests.

**2.4.2     Allocations of Net Income.** Net Income shall be allocated to the Members as follows:

**(a)**     First, with respect to any Member that has been allocated an aggregate amount of Net Loss under Section 2.4.1 hereof in an amount exceeding the aggregate

3

amount of Net Income allocated to such Member under this Section 2.4.2, to all such Members in proportion to such excesses until no such excess shall exist with respect to any Member;

**(b)** Second, ninety-five percent (95%) to Zach and five percent (5%) to Phil until Zach has received an amount equal to Zach's Discrete Contribution with respect to that Investment; and

**(c)** Third, to the Members in proportion to their Percentage Interests.

2.5 **Limitation on Loss Allocation.** Notwithstanding any other provisions of this Agreement, no allocation of Net Losses shall be made to any Member to the extent such an allocation would cause or increase a deficit balance standing in such Member's Capital Account (in excess of such Member's allocable share of minimum gain and after taking into account any adjustments set forth in Regulation Section 1.704(b)-1(b)(2)(ii)(d)) and any such Net Losses shall instead be allocated to the Members based upon their respective "interests" in the Company as determined in accordance with Regulation Section 1.704-1(b).   In addition, items of income and gain shall be specifically allocated to the Members in accordance with the qualified income offset provisions set forth in Regulation Section 1.704-1(b)(2)(ii)(d).

2.6 **Curative Allocations.** The effect of the limitation on the amount of Net Losses and the qualified income offset provisions set forth in the first two (2) sentences of Section 2.5 above shall be taken into account in computing subsequent allocations of Net Income and Net Losses pursuant to this Section 2.6, so that the net amount of any items so allocated and the Net Income, Net Losses and all other items allocated to each Member pursuant to this Section 2.6 shall, to the extent possible, be equal to the net amount that would have been allocated to each such Member pursuant to the provisions of this Section 2.6 if such special allocations had not occurred.

2.7 **Differing Tax Basis; Tax Allocations.** Depreciation and/or cost recovery deductions and gain or loss with respect to each item of property treated as contributed to the capital of the Company shall be allocated among the Members for federal income tax purposes in accordance with the principles of Section 704(c) of the Code and the Regulations promulgated hereunder, and for state income tax purposes in accordance with comparable provisions of any applicable state law and the regulations promulgated thereunder, so as to take into account the variation, if any, between the adjusted tax basis of such property and its book value (as determined for purposes of the maintenance of Capital Accounts in accordance with this Agreement and Regulation Section 1.704-1(b)(2)(iv)(g)).

2.8 **Other Special Allocations.** The Company shall make other special allocations required or permitted in the Regulations under Section 704 of the Code after consultation with the Company's tax advisors so as to carry out the economic arrangement provided for in this Agreement and to have the Company's allocations respected for tax purposes.

4

**2.9      Tax Treatment.** Unless otherwise determined by the Members, this Company shall not elect to be treated as an association taxable as a corporation under Section 301.7701-3 of the Regulations.

## 3.      GOVERNANCE

**3.1      Manager**. Subject to the limitations of the Articles and this Agreement, the business and affairs of the Company shall be managed by two managers (each a "**Manager**" and, collectively, the **AManagers@**) who shall **(a)** have full, exclusive and complete authority and discretion in the management, direction and control of the Company and its business and affairs; **(b)** shall have all such rights, powers and authority generally conferred by law or as necessary to, advisable for, or consistent with accomplishing the purposes of the Company; and **(c)** shall have sole and complete authority to make any contracts, enter into any transactions, or make any commitments on behalf of the Company.

**3.1.1      Appointment; Removal; Resignation.   ZACH HORWITZ** and **PHIL HAUS** are hereby appointed the initial Managers of the Company. Subject to the rights, if any, of a Manager and/or the Company under a contract of employment between the Company and such Manager, a Manager **(a)** shall serve at the pleasure of the Members and may be removed, with or without cause, by all of the Members, and **(b)** may resign upon thirty (30) days' notice to the Company. The Members may appoint a Person as Manager to replace any Manager that has resigned, been removed, or otherwise failed to serve. A Manager may, but need not, be a Member.

**3.1.2      Duties.** A Manager shall discharge his duties in good faith, with the care an ordinarily prudent person in like position would exercise under similar circumstances, and in a manner he or she believes in good faith to be in the best interests of the Company and its Members.

**3.2      Powers of Members**.

**3.2.1      Voting and Approval Rights of Members.** In addition to those voting and approval rights set forth elsewhere in this Agreement, the approval of all of the Members shall be required for the following: **(a)** the admission of any additional Member to the Company; **(b)** a sale, lease, conveyance, exchange, transfer, hypothecation, encumbrance or other disposition of all or substantially all of the assets of the Company; **(c)** the contribution of all or substantially all of the assets of the Company to a corporation, partnership or limited liability company; **(d)** the conversion of the Company to a corporation, general partnership or limited partnership; **(e)** a reorganization, merger or consolidation of the Company with one or more other business entities as a result of which the Member will own less than Fifty Percent (50%) of the voting interests of the surviving entity) immediately after such transaction; **(f)** any transaction between the Company and a Manager or an Affiliate thereof other than in the ordinary course of business of the Company for fair equivalent value; **(g)** any use of assets of the Company other than for Company business and any guaranty of any obligation of a Manager or

5

**Confidential Treatment Requested**
**Under FOIA Exemptions**

Exhibit 4 Page 15
PH000006

any Affiliate thereof or other person; **(h)** the approval of any Investment of the Company and the disposition, conversion, exchange, or sale of any Investment of the Company; or **(i)** any act by a Manager that would **(1)** make it impossible to carry on the ordinary business of the Company, **(2)** change the nature of the Company's business as set forth in Section 1.3 hereof, or **(3)** allow any Company to possess the Company's property, or assign the Company's right in such property, for other than a Company purpose.

