Terence G. Banich (SBN 212173)
terence.banich@katten.com
Allison E. Yager (*pro hac vice*)
allison.yager@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661
Telephone: (312) 902-5200
Facsimile: (312) 902-1061

*Attorneys for the Receiver*
Michele Vives

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:21-cv-02927-CAS(GJSx) |
| Plaintiff, | **NOTICE OF MOTION AND MOTION OF RECEIVER MICHELE VIVES FOR ORDER APPROVING SETTLEMENT WITH SUSAN KOZLOWSKI AND RELATED ENTITIES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| ZACHARY J. HORWITZ and 1inMM CAPITAL, LLC, | |
| Defendants. | |

Date: January 23, 2023
Time: 10:00 a.m. PT
Judge: Hon. Christina A. Snyder
Courtroom: 8D

*KATTEN MUCHIN ROSENMAN LLP*
*525 W. MONROE ST.*
*CHICAGO, IL 60661*
*(312) 902-5200*

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on January 23, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 8D, located at the United States Courthouse, 350 West First Street, Los Angeles, California 90012, Michele Vives, not individually, but solely as the federal equity receiver (the "Receiver") of defendant of 1inMM Capital, LLC and its subsidiaries, affiliates and over the assets more particularly described in the *Order on Appointment of Permanent Receiver*, dated January 14, 2022 [ECF #70] (the "Receiver Order"), will and hereby does move the Court for entry of an order approving the settlement with Susan Kozlowski and certain of her related entities (the "Motion").

The Motion is based on the Memorandum of Points and Authorities below and is supported by the *Declaration of Michele Vives*, dated December 23, 2022 ("Vives Decl."), copy attached as **Exhibit 1**.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on December 23, 2022 with Ms. Wanner on behalf of the Securities and Exchange Commission, and on December 22, 2022 with Michael Quinn, counsel for defendant Zachary Horwitz.

Dated: December 23, 2022

Respectfully submitted,

**KATTEN MUCHIN ROSENMAN LLP**

By:     /s/*Terence G. Banich*
Terence G. Banich

*Attorneys for the Receiver*
Michele Vives

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

## MEMORANDUM OF POINTS AND AUTHORITIES

### Factual Background

**A.     The SEC's enforcement action against Horwitz and 1inMM**

On April 5, 2021, the Securities and Exchange Commission ("SEC") commenced the above-captioned action against Zachary J. Horwitz ("Horwitz") and 1inMM Capital, LLC ("1inMM," and together with Horwitz, the "Defendants"), alleging that they committed an offering fraud and Ponzi scheme[1] in violation of the federal securities laws. (*Complaint*, dated April 5, 2021 [ECF #1] ("Compl."), ¶¶ 1, 4.)

Specifically, the SEC alleges that, since at least March 2014 and continuing until at least December 2019, Defendants raised over $690 million from investors by selling promissory notes issued by 1inMM using fabricated agreements and fake emails with prominent third-party companies with whom Defendants had no actual business relationship. (Compl. ¶¶ 4, 19-33.) Defendants represented to potential investors that the purpose of the offering was to finance 1inMM's acquisition and licensing of distribution rights in specific movies to major media companies, such as Netflix and Home Box Office ("HBO"). (*Id.* ¶¶ 5, 34-38.) To induce investors to purchase 1inMM's promissory notes, Horwitz made various false and misleading statements about his experience and the involvement of major media corporations as his "Strategic Partner[s]," and showed potential investors falsified documents and communications to make his statements more believable. (*Id.* ¶¶ 5-6, 39-48.) The reality, however, was that Defendants had no relationship with Netflix or HBO, and

---

[1] "A Ponzi scheme is a fraudulent arrangement in which an entity makes payments to investors from monies obtained from later investors rather than from any 'profits' of the underlying business venture. The fraud consists of funnelling proceeds received from new investors to previous investors in the guise of profits from the alleged business venture, thereby cultivating an illusion that a legitimate profit-making business opportunity exists and inducing further investment." *In re United Energy Corp.*, 944 F.2d 589, 590 n.1 (9th Cir. 1991) (citing *Cunningham v. Brown*, 265 U.S. 1, 7-8 (1924)).

had never licensed any movie rights to any company. (*Id.* ¶¶ 8, 49.) Horwitz used investor funds to pay purported returns on previous investments, as well as to spend lavishly on his lifestyle. (*Id.* ¶¶ 4, 9-12, 50-61.)

## B.    The Receiver Order

On December 8, 2021, the SEC filed a motion in this case asking the Court to appoint a receiver over 1inMM and over all assets held by, for the benefit of or under the direct or indirect control of Horwitz (the "Receiver Motion"). [ECF #65] In the Receiver Motion, the SEC argued that appointing an equity receiver was necessary to marshal investor assets that Horwitz misappropriated into a variety of third-party business enterprises or for his own personal benefit. (Receiver Mot. at 1.) The SEC alleged that Defendants raised a staggering $690 million from investors, and subsequently invested about $23 million into startup and film-production companies. (*Id.* at 1, 3-4.) These investments, the SEC asserted, may result in significant monetary returns, so they require the management and supervision of an independent fiduciary in order to maximize recovery to the defrauded investors. (*Id.* at 5-7.)

