Terence G. Banich (SBN 212173)
terence.banich@katten.com
Allison E. Yager (*pro hac vice*)
allison.yager@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661
Telephone:  (312) 902-5665
Facsimile:   (312) 902-1061

*Attorneys for the Receiver*
Michele Vives

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>ZACHARY J. HORWITZ; and 1inMM CAPITAL, LLC,<br><br>    Defendants. | Case No. 2:21-cv-02927-CAS(GJSx)<br><br>**DECLARATION OF MICHELE VIVES**<br><br>Judge:         Hon. Christina A. Snyder<br>Courtroom: 8D |

I, Michele Vives, declare as follows:

1. I am over the age of eighteen years, am under no disability and am competent to testify to the matters set forth herein. Except as otherwise stated, all facts set forth in this declaration are based upon my personal knowledge and/or my review of documents. If called as a witness in this case, I could and would testify competently to the facts set forth in this declaration.

2. I submit this declaration in support of the *Motion of Receiver Michele Vives for Order Approving Settlement with Susan Kozlowski and Related Entities*, dated December 23, 2022 (the "Motion"). Any capitalized terms not defined herein have the meanings ascribed to them in the Motion.

3. I am the President of the Douglas Wilson Companies ("DWC"), an advisory firm that assists companies and entities of all kinds, from financial institutions to operating companies, law firms, state and federal courts, corporations, partnerships, pension funds, REITs and more. DWC has been appointed as receiver or otherwise involved in hundreds of receiver cases over the last 30 years, and has served in other fiduciary roles, such as chapter 11 trustee, chapter 11 examiner, special master, liquidating trustee, assignee for the benefit of creditors and chief restructuring officer.

4. On January 14, 2022, this Court entered the *Order on Appointment of a Permanent Receiver* [ECF #70] (the "Receiver Order"), which appointed me to be the federal equity receiver of defendant 1inMM Capital, LLC as well as assets that are attributable to investor or client funds or that were fraudulently transferred by Defendants (collectively, the "Estate").

5. The Receiver Order confers on me "full powers of an equity receiver," and specifically authorizes and directs me to, among other things: take custody and control over all assets of 1inMM and its subsidiaries and affiliates; conduct an investigation and discovery as may be necessary to locate and account for the assets of or managed by 1inMM and its subsidiaries and affiliates; and investigate

and, where appropriate, prosecute claims and causes of action that the Receiver may possess.

6. Pursuant to the authority conferred on me by the Receiver Order, and as I have discussed in my previous quarterly reports, my staff and I have devoted a great deal of time and effort to conducting a forensic accounting analysis of the financial transactions involving 1inMM, Horwitz and their respective insiders and affiliates. This project is critical to determine who may be liable to the Estate for receiving fraudulent transfers, to identify previously unknown assets and to obtain information about 1inMM's investors.

7. I have determined that 1inMM did not just transfer funds to investors and their feeder funds; 1inMM also transferred very large sums to various persons and entities who do not appear to have been investors in the 1inMM Ponzi scheme. I am investigating both types of transfers. In doing so, I will be able to identify potential fraudulent transfers to both investors and non-investors alike, thereby increasing the pool of potential recovery to the Estate. Settlements that I reach with such transferees are likely to be very significant Estate assets.

8. My professional staff and I have, therefore, devoted considerable time and attention to reviewing and analyzing tens of thousands of banking transactions and associated records associated with 1inMM and Horwitz to identify those persons and entities who may have received transfers that are subject to avoidance and recovery.

9. During my forensic accounting investigation, I discovered that 1inMM and Horwitz had made a significant amount of transfers to Susan M. Kozlowski ("Ms. Kozlowski"), who is Horwitz's mother, as well as to two entities affiliated with her.

