Terence G. Banich (SBN 212173)
terence.banich@katten.com
Allison E. Yager (*pro hac vice*)
allison.yager@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661
Telephone:   (312) 902-5665
Facsimile:   (312) 902-1061

*Attorneys for the Receiver*
Michele Vives

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>        Plaintiff,<br><br>   v.<br><br>ZACHARY J. HORWITZ; and 1inMM CAPITAL, LLC,<br><br>        Defendants. | Case No. 2:21-cv-02927-CAS(GJSx)<br><br>**DECLARATION OF MICHELE VIVES**<br><br>Judge:     Hon. Christina A. Snyder<br>Courtroom: 8D |

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

I, Michele Vives, declare as follows:

1.     I am over the age of eighteen years, am under no disability and am competent to testify to the matters set forth herein. Except as otherwise stated, all facts set forth in this declaration are based upon my personal knowledge and/or my review of documents. If called as a witness in this case, I could and would testify competently to the facts set forth in this declaration.

2.     I submit this declaration in support of the *Motion of Receiver Michele Vives for Order Approving Settlement with James Dainard and Related Entities*, dated February 13, 2023 (the "Motion"). Any capitalized terms not defined herein have the meanings ascribed to them in the Motion.

3.     I am the President of the Douglas Wilson Companies ("DWC"), an advisory firm that assists companies and entities of all kinds, from financial institutions to operating companies, law firms, state and federal courts, corporations, partnerships, pension funds, REITs and more. DWC has been appointed as receiver or otherwise involved in hundreds of receiver cases over the last 30 years, and has served in other fiduciary roles, such as chapter 11 trustee, chapter 11 examiner, special master, liquidating trustee, assignee for the benefit of creditors and chief restructuring officer.

**A.     The Receiver Order**

4.     On January 14, 2022, this Court entered the *Order on Appointment of a Permanent Receiver* [ECF #70] (the "Receiver Order"), which appointed me to be the federal equity receiver of defendant 1inMM Capital, LLC as well as assets that are attributable to investor or client funds or that were fraudulently transferred by Defendants (collectively, the "Estate").

5.     The Receiver Order confers on me "full powers of an equity receiver," and specifically authorizes and directs me to, among other things: take custody and control over all assets of 1inMM and its subsidiaries and affiliates; conduct an investigation and discovery as may be necessary to locate and account for the

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

assets of or managed by 1inMM and its subsidiaries and affiliates; and investigate and, where appropriate, prosecute claims and causes of action that the Receiver may possess.

**B.    The Receiver's investigation of transfers**

6.    Pursuant to the authority conferred on me by the Receiver Order, and as I have discussed in my previous quarterly reports, my staff and I have devoted a great deal of time and effort to conducting a forensic accounting analysis of the financial transactions involving 1inMM, Horwitz and their respective insiders and affiliates. This project is critical to determine who may be liable to the Estate for receiving fraudulent transfers, to identify previously unknown assets and to obtain information about 1inMM's investors.

7.    I have determined that 1inMM did not just transfer funds to investors and their feeder funds; 1inMM also transferred very large sums to various persons and entities who do not appear to have been investors in the 1inMM Ponzi scheme. I am investigating both types of transfers. In doing so, I will be able to identify potential fraudulent transfers to both investors and non-investors alike, thereby increasing the pool of potential recovery to the Estate. Settlements that I reach with such transferees are likely to be very significant Estate assets.

8.    My professional staff and I have, therefore, devoted considerable time and attention to reviewing and analyzing tens of thousands of banking transactions and associated records associated with 1inMM and Horwitz to identify those persons and entities who may have received transfers that are subject to avoidance and recovery.

**C.    Transfers to the Dainard Entities and subsequent investigation**

9.    During my forensic accounting investigation, I discovered that 1inMM and Horwitz had made a significant amount of transfers to James M. Dainard ("Mr. Dainard"), both directly as well as to an entity that Mr. Dainard owns and controls, JMD Investments WA, LLC ("JMD Investments"), and to a

large financial institution as custodian of Mr. Dainard's individual retirement account (the "Dainard IRA," and collectively with Mr. Dainard and JMD Investments, the "Dainard Entities").

10.    Specifically, I determined that, between December 2015 and June 2018, 1inMM Defendants made multiple transfers in the total aggregate amount of $353,034.17 (the "Transfers") to the Dainard Entities. My forensic accounting analysis of the Transfers indicated that they constituted Mr. Dainard's profits from investing in the 1inMM Ponzi scheme.

