EXECUTION COPY

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE (this "Agreement") is made and entered into as of this 1st day of February, 2023 (the "Effective Date"), by and between (a) Michele Vives, not individually, but solely as the receiver (the "Receiver") as more particularly described in the second recital of this Agreement, on the one hand, and (b) James M. Dainard, individually ("Dainard"); and (c) JMD Investments WA, LLC (together, the "Dainard Parties"), on the other hand (and collectively with the Receiver, the "Parties").

### Recitals

**WHEREAS**, on April 6, 2021, the Securities and Exchange Commission commenced the civil action styled *Securities & Exchange Commission v. Horwitz*, No. 2:21-cv-02927-CAS-GJS (the "Action"), in the United States District Court for the Central District of California (the "Court") against Zachary J. Horwitz and 1inMM Capital, LLC (together, the "1inMM Defendants"), alleging that they conducted an offering fraud and Ponzi scheme in violation of federal securities laws;

**WHEREAS**, on January 14, 2022, the Court entered that certain *Order on Appointment of Permanent Receiver* (the "Appointment Order") in the Action that, among other things, appointed the Receiver to be the federal equity receiver of 1inMM Capital, LLC and its subsidiaries and affiliates, as well as over the assets that are attributable to funds derived from investors or clients of the 1inMM Defendants or were fraudulently transferred by the 1inMM Defendants (the "Receivership Estate");

**WHEREAS**, the Appointment Order authorizes the Receiver to, among other things, investigate and prosecute claims and causes of action;

**WHEREAS**, following a diligent investigation, including the review and analysis of the books and records of the 1inMM Defendants as well as documents and information provided by the Dainard Parties, the Receiver has identified transfers between December 2015 and June 2018 from the 1inMM Defendants directly to or for the benefit of the Dainard Parties totaling $353,034.17 (the "Transfers");

**WHEREAS**, the Receiver contends that the Transfers are subject to avoidance and recovery under the Uniform Voidable Transactions Act as enacted in California (California Civil Code §§ 3439-3439.14) ("UVTA"), and that consequently, the Receiver has, on behalf of the Receivership Estate, causes of action against some or all of the Dainard Parties under the UVTA to avoid and recover the Transfers or their value (the "Claims");

**WHEREAS**, the Dainard Parties contend that the Transfers consist, in part, of the return of Dainard's principal investment in 1inMM Capital, LLC, and thus are not avoidable under the UVTA; and

**WHEREAS**, the Parties, wishing to avoid the expense, delay, and uncertainty of litigation, have agreed to settle and resolve all claims and disputes between them arising out of or relating to the Transfers and the Claims (collectively, the "Disputes") on the terms and conditions set forth in this Agreement.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and adequacy of which the Parties acknowledge, the Parties agree as follows:

**EXECUTION COPY**

## Agreement

1. **Recitals Incorporated.** All of the foregoing recitals are true and correct and are incorporated herein as part of the Agreement for all purposes.

2. **Settlement Payment.** In consideration for the releases exchanged in paragraphs 3 and 4 of this Agreement, the Dainard Parties agree to pay the Receiver, and the Receiver agrees to accept from the Dainard Parties, the sum of $247,000.00 (two hundred forty-seven thousand dollars and zero cents) (the "Settlement Payment"). No later than ten calendar days after entry of the Approval Order (as defined below) in the civil docket of the Action, the Dainard Parties will remit the Settlement Payment to the Receiver by wire transfer per the instructions that the Receiver will provide.

3. **Release of the Dainard Parties; Covenant Not to Sue.** The Receiver, on behalf of herself, the Receivership Estate and their respective agents, employees, officers, partners, managers, parents, subsidiaries, affiliates, insurers and attorneys (collectively, the "Receiver Releasing Parties"), hereby forever releases, remises and discharges the Dainard Parties as well as their agents, employees, officers, shareholders, managers, parents, subsidiaries, affiliates, insurers and attorneys (collectively, the "Dainard Released Parties"), from any and all claims, counterclaims, actions, causes of action, lawsuits, proceedings, adjustments, offsets, contracts, obligations, liabilities, controversies, costs, expenses, attorney's fees and losses whatsoever, whether known or unknown, disclosed or concealed, asserted or unasserted, liquidated or unliquidated, contingent or absolute, accrued or unaccrued, matured or unmatured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise, whether in law, in admiralty, in bankruptcy, or in equity, and whether based on any federal law, state law, common law right of action or otherwise, from the beginning of time to the Effective Date of this Agreement arising out of or relating to the Disputes (collectively, the "Receiver Released Claims"), but specifically excluding any claims arising out of or related to this Agreement. The Receiver Releasing Parties hereby covenant not to sue any of the Dainard Released Parties on account of any Receiver Released Claim.

