LATHAM & WATKINS LLP
  Manuel A. Abascal (Bar No. 171301)
    *manny.abascal@lw.com*
355 South Grand Avenue, Suite 100
Los Angeles, California  90071-1560
Telephone: +1.213.485.1234
Facsimile: +1.213.891.8763

LATHAM & WATKINS LLP
  Joshua G. Hamilton (Bar No. 199610)
    *Joshua.Hamilton@lw.com*
10250 Constellation Blvd, Suite 1100
Los Angeles, California  90069
Telephone:  +1.424.653.5509
Facsimile:  +1.213.891.8763

Attorneys for Non-Party
City National Bank

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ZACHARY HORWITZ, et al.,<br><br>Defendants. | Case No. 2:21-CV-02927-CAS-GJS<br><br>**NON-PARTY CITY NATIONAL BANK'S NOTICE OF MOTION AND MOTION TO QUASH SUBPOENA; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing Date:  April 24, 2023<br>Hearing Time:  3:00 p.m.<br>Courtroom:  640<br>Address:  255 E. Temple St., 6th Fl.<br>     Los Angeles, CA 90012<br><br>Hon. Christina A. Snyder<br>Hon. Gail J. Standish<br><br>DISCOVERY MATTER |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:21-CV-02927-CAS-GJS
NON-PARTY CITY NATIONAL BANK'S
MOTION TO QUASH SUBPOENA

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on April 24, 2023, at 3:00 p.m., via court-managed teleconference, non-party City National Bank ("CNB") will, and hereby does, move this Court for an Order quashing the Subpoena, dated January 11, 2023, that Receiver Michele Vives ("Receiver") served on CNB.

This Motion is made on the grounds that: (1) as CNB clients, 1inMM Capital, LLC ("1inMM Capital") and all of its related or affiliated entities (collectively the "1inMM Related Clients") contracted to resolve any disputes or claims with CNB solely in accordance with binding alternative dispute resolution provisions; (2) the Receiver, who was appointed to act on behalf of one or more 1inMM Related Clients, is bound by contracts entered into by the 1inMM Related Clients, including their contracts with CNB; and (3) the Receiver may not propound pre-filing discovery on CNB through a federal subpoena because no such discovery is authorized under the agreed-upon alternative dispute resolution provisions that bind the 1inMM Related Clients and the Receiver.

Pursuant to Local Rule 37, this motion is made following multiple meetings of counsel in a good faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible.  This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Declarations of Michael Mallon and Joshua G. Hamilton, and all Exhibits thereto, the complete files and records in this action, and any further argument and evidence that the Court may properly receive at or before the time of the hearing on the Motion.

Dated:  March 15, 2023                    LATHAM & WATKINS LLP


By /s/ Joshua G. Hamilton
Joshua G. Hamilton
*Attorneys for Non-Party*
*City National Bank*

i

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:21-CV-02927-CAS-GJS
NON-PARTY CITY NATIONAL BANK'S
MOTION TO QUASH SUBPOENA

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................... 1

II.   RELEVANT BACKGROUND........................................................ 2

    A.    The 1inMM Related Clients Agree To Resolve Any
Disputes With CNB Through Binding ADR. ......................... 2

    B.    The SEC Sues 1inMM Capital, LLC, And A Receiver Is
Appointed............................................................................. 6

    C.    CNB Works Collaboratively With The Receiver And Her
Original Counsel To Produce Requested Account
Records, Transaction Histories, and Emails. ........................ 7

    D.    Shortly After The Court Authorizes The Receiver To
Retain Conflicts Counsel, The Receiver Serves CNB
With The Subpoena................................................................ 8

III.  ARGUMENT ............................................................................... 9

    A.    The Receiver Is Bound By The 1inMM Related Clients'
Agreement to Arbitrate Any Disputes or Claims With
CNB........................................................................................ 9

    B.    Quashing the Subpoena is the Appropriate Remedy. ........ 12

IV.   CONCLUSION ........................................................................... 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:21-CV-02927-CAS-GJS
NON-PARTY CITY NATIONAL BANK'S
MOTION TO QUASH SUBPOENA

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Allen v. Ramsay,*
179 Cal. App. 2d 843 (1960) ................................................................................. 9

*AT&T Mobility LLC v. Concepcion,*
563 U.S. 333 (2011) ........................................................................................... 10

*Brock v. Kaiser Found. Hosps.,*
10 Cal. App. 4th 1790 (1992) ............................................................................. 13

*Burton v. Bush,*
614 F.2d 389 (4th Cir. 1980) ....................................................................... 13, 15

*Capitol Life Ins. Co. v. Gallagher,*
47 F.3d 1178, 1995 WL 66602 (10th Cir. 1995)................................................ 10

*Carr Bus. Enter., Inc. v. City of Chowchilla,*
166 Cal. App. 4th 25 (2008) .............................................................................. 10

*Coast Plaza Drs. Hosp. v. Blue Cross of California,*
83 Cal. App. 4th 677 (2000) .............................................................................. 13

