**RAINES FELDMAN LLP**
Kathy Bazoian Phelps (State Bar No. 155564)
kphelps@raineslaw.com
1800 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone: (310) 440-4100
Facsimile: (310) 691-1943

*Counsel for Michele Vives,*
*Permanent Receiver*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ZACHARY J. HORWITZ, 1inMM CAPITAL, LLC,<br><br>Defendants. | Case No.: 2:21-cv-02927-CAS-PDx<br><br>**RECEIVER'S OPPOSITION TO NON-PARTY CITY NATIONAL BANK'S MOTION TO QUASH SUBPOENA**<br><br>[Filed concurrently with Declarations of Michele Vives and Kathy Bazoian Phelps]<br><br>Hearing Date: April 24, 2023<br>Hearing Time: 3:00 p.m.<br>Courtroom: 580<br>Address: 255 E. Temple St., 6th Fl.<br>Los Angeles, CA 90012<br>Hon. Patricia Donahue<br><br>DISCOVERY MATTER |

3173301.2

CASE NO. 2:21-CV-02927-CAS-PDX    RECEIVER'S OPPOSITION TO NON-PARTY
CNB'S MOTION TO QUASH SUBPOENA

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................1
II. RELEVANT BACKGROUND ...................................................................3
   A. CNB Agreements ..............................................................................3
   B. The Investigatory Subpoena ..............................................................3
III. ARGUMENT ...............................................................................................5
   A. The Receiver Does Not "Stand in the Shoes" of Horwitz or MJLZ Trust and is Not Subject to Any ADR Agreement ............5
   B. The Investigatory Subpoena Does Not Trigger ADR...................5
   C. The Account Agreements and TMAs Do Not Contain Applicable Arbitration Provisions ...................................................6
   D. CNB Did Not Provide Proof of Notice of Changes to Agreements .......................................................................................9
   E. The Receiver is Not Bound by ADR Provisions ........................10
IV. CONCLUSION .........................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Badie v. Bank of America*,
  67 Cal. App. 4th 779 (1998) .................................................................................9

*Cobb v. Ironwood Country Club*,
  233 Cal. App. 4th 960 (2015) ................................................................................8

*In re Highland Capital Management, L.P*,
  2021 WL 5769320 (Bankr. N.D. Tex. 2021) ......................................................10

*Janvey v. Alguire*,
  847 F.3d 231 (5th Cir. 2017) ..............................................................................10

*Lipsett v. Banco Popular North America*,
  2022 WL 17547444 at *5 (S.D.N.Y., Dec. 9, 2022, No. 22 CIV. 3901 (VM)) ...................................................................................................................9

*Menke v. Willcox*,
  275 F. 57 (S.D.N.Y. 1921) ..................................................................................10

*Quilling v. Grand Street Trust*,
  2005 WL 1983879, *2 (W.D.N.C. 2005) ...........................................................11

*Resolution Trust Corp. v. CedarMinn Bldg. Ltd. P'ship*,
  956 F.2d 1446 (8th Cir. 1992) ............................................................................10

*S.E.C. v. Bilzerian*,
  378 F.3d 1100 (D.C. Cir. 2004) ..........................................................................11

*S.E.C. v. Elfindepan, S.A.*,
  169 F. Supp. 420 (D.N.C. 2001) ..........................................................................3

*S.E.C. v. Hardy*,
  803 F.2d 1034 (9th Cir. 1986) ............................................................................11

*Samuels v. E.F. Drew & Co.*,
  292 F. 734 (2d Cir. 1923) ...................................................................................10

*Sevier County Schools Federal Credit Union v. Branch Banking & Trust*,
  990 F.3d 470 (6th Cir. 2021) ................................................................................9

*Shearson/Am. Express, Inc. v. McMahon*,
  482 U.S. 220 (1987) ............................................................................................11

*Sifuentes v. Dropbox, Inc.*,
  2022 WL 2673080 at *4 (N.D. Cal., June 29, 2022, No. 20-CV-07908-HSG) ....................................................................................................................9

*Winkler v. McCloskey*,
  2022 WL 4355308 (C.D. Cal., Sept. 6, 2022) ....................................................10

**Statutes**

Cal. Civ. Code § 1653...................................................................................................6

Cal. Civ. Code § 1654...................................................................................................5

## I. INTRODUCTION

Michele Vives, the receiver ("Receiver") for 1inMM Capital, LLC ("1inMM") and its subsidiaries and affiliates, opposes City National Bank's ("CNB") Motion to Quash Subpoena ("Motion"). The Receiver served a subpoena on CNB in furtherance of her investigation of claims and causes of action in the receivership case ("Subpoena").

