| | |
|---|---|
| 1 | LATHAM & WATKINS LLP |
| 2 |   Manuel A. Abascal (Bar No. 171301)<br>  *manny.abascal@lw.com* |
| 3 | 355 South Grand Avenue, Suite 100<br>Los Angeles, California 90071-1560 |
| 4 | Telephone: +1.213.485.1234<br>Facsimile: +1.213.891.8763 |
| 5 | |
| 6 | LATHAM & WATKINS LLP<br>  Joshua G. Hamilton (Bar No. 199610) |
| 7 |   *joshua.hamilton@lw.com*<br>10250 Constellation Blvd, Suite 1100 |
| 8 | Los Angeles, California 90067<br>Telephone: +1.424.653.5500 |
| 9 | Facsimile: +1.424.653.5501 |
| 10 | |
| 11 | Attorneys for Non-Party<br>City National Bank |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ZACHARY J. HORWITZ, et al.,<br><br>Defendants. | Case No. 2:21-CV-02927-CAS-PD<br><br>**NON-PARTY CITY NATIONAL BANK'S REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA**<br><br>Hearing Date: April 24, 2023<br>Hearing Time: 3:00 p.m.<br>Courtroom: 580<br>Address: 255 E. Temple St., 5th Fl.<br>Los Angeles, CA 90012<br><br>Hon. Christina A. Snyder<br>Hon. Patricia Donahue<br>DISCOVERY MATTER |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................... 1

II. ARGUMENT ................................................................................................... 1

    A. The Receiver Has Raised A Dispute With CNB. ................................ 1

    B. The Specific Documents the Receiver Requested Are Irrelevant To Her Duty To Abide By Her ADR Obligations. ................................................................................... 3

    C. The "Legal Process" Clause Does Not Impact the ADR Provisions. ............................................................................................. 4

    D. None Of The ADR Provisions Allows Discovery In Federal Court. ........................................................................................ 4

    E. The Receiver's Request To Reject The 1inMM Related Clients' Contracts Lacks Any Legal Basis. .......................................... 5

III. CONCLUSION ................................................................................................ 5

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Aaron v. Rosepink*,
 405 B.R. 659 (Bankr. D. Ariz. 2009) ................................................................... 5

*Bernsley v. Barclays Bank Del.*,
 2023 WL 2291251 (C.D. Cal. Feb. 24, 2023) ..................................................... 2

*F.D.I.C. v. O'Melveny & Myers*,
 61 F.3d 17 (9th Cir. 1995) ................................................................................... 1

*Janvey v. Alguire*,
 847 F.3d 231 (5th Cir. 2017) ............................................................................... 5

*McIntire v. China MediaExpress Holdings, Inc.*,
 252 F. Supp. 3d 328 (S.D.N.Y. 2017) ................................................................. 3

*Oppenhiemer Fund, Inc. v. Sanders*,
 437 U.S. 340 (1978) ............................................................................................ 3

*Patriot Rail Corp. v. Sierra R.R. Co.*,
 2016 WL 704456 (E.D. Cal. Feb. 23, 2016) ....................................................... 3

*Winkler v. McCloskey*,
 2022 WL 4355308 (C.D. Cal., Sept. 6, 2022) ..................................................... 5

**STATUTES**

28 U.S.C. §§ 754 and 1692 ....................................................................................... 5

**RULES**

Cal. Rules of Prof. Conduct, Rule 1.7(a) .................................................................. 1

## I. INTRODUCTION

The Receiver's subpoena authority is only in her capacity as the Receiver for the 1inMM Related Clients, and she is in no "better position than that which was occupied by the person or party for whom [s]he acts." *F.D.I.C. v. O'Melveny & Myers*, 61 F.3d 17, 19 (9th Cir. 1995) ("any defense good against the original party is good against the receiver"). Her Opposition fails to refute this. Nor can her inaccurate charts,[1] or laundry list of legally flawed arguments overcome the fundamental and irrefutable fact that at all relevant times, the 1inMM Related Clients were bound by alternative dispute resolution ("ADR") provisions that preclude the Receiver from litigating any disputes, controversies, or disagreements with CNB in federal court. For that reason, the Subpoena must be quashed.

## II. ARGUMENT

### A. The Receiver Has Raised A Dispute With CNB.

The Receiver argues that the ADR provisions are not triggered because there is no "present or actual dispute between the Receiver and CNB." (Opp. at 6.) This meritless argument is contradicted by the following facts:

- All the ADR provisions broadly define the disputes subject to ADR to include "any disagreement," "any claim or controversy of any kind" including "statutory, common law and equitable claims," and are not limited to lawsuits. (*See* Mot. at 4-6 (discussing Account Agreement's broad definitions of "dispute" and "Claim").)

