# Exhibit 4

## Loftus Declaration

Terence G. Banich (SBN 212173)
terence.banich@katten.com
Allison E. Yager (*pro hac vice*)
allison.yager@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661
Telephone:  (312) 902-5665
Facsimile:   (312) 902-1061

*Attorneys for the Receiver*
Michele Vives

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:21-cv-02927-CAS-PD |
| Plaintiff, | **DECLARATION OF ALEXANDER LOFTUS** |
| v. | |
| ZACHARY J. HORWITZ; and 1inMM CAPITAL, LLC, | Judge:       Hon. Christina A. Snyder<br>Courtroom:  8D |
| Defendants. | |

I, Alexander Loftus, declare as follows:

1. I am over the age of eighteen years, am under no disability and am competent to testify to the matters set forth herein. Except as otherwise stated, all facts set forth in this declaration are based upon my personal knowledge and/or my review of documents. If called as a witness in this case, I could and would testify competently to the facts set forth in this declaration.

2. I submit this declaration in support of the *Motion of Receiver Michele Vives for Order Approving Settlement with Tyler Crookston*, dated May 26, 2023 (the "Motion"). Any capitalized terms not defined herein have the meanings ascribed to them in the Motion.

3. My firm Loftus & Eisenberg, Ltd. ("L & E") represents 42 investors who have promissory notes with JJMT and 111 investors total in the Horwitz scheme.

4. Our clients who invested in JJMT, lost over $30,000,000 and account for the majority of net losses suffered by JJMT investors.

5. L & E was engaged by its 42 clients on a 20% contingent fee to pursue recovery from JJMT and its members.

6. Our litigation pursued a multi-front approach commencing in March 2021 including a class action filed against JJMT in the Circuit Court of Cook County (2021CH01939), an individual action against Tyler Crookston only in the Northern District of Illinois (1:21-cv-06049), and an action against each of the four current and former JJMT members pending in the Circuit Court of Cook County (2021L004262).

7. The Crookston cases were staffed with four attorneys from my firm with collectively 88 years of experience handling class actions and securities litigation.

8. The L & E claims sounded in breach of fiduciary duty, negligent misrepresentation, Illinois Consumer Fraud and Deceptive Business Practices Act,

and Illinois Securities Law of 1953, 815 ILCS 5/12(g). (hereinafter "Investor Claims")

9. The strategy was designed to maximize Crookston's risk on negligence-based theories and present claims on behalf of a large group in various ways to preempt class-based defenses and defenses based on Crookston's relatively limited involvement compared to the other members of JJMT. Once the risk was established with the initial filings, L & E was cognizant of the risk of Crookston's limited resources available for defense and focused its efforts on exploiting the risk in ways that did not immediately increase defense cost and working on a resolution.

10. L & E claimed that some of the Investor Claims created personal liability for Crookston that is generally not dischargeable in bankruptcy.

11. L & E argued Crookston's total potential liability from the Investor Claims alleging joint and several liability with the other JJMT members was over $100,000,000.

12. Presenting the Investor Claims that included joint and several liability, potentially punitive damages, and non-dischargeable liability with nine-figure risk and the Receiver's claims presenting seven-figure risk together enabled a total resolution for much more than negotiating a resolution of the Receiver's claims alone.

13. As our litigation progressed, a Receiver was appointed, and Crookston sought a resolution with the Receiver that did not account for the Investor Claims but required a Bar Order.

14. Meanwhile, two other firms brought cases on behalf of three individual investors against JJMT and its members.

15. The litigation pursued by L & E and the two other investor plaintiffs represented by experienced counsel could have drained nearly all of Crookston's resources if he were to litigate to judgment on multiple fronts.

16. This situation of three law firms representing 45 investors and a Receiver pursuing the same individual with limited assets could have been a disaster and spun into years of litigation and no recovery for investors at all.

17. Rather than spin into a morass, the Receiver thoughtfully came to Chicago and met with of the counsel involved in person (Dckt #93) and the cooperation ensued that summer in pursuit of the common goal of maximizing investor recovery.

18. The Receiver made a smart business decision to limit expense and utilize the Investor Claims and the investor's contingent-fee counsel as a tool to maximize value rather than waste resources taking an adverse position to the vast majority of net losers.

19. L & E agreed to pause its litigation until the Receiver had evaluated her claim against Crookston and coordinated with the other Plaintiffs' counsel to agree to stay their cases as well.

20. L & E counseled its 42 sophisticated clients to agree to allowing the proceeds of any settlement with Crookston to be paid through the Receivership and slowing the litigation to allow the newly appointed Receiver to catch up and pursue the common goal of maximum recovery and agreed to pool the Recovery for payment through the Receivership.

21. L & E's organization and management of 42 investor clients significantly contributed to the relatively prompt resolution of a very messy situation with no adversary action or fees incurred between any investor and the Receiver or between investors.

22. L & E attorneys spent countless hours working with its very sophisticated clients and sometimes their personal counsel, spouses, and beneficiaries to secure their assent to the arrangement with the Receiver to achieve an efficient resolution without any discord among the 45 investor participants in this complex action.

Case No. 2:21-cv-02927-CAS-PD
DECLARATION OF ALEXANDER LOFTUS

4

23. At the same time as it worked with its 42 clients, L & E coordinated with the other Plaintiffs' counsel to make peace and share information.

24. L & E leveraged its mass of clients to gather evidence to strengthen the claims with facts not otherwise available to the other parties to the litigation.

25. This coordination and information sharing culminated in a mediation process with Hon. Sidney Schenkier, Ret. wherein the high risk, high reward, Investor Claims were thoroughly presented and argued utilizing evidence marshalled from extensive informal discovery and formal discovery in related matters.

26. Rather than allow the various Plaintiffs' counsel and the Receiver to be divided by defense counsel, L & E pulled everyone together, in part by making significant sacrifices on fees, in order to negotiate in unified demands based on both the extraordinary risk presented by the investor claims and solid but much smaller fraudulent transfer claims.

27. The result of bringing the claims together into one resolution yielded an amount paid to the Receivership that was significantly greater than any amount offered to the Receiver alone with significantly reduced litigation expense.

28. As part of the peacemaking efforts, L & E voluntarily reduced its contract fee, which was already heavily discounted from a customary 40% of 33%, and volunteered additional discounts to accommodate other counsel resulting in a fees of only 15.58% of the total recovery with no costs reimbursed. This discount on fees and expenses totaled a nearly $300,000 discount off what the contracts with the 42 investors allowed.

29. L & E advanced a large portion of the mediation expense and engaged Certified Fraud Examiners at its own expense to explore the available assets of Defendants. L & E paid experts, mediators, and court filing fees over $27,000 in pursuit of the claims against Crookston.

30. While the Investor Claims presented tremendous upside, very little of the nine-figure upside could have been collected if the cases were litigated to

judgment. L & E thoughtfully evaluated Crookston's ability to pay and secured the assent of its 42 clients, the vast majority of the possible claimants, in order to secure a resolution.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 26, 2023      */s/ Alexander Loftus*
in Chicago, Illinois              Alexander Loftus