Terence G. Banich (SBN 212173)
terence.banich@katten.com
Allison E. Yager (*pro hac vice*)
allison.yager@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661
Telephone:   (312) 902-5200
Facsimile:   (312) 902-1061

*Attorneys for the Receiver*
Michele Vives

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ZACHARY J. HORWITZ and 1inMM CAPITAL, LLC,<br><br>Defendants. | Case No. 2:21-cv-02927-CAS-PD<br><br>**NOTICE OF MOTION AND MOTION OF RECEIVER MICHELE VIVES FOR ORDER APPROVING SETTLEMENT WITH JOSEPH DEALTERIS, JACOB WUNDERLIN, MATTHEW SCHWEINZGER AND JJMT CAPITAL, LLC, AND FOR RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          September 11, 2023<br>Time:          10:00 a.m. PT<br>Judge:         Hon. Christina A. Snyder<br>Courtroom:  8D |

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on September 11, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 8D, located at the United States Courthouse, 350 West First Street, Los Angeles, California 90012, Michele Vives, not individually, but solely as the federal equity receiver (the "Receiver") of defendant 1inMM Capital, LLC and its subsidiaries, affiliates and over the assets more particularly described in the *Order on Appointment of Permanent Receiver*, dated January 14, 2022 [ECF #70] (the "Receiver Order"), will and hereby does move the Court for entry of an order approving the settlement with Joseph deAlteris, Jacob Wunderlin, Matthew Schweinzger and JJMT Capital, LLC, and for related relief (the "Motion").

The Motion is based on the Memorandum of Points and Authorities below and is supported by: (a) the *Settlement Agreement and Mutual Release*, dated June 26, 2023 (the "Settlement Agreement"), copy attached as **Exhibit 1**; (b) the *Declaration of Michele Vives*, dated July 31, 2023 ("Vives Decl."), copy attached as **Exhibit 2**; and (c) the *Declaration of Alexander Loftus*, dated July 31, 2023 ("Loftus Decl."), copy attached as **Exhibit 3**.

This Motion is made following the Local Rule 7-3 conference of counsel which took place on July 31, 2023. **No party requests a hearing on the Motion.**

Dated: July 31, 2023

Respectfully submitted,

**KATTEN MUCHIN ROSENMAN LLP**

By:   /s/ *Terence G. Banich*
Terence G. Banich

*Attorneys for the Receiver*
Michele Vives

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

# **TABLE OF CONTENTS**

Table of Authorities ........................................................................................ iii

Factual Background ......................................................................................... 1

    A.    The Receiver; investigation of transfers .............................................. 1

    B.    The Investor Actions; the Mediation .................................................. 1

    C.    The Transfers .................................................................................... 2

    D.    The Settlement .................................................................................. 3

Legal Standards ............................................................................................... 5

Argument ......................................................................................................... 7

I.    The Settlement is fair, equitable and in the best interests of the Estate. ..................................................................................................... 7

    A.    Probability of success ....................................................................... 8

        1.    UVTA ................................................................................... 8

        2.    Defenses ............................................................................... 9

    B.    Collection difficulties ...................................................................... 12

    C.    Complexity/expense ........................................................................ 12

    D.    Creditors ......................................................................................... 13

II.    The Court should approve the Bar Order. ............................................ 13

    A.    The Court has the power to enter the Bar Order............................... 13

    B.    The Bar Order is fair, just, equitable and in the best interest of the Estate. ..................................................................... 14

    C.    The Bar Order is necessary to the Settlement. .................................. 16

III.    The Court should approve the Administrative Claims.................................. 17

Notice to Creditors .......................................................................................... 21

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

1

# **TABLE OF AUTHORITIES**

2

## Cases

3

*Baten v. Mich. Logistics, Inc.*, 2023 WL 2440244 (C.D. Cal. Mar. 8, 2023) ......... 18

4

*Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417 (B.A.P. 9th Cir. 1997) ................... 7

5

*Danning v. Miller (In re Bullion Reserve of N. Am.)*, 922 F.2d 544 (9th Cir. 1991) ..................................................................................................................10-11

6

*Donell v. Kowell*, 533 F.3d 762 (9th Cir. 2008) ...............................................8-9

7

*Donell v. Mojtahedian*, 976 F. Supp. 2d 1183 (C.D. Cal. 2013)............................ 9

8

*Fed. Trade Comm'n v. Cardiff*, 2020 WL 9938072 (C.D. Cal. Mar. 10, 2020) ..... 21

9

*Futures Trading Comm'n v. Topworth Int'l, Ltd.*, 205 F.2d 1107 (9th Cir. 1999) ............................................................................................................................ 5

10

*Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998) ....................................................................................................... 20

11

*Gill v. Blessing*, 2014 WL 12573667 (C.D. Cal. Oct. 6, 2014)................................ 9

12

*Gordon v. Dadante*, 2008 WL 1805787 (N.D. Ohio Apr. 18, 2008), *aff'd*, 336 F. App'x 540 (6th Cir. 2009) ............................................................................. 17

13

*Gordon v. Dadante*, 336 F. App'x 540 (6th Cir. 2009).......................................5-6

14

*Grimm v. City of Portland*, 971 F.3d 1060 (9th Cir. 2020)................................... 21

15

*In re Bondanelli*, 2020 WL 1304140 (B.A.P. 9th Cir. Mar. 18, 2020) ................... 13

16

*In re Douglas J. Roger, M.D., Inc., APC*, 393 F. Supp. 3d 940 (C.D. Cal. 2019) ................................................................................................................ 7, 20

17

*In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423 (E.D. Pa. 2001)................. 20

18

*In re Heritage Bond Litig.*, 2005 WL 1594403 (C.D. Cal. June 10, 2005)............. 20

19

*In re Incomnet, Inc.*, 463 F.3d 1064 (9th Cir. 2006) ................................................ 10

20

*In re ISE Corp.*, 2012 WL 1377085 (Bankr. S.D. Cal. Apr. 13, 2012)................... 11

21

*In re Lahijani*, 325 B.R. 282 (B.A.P. 9th Cir. 2005)....................................... 7, 20

22

*In re Law*, 308 F. App'x 152 (9th Cir. 2009) ........................................................ 12

23

*In re MGS Mktg.*, 111 B.R. 264 (B.A.P. 9th Cir. 1990) .......................................... 7

24

*In re Omnivision Techs.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................... 20

25

*In re Open Med. Inst., Inc.*, 639 B.R. 169 (B.A.P. 9th Cir. 2022) ..................... 7, 11

26

27

28

*In re Slatkin*, 525 F.3d 805 (9th Cir. 2008) ............................................................. 9

*In re TBH19, LLC*, 2022 WL 16782946 (B.A.P. 9th Cir. Nov. 8, 2022)............ 7, 12

*In re Tidwell*, 2018 WL 1162511 (Bankr. C.D. Cal. Mar. 1, 2018)....................... 13

*In re Walldesign, Inc.*, 872 F.3d 954 (9th Cir. 2017) ............................................. 10

*In re Woodson*, 839 F.2d 610 (9th Cir. 1988) ......................................................... 6

*Jenson v. First Tr. Corp.*, 2008 WL 11338161 (C.D. Cal. June 9, 2008).............. 20

*Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543 (6th Cir. 2006)...................5-6, 21

*Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377 (9th Cir. 1986) ....................6-7

*Mullane v. Central Hanover Trust Co.*, 339 U.S. 306 (1950)................................. 21

*Muñoz v. United States Dep't of State*, 50 F.4th 906 (9th Cir. 2022) .................... 21

*Northpoint Commc'ns Grp., Inc.*, 2007 WL 7541001 (B.A.P. 9th Cir. Nov. 7, 2007) ........................................................................................................................ 10

*Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508 (N.D. Cal. 2008) ...................... 21

*Rodriguez v. Seabreeze Jetlev LLC*, 2022 WL 3327925 (N.D. Cal. Aug. 11, 2022) ..................................................................................................... 17

*RPB SA v. Hyla, Inc.*, 2021 WL 4980092 (C.D. Cal. June 24, 2021) ...................... 8

*SEC v. Aequitas Mgmt., LLC*, 2020 WL 7318305 (D. Or. Nov. 10, 2020)............ 14

*SEC v. Adams*, 2021 WL 8016843 (S.D. Miss. Feb. 25, 2021) .................14-15, 21

*SEC v. Alleca*, 2021 WL 4843987 (N.D. Ga. Sept. 9, 2021), *vacated on other grounds*, 2022 WL 16631325 (11th Cir. Nov. 2, 2022)......................................14-17

*SEC v. Cap. Consultants, LLC*, 397 F.3d 733, 745 (9th Cir. 2005) ........................ 6

*SEC v. Cap. Cove Bancorp LLC*, 2016 WL 11752897 (C.D. Cal. Dec. 15, 2016) ............................................................................................................... 11, 17

*SEC v. Champion-Cain*, 2022 WL 126114 (S.D. Cal. Jan. 13, 2022) ..................... 6

*SEC v. DeYoung*, 850 F.3d 1172 (10th Cir. 2017) ........................................... 14, 16

*SEC v. Hardy*, 803 F.2d 1034 (9th Cir. 1986) ................................................... 5, 13

*SEC v. Hickey*, 322 F.3d 1123 (9th Cir. 2003) ...................................................... 13

*SEC v. Kaleta*, 530 F. App'x 360 (5th Cir. 2013) .........................................6, 14-16

*SEC v. Nadel*, 2012 WL 12910648 (M.D. Fla. Feb. 10, 2012) ...................14-15, 22

*SEC v. Pritzker Levine LLP*, 2022 WL 671020 (9th Cir. Mar. 7, 2022)............18-19

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

*SEC v. Stanford Int'l Bank, Ltd.*, 2017 WL 9989250 (N.D. Tex. Aug. 23, 2017), *aff'd sub nom. Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883 (5th Cir. 2019) ................................................................ 13-14, 16

*SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830 (5th Cir. 2019) .............................. 6

*SEC v. Total Wealth Mgmt., Inc.*, 2019 WL 13179068 (S.D. Cal. Sept. 18, 2019) ............................................................................... 6-8, 12

*SEC v. Wencke*, 622 F.2d 1363 (9th Cir. 1980) ........................................... 13

*Vincent v. Hughes Air W., Inc.*, 557 F.2d 759 (9th Cir. 1977) .............................. 18

*Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883 (5th Cir. 2019) ................. 13-16

## <u>Statutes, Rules and Other</u>

Cal. Civ. Code § 3439.04 ........................................................... 2, 8

Cal. Civ. Code § 3439.07 ........................................................... 8

Cal. Civ. Code § 3439.08 ........................................................... 2, 8

L.R. 66-8 ...................................................................... 6

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

## MEMORANDUM OF POINTS AND AUTHORITIES

## Factual Background

### A.     The Receiver; investigation of transfers

On April 5, 2021, the SEC commenced this action against Zachary J. Horwitz ("Horwitz") and 1inMM Capital, LLC ("1inMM"; together, "Defendants"), alleging that they committed an offering fraud and Ponzi scheme in violation of the federal securities laws ("Ponzi Scheme"). On January 14, 2022, the Court entered the Receiver Order, appointing Ms. Vives as receiver of 1inMM, its subsidiaries, affiliates and the assets that are attributable to funds derived from investors or clients of Defendants or were fraudulently transferred by Defendants (the "Estate"). The Receiver Order authorizes the Receiver, among other things, to prosecute claims.

### B.     The Investor Actions; the Mediation

The Receiver determined that Horwitz raised investor funds mostly using certain entities that pooled large amounts of money from many individual investors or lenders (collectively referred to herein as "investors") for upstream loans to, or investments in, 1inMM (collectively referred to herein as "investments"). (Vives Decl. ¶9.) The largest of these entities was JJMT Capital, LLC ("JJMT"), of which Joseph deAlteris, Jacob Wunderlin and Matthew Schweinzger (collectively, "JJM," and with JJMT, "JJM Parties") are members. (Id.)

Several investors commenced lawsuits alleging claims associated with Defendants' scheme, including against the JJM Parties ("Investor Actions"). (Id. ¶10.) The plaintiffs in the Investor Actions ("Investor Plaintiffs") claimed millions of dollars were owed, generally asserting that the JJM Parties and other defendants are liable to them in connection with the Ponzi Scheme, loans from the Investor Plaintiffs to JJMT and loans from JJMT to 1inMM ("Investor Claims"). (Id. ¶11.) The JJM Parties asserted defenses that could have resulted in the Investor Plaintiffs taking nothing. (Id.)

Counsel for the Investor Plaintiffs worked with the Receiver because she had claims against the same defendants, while the defendants expressed interest in settling the Receiver's potential claims against them, but only if the Receiver could concurrently resolve or eliminate the Investor Actions. (*Id.* ¶12.) After months of negotiations, the Receiver and those litigants agreed to mediate, selecting retired U.S. Magistrate Judge Sidney I. Schenkier as mediator. (*Id.* ¶13.)

## C. The Transfers

As part of the above events, the JJM Parties and their counsel, Corey Weber of BG Law LLP, Matthew S. Ryan of Cotsirilos, Tighe, Streicker, Poulous & Campbell, Ltd., and James Kopecky of Kopecky Schumacher Rosenburg LLC, worked cooperatively with the Receiver. (*Id.* ¶14.) The JJM Parties produced a large volume of financial documents and related information. (*Id.*) The Receiver determined that JJM were each net winners of the Ponzi Scheme in the following amounts: $8,309,096 (deAlteris); $9,349,741 (Wunderlin); and $6,625,309 (Schweinzger) (collectively, the "Transfers"). (*Id.* ¶15.)

The Receiver asserted that she may avoid and recover the Transfers as actual fraudulent transfers pursuant to §3439.04(a)(1) of the California Uniform Voidable Transactions Act, Cal. Civ. Code §3439 *et seq.* ("UVTA") ("Receiver Claims"). (Vives Decl. ¶16.) As the Receiver contended, 1inMM and Horwitz made the Transfers with the actual intent to hinder, delay, or defraud their creditors, as Horwitz pled guilty and admitted that he used 1inMM to operate a Ponzi scheme, which conclusively establishes intent for purposes of a UVTA actual fraudulent transfer claim. (*Id.*) The Receiver argued that she could recover the Transfers from JJM under UVTA §3439.08(b)(1)(A) as their first transferee, because even though 1inMM made many of the Transfers to them indirectly through JJMT, JJMT was a mere conduit that had no dominion over the money 1inMM transferred to it. (*Id.* ¶17.) JJM asserted several defenses. (*See infra* Part I.A.2.)

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

### D.    The Settlement

Following the mediation on January 30-31, 2023, the parties reached a settlement ("Settlement") whereby the JJM Parties agreed to pay $9,000,000 to the Estate ("Settlement Payment")—consisting of three payments over a two-year span—to resolve the Investor Claims and the Receiver Claims (collectively, "Claims") in exchange for mutual general releases and entry of an order ("Bar Order") permanently barring and enjoining all persons and non-governmental units from suing the JJM Parties on any claim arising out of or relating to the Ponzi Scheme. (Vives Decl. ¶18.) The Settlement is documented in the Settlement Agreement. (Id.)

The parties to the Settlement Agreement are the Receiver, the JJM Parties and all Investor Plaintiffs who have sued or threatened to sue the JJM Parties: (a) 109 persons/entities represented by Loftus & Eisenberg, Ltd. who invested in JJMT, listed on Schedule 1 to the Settlement Agreement ("L&E Investors"); (b) Nalpak I LP, Nalpak II LP, Nalpak Enterprises LLC and Peter Xilas ("Nalpak Investors"); and (c) Steven and Matthew Aronson ("Aronson Investors"). (Id. ¶19.)

As part of the Settlement, JJMT agreed to assign to the Receiver all claims it owns or has the authority to assert against anyone arising out of or relating in any way to the Ponzi Scheme ("Assigned Claims"), with certain exclusions. (Id. ¶20.) Additionally, because the Investor Plaintiffs agreed that the entire Settlement Payment should be paid into the Estate for the benefit of all creditors, the Receiver has concluded that the Investor Plaintiffs' counsel created a common fund from which a negotiated amount of their fees—totaling $2,560,000—should be paid. (Id. ¶21.) Finally, the validity of the Settlement Agreement is subject to the condition precedent that the Court approves it, including the Bar Order. (Id.)

The Receiver believes the Settlement is in the best interest of the Estate and its creditors—the net losing investors in the Ponzi Scheme. (Id. ¶22.) The Settlement Payment constitutes a substantial recovery for the Estate without the expense and

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

risk of litigation, and the Settlement represents an equitable, good-faith resolution of all Claims. (*Id.*) While the Receiver and the Investor Plaintiffs were confident in their respective Claims, the risk of an adverse result always loomed. JJM asserted multiple meaningful defenses that, if successful, may have resulted in the Receiver and Investor Plaintiffs recovering nothing. (*Id.* ¶23.) The Settlement thus avoids protracted and expensive litigation, thereby avoiding litigation risk and conserving Estate resources. (*Id.*)

The Settlement Payment—37% of the Transfers—exceeds what the JJM Parties would have paid to resolve the Receiver Claims alone without a bar order. (*Id.*) The JJM Parties simultaneously resolved the Investor Claims, so the efforts of Investor Plaintiffs' counsel undoubtedly enhanced the final settlement value, all of which is flowing to the Estate. (*Id.* ¶24.) A critical component of the settlement consideration is that the Court enters the Bar Order, which is a common component of these sorts of settlements. And because the Investor Plaintiffs agreed that the JJM Parties remit the entirety of the Settlement Payment to the Estate, the Investor Plaintiffs' counsel helped create a common fund from which a portion of their attorney's fees may be paid. (*Id.*)

Moreover, the Settlement resolves a particularly complex multiparty dispute. (*Id.* ¶25.) The Investor Claims and Receiver Claims arise from a common nucleus of operative facts—the Ponzi Scheme—but the litigants' objectives were not necessarily the same. (*Id.*) Specifically, the Investor Plaintiffs pursued the JJM Parties to remedy their own personal damages, while the Receiver focused on benefitting the Estate as a whole. (*Id.*) Those goals often conflicted, resulting in disagreements between the Receiver and Investor Plaintiffs about settlement terms and how to proceed. (*Id.*)

The Investor Claims are, nonetheless, derivative of the Receiver Claims and compete with the Receiver for JJM's assets. (*Id.* ¶26.) The Receiver and the Investor Plaintiffs are pursuing the same people arising out of the same transactions and

occurrences involving the same actors. (*Id.*) As such, the Investor Actions affected the Estate's assets and ultimate recoveries; every dollar the Investor Plaintiffs managed to recover from JJM in the event of a favorable judgment was arguably a dollar the Receiver could not recover from them. (*Id.*)

JJM wanted to achieve finality with a settlement, which they really could only accomplish through a deal with the Receiver. (*Id.* ¶27.) At the same time, the Receiver did not think it advisable or practical to exclude the Investor Plaintiffs from those discussions. (*Id.*) Because the Investor Plaintiffs collectively constitute a significant percentage of the known population of net losing investors, the Receiver considered them to function effectively as an ad hoc creditors committee. (*Id.*) JJM, moreover, made clear that any settlement with the Receiver must include a bar order enjoining any further creditor suits against them arising from or relating to the Ponzi Scheme, so the Receiver continually focused on achieving a settlement that met the legal requirements for a bar order. (*Id.* ¶28.) These factors, among others, made the litigation complex and particularly difficult to settle on a global basis. (*Id.*)

## Legal Standards

District courts have "extremely broad" power and "wide discretion" in overseeing the administration of a receivership. *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir.1986). The Ninth Circuit "affords 'broad deference' to the [district] court's supervisory role" in receivership cases, and "generally uphold[s] reasonable procedures instituted by the district court that serve th[e] purpose of orderly and efficient administration of the receivership for the benefit of creditors." *Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.*, 205 F.2d 1107, 1115 (9th Cir.1999) (cleaned up).

That broad authority to oversee the administration of a receivership extends to approving settlements. "[N]o federal rules prescribe a particular standard for approving settlements in the context of an equity receivership; instead, a district court has wide discretion to determine what relief is appropriate." *Gordon v.*

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

*Dadante*, 336 F.App'x 540, 549 (6th Cir.2009) (citing *Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir.2006)); *see also SEC v. Kaleta*, 530 F.App'x 360, 362 (5th Cir.2013) ("because this is a case in *equity*, it is neither surprising nor dispositive that there is no case law directly controlling" the district court's order approving receiver's settlement).

Local Rule 66-8 directs a receiver to "administer the estate as nearly as possible in accordance with the practice in the administration of estates in bankruptcy." District courts sitting in receivership may look to bankruptcy law for guidance about the administration of a receivership. *See, e.g., SEC v. Cap. Consultants, LLC*, 397 F.3d 733, 745 (9th Cir.2005) (bankruptcy law "analogous" and therefore persuasive in administration of receivership estates). This is largely because "the purpose of bankruptcy receiverships and equity receiverships is essentially the same—to marshal assets, preserve value, equally distribute to creditors, and, either reorganize, if possible, or orderly liquidate." *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 841 (5th Cir.2019) (internal citation and quotations omitted).

Courts in this circuit typically apply bankruptcy principles to evaluate approval of settlements in receivership cases. *SEC v. Champion-Cain*, 2022 WL 126114, at *1 (S.D.Cal. Jan. 13, 2022) (applying bankruptcy principles regarding approval of settlements in receivership case); *SEC v. Total Wealth Mgmt., Inc.*, 2019 WL 13179068, at *2 (S.D.Cal. Sept. 18, 2019) (same). Bankruptcy courts evaluate whether a compromise is "fair and equitable," considering "[a] the probability of success in litigation, [b] any difficulties that may be encountered in collection, [c] the complexity of the litigation, the expense, inconvenience, and delay necessarily attending, and [d] the interest of the receivership entities' creditors and their reasonable views." *Champion-Cain*, 2022 WL 126114, at *1 (quoting *In re Woodson*, 839 F.2d 610, 620 (9th Cir.1988)); *see also Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377, 1381 (9th Cir.1986)). "[W]hen engaging in this analysis,

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

bankruptcy courts need not conduct a mini trial on the merits, but need only canvass the issues." *In re TBH19, LLC*, 2022 WL 16782946, at *6 (B.A.P.9th Cir. Nov. 8, 2022).

"The analysis under these factors is holistic; the Court must canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness…[I]t is not necessary to satisfy each of these factors provided that the factors as a whole favor approving the settlement." *Total Wealth Mgmt., Inc.*, 2019 WL 13179068, at *3 (internal citations and quotations omitted); *accord In re Open Med. Inst., Inc.*, 639 B.R. 169, 185 (B.A.P. 9th Cir. 2022) ("a settlement can satisfy the *A&C Properties* test even if the evidence supporting one or more of the four factors is relatively weak"). The Court should consider these factors "as a whole, and not individually in a vacuum, to ascertain whether the settlement is a good deal compared to litigation." *Open Med. Inst.*, 639 B.R. at 185. Further, when assessing a settlement, the Court need not decide issues of disputed fact or questions of law raised in the controversies sought to be settled. *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (B.A.P.9th Cir.1997).

Ultimately, "courts generally should give deference to a [receiver's] business judgment in deciding whether to settle a matter for the benefit of the estate." *In re Douglas J. Roger, M.D., Inc., APC*, 393 F.Supp.3d 940, 961 (C.D.Cal.2019) (cleaned up); *see also In re Lahijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir.2005). "Approving a proposed compromise is an exercise of discretion that should not be overturned except in cases of abuse leading to a result that is neither in the best interests of the estate nor fair and equitable for the creditors." *In re MGS Mktg.*, 111 B.R. 264, 266-67 (B.A.P.9th Cir.1990).

## <u>Argument</u>

## I.   The Settlement is fair, equitable and in the best interests of the Estate.

The Receiver respectfully submits that the Settlement easily satisfies all four *A&C Properties* factors. (Vives Decl. ¶29.)

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

### A.     Probability of success

The probability of success litigating the Claims is mixed. *See, e.g., Total Wealth Mgmt.*, 2019 WL 13179068, at *3 (court must determine whether settlement amount is commensurate to litigation risk). Assessing risk here is largely a function of evaluating JJM's asserted defenses to the Claims, which, as discussed above, arise under UVTA.

### 1.     UVTA

The Receiver's potential claims against JJM arise under UVTA, the purpose of which is "to prevent debtors from placing, beyond the reach of creditors, property that should be made available to satisfy a debt by transferring that property to others." *RPB SA v. Hyla, Inc.*, 2021 WL 4980092, at *4 (C.D.Cal. June 24, 2021) (cleaned up). UVTA enables a creditor to bring an action to avoid a fraudulent transfer of an asset to the extent necessary to satisfy its claim. UVTA §3439.07(a)(1). A transfer is fraudulent—and thus avoidable—if the debtor transferred the asset either (1) with actual intent to hinder, delay, or defraud any of its creditors (i.e., "actual fraud"), or (2) without receiving reasonably equivalent value in exchange therefor when it had unreasonably small capital or was insolvent (i.e., "constructive fraud"). *Id.* §§3439.04(a)(1)-(2). A creditor may bring an action under UVTA against the "first transferee" of the asset, the person for whose benefit the transfer was made or any subsequent transferees. *Id.* §§3439.08(b)(1)(A)-(B).

Fraudulent transfer claims are among a receiver's most important tools to recover monies lost by Ponzi-scheme investors. *Donell v. Kowell*, 533 F.3d 762, 767 (9th Cir.2008). The Ponzi-scheme operator is the "debtor" and each investor is a "creditor," although the investors who profited from the scheme on a net basis—sometimes called "net winners"—are the recipients of the Ponzi-scheme operator's fraudulent transfers, and are thus liable under UVTA. *Id.* at 767-771. An equity receiver has standing to pursue fraudulent transfer claims "to redress injuries that [the receivership entity] suffered when its managers caused [it] to commit waste and

fraud." *Id.* at 777. A receiver may assert that a transfer was actually or constructively fraudulent. *Id.* at 770. But the debtor's admission that it operated a Ponzi scheme *conclusively* establishes fraudulent intent for a UVTA actual fraud claim (*In re Slatkin*, 525 F.3d 805, 814 (9th Cir.2008)), as well as financial distress for a UVTA constructive fraud claim (*Donell*, 533 F.3d at 770-71).

To determine whether a Ponzi-scheme investor is liable to the estate for receiving fraudulent transfers, courts apply the "netting rule," where "[a]mounts transferred by the Ponzi-scheme perpetrator to the investor are netted against the initial amounts invested by that individual. If the net is positive, the receiver has established liability[.]" *Id.* at 771. Generally, "innocent" investors may retain the payments they received up to the amount invested, but must disgorge the "profits" received from the Ponzi scheme as they "do not represent a return on legitimate investment activity." *Id.* at 772, 777.

### 2.     Defenses

JJM argued that most of the Receiver Claims were untimely under the UVTA limitations period. JJM asserted, for example, UVTA's one-year discovery rule was triggered no later than January 14, 2022—the date the Receiver was appointed—because that is when she knew, or should have known, about the fraudulent nature of the Ponzi Scheme. The Receiver countered with cases holding that the one-year discovery rule for a UVTA claim does not begin to run until at least sometime after the receiver is appointed. *See, e.g., Donell v. Mojtahedian*, 976 F.Supp.2d 1183, 1188-89 (C.D.Cal. 2013). Moreover, because the Receiver stands only in the shoes of the Ponzi Scheme entities, she asserted that any potential prior knowledge on the part of the SEC or other creditors could not be imputed to her. *See, e.g., Gill v. Blessing*, 2014 WL 12573667, at *3 (C.D.Cal. Oct. 6, 2014). In light of these conflicting arguments, the Receiver considered this issue a significant litigation risk factor. (Vives Decl. ¶30.)

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

JJM also vigorously contested the Receiver's assertion that she could recover the Transfers 1inMM made to them indirectly via JJMT because JJMT was a "mere conduit" rather than a transferee. While UVTA authorizes plaintiffs to recover an avoided transfer from the "first transferee" of the asset transferred, it does not define that term. The Ninth Circuit has observed that "'[t]ransferee' is not a self-defining term; it must mean something different from 'possessor' or 'holder' or 'agent,'" and that "treating anyone who touches the money as a 'transferee' could lead to absurd results…." *In re Walldesign, Inc.*, 872 F.3d 954, 962 (9th Cir.2017). The Ninth Circuit applies the "dominion test" to determine whether a party is a first transferee or a mere conduit. *In re Incomnet, Inc.*, 463 F.3d 1064, 1071 (9th Cir.2006). Under that test, the "minimum requirement [for] status as a 'transferee' is dominion over the money or other asset," i.e., "the *right* to put the money to one's own purposes." *Walldesign*, 872 F.3d at 962. Thus, JJMT would be deemed the first transferee if it had dominion over the money 1inMM transferred to it earmarked for JJM on account of their investments; otherwise, JJMT was merely a conduit for 1inMM to transfer the money to JJM, the first transferees.

JJM asserted that JJMT had dominion over the Transfers, thereby making it the first transferee, as it had discretion to put the funds to other uses. The Receiver, however, countered that the express language from JJMT's contracts with its investors, plus JJMT's actual course of performance, showed that JJMT was contractually bound to disburse the Transfers immediately to JJM and other investors. The Ninth Circuit has held that a recipient's contractual obligation to disburse money to another constitutes a lack of dominion. *See, e.g., Danning v. Miller (In re Bullion Reserve of N. Am.)*, 922 F.2d 544, 549 (9th Cir.1991); *Northpoint Commc'ns Grp., Inc.*, 2007 WL 7541001, at *4-5 (B.A.P.9th Cir. Nov. 7, 2007). Despite the Receiver's characterization of JJMT as an "aggregator" or "feeder fund," she asserted that JJMT's role in receiving repayments of loans from

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

1inMM was actually comparable to that of a bank, merely holding funds for the benefits of specific, named "depositors." *Bullion Reserve*, 922 F.2d at 549.

In light of the arguments above, the mere conduit issue presented an important litigation risk for the Receiver, as the vast majority of the Transfers flowed from 1inMM through JJMT to JJM. (Vives Decl. ¶31.) If the Court ruled that JJMT was the first transferee, then the UVTA would bar the Receiver from avoiding most of the Transfers to JJM. Rather than risk such a ruling, the Receiver decided it was preferable to settle. (*Id.*)

The Receiver believes that JJM are liable under UVTA as net winners, but it is not guaranteed that litigation would have resulted in the Receiver avoiding and recovering *all* of the Transfers. *Cf. In re ISE Corp.*, 2012 WL 1377085, at *8 (Bankr.S.D.Cal. Apr. 13, 2012) ("the success of litigation also entails consideration of the risk of uncertainty and the desire for expediency"). The Court may have sustained some of JJM's defenses, which would be an outcome worse than the Settlement. Rather than take that risk, the Receiver compromised. (Vives Decl. ¶32.) *See, e.g., SEC v. Cap. Cove Bancorp LLC*, 2016 WL 11752897, at *2 (C.D.Cal. Dec. 15, 2016) (approving settlement, reasoning it "provide[d] a recovery that is proportionate to the successful prosecution of this action when discounts are factored in for the risk, time, and expense of fully litigating the case, and maximize[d] the funds available for distribution to creditors"); *Open Med. Inst.*, 639 B.R. at 183-84 (same, where trustee averred the odds of success as a "coin flip" and "thought it was safer to settle").

For these reasons—informed by Judge Schenkier's reactions to the arguments discussed above during the parties' two-day mediation—the Receiver concluded that the Settlement appropriately takes into account the mixed probability of success on the merits. (Vives Decl. ¶33.)

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

**B.    Collection difficulties**

"Assessing the difficulties in collection is largely a bird-in-the-hand consideration that weighs the certainty of settlement against the potential uncertainty of collection even where a receiver secures a favorable judgment." *Total Wealth Mgmt.*, 2019 WL 13179068, at *3.

The Receiver understands that JJM, collectively and/or individually, do not have assets that would be sufficient to satisfy a judgment avoiding all of the Transfers, let alone that *plus* an adverse judgment entered in favor of the Investor Plaintiffs. (Vives Decl. ¶34.) So this factor weighs in favor of settling.

**C.    Complexity/expense**

It would be complex, expensive and time-consuming for the parties to litigate the Claims. (*Id.* ¶35.) This factor is particularly important in liquidations like here where the goal is "obtaining the best possible realization upon the available assets and without undue waste by needless or fruitless litigation." *In re Law*, 308 F.App'x 152, 153 (9th Cir.2009). For example, the Receiver's knowledge under UVTA's one-year discovery rule is a question of fact, which necessarily entails discovery and trial to resolve, along with the associated time and expense.

Given the evidence and defense arguments, the Receiver believes such litigation against JJM would be expensive and time-consuming, as it would likely require extensive discovery, retention of experts and numerous witnesses. (Vives Decl. ¶36.) A trial and appeal would likely take at least two years to complete and cost the estate several hundred thousand dollars in fees and expenses. (*Id.*) This factor, therefore, weighs heavily in favor of approving the Settlement. *See, e.g., TBH19*, 2022 WL 16782946, at *3 (complexity element weighed in favor of settlement where dispute would require extensive discovery, cost the estate hundreds of thousands of dollars and take years to complete).

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

### D.   Creditors

"The opposition of the creditors of the estate to approval of a compromise may be considered by the court, but is not controlling and will not prevent approval of the compromise where it is evident that the litigation would be unsuccessful and costly…In short, creditors have a voice but not a veto." *In re Bondanelli*, 2020 WL 1304140, at *4 (B.A.P.9th Cir. Mar. 18, 2020). As discussed below, the Receiver is giving notice of this Motion to all known creditors of the Estate.

In sum, the Receiver believes the Settlement is fair, equitable and adequate under the circumstances to realize the value of the Estate's interest in the Transfers. Litigation is, certainly, an alternative course, but "while the [Receiver] might do better in litigation, she is not likely to do so." *In re Tidwell*, 2018 WL 1162511, at *3 (Bankr.C.D.Cal. Mar. 1, 2018) (cleaned up).

## II.   The Court should approve the Bar Order.

### A.   The Court has the power to enter the Bar Order.

The Court's "extremely broad" power and "wide discretion" to determine the appropriate relief in an equity receivership includes the "inherent equitable authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws." *Hardy*, 803 F.2d at 1037; *SEC v. Hickey*, 322 F.3d 1123, 1131 (9th Cir.2003). "Ancillary relief" in SEC enforcement actions may include "injunctions to stay proceedings by nonparties against the receivership." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir.1980)

"Courts use ancillary relief in the form of bar orders to secure settlements in receivership proceedings and…to bar claims against third parties settling with receiverships." *SEC v. Stanford Int'l Bank Ltd.*, 2017 WL 9989250, at *2 (N.D.Tex. Aug. 23, 2017), *aff'd sub nom. Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883 (5th Cir.2019) (bar orders may "foreclos[e] suit against third-party defendants with whom the receiver is also engaged in litigation"). Bar orders enable federal receivers "to curb investors' individual advantage-seeking in order to reach settlements for the

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

aggregate benefit of investors under the court's supervision." *Zacarias*, 945 F.3d at 896. "The availability of such [bar] orders facilitates settlement, promotes equitable recoveries by creditors, and maximizes assets available to creditors in the aftermath of a Ponzi scheme." *SEC v. Aequitas Mgmt., LLC*, 2020 WL 7318305, at *1 (D.Or. Nov. 10, 2020).

Bar orders have become a common feature in settlements with receivers in cases arising from violation of the federal securities laws. *See, e.g., SEC v. DeYoung*, 850 F.3d 1172, 1183 n.5 (10th Cir.2017) (collecting cases); *SEC v. Nadel*, 2012 WL 12910648, at *1 (M.D.Fla. Feb. 10, 2012) (same). Federal courts generally require that bar orders be (1) fair, just, equitable and in the best interest of the estate, and (2) "necessary" to the proposed settlement. *See, e.g., DeYoung*, 850 F.3d at 1178, 1183; *Kaleta*, 530 F.App'x at 362-63; *Stanford*, 2017 WL 9989250, at *3; *SEC v. Alleca*, 2021 WL 4843987, at *12 (N.D.Ga. Sept. 9, 2021), *vacated on other grounds*, 2022 WL 16631325 (11th Cir. Nov. 2, 2022). The Bar Order here satisfies both elements.[1]

## B. The Bar Order is fair, equitable and in the best interest of the Estate.

A bar order typically meets this first element if it facilitates a higher settlement value and/or avoids protracted litigation. *See, e.g., DeYoung*, 850 F.3d at 1178; *Nadel*, 2012 WL 12910648, at *1-2; *Alleca*, 2021 WL 4843987, at *12-13; *SEC v. Adams*, 2021 WL 8016843, at *2 (S.D.Miss. Feb. 25, 2021). A bar order is in the best interest of the receivership estate if it resolves "complex claims" and "rights and obligations of parties" that "are so inextricably intertwined that resolution of the claims independently, as opposed to collectively, would be difficult and inefficient, would substantially increase costs to the [r]eceivership [e]state, and would likely reduce the ultimate recovery to the [investors]." *DeYoung*, 850 F.3d at 1178; *accord*

---

[1] The Court has already approved a bar order in this case for similar reasons. [ECF #230 ¶4]

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

*Alleca*, 2021 WL 4843987, at *13 (bar order was fair and equitable in light of amount defendants agreed to pay, as well as receiver's ability to avoid "the litigation risk…and the expenses associated with it"). Finally, a bar order is fair to creditors if it permits enjoined claims to be channeled to the receivership's claim process. *See, e.g., Kaleta*, 530 F.App'x at 362-63; *Adams*, 2021 WL 8016843, at *2.

The Settlement meets these requirements. (Vives Decl. ¶37.) It avoids protracted litigation of the Investor Claims and the Receiver Claims, the outcome of which was uncertain due to JJM's defenses. (*Id.* ¶¶22-23, 30-33.) By settling, the Estate avoided significant expenses and time associated with litigating. (*Id.* ¶¶23, 35-36.) The Bar Order also drove a higher settlement value, as JJM paid more to settle all Claims with a bar order than they would have paid to settle the Receiver Claims alone. (*Id.* ¶24.) *See, e.g., Nadel*, 2012 WL 12910648, at *1 (bar order warranted in part because it "facilitate[d] a higher settlement value and, therefore, a larger recovery for claimants tha[n] would otherwise be available without the bar order").

Moreover, the Bar Order helped resolve complex claims that would have been difficult—if not impossible—to resolve independently. (Vives Decl. ¶25.) Absent a settlement, the Receiver and the Investor Plaintiffs would be left to litigate claims and, to the extent they obtained favorable judgments, compete for JJM's assets, a result that would have "frustrat[ed] the receiver's pro rata distribution to investors— a core element of its draw upon equity." *Zacarias*, 945 F.3d at 900. (Vives Decl. ¶38.) And because JJMT agreed to assign the Assigned Claims to the Receiver, she can step into JJMT's shoes and assert certain claims that she may not otherwise have been able to pursue. (*Id.* ¶39.)

The Bar Order is also fair to those 1inMM net losing investors who would be enjoined from asserting claims against the JJM Parties. The scope of the Bar Order is appropriately tailored because it does not enjoin "independent and non-derivative [claims] that do not involve assets claimed by the receivership." *Zacarias*, 945 F.3d

at 897. Instead, the Bar Order expressly enjoins ***only those claims that arise out of or relate to the Ponzi Scheme***, including JJM's involvement with, and acts or omissions relating to, JJMT (as more fully described in the Settlement Agreement and the Bar Order). Such claims are derivative of and dependent upon the Receiver Claims. *See, e.g., Zacarias*, 945 F.3d at 897 (scope of bar order appropriate where enjoined claims were "derivative of and dependent on the receiver's claims, and their suits directly affect[ed] the receiver's assets"); *DeYoung*, 850 F.3d at 1178 (affirming bar order that limited scope of enjoined conduct to "any claims against [the settling defendants] arising out of, or in connection with, or relating to any [customer account associated with the securities fraud]"); *Kaleta*, 530 F.App'x at 362-63 (scope of bar order appropriate where "investors continue[d] to retain all other putative claims against the [settling parties] that d[id] not arise from the allegedly fraudulent notes [underlying] this action"); *Stanford*, 2017 WL 9989250, at *2 (entering bar order permanently enjoining any other pending or future claims against settling defendants "arising from their relationship with [the Ponzi-scheme operator]").

The Bar Order is also fair because it channels any future claims against the JJM Parties to the Estate's claims process, which safeguards creditors' right to be heard. *See, e.g., Zacarias*, 945 F.3d at 897 (bar order affirmed that channeled investors' claims to estate's claim process); *Kaleta*, 530 F.App'x at 362 (same).

## C.   The Bar Order is necessary to the Settlement.

A bar order is necessary if it is "essential," meaning the parties otherwise would not have resolved their dispute without it. *See, e.g., DeYoung*, 850 F.3d at 1183; *Alleca*, 2021 WL 4843987, at *12; *Kaleta*, 530 F.App'x at 362-63. Here, the Bar Order is necessary because the JJM Parties would not have settled with the Receiver without a bar order enjoining all future claims against them arising out of or relating to the Ponzi Scheme and/or JJMT. (Vives Decl. ¶40.); Indeed, entry of the Bar Order is a condition precedent under the Settlement Agreement. (Ex. 1 ¶16.)

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

The Bar Order is, therefore, necessary. *See, e.g., Alleca*, 2021 WL 4843987, at *13 (bar order necessary where settling defendant "would not have agreed to settle [the dispute] without the bar order," and settlement agreement was contingent on entry of bar order); *Gordon v. Dadante*, 2008 WL 1805787, at *14 (N.D.Ohio Apr. 18, 2008) (similar), *aff'd*, 336 F.App'x 540 (6th Cir.2009).

## III.   The Court should approve the Administrative Claims.

The Investor Plaintiffs' agreement that JJM pay the entire amount of the Settlement Payment into the Estate for the benefit of all creditors will result in the Estate having more cash for administration and creditor claims. (Vives Decl. ¶41.) In recognition of that, the Receiver agreed that the Investor Plaintiffs' counsel should hold allowed administrative claims in certain negotiated amounts[2] in exchange for their contributions to the Estate ("Administrative Claims").[3] (*Id.*) After all, the Receiver and Investor Plaintiffs' counsel—who function like counsel to a creditors' committee in a bankruptcy case—are attempting to achieve the same goal of bringing as much money in the Estate as possible for the benefit of net losing investors. *Cf. Rodriguez v. Seabreeze Jetlev LLC*, 2022 WL 3327925, at *7 (N.D.Cal. Aug. 11, 2022) ("in bankruptcy cases, the debtor in possession and the committee of creditors share a duty to maximize the debtor's estate") (cleaned up).

The Settlement reflects these principles. In deciding whether to approve a settlement in a receivership, the Court is not constrained by a particular standard or set of rules but instead "has wide discretion to determine what relief is appropriate." *Cap. Cove Bancorp*, 2017 WL 11643414, at *2. So the Court could approve the Administrative Claims and associated disbursements using its discretion alone.

---

[2] $1,610,000 for L&E Investors' counsel; $450,000 for Aronson Investors' counsel; $500,000 for Nalpak Investors' counsel.

[3] The Court has previously granted the same counsel allowed administrative claims for similar reasons. [ECF #230 ¶3]

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

The Court may also do so because Investor Plaintiffs' counsel helped create a common fund in the Estate. Under the "common fund" doctrine, "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir.1977); *accord Baten v. Mich. Logistics, Inc.*, 2023 WL 2440244, at *7 (C.D.Cal. Mar. 8, 2023). The common fund doctrine "is designed to spread litigation costs proportionally among all the beneficiaries so that the active beneficiary does not bear the entire burden alone and the 'stranger' beneficiaries do not receive benefits at no cost to themselves." *Vincent*, 557 F.2d at 769.

The Ninth Circuit recently held that where a lawyer for a creditor of an entity in receivership "undeniably caused the creation, discovery, increase, or preservation of a common fund that benefited investors," the receivership court must award the lawyer a reasonable fee under the common fund doctrine. *SEC v. Pritzker Levine LLP*, 2022 WL 671020, at *1 (9th Cir. Mar. 7, 2022). In *Pritzker*, the law firm Pritzker Levine LLP pursued certain litigation claims on behalf of a creditor that resulted in the identification of millions in assets that became part of a state court receivership. *Id.* Later, the SEC commenced a securities fraud action against the same defendants and the court appointed a federal receiver, who obtained the assets of the state receivership, including the funds realized from Pritzker's litigation efforts. *Id.* The Ninth Circuit held that because Pritzker helped create a fund of cash that became part of the receivership estate, it should receive a reasonable fee award from the estate under the common fund doctrine, which "should be treated as an allowed administrative claim" paid "from the fund itself, as a prior charge before the beneficiaries receive it." *Id.* at *1-2.

Likewise, Investor Plaintiffs' counsel—who doggedly pursued the Investor Actions—played an essential role in increasing the amount that JJM agreed to pay in settlement, all of which cash is coming into the Estate for eventual distribution to

the net losing investors. (Vives Decl. ¶42.) The three-way nature of the settlement negotiations necessitated this. On the one hand, JJM wanted to achieve finality with a settlement, which they really could only accomplish through a deal with the Receiver that would include a bar order. (*Id.* ¶27.) But, on the other hand, as the Receiver was unwilling to settle with JJM over the objections of the Investor Plaintiffs—constituting over 100 of the Estate's creditors—any settlement had to resolve the Investor Claims too. (*Id.*)

The Investor Plaintiffs' agreement that JJM make the Settlement Payment to the Estate for the benefit of all creditors was, from the Receiver's perspective, the lynchpin of this three-way compromise. (*Id.* ¶43.) It "undeniably caused the...increase" of the Estate's cash assets available for distribution to creditors beyond what the Receiver would have recovered by settling the Receiver Claims alone. (*Id.*) *Pritzker*, 2022 WL 671020, at *1. Counsel for the L&E Investors in particular contributed a significant level of work to achieve this outcome. (Loftus Decl. ¶¶6-34.) Thus, the Investor Plaintiffs' and counsel's actions were a cause-in-fact benefitting the common fund in the Estate. *Pritzker*, 2022 WL 671020, at *1 ("the common fund doctrine requires that the work of the attorney seeking an extra fee be *a* cause-in-fact of any claimed benefit to the fund, but not the *only* cause-in-fact"). This is so even if one might speculate that the Receiver might have recovered the same amount on her own. *Id.* ("The district court's speculation that the funds...might still have been recovered by the federal receiver in the absence of [Pritzker's efforts] therefore finds no support in the record and in any event does not demonstrate that Pritzker's efforts were not a 'cause-in-fact' of the creation, increase, or preservation of a common fund."). So the Receiver respectfully submits that the Investor Plaintiffs' counsel helped increase a common fund in the Estate. (Vives Decl. ¶44.)

The amount the Receiver agreed to pay the Investor Plaintiffs' counsel— about 28.4% of the Settlement Payment—is reasonable and appropriate under the

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

common fund doctrine. *See, e.g., In re Omnivision Techs.*, 559 F.Supp.2d 1036, 1046 (N.D.Cal. 2008) ("a total award of approximately 9% of the possible damages…weighs in favor of granting the requested 28% fee"); *Jenson v. First Tr. Corp.*, 2008 WL 11338161, at *10-11 (C.D.Cal. June 9, 2008) (33% fee award appropriate for counsel's effort that resulted in recovering approximately 9.3% of the class's estimated loss); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D.Cal. June 10, 2005) (awarding 33% fee from $27.7 million settlement fund representing 36% of plaintiffs' estimated damages); *In re Gen. Instrument Sec. Litig.*, 209 F.Supp.2d 423,431,434 (E.D.Pa. 2001) (one-third fee awarded from $48 million settlement representing 11% of plaintiffs' estimated damages). The proposed distributions to Investor Plaintiffs' counsel are consistent with these authorities.

"When all is said and done, the court can slice the pieces of this pie only so large. [Defendants] are to blame for the fact that the slices are so small. Had the professionals not persisted in their efforts, however, the pie would have been even smaller." *Gaskill v. Gordon*, 942 F.Supp.382, 388 (N.D.Ill. 1996) (awarding 38% of receivership assets under common fund doctrine to a receiver, his accountants, and interim class counsel), *aff'd*, 160 F.3d 361 (7th Cir.1998). The same is true here.

Finding a way to compensate the Investor Plaintiffs' counsel for their efforts in augmenting the Estate was a hard-fought material term of the overall Settlement. (Vives Decl. ¶45.) The Receiver agreed to the Administrative Claim amounts in the exercise of her business judgment, which she felt was necessary to achieve a global settlement. (*Id.*) That decision is entitled to deference. *See, e.g., Roger*, 393 F.Supp.3d at 961; *Lahijani*, 325 B.R. at 289. For these reasons, the Receiver asks the Court to approve the Administrative Claims and associated disbursements, which the Court may do pursuant to its wide discretion to approve receivership settlements generally and the common fund doctrine specifically.

**Notice to Creditors**

"Creditors are entitled to 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 518 (N.D.Cal. 2008) (quoting *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950)). "[D]ue process…is not a technical conception with a fixed content unrelated to time, place and circumstances[.]" *Grimm v. City of Portland*, 971 F.3d 1060, 1065 (9th Cir.2020). Instead, "due process is flexible and calls for such procedural protections as the particular situation demands." *Muñoz v. United States Dep't of State*, 50 F.4th 906, 922 (9th Cir.2022). The Court may "exercise[] significant control over the time and manner" of any proceeding to hear a creditor's objections. *Liberte Cap. Grp.*, 462 F.3d at 552.

The Receiver will give notice of the Motion by: (a) CM/ECF to parties/interested parties; (b) email to all known creditors of the Estate (or, if represented, their counsel) with a link to this Motion and supporting exhibits; (c) posting it on the receivership website; and (d) publishing a notice once in the *Wall Street Journal* and once in the *Los Angeles Times* in the form annexed hereto as **Exhibit 4** ("Published Notice"). (Vives Decl. ¶46.) These communications will include instructions on how to advise the Receiver of any objections to the Motion by no later than seven days before the hearing. (*Id.* ¶47.) The Receiver will thereafter file a status report. (*Id.*)

The Court should deem this notice sufficient under the circumstances. *See, e.g., Fed. Trade Comm'n v. Cardiff*, 2020 WL 9938072, at *4 (C.D.Cal. Mar. 10, 2020) (receiver's notice of settlement satisfied due process where receiver posted motion to its website and served on all parties, known creditors and interested parties); *Adams*, 2021 WL 8016843, at *2 (same, where receiver provided mail notice to interested parties, publicized settlement on receivership website and gave interested parties instructions how to submit comment or objection to settlement);

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

1  *Nadel*, 2012 WL 12910648, at \*1 (same, where receiver published notice once in
2  two newspapers).

3       **WHEREFORE**, the Receiver respectfully requests the Court enter an order:
4  (a) granting the Motion; (b) finding notice of the Motion, including the Published
5  Notice, is sufficient under the circumstances and satisfies due process, and waiving
6  any further notice otherwise required by Local Rule 66-7; (c) approving the terms of
7  the Settlement memorialized in the Settlement Agreement as fair and equitable,
8  including without limitation, the Bar Order and the Administrative Claims; (d)
9  authorizing the Receiver to take such further actions as may be necessary to
10  consummate the transactions in the Settlement Agreement, including, without
11  limitation, paying the Administrative Claims to the respective holders thereof in the
12  amounts specified in the Settlement Agreement; and (e) granting such further relief
13  as the Court deems necessary and appropriate.

14  Dated: July 31, 2023                    Respectfully submitted,

15                                          **KATTEN MUCHIN ROSENMAN LLP**

16                                          By:    /s/*Terence G. Banich*
                                                   Terence G. Banich
17
                                            *Attorneys for the Receiver*
18                                          Michele Vives

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

1

## __Certificate of Compliance with L.R. 11-6.2__

2          The undersigned, counsel of record for the Receiver, Michele Vives, certifies

3   that this brief contains 6,975 words, which complies with the word limit of L.R. 11-

4   6.1.

5    Dated: July 31, 2023                    Respectfully submitted,

6                                            _/s/ Terence G. Banich_
                                             Terence G. Banich
7                                            Attorney for the Receiver

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

## PROOF OF SERVICE

**STATE OF ILLINOIS, COUNTY OF COOK**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Cook, State of Illinois. My business address is 525 W. Monroe St., Chicago, Illinois 60661. On July 31, 2023, I served the following document(s) described as:

**MOTION OF RECEIVER MICHELE VIVES FOR ORDER APPROVING SETTLEMENT WITH JOSEPH DEALTERIS, JACOB WUNDERLIN, MATTHEW SCHWEINZGER AND JJMT CAPITAL, LLC, AND FOR RELATED RELIEF**

as follows:

**[ ]     BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Katten Muchin Rosenman LLP practice for collecting and processing correspondence for mailing.  On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**[X]     BY E-MAIL OR ELECTRONIC TRANSMISSION:**   I caused the document(s) to be sent from e-mail address terence.banich@katten.com to the persons at the e-mail address(es) listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

Corey R. Weber – cweber@bg.law
Matthew S. Ryan – mryan@cotsiriloslaw.com
James L. Kopecky – jkopecky@ksrlaw.com
Alexander Loftus – alex@loftusandeisenberg.com
Monte Mann – mmann@atllp.com
Andrew Campbell – acampbell@atllp.com
Scott Frost – sfrost@howardandhoward.com

**[ ]     BY OVERNIGHT MAIL (FedEx):**  I enclosed said document(s) in an envelope or package provided by FEDEX and addressed to the persons at the addresses listed above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FEDEX or delivered such document(s) to a courier or driver authorized by FEDEX to receive documents.

**[X]     E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct. Executed on July 31, 2023, at Winnetka, Illinois.

*/s/Terence G. Banich*
Terence G. Banich