EXECUTION COPY

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE (this "Agreement") is made and entered into as of this 26th day of June, 2023 (the "Effective Date"), between and among:

    (a)    Michele Vives, not individually, but solely as the receiver (the "Receiver") as more particularly described in the second recital of this Agreement;

    (b)    The persons and entities listed on Schedule 1 represented by the law firm Loftus & Eisenberg, Ltd. (collectively, the "L&E Investors");

    (c)    Nalpak I LP, Nalpak II LP, Nalpak Enterprises LLC and Peter Xilas (collectively, the "Nalpak Investors"); and

    (d)    Steven Aronson and Matthew Aronson (together, the "Aronson Investors, and collectively with the L&E Investors and the Nalpak Investors, the "Investor Plaintiffs");

on the one hand, and on the other hand,

    (e)    Joseph deAlteris ("deAlteris"), Jacob Wunderlin ("Wunderlin") and Matthew Schweinzger ("Schweinzger") (collectively, "JJM"); and

    (f)    JJMT Capital, LLC ("JJMT," and collectively with JJM, the "JJM Parties").

The Receiver, the L&E Investors, the Nalpak Investors, the Aronson Investors, and the JJM Parties are referred to collectively herein as the "Parties."

## Recitals

**WHEREAS**, on April 6, 2021, the Securities and Exchange Commission commenced the civil action styled *Securities & Exchange Commission v. Horwitz*, No. 2:21-cv-02927-CAS-PD (the "Action"), in the United States District Court for the Central District of California (the "Court") against Zachary J. Horwitz and 1inMM Capital, LLC ("1inMM," and together with Horwitz, the "1inMM Defendants"), alleging that they conducted an offering fraud and Ponzi scheme in violation of federal securities laws (the "1inMM Ponzi Scheme");

**WHEREAS**, on January 14, 2022, the Court entered that certain *Order on Appointment of Permanent Receiver* (the "Appointment Order") in the Action that, among other things, appointed the Receiver to be the federal equity receiver of 1inMM and its subsidiaries and affiliates, as well over the assets that are attributable to funds derived from investors or clients of the 1inMM Defendants or were fraudulently transferred by the 1inMM Defendants (the "Receivership Estate");

**WHEREAS**, the Appointment Order authorizes the Receiver to, among other things, investigate and prosecute claims and causes of action against persons and entities who may be liable to the Receivership Estate;

**WHEREAS**, following a diligent investigation, including the review and analysis of the books and records of the 1inMM Defendants as well as documents and information provided by JJM and JJMT to the Receiver, the Receiver asserts that she has identified transfers from the 1inMM Defendants to or for the benefit of some or all of the JJM Parties as either *initial* transferees, *subsequent* transferees (as to transfers from the 1inMM Defendants to JJMT and then from JJMT to or for the benefit of JJM), or *mediate* transferees (as to transfers from the 1inMM Defendants to JJMT and then from JJMT to JJMT Management

**EXECUTION COPY**

Co LLC, and then from JJMT Management Co LLC to or for the benefit of JJM) as follows: $8,309,096 as to deAlteris, $9,349,741 as to Wunderlin and $6,625,309 as to Schweinzger (collectively, the "Transfers");

WHEREAS, the Receiver contends that the Transfers are subject to avoidance and recovery under the Uniform Voidable Transactions Act as enacted in California (California Civil Code §§ 3439-3439.14) ("UVTA"), and that consequently, the Receiver has, on behalf of the Receivership Estate, claims for relief against the JJM Parties under the UVTA to avoid and recover the Transfers or their value (the "Receiver Claims");

WHEREAS, the JJM Parties have asserted various defenses to the Receiver Claims and deny that they are liable to the Receivership Estate on account of the Receiver Claims;

WHEREAS, the L&E Investors and the Aronson Investors have commenced, and the Nalpak Investors have stated that they will commence, civil actions against JJM and JJMT (the Nalpak Investors' currently operative fourth amended complaint includes deAlteris and JJMT as defendants), alleging that some or all of the JJM Parties are liable to them in connection with their loans to JJMT, JJMT's loans to 1inMM and in relation to the 1inMM Ponzi Scheme (collectively, and irrespective how styled, the "Investor Claims," and the civil actions in which the Investor Claims are asserted, the "Investor Litigation," a list of which appears on Schedule 2);

WHEREAS, the Investor Claims and the damages that the Investor Plaintiffs seek on account thereof, and the Receiver Claims and the amount that the Receiver seeks on account thereof, all arise out of and relate to the 1inMM Ponzi Scheme;

WHEREAS, the JJM Parties have asserted various defenses to the Investor Claims and deny that they are liable to the Investor Plaintiffs on account of the Investor Claims;

WHEREAS, the Receiver has not asserted claims against JJMT given that JJMT was a significant net loser in the 1inMM Ponzi Scheme, but the Receiver has asserted that JJMT acted as a conduit or pass-through entity through which loans were aggregated by JJMT and then made to 1inMM and then loans were repaid by 1inMM to JJMT, with JJMT then passing through the loan repayments to lenders to JJMT. JJM and JJMT deny these allegations by the Receiver, including, but not limited to, the allegations that JJMT was a conduit or pass-through entity;

WHEREAS, the Receiver has concluded that the Investor Plaintiffs' counsel have provided a material benefit and substantial contribution to the Receivership Estate and has created a common fund in connection therewith (the "Substantial Contribution"); and

WHEREAS, the Receiver, Investor Plaintiffs, JJM and JJMT, wishing to avoid the expense, delay, and uncertainty of litigation, have agreed to settle and resolve all claims and disputes between or among them arising out of or relating to the 1inMM Ponzi Scheme, the 1inMM Defendants, JJMT, the Transfers, the Receiver Claims, the Investor Claims and any other actual or potential claims and causes of action for the avoidance and recovery of preferences/preferential transfers or fraudulent transfers or any other claims or causes of action based on statutes or common law other than as expressly preserved in this Agreement (collectively, the "Disputes") on the terms and conditions set forth in this Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which the Parties acknowledge, the Parties agree as follows:

## Agreement

1.      **Recitals Incorporated.** All of the foregoing recitals are true and correct and are incorporated herein as part of the Agreement for all purposes.

2.   **Settlement Payment; Bar Order.** The JJM Parties agree to pay the sum of Nine Million Dollars ($9,000,000) (the "Settlement Payment") to the Receiver to settle the Disputes, as more particularly described in the Recitals. The Settlement Payment may be made by any or all of the JJM Parties, and payment by any of the JJM Parties will reduce the amount of the Settlement Payment due from the JJM Parties. The Settlement Payment shall be paid solely to the Receiver. The Investor Plaintiffs agree to accept from the Receivership Estate payments based on administrative claims, or general unsecured claims in the Receivership Estate, or any other payment that the Receiver, in her sole discretion, deems appropriate, and which is approved by the Court. Accordingly, and in consideration for the releases exchanged in paragraphs 6-11 of this Agreement, and for a Bar Order (as defined below), the JJM Parties agree to remit the Settlement Payment to the Receiver as follows by wire transfer per instructions that the Receiver will provide:

(a)   No later than sixty (60) calendar days after the Approval Date (as defined in paragraph 16(c)) (the "First Due Date"), the JJM Parties shall remit no less than the sum of Two Million Dollars ($2,000,000) to the Receiver;

(b)   No later than the first anniversary of the First Due Date (the "Second Due Date"), the JJM Parties shall remit an incremental amount, such that the sum of all payments made prior to the Second Due Date is no less than Four Million Five Hundred Thousand Dollars ($4,500,000) to the Receiver; and

(c)   No later than the second anniversary of the First Due Date (the "Third Due Date"), the JJM Parties shall remit an incremental amount, such that the sum of all payments to the Receiver made on or before the Third Due Date is Nine Million Dollars ($9,000,000).

(d)   The Receiver agrees to move the Court, as part of the relief requested in her motion to enter the Approval Order (as defined in paragraph 16(a)) (the "Approval Motion") to permanently enjoin and bar all persons and non-governmental entities from commencing a civil action or other proceeding against any of the JJM Parties in any jurisdiction alleging any claim, cause of action or request for relief arising out of or relating to the 1inMM Ponzi Scheme, the 1inMM Defendants, JJMT, the Transfers, the Receiver Claims and/or the Investor Claims (a "Bar Order") in the form of words appearing on, or substantially similar to, Schedule 3 hereto. As set forth in paragraph 16 of this Agreement, the Court's entry of a Bar Order is a condition precedent to the effectiveness of this Agreement.

3.   **Settlement Disbursements.** The Receiver and the Investor Plaintiffs: *(i)* agree to the following provisions of paragraph 3 of this Agreement, and, *(ii)* along with the other parties, agree that the JJM Parties are not bound by any of the provisions of this paragraph 3, are not and will not be liable to make any of the payments provided for in paragraph 3, and in no way agree with or admit to any obligation, right or statement set forth in, or resulting from, the following provisions of paragraph 3.

(a)   The Investor Plaintiffs agree to accept from the Receivership Estate payments based on administrative, or general unsecured claims in the Receivership Estate, or any other payments that the Receiver, in her sole discretion, deems appropriate, and which are approved by the Court, specifically the amounts identified in subparagraph (b) of this paragraph.

(b)   In light of the Substantial Contribution provided by Investor Plaintiffs' counsel to the Receivership Estate, the Receiver agrees to move the Court, as part of the relief requested in the Approval Motion, to order that Investor Plaintiffs' counsel hold allowed administrative expense claims against the Receivership Estate for certain amounts of their reasonable attorney's fees that the Receiver deems to have provided benefit to the Receivership Estate, and to authorize the Receiver to pay those amounts from the Receivership Estate, as follows—

(i)   To Loftus & Eisenberg, Ltd. (on behalf of the L&E Investors, as their counsel), the sum of $1,610,000;

(ii)      To Howard & Howard Attorneys, PLLC (on behalf of the Aronson Investors, as their counsel), the sum of $450,000; and

(iii)      To Armstrong Teasdale LLP (successor by merger to Novack and Macey, LLP) (on behalf of the Nalpak Investors, as their counsel), the sum of $500,000.

In addition, the payments referenced in this paragraph 3(b) shall not result in any Investor Plaintiff receiving any amount greater than their pro rata share of any distributions from the Receivership Estate as determined by and through the Receiver's claims process to be approved by separate order of the Court.

(c)      The Receiver will pay (x) 22.22% of the amounts stated in subparagraph (b) within 10 calendar days of receiving the amount identified in paragraph 2(a); (y) 50.0% of the amounts stated in subparagraph (b) within 10 calendar days of receiving the amount identified in paragraph 2(b); and (c) the remaining percentage of the amounts stated in subparagraph (b) within 10 calendar days of receiving the amount identified in paragraph 2(c).

(d)      This Agreement is not contingent on Court approval of the allowance or payment of the disbursements described in paragraph 3(b). Any amounts paid by the Receivership Estate to the Investor Plaintiffs or their counsel shall be made solely at the discretion of the Receiver and subject to Court approval. For the avoidance of doubt, the payment of such attorney fees described in paragraph 3(b) is a matter solely between the Receiver and the Investor Plaintiffs (or their counsel), subject to Court approval, and the JJM Parties have no obligation to pay such attorney fees described in paragraph 3(b).

4.      **JJMT Capital (Assignment of Claims).**

(a)      Except as provided in subparagraphs (b) and (c), JJMT hereby assigns to the Receiver any and all claims or causes of action that it owns, possesses or has the authority to assert against any person or entity arising out of or relating in any way to the 1inMM Ponzi Scheme, it being the Parties' intent that the Receiver will have the sole and exclusive right, but not the obligation, to prosecute, settle and release such claims or causes of action in the additional capacity as assignee of whatever rights, claims or defenses JJMT has under applicable law (collectively, the "Assigned Claims"); *provided, however*, neither JJMT nor any of the JJM Parties makes any representation or admission as to whether JJMT owns any rights giving rise to any Assigned Claims.

(b)      The Assigned Claims exclude the following:

(i)      Any right to deduct the Settlement Payment;

(ii)      Any right to claim or benefit from Internal Revenue Code Section 1341 treatment with respect to the Settlement Payment;

(iii)      Any tax refund, tax claim, tax defense, tax right, tax item or tax attribute;

(iv)      Any right to file a tax return, claim or report for any of the JJM Parties;

(v)      Any tangible asset;

(vi)      Any attorney-client privilege, joint defense privilege, common interest privilege or attorney work product related privilege;

(vii)      Any intangible asset not explicitly assigned by this paragraph 4; or

(viii)   Any claim or right that it is necessary for JJMT to retain in order for it or any of the JJM Parties to deduct the Settlement Payment or benefit from Internal Revenue Code Section 1341 treatment with respect to the Settlement Payment.

(c)   The Receiver agrees not to file or pursue any Assigned Claim against any person or entity on account of transfers from JJMT unless such person or entity or such transfers were directly associated with payments related to specific JJMT promissory notes on account of specific 1inMM transactions or unless such claim is against banks, financial institutions and/or law firms not included in the exclusions below. In addition, the Receiver shall not be entitled or authorized to file or pursue any Assigned Claims against the JJM Released Parties (as defined below) or against any of the following entities or their officers, directors, managers, members, partners, attorneys and accountants, which provided services to the JJM Parties : (1) Varnum LLP; (2) Graf Coyne, a legal professional association; (3) Winston & Strawn LLP (4) ArentFox Schiff; (5) Katten Muchin Rosenman LLP; (6) King & Spalding LLP; (7) Morrison & Foerster LLP; (8) Kopecky Schumacher Rosenburg LLC; (9) Cotsirilos, Tighe, Streicker, Poulos & Campbell, LLP; (10) BG Law LLP fka Brutzkus Gubner Rozansky Seror Weber LLP; (11) KSM Business Services, Inc.; (12) Mowery & Schoenfeld, LLC; (13) JJMT Management Company, LLC; (14) TransPerfect Legal Solutions; (15) ADP, Inc.; (16) MakeOffices LLC; (17) WeWork Companies, LLC; (18) Industrious; (19) Box, Inc./Box.com; (20) Expensify, Inc./Expensify.com; (21) Sling TV L.L.C., AirTV L.L.C., Dish Network Corporation and Sling.com; (22) Google LLC; (23) Taxbandits.com/SPAN Enterprises LLC; (24) The UPS Store, Inc.; (24) FedEx Corporation/FedEx; (25) the State of Illinois/the Illinois Department of Revenue; (26) the Illinois Secretary of State; (27) the United States of America/Internal Revenue Service; (28) Blue Cross Blue Shield Association / Blue Cross Blue Shield; (29) Stiebel Law Firm LLC; (30) Miller Johnson, Snell & Cummiskey, P.L.C., dba Miller Johnson, and (31) bank and maintenance service fees paid by JJMT to JP Morgan Chase & Co. / JP Morgan Chase Bank, N.A. / Chase, First Republic Bank, Bank of America, N.A / Bank of America Corporation / Bank of America and Wintrust Financial Corp. / Wintrust.

5.   **Receiver's Waiver of Membership and Ownership Interests in the Windy City Entities; Receiver's Waiver of Claims Against the Windy City Entities.** The Receiver represents that the Receivership Estate includes and encompasses ZJH Enterprise, LLC as an affiliate of 1inMM and that the Receiver has the authorization and right to act on behalf of ZJH Enterprise, LLC. The Receiver and the Receivership Estate expressly waive the right to any and all membership and ownership interests, including but not limited to membership and ownership interests of ZJH Enterprise, LLC and/or the 1inMM Defendants in: (a) Windy City Investment Holdings, LLC; and (b) Windy City SPV1, LLC (collectively, the "Windy City Entities"). Any such membership and ownership interests owned or claimed to be owned by ZJH Enterprise, LLC, the 1inMM Defendants and/or the Receiver on their behalf shall be solely owned by the other remaining members and managers of the Windy City Entities. The Receiver shall not assert or initiate any lawsuit, claim, cause of action, counterclaim, cross-claim, adversarial proceeding or request for relief against or related to the Windy City Entities, including but not limited to for declaratory relief as to ownership or membership interests or other declaratory relief as to the Windy City Entities, avoidance or recovery of preferences/preferential transfers, avoidance or recovery of fraudulent transfers under the UVTA or other applicable statutes or case law, or for unjust enrichment or other common law or statutory claims or causes of action, and that the releases contained herein extend to release any actual or potential claims of the Receiver and the Receivership Estate against the Windy City Entities or against the members and managers of the Windy City Entities in relation to the Windy City Entities.

6.   **Release of JJM Released Parties by Receiver; Covenant Not to Sue.** The Receiver, on behalf of herself, the Receivership Estate, respective successors and assigns, present and former agents, employees, officers, directors, partners, managers, members, parents, subsidiaries, affiliates, assigns, insurers, beneficiaries, principals, fiduciaries, heirs, executors, administrators, attorneys and legal representatives of the Receiver, the Receivership Estate, 1inMM and its subsidiaries and affiliates and their predecessor and successor entities, and anyone claiming through or under any of the foregoing, and each of them (collectively, the "Receiver Releasing Parties"), hereby forever releases, remises and discharges

JJM and their wives, children and respective current and former employers and their subsidiaries and affiliates, JJMT and its members, managers, officers, employees, and agents, JJMT Management Co., LLC, J.T.H.D. Investments, LLC, JJMT Group, LLC, Chi Town Capital, LLC, the Windy City Entities, GMCS Investments, LLC, the JTHD Trust U/A/D 7/1/2016 and its settlors, trustees and beneficiaries, the deAlteris Family Legacy Trust U/A/D 4/1/2021 and its settlors, trustees and beneficiaries, the Wunderlin Family Legacy Trust U/A/D 4/20/2021 and its settlors, trustees and beneficiaries, the Wunderlin 2019 Trust U/A/D 9/5/2019 and its settlors, trustees and beneficiaries, the MCS Trust I U/A/D 7/12/2016 and its settlors, trustees and beneficiaries, the Matthew Schweinzger Legacy Trust U/A/D 3/19/2021 and its settlors, trustees and beneficiaries, GLD Trust No. 1 and its settlors, trustees and beneficiaries, Mohawk RE Trust No. 1 and its settlors, trustees and beneficiaries, DJW Consulting, LLC, and each of their respective present and former agents, employees, principals, officers, directors, partners, managers, members, parents, subsidiaries, affiliates, assigns, insurers, beneficiaries, principals, fiduciaries, executors, administrators, attorneys in fact and in law and legal representatives, heirs, predecessor and successor entities, successors, assigns, agents, shareholders, parents, subsidiaries, affiliates, insurers and attorneys (collectively, the "JJM Released Parties"), from any and all manner of actions, actual or potential claims, counterclaims, actions, causes of action, lawsuits, proceedings, adjustments, offsets, contracts, obligations, liabilities, indemnities, controversies, rights, judgments, debts, damages, demands, penalties, costs, expenses, attorney's fees and losses whatsoever, whether past, present, suspected or unsuspected, known or unknown, disclosed or concealed, asserted or unasserted, liquidated or unliquidated, contingent or absolute, accrued or unaccrued, matured or unmatured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise, whether in law, in admiralty, in bankruptcy, or in equity, and whether based on any federal law, state law, common law right of action or otherwise, from the beginning of time to the Effective Date of this Agreement arising out of or relating to the Disputes (collectively, the "Receiver Released Claims"), including but not limited to any action arising under California Civil Code § 3439, *et seq.* or based on statute(s) or common law, but specifically excluding any claims (a) arising out of or related to the enforcement of this Agreement and (b) against the entities identified in, and as specified in paragraph 14. The Receiver Releasing Parties hereby covenant not to sue any of the JJM Released Parties on account of any Receiver Released Claim. The Receiver is aware that she may later discover claims presently unknown or unsuspected, or facts in addition to or different from those which she now knows or believes to be true. Nevertheless, it is the Receiver's intention to fully, finally and forever settle and release all such claims and related matters.

7.     **Release of the Receivership Estate by the JJM Parties; Covenant Not to Sue.** The JJM Parties, on behalf of themselves and their respective successors and assigns, present and former agents, employees, officers, directors, partners, managers, members, parents, subsidiaries, affiliates, assigns, insurers, beneficiaries, principals, fiduciaries, heirs, executors, administrators, attorneys and legal representatives, and anyone claiming through or under any of the foregoing, and each of them (collectively, the "JJM Releasing Parties"), hereby forever release, remise and discharge the Receiver (in both her representative and individual capacities), the Receivership Estate as well as their agents, employees, officers, shareholders, managers, parents, subsidiaries, affiliates, insurers and attorneys (collectively, the "Receiver Released Parties"), from any and all manner of actions, actual or potential claims, counterclaims, actions, causes of action, lawsuits, proceedings, adjustments, offsets, contracts, obligations, liabilities, indemnities, controversies, rights, judgments, debts, damages, demands, penalties, costs, expenses, attorney's fees and losses whatsoever, whether past, present, suspected or unsuspected, known or unknown, disclosed or concealed, asserted or unasserted, liquidated or unliquidated, contingent or absolute, accrued or unaccrued, matured or unmatured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise, whether in law, in admiralty, in bankruptcy, or in equity, and whether based on any federal law, state law, common law right of action or otherwise, from the beginning of time to the Effective Date of this Agreement arising out of or relating to the Disputes (collectively, the "JJM Released Claims"), but specifically excluding any claims arising out of or related to the enforcement of this Agreement. The JJM Releasing Parties hereby covenant not to sue any of the Receiver Released Parties on account of any JJM Released Claim. The JJM Parties are aware that they may later discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to

be true. Nevertheless, it is the JJM Parties' intention to fully, finally and forever settle and release all such claims and related matters.

8. **Release of JJM Released Parties by Investor Plaintiffs; Covenant Not to Sue.** The Investor Plaintiffs, on behalf of themselves and their respective successors and assigns, present and former agents, employees, officers, directors, partners, managers, members, parents, subsidiaries, affiliates, assigns, insurers, beneficiaries, principals, fiduciaries, heirs, executors, administrators, attorneys and legal representatives, and anyone claiming through or under any of the foregoing, and each of them (collectively, the "Investor Plaintiffs Releasing Parties"), hereby forever release, remise and discharge the JJM Released Parties from any and all manner of actions, actual or potential claims, counterclaims, actions, causes of action, lawsuits, proceedings, adjustments, offsets, contracts, obligations, liabilities, indemnities, controversies, rights, judgments, debts, damages, demands, penalties, costs, expenses, attorney's fees and losses whatsoever, whether past, present, suspected or unsuspected, known or unknown, disclosed or concealed, asserted or unasserted, liquidated or unliquidated, contingent or absolute, accrued or unaccrued, matured or unmatured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise, whether in law, in admiralty, in bankruptcy, or in equity, and whether based on any federal law, state law, common law right of action or otherwise, from the beginning of time to the Effective Date of this Agreement arising out of or relating to the Disputes (collectively, the "Investor Plaintiffs Released Claims"), but specifically excluding any claims arising out of or related to (a) the enforcement of this Agreement and (b) any Investor Plaintiff's employment by or investment in Acrisure, LLC and its subsidiaries and affiliates including but not limited to Acrisure Holdings, Inc. The Investor Plaintiffs Releasing Parties hereby covenant not to sue any of the JJM Released Parties on account of any Investor Plaintiffs Released Claims. The Investor Plaintiffs are aware that they may later discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the Investor Plaintiffs' intention to fully, finally and forever settle and release all such claims and related matters.

9. **Trusts as Third-Party Beneficiaries.** The following trusts and persons are collectively referred to as the "JJM Trusts":

    (a)     The JTHD Trust U/A/D 7/1/2016 and its settlors, trustees and beneficiaries;

    (b)     The Wunderlin 2019 Trust U/A/D 9/5/2019 and its settlors, trustees and beneficiaries; and

    (c)     The MCS Trust I U/A/D 7/12/2016 and its settlors, trustees and beneficiaries.

The Parties agree that the JJM Trusts are intended beneficiaries of all rights and benefits of the JJM Parties under this Agreement, including, but not limited to, the provisions of paragraphs 6, 8 and 11 of this Agreement and the provisions of Schedule 4 to this Agreement.

10. **Release of Investor Plaintiffs by JJM; Covenant Not to Sue.** The JJM Releasing Parties hereby forever release, remise and discharge the Investor Plaintiffs as well as their respective successors and assigns, present and former agents, employees, officers, directors, partners, managers, members, parents, subsidiaries, affiliates, assigns, insurers, beneficiaries, principals, fiduciaries, heirs, executors, administrators, attorneys and legal representatives, and anyone claiming through or under any of the foregoing, and each of them (collectively, the "Investor Plaintiffs Released Parties") from the JJM Released Claims, but specifically excluding any claims arising out of or related to this Agreement. The JJM Releasing Parties hereby covenant not to sue any of the Investor Plaintiffs Released Parties on account of any JJM Released Claim. The JJM Releasing Parties are aware that they may later discover claims presently unknown or unsuspected, or facts in addition to or different from those which they now know or believe to be true. Nevertheless, it is the JJM Releasing Parties' intention to fully, finally and forever settle and release all such claims and related matters.

11. **Section 1542 Waiver.** The Parties understand that the release of claims set forth in this Agreement covers claims within the areas specified which the Parties have knowledge of and those which they may not know about. The Parties acknowledge that they have read and understand Section 1542 of the California Civil Code (Cal. Civ. Code § 1542), which reads as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The parties hereby expressly waive and relinquish all rights and benefits under California Civil Code Section 1542, including but not limited to with respect to the JJM Released Claims, the Receiver Released Claims and the Investor Plaintiffs Released Claims. Nothing contained in the releases herein shall negate or impair the Parties' right to enforce this Agreement or the Parties' claims against third parties that are not Parties to or covered by this Agreement.

12. **Effectiveness of Releases.** The releases exchanged in paragraphs 6 through 10 of this Agreement shall become effective only upon the Receiver's receipt of the full amount of the Settlement Payment from JJM as required by paragraph 2 of this Agreement.

13. **Section 1341 Claim.** The Parties agree as provided on Schedule 4 to the Agreement, the terms of which are hereby incorporated into and made part of this Agreement.

14. **Claims Excluded from the Receiver Released Claims.** The Receiver Released Claims exclude any claim or cause of action under the UVTA (or, to the extent applicable, the equivalent statute enacted by a different State) to avoid any transfer from any 1inMM Defendant or from JJMT to any of the following entities: Tosico, LLC; WFCO, LLC; BeverageCo, LLC; Farmco, LLC; Fishco, LLC; Priveinvest, LLC; Bakeco, LLC; Heartco, LLC; Heartco II, LLC; Mineralco Ventures, LLC; Miku Investment Holdings, LLC; RanchCo Investments, LLC; Launch Capital Group, LLC; and Breakout Interiors Funding, LLC. Other than as set forth in this paragraph, all actual or potential claims or causes of action are included in the Receiver Released Claims and are released and waived by the Receiver.

15. **Waiver of Claim and Distribution.** JJM hereby waive any right to file, and covenant not to file, a claim against the receivership estate in the Action (a "Proof of Claim"). If, notwithstanding the immediately previous sentence, JJM file a Proof of Claim in the Action, then the Receiver may apply to or move the Court to enter an order disallowing that Proof of Claim, and JJM hereby waive any notice or opportunity to be heard on any such application or motion. JJM acknowledge and agree that they are not entitled to any distributions from the Receivership Estate. However, nothing contained in this paragraph or this Agreement shall be deemed to waive (a) any or all claims that JJM have or may have against third parties that are not Parties to or covered by this Agreement or (b) the right of JJM to enforce the terms of this Agreement or to obtain any attorney's fees, costs or damages incurred in order to enforce the terms of this Agreement.

16. **Approval Order.**

 (a) The validity of this Agreement, and the Parties' obligations hereunder, are subject to the condition precedent that the Court enter a final order approving this Agreement, including a Bar Order in the form of words appearing on, or substantially similar to, <u>Schedule 3</u> hereto, and the time to file an appeal has passed (the "Approval Order").

 (b) JJM and the Investor Plaintiffs will support the entry of the Approval Order and will, upon the Receiver's reasonable request, submit declarations in support of, and attend any hearing on,

the Approval Motion. If, however, the Court declines to approve the settlement documented by this Agreement or declines to enter a Bar Order in the form of words appearing on, or substantially similar to, Schedule 3 hereto, then this Agreement (including but not limited to the releases contained herein) will be void and of no further force or effect, and the Parties will retain all of their respective rights, claims and defenses as if this Agreement never existed.

(c)     On or after the date that the Court enters the Approval Order (the "Approval Date"), and after the conditions set forth in paragraphs 16(a) and (b) have been met, the Receiver may provide to the other Parties to this Agreement any documents previously produced to the Receiver by the JJM Parties (collectively, "JJM Documents") so long as the Approval Order (or a different order entered by the Court): (i) deems the term "Receiver Action" in Section III.N. of the *Protective Order as to Receiver Investigations and Related Civil Actions*, dated November 23, 2022 [ECF #151] (the "Protective Order"), to include the Parties to this Agreement to the extent they obtain any JJM Documents from the Receiver ("Receiving Parties"); (ii) deems any Receiving Parties to be "Parties" within the meaning of Section III.J. of the Protective Order; and (iii) requires any Receiving Parties to comply with the terms of the Protective Order. The Receiver and the Receiving Parties may use the JJM Documents only insofar as such use benefits the Receivership Estate in litigation and settlement discussions while maintaining compliance with the Protective Order, including requiring any other "Receiving Party" within the meaning of Section III.O. of the Protective Order to sign Exhibit A to the Protective Order. Such documents shall otherwise remain confidential pursuant to the Protective Order.

17.     **Dismissal of the Investor Litigation.** No later than ten (10) calendar days after entry of the Approval Order, the Investor Plaintiffs shall cause the Investor Litigation (i.e., the civil actions listed on Schedule 2) to be dismissed with prejudice as to JJM, JJMT, the JTHD Trust U/A/D 7/1/2016 and its trustee, and the MCS Trust I U/A/D 7/12/2016 and its trustee with each party thereto to pay his, her or its own attorney's fees, costs and expenses associated therewith.

18.     **Non-Disparagement.** The Parties agree that neither the Parties nor anyone acting on their behalf will directly or indirectly make, issue, disseminate, post, publish or otherwise distribute – whether orally or in writing – any press release, social media post or public comment, statement, or remark that disparages, slanders, defames and/or denigrates any other Party or their reputation with respect to the 1inMM Ponzi Scheme, the 1inMM Defendants, JJMT, the Transfers, the Receiver Claims or the Investor Claims.

19.     **Representations and Warranties.** The Parties warrant and represent to each other that: (a) each Party shall act in good faith seeking to accomplish the purpose of this Agreement; (b) each Party has not transferred, conveyed, released, pledged, assigned or made any other disposition of the claimed rights, interests, demands, claims, actions or causes of action, obligations, or any other matter covered by this Agreement; (c) each Party has not relied upon any promises, agreements, representations, statements or warranties in entering into this Agreement, except those that are expressly set forth herein; (d) each signatory to this Agreement warrants that he, she or it has the authority to execute this Agreement and to bind the persons or entities on behalf of which he, she or it signs, including, without limitation, each of the JJM Releasing Parties, the Receiver Releasing Parties and the Investor Plaintiffs Releasing Parties; and EACH PARTY ACKNOWLEDGES THAT HE, SHE OR IT HAS READ THIS AGREEMENT IN ITS ENTIRETY AND THAT HE, SHE OR IT UNDERSTANDS AND APPRECIATES ITS CONTENTS AND SIGNIFICANCE AND HEREBY EXECUTES THE SAME AND MAKES THE RELEASE PROVIDED FOR IN THIS AGREEMENT VOLUNTARILY AND OF HIS, HER OR ITS OWN FREE WILL, HAVING FIRST HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL.

20.     **Approval by L&E Investors.** Loftus & Eisenberg, Ltd., as counsel for the L&E Investors, represents and warrants that all L&E Investors have approved the terms and conditions of this Agreement and have authorized a lawyer with Loftus & Eisenberg, Ltd. to execute and deliver this Agreement on their behalf. As evidence of this representation and warranty, Loftus & Eisenberg, Ltd. has provided a declaration, attached hereto as Schedule 5.

21.     **Enforcement of this Agreement.** If any Party files an application or motion against another Party to enforce the terms of this Agreement, in addition to any other relief to which the successful or prevailing party or parties (the "Prevailing Party") is entitled, the Prevailing Party is entitled to recover, and the non-Prevailing Party shall pay, all reasonable attorney's fees of the Prevailing Party, court costs, and expenses (even if not recoverable by law as court costs) incurred in that action, and all appellate proceedings related thereto. The Parties also agree that any dispute arising out of or related to this Agreement shall be decided only by the Court by application or motion filed in the Action. In connection with any action or proceeding to enforce, interpret or construe any provision of this Agreement, the Parties hereby irrevocably and unconditionally (a) consent to the exercise of personal jurisdiction over her, him or it by the Court, and (b) waive any defense of improper venue or forum non conveniens. Furthermore, the Parties agree that the Court shall retain exclusive jurisdiction over all matters relating to this Agreement.

22.     **Binding on Successors and Assigns.** This Agreement is and shall be binding upon: (a) the officers, directors, managers, members, partners, successors, heirs and assigns of each Party; (b) each past, present, direct or indirect parent, subsidiary, division or affiliated entity of each Party; and (c) each past or present agent, representative, member, manager, partner or shareholder of each Party.

23.     **Fair Construction.** The Parties acknowledge that this Agreement is the manifestation of direct negotiation and represents the mutual and voluntary consent and understanding of each Party. As such, this Agreement shall be deemed to be the joint work product of the Parties without regard to the identity of the draftsperson, and any rule of construction that a document shall be interpreted or construed against the drafting Party shall not be applicable.

24.     **No Third-Party Beneficiaries.** Other than as specifically set forth in this Agreement, including but not limited to in the releases and Civil Code § 1542 waiver in Paragraphs 6, 8 and 11, as additionally identified in Paragraph 9, and as identified in the Bar Order, nothing in this Agreement benefits, or is intended to benefit, any third party or to confer on any third party the power to enforce, or claim direct benefits under, this Agreement.

25.     **Fees and Costs.** Each of the Parties will bear her, his or its own costs and attorney's fees incurred in connection with the Disputes, the mediation of the Disputes and with this Agreement.

26.     **Entire Agreement.** This is an integrated Agreement. The terms of this Agreement are contractual and are not merely recitals. This Agreement constitutes the entire agreement and understanding between the Parties with regard to all matters addressed herein. This Agreement supersedes and replaces all prior commitments, negotiations, and all agreements proposed or otherwise, if any, whether written or oral, concerning the subject matters contained in this Agreement. The Parties expressly acknowledge that they have not relied on any prior or contemporaneous oral or written representations or statements by another Party in connection with the subject matter of this Agreement, except as expressly set forth herein.

27.     **No Collateral Representations.** The consideration provided herein consists of the entire consideration to which the Parties will be entitled. The Parties acknowledge that none of the Parties, their agents, attorneys, insurers, representatives, successors, assigns, heirs, beneficiaries, executors, administrators, parents, subsidiaries, affiliates, current and former directors, officers, managers, members, employees and representatives (as appropriate for each Party) has made any promise, representation or warranty, expressed or implied, not expressly set forth in this Agreement, which has induced any Party to execute this Agreement.

28.     **Exculpation.** The Receiver is executing this Agreement solely in her representative capacity as the Receiver appointed by the Court, and the Receiver's liability hereunder shall be limited to the assets of the Receivership Estate. Neither JJM, JJMT nor any of the Investor Plaintiffs shall have or assert any claims against the Receiver personally.

29.     **Further Assurances**. The Parties will cooperate fully and execute all supplementary documents and take all additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement.

30.     **Modification.** This Agreement may only be modified by a writing signed by all Parties and approved by the Court.

31.     **Governing Law.** This Agreement and the transactions contemplated herein shall be governed by and construed in accordance with the laws of the State of California, without reference to the conflict-of-laws rules thereof.

32.     **Time.** Time is of the essence as to all dates and time periods specified in this Agreement. All time periods in this Agreement shall be computed pursuant to Federal Rule of Civil Procedure 6(a).

33.     **Tax Implications.** Each Party shall be responsible for seeking their own individual tax advice and shall bear whatever tax liability she, he or it incurs in connection with the transactions contemplated by this Agreement. The Parties make no representations to each other about what tax consequences, if any, result from the transactions contemplated by this Agreement.

34.     **Waiver.** No waiver of any right, obligation, or duty imposed by or under this Agreement shall be effective unless such waiver is reflected in a writing duly executed by all parties hereto. No waiver shall be effective based on conduct or oral statements. Waiver by any Party of any breach of this Agreement shall not be a waiver by such Party of any other breach of this Agreement.

35.     **Counterparts.** This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original but all of which together shall constitute one in the same instrument. Facsimile or PDF signatures shall be deemed to have the same effect as original signatures.

36.     **Compromise.** The Parties agree and acknowledge that this Agreement is the result of an arms-length, good-faith compromise between or among the Parties and a decision to settle all claims and all disputes between or among some or all of them relating to the Disputes. The Parties expressly agree that this Agreement is a compromise of disputed claims for the purposes of avoiding the expense, delay, uncertainty and burden of litigation. The Settlement Payment is not a voluntary payment by any of the JJM Parties but is instead a required covenant and condition of this Agreement. Other than in an audit or proceedings involving any of the JJM Parties and the Internal Revenue Service (IRS), or any other federal, state or local agency, this Agreement is inadmissible in any proceeding for any purpose other than to obtain Court approval of the Agreement or to enforce or prove the terms of the Agreement. The Parties further agree that executing this Agreement and making the Settlement Payment is not, and shall never be construed as, an admission by JJM or JJMT of any fact, liability, wrongdoing or violation of any statute.

37.     **Notices.** Any and all notices under this Agreement shall be in writing, and shall be transmitted to the Parties by both electronic mail and express overnight delivery service as follows:

| If to the Receiver: | If to JJM: |
|---|---|
| KATTEN MUCHIN ROSENMAN LLP<br>Terence G. Banich<br>525 W. Monroe St.<br>Chicago, IL 60661<br>terence.banich@katten.com<br><br>with a copy to:<br><br>Michele Vives, Receiver<br>1620 Fifth Ave., Ste. 400<br>San Diego, CA 92101<br>mvives@douglaswilson.com | BG LAW LLP<br>Corey R. Weber<br>21650 Oxnard St.<br>Suite 500<br>Woodland Hills, CA 91367<br>cweber@bg.law<br><br>COTSIRILOS, TIGHE, STREICKER,<br>POULOS & CAMPBELL, LTD.<br>Matthew S. Ryan<br>33 N. Dearborn, Suite 600<br>Chicago, IL 60602<br>mryan@cotsiriloslaw.com |
| If to the L&E Investors:<br><br>LOFTUS & EISENBERG, LTD.<br>Alexander N. Loftus<br>David A. Eisenberg<br>161 N. Clark St., Ste. 1600<br>Chicago, IL 60601<br>alex@loftusandeisenberg.com<br>david@loftusandeisenberg.com | If to JJMT:<br><br>KOPECKY SCHUMACHER ROSENBURG LLC<br>James L. Kopecky<br>120 N. LaSalle St., Ste. 2000<br>Chicago, IL 60602<br>jkopecky@ksrlaw.com |
| If to the Nalpak Investors:<br><br>ARMSTRONG TEASDALE LLP<br>Monte Mann<br>Andrew D. Campbell<br>100 North Riverside Plaza<br>Chicago, IL 60606<br>mmann@atllp.com<br>acampbell@atllp.com | If to the Aronson Investors:<br><br>HOWARD & HOWARD<br>Scott C. Frost<br>Daniel S. Rubin<br>200 S. Michigan Ave., Ste. 1100<br>Chicago, IL 60604<br>sfrost@howardandhoward.com<br>drubin@howardandhoward.com |

*[Signature block follows on next page]*

IN WITNESS WHEREOF, the Parties hereby execute this Agreement as of the Effective Date.

| | |
|---|---|
| **MICHELE VIVES, Receiver, on behalf of herself and the Receiver Releasing Parties**<br><br>_____ | **JOSEPH DEALTERIS, on behalf of himself and his respective JJM Releasing Parties**<br><br><br>_____ |
| **JACOB WUNDERLIN, on behalf of himself and his respective JJM Releasing Parties**<br><br><br><br>_____ | **MATTHEW SCHWEINZGER, on behalf of himself and his respective JJM Releasing Parties**<br><br><br>_____ |
| **JJMT CAPITAL, LLC**<br><br><br>By: _____<br><br>Its: _____ | **THE L&E INVESTORS, on behalf of themselves and their respective Investor Plaintiffs Releasing Parties**<br><br>By: _____<br><br>Its: _____ |
| **STEVEN ARONSON, on behalf of himself and his respective Investor Plaintiffs Releasing Parties**<br><br>_____ | **MATTHEW ARONSON, on behalf of himself and his respective Investor Plaintiffs Releasing Parties**<br><br>_____ |
| **NALPAK I LP, on behalf of itself and its respective Investor Plaintiffs Releasing Parties**<br><br><br>By: _____<br><br>Its: _____ | **NALPAK II LP, on behalf of itself and its respective Investor Plaintiffs Releasing Parties**<br><br><br>By: _____<br><br>Its: _____ |
| **NALPAK ENTERPRISES LLC, on behalf of itself and its respective Investor Plaintiffs Releasing Parties**<br><br><br>By: _____<br><br>Its: _____ | **PETER XILAS, on behalf of himself and his respective Investor Plaintiffs Releasing Parties**<br><br><br>_____ |

IN WITNESS WHEREOF, the Parties hereby execute this Agreement as of the Effective Date.

| | |
|---|---|
| **MICHELE VIVES, Receiver, on behalf of herself and the Receiver Releasing Parties** | **JOSEPH DEALTERIS, on behalf of himself and his respective JJM Releasing Parties** |
| _____ | _____ |
| **JACOB WUNDERLIN, on behalf of himself and his respective JJM Releasing Parties** | **MATTHEW SCHWEINZGER, on behalf of himself and his respective JJM Releasing Parties** |
| _____ | _____ |
| **JJMT CAPITAL, LLC** | **THE L&E INVESTORS, on behalf of themselves and their respective Investor Plaintiffs Releasing Parties** |
| By: _____ Its: _____Manager_____ | By: _____ Its: _____ |
| **STEVEN ARONSON, on behalf of himself and his respective Investor Plaintiffs Releasing Parties** | **MATTHEW ARONSON, on behalf of himself and his respective Investor Plaintiffs Releasing Parties** |
| _____ | _____ |
| **NALPAK I LP, on behalf of itself and its respective Investor Plaintiffs Releasing Parties** | **NALPAK II LP, on behalf of itself and its respective Investor Plaintiffs Releasing Parties** |
| By: _____ Its: _____ | By: _____ Its: _____ |
| **NALPAK ENTERPRISES LLC, on behalf of itself and its respective Investor Plaintiffs Releasing Parties** | **PETER XILAS, on behalf of himself and his respective Investor Plaintiffs Releasing Parties** |
| By: _____ Its: _____ | _____ |

IN WITNESS WHEREOF, the Parties hereby execute this Agreement as of the Effective Date.

| | |
|---|---|
| **MICHELE VIVES, Receiver, on behalf of herself and the Receiver Releasing Parties**<br><br><br>_____ | **JOSEPH DEALTERIS, on behalf of himself and his respective JJM Releasing Parties**<br><br><br>_____ |
| **JACOB WUNDERLIN, on behalf of himself and his respective JJM Releasing Parties**<br><br><br>_____ | **MATTHEW SCHWEINZGER, on behalf of himself and his respective JJM Releasing Parties**<br><br><br>_____ |
| **JJMT CAPITAL, LLC**<br><br><br>By: _____<br><br>Its: _____ | **THE L&E INVESTORS, on behalf of themselves and their respective Investor Plaintiffs Releasing Parties**<br><br>By: _*Alexander Loftus*_____<br><br>Its: _Attorney_____ |
| **STEVEN ARONSON, on behalf of himself and his respective Investor Plaintiffs Releasing Parties**<br><br><br>_____ | **MATTHEW ARONSON, on behalf of himself and his respective Investor Plaintiffs Releasing Parties**<br><br><br>_____ |
| **NALPAK I LP, on behalf of itself and its respective Investor Plaintiffs Releasing Parties**<br><br><br>By: _____<br><br>Its: _____ | **NALPAK II LP, on behalf of itself and its respective Investor Plaintiffs Releasing Parties**<br><br><br>By: _____<br><br>Its: _____ |
| **NALPAK ENTERPRISES LLC, on behalf of itself and its respective Investor Plaintiffs Releasing Parties**<br><br><br>By: _____<br><br>Its: _____ | **PETER XILAS, on behalf of himself and his respective Investor Plaintiffs Releasing Parties**<br><br><br>_____ |

IN WITNESS WHEREOF, the Parties hereby execute this Agreement as of the Effective Date.

| | |
|---|---|
| **MICHELE VIVES, Receiver, on behalf of herself and the Receiver Releasing Parties**<br><br><br>_____ | **JOSEPH DEALTERIS, on behalf of himself and his respective JJM Releasing Parties**<br><br><br>_____ |
| **JACOB WUNDERLIN, on behalf of himself and his respective JJM Releasing Parties**<br><br><br>_____ | **MATTHEW SCHWEINZGER, on behalf of himself and his respective JJM Releasing Parties**<br><br><br>_____ |
| **JJMT CAPITAL, LLC**<br><br><br>By: _____<br><br>Its: _____ | **THE L&E INVESTORS, on behalf of themselves and their respective Investor Plaintiffs Releasing Parties**<br><br>By: _____<br><br>Its: _____ |
| **STEVEN ARONSON, on behalf of himself and his respective Investor Plaintiffs Releasing Parties**<br><br>_____ | **MATTHEW ARONSON, on behalf of himself and his respective Investor Plaintiffs Releasing Parties**<br><br>_____ |
| **NALPAK I LP, on behalf of itself and its respective Investor Plaintiffs Releasing Parties**<br><br><br>By: _____<br><br>Its: _____ | **NALPAK II LP, on behalf of itself and its respective Investor Plaintiffs Releasing Parties**<br><br><br>By: _____<br><br>Its: _____ |
| **NALPAK ENTERPRISES LLC, on behalf of itself and its respective Investor Plaintiffs Releasing Parties**<br><br><br>By: _____<br><br>Its: _____ | **PETER XILAS, on behalf of himself and his respective Investor Plaintiffs Releasing Parties**<br><br><br>_____ |

**EXECUTION COPY**

IN WITNESS WHEREOF, the Parties hereby execute this Agreement as of the Effective Date.

| | |
|---|---|
| **MICHELE VIVES, Receiver, on behalf of herself and the Receiver Releasing Parties** | **JOSEPH DEALTERIS, on behalf of himself and his respective JJM Releasing Parties** |
| _____ | _____ |
| **JACOB WUNDERLIN, on behalf of himself and his respective JJM Releasing Parties** | **MATTHEW SCHWEINZGER, on behalf of himself and his respective JJM Releasing Parties** |
| _____ | _____ |
| **JJMT CAPITAL, LLC** | **THE L&E INVESTORS, on behalf of themselves and their respective Investor Plaintiffs Releasing Parties** |
| By: _____ | By: _____ |
| Its: _____ | Its: _____ |
| **STEVEN ARONSON, on behalf of himself and his respective Investor Plaintiffs Releasing Parties** | **MATTHEW ARONSON, on behalf of himself and his respective Investor Plaintiffs Releasing Parties** |
| _____ | _____ |
| **NALPAK I LP, on behalf of itself and its respective Investor Plaintiffs Releasing Parties** | **NALPAK II LP, on behalf of itself and its respective Investor Plaintiffs Releasing Parties** |
| By: _____ _[signature]_ | By: _____ _[signature]_ |
| Its: _____ VP + Secretary | Its: _____ VP + Secretary |
| **NALPAK ENTERPRISES LLC, on behalf of itself and its respective Investor Plaintiffs Releasing Parties** _[signature]_ | **PETER XILAS, on behalf of himself and his respective Investor Plaintiffs Releasing Parties** _[signature]_ |
| By: _____ | |
| Its: _____ MANAGER | |

### Schedule 1

#### List of L&E Investors

The L&E Investors consist of the following persons and entities:

1. AFA Marketing
2. Altgeld Groupo SPE I LLC
3. Arenson, Paul
4. Aronson, Mike
5. AVR Group, LLC
6. Balliet, Lori
7. Barry Rosenthal Revocable Trust
8. BCP, LLC
9. Benjamin Altman Trust
10. Bottini, Domenick
11. C421-Uyen Huynh
12. Carter, Jocelyn
13. Castanada, Robert
14. CD LLC
15. Codegard EV LLC
16. Cohen, Helane
17. Cowley, Shelby
18. Crandall, Bonnie
19. Cummings, Robert
20. DASH 401k Trust
21. Debra Durham
22. DiMattia, Mario
23. Dolan, Michael
24. Duffy, Joe
25. Dziurgot, Mike
26. Eggener, Brian
27. Ellustionist.com
28. Elwell, Andrew
29. Empirius
30. Fackelmayer, Harry
31. Fatemeh Pazouki
32. Fehling, Brian
33. Ferrari, Adam
34. Fiene, Christian
35. Forge Trust FBO Carl Hirsch IRA #552677
36. Forge Trust FBO Ilan Awerbuch IRA #491275
37. Frankin River, LLC
38. Friedman, Ari
39. Futoransky, Stas
40. Gardosik, Mary
41. Global Hospitality Concept
42. Gould, Michael
43. Greendot, LLC
44. Hawley, Scott
45. Heinecke, Eric
46. Hemenway, Linda
47. Henny, Robert
48. Hirsch Trust DTD 2/9/90
49. Holloway, Scott
50. Hutchinson, Gail
51. Huynh, Uyen
52. Awerbuch, Ilan
53. IRA Services Trust Company FBO Sadia Lone IRA 299509
54. IRVRU Company
55. Jahangirzadeh, Parviz
56. James D Lepak Management
57. JCE Solutions Inc.
58. Jerome Steven Franz
59. Jonker, Nicholas
60. Kalin, Carson
61. Karlander, Dan
62. Karmin, Jonathan
63. Keith, Jeff
64. Kiser, Erik
65. Kittle, Cody
66. Knoska, James
67. Lawrence Hopkins
68. Lawson, Brett
69. Lazarus, Jason
70. Leish, Nicholas
71. Lone Revocable Trust
72. Martin, Daniel
73. Mauri, Cody
74. McGrarvey, Patrick
75. MEK Investments
76. Miller, Kyle
77. Moller-Tank, Annake
78. Mouton, Brent
79. Nahid Tabai
80. Nanya Family Trust
81. Nanya, Joseph
82. NDTCO as Custodian FBO Sadia Lone HAS
83. Next Generation Investment Group
84. Pacht, Doug
85. Pak, Gene
86. Palace Court Capital, LLC
87. Peltz, Michael
88. Phillips, Chris
89. Phoenix Affordable Housing Authority, LLC

90. Prag, Stephen
91. Romanowski, Steve
92. Romanzi, Alexander
93. Ryan, Mathew
94. Ryley, James
95. Schaps, Jason
96. Schweet, Ryan
97. SerotLaz LLC
98. Southwest Investments Funds, LLC
99. Steingraber, Jonathan
100. Stoutt, Windell and Karen
101. Sutter, Jacqueline
102. The DASH Revocable Trust
103. Toner, John
104. Treven Lingren
105. Trident Asset Management, Inc.
106. Wahls, Aaron
107. Wong, Hong Ling
108. Yong, Da (Robert)
109. Zaleski, Steven

## Schedule 2

### List of Investor Litigation

The Investor Litigation consist of the following civil actions:

| Case Name | Number | Court |
|---|---|---|
| *Beepa Cheek Paulo, LLC, et al. v. DeAlteris, et al.* | 2021 L 4262 | Circuit Court of Cook County (J. Esrig) |
| *Nalpak I LP, et al. v. Breakout SPE, LLC, et al.* | 2020 L 4620 | Circuit Court of Cook County (J. Roberts) |
| *Zaleski, et al. v. JJMT Capital, LLC* | 2021 CH 1939 | Circuit Court of Cook County (J. Meyerson) |
| *Aronson, et al. v. JJMT Capital, LLC* | 21 C 1867 | U.S. District Court for the Northern District of Illinois (J. Valderrama) |
| *Ferrari v. JJMT Capital, LLC* | 2021 L 2462 | Circuit Court of Cook County (J. Esrig) |
| *MEK Investments, LLC v. JJMT Capital, LLC* | 2021 L 2954 | Circuit Court of Cook County (J. Michael Otto) |
| *Fiene & Kiser v. Schweinzger* | 21 C 5740 | U.S. District Court for the Northern District of Illinois (J. Norgle) |

### Schedule 3

### Form of Bar Order

The Receiver shall insert the following decretal language in the proposed Approval Order (which shall state that all capitalized terms not defined therein shall have the meanings ascribed to them in the Agreement and Approval Motion):

"The Court hereby PERMANENTLY BARS, RESTRAINS and ENJOINS all persons and entities (except any governmental unit, as that term is defined by 11 U.S.C. § 101(27)), as well as their respective heirs, successors, assigns, subsidiaries, parents, affiliates, officers, directors, shareholders, members, managers, partners, representatives, agents, employees and attorneys, from commencing or continuing any civil action, administrative proceeding, arbitration or other adversarial proceeding against Joseph deAlteris, Jacob Wunderlin or Matthew Schweinzger, as well as their wives, children and respective current and former employers, JJMT Capital, LLC, JJMT Management Co., LLC, J.T.H.D. Investments, LLC, JJMT Group, LLC, Chi Town Capital, LLC, the Windy City Entities, GMCS Investments, LLC, the JTHD Trust U/A/D 7/1/2016 and its settlors, trustees and beneficiaries, the deAlteris Family Legacy Trust U/A/D 4/1/2021 and its settlors, trustees and beneficiaries, the Wunderlin Family Legacy Trust U/A/D 4/20/2021 and its settlors, trustees and beneficiaries, the Wunderlin 2019 Trust U/A/D 9/5/2019 and its settlors, trustees and beneficiaries, the MCS Trust I U/A/D 7/12/2016 and its settlors, trustees and beneficiaries, the Matthew Schweinzger Legacy Trust U/A/D 3/19/2021 and its settlors, trustees and beneficiaries, GLD Trust No. 1 and its settlors, trustees and beneficiaries, Mohawk RE Trust No. 1 and its settlors, trustees and beneficiaries, and DJW Consulting, LLC, asserting any claim, cause of action, counter-claim, cross-claim or adversarial proceeding arising out of, in connection with or relating in any way to: (1) the 1inMM Ponzi Scheme; (2) acts or omissions relating to JJMT Capital, LLC, JJMT Group, LLC, J.T.H.D. Investments, LLC or Chi-Town Capital, LLC; (3) acts or omissions relating to the 1inMM Ponzi Scheme or the 1inMM Defendants; (4) acts or omissions relating to any investment, loan or transfer of money to JJMT Capital, LLC, JJMT Group, LLC, J.T.H.D. Investments, LLC, Chi-Town Capital, LLC or 1inMM Capital, LLC and/or repayment or lack of repayment by JJMT Capital, LLC, JJMT Group, LLC, J.T.H.D. Investments, LLC, Chi-Town Capital, LLC or the 1inMM Defendants (in whatever form and however denominated, a "1inMM Claim"). All 1inMM Claims are hereby channeled into the Receivership Estate's claims distribution process that the Court will establish by separate order. *Provided, however*, this order does not bar, restrain or enjoin: (a) the Receiver from asserting a claim to avoid and recover transfers to any of the persons and entities listed in paragraph 14 of the Agreement (other than JJMT Capital, LLC); or (b) any Investor Plaintiff from asserting a claim arising out of his or her employment by or investment in Acrisure, LLC and its subsidiaries and affiliates including but not limited to Acrisure Holdings, Inc."

EXECUTION COPY

## Schedule 4

### Section 1341 Claim

The Parties agree as follows:

(a)     Nothing in this Agreement is to be construed as inconsistent with the right of any of the JJM Parties to take a deduction for any portion of the Settlement Payment or to benefit from the provisions of Section 1341 of the Internal Revenue Code with respect to any portion of the Settlement Payment;

(b)     All other parties will reasonably cooperate with each and all of the JJM Parties with respect to such JJM Parties' deduction of all or part of the Settlement Payment or their claim(s) on their tax returns of the benefits of Section 1341 of the Internal Revenue Code with respect to all or part of the Settlement Payment;

(c)     They are aware of no fact that indicates that the JJM Parties are not entitled to a deduction of the Settlement Payment or to the tax benefits provided by Section 1341 with respect to the Settlement Payment;

(d)     They will take no position on a tax return or otherwise that is inconsistent with the JJM Parties' deduction of all or part of the Settlement Payment or to the tax benefits provided by Section 1341 with respect to all or part of the Settlement Payment. If any inconsistent position is taken, they agree that the provisions of this Schedule 4 of this Agreement will supersede and control such matters in resolving the potential conflict;

(e)     Each time any of the JJM Parties received any amount related to the 1inMM Ponzi Scheme, it appeared that such party was entitled to such amount and had an unrestricted right to such amount;

(f)     Amounts received in relation to the 1inMM Ponzi Scheme include, but are not limited to, any amounts received directly or indirectly from or through 1inMM Capital LLC, J.T.H.D. Investments LLC, Chi Town Capital LLC, JJMT Group LLC, JJMT Capital LLC, JJMT Capital LLC Profit Sharing 401 (k) Plan, or JJMT Management Co. LLC;

(g)     Subsequent to the close of the last year in which any of the JJM Parties received any amount related to the 1inMM Ponzi Scheme, it was established that none of the JJM Parties had an unrestricted right to the amounts that are being returned as the Settlement Payment;

(h)     No part of the Settlement Payment constitutes a payment of, or settlement payment with respect to: (i) a fine or penalty of any type under federal, state or local law, (ii) any actual or potential liability for a fine or penalty of any type under federal, state or local law, (iii) punitive damages or other similar form of assessment for any alleged offenses; (iv) any claim or action related to any alleged criminal violation by any of the JJM Parties of any federal or state antitrust law or any other federal, state or local law; or (v) any breach of public policy, any breach of contract, any tort, or any wrongdoing on the part of any of the JJM Parties;

(i)     Immediately following the receipt of each payment from, or on behalf of, one of the JJM Parties (or one of the JJM Trusts) that is designated as a part of the Settlement Payment, the Receiver will provide a Letter of Acknowledgement to the payor (or to such person as the payor designates in writing) in the Form of Exhibit A attached to this Schedule;

(j)     The JJM Parties are innocent victims of the 1inMM Ponzi Scheme, and not accomplices of, perpetrators of, or participants in the 1inMM Ponzi Scheme; and

**EXECUTION COPY**

(k)     The JJM Parties' obligation to make the Settlement Payment arose out of the same circumstances, terms and conditions as their receipt of taxable income from, or related to, the 1inMM Ponzi Scheme.

**Exhibit A to Schedule 4**

LETTER OF ACKNOWLEDGEMENT

Date:

From:   Michele Vives, as Federal Equity Receiver (the "Receiver") of 1inMM Capital LLC and Its Subsidiaries and Affiliates

To: _____, (the "Payor")

BACKGROUND

WHEREAS, on _____, 2023 the Receiver and the JJM Parties (as defined in the Settlement Agreement) entered into a Settlement Agreement and Mutual Release (a copy of which is attached to this letter) relating to the "1inMM Ponzi Scheme" (the "Settlement Agreement");

WHEREAS, the Settlement Agreement requires the JJM Parties to make certain payments that together constitute the "Settlement Payment."

WHEREAS, the Receiver is required to provide a certain letter of acknowledgement with respect to each such payment.

NOW, THEREFORE, the Receiver states the following:

A.      On _____, 202_ I, Michele Vives, in my capacity as Receiver, received payment from _____ in the amount of $_____, which payment constitutes part of the Settlement Payment required under the Settlement Agreement.

B.      All statements in the Settlement Agreement relating to the Settlement Payment, including, but not limited to, the statements set forth on Schedule 4 of the Settlement Agreement, are to the best of my knowledge true and accurate with respect to the payment I am acknowledging with this letter.

Respectfully,


_____
Michele Vives, Receiver

**EXECUTION COPY**

### Schedule 5

Declaration of Alexander N. Loftus

I, Alexander N. Loftus, declare as follows:

1.      I am over the age of eighteen years, am under no disability and am competent to testify to the matters set forth herein. Except as otherwise stated, all facts set forth in this declaration are based upon my personal knowledge and/or my review of documents. If called as a witness in this case, I could and would testify competently to the facts set forth in this declaration.

2.      I submit this declaration pursuant to paragraph 16 of the *Settlement Agreement and Mutual Release*, dated June 29, 2023 (the "Agreement"), to which this declaration is attached as Schedule 5. Any capitalized terms not defined herein have the meanings ascribed to them in the Agreement.

3.      I am an attorney at law licensed to practice in the State of Illinois and am the managing partner of Loftus & Eisenberg, Ltd. ("L&E").

4.      I represent the L&E Investors listed on Schedule 1 to the Agreement in certain of the Investor Litigation matters listed on Schedule 2 to the Agreement.

5.      All L&E Investors have approved the terms and conditions of this Agreement, including the payments of attorney's fees described in paragraph 3, and have authorized L&E to execute and deliver this Agreement on their behalf.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 29 2023
in Chicago, Illinois

Alexander N. Loftus