   **3.2.2 No Authority.** No Member solely by virtue of being a Member is an agent of the Company or has the authority to make any contracts, enter into any transactions, or make any commitments on behalf of the Company.

   **3.2.3 Vote Required**. Wherever this Agreement requires a vote, approval or consent by the Members, and unless expressly provided otherwise in this Agreement, such vote, approval or consent shall be by all of the Members.

  **3.3  Exoneration and Indemnity.**

   **3.3.1 Exoneration**. No Manager, Member, or Affiliate thereof shall be liable, responsible or accountable in damages or otherwise to the Company or any of their successors or assigns for any act or omission by such Manager, Member, or Affiliate performed or omitted in good faith pursuant to the authority granted by this Agreement; *provided*, that such Manager, Member, or Affiliate is not guilty of fraud, bad faith, or gross negligence. No amendment or repeal of this Section 3.3.1 affects any liability or alleged liability of any Manager, Member, or Affiliate thereof for any acts, omissions, or conduct that occurred prior to the amendment or repeal.

   **3.3.2 Indemnification**. To the maximum extent permitted by section 317 of the California General Corporation Law (which section shall apply as if the Company were a corporation and a Manager, member, or officer an Aagent@ as defined in that section), but subject to Section 177155(a) of the Act, the Company shall indemnify, defend, and hold harmless each Manager, Member, or Officer of the Company (and any Affiliate, officer, director, shareholder, member, manager, employee, agent, attorney, subsidiary and assign thereof) from any liability, loss, claim, expense or damage by them by reason of any act performed or omitted to be performed by them in connection with the Company, including costs and attorney=s fees and any amounts expended in the settlement of any claims of liability, loss or damage; *provided*, that nothing in this Section 3.3.2 shall entitle a person to be indemnified in the case of fraud, bad faith, or gross negligence. No amendment or repeal of this Section 3.3.2 affects the obligations of the Company with respect to any acts, omissions, or conduct that occurred prior to the amendment or repeal.

   **3.3.3 Advance of Expenses**. The expenses of a Manager, Member or other person incurred in a defense of an action, suit or proceeding for which indemnification is available under Section 3.3.2 hereof shall be paid by the Company as they are incurred and in advance of the final disposition of such action, suit or proceeding; *provided*, that such Manager, Member or other person shall deliver to the Company an instrument, in form and substance

6

reasonably satisfactory to independent legal counsel for the Company, by which such Manager, Member or other person agrees to repay such advances if it is ultimately determined by a court of competent jurisdiction that such Manager, Member or other person is not entitled to indemnification under Section 3.3.2 hereof.

        **3.3.4   Determination.** Whether fraud, bad faith or gross negligence exists for purposes of Sections 3.3.1 or 3.3.2 hereof shall be determined by independent legal counsel to the Company in a written opinion.

     **3.4   Insurance**. The Company shall have the power to purchase and maintain insurance on behalf of any person against any liability asserted against or incurred by such person in such capacity or arising out of such person=s status as such whether or not the Company would have the power to indemnify such person against such liability under Section 3.3.2 hereof.

## 4.   TRANSFER OF INTERESTS

     Notwithstanding any provision of the Act to the contrary, no Member may transfer all or any part of such Member's Membership Interest in the Company except **(a)** to a trust exclusively for the benefit of such Member or such Member's immediate family of which such Member is trustee and controls the voting and similar rights with respect to the Membership Interests held by such trust, **(b)** to another Member, or **(c)** with the prior written consent of the Members. Any Transfer in violation of this Section 4 shall be null and void.

## 5.   DISSOLUTION

     **5.1   Events of Dissolution.** The Company shall be dissolved upon the occurrence, and only upon the occurrence, of any of the following events: **(a)** the written resolution of the Members to dissolve the Company; or **(b)** any other event, within the discretion of the Members, that causes the Company to be unable to continue its business as a practical matter.

     **5.2   Liquidation.** Upon the occurrence of an event of dissolution as described in Section 5.1 hereof, a Manager shall take full account of the Company=s assets and liabilities, shall collect the receivables of the Company, and shall liquidate the Company=s assets as promptly as is consistent with obtaining the fair market value thereof. Upon dissolution, the Company shall engage in no further business other than that necessary to collect its receivables and to liquidate its assets. The proceeds from the liquidation of Company assets and collection of Company receivables, together with assets distributed in kind, shall, to the extent sufficient therefore, be applied and distributed in the following order:

        **5.2.1   First,** to the expenses of liquidation, including brokerage commissions from the sale of Company assets, escrow costs, accounting and legal fees, and other expenses;

**Confidential Treatment Requested Under FOIA Exemptions**

Exhibit 4 Page 17
PH000008

**5.2.2**   Second, to the liabilities and obligations of the Company to its creditors (including any Member that may have made a loan or advance to the Company);

**5.2.3**   Third, to the creation or increase of Reserves;

**5.2.4**   Fourth, in accordance with the provisions of Section 2.3 hereof; and

**5.2.5**   Fifth, in the ratio of the remaining positive Capital Account balances of the Members.

**5.3**   **Termination upon Liquidation.** Upon completion of the dissolution, winding up, liquidation and distribution of the Company assets and liquidation proceeds, the Company shall terminate and a Manager shall file or cause to be filed with all appropriate governmental authorities a certificate of cancellation as required by the Act.

**6.**   **FINANCIAL MATTERS**

**6.1**   **Books and Records.** The books and records of, and other information pertaining to, the Company shall be available upon reasonable request for inspection, audit, and copying by the Member or such person's duly authorized representatives at the principal office of the Company set forth in Section 1.2 hereof. The books, records and other information described in this Section 6.1 shall include at least those documents required under Section 17058 of the Act as well as those documents expressly required under this Agreement

**6.2**   **Tax Information and Elections.** The Manager shall cause income tax returns for the Company to be prepared and timely filed with all appropriate governmental authorities, and shall from time to time make such tax elections with respect to the Company as a Manager deems necessary or desirable.

**6.3**   **Tax Audit Matters.**

**6.3.1**   **General.** A Manager shall serve as the "Tax Designee" of the Company for federal, state and local income tax administrative or judicial proceedings (such administrative proceedings being referred to as a "tax audit" and such judicial proceedings being referred to as a "judicial review") and is treated as the "tax matters partner" pursuant to Section 6231(a)(7) of the Code as in effect on November 1, 2015 (Subchapter C of Chapter 63 of the Code as in effect on November 1, 2015 referred to as the "Current Partnership Audit Rules") and the "partnership representative" pursuant to Section 6223(a) of the Code as included in the Bipartisan Budget Act of 2015 (with the changes to Subchapter C of Chapter 63 of the Code as made by the Bipartisan Budget Act of 2015 referred to as the "2015 Budget Act Partnership Audit Rules"). The Tax Designee is authorized to conduct all tax audits and judicial reviews for the Company. So long as Section 6223(c)(3) of the Current Partnership Audit Rules is in effect, upon receipt of notice from the IRS of the beginning of an administrative proceeding with respect to the Company, the Manager shall furnish the IRS with

8

Exhibit 4 Page 18

PH000009

the name, address, taxpayer identification number and profit interest of each of the Members and any assignees; provided, however, that such information is provided to the Company by the Members.

      **6.3.2**   **Powers.** The Manager is authorized, but not required (and the Members hereby consent to the Manager taking the following actions):

      **(a)**   to elect out of the 2015 Budget Act Partnership Audit Rules, if available;

      **(b)**   to enter into any settlement with the IRS with respect to any tax audit or judicial review for the adjustment of Company items required to be taken into account by a Member or the Company for income tax purposes, and in the settlement agreement the Manager may expressly state that such agreement shall bind the Company and all Members, except that so long as the Current Partnership Audit Rules are in effect, such settlement agreement shall not bind any Member who (within the time prescribed pursuant to the Code and Regulations under the Current Partnership Audit Rules) files a statement with the IRS providing that the Manager shall not have the authority to enter into a settlement agreement on behalf of such Member;

      **(c)**   to seek judicial review of any adjustment assessed by the IRS or any other tax authority, including the filing of a petition for readjustment with the Tax Court or the filing of a complaint for refund with the United States Claims Court or the District Court of the United States for the district in which the Company's principal place of business is located;

      **(d)**   to intervene in any action brought by any other Partner for judicial review of a final adjustment;

      **(e)**   to file a request for an administrative adjustment with the IRS or other tax authority at any time and, if any part of such request is not allowed by the IRS or other tax authority, to file an appropriate pleading (petition or complaint) for judicial review with respect to such request;

      **(f)**   to enter into an agreement with the IRS or other tax authority to extend the period for assessing any tax which is attributable to any item required to be taken into account by a Member for tax purposes, or an item affected by such item;

      **(g)**   to take any other action on behalf of the Members of the Company in connection with any tax audit or judicial review proceeding, to the extent permitted by applicable law or regulations, including, without limitation, the following actions to the extent that the 2015 Budget Act Partnership Audit Rules apply to the Company and its current or former Members:

9

**Confidential Treatment Requested Under FOIA Exemptions**

Exhibit 4 Page 19

PH000010

**(h)**  electing to have the alternative method for the underpayment of taxes set forth in Section 6226 of the Code, as included in the 2015 Budget Act Partnership Audit Rules, apply to the Company and its current or former Members; and

**(i)**  for Company level assessments under Section 6225 of the Code, as included in the 2015 Budget Act Partnership Audit Rules, determining apportionment of responsibility for payment among the current or former Members, setting aside reserves from Available Cash From Operations of the Company, withholding of distributions of Available Cash From Operations to the Members, and requiring current or former Members to make cash payments to the Company for their share of the Company level assessments; and

**(j)**  to take any other action required or permitted by the Code and Regulations in connection with its role as the Manager.

The taking of any action and the incurring of any expense by the Tax Designee in connection with any such audit or proceeding referred to in Section (f) above, except to the extent required by law, is a matter in the sole and absolute discretion of the Tax Designee and the provisions relating to indemnification of the Manager shall be fully applicable to the Tax Designee in its capacity as such.  In addition, the Tax Designee shall be entitled to indemnification for any liability for tax imposed on the Company under the 2015 Budget Act Partnership Audit Rules that is collected from the Tax Designee.

The current and former Members agree to provide the following information and documentation to the Company and the Tax Designee to the extent that the 2015 Budget Act Partnership Audit Rules apply to the Company and its current or former Members: (1) information and documentation to determine and prove eligibility of the Company to elect out of the 2015 Budget Act Partnership Audit Rules; (2) information and documentation to reduce the Company level assessment consistent with Section 6225(c) of the Code, as included in the 2015 Budget Act Partnership Audit Rules; and (3) information and documentation to prove payment of the attributable liability under Section 6226 of the Code, as included in the 2015 Budget Act Partnership Audit Rules.

In addition to the foregoing, and notwithstanding any other provision of this Agreement, including, the Manager is  authorized (without any requirement of the consent or approval of any Members) to make all such amendments to this Section 6.3 as it shall determine, in its sole judgment, to be necessary, desirable or appropriate to implement the 2015 Budget Act Partnership Audit Rules and any regulations, procedures, rulings, notices, or other administrative interpretations thereof promulgated by the U.S. Treasury Department.

**6.3.3   Reimbursement.** The Tax Designee shall receive no compensation for its services.  All third party costs and expenses incurred by the Tax Designee in performing its duties as such (including legal and accounting fees and expenses) shall be borne by the Company.  Nothing herein shall be construed to restrict the Company from engaging an

Confidential Treatment Requested
Under FOIA Exemptions

Exhibit 4 Page 20
PH000011

accounting firm and/or law firm to assist the Tax Designee in discharging its duties hereunder, so long as the compensation paid by the Company for such services is reasonable.

        **6.3.4   Survival.** The obligations of each Member under this Section 6.3.4 shall survive such Member's withdrawal from the Company, and each Member agrees to execute such documentation requested by the Company at the time of such Member's withdrawal from the Company to acknowledge and confirm such Member's continuing obligations under this Section 6.3.4.

        **6.4   Fiscal Year.** The fiscal year of the Company (the "**Fiscal Year**") shall be the calendar year beginning on January 1.

## 7.   GENERAL PROVISIONS

        **7.1   Complete Agreement.** This Agreement, and any schedules, exhibits or documents referred to herein or executed contemporaneously herewith, constitute the entire agreement governing the business and affairs of the Company, and supersede all prior written, and all prior and contemporaneous oral, agreements, representations, warranties, statements, promises and understandings with respect to the subject matter hereof, whether express or implied.

        **7.2   Amendments.** Except as expressly provided to the contrary, this Agreement may be amended only by all of the Members; *provided*, that **(a)** the consent of a manager or officer of the Company shall be required for any amendment that would otherwise impair or modify the rights, or expand or modify the obligations or liabilities, of such manager or officer hereunder, and **(b)** no amendment shall be adopted if and to the extent such amendment would violate any covenant in, result in a default under, or cause the acceleration of any debt with respect to any agreement, document or other instrument, pursuant to which the Company shall have borrowed funds, assumed a liability and/or encumbered the property of the Company.

        **7.3   Governing Law.** This Agreement and the respective rights and obligations of the parties hereunder shall be governed by the internal laws of the State of California, regardless of the choice of law provisions of California or any other jurisdiction and regardless of where the parties hereto may now or hereafter reside, be organized or do business.

        **7.4   Successors and Assigns.** This Agreement shall be binding upon and inure to the benefit of the parties hereto, their respective successors and permitted assigns.

        **7.5   Severability.** The validity, legality or enforceability of the remainder of this Agreement shall not be affected even if one or more of the provisions of this Agreement shall be held to be invalid, illegal or unenforceable in any respect.

        **7.6   Counterparts; Electronic/Facsimile Signatures.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of

**Confidential Treatment Requested
Under FOIA Exemptions**

Exhibit 4 Page 21
PH000012

which together shall constitute one and the same instrument. Any signed copy of this Agreement or of any other document or agreement referred to herein, or copy or counterpart thereof, delivered by electronic or facsimile, or other electronic transmission, shall for all purposes be treated as if it were delivered containing an original manual signature of the name whose signature appears in the electronic or facsimile transmission, and shall be binding upon such party in the same manner as though an originally signed copy had been delivered.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

**AMembers@**

_____          _____
ZACH HORWITZ                                     PHIL HAUS

**AManagers**"

_____          _____
ZACH HORWITZ                                     PHIL HAUS

12

**Confidential Treatment Requested**
**Under FOIA Exemptions**

Exhibit 4 Page 22
PH000013

# APPENDIX A
## GLOSSARY OF TERMS

1.     A**Act**@ means sections 17000 through 17705, inclusive, of the California Corporations Code, as amended, commonly known as the California Revised Uniform Limited Liability Company Act.

2.     "**Affiliate**" means, with respect to any person (the "**first person**"), (a) any second person directly or indirectly controlling, controlled by or under common control with the first person or (if equity interests in the first person are publicly traded) owning or controlling ten percent (10%) or more of the outstanding voting securities, capital or profits interests, or beneficial interests in the first person; **(b)** any officer, director, manager, trustee, or general partner or Family member of or in the first person; or **(c)** if the first person is an officer, director, manager, trustee or general partner, any corporation, partnership, trust, or limited liability company for which such first person acts in that capacity. For purposes of this section, **(I)** the term "**control**" (including the terms "**controlled by**" and "**under common control with**") means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract or otherwise; **(II)** a manager of a limited liability company includes a member of a limited liability company that is managed by its members rather than by managers; and **(III)** a general partner includes any partner in a limited liability partnership.

3.     A**Agreement**@ means the Operating Agreement of LAYJAX VENTURES, LLC, a California limited liability company.

4.     A**Articles**@ is as defined in Section 1.1 of the Agreement.

5.     A**Available Cash**@ means, with respect to any fiscal period, **(a)** total cash revenues generated by the business of the Company and from other sources (including the reduction or elimination of Reserves previously established, but not including proceeds from a loan or extension of credit to the Company or contributions to the capital of the Company), less **(b)** cash expenditures (including, but not limited to, rent, compensation or reimbursements to a Manager, Member or any Affiliate thereof), current debt service (including, but not limited to, payments on debts to a Member), operating expenses, and the establishment or increase of Reserves).

6.     A**Capital Contribution**@ of a Member means the sum of all amounts of capital contributed to the Company by a Member other than Discrete Contributions.

7.     A**Code**@ means the Internal Revenue Code of 1986, as amended.

8.     A**Company**@ is as defined in the first paragraph of the Agreement.

Appendix A

Confidential Treatment Requested
Under FOIA Exemptions

Exhibit 4 Page 23
PH000014

9.      A**Discrete Contributions**" means the cash and fair market value of any property contributed by such Member to the capital of the Company, measured as a separately managed and distinctly identifiable investment fund or account, provided by Zach with regard to a specific Investment; *provided*, that Discrete Contributions shall not include services or loans.

10.      A**Economic Interest**@ is as defined in this **Appendix "A"**.

11.      A**Fiscal Year**@ is as defined in Section 6.3 of the Agreement.

12.      "**Investment**" means the purchase or other acquisition of a security offered by a company in which the Company has determined to invest, as well as any additional funds invested in such company by the Company in connection with such security.

13.      "**Investment Return**" means the proceeds received by the Company from time to time with respect to a specific Investment. Each Investment and the Investment Return thereon shall be accounted for separately.

12.      A**Members**@ means **(a)** ZACH HORWITZ **(b)** PHIL HAUS, and **(c)** any person or entity to which all or a portion of a Membership Interest has been Transferred in compliance with Section 4 hereof.

13.      A**Membership Interest**@ means a Member=s rights in the Company collectively, including the Member=s right to share in the income, gains, losses, deductions, credit, or similar items of, and to receive distributions from, the Company; any right to vote or participate in management; and any right to information concerning the business and affairs of the Company. Notwithstanding any provision of the Act to the contrary, a Member=s right to share in the income, gains, losses, deductions, credit, or similar items of, and to receive distributions from, the Company (an A**Economic Interest**@) may not be Transferred apart from the full Membership Interest except as expressly provided to the contrary in this Agreement, and references herein to a A*portion*@ of a Membership Interest refer to an undivided portion of a Membership Interest.

14.      A**Person**@ means an individual or a corporation, partnership, limited liability company, estate, trust or other legal entity.

15.      A**Regulations**@ means the Treasury regulations promulgated thereunder.

16.      A**Reserves**@ means any amount set forth on the books of the Company as a reserve for all Company expenses, debt payments, capital expenditures or improvements, replacements and contingencies as reasonably determined by the Member.

17.      A**Transfer**@ of a Membership Interest (and the related term A**Transferred**@) means a sale, assignment, conveyance, exchange, gift, encumbrance, pledge, hypothecation, use

Appendix A

as collateral, or other disposition or transfer of legal or beneficial ownership of such Membership Interest, whether voluntary or involuntary.

Appendix A

Exhibit 4 Page 25
Confidential Treatment Requested
Under FOIA Exemptions

PH000016

# EXHIBIT 5

12/1/21, 4:44 AM · Division of Corporation - Filing

Delaware.gov

Governor | General Assembly | Courts | Elected Officials | State Agencies

---

Department of State: Division of Corporations

Allowable Characters

| HOME | Entity Details |
| --- | --- |

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| | | | |
| --- | --- | --- | --- |
| File Number: | 6431697 | Incorporation Date / Formation Date: | 6/1/2017 (mm/dd/yyyy) |
| Entity Name: | ROGUE BLACK, LLC | | |
| Entity Kind: | Limited Liability Company | Entity Type: | General |
| Residency: | Domestic | State: | DELAWARE |

**REGISTERED AGENT INFORMATION**

| | | | |
| --- | --- | --- | --- |
| Name: | COGENCY GLOBAL INC. | | |
| Address: | 850 NEW BURTON ROAD SUITE 201 | | |
| City: | DOVER | County: | Kent |
| State: | DE | Postal Code: | 19904 |
| Phone: | 800-483-1140 | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ○ Status  ○ Status,Tax & History Information

[ Submit ]

[ View Search Results ]          [ New Entity Search ]

---

For help on a particular field click on the Field Tag to take you to the help area.

site map  |  privacy  |  about this site  |  contact us  |  translate  |  delaware.gov

Exhibit 5 Page 26

# EXHIBIT 6

June 9, 2021

*VIA EMAIL ONLY*

Amy Jane Longo *(longoa@sec.gov)*
Regional Trial Counsel
SEC Division of Enforcement
Los Angeles Regional Office
444 South Flower Street, 9th Floor
Los Angeles, CA 90071

**Re:   1INMM CAPITAL, LLC**

Dear Ms. Longo,

We appreciate your consideration of Michele Vives of Douglas Wilson Companies ("DWC") to serve as Receiver to take possession of 1INMM Capital, LLC and its various related entities based in Los Angeles, California, and I am pleased to submit our firm's materials for your review. DWC is uniquely suited to assist with this assignment based upon our in-depth receivership experience. We have the immediate and comprehensive resources available to take over new assignments and would greatly appreciate the opportunity to assist with this project.

Our team has substantial experience and a successful track record in similar receivership appointments, and we have been appointed receiver in matters brought by the SEC and the U.S. Attorneys' Office. DWC has three different options to be named receiver: Douglas Wilson, Ryan Baker and Michele Vives. After internal consultation, we have concluded that Michele Vives be considered the named Receiver on this matter but will defer to the SEC's direction. Additionally, Ryan Baker and Douglas Wilson are both full members of the National Association of Federal Equity Receivers (NAFER).

**<u>Corporate Overview</u>**
DWC was founded in 1989 to provide a wide range of problem resolution and real estate services. Our professional team has earned a unique track record of success with our diverse client base, which includes financial institutions, law firms, investors, state and federal courts and property owners located throughout the country. With a seasoned team of business, real estate and financial services professionals, DWC offers a level of specialized services not found elsewhere.

With offices in Las Vegas, Los Angeles/Orange County, Phoenix, San Diego, San Francisco, and Washington, D.C., DWC is the largest receivership business entity of its kind. Focusing on our commitment to and relationships with our clients, we provide court-appointed fiduciary, asset management, consulting, business planning, receivership, development, entitlement and

Exhibit 6 Page 27

construction management services. To date, we have provided problem resolution services for more than 1,200 matters spanning 35 states involving assets valued in excess of $15 billion.

## Proposed DWC Team and Approach

Please find below a summary of DWC's proposed team. DWC utilizes a team approach which draws upon the collective experience of its employees. Primarily assigned to this project will be:

**Douglas Wilson, Chairman/CEO** – Mr. Wilson brings over 38 years of experience in problem resolution, development, and real estate management to his Companies' clients. During his career, Mr. Wilson has overseen the management, development, and disposition of over $15 billion in assets and has served as a court appointed fiduciary for more than 1,200 matters in both State and Federal Courts. Mr. Wilson has grown his problem resolution business to serve the growing complex problems that face many lending institutions and bankruptcy courts.

**Michele Vives, Vice President (Receiver)** – Ms. Vives has been with DWC for approximately 8 years. During her tenure, Ms. Vives has worked on several receivership matters acting in a leadership role. Due to her varied experience in both corporate operations and real estate sectors, Ms. Vives possess a business acumen that lends to fully understanding budgets, operations, financial analysis and the resolution of complex transactions. Ms. Vives has been directly involved in various projects and receivership matters with combined value of over $1 billion. She is known for her ability to identify short- and long-term project issues early in the process, provide strategic oversight and facilitate problem resolution. Her command of budgets, timelines, and stakeholder relationships extends across all market segments.

**Lynn M. Goodridge, Certified Public Accountant** – Mrs. Goodridge is responsible for directing the Company's overall financial policies and functions including accounting, credit, insurance, tax and treasury. She directs financial strategy, planning and forecasts, as well as designs and coordinates a wide variety of accounting and statistical data and reports. Mrs. Goodridge has a diversified accounting background with an emphasis on tax, operating companies and real estate. In regard to real estate, she manages the financial reporting, strategic planning, financing, asset disposition and contracts administration and compliance processes relative to all company projects. This includes preparing, reviewing and approving financial pro-formas, preparing underwriting packages, negotiating construction and other financing and identifying the optimal disposition strategy to maximize project and investor returns.

**Ryan Baker, Senior Project Managing Director** – Mr. Baker has extensive receivership experience involving a broad range of operating companies in crisis circumstances. Over the past decade, he has tackled complex cases involving small and large operating companies alike, with each facing their own unique challenges. Mr. Baker has been appointed on or served as lead agent on 100+ Receiver, Provisional Director, Trustee, Partition Referee matters and regulatory receivership assignments originating from traditional banks, private equity funds, the Securities and Exchange Commission, and Department of Justice, among many others. These appointments have included managing operations and providing financial oversight for companies and properties with

Exhibit 6 Page 28

gross revenue ranging from $700,000 to $70 million. Mr. Baker has deployed his skills in strategic planning, management, financial analysis, and forensic accounting to achieve success in turnarounds, asset redirections, or corporate dissolutions. Mr. Baker is a member of the National Association of Federal Equity Receivers (NAFER) and on the board of the California Receiver's Forum (CRF).

Detailed resumes of these individuals are included in the attached materials.

### Executive Summary of Receivership Action Plan

Due to the concern of potentially limited assets in the estate, our immediate focus would be to determine if there are resources available to ensure the receivership can maximize the recovery for the Ponzi scheme victims. Our first step as Receiver would be to assess all potential recovery targets which includes a cost/benefit analysis of pursuing each. Through our initial discussions with the SEC, there appears to be at least four buckets to pursue for a potential recovery which include the following:

1. Investments in companies such as Rogue Black, LLC, LayJax Ventures, LLC as well as potentially others. These investments would be vetted to determine how to maximize their value. Whether it be through a sale of the interest held by the estate or holding the investment through to maturity.
2. Perform a net-winner analysis in conjunction with a review of any referral fees or commissions awarded to those perpetuating the Ponzi scheme. This includes a review of investors who enjoyed returns above their principal investment as well as thoroughly investigating the five alleged insiders who funneled investments into the Ponzi scheme from approximately 200 downstream investors.
3. Review of potential litigation targets who were aware, or should have been aware of the Ponzi scheme including any financial institutions, accountants, insiders or others.
4. Investigate other potential assets that may have been hidden or diverted. This pursuit would, if financially viable and beneficial, include asset searches, high-level forensic accounting and interviews of investors, any employees and potentially others.

The Receiver would quickly review and analyze the recovery potential in each of these tranches to determine the most cost efficient course and best route to maximize the recovery in the estate for the benefit of the Ponzi scheme victims.

Concurrent with the takeover, DWC's team would immediately take control of the company's cash, bank accounts and inventory, to determine their exact status and develop a preliminary action plan. During our initial takeover, we will perform a comprehensive review of the real and personal property and operations which would include a physical inspection, securing of cash collateral, evaluating and replacing or augmenting employees and/or management (if necessary), while conducting a financial and accounting review, implementing financial reporting protocols, providing cash flow projections, reviewing all operational obligations, and other documents, and establishing a financial and operational plan budget going forward.

Exhibit 6 Page 29

Following the initial takeover, and within the initial 45 days, DWC will work closely with all parties to determine if this matter is truly a viable receivership and if so, then establish and implement a receivership plan. DWC will continue to monitor all operations and cash flow while installed as a receiver, frequently evaluating the plan's success and making adjustments as necessary and as agreed upon.

*Additional Receivership Services, as applicable:*
- Obtain control of all bank accounts
- Provide a forensic analysis of the various entities
- Oversee an asset search, if needed
- Provide input to finalize Order Appointing Receiver
- Appear in court as determined necessary and obtain Receiver's Bond
- Notice all known vendors and other interested parties of the Receiver's appointment
- Prepare Initial Report and Monthly Receiver's Reports
- Prepare and file Receiver's Final Accounting
- Prepare and file Receiver's Certificates as determined necessary
- Conduct a physical inspection and inventory of any property subject to the matter
- Secure the property, as applicable
- Implement cash controls and accounting protocols
- Handle books and records for the entities
- Review outstanding payables and receivables
- Prepare and manage a project budget and cash flow forecast for all estimated ongoing expenses
- Review the status of all taxes
- Review and evaluate the status of all entities and their associated ownership structures

**Experience**

DWC has extensive experience in all aspects of operating companies and Ponzi schemes, and has been retained to provide receivership, asset management and consulting services and manage the liquidation process of a number of high profile assignments. DWC also has a proven ability to communicate with the owners and stakeholders to limit controversy and disruption to operations. Below is a partial list of some of our similar projects and attached is a comprehensive list of more notable operating company assignments.

**Burnham Pacific Properties** – Burnham Pacific Properties was delisted from the New York Stock Exchange and had to transfer its remaining assets and liabilities to the BPP Liquidating Trust. As a Co-Trustee of that Trust, DWC performed an orderly liquidation of the trust and assets by completing the sale of the remaining real estate assets, collecting receivables on the entire portfolio, managing the outstanding litigation and settling the unsettled liabilities of the Trust.

Exhibit 6 Page 30

**USA v. Rubi** – A multi-entity, multi-national investigation of a pyramid scheme involving several hundred investors' investments in fraudulent investment products. DWC, agent for the Receiver, was tasked with collecting, liquidating and distributing assets to the investors. DWC conducted a comprehensive forensic investigation to trace funds and assist individual investors in recovering their investment. DWC collected multiple bank, accounting and finance records from investors and defendants in order to recreate accurate records to reconcile funds. The project's legal complexity required DWC to coordinate with several U.S. government agencies, including the Federal Bureau of Investigation and U.S. Customs, as well as several non-U.S. governments including the Philippines, England, and France. Finally, DWC prepared a reconciliation of investor balances, then developed and implemented a communication plan to serve investors.

**Private Equity Management Group (PEMG)** – A large, $1 Billion Ponzi scheme involving nine large investor-banks. As project manager for the Receiver, a DWC team member was tasked with finding and liquidating assets from around the world and distributing the recovery to harmed investors. Tasked with reviewing the operations of PEMG and confirm whether it had been operating as alleged in the SEC's complaint. It was quickly determined that PEMG was operating as a massive Ponzi scheme and was utilized as a personal piggy bank for the company's principal. Following this determination, the team was tasked with maximizing the recovery for investors by selling 50+ assets worldwide — including three coal mines in China, 880 acres in Costa Rica, a large timeshare project in Canada, oil and gas rights in Russia, real properties, promissory notes in the US and the most unique asset — 275 life insurance policies with over $1B in face value. Tasks also involved pursuing litigation against insiders, attorneys and accountants for assisting in perpetuating the fraud.

**Norman vs. Norman** – This assignment involved the largest industrial business park in the United States. As the Special Master, DWC was charged with assisting in the settlement of a father/son financial dispute regarding the management of their jointly-owned industrial business park. DWC provided forensic accounting services, including a comprehensive review of all cash, real estate and partnership transactions for 10 separate legal entities over the preceding 11-year period. As part of this assignment, DWC reviewed and advised over 2,000 financial and nearly 200 real estate transactions.

**J.E. Higgins Lumber Company** – A large-scale, regional lumber company and supplier of various construction related hardwood, flooring, and window framing products. At its peak, the 125-year old company had revenues exceeding $300 million, with well over a dozen locations and over 600 employees. DWC was charged with managing the interim operations and liquidation of the company and its diverse assets. Immediately after taking control over the operating company, DWC provided an in-depth review of the company's financial position, which had already begun an orderly consolidation and wind down. Following its initial review, DWC formulated a strategic liquidation plan, and obtained court approval to

Exhibit 6 Page 31

liquidate the company's assets while overseeing its interim operations in order to maximize the recovery of proceeds. DWC's responsibilities included overseeing the collection of accounts receivable, selling various real estate assets, directing the orderly liquidation of inventory, resolving numerous outstanding liens, and defending the company against any lawsuits that may arise.

**A&J Cheese Company** – A food manufacturer and distributor of Italian cheese and food products with multiple manufacturing and distributor of Italian cheese and food products with multiple manufacturing, distribution and storage facility operations located throughout the greater Los Angeles area. DWC oversaw operations management for approximately six months prior to implementing the liquidation of inventories. During this time, DWC administered a comprehensive forensic accounting and managed a receivables portfolio in excess of $50 million. DWC also served as the custodian of records and worked closely with various agencies conducting multiple investigations. Once accounting and other issues were resolved, DWC negotiated and executed the sale of the business.

**UFC Seafood** – An Asian food importer and distributor located in Los Angeles, California, DWC, as agent for Receiver, liquidated assets and collected receivables for UFC Seafood. DWC took possession of three distribution warehouses and prepared an inventory of all assets. During the following 11-month period, DWC negotiated more than 100 separate sales of more than $1 million in perishable and non-perishable foodstuffs, dry goods and personal property. After reviewing and correcting the company's accounting systems to reflect an accurate value and instituting a comprehensive collection plan, DWC returned the leased warehouse and storage facilities to their respective landlords. Ultimately, DWC liquidated the assets of UFC and collected all due receivables.

**Tri-National** – A bankruptcy estate consisting of three separate land parcels in and around Rosarito, Mexico. Appointed as Trustee, DWC took control of the assets, secured the title and liquidated the properties. The Trustee maintains the debtor's books and records; prepares monthly operating reports; receives payments and makes distributions; assists counsel in preparing status reports; prepares various financial analysis and projections; coordinates activities with Capital Trust relating to resolution of the case, property sales activity and funds distribution; resolves issues relating to title and ownership for the Mexican properties; performed numerous physical inspections of the property relating to illegal trespassers; conducted numerous meetings with the various parties in order to facilitate the sale of the Mexican properties; meets with brokers and potential purchasers of the Mexican properties; and has coordinated final Mexican property sales activity.

**NexHorizon Communications** – A San Diego based cable company that provides digital cable and high speed internet to approximately 1,000 subscribers in Southern San Diego County, DWC was tasked to take possession, custody and control of the business premises and collateral assets. DWC focused on resolving outstanding utility matters related to the City of Chula Vista and SDG&E. After resolving various building code violations related

Exhibit 6 Page 32

to the City of Chula Vista, the Receiver petitioned the court for permission to sell the asset.
The Receiver settled in an auction style format and published the proposed auction details
in various news and industry sites.

**Conflicts of Interest**

We have run the corporate and individual names of those involved through DWC's conflict check
system and there were no conflicts.

**Legal Counsel**

Subject to conflict checks, and after our own due diligence, two different law firms that each have
SEC experience and knowledge of IP and other entertainment industry issues. We would suggest
that a final selection be made if we are selected as receiver, so we can have the valued input of the
SEC.

**Resources and Billing Rates**

We are mindful that, it is important to reduce our rates so that the expenses of the estate are
competitive and that receivership expenses ultimately reduce any net recovery for the investors.
We, therefore, will discount our hourly rates by 10% from the attached rate sheet. For example, my
hourly rate is $405 per hour which is discounted from $450 per hour. We work hard to staff tasks
with the most cost-effective personnel structure while always having a goal to maximize the
proceeds for the estate. When we engage receiver's counsel, we will be certain that their rates have
a similar discount.

Thank you for contacting us about this receivership opportunity and I am confident in our ability to
act on behalf of the Court and administer a fair and efficient receivership. I look forward to talking
to you again and am happy to answer additional questions and provide further information.

Kind Regards,

Douglas P. Wilson
Chairman & CEO
DOUGLAS WILSON COMPANIES

Enclosure
cc:      Lance Jasper (*jasperml@sec.gov*)
         Kathryn Wanner (*wannerk@sec.gov*)

Exhibit 6 Page 33