On January 14, 2022, the Court granted the Receiver Motion and entered the Receiver Order, finding that good cause existed to appoint a permanent receiver over 1inMM as well as assets that are attributable to investor or client funds or that were fraudulently transferred by Defendants, in order to identify and marshal assets to make the defrauded investors as whole as possible. (Receiver Order § I; Vives Decl. ¶ 4.) Ms. Vives is receiver of 1inMM and its subsidiaries and affiliates, as well as over the assets that are attributable to funds derived from investors or clients of Defendants or were fraudulently transferred by Defendants (collectively, the "Estate"). (Receiver Order §§ I-II; Vives Decl. ¶ 4.)

The Receiver Order confers on Ms. Vives "full powers of an equity receiver," and specifically authorizes and directs the Receiver to, among other things: take custody and control over all assets of 1inMM and its subsidiaries and affiliates;

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

conduct an investigation and discovery as may be necessary to locate and account for the assets of or managed by 1inMM and its subsidiaries and affiliates; and investigate and, where appropriate, prosecute claims and causes of action that the Receiver may possess. (Receiver Order § II; Vives Decl. ¶ 5.)

### C.  The Receiver's investigation of transfers

Pursuant to the authority conferred on her by the Receiver Order, and as the Receiver has discussed in her previous quarterly reports, the Receiver and her staff have devoted a great deal of time and effort to conduct a forensic accounting analysis of the financial transactions involving 1inMM, Horwitz and their respective insiders and affiliates. (Vives Decl. ¶ 6.) This project is critical to determine who may be liable to the Estate for receiving fraudulent transfers, identify previously unknown assets and obtain information about 1inMM's investors. (*Id.*)

The Receiver has determined that 1inMM did not just transfer funds to investors and their feeder funds; 1inMM also transferred very large sums to various persons and entities who do not appear to have been investors in the 1inMM Ponzi scheme. (Vives Decl. ¶ 7.) The Receiver is investigating both types of transfers. (*Id.*) In doing so, the Receiver will be able to identify potential fraudulent transfers to both investors and non-investors alike, thereby increasing the pool of potential recovery to the Estate. (*Id.*) *See, e.g., Donell v. Kowell*, 533 F.3d 762, 767 (9th Cir. 2008) ("[c]ourts have routinely applied [the California Uniform Voidable Transactions Act] to allow receivers or trustees in bankruptcy to recover monies lost by Ponzi-scheme investors").

Settlements that the Receiver reaches with such transferees are likely to be very significant Estate assets. (Vives Decl. ¶ 7.) The Receiver and her professional staff have, therefore, devoted considerable time and attention to reviewing and analyzing tens of thousands of banking transactions and other records associated

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

with 1inMM and Horwitz to identify those persons and entities who may have received transfers that are subject to avoidance and recovery. (*Id.* ¶ 8.)

### D. Transfers to the Kozlowski Entities and subsequent investigation

During her forensic accounting investigation, the Receiver discovered that 1inMM and Horwitz had made a significant amount of transfers to Susan M. Kozlowski ("Ms. Kozlowski"), who is Horwitz's mother, as well as to two entities affiliated with her. (Vives Decl. ¶ 9.) Specifically, the Receiver determined that, between 2015 and 2020, 1inMM Defendants made multiple transfers in the total aggregate amount of $3,392,310.98 (the "Transfers") to Ms. Kozlowski, the Susan M. Kozlowski Living Trust, dated January 8, 2010 (the "Kozlowski Trust"), and the Robert and Susan Kozlowski L.I.F.T. Foundation Irrevocable Trust, a/k/a the L.I.F.T. Foundation ("LIFT," and collectively with Ms. Kozlowski and the Kozlowski Trust, the "Kozlowski Entities"). (*Id.* ¶ 10.)

On April 4, 2022, the Receiver issued a subpoena to the Kozlowski Entities requesting various documents and communications associated with the Transfers. (Vives Decl. ¶ 11.) The Kozlowski Entities responded to the subpoena through their counsel, M. Anthony Brown of Spertus, Landes & Umhofer, LLP in Los Angeles, California, and subsequently produced several hundred pages of documents to the Receiver. (*Id.* ¶ 12.) Through discussions with Mr. Brown and review of documents Ms. Kozlowski produced, the Receiver determined that Ms. Kozlowski was an investor in 1inMM, and that in connection therewith she made nine investments in 1inMM of $350,000 each between 2015 and 2017, for an aggregate total of $3,150,000 ("Principal"). (*Id.* ¶ 13.) On various dates between approximately July 1, 2015 and February 17, 2017, 1inMM made nine transfers to Ms. Kozlowski of $360,000, each which constituted a return of her principal investment of $350,000

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

plus a profit of $10,000, for a grand total of $3,240,000 (i.e., $90,000 profit and $3,150,000 return of Principal). (*Id.* ¶ 14.)

The Receiver also determined that the Kozlowski Entities received additional transfers from 1inMM or Horwitz totaling $152,310.98 that were unrelated to Ms. Kozlowski's investments in 1inMM. (Vives Decl. ¶ 15.) These transfers were for Ms. Kozlowski's Mercedes-Benz vehicle lease obligations, as well as her home kitchen remodeling project. (*Id.*) They also included Horwitz's repayment of an alleged loan from Ms. Kozlowski, and a donation he made to LIFT. (*Id.*) In sum, the Transfers that the Kozlowski Entities received were as follows:

| Category | Amount |
|---|---|
| Return of Principal | $3,150,000 |
| Profit on 1inMM investments | $90,000 |
| Mercedes-Benz lease payments | $117,313.65 |
| Kitchen remodeling project | $24,997.33 |
| Donation to LIFT | $5,000.00 |
| Repayment of alleged loan | $5,000.00 |
| Total | $3,392,310.98 |

(*Id.* ¶ 16.)

### E.   The parties' claims and defenses as to the Transfers

The Receiver asserted that she may avoid and recover all of the Transfers as actual fraudulent transfers pursuant to section 3439.04(a)(1) of the California Uniform Voidable Transactions Act, Cal. Civ. Code § 3439 *et seq.* ("UVTA") (the "Claims"). (Vives Decl. ¶ 17.) This was because, the Receiver contended, 1inMM and Horwitz made the Transfers with the actual intent to hinder, delay, or defraud their creditors, as Horwitz pled guilty and admitted that he used 1inMM to operate a Ponzi scheme, which conclusively establishes the intent element for purposes of an actual fraudulent transfer claim under Cal. Civ. Code § 3439.04(a)(1). (*Id.*) Finally, as there was no serious question that the Kozlowski Entities were either the first transferees of the Transfers or the persons for whose benefit those transfers were

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

1   made, the Receiver argued that she could recover all of the Transfers from them
2   under Cal. Civ. Code § 3439.08(b)(1)(A). (*Id.* ¶ 18.)

3       The parties then spent several months engaged in good-faith, arms-length
4   settlement negotiations. (Vives Decl. ¶ 19.) The Kozlowski Entities asserted various
5   defenses to the Claims. (*Id.* ¶ 20.) Ms. Kozlowski's principal defense was that the
6   Receiver could not avoid or recover the Principal transfers (i.e., $3,150,000 of the
7   $3,392,310.98 total in controversy) because she was a legitimate investor in 1inMM
8   without any knowledge that 1inMM was a Ponzi scheme, and therefore would
9   successfully demonstrate that she received the Principal transfers in good faith and
10  for value, which is an affirmative defense under UVTA, Cal. Civ. Code § 3439.08(a).
11  (*Id.*) The Receiver reviewed the financial records, communications and other
12  documents that the Kozlowski Entities produced in response to her subpoena, in
13  large part to evaluate the relative strength of the Kozlowski Entities' good-faith
14  defense. (*Id.* ¶ 21.) The point remained closely contested throughout the parties'
15  negotiations. (*Id.*)

16      **F.    The proposed settlement**

17      On December 21, 2022, the parties entered into that certain *Settlement*
18  *Agreement and Mutual Release* (the "Settlement Agreement"), a true and correct
19  copy of which is attached as **Exhibit 2**. (Vives Decl. ¶ 22.)

20      As reflected in the Settlement Agreement, the Kozlowski Entities agreed to
21  pay $300,000 to the Estate in full settlement of the Claims (the "Settlement

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

1  Payment"). (Vives Decl. ¶ 23; Sett. Agmt. ¶ 2.) The Settlement Payment was
2  calculated as follows:

| Category | Amount | % Recovery |
|---|---|---|
| Return of Principal | $57,689.02 | 1.83% |
| Profit | $90,000 | 100% |
| Mercedes-Benz lease payments | $117,313.65 | 100% |
| Kitchen remodeling project | $24,997.33 | 100% |
| Donation to LIFT | $5,000.00 | 100% |
| Repayment of alleged loan | $5,000.00 | 100% |
| Total | $300,000 | |

(Vives Decl. ¶ 23.) In essence, then, the Kozlowski Entities agreed to return 100 percent of the money they received from 1inMM and Horwitz—including all of Ms. Kozlowski's profit on her investments in 1inMM—as well as about two percent of the Principal transfers. (*Id.* ¶ 24.) These percentages reflect the Receiver's assessment of the relative strength of her claims weighed against the risk and cost associated with litigating those claims, particularly as to Ms. Kozlowski's asserted UVTA good-faith defense. (*Id.*)

The parties will exchange mutual general releases of any claims arising out of or relating to the Kozlowski Entities' transactions and dealings with 1inMM and Horwitz, the Transfers and the Claims. (Vives Decl. ¶ 25; Sett. Agmt. ¶¶ 3-5.) The Kozlowski Entities will also waive any right to file, and covenant not to file, a claim against the Estate. (Vives Decl. ¶ 26; Sett. Agmt. ¶ 7.) The validity of the Settlement Agreement, and the parties' obligations thereunder, are subject to the condition precedent that the Court enters an order approving its material terms. (Vives Decl. ¶ 27; Sett. Agmt. ¶ 8.)

## Legal Standards

District courts have "extremely broad" power and "wide discretion" in overseeing the administration of a receivership. *Sec. & Exch. Comm'n v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986) (internal citations omitted). The Ninth Circuit "affords 'broad deference' to the district court's supervisory role" in receivership cases, and "generally uphold[s] reasonable procedures instituted by the district court

1    that serve th[e] purpose of orderly and efficient administration of the receivership

2    for the benefit of creditors." *Commodity Futures Trading Comm'n v. Topworth Int'l,*

3    *Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999) (quoting *Hardy*, 803 F.3d at 1037-38).

4            That broad authority to oversee the administration of a receivership extends

5    to approving compromises and settlements. "[N]o federal rules prescribe a particular

6    standard for approving settlements in the context of an equity receivership; instead,

7    a district court has wide discretion to determine what relief is appropriate." *Gordon*

8    *v. Dadante*, 336 F. App'x 540, 549 (6th Cir. 2009) (citing *Liberte Cap. Grp., LLC v.*

9    *Capwill*, 462 F.3d 543, 551 (6th Cir. 2006)); *see also Sec. & Exch. Comm'n v.*

10   *Kaleta*, 530 F. App'x 360, 362 (5th Cir. 2013) (affirming order approving receiver's

11   settlement, observing "because this is a case in *equity*, it is neither surprising nor

12   dispositive that there is no case law directly controlling" the district court's order

13   approving the compromise) (original emphasis).

14           Local Rule 66-8 directs a receiver to "administer the estate as nearly as

15   possible in accordance with the practice in the administration of estates in

16   bankruptcy." LR 66-8. District courts sitting in receivership may look to bankruptcy

17   law for guidance about the administration of a receivership. *See, e.g., Sec. & Exch.*

18   *Comm'n v. Cap. Consultants, LLC*, 397 F.3d 733, 745 (9th Cir. 2005) (bankruptcy

19   law "analogous" and therefore persuasive in administration of receivership estates).

20   This is largely because "the purpose of bankruptcy receiverships and equity

21   receiverships is 'essentially the same—to marshal assets, preserve value, equally

22   distribute to creditors, and, either reorganize, if possible, or orderly liquidate.'" *Sec.*

23   *& Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 841 (5th Cir. 2019)

24   (quoting *Janvey v. Alquire*, No. 3:09-cv-0724, 2014 WL 12654910, at *17 (N.D.

25   Tex. July 30, 2014)); *accord Sec. & Exch. Comm'n v. Wealth Mgmt. LLC*, 628 F.3d

26

27

28

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

323, 334 (7th Cir. 2010) ("[t]he goal in both securities-fraud receiverships and liquidation bankruptcy is identical—the fair distribution of the liquidated assets").

Courts in this circuit typically apply bankruptcy principles to evaluate approval of settlements in receivership cases. *Sec. & Exch. Comm'n v. Champion-Cain*, 2022 WL 126114, at *1 (S.D. Cal. Jan. 13, 2022) (applying bankruptcy principles regarding approval of settlements in receivership case); *Sec. & Exch. Comm'n v. Total Wealth Mgmt., Inc.*, 2019 WL 13179068, at *2 (S.D. Cal. Sept. 18, 2019) (same). Bankruptcy courts evaluate whether a compromise is "fair and equitable," taking into consideration "[a] the probability of success in litigation, [b] any difficulties that may be encountered in collection, [c] the complexity of the litigation, the expense, inconvenience, and delay necessarily attending, and [d] the interest of the receivership entities' creditors and their reasonable views." *Champion-Cain*, 2022 WL 126114, at *1 (citing *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988)); *see also Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986)).

"The analysis under these factors is holistic; the Court must canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness…[I]t is not necessary to satisfy each of these factors provided that the factors as a whole favor approving the settlement." *Total Wealth Mgmt., Inc.*, 2019 WL 13179068, at *3 (internal citations and quotations omitted); *accord In re Open Med. Inst., Inc.*, 639 B.R. 169, 185 (B.A.P. 9th Cir. 2022) ("a settlement can satisfy the *A & C Properties* test even if the evidence supporting one or more of the four factors is relatively weak"). The Court should consider these factors "as a whole, and not individually in a vacuum, to ascertain whether the settlement is a good deal compared to litigation." *Open Med. Inst.*, 639 B.R. at 185. Further, when assessing a settlement, the Court need not decide issues of disputed fact or questions

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

of law raised in the controversies sought to be settled. *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (9th Cir. BAP 1997).

Courts generally should "give deference to a [receiver's] business judgment in deciding whether to settle a matter for the benefit of the estate." *In re Douglas J. Roger, M.D., Inc., APC*, 393 F. Supp. 3d 940, 961 (C.D. Cal. 2019) (cleaned up); *see also In re Lahijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005). "Approving a proposed compromise is an exercise of discretion that should not be overturned except in cases of abuse leading to a result that is neither in the best interests of the estate nor fair and equitable for the creditors." *In re MGS Mktg.*, 111 B.R. 264, 266–67 (B.A.P. 9th Cir. 1990).

## Argument

The Motion should be granted because the settlement is fair, equitable and far preferable to protracted litigation with the Kozlowski Entities.

First, the Receiver's probability of success litigating the Claims is mixed. This is largely a function of how controlling law interpreting UVTA limits a receiver's ability to claw back money from investors in a Ponzi scheme. *Cf. In re ID Liquidation One, LLC*, 555 F. App'x 202, 206 (3d Cir. 2014) (in assessing probability of success factor, courts consider substantive issues pertaining to the claims at issue).

The Receiver's potential claims against the Kozlowski Entities arise under UVTA, the purpose of which is "to prevent debtors from placing, beyond the reach of creditors, property that should be made available to satisfy a debt by transferring that property to others." *RPB SA v. Hyla, Inc.*, No. CV-20-04105-JAK, 2021 WL 4980092, at *4 (C.D. Cal. June 24, 2021) (quoting *Chen v. Berenjian*, 33 Cal. App. 5th 811, 817 (2019)) (cleaned up). UVTA enables a creditor to bring an action to avoid a fraudulent transfer of an asset to the extent necessary to satisfy its claim. Cal. Civ. Code § 3439.07(a)(1). A transfer is fraudulent—and thus avoidable—if the debtor transferred the asset either (1) with actual intent to hinder, delay, or defraud

1   any of its creditors, or (2) without receiving reasonably equivalent value in exchange
2   therefor when it had unreasonably small capital or was insolvent (often called
3   "constructive fraud"). *Id.* §§ 3439.04(a)(1)-(2). A creditor may bring an action under
4   UVTA against the first transferee of the asset, the person for whose benefit the
5   transfer was made or any subsequent transferees. *Id.* §§ 3439.08(b)(1)(A)-(B).

6        Fraudulent transfer claims—colloquially called "clawback" actions—are
7   among a receiver's most important tools to recover monies lost by Ponzi-scheme
8   investors. *See, e.g., Donell*, 533 F.3d at 767 (courts "have routinely applied" UVTA
9   for this purpose). The Ponzi scheme operator is the "debtor" and each investor is a
10  "creditor," although the investors who profited from the scheme on a net basis—
11  sometimes called "net winners"—are the recipients of the Ponzi scheme operator's
12  fraudulent transfers, and are thus liable under UVTA. *Id.* at 767, 771. An equity
13  receiver has standing to pursue fraudulent transfer claims "to redress injuries that
14  [the receivership entity] suffered when its managers caused [it] to commit waste and
15  fraud." *Id.* at 777; *see also McNamara v. Hallinan*, No. 2:17-CV-02967-GMN, 2019
16  WL 4752265, at *5 (D. Nev. Sept. 30, 2019).

17       Like any UVTA claimant, a receiver may assert that a transfer was actually or
18  constructively fraudulent. *Donell*, 533 F.3d at 770. But the debtor's admission that
19  it operated a Ponzi scheme *conclusively* establishes the debtor's fraudulent intent for
20  a UVTA claim premised on actual fraud (*In re Slatkin*, 525 F.3d 805, 814 (9th Cir.
21  2008)),[2] as well as the debtor's financial distress for a UVTA claim premised on

22

23

_____

24  [2] "We now hold that a debtor's admission, through guilty pleas and a plea agreement admissible
    under the Federal Rules of Evidence, that he operated a Ponzi scheme with the actual intent to
25  defraud his creditors conclusively establishes the debtor's fraudulent intent under 11 U.S.C. §
    548(a)(1)(A) and California Civil Code § 3439.04(a)(1), and precludes relitigation of that issue."
26  *Slatkin*, 525 F.3d at 814.

27

28

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

constructive fraud (*Donell*, 533 F.3d at 770-71).[3] To determine whether a Ponzi scheme investor is liable to the estate for receiving fraudulent transfers, courts apply the "netting rule." *Id.* at 771. Under that rule, "the amounts transferred by the Ponzi scheme perpetrator to the investor are netted against the initial amounts invested by that individual. If the net is positive, the receiver has established liability[.]" *Id.* Generally, "innocent" investors may retain the payments they received up to the amount invested, but they must disgorge the "profits" paid to them by the Ponzi scheme as they "do not represent a return on legitimate investment activity." *Id.* (quoting *In re Lake States Commodities, Inc.*, 253 B.R. 866, 872 (Bankr. N.D. Ill. 2000)).

Investors may retain payments returning the amounts invested only if they can prove that they received those transfers in good faith and for reasonably equivalent value. Cal. Civ. Code § 3439.08(a); *see also Donell*, 533 F.3d at 771. But a receiver may, under an actual fraud theory, challenge a winning investor's good faith by seeking to avoid and recover *the entire amount* paid to the investor, including amounts which could be considered "return of principal." *Donell*, 533 F.3d at 771. The investor has the burden of proving the defense that it received transfers returning its principal investment in good faith and for value. Cal. Civ. Code § 3439.08(f)(1). Whether the good-faith defense applies is a question of fact. *See, e.g., Neilson v. E*

---

[3] "Proof that transfers were made pursuant to a Ponzi scheme generally establishes that the scheme operator '[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction,' § 3439.04(a)(2)(A), or '[i]ntended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due,' § 3439.04(a)(2)(B)." *Donell*, 533 F.3d at 770-71.

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

*& F Fin. Servs., Inc. (In re Cedar Funding, Inc.)*, No. 08-52709-MM, 2011 WL
5855441, at *5 (Bankr. N.D. Cal. Nov. 22, 2011).

Here, as discussed above, the vast majority of the Transfers—$3,240,000 of
the $3,392,311 in controversy—related to Ms. Kozlowski's investment in the
1inMM Ponzi scheme, which she made by nine separate payments to 1inMM of
$350,000 each. 1inMM paid each of those nine investments back to Ms. Kozlowski,
plus a profit of $10,000 (for a total profit of $90,000). Had the Receiver commenced
litigation against Ms. Kozlowski, the Receiver would have had a high probability of
success at avoiding and recovering the $90,000 of fictitious profits that Ms.
Kozlowski received as a result of her investments in 1inMM, as she likely would
have no defense to that claim. *Cf. In re Walldesign, Inc.*, 872 F.3d 954, 965 (9th Cir.
2017) (first transferees are strictly liable); *see also Donell*, 533 F.3d at 772 (UVTA
"requires disgorgement" of Ponzi scheme "profits"). Ms. Kozlowski has agreed to
return ***100% of the profits*** she received from 1inMM, so this portion of the
settlement is equivalent to total victory following litigation. This outcome is
therefore obviously reasonable.

So too is the settlement relating to Ms. Kozlowski's receipt of transfers
unrelated to her investments in 1inMM—namely, the Mercedes-Benz lease
payments, the kitchen remodeling project, the donation to LIFT and the repayment
of an alleged loan to Horwitz. Those transfers total $152,310.98, and again Ms.
Kozlowski has agreed to return ***100 percent*** of that total.

In contrast, whether the Receiver could avoid the transfers returning each of
Ms. Kozlowski's nine $350,000 Principal investments (totaling $3,150,000)
presents a much more difficult question. The Receiver initially asserted that Ms.
Kozlowski would be unable to prove the defense that she received the Principal
transfers in good faith and for value, mainly because of her status as an "insider" of
1inMM andcertain highly unusual features of the notes that 1inMM issued to her,
among other factors. (Vives Decl. ¶ 28.) As a consequence, the Receiver asserted

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

that all of the $3,150,000 of Principal transfers were also at risk of avoidance. (*Id.*) Aided by Mr. Brown, her skilled and able counsel, Ms. Kozlowski strenuously contested this point, arguing that she would prevail on her good-faith defense, and produced hundreds of pages of documents and other communications in support of her position. (*Id.* ¶ 29.) After closely reviewing those materials and the legal arguments presented by Mr. Brown, the Receiver ultimately concluded that the probability of defeating Ms. Kozlowski's good-faith defense at trial was far from certain and the cost of litigating that issue through appeal would likely be prohibitive. (*Id.* ¶ 30.) That is particularly because a defendant's good faith is a factual question, which would likely have required a trial to resolve. (*Id.*)

The Receiver's agreement to settle for $57,689.02 of the Principal transfers (i.e., about 1.83% of the total) is reasonable and should be approved. A trial could have resulted in Ms. Kozlowski entirely prevailing on that defense, which would have meant the Receiver recovered no part of the Principal transfers. Rather than take that risk, the Receiver agreed to accept $57,689.02 of the total. (*Id.* ¶ 31.) *See, e.g., Open Med. Inst.*, 639 B.R. at 183-84 (affirming order approving settlement where trustee stated in declaration that he had evaluated claims and was uncertain of his success on the merits if he were to pursue them—characterizing the odds of success as a "coin flip"—and "thought it was safer to settle" instead of litigate).

For these reasons, the Receiver respectfully suggests that the settlement appropriately takes into account the mixed probability of success on the merits of her UVTA claims against the Kozlowski Entities. (*Id.* ¶ 32.) Ms. Kozlowski has agreed to return all of the transfers for which the Receiver had a high probability of success of avoiding and recovering for the estate, and agreed to pay a more modest amount on account of the Receiver's claims that were subject to UVTA's good-faith defense, as their ultimate success was far from assured.

<u>Second</u>, the Receiver is informed and believes that there would be no difficulty in collecting the entire amount of the Transfers from the Kozlowski

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Entities. (Vives Decl. ¶ 33.) This factor, therefore, is neutral. *See, e.g., In re TBH19, LLC*, No. 2:19-BK-23823-VZ, 2022 WL 16782946, at *7 (B.A.P. 9th Cir. Nov. 8, 2022) (difficulty-in-collection factor "neutral" where it "was not of particular concern to either side"); *see also In re Isom*, No. 4:15-BK-40763, 2020 WL 1950905, at *7 (B.A.P. 9th Cir. Apr. 22, 2020) (affirming order approving compromise even though difficulty-in-collection factor weighed against settlement), *aff'd*, 836 F. App'x 562 (9th Cir. 2020).

<u>Third</u>, it would be complex, expensive and time-consuming for the parties to litigate the issue of Ms. Kozlowski's good faith. (Vives Decl. ¶ 34.) This factor is particularly important in liquidations like this one where the goal is "obtaining the best possible realization upon the available assets and without undue waste by needless or fruitless litigation." *In re Law*, 308 F. App'x 152, 153 (9th Cir. 2009) (quoting *In re Blair*, 538 F.2d 849, 852 (9th Cir. 1976)). A defendant's good faith under UVTA is a question of fact, which necessarily entails discovery and trial to resolve, along with all of the time and expense associated with it. *See, e.g., Ryan Racing, LLC v. Gentilozzi*, No. 1:12-CV-488, 2015 WL 728468, at *14 (W.D. Mich. Feb. 19, 2015) (denying summary judgment on UFTA good-faith defense because it presented a question of fact for trial).

Given her review of the available evidence, the Receiver believes that such litigation against Ms. Kozlowski would be expensive and time-consuming, as it would likely require extensive discovery, retention of experts and numerous witnesses. (Vives Decl. ¶ 34.) A trial and appeal would likely take at least two years to complete and cost the estate several hundred thousand dollars in fees and expenses. (*Id.*) This factor, therefore, weighs heavily in favor of approving the settlement. *See, e.g., TBH19*, 2022 WL 16782946, at *3 (complexity element

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

1    weighed in favor of settlement where dispute would require extensive discovery,

2    cost the estate hundreds of thousands of dollars and take years to complete).

3         <u>Fourth</u>, the Receiver believes that the Estate's creditors are likely to support

4    the settlement. (Vives Decl. ¶ 35.) "The opposition of the creditors of the estate to

5    approval of a compromise may be considered by the court, but is not controlling and

6    will not prevent approval of the compromise where it is evident that the litigation

7    would be unsuccessful and costly…In short, creditors have a voice but not a veto."

8    *In re Bondanelli*, No. 2:14-BK-27656-WB, 2020 WL 1304140, at *4 (B.A.P. 9th

9    Cir. Mar. 18, 2020) (quoting *Official Unsecured Creditors' Comm. v. Beverly*

10   *Almont Co. (In re The Gen. Store of Beverly Hills)*, 11 B.R. 539, 541 (9th Cir. BAP

11   1981) (cleaned up)).

12        Here, the creditors' views of the settlement are presently unknown. As

13   discussed below, the Receiver is giving notice of this Motion to all known creditors

14   of the Estate by posting it on the receivership website (the "<u>Website</u>"), as the Court

15   has previously authorized,[4] along with instructions how to advise the Receiver if any

16   creditor wishes to object to the settlement. (Vives Decl. ¶ 37.) The Receiver will file

17   a status report before the hearing as to whether any creditors objected. (*Id.* ¶ 38.)

18                              *   *   *

19        In sum, the Receiver believes that the settlement with the Kozlowski Entities

20   is fair, equitable and adequate under the circumstances to realize the value of the

21   Estate's interest in the Transfers. Litigation is, of course, an alternative course, but

22   "[w]hile the [Receiver] *might* do better in [] litigation, she is not likely to do so[.]"

23   *In re Tidwell*, No. 2:17-BK-20802 RK, 2018 WL 1162511, at *3 (Bankr. C.D. Cal.

24   Mar. 1, 2018) (emphasis added). That is the main reason why approving the

25   settlement is appropriate. Moreover, as discussed above, the settlement avoids

26

27   _____

28   [4] ECF #126 ¶ 5.

Case No. 2:21-cv-02927-CAS(GJSx)
MOTION FOR ORDER APPROVING SETTLEMENT
WITH SUSAN KOZLOWSKI AND RELATED ENTITIES

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

litigation of intensely factual and complex issues of good faith and value, which would necessarily result in more expense, inconvenience and delay for the Estate in realizing the value of the Transfers. The Motion should, therefore, be granted.

### Notice to Creditors

"Creditors are entitled to 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 518 (N.D. Cal. 2008) (quoting *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950)).

The Court has authorized the Receiver to provide creditors of the Estate with notice of filings in this case by posting documents on the Website. [ECF #126 ¶ 5] As the Receiver previously reported, she is still ascertaining the identities and contact information for the investors in 1inMM. While the Receiver has some investors' contact information, the Receiver is presently unsure if she has contact information for all such investors. (Vives Decl. ¶ 36.) In addition to giving notice to the parties and other interested parties by causing the Motion to be electronically filed via the Court's CM/ECF system, the Receiver will email all known creditors of the Estate with a link to this Motion and supporting exhibits. (*Id.* ¶ 37.) The Receiver's email and Website post will include instructions how to advise her of any objections to the Motion by no later than seven days before the hearing. (*Id.*) The Receiver will thereafter file a status report informing the Court if any creditor asserted a timely objection to the Motion. (*Id.* ¶ 38.)

The Court should deem this notice sufficient under the circumstances. *See, e.g., Fed. Trade Comm'n v. Cardiff*, No. CV5:18-2104-SJO, 2020 WL 9938072, at *4 (C.D. Cal. Mar. 10, 2020) (finding receiver's notice of motion to approve settlement was sufficient where receiver posted motion to its website publicly, served on all parties and served on all known creditors and interested parties); *U.S. Commodity Futures Trading Comm'n v. Forex Liquidity LLC*, No. CV-07-01437-

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

CJC, 2008 WL 11334950, at *8 (C.D. Cal. July 14, 2008) (approving receiver's request to limit notice and deviate from Local Rule 66-7 to reduce administrative costs), *aff'd*, 384 F. App'x 645 (9th Cir. 2010).

**WHEREFORE**, the Receiver respectfully requests that the Court enter an order: (a) granting the Motion; (b) finding that notice of the Motion is sufficient under the circumstances and waiving any further notice otherwise required by Local Rule 66-7; (c) approving the terms of the settlement and compromise memorialized in the Settlement Agreement as fair and equitable; (d) authorizing the Receiver to take such further actions as may be necessary to consummate the transactions in the Settlement Agreement; and (e) granting such further relief as the Court deems necessary and appropriate.

Dated: December 23, 2022      Respectfully submitted,

**KATTEN MUCHIN ROSENMAN LLP**

By:    /s/*Terence G. Banich*
        Terence G. Banich

*Attorneys for the Receiver*
Michele Vives

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

## PROOF OF SERVICE

**STATE OF ILLINOIS, COUNTY OF COOK**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Cook, State of Illinois. My business address is 525 W. Monroe St., Chicago, Illinois 60661. On December 23, 2022, I served the following document(s) described as:

**MOTION OF RECEIVER MICHELE VIVES FOR ORDER APPROVING SETTLEMENT WITH SUSAN KOZLOWSKI AND RELATED ENTITIES**

as follows:

**[ ]   BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Katten Muchin Rosenman LLP practice for collecting and processing correspondence for mailing.  On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**[X]   BY E-MAIL OR ELECTRONIC TRANSMISSION:**   I caused the document(s) to be sent from e-mail address terence.banich@katten.com to the persons at the e-mail address(es) listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

M. Anthony Brown (Counsel for the Kozlowski Entites)
Spertus, Landes & Umhofer, LLP
tbrown@spertuslaw.com

**[ ]   BY OVERNIGHT MAIL (FedEx):**  I enclosed said document(s) in an envelope or package provided by FEDEX and addressed to the persons at the addresses listed above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FEDEX or delivered such document(s) to a courier or driver authorized by FEDEX to receive documents.

**[ ]   BY PERSONAL SERVICE:**  I caused said document to be personally delivered the document(s) to the person at the addresses listed above by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office.

**[X]   E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.

Executed on December 23, 2022, at Winnetka, Illinois.

_/s/Terence G. Banich_
Terence G. Banich

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Case No. 2:21-cv-02927-CAS(GJSx)
MOTION FOR ORDER APPROVING SETTLEMENT
WITH SUSAN KOZLOWSKI AND RELATED ENTITIES