10. Specifically, I determined that, between 2015 and 2020, 1inMM Defendants made multiple transfers in the total aggregate amount of $3,392,310.98 (the "Transfers") to Ms. Kozlowski, the Susan M. Kozlowski Living Trust, dated

January 8, 2010 (the "Kozlowski Trust"), and the Robert and Susan Kozlowski L.I.F.T. Foundation Irrevocable Trust, a/k/a the L.I.F.T. Foundation ("LIFT," and collectively with Ms. Kozlowski and the Kozlowski Trust, the "Kozlowski Entities").

11. On April 4, 2022, I issued a subpoena to the Kozlowski Entities requesting various documents and communications associated with the Transfers.

12. The Kozlowski Entities responded to my subpoena through their counsel, M. Anthony Brown of Spertus, Landes & Umhofer, LLP in Los Angeles, California, and subsequently produced several hundred pages of documents to me.

13. Through discussions with Mr. Brown and review of documents Ms. Kozlowski produced, I determined that Ms. Kozlowski was an investor in 1inMM, and that in connection therewith she made nine payments to 1inMM of $350,000 each between 2015 and 2017, for an aggregate total of $3,150,000 ("Principal").

14. On various dates between approximately July 1, 2015 and February 17, 2017, 1inMM made nine transfers to Ms. Kozlowski of $360,000, each which constituted a return of her principal investment of $350,000 plus a profit of $10,000, for a grand total of $3,240,000 (i.e., $90,000 profit and $3,150,000 return of Principal).

15. I also determined that the Kozlowski Entities received additional transfers from 1inMM or Horwitz totaling $152,310.98 that were unrelated to Ms. Kozlowski's investments in 1inMM. These transfers were for Ms. Kozlowski's Mercedes-Benz vehicle lease obligations, as well as her home kitchen remodeling project. They also included Horwitz's repayment of an alleged loan from Ms. Kozlowski, and a donation he made to LIFT.

16. In sum, the Transfers that the Kozlowski Entities received were as follows:

| **Category** | **Amount** |
|---|---|
| Return of Principal | $3,150,000 |
| Profit on 1inMM investments | $90,000 |
| Mercedes-Benz lease payments | $117,313.65 |
| Kitchen remodeling project | $24,997.33 |
| Donation to LIFT | $5,000.00 |
| Repayment of alleged loan | $5,000.00 |
| Total | $3,392,310.98 |

17. I asserted that she may avoid and recover all of the Transfers as actual fraudulent transfers pursuant to section 3439.04(a)(1) of the California Uniform Voidable Transactions Act, Cal. Civ. Code § 3439 *et seq.* ("UVTA") (the "Claims"). This was because, I contended, 1inMM and Horwitz made the Transfers with the actual intent to hinder, delay, or defraud their creditors, as Horwitz pled guilty and admitted that he used 1inMM to operate a Ponzi scheme, which conclusively establishes the intent element for purposes of an actual fraudulent transfer claim under Cal. Civ. Code § 3439.04(a)(1).

18. Finally, as there was no serious question that the Kozlowski Entities were either the first transferee of the Transfers or the person for whose benefit those transfers were made, I argued that I could recover all of the Transfers from them under Cal. Civ. Code § 3439.08(b)(1)(A).

19. The parties then spent several months engaged in good-faith, arms-length settlement negotiations.

20. The Kozlowski Entities asserted various defenses to the Claims. Ms. Kozlowski's principal defense was that I could not avoid or recover the Principal transfers (i.e., $3,150,000 of the $3,392,310.98 total in controversy) because she was a legitimate investor in 1inMM without any knowledge that 1inMM was a Ponzi scheme, and therefore would successfully demonstrate that she received the Principal transfers in good faith and for value, which is an affirmative defense under UVTA, Cal. Civ. Code § 3439.08(a).

21. I reviewed the financial records, communications and other documents that the Kozlowski Entities produced in response to my subpoena, in

large part to evaluate the relative strength of the Kozlowski Entities' good-faith defense. The point remained closely contested throughout the parties' negotiations.

22. On December 21, 2022, the parties entered into that certain *Settlement Agreement and Mutual Release* (the "Settlement Agreement"), a true and correct copy of which is attached to the Motion as **Exhibit 2**.

23. As reflected in the Settlement Agreement, the Kozlowski Entities agreed to pay $300,000 to the Estate in full settlement of the Claims (the "Settlement Payment"). The Settlement Payment was calculated as follows:

| Category | Amount | % Recovery |
|---|---|---|
| Return of Principal | $57,689.02 | 1.83% |
| Profit | $90,000 | 100% |
| Mercedes-Benz lease payments | $117,313.65 | 100% |
| Kitchen remodeling project | $24,997.33 | 100% |
| Donation to LIFT | $5,000.00 | 100% |
| Repayment of alleged loan | $5,000.00 | 100% |
| Total | $300,000 | |

24. In essence, then, the Kozlowski Entities agreed to return 100 percent of the money they received from 1inMM and Horwitz—including all of Ms. Kozlowski's profit on her investments in 1inMM—as well as about two percent of the Principal transfers. These percentages reflect my assessment of the relative strength of my claims weighed against the risk and cost associated with litigating those claims, particularly as to Ms. Kozlowski's asserted UVTA good-faith defense.

25. The parties will exchange mutual general releases of any claims arising out of or relating to the Kozlowski Entities' transactions and dealings with 1inMM and Horwitz, the Transfers and the Claims.

26. The Kozlowski Entities will also waive any right to file, and covenant not to file, a claim against the Estate.

27. The validity of the Settlement Agreement, and the parties' obligations thereunder, are subject to the condition precedent that the Court enters an order approving its material terms.

28.     I initially asserted that Ms. Kozlowski would be unable to prove the defense that she received the Principal transfers in good faith and for value, mainly because of her status as an "insider" of 1inMM, certain highly unusual features of the notes that 1inMM issued to her and other factors. As a consequence, I asserted that all of the $3,150,000 of Principal transfers were also at risk of avoidance.

29.     Aided by Mr. Brown, her skilled and able counsel, Ms. Kozlowski strenuously contested this point, arguing that she would prevail on her good-faith defense, and produced hundreds of pages of documents and other communications in support of her position.

30.     I closely reviewed those materials, the legal arguments presented by Mr. Brown and ultimately concluded that the probability of defeating Ms. Kozlowski's good-faith defense at trial was far from certain, and the cost of litigating that issue through appeal would likely be prohibitive. That is particularly because a defendant's good faith is a factual question, which would likely have required a trial to resolve.

31.     A trial could have resulted in Ms. Kozlowski entirely prevailing on her good-faith defense, which would have meant I recovered no part of the Principal transfers. Rather than take that risk, I agreed to accept $57,689.02 of the total.

32.     For these reasons, I respectfully suggest that the settlement appropriately takes into account the mixed probability of success on the merits of my UVTA claims against the Kozlowski Entities.

33.     I am informed and believes that there would be no difficulty in collecting the entire amount of the Transfers from the Kozlowski Entities.

34.     Given my review of the available evidence, I believe that litigation against Ms. Kozlowski on the issue of her good faith would be expensive and time-consuming, as it would likely require extensive discovery, retention of experts and numerous witnesses. A trial and appeal would likely take at least two years to

complete and cost the estate several hundred thousand dollars in fees and expenses.

35. I believe that the Estate's creditors are likely to support the settlement I have reached with the Kozlowski Entities.

36. As I previously reported, I am still ascertaining the identities and contact information for the investors in 1inMM. While I have some investors' contact information, I am presently unsure if I have contact information for all such investors.

37. In addition to giving notice to the parties and other interested parties by causing the Motion to be electronically filed via the Court's CM/ECF system, I will email all known creditors of the Estate with a link to this Motion and supporting exhibits. My email and Website post will include instructions how to advise me of any objections to the Motion by no later than seven days before the hearing.

38. I will thereafter file a status report informing the Court if any creditor asserted a timely objection to the Motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 23, 2022　　/s/*Michele Vives*
in Glen Ridge, New Jersey　　　　Michele Vives