11.    Beginning on or about July 8, 2022, my counsel informally requested that Mr. Dainard produce documents pertaining to the Transfers. Discussions with Mr. Dainard continued periodically over the next several months, and eventually he retained Magnus R. Andersson of Hanson Baker Ludlow Drumheller P.S. in Bellevue, Washington, as his counsel.

12.    Mr. Dainard produced documents to me in response to my informal request.

13.    Through discussions with Messrs. Dainard and Andersson and review of documents Mr. Dainard produced, I determined that Mr. Dainard was an investor in 1inMM, and that in connection therewith he made several investments in 1inMM beginning in October 2013 and continuing to June 2018.

14.    On various dates between approximately December 21, 2015 and June 12, 2018, 1inMM made 14 transfers to the Dainard Entities in differing amounts for a grand total of $353,034.17.

15.    The 14 transfers that 1inMM made to the Dainard Entities between December 21, 2015 and June 12, 2018 constitute the Transfers, a detailed list of which is annexed hereto as **Exhibit 1-1**.

**D.    The parties' claims and defenses to the Transfers**

16.    I asserted that I may avoid and recover all of the Transfers as actual fraudulent transfers pursuant to section 3439.04(a)(1) of the California Uniform

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Voidable Transactions Act, Cal. Civ. Code § 3439 *et seq.* ("UVTA") (the "Claims"). This was because, I contended, 1inMM and Horwitz made the Transfers with the actual intent to hinder, delay, or defraud their creditors, as Horwitz pled guilty and admitted that he used 1inMM to operate a Ponzi scheme, which conclusively establishes the intent element for purposes of an actual fraudulent transfer claim under Cal. Civ. Code § 3439.04(a)(1).

17. Finally, as there was no serious question that the Dainard Entities were either the first transferee of the Transfers or the person for whose benefit those transfers were made, I argued that I could recover all of the Transfers from them under Cal. Civ. Code § 3439.08(b)(1)(A).

18. The parties then engaged in good-faith, arms-length settlement negotiations.

19. The Dainard Entities asserted various defenses to the Claims. Their principal defenses were that I could not avoid or recover the Transfers because the statute of limitations under UVTA had expired, and that some of the Transfers constituted a return of principal, as opposed to profits, and were therefore not avoidable under UVTA.

20. I reviewed the financial records and other documents that the Dainard Entities produced in response to her informal requests to assess whether the Transfers at issue were return of principal or profits. This process turned out to be somewhat inconclusive for both sides because, despite diligent efforts, some of the banking and financial records pertinent to the older transfers were no longer available. My counsel also sent Mr. Andersson a detailed analysis of why the Claims are not barred by the statute of limitations. This point remained contested during the parties' negotiations.

### E.    The proposed settlement

21. On February 1, 2023, the parties entered into that certain *Settlement Agreement and Mutual Release* (the "Settlement Agreement"), a true and correct

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

copy of which is attached to the Motion as **Exhibit 2**.

22.     As reflected in the Settlement Agreement, the Dainard Entities agreed to pay $247,000 to the Estate in full settlement of the Claims (the "Settlement Payment").

23.     The Settlement Payment is 69.9 percent of the amount in controversy of $353,034.17, and reflects my assessment of the relative strength of my Claims weighed against the risk and cost associated with litigating those claims, particularly as to the Dainard Entities' asserted defenses.

24.     Mr. Dainard, JMD Investments and I will exchange mutual general releases of any claims arising out of or relating to the Dainard Entities' transactions and dealings with 1inMM and Horwitz, the Transfers and the Claims.

25.     Mr. Dainard and JMD Investments will also waive any right to file, and covenant not to file, a claim against the Estate.

26.     The validity of the Settlement Agreement, and the parties' obligations thereunder, are subject to the condition precedent that the Court enters an order approving its material terms.

**F.      The settlement should be approved**

27.     After closely reviewing the materials produced and the legal arguments presented by Mr. Andersson, I ultimately concluded that the probability of defeating the Dainard Entities' good-faith defense at trial was uncertain—in part due to the unavailability of older banking and financial records necessary to evaluate that defense—and the cost of litigating that issue through appeal would likely be prohibitive in any event. That is particularly because a defendant's good faith is a factual question, which would likely have required a trial to resolve.

28.     It is, therefore, possible that the Court would have sustained some or all of the Dainard Entities' statute-of-limitations defense, and a trial could have resulted in the Dainard Entities prevailing on their good-faith defense. Both outcomes would likely be considerably worse than the parties' settlement. Rather

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

than take those risks, I agreed to compromise and accept 69.9 percent of the total Transfers.

29.    For these reasons, I respectfully suggest that the settlement appropriately takes into account the mixed probability of success on the merits of my UVTA claims against the Dainard Entities.

30.    I am informed and believes that there would be no difficulty in collecting the entire amount of the Transfers from the Dainard Entities.

31.    Given my review of the available evidence, I believe that litigation against Mr. Dainard on the issue of his good faith would be expensive and time-consuming, as it would likely require extensive discovery, retention of experts and numerous witnesses. A trial and appeal would likely take at least two years to complete and cost the estate several hundred thousand dollars in fees and expenses.

32.    I believe that the Estate's creditors are likely to support the settlement I have reached with Mr. Dainard.

**G.    Notice to creditors**

33.    As I previously reported, I am still ascertaining the identities and contact information for the investors in 1inMM. While I have some investors' contact information, I am presently unsure if I have contact information for all such investors.

34.    In addition to giving notice to the parties and other interested parties by causing the Motion to be electronically filed via the Court's CM/ECF system, I will email all known creditors of the Estate (or, if represented, their counsel) with a link to this Motion and supporting exhibits. My email and Website post will include instructions how to advise me of any objections to the Motion by no later than seven days before the hearing.

//

//

//

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

35.     I will thereafter file a status report informing the Court if any creditor asserted a timely objection to the Motion.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 13, 2023          /s/*Michele Vives*
in San Diego, California                Michele Vives

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

**Exhibit 1-1**

Schedule A

| Date | Amt. Invested | Amt. Repaid | Total Gain/ (Loss) | Transaction | Check # | Description | Name | Check Memo |
|---|---|---|---|---|---|---|---|---|
| 12/21/15 | - | 2,970.00 | 2,970.00 | Check | 1064 | 1064 * 00001049022100 | JAMES DAINARD | Dec+January Interest |
| 12/23/15 | - | 1,033.09 | 4,003.09 | Check | 1070 | 1070 * 000010440179700 | PROVIDENT TRUST GROUP, LLC FBO "JAMES DAINARD" | 131000249 |
| 04/01/16 | - | 6,666.64 | 10,669.73 | Wire | | DOMESTIC WIRE 160401000010621 | JAMES DAINARD | |
| 05/02/16 | - | 1,485.00 | 12,154.73 | Wire | | DOMESTIC WIRE 160502000003337 | JAMES DAINARD | |
| 05/06/16 | - | 4,132.36 | 16,287.09 | Check | 1063 | 1063 000010400173600 | PROVIDENT TRUST GROUP, LLC FBO "JAMES DAINARD" | Monthly Interest + Jan - May 2018 |
| 07/07/16 | - | 2,970.00 | 19,257.09 | Wire | | DOMESTIC WIRE 160707000006154 | JAMES DAINARD | |
| 08/01/16 | - | 2,970.00 | 22,227.09 | Wire | | DOMESTIC WIRE 160801000009084 | JAMES DAINARD | |
| 09/13/16 | - | 2,970.00 | 25,197.09 | Wire | | DOMESTIC WIRE 160913000008833 | JAMES DAINARD | |
| 11/08/16 | - | 5,940.00 | 31,137.09 | Wire | | DOMESTIC WIRE 161108000003652 | JAMES DAINARD | |
| 01/13/17 | - | 4,455.00 | 35,592.09 | Wire | | DOMESTIC WIRE 170113000007864 | JAMES DAINARD | |
| 02/14/17 | - | 4,455.00 | 40,047.09 | Wire | | DOMESTIC WIRE | JAMES DAINARD | |
| 08/24/17 | - | 12,397.08 | 52,444.17 | Check | 1090 | 1090 000010330216800 | PROVIDENT TRUST GROUP, LLC FBO "JAMES DAINARD" | 2017 Interest |
| 03/01/18 | - | 243,090.00 | 295,534.17 | Wire | | DOMESTIC WIRE 180301000003869 | JMD INVESTMENTS LLC | |
| 06/12/18 | - | 57,500.00 | 353,034.17 | Wire | | DOMESTIC WIRE 180612000007061 | PROVIDENT TRUST GROUP | |
| TOTAL | $ - | $ 353,034.17 | $ 353,034.17 | | | | | |