4. **Release of the Receiver and the Receivership Estate; Covenant Not to Sue.** The Dainard Parties, on behalf of themselves and their respective agents, employees, officers, partners, managers, parents, subsidiaries, affiliates, insurers and attorneys (collectively, the "Dainard Releasing Parties"), hereby forever release, remise and discharge the Receiver, the Receivership Estate as well as their agents, employees, officers, shareholders, managers, parents, subsidiaries, affiliates, insurers and attorneys (collectively, the "Receiver Released Parties"), from any and all claims, counterclaims, actions, causes of action, lawsuits, proceedings, adjustments, offsets, contracts, obligations, liabilities, controversies, costs, expenses, attorney's fees and losses whatsoever, whether known or unknown, disclosed or concealed, asserted or unasserted, liquidated or unliquidated, contingent or absolute, accrued or unaccrued, matured or unmatured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise, whether in law, in admiralty, in bankruptcy, or in equity, and whether based on any federal law, state law, common law right of action or otherwise, from the beginning of time to the Effective Date of this Agreement arising out of or relating to the Disputes (collectively, the "Dainard Released Claims"), but specifically excluding any claims arising out of or related to this Agreement. The Dainard Releasing Parties hereby covenant not to sue any of the Receiver Released Parties on account of any Dainard Released Claim.

5. **Section 1542 Waiver.** The Parties acknowledge that they have read and understand section 1542 of the California Civil Code (Cal. Civ. Code § 1542), which reads as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

EXECUTION COPY

The Parties hereby expressly waive and relinquish all rights and benefits under California Civil Code section 1542 with respect to the Dainard Released Claims and the Receiver Released Claims.

6. **Effectiveness of Releases.** The releases exchanged in paragraphs 3 and 4 of this Agreement shall become effective only upon the Receiver's receipt of the full amount of the Settlement Payment from the Dainard Parties as required by paragraph 2 of this Agreement.

7. **Waiver of Claim and Distribution.** The Dainard Parties hereby waive any right to file, and covenant not to file, a claim against the Receivership Estate in the Action (a "Proof of Claim"). If, notwithstanding the immediately previous sentence, any of the Dainard Parties files a Proof of Claim in the Action, then the Receiver may apply to or move the Court to enter an order disallowing that Proof of Claim, and the Dainard Parties hereby waive any notice or opportunity to be heard on any such application or motion. The Dainard Parties acknowledge and agree that they are not entitled to any distributions whatsoever from the Receivership Estate.

8. **Approval Order.** The validity of this Agreement, and the Parties' obligations hereunder, are subject to the condition precedent that the Court enters an order approving the material terms of the settlement documented in this Agreement ("Approval Order"). The Dainard Parties will support the entry of an Approval Order. If, however, the Court declines to approve the settlement documented by this Agreement, then this Agreement (including the releases contained in sections 3 and 4 hereof) will be void, and the Parties will retain all of their respective rights, claims and defenses as if this Agreement never existed.

9. **Representations and Warranties.** The Parties warrant and represent to each other that: (a) each Party shall act in good faith seeking to accomplish the purpose of this Agreement; (b) each Party has not transferred, conveyed, released, pledged, assigned or made any other disposition of the claimed rights, interests, demands, actions or causes of action, obligations, or any other matter covered by this Agreement; (c) each Party has not relied upon any promises, agreements, representations, statements or warranties in entering into this Agreement, except those that are expressly set forth herein; (d) each signatory to this Agreement warrants that he, she or it has the authority to execute this Agreement and to bind the persons or entities on behalf of which he, she or it signs, including, without limitation, each of the Dainard Releasing Parties and the Receiver Releasing Parties specified in paragraphs 3 and 4; and (e) EACH PARTY ACKNOWLEDGES THAT HE, SHE OR IT HAS READ THIS AGREEMENT IN ITS ENTIRETY AND THAT HE, SHE OR IT UNDERSTANDS AND APPRECIATES ITS CONTENTS AND SIGNIFICANCE AND HEREBY EXECUTES THE SAME AND MAKES THE RELEASE PROVIDED FOR IN THIS AGREEMENT VOLUNTARILY AND OF HIS, HER OR ITS OWN FREE WILL, HAVING FIRST HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL.

10. **Enforcement of this Agreement.** If either Party files a motion against the other Party to enforce the terms of this Agreement, in addition to any other relief to which the successful or prevailing party or parties (the "Prevailing Party") is entitled, the Prevailing Party is entitled to recover, and the non-Prevailing Party shall pay, all reasonable attorney's fees of the Prevailing Party, court costs, and expenses (even if not recoverable by law as court costs) incurred in that action, and all appellate proceedings related thereto. The Parties also agree that any dispute arising out of or related to this Agreement shall be decided only by the Court by application or motion filed in the Action. In connection with any action or proceeding to enforce, interpret or construe any provision of this Agreement, the Dainard Parties hereby irrevocably and unconditionally (a) consent to the exercise of personal jurisdiction over them by the Court, and (b) waive any defense of improper venue or forum non conveniens. Furthermore, the Parties agree that the Court shall retain exclusive jurisdiction over all matters relating to this Agreement.

11. **Binding on Successors and Assigns.** This Agreement is and shall be binding upon: (a) the officers, directors, successors, heirs and assigns of each Party; (b) each past, present, direct or indirect parent, subsidiary, division or affiliated entity of each Party; and (c) each past or present agent, representative or shareholder of each Party.

**EXECUTION COPY**

12. **Fair Construction.** The Parties acknowledge that this Agreement is the manifestation of direct negotiation and represents the mutual and voluntary consent and understanding of each Party. As such, this Agreement shall be deemed to be the joint work product of the Parties without regard to the identity of the draftsperson, and any rule of construction that a document shall be interpreted or construed against the drafting Party shall not be applicable.

13. **No Third-Party Beneficiaries.** Nothing in this Agreement benefits, or is intended to benefit, any third party or to confer on any third party the power to enforce, or claim direct benefits under, this Agreement.

14. **Severability.** If any provision of this Agreement is determined to be invalid or unenforceable, such invalidity or unenforceability shall not affect the remaining provisions of this Agreement.

15. **Fees and Costs.** Each of the Parties will bear her, his or its own costs and attorney's fees incurred in connection with the negotiation and delivery of this Agreement.

16. **Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties with regard to all matters addressed herein. This Agreement supersedes and replaces all prior commitments, negotiations, and all agreements proposed or otherwise, if any, whether written or oral, concerning the subject matters contained in this Agreement. The Parties expressly acknowledge that they have not relied on any prior or contemporaneous oral or written representations or statements by another Party in connection with the subject matter of this Agreement, except as expressly set forth herein.

17. **No Collateral Representations.** The consideration provided herein consists of the entire consideration to which the Parties will be entitled. The Parties acknowledge that none of the Parties, their agents, attorneys, insurers, representatives, successors, assigns, heirs, beneficiaries, executors, administrators, parents, subsidiaries, affiliates, current and former directors, officers, employees and representatives (as appropriate for each Party) has made any promise, representation or warranty, expressed or implied, not expressly set forth in this Agreement, which has induced any Party to execute this Agreement.

18. **Exculpation.** The Receiver is executing this Agreement solely in her representative capacity as the Receiver appointed by the Court, and the Receiver's liability hereunder shall be limited to the assets of the Receivership Estate. The Dainard Parties shall not have or assert any claims against the Receiver personally.

19. **Further Assurances.** The Parties will cooperate fully and execute all supplementary documents and take all additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement.

20. **Modification.** This Agreement may only be modified by a writing signed by all Parties.

21. **Governing Law.** This Agreement and the transactions contemplated herein shall be governed by and construed in accordance with the laws of the State of California, without reference to the conflict-of-laws rules thereof.

22. **Time.** Time is of the essence as to all dates and time periods specified in this Agreement. All time periods in this Agreement shall be computed pursuant to Federal Rule of Civil Procedure 6(a).

23. **Tax Implications.** Each Party shall be responsible for seeking their own individual tax advice and shall bear whatever tax liability she, he or it incurs in connection with the transactions contemplated by this Agreement. The Parties make no representations to each other about what tax consequences, if any, result from the transactions contemplated by this Agreement.

EXECUTION COPY

24. **Waiver.** No waiver of any right, obligation, or duty imposed by or under this Agreement shall be effective unless such waiver is reflected in a writing duly executed by all parties hereto. No waiver shall be effective based on conduct or oral statements. Waiver by any Party of any breach of this Agreement shall not be a waiver by such Party of any other breach of this Agreement.

25. **Counterparts.** This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original but all of which together shall constitute one in the same instrument. Facsimile or PDF signatures shall be deemed to have the same effect as original signatures.

26. **Compromise.** The Parties agree and acknowledge that this Agreement is the result of a compromise and a decision to settle all disputes between them relating to the Disputes. The Parties expressly agree that this Agreement is a compromise of disputed claims for the purposes of avoiding the expense, delay, uncertainty and burden of litigation. This Agreement is inadmissible in any proceeding for any purpose other than to enforce its terms. The Parties further agree that executing this Agreement and making the Settlement Payment is not, and shall never be construed as, an admission by any of the Dainard Parties of any fact, liability, wrongdoing or violation of any statute.

27. **Notices.** Any and all notices under this Agreement shall be in writing, and shall be transmitted to the Parties by electronic mail or express overnight delivery service as follows:

If to the Receiver:

KATTEN MUCHIN ROSENMAN LLP
Terence G. Banich
525 W. Monroe St.
Chicago, IL 60661
terence.banich@katten.com

with a copy to:

Michele Vives, Receiver
1620 Fifth Ave., Ste. 400
San Diego, CA 92101
mvives@douglaswilson.com

If to the Dainard Parties:

HANSON BAKER LUDLOW DRUMHELLER P.S.
Magnus R. Andersson
2229 112th Ave., Ste. 200
Bellevue, WA 98004-2936
mandersson@hansonbaker.com

IN WITNESS WHEREOF, the Parties hereby execute this Agreement as of the Effective Date.

| **MICHELE VIVES, Receiver** <br><br> *[signed]* | **JAMES M. DAINARD, individually** <br><br> *[signed]* |
|---|---|
|  | **JMD INVESTMENTS WA, LLC** <br><br> By: James M. Dainard <br> Its: *[signed]* |

5