*Cobalt Multifamily Inv'rs I, LLC v. Arden,*
46 F. Supp. 3d 357 (S.D.N.Y. 2014) .................................................................. 12

*Deitrick v. Standard Sur. & Cas. Co. of N.Y.,*
303 U.S. 471 (1938) ............................................................................................. 9

*Dep't of Fair Emp. & Hous. v. Superior Ct.,*
225 Cal. App. 3d 728 (1990) .............................................................................. 13

*Eberhard v. Marcu,*
530 F.3d 122 (2nd Cir. 2008) ............................................................................ 12

*F.D.I.C. v. O'Melveny & Myers,*
61 F.3d 17 (9th Cir. 1995) ............................................................................... 1, 9

*Gill v. Blessing,*
2014 WL 12573667 (C.D. Cal. Oct. 6, 2014) .................................................... 9

iii

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:21-CV-02927-CAS-GJS
NON-PARTY CITY NATIONAL BANK'S
MOTION TO QUASH SUBPOENA

*HTG Cap. Partners, LLC v. Doe(s)*,
    2015 WL 5611333 (N.D. Ill. Sept. 22, 2015)....................................................14

*Javitch v. First Union Sec.*,
    2011 WL 665727 (N.D. Ohio Feb. 15, 2011) .....................................................2

*Javitch v. First Union Secs. Inc.*,
    315 F.3d 619 (6th Cir. 2003) .............................................................................10

*KPMG LLP v. Cocchi*,
    565 U.S. 18 (2011) .............................................................................................10

*McIntire v. China Media Express Holdings, Inc.*,
    252 F. Supp. 3d 328 (S.D.N.Y. 2017)......................................................2, 11, 12

*Moran v. Svete*,
    366 Fed. Appx. 624 (6th Cir. 2010) ...................................................................11

*Mosier v. HSBC Bank USA, N.A.*,
    2010 WL 5422550 (C.D. Cal. Dec. 28, 2010) .....................................................9

*Mosier v. Stonefield Josephson, Inc.*,
    815 F.3d 1161 (9th Cir. 2016) .............................................................................9

*O'Donoghue v. Superior Ct.*,
    219 Cal. App. 4th 245 (2013).............................................................................13

*Oppenhiemer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ...........................................................................................14

*Portfolio Hotels, LLC v. 1250 N. SD, LLC*,
    2021 WL 4124224 (S.D. Cal. Sept. 9, 2021) .....................................................13

*Poublon v. C.H. Robinson Co.*,
    846 F.3d 1251 (9th Cir. 2017).............................................................................14

*In re Refco Securities Litigation*,
    759 F. Supp. 2d 342 (S.D.N.Y. 2011).................................................................14

*S.B.A. v. Coqui Capital Mgmt., LLC*,
    2008 WL 4735234 (S.D.N.Y. Oct. 7, 2008) .......................................................10

*Seaman v. Priv. Placement Cap. Notes II, LLC*,
    2017 WL 1166336 (S.D. Cal. Mar. 29, 2017).....................................................10

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
LOS ANGELES

*Sharp v. Duff & Phelps, LLC*,
   2021 WL 8154951 (C.D. Cal. Jan. 28, 2021)...................................................... 9

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2003) ........................................................................ 15

*Wiand v. Schneiderman*,
   778 F.3d 917 (11th Cir. 2015) ................................................................. 11, 12

**STATUTES**

Cal Code Civ Proc § 640 ...................................................................................... 13

Cal. Code Civ. Proc. § 2017.010 ........................................................................ 13

California Code of Civil Procedure, §§ 638, *et seq*................................................ 5

California's Civil Discovery Act........................................................................... 13

Federal Arbitration Act (Title 9, United States Code) ................................. 4, 10, 14

**RULES**

Federal Rule of Civil Procedure 45(d) ................................................................... 2

CASE NO. 2:21-CV-02927-CAS-GJS
NON-PARTY CITY NATIONAL BANK'S
MOTION TO QUASH SUBPOENA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Non-party City National Bank ("CNB") brings this motion to quash ("Motion") a sprawling subpoena with 122 document requests ("Subpoena") that Michele Vives ("Receiver") served on CNB, in her capacity as receiver for 1inMM Capital, LLC and certain affiliated entities ("1inMM Related Clients").

It is well settled that the Receiver stands in the shoes of the entity for which she was appointed, and is subject to that entity's agreements. *See F.D.I.C. v. O'Melveny & Myers*, 61 F.3d 17, 19 (9th Cir. 1995). During the entire time that the 1inMM Related Clients have banked at CNB, their banking relationship with CNB has been governed by binding alternative dispute resolution ("ADR") provisions set forth in their account agreements. Indeed, over more than seven years, the 1inMM Related Clients executed multiple such agreements, and every one of them contained mandatory ADR provisions. Although CNB has occasionally updated those ADR provisions over the past decade, the ADR provisions have *always* required the 1inMM Related Clients to resolve their disputes exclusively through ADR procedures. The Receiver is, therefore, bound by these account agreements between the 1inMM Related Clients and CNB, which preclude her from enforcing the Subpoena against CNB.

The Receiver has now retained new "conflicts counsel" who was appointed to investigate and prosecute claims against parties—potentially including CNB—to whom the Receiver's regular counsel cannot be adverse. The Receiver's "conflicts counsel" has served CNB with the massively overbroad Subpoena, which seeks information to which account holders are not entitled, such as internal records of CNB's policies and procedures and documents that are precluded from production by federal banking statutes. It is obvious, and beyond a good-faith dispute, that the Receiver is attempting to end-run the binding ADR provisions and collect

1

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:21-CV-02927-CAS-GJS
NON-PARTY CITY NATIONAL BANK'S
MOTION TO QUASH SUBPOENA

unauthorized pre-filing discovery for use in a potential lawsuit against CNB. This is impermissible.

Multiple courts have held in similar circumstances that a receiver "may not use [her] status as a court-appointed Special Receiver to flout the primacy of the arbitrator or to get a head-start on pursuing discovery of the claims that are subject to arbitration." *See, e.g., McIntire v. China Media Express Holdings, Inc*., 252 F. Supp. 3d 328, 331 (S.D.N.Y. 2017) (quashing receiver's subpoena based on agreement to arbitrate); *Javitch v. First Union Sec.*, 2011 WL 665727, at *4 (N.D. Ohio Feb. 15, 2011) ("The Receiver cannot both seek to benefit in this suit from the relationships created by those agreements, while disavowing the arbitration provisions.").

In short, the Subpoena should not be permitted as an end-run around the contractual ADR provisions to try to collect unauthorized pre-lawsuit discovery. Because the Receiver is bound by the 1inMM Related Clients' ADR agreements with CNB, the Subpoena "must" be quashed pursuant to Federal Rule of Civil Procedure 45(d).

## II.    RELEVANT BACKGROUND

### A.    The 1inMM Related Clients Agree To Resolve Any Disputes With CNB Through Binding ADR.

Between August 2012 and December 2019, the 1inMM Related Clients (specifically: One N Million Productions, LLC; 1inMM Productions, LLC; 1inMM Capital, LLC; Rogue Black, LLC; LayJax Ventures, LLC; and MJLZ Trust) opened accounts at CNB.[1]  (Declaration of Michael Mallon at ¶ 2.)  Upon opening an account, each of the 1inMM Related Clients executed agreements

---

[1] By including an entity within the definition of "1inMM Related Clients" for purposes of this Motion only, CNB does not imply or concede that the Court's January 14, 2022 Order On Appointment Of A Permanent Receiver (the "Receivership Order") in fact placed or places that entity within the scope of the receivership created by the Receivership Order.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:21-CV-02927-CAS-GJS
NON-PARTY CITY NATIONAL BANK'S
MOTION TO QUASH SUBPOENA

1  acknowledging receipt of and an agreement to be bound by the terms of CNB's

2  Account Agreement and Disclosures and further amendments or updates thereto

3  ("Account Agreement").  (*Id.* at ¶¶ 2, 4-5, Exs. A-F.)  The 1inMM Related Clients

4  additionally agreed to be bound by CNB's Treasury Management Services

5  Disclosure and Agreement ("Services Agreement") with regard to any of CNB's

6  Treasury Management Services they used, *e.g.*, Account Reconcilement

7  Processing, Business Bill Pay, Cash Vault, LockBox, ACH Fraud Protection, and

8  Deposit Reporting.  (*Id.*)  At least two of the 1inMM Related Clients enrolled in

9  certain of CNB's Treasury Management Services.  (*Id.* at ¶ 6, Exs. G-H.)

10      At all times since the 1inMM Related Clients began banking at CNB, the

11  1inMM Related Clients agreed to resolve any disputes in accordance with the ADR

12  provisions of the Account Agreement and Services Agreement, as applicable.  In

13  total, the 1inMM Related Clients executed six account opening contracts and two

14  Treasury Management enrollment contracts.  Every one of those contracts

15  incorporated an agreement to be bound by the corresponding ADR provisions in

16  the then-effective Account Agreement and Services Agreement.  (*Id.* Exs. A-Q.)

17      For example, in August 2012, One N Million Productions, LLC opened a

18  business account.  Immediately above the signature of its sole managing member,

19  One N Million Productions, LLC acknowledged receipt of the Account Agreement

20  and agreed to be bound by its terms. The Account Agreement and the Services

21  Agreement that were in effect when One N Million Productions, LLC opened its

22  business account at CNB (together, the "2012 Agreements") contain nearly

23  identical ADR provisions that mandated that all "disputes" with CNB "shall be

24  resolved by final and binding arbitration":

25          If the amount in dispute involves more than the jurisdictional
            limit of the small claims court with proper venue, the dispute
26          shall be resolved by binding arbitration. . .

27          The arbitration, including the selection of the arbitrators, shall be
28          administered by the American Arbitration Association ("AAA")

in accordance with the Federal Arbitration Act (Title 9, United States Code) or such Federal law as may be adopted hereafter and the then existing commercial arbitration rules of the AAA.

(*Id.*, Ex. I at 101; *id.*, Ex. O at 314.)  The 2012 Agreements' ADR provisions broadly define a "dispute" as:

[A]ny disagreement between you and us that you and we are not able to resolve informally.  It includes any claim or controversy of any kind that arises out of or is related to this Account Agreement and Disclosures, a deposit account or safe deposit box, or any deposit-related service provided by us. "Dispute" includes claims based on broken promises or contracts, torts (injury caused by negligent or intentional conduct), breach of duty or any other wrongful action. It includes statutory, common law and equitable claims.

(*Id.*, Ex. I at 100; *id.*, Ex. O at 314.)

Similarly, 1inMM Capital, LLC opened a business account in 2013.  It likewise acknowledged receipt of the Account Agreement, and agreed to be bound by its terms.  (*Id.* Ex. C.)  The Account Agreement effective at that time ("2013 Account Agreement") provided that all disputes with CNB "will be resolved" in accordance with the 2013 Account Agreement's ADR Provision, which defined "dispute" virtually the same as the 2012 Agreements.  (*Id.* at ¶ 5, Ex. J at 156.)  For California account holders such as the 1inMM Related Clients, the 2013 Account Agreement required that any dispute with CNB involving amounts greater than $50,000 be resolved in California state court—not in federal district court—through California's judicial reference program:

If your account is maintained at a branch in California and a dispute involving $50,000 or more (including all claims of all parties) arises between us with respect to the deposit account or safe deposit box, this Agreement, its enforcement or our deposit account services, either of us may require that it be resolved by judicial reference in accordance with California Code of Civil Procedure, Sections 638, *et seq.* . . . The referee shall hear all pre-trial and post-trial matters, including requests for equitable relief,

4

prepare an award with written findings of fact and conclusions
of law, and apportion costs as appropriate.

(*Id.*)

Over the past decade, CNB has occasionally updated its Account Agreement
and Services Agreement.  (*Id.* at ¶ 7.)  Some of these updates have amended the
agreements' ADR provisions, *e.g.*, changes to the monetary threshold for invoking
judicial reference.  Most recently, effective February 1, 2023, CNB amended the
Account Agreement's ADR provision to require "binding and confidential
arbitration" of disputes relating to all accounts, including those maintained in
California.  This current version of the Account Agreement ("2023 Account
Agreement") contains a clear and comprehensive agreement to resolve "any and all
Claims, regardless whether they (a) arise out of, affect, or relate to conduct that
occurred prior to the Effective Date of the Agreement, or (b) are in contract, tort,
statute, or otherwise" through "confidential and binding arbitration":

> Either you or we may elect to resolve any and all Claims through
> arbitration, even if one of us has already initiated litigation in
> court related to such Claim(s), by: (a) making written demand for
> arbitration upon the other party, (b) initiating arbitration against
> the other party, and/or (c) filing a motion to compel arbitration
> in court. AS A RESULT, IF EITHER YOU OR WE ELECT TO
> RESOLVE ANY CLAIM(S) THROUGH ARBITRATION,
> YOU GIVE UP YOUR RIGHT TO GO TO COURT TO
> ASSERT OR DEFEND YOUR CLAIMS, RIGHTS, AND
> POSITIONS AS TO SUCH CLAIM(S) (except for a claim
> brought individually within small claims court jurisdiction, so
> long as the claim remains in small claims court).

(*Id.*, Ex. N at 288.)

Like the prior Account Agreements, the 2023 Account Agreement broadly
defines the "Claims" subject to arbitration as any:

> dispute, problem, or concern arising out of, affecting, or relating
> to your account(s), and/or the products or services we have

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:21-CV-02927-CAS-GJS
NON-PARTY CITY NATIONAL BANK'S
MOTION TO QUASH SUBPOENA

provided, will provide, or have offered to provide to you, and/or
any aspect of your relationship with us.

(*Id.*)  The 2023 Account Agreement also explicitly limits the discovery that either party may request to the discovery permitted by the AAA or JAMS rules, as applicable.  (*Id.*).  Moreover, the 2023 Account Agreement provides that "any determination as to whether this Arbitration Agreement is valid, applicable, or enforceable in part or in its entirety shall be made solely by the arbitrator(s), including without limitation any issues relating to whether a Claim is subject to arbitration."  (*Id.* at 289.)

Thus, from the time the 1inMM Related Clients first opened their accounts at CNB, all the way through the present, they have always been contractually obligated to resolve any dispute, claim, or disagreement with CNB through binding ADR.  And even though the specific ADR procedures required by CNB's agreements have changed over time, at no point have the 1inMM Related Clients ever had a right to sue CNB—or propound pre-suit discovery in pursuit of such a suit—in federal court.

## B.    The SEC Sues 1inMM Capital, LLC, And A Receiver Is Appointed.

On April 5, 2021, the Securities and Exchange Commission ("SEC") initiated this action, alleging that 1inMM Capital, LLC and Zachary Horwitz had operated a Ponzi scheme that violated various federal securities laws.  (*See* ECF #1.)  The SEC alleged no wrongdoing of any kind by CNB.

On January 14, 2022, following a motion by the SEC, the Court appointed Michele Vives as Receiver over 1inMM Capital, LLC and its subsidiaries and affiliates.  The Receivership Order granted the Receiver "full powers of an equity receiver" and charged her to, *inter alia*, "investigate and, where appropriate, to institute, pursue, and prosecute all claims and causes of action of whatever kind and nature that may now or hereafter exist as a result of the activities of present or

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:21-CV-02927-CAS-GJS
NON-PARTY CITY NATIONAL BANK'S
MOTION TO QUASH SUBPOENA

past employees or agents of Defendant 1inMM, and its subsidiaries and affiliates."
(ECF #70.)  Since her appointment, the Receiver has represented to CNB and this
Court that the 1inMM Related Clients are receivership entities subject to the
Court's Receivership Order.  (*See* Stip. Requiring CNB To Transfer Funds And
Subsequently Close Rogue Black LLC Accounts [ECF #130] at 2 ("WHEREAS,
pursuant to the Receiver Order, the Receiver believes she has authority and control
over the [Rogue Black] PPP Loan."); Hamilton Decl. Exs. 1-5.)

### C.    <u>CNB Works Collaboratively With The Receiver To Produce Requested Account Records, Transaction Histories, and Emails.</u>

On February 22, 2022, the Court entered an order authorizing the Receiver
to retain Katten Muchin Rosenman LLP ("Katten") as counsel to assist her in
discharging her duties under the Receivership Order, including to assist and advise
the Receiver in her investigation and pursuit of litigation.  (ECF # 71, 76.)  Over
the course of 2022, the Receiver contacted CNB to request certain account
documents and communications.  (Hamilton Decl., Exs. 1-5.)  To do so, the
Receiver did not issue a subpoena for records from CNB.  Rather, the Receiver
requested the records pursuant to her claimed control over the 1inMM Related
Clients.  (*Id.*)  Specifically, she sent five letters to CNB dated February 4, 2022;
March 18, 2022; July 26, 2022 (two separate letters); and August 5, 2022
requesting specific account records of the 1inMM Related Clients, including, *inter
alia*, monthly bank statements, copies of checks, wire transfer information, and
email communications between CNB and Horwitz.  (*Id.*)  Consistent with the
Court's Receivership Order and the Receiver's representations, CNB cooperated
with the Receiver's requests and in total produced over 2,000 documents to the

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
LOS ANGELES

1  Receiver (*Id.* at ¶¶ 8-9.)  CNB expended substantial time and expense in

2  voluntarily responding to the Receiver's requests.  (*Id.* at ¶ 8.)[2]

3      **D.    Shortly After The Court Authorizes The Receiver To Retain
          Conflicts Counsel, The Receiver Serves CNB With The Subpoena.**

4

5      On December 7, 2022, the Receiver filed a motion requesting that the Court

6  authorize her to retain Raines Feldman LLP as conflicts counsel to advise her only

7  with respect to a "small number" of cases that "present legal or business conflicts

8  for Katten." (ECF # 156, 156-2.)  On January 3, 2023, the Court granted the

9  Receiver's motion and authorized the Receiver "to retain, employ and compensate

10  Raines Feldman LLP . . . as her counsel only as to Conflict Matters." (ECF # 166.)

11  Upon the instruction of the Receiver, Raines Feldman is authorized to "pursue a

12  claim or cause of action in connection with a Conflict Matter." (*Id.*)  Katten had

13  been involved in prior, non-adversarial discussions with CNB's counsel relating to

14  the Receiver's requests and filed a stipulation with the Court to that effect. (ECF

15  #130.)  Less than one week after the Court authorized the Receiver to retain

16  conflicts counsel, the Receiver—through Raines Feldman—contacted counsel for

17  CNB, requested that CNB enter into a tolling agreement (which CNB declined),

18  and thereafter served the Subpoena. (Hamilton Decl. ¶ 11, Ex. 6.)

19      The Subpoena contains 122 document requests (many with multiple

20  subparts), which plainly are not limited to identifying account information to

21  which the Receiver would be entitled pursuant to her control over the 1inMM

22  Related Clients' accounts.  Rather, the Subpoena broadly seeks information

23  unrelated to the assets of the 1inMM Related Clients, including bank policies,

24  _____

25  [2] CNB, through counsel, also worked collaboratively with the Receiver and Katten
   to resolve issues relating to the Rogue Black account. (*See, e.g.*, *id.* at ¶ 10;

26  Quarterly Report of Receiver (Third Quarter 2022) [ECF #142]  ("During the third
   quarter, the Receiver worked with counsel for City National Bank ('CNB') to

27  obtain the funds deposited in [the Rogue Black] account that have been frozen
   since the Court entered an asset freeze order at the outset of this case. . .").

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:21-CV-02927-CAS-GJS
NON-PARTY CITY NATIONAL BANK'S
MOTION TO QUASH SUBPOENA

procedures, practices, training, and internal CNB communications, as well as

information protected or precluded from discovery under federal banking

regulations.  (*Id.* at ¶ 12, Ex. 7.)

## III.    ARGUMENT

### A.    The Receiver Is Bound By The 1inMM Related Clients' Agreement to Arbitrate Any Disputes or Claims With CNB.

A "receiver occupies no better position than that which was occupied by the

person or party for whom [s]he acts . . . and any defense good against the original

party is good against the receiver." *O'Melveny & Myers*, 61 F.3d at 19; *Deitrick v.

Standard Sur. & Cas. Co. of N.Y.*, 303 U.S. 471, 479 (1938) ( "[A receiver] stands

no better than the [receivership entity] itself.  All defenses open against the

[receivership entity] in such a case are open against the receiver[.]"); *Allen v.

Ramsay*, 179 Cal. App. 2d 843, 854 (1960) ("[A]ny defense good against the

original party is good against the receiver.")  A receiver accordingly "has capacity

to bring only such actions as could have been brought by the entity or individual

whose property is in a receivership, and thus may sue only to redress injuries to the

entity in [the] receivership." *Mosier v. Stonefield Josephson, Inc.*, 815 F.3d 1161,

1166 (9th Cir. 2016) (quoting district court in SEC case involving Ponzi scheme);

*Gill v. Blessing*, 2014 WL 12573667, at *3 (C.D. Cal. Oct. 6, 2014) (SEC receiver

appointed in Ponzi scheme "stands in the shoes of those entities, not other

creditors, to pursue these claims.").

Thus, a receiver is bound by the terms of any contract that would bind the

receivership entities.  *See, e.g.*, *Sharp v. Duff & Phelps, LLC*, 2021 WL 8154951,

at *1 (C.D. Cal. Jan. 28, 2021) ("There is also no dispute that Sharp, as receiver,

stands in the shoes of [the receivership entity] and is bound to the terms of the

contract as [the receivership entity] would have been."); *Mosier v. HSBC Bank

USA, N.A.*, 2010 WL 5422550, at *4 (C.D. Cal. Dec. 28, 2010) (holding there is no

basis "to support the view that the involvement of a federal receiver may negate an

9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:21-CV-02927-CAS-GJS
NON-PARTY CITY NATIONAL BANK'S
MOTION TO QUASH SUBPOENA

1   otherwise enforceable forum selection clause" and that "because the receivership

2   entities in this case would be bound by the terms" of a forum selection clause, "the

3   Receiver is likewise bound").

4       Contracts requiring ADR are no different.  The Federal Arbitration Act

5   ("FAA") reaffirms the "fundamental principle that arbitration is a matter of

6   contract," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011), and

7   reflects an "emphatic federal policy in favor of arbitral dispute resolution," *KPMG*

8   *LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (vacating denial of motion to compel

9   arbitration brought by auditing firm against investors in a Ponzi scheme and

10  instructing lower court to determine which claims were subject to arbitration).  A

11  contract requiring judicial reference is no different.  *See Carr Bus. Enter., Inc. v.*

12  *City of Chowchilla*, 166 Cal. App. 4th 25, 28 (2008) ("A judicially ordered

13  reference to alternative dispute resolution pursuant to section 638 is a matter of

14  contract between the parties.").

15      Courts thus frequently compel to arbitration claims brought by receivers

16  who stand in the shoes of receivership entities that are bound by an agreement to

17  arbitrate.  *See, e.g.*, *Seaman v. Priv. Placement Cap. Notes II, LLC*, 2017 WL

18  1166336, at *4, *7 (S.D. Cal. Mar. 29, 2017) (granting motion to compel SEC

19  receiver to arbitrate fraudulent transfer claim based on receivership entity's

20  agreement to arbitrate); *Javitch v. First Union Secs. Inc.*, 315 F.3d 619, 627 (6th

21  Cir. 2003) (granting motion to compel arbitration and holding that receiver "is

22  bound to the arbitration agreements to the same extent that the receivership entities

23  would have been absent the appointment of the receiver"); *Capitol Life Ins. Co. v.*

24  *Gallagher*, 47 F.3d 1178, 1995 WL 66602, at *2 (10th Cir. 1995) ("It is further

25  undisputed that Gallagher, *as GSL's receiver*, may be compelled to arbitrate

26  because a receiver 'stands in the shoes' of the insolvent insurance company."

27  (emphasis in original)); *S.B.A. v. Coqui Capital Mgmt., LLC*, 2008 WL 4735234, at

28  *2 (S.D.N.Y. Oct. 7, 2008) ("[A] receiver's ability to litigate claims in federal

10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:21-CV-02927-CAS-GJS
NON-PARTY CITY NATIONAL BANK'S
MOTION TO QUASH SUBPOENA

court is limited by any valid agreement, previously executed by the receivership
entity, that mandates arbitration."); *Moran v. Svete*, 366 Fed. Appx. 624, 630 (6th
Cir. 2010) (Receiver is "bound to arbitrate to the same extent that party would have
been absent the appointment of a receiver"); *Wiand v. Schneiderman*, 778 F.3d
917, 924 (11th Cir. 2015) ("there is no inherent conflict between arbitration and the
underlying purpose of court-appointed receivers pursuing clawback claims").

Here, two things are clear: (1) the Receiver is bound by the ADR provisions
to which the 1inMM Related Clients agreed to be bound; and (2) those provisions
preclude enforcement of the Subpoena. *McIntire v. China Media Express
Holdings, Inc*., 252 F. Supp. 3d 328 (S.D.N.Y. 2017) is highly persuasive. Like
here, a receiver was appointed in a SEC civil enforcement action to act as receiver
for a company (CCME). *Id.* at 330. The receiver subpoenaed CCME's former law
firm, which was not a party in the enforcement action, as part of the receiver's
investigation into potential malpractice claims against the firm. *Id.* Because the
engagement agreement between CCME and the law firm required that any disputes
be resolved through arbitration, the law firm moved to quash the subpoena. *Id.*
The receiver opposed the motion to quash, claiming that the court had endowed
him with broad authority, comparable to that of a bankruptcy trustee, to
"investigate the acts, conduct, assets, liabilities, and financial condition" of CCME.
*Id.* The *McIntire* court disagreed and quashed the subpoena, holding:

> The Court is not persuaded that the Special Receiver's powers are
> so unrestrained. *The Special Receiver, because he stands in
> CCME's shoes, does not have a subpoena power that exceeds
> that of CCME.* . . . The Special Receiver may not use his status
> as a court-appointed Special Receiver to flout the primacy of the
> arbitrator or to get a head-start on pursuing discovery of the
> claims that are subject to arbitration.

*Id.* at 331 (emphasis added).

Like the receiver in *McIntire*, the Receiver here does not have discovery
powers or rights greater than those of any 1inMM Related Client on whose behalf

11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:21-CV-02927-CAS-GJS
NON-PARTY CITY NATIONAL BANK'S
MOTION TO QUASH SUBPOENA

1    she purports to act.  As *McIntire* makes clear, the Receiver's mandate to

2    investigate claims on behalf of the 1inMM Related Clients does not give her

3    authority to evade the ADR provisions in the Account Agreements and Services

4    Agreements.  *See id.* at 330 ("A court order that appoints a receiver to do a specific

5    task "define[s] the Receiver's duties and purpose, not his powers." (quoting *Cobalt*

6    *Multifamily Inv'rs I, LLC v. Arden*, 46 F. Supp. 3d 357, 361 (S.D.N.Y. 2014)

7    ("Although [r]eceivers appointed at the SEC's request [to investigate alleged Ponzi

8    schemes] are equipped with a variety of tools to help preserve the status quo, their

9    power is not without limits." (quotations omitted)))).

10    Any claim by the Receiver against CNB would necessarily relate to the

11    services CNB allegedly rendered to the 1inMM Related Clients.  *Cf. Wiand*, 778

12    F.3d at 925.  Those services are all governed by the Account Agreements and

13    Services Agreements between CNB and the 1inMM Related Clients.  Any claim

14    arising from such services—such as, by definition, any claim that the Receiver

15    might bring against CNB—is governed by the mandatory ADR provisions

16    contained in those Agreements.  Thus, the Receiver "steps into the shoes" of the

17    1inMM Related Clients and "assum[es] all the[ir] rights and obligations"—

18    including their obligation to resolve their disputes with CNB in accordance with

19    the mandatory ADR provisions.  *See Eberhard v. Marcu,* 530 F.3d 122, 132 (2nd

20    Cir. 2008) ("[T]he authority of a [SEC] receiver is defined by the entity or entities

21    in the receivership. [T]he plaintiff in his capacity of receiver has no greater rights

22    or powers than the corporation itself would have." (internal quotations omitted)).

23    Accordingly, the Subpoena should be quashed.

24    **B.    <u>Quashing the Subpoena is the Appropriate Remedy.</u>**

25    By agreeing to the ADR provisions requiring arbitration and judicial

26    reference, the 1inMM Related Clients gave up the ability to propound discovery on

27    CNB in federal court.  "Limited discovery rights are the hallmark of arbitration."

28    *Coast Plaza Drs. Hosp. v. Blue Cross of California*, 83 Cal. App. 4th 677, 689

12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:21-CV-02927-CAS-GJS
NON-PARTY CITY NATIONAL BANK'S
MOTION TO QUASH SUBPOENA

1   (2000) ("Discovery is *not* a right in arbitration as it is in judicial proceedings."

2   (emphasis in original)); *Brock v. Kaiser Found. Hosps.*, 10 Cal. App. 4th 1790,

3   1802 (1992) ("Indeed, court-ordered discovery in arbitration proceedings would

4   defeat the very purpose of arbitration."). Thus, "[w]hen the contracting parties

5   stipulate that disputes will be submitted to arbitration, they relinquish the right to

6   certain procedural niceties which are normally associated with a formal trial. One

7   of these accoutrements is the right to pre-trial discovery." *Portfolio Hotels, LLC v.*

8   *1250 N. SD, LLC*, 2021 WL 4124224, at *7 (S.D. Cal. Sept. 9, 2021) (quoting

9   *Burton v. Bush*, 614 F.2d 389, 390 (4th Cir. 1980)).

10       Similarly, in judicial reference, the parties would be subject to California

11   discovery and evidentiary rules, which preclude pre-filing discovery. *See* Cal

12   Code Civ Proc § 640; *O'Donoghue v. Superior Ct.*, 219 Cal. App. 4th 245, 265

13   (2013). In order to obtain discovery in judicial reference, the Receiver first would

14   have to assert claims against CNB in *state court* and then wait the statutory period

15   before propounding discovery on CNB. Cal. Code Civ. Proc. § 2017.010 (a "party

16   may obtain discovery regarding any matter, not privileged, that is relevant to the

17   subject matter involved in the pending action"); *id.* § 2031.020(b) (plaintiff may

18   not make demand for documents until 10 days after service of the summons);

19   *Dep't of Fair Emp. & Hous. v. Superior Ct.*, 225 Cal. App. 3d 728, 732 (1990)

20   (holding discovery rights under California's Civil Discovery Act apply only to a

21   pending "Action").

22       The discovery sought by the Receiver via the Subpoena is plainly in

23   furtherance of litigating a dispute or claim. Indisputably, the 1inMM Related

24   Clients have *always* been subject to mandatory ADR provisions that bar them from

25   bringing a lawsuit (or propounding pre-suit discovery) outside of the ADR

26   procedures. The 1inMM Related Clients—and thereby the Receiver who purports

27   to act on their behalf—relinquished their rights to sue or propound discovery in

28   federal court when they entered into the Account Agreements and Services

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:21-CV-02927-CAS-GJS
NON-PARTY CITY NATIONAL BANK'S
MOTION TO QUASH SUBPOENA

Agreements.  The Court need not determine *which* ADR provision governs in order to quash the Subpoena.  For even assuming that the operative contracts are the ones in effect when the 1inMM Related Clients first opened their accounts, the 1inMM Related Clients—and accordingly the Receiver who purports to stand in their shoes—are contractually prohibited from serving the Subpoena against CNB in federal court.

Moreover, the Receiver is not entitled to exploit this SEC enforcement action to seek discovery for a dispute that she may not bring in this Court.  *See Oppenhiemer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n. 17 (1978) ("[W]hen the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied."); *In re Refco Securities Litigation*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011) (denying discovery after concluding "the true purpose of the. . . request for the [document] is to bolster claims in the arbitration"); *HTG Cap. Partners, LLC v. Doe(s)*, 2015 WL 5611333, at *4 (N.D. Ill. Sept. 22, 2015) ("The Court agrees that it would be burdensome [under Rule 45] to mandate discovery for a claim that cannot be litigated in court.").

The Receivership Order does not override the limitations on the Receiver's right to discovery that result from the binding ADR provisions.  If the Subpoena is not quashed, the Receiver's attempt to end-run those provisions by obtaining discovery under the misleading guise of a third-party subpoena would nullify the procedures to which CNB and the 1inMM Related Clients agreed in the Account Agreements and Services Agreements.  The FAA, California law, and basic notions of justice require that the Subpoena be quashed to protect CNB's right to the "simplicity, informality, and expedition" of discovery in accordance with the ADR provisions.  *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1270 (9th Cir. 2017); Fed. R. Civ. Proc. 45(d)(1)-(3) (grounds for quashing subpoena); *Theofel v. Farey-Jones,* 359 F.3d 1066, 1074 (9th Cir. 2003) ("The subpoena power is a

14

1  substantial delegation of authority to private parties, and those who invoke it have

2  a grave responsibility to ensure it is not abused.").[3]  Allowing the egregiously

3  broad discovery the Receiver demands is *per se* an undue burden because it would

4  force CNB to forego its negotiated right to ADR and expend substantial internal

5  and legal resources that it negotiated to avoid.  *See Burton*, 614 F.2d at 391.

6          In sum, the Subpoena is unenforceable because the Receiver may not evade

7  or flout the mandatory ADR provisions agreed to by the 1inMM Related Clients.

8  CNB has already spent substantial time and money to respond voluntarily and

9  cooperatively to the Receiver's pre-Subpoena requests.  The resources required to

10  respond to the Receiver's 122 document demands (and their subparts) spanning

11  more than a decade (from January 2013) would be enormous.

12  **IV.    CONCLUSION**

13          For the foregoing reasons, non-party CNB respectfully requests that the

14  Court quash the Subpoena in its entirety.

15

16  Dated:  March 15, 2023                    LATHAM & WATKINS LLP

17

18                                            By /s/ Joshua G. Hamilton

19                                            Joshua G. Hamilton
                                              *Attorneys for Non-Party*
20                                            *City National Bank*

21

22

23

24

25

---

[3] This Motion focuses on the invalidity of the Subpoena because of the binding

26  ADR provisions.  By timely invoking its right to ADR by moving to quash the
     Subpoena, CNB also expressly preserves all other objections to the Subpoena.

27  Concurrently with the filing of this Motion, CNB is also serving its objections to

28  the Subpoena on the Receiver.

15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
LOS ANGELES

CASE NO. 2:21-CV-02927-CAS-GJS
NON-PARTY CITY NATIONAL BANK'S
MOTION TO QUASH SUBPOENA