CNB's Motion does not address documents requested in more than half of the 122 requests in the Subpoena. Although captioned as a motion to quash the *entirety* of the investigatory Subpoena, the Motion does not even purport to challenge documents relating to Zachary Horwitz individually ("Horwitz")—who is not a Receivership Entity. Accordingly, the Motion simply cannot serve to quash the entire Subpoena. The Receiver requests that the Court deny the Motion for the following reasons:

1. **There is No Underlying Dispute**: The Subpoena merely seeks documents that Receiver needs to do the job she has been appointed to do – to locate all assets and pursue all claims for the benefit of the defrauded victims. The Receiver has not raised any dispute to which any ADR provision applies.

2. **The Receiver Does Not Stand in the Shoes of Horwitz (or MJLZ Trust)**.[1] The Motion does not address the requests in the Subpoena relating to non-receivership entity Horwitz. CNB's "stand in the shoes" argument does not apply to documents requested in at least half of the requests in the Subpoena. The Motion cannot serve to quash the entirety of the Subpoena as it does not even purport to apply an arbitration clause as to these records. No ADR clause in any Account Agreement and Disclosure ("Account Agreement") or Treasury Management Services Disclosure and Agreement ("TMA") governing Horwitz or MJLZ Trust

---

[1] CNB takes the position that, on the one hand, the Receiver "stands in the shoes" of all of the account holders as receiver but, on the other hand, CNB reserves the right to argue that all of them are not receivership entities. (Dkt. No. 195, page 2, fn. 1). CNB's equivocation is explained by the actual facts.

applies here.

3. **Legal Process (a Subpoena) are Excepted from ADR Provisions**: The ADR provisions in all of the Account Agreements, by their own terms, do ***not*** apply to this legal process of the service of a Subpoena. Even the 2007 agreement (Ex. "I") that only applies to one entity, and the 2023 agreement (Ex. "N") that was created after the Subpoena was issued, by their express terms do not provide for arbitration of a California dispute, and they make exception for legal process.

4. **There is No Evidence of Assent to Arbitration Provisions**. CNB has not presented any evidence of assent to arbitration by the account holders or the Receiver. Only *after* the Receiver served the Subpoena did CNB insert an arbitration provision in its Account Agreement. (Ex. "N"). There is no evidence that: (i) CNB notified any account holder or the Receiver of any change to CNB's agreements concerning imposition of an ADR provision; or (ii) any account holder assented to the inclusion of an arbitration provision.

5. **The Subpoena is Unrelated to the TMAs**. CNB cites the ADR language in the TMAs which, by CNB's own admission, only applies to 1inMM Productions, LLC and Rogue Black LLC as to limited services arising under the TMAs—none of which are at issue in the Subpoena. The Subpoena falls outside the reach of the TMA's ADR clauses.

6. **Court Decline to Compel Receiver to Arbitrate**. Multiple courts, including the Central District of California, have refused to compel a receiver to arbitrate even if a receivership entity entered into an agreement with an arbitration provision.

7. **Judicial Economy and Equity Conflict with Arbitration**. Equity dictates that the Receiver should not be bound by ADR provisions, even if any should apply. The Court is granted complete jurisdiction and control over receivership property so that judicial efficiency is served in managing claims regarding receivership property in one forum. ADR that divests the receivership

court's complete jurisdiction and control inherently conflicts with the underlying purpose of receiverships.

## II. RELEVANT BACKGROUND

### A. CNB Agreements

Schedules of the Account Opening Documents, Account Agreements and TMAs, along with the dates of the agreements and the dates and substance of revisions to those agreements made without notice to the account holders, is attached as Exhibits "1" and "2." There is no binding arbitration provision that applies to any of the Receivership Entities or to the contents of the Subpoena.

### B. The Investigatory Subpoena

On January 14, 2022, the Court appointed the Receiver as permanent receiver of 1inMM and its subsidiaries and affiliates and over assets that are attributable to funds derived from investors or clients of Horwitz and 1inMM Capital, LLC (together, "Defendants") (Dkt. 70) (the "Receiver Order"). Horwitz and MJLZ Trust are *not* receivership entities. (*Id.*) The Receiver Order gave the Receiver the full powers of an equity receiver and authorized the Receiver "to investigate . . . all claims" relating to "the activities of present or past employees or agents of Defendant 1inMM, and its subsidiaries and affiliates." (*Id.*, at 1, 3.)

The Receiver is charged with the duty to investigate and marshal assets for the benefit of the defrauded victims in the scheme run by Horwitz and 1inMM. Issuance of a third-party subpoena by a receiver is appropriate. *See, e.g., S.E.C. v. Elfindepan, S.A.*, 169 F. Supp. 420 (D.N.C. 2001) (The service of a subpoena to produce documents concerning [the receivership defendants certainly constitutes a reasonable method of fulfilling her specified duties as receiver).

Analysis of the banking relationship at CNB – 1inMM's and Horwitz's primary bank – is a necessary part of the Receiver's investigation. The ability to compel production of records is an essential device for the Receiver to accomplish the asset collection and investigation obligations imposed on her under the

3

Receiver Order. Moreover, the Receiver Order does not limit the investigation to records of the Receivership Entities. The CNB account holder records need not be records of the Receivership Entities to be discoverable. Records relating to Horwitz and MJLZ Trust (that are not subject to ADR provisions binding on the Receiver) are included in the Subpoena, which bear directly on potential claims of the estate.[2]

The Receiver requires the documents requested in the Subpoena to fulfill her duties to investigate claims and assets. (Vives Decl., ¶ 3). Just two examples of the transactions that require further investigation are:

- Between October 2013 and March 2021, Horwitz transferred more than $121 million from the 1inMM business accounts to his personal account in about 366 different transfers. (Vives Decl., ¶ 4).

- CNB extended a revolving $1.4 million line of credit to Horwitz from 2013 to 2021, during which time Horwitz borrowed over $63 million to draw and transfer funds from his personal line of credit at CNB to business accounts at CNB, using CNB's repeated extension of credit to Horwitz personally to fund the Ponzi scheme. (Vives Decl., ¶ 4). In early 2020, CNB advised Horwitz that it had updated its credit policy to require information about the loan purpose, noting that if the loan was for business purposes, the line of credit would have to be converted to a secured business line. (*Id.*)

The Subpoena seeks information relating to CNB's policies and knowledge, including the bank's due diligence files and software red flag alerts, relating to the

---

[2] Most of the requests relate to Horwitz in full or in part through the reference to "ACCOUNTS" (which includes Horwitz's account). Only the following requests exclude Horwitz or MJLZ Trust to investigate claims: Nos. 14-17, 32-38, 41-43, 52-54, 57, 63-87, 89-99, and 118-120. Request Nos 63-87 relate to CNB's banking procedures which are a necessary part of the Receiver's investigation.

banking activity of Horwitz and 1inMM.[3]

## III. ARGUMENT

### A. The Receiver Does Not "Stand in the Shoes" of Horwitz or MJLZ Trust and is Not Subject to Any ADR Agreement

CNB argues the Court cannot enforce the Subpoena because the "Receiver stands in the shoes of the entity for which she was appointed, and is subject to that entity's agreements," and the "banking relationship" between the "1inMM Related Clients" and CNB is "governed by" agreements with "ADR provisions." (See Motion, Dkt. 195, at 1:7-12). However, the Subpoena largely relates to Horwitz's activities, and Horwitz is not a receivership entity. (Dkt. 70; Dkt. 195-8.). The Receiver does not stand in Horwitz's or MJLZ Trust's shoes and is thus not bound by any ADR provision—to the extent one even exists. The Receiver Order empowers the Receiver to probe Horwitz's actions. (Dkt. 70.) The Receiver is entitled to subpoena—in the receivership action—documents relating to Horwitz or other third parties to further her investigation. The Motion does not address at least half of the 122 requests in the Subpoena.

### B. The Investigatory Subpoena Does Not Trigger ADR

The Subpoena does not trigger any of the ADR provisions contained in any of the agreements attached to the Motion.[4] Indeed, the express language from those agreements makes clear that the Subpoena falls outside the scope of the various ADR clauses (see summary Charts in Exhibits "1" and "2").

The Receiver may use a subpoena to investigate matters relating to the

---

[3] Perhaps reflective of CNB's desperation to conceal records, CNB has separately served 266 pages of Objections to the substantive requests in the Subpoena. The Receiver has sought to meet and confer with CNB on these substantive Objections, an invitation which CNB's counsel has declined to accept as of this time. See Phelps Decl. at ¶¶ 3 and 4.

[4] To the extent there is any uncertainty in the agreements about whether an ADR provision applies, the "language" of the agreements "should be interpreted most strongly against the party [CNB] who caused the uncertainty to exist." Cal. Civ. Code § 1654.

receivership. The CNB agreements only provide for ADR in the event of an actual—not potential or theoretical—dispute. There is no present or actual dispute between the Receiver and CNB. CNB's fear of a future dispute is not a legitimate basis for CNB to evade the Subpoena. CNB's assertion that the CNB agreements provide for "mandatory ADR" under the present circumstances is false. (Motion, Dkt. 195, at 15:6-7.) Even if a dispute arises in the future, the Receiver still is not subject to the ADR provisions. (*See* III.E., *infra*.)

      C.     **The Account Agreements and TMAs Do Not Contain Applicable Arbitration Provisions**

      **1.** ***Account Agreement, effective May 29, 2007***: The Subpoena simply seeks documents from CNB and does not create a "dispute" under the Account Agreement's definition of that term. It is not a "disagreement," "claim," or "controversy."[5] (Ex. "I," at 100.) Moreover, the only type of "dispute" subject to arbitration "involves more than the jurisdictional limit of the small claims court . . . or the dispute is not otherwise eligible for binding arbitration." (*Id.*, at 101.) The Subpoena does not request any amount from CNB—much less an amount above the "limit of the small claims court." Additionally, the statement that a "dispute . . . not otherwise eligible for binding arbitration . . . shall be resolved by . . . binding arbitration" is nonsensical and rendered meaningless. Cal. Civ. Code § 1653 ("Words in a contract which are wholly inconsistent with its nature . . . are to be rejected."). Lastly, this 2007 Account Agreement allows a party to it to "obtain provisional relief . . . from a court having jurisdiction" and "comply with any legal process"—which means the Subpoena is proper. (Ex. "I," at 101; 22 CFR § 92.84 ("Legal process . . . includes subpoenas"); Cal. Gov. Code § 68150(g) ("subpoenas . . . or other legal process").)

---

[5] CNB declined to enter into a tolling agreement, suggesting that even CNB does not believe there is a dispute that would trigger ADR. (Dkt. 195-1, at ¶ 11).

**2. *Account Agreements, effective October 1, 2012 and November 1, 2016***: Again, the Subpoena is not a "dispute" because there is no "disagreement," "claim," or "controversy." (Ex. "J," at 156; Ex. "K," at 213-14). Only "a dispute involving $50,000 or more" triggers resolution by judicial reference. (*Id.*) The Subpoena involves $0. Even if the ADR provision applied here—which it does not—the Subpoena is proper because the parties can "obtain provisional or ancillary remedies . . . from a court having jurisdiction" and/or "comply with any legal process." (Ex. "J," at 157; Ex. "K," at 215).

**3. *Account Agreements, effective October 1, 2019 and September 1, 2020***: While the Account Agreements do not define "dispute," the Subpoena is a request for documents to a non-party—not a "dispute." FRCP 45(a)(D). Resolution by judicial reference is only available under the Account Agreements for a "dispute that involves the combined claims of all parties totaling $250,000 or more." (Ex. "L" at 244; Ex. "M" at 266.) The Subpoena does not involve a claim for any amount, and CNB does not suggest otherwise. The Account Agreements also allow the parties to "obtain provisional or ancillary remedies . . . from a court having jurisdiction" and/or "comply with any legal process."

**4. *Account Agreement, effective February 1, 2023***: The Subpoena does not trigger the arbitration provision in the Account Agreement because (1) the Account Agreement was made effective ***after*** the issuance and service of the Subpoena; (2) the Subpoena is not a "Claim" because it does not involve "a dispute, problem, or concern;" and (3) the Account Agreement permits the parties to "apply[] to any court of competent jurisdiction for emergency, provisional, injunctive, or ancillary relief" and/or "comply with any legal process." (Ex. "N," at 288-289.) CNB's attempt to slide in an arbitration provision, on no notice, and impose it on the Receiver after she served the Subpoena is too little, too late, and impermissible. Not only has there been no assent to such a provision by the Receiver (Vives Decl., ¶ 5), but "[when one party to a contract retains the unilateral

right to amend the agreement governing the parties' relationship, its exercise of that right is constrained by the covenant of good faith and fair dealing which precludes amendments that operate retroactively to impair accrued rights." *See Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960 (2015) (denying motion to compel arbitration based on arbitration provision incorporated into bylaws after complaint was filed).

  **5. *TMA, revised August 2011:*** The ADR provision in the TMA does not apply here because (1) the Subpoena does not raise a "dispute" since there is no "disagreement," "claim," or "controversy;" (2) there is no "amount in dispute"—much less an amount exceeding "the jurisdictional limit of the small claims court;" (3) the parties under the TMA may "obtain provisional or ancillary remedies . . . from a court having jurisdiction" and/or "comply with any legal process;" (4) not all of the entities within the Receiver's control who had a banking relationship with CNB are governed by the TMA; and (5) none of the services provided under the TMA to the two entities that had TMAs (1inMM Productions, LLC and Rogue Black LLC) are at issue in the Subpoena. (Ex. "O" at 314-315; Dkt. 195-9, at ¶ 6.)

  **6. *TMA, revised August 2014:*** The TMA does not require ADR here because (1) the Subpoena is not a "dispute"; (2) the TMA requires "disputes . . . be resolved . . . using . . . CNB's then current Account Agreement" and none of those agreements call for ADR; (3) most of the receivership entities did not use TMA services; and (4) the Subpoena does not concern TMA services. (Ex. "P" at 338; Dkt. 195-9, at ¶ 6.)

  **7. *TMA, revised November 2022:*** The Subpoena does not trigger ADR under the TMA because (1) the Investigatory Subpoena does not qualify as a "dispute;" (2) "disputes . . . [are] resolved . . . using the 'Dispute Resolution' provisions of the Account Agreement" and none of the Account Agreements require ADR here; (3) most of the receivership entities are not subject to the TMA; and (4) the Subpoena does not concern TMA services. (Ex. "Q" at 350; Dkt. 195-

9, at ¶ 6.)

### D. CNB Did Not Provide Proof of Notice of Changes to Agreements

There is no evidence that any account holder at issue, or the Receiver, assented to an applicable arbitration provision. CNB contends that "[o]ver the past decade, CNB has occasionally updated its Account Agreement and Services Agreement" and that "[s]ome of these updates have amended the agreements' ADR provisions." (Dkt. 195, 5:4-6). Notably, CNB offers no evidence that the account holders had any actual notice of any of these changes. CNB's secretive revisions are ineffective and a nullity as to each of the account holders. *Sifuentes v. Dropbox, Inc.*, 2022 WL 2673080 at *4 (N.D. Cal., June 29, 2022, No. 20-CV-07908-HSG) (denying motion to compel arbitration where Dropbox failed to show that the user had notice of the later terms of service, which added an arbitration provision) That court found: "Without actual or inquiry notice, there was no manifestation of mutual assent, and the later terms of service do not impose an enforceable agreement to arbitrate." *See also Sevier County Schools Federal Credit Union v. Branch Banking and Trust*, 990 F.3d 470, 479-80 (6th Cir. 2021) (reversed judgment dismissing action and compelling arbitration where plaintiffs did not consent to the arbitration provision in the updated bank services agreement; "record is unclear . . . if the Plaintiffs even received the 2001 BSA or its 2004 and 2017 amendments"); *Lipsett v. Banco Popular North America*, 2022 WL 17547444 at *5 (S.D.N.Y., Dec. 9, 2022, No. 22 CIV. 3901 (VM)) (denied motion to compel arbitration; "because Lipsett had no meaningful opportunity to opt out of arbitration in 2008, . . . no contract to arbitrate was formed . . . . BNPA's addition of the arbitration provision is invalid and not binding . . . ."); *Badie v. Bank of America*, 67 Cal. App. 4th 779, 799 (1998) ("customers' consent to allow the bank to change the terms of the credit account agreement did not constitute consent to addition of an ADR clause by a unilateral notice").

The February 2023 Account Agreement on which CNB hopes to rely was

created *after* the Receiver served the Subpoena and does not govern any of the banking relationships.

### E. The Receiver is Not Bound by ADR Provisions

A court in the Central District of California recently declined to compel arbitration for claims brought by a receiver. *Winkler v. McCloskey*, 2022 WL 4355308 (C.D. Cal., Sept. 6, 2022) (not for publication and on appeal). *Winkler* rejected the contention of the investors in a Ponzi scheme that the receiver is bound by the agreements to arbitrate fraudulent transfer claims because the receiver is asserting claims belonging to the receivership entities and should thus stand in the receivership entity's shoes. Separately, the Fifth Circuit in *Janvey v. Alguire*, 847 F.3d 231 (5th Cir. 2017), also refused to compel a receiver to arbitrate. The court affirmed denial of employee's motions to compel arbitration of claims to recover money paid to employees of entities engaged in a Ponzi scheme. The court noted "important concerns about undermining Congress's goal of consolidating receivership claims before a single court." (*Id.* at 245).

Although not conclusively decided in *Janvey*, the lower court found that the arbitration clauses have been rejected by the receiver. Here, the Receiver requests that the Court deem the arbitration clauses rejected as an executory contract that has been repudiated. *See e.g.*, *In re Highland Capital Management, L.P*, 2021 WL 5769320 (Bankr. N.D. Tex. 2021); *Resolution Trust Corp. v. CedarMinn Bldg. Ltd. P'ship*, 956 F.2d 1446, 1453 (8th Cir. 1992) ("It has been recognized for at least a century that receivers may repudiate contracts and leases."); *see also Samuels v. E.F. Drew & Co.*, 292 F. 734, 739 (2d Cir. 1923) ("The receiver is under no obligation to renounce an executory contract. The contract is terminated, even though the receiver never renounces."); *Menke v. Willcox*, 275 F. 57, 58–59 (S.D.N.Y. 1921) (Learned Hand, J.) ("[T]he mere inaction of receivers, where they do not enjoy any benefits from assets cum onere, is never of itself an adoption, though it may endanger their right to adopt. In order to be bound, they must

positively indicate their intention to take it over.").

Even if the Subpoena triggers any ADR provision here—the Receiver is not bound by any arbitration clause in this proceeding. Arbitration of a receiver's dispute inherently conflicts with Congress's desires and the purposes underlying 28 U.S.C. §§ 754 and 1692 ("Receivership Statutes"). *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (enforcement of arbitration clause overridden by contrary congressional command).

The Receivership Statutes give district courts that appoint federal equity receivers ("Receivership Courts") "complete jurisdiction and control" over all disputes involving receivership property. *See, e.g., S.E.C. v. Bilzerian*, 378 F.3d 1100, 1103 (D.C. Cir. 2004). Congress conferred those powers to allow Receivership Courts to efficiently and orderly administer the receivership estate for the benefit of defrauded investors and other creditors in one forum. *Quilling v. Grand Street Trust*, 2005 WL 1983879, *2 (W.D.N.C. 2005); *S.E.C. v. Hardy*, 803 F.2d 1034, 1037-38 (9th Cir. 1986). Arbitration divests Receivership Courts of those powers and conflicts with the underlying purposes of the Receivership Statutes. Arbitration also undermines receiverships and harms victims of fraudulent schemes by raising costs, which reduces investor recoveries, and introducing a likelihood of inconsistent decisions on common questions of fact and law.

## IV. CONCLUSION

The Receiver respectfully requests the Court deny the Motion and for all other appropriate relief.

DATED: April 3, 2023                    RAINES FELDMAN LLP

                                        By: __/s/ Kathy Bazoian Phelps__
                                            Kathy Bazoian Phelps
                                            *Counsel for Michele Vives,*
                                            *Permanent Receiver*