- The Receiver retained new "special litigation counsel" to pursue "potential claims" on a "small number of cases" where her prior counsel has a conflict, indicating that the Receiver is currently adverse to CNB. *See* ECF # 156; Cal. Rules of Prof. Conduct, Rule 1.7(a) (attorney shall not take on matter "directly adverse to another client in the same or a separate matter," and defining "matter" to include an investigation.).

---

[1] *See* CNB's concurrently filed Objection to Exhibits 1-2 of Declaration of Kathy Bazoian Phelps.

- Less than a week after her appointment, and even before serving the Subpoena, the Receiver's new conflicts counsel informed CNB's counsel that the Receiver was conducting an investigation, requested that CNB enter into a tolling agreement, and notified CNB of its obligation to preserve "all documents, records, and things relating to the 1inMM and Horwitz accounts." (Hamilton Decl. Ex. 6.)

- The Subpoena seeks internal records of CNB, including policies, procedures, and anti-money laundering warnings and flags, which clearly reflect the Receiver's investigation of claims against CNB. (*Id.* Ex. 7.)

- The Receiver's invoices reflect research into potential claims against CNB. (*See, e.g.*, Declaration of Jamie Marr Ex. 4 (discussing meetings with counsel "to review the CNB situation" and discussions with conflicts counsel to discuss "the potential CNB matter").)

The Opposition completely ignores all of these facts. It mischaracterizes the Subpoena as a routine, non-adversarial action taken by the Receiver to "fulfill her duties to investigate claims and assets," when in fact it is an aggressive effort by the Receiver to pursue an impermissible federal suit against CNB, and to end-run the binding ADR provisions. Even if the Receiver were merely investigating claims against other parties, CNB already provided over 9,100 pages of account statements, checks, records of ingoing/outgoing wires from the 1inMM Related Clients and Horwitz, and communications between Horwitz and CNB employees. (Declaration of Crystal Ewell ¶¶ 5-7.) Moreover, it also appears from the public record that the Receiver has access to documents produced to the SEC in connection with this matter. (*Id.*; Marr Decl. ¶¶ 5-7.). The Receiver has made no showing of how the Subpoena's overbroad demands for, among other things, CNB's internal systems, policies, and procedures are related to claims she might bring against any other party, and her argument that a potential claim against CNB is under the monetary threshold for ADR is unsupported. *See Bernsley v. Barclays Bank Del.*, 2023 WL 2291251, at *2 (C.D. Cal. Feb. 24, 2023) ("Once the moving party has met this initial burden [to "show[] that the agreement exists and that its

terms bind the other party], the party opposing arbitration bears the burden of establishing that the arbitration agreement does not apply."); *see, e.g.*, Hamilton Decl. Ex. 7 at Request Nos. 21-36, 63-86; Opp. at 7.

Finally, even under the Receiver's untenable interpretation of "dispute" and "Claim," the Subpoena must be quashed because she is not entitled to propound discovery in furtherance of a claim that she is barred from pursuing in federal court. *See, e.g., Oppenhiemer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n. 17 (1978); Mot. at 13 (no pre-suit discovery available in judicial reference).

### B. The Specific Documents the Receiver Requested Are Irrelevant To Her Duty To Abide By Her ADR Obligations.

The Receiver subpoenaed CNB as the permanent receiver of "1inMM Capital, LLC … and its subsidiaries and affiliates," whose sole relationship with CNB is that of a bank and clients who have agreed to resolve their disputes through ADR. (ECF # 70.) As such, the Receiver is permitted to conduct discovery only on behalf of the receivership entities, and must comply with those entities' mandatory ADR agreements. The Receiver's claim that she does not act for the client of certain accounts for which she also requested documents does not change that result.[2] *Patriot Rail Corp. v. Sierra R.R. Co.*, 2016 WL 704456, at *4 (E.D. Cal. Feb. 23, 2016) (non-parties not entitled to propound discovery); *McIntire v. China MediaExpress Holdings, Inc.*, 252 F. Supp. 3d 328, 331 (S.D.N.Y. 2017) ("The [SEC] Receiver, because he stands in CCME's shoes, does not have a subpoena power that exceeds that of CCME.") The Receiver's reference to a carveout for disputes in California is also a distinction without a difference, as

---

[2] Although irrelevant to the Motion, both MJLZ Trust and Horwitz—like all other clients of CNB—also executed binding ADR agreements. (*See* Mallon Decl. ¶ 4, Ex. F (MJLZ Trust), Ex. J (Account Agreement in effect when Horwitz opened personal account in 2013).)

California disputes are also subject to ADR that likewise precludes discovery in federal court. (*See* Mot. at 4-5.)

### C. The "Legal Process" Clause Does Not Impact the ADR Provisions.

The Receiver next points to customary but irrelevant provisions in the 1inMM Related Clients' Account Agreements addressing CNB's response to the service of legal process.[3] These provisions are irrelevant because they relate to "legal process" initiated by a non-signatory to the Account Agreement. The Account Agreements' unremarkable recognition that CNB "may accept and comply with legal process" initiated by a non-client is thus immaterial to whether CNB is obligated to respond to a Subpoena served by a *client* who agreed to ADR. Moreover, nothing in the Account Agreement *requires* CNB to comply with legal process; it simply acknowledges that CNB *may* comply with legal process that it "reasonably believes to be valid." CNB does not believe the Subpoena is valid, nor will it waive its contractual right to ADR.

### D. None Of The ADR Provisions Allows Discovery In Federal Court.

Although the Opposition does not dispute that *every* 1inMM Related Client signed *at least one* valid Account Agreement containing an agreement to resolve disputes through ADR, the Receiver argues at length about which specific version of the ADR provisions is operative.[4] This is a sideshow. Every Account

---

[3] *See, e.g.*, Hamilton Decl. Ex. J at 148 ("We may comply with any . . . legal process that we reasonably believe is valid"), Ex. K at 203 (same), *see also* Ex. I at 101, Ex. L at 214, Ex. N at 285.

[4] The Opposition incorrectly asserts that the Subpoena is "unrelated" to the Treasury Management Services Agreement, which also contains mandatory ADR provisions. (Mot. at 3-4.) Certain of the 1inMM Related Clients opted into treasury services that are the subject of various document requests. *Compare* Hamilton Decl. Ex. 7 at 48 (requesting documents regarding transfers from Rogue Black, LLC account), *with* Mallon Decl. Ex. H at 41 (listing treasury services in which Rogue Black, LLC enrolled).

Agreement requires ADR, and therefore prohibits the Receiver from issuing and enforcing the Subpoena in federal court.  (Marr Decl. Ex. 3.)

### E. The Receiver's Request To Reject The 1inMM Related Clients' Contracts Lacks Any Legal Basis.

The Opposition fails to acknowledge any of the controlling case law cited in CNB's Motion that holds a receiver is bound by a receivership entity's contracts, including ADR agreements.  Instead the Opposition rests on an unpublished case now on appeal, *Winkler v. McCloskey*, 2022 WL 4355308 (C.D. Cal., Sept. 6, 2022), that improperly imported a bankruptcy trustee's statutory authority to reject executory contracts to the inapposite situation here of a Receiver sitting in equity.  *Winkler* is wrong and should not be followed because Bankruptcy receivers—unlike equity receivers—stand in the shoes of creditors and have different authority than the Receiver has here.  *Aaron v. Rosepink*, 405 B.R. 659, 664 (Bankr. D. Ariz. 2009).  The Receiver also cites *Janvey v. Alguire*, 847 F.3d 231, 244 (5th Cir. 2017), which simply held that a party who had "litigate[d] for nearly three years before moving to compel arbitration" had waived his right to compel the Receiver to arbitrate.  Here, CNB promptly invoked its right to ADR.

There is no legal support for the Receiver's claim that ADR conflicts with the Court's receivership order.  Indeed, the Court's order appointing the Receiver's conflicts counsel expressly authorizes her to initiate "arbitration." (Marr Decl. Ex. 5 at 52.)  There is also no support for her argument that ADR conflicts with Congress's desires and the purposes underlying 28 U.S.C. §§ 754 and 1692.  (Opp. at 11.)  Those statutes have no bearing on whether Receivers are bound by pre-existing contracts.  Allowing a receiver sitting in equity to reject a receivership entity's valid agreements with counterparties would only prejudice those legitimate businesses that contracted with the receivership entity.

### III. CONCLUSION

For the foregoing reasons the Court should quash the Subpoena.

Dated: April 10, 2023

LATHAM & WATKINS LLP

By /s/ *Joshua G. Hamilton*
Joshua G. Hamilton
*Attorneys for Non-Party*
*City National Bank*