Terence G. Banich (SBN 212173)
terence.banich@katten.com
Allison E. Yager (*pro hac vice*)
allison.yager@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661
Telephone: (312) 902-5200
Facsimile: (312) 902-1061

*Attorneys for the Receiver*
Michele Vives

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>  Plaintiff,<br><br>  v.<br><br>ZACHARY J. HORWITZ; and 1inMM CAPITAL, LLC,<br><br>  Defendants. | Case No. 2:21-cv-02927-CAS(GJSx)<br><br>**QUARTERLY REPORT OF RECEIVER MICHELE VIVES (SECOND QUARTER 2023)**<br><br>Judge:   Hon. Christina A. Snyder<br>Courtroom: 8D |

# **TABLE OF CONTENTS**

I. GENERAL RECEIVERSHIP UPDATE ........................................................................2
    A. Settlement Activity During the Second Quarter 2023 .........................................2
        1. Settlement of JJMT-Related Claims ........................................................3
        2. Settlement with the Law Firm ..................................................................7
        3. Settlement with the Professional Services Firm ......................................8
    B. Forensic Accounting Background and Update ....................................................9
    C. Current and Pending Settlements with Transfer Recipients and Net Winners ....10
        1. Prior Settlements ....................................................................................10
        2. Other Net Winners and Settlement Negotiations ...................................11
    D. Asset Updates .....................................................................................................11
        1. Rogue Black ...........................................................................................11
        2. LayJax ....................................................................................................12
        3. The Additional Investments ...................................................................13
        4. Additional Film Investments ..................................................................13
    E. Potential Litigation and Engagement of Conflicts Counsel ...............................14
II. ACCOUNTING OF RECEIPTS AND DISBURSEMENTS .......................................14
    A. Cash Receipts .....................................................................................................14
    B. Cash Disbursements ...........................................................................................14
    C. Cash on Hand .....................................................................................................15
III. CONCLUSION ............................................................................................................15

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Michele Vives, the duly appointed permanent receiver (the "Receiver") of 1inMM Capital, LLC and its subsidiaries and affiliates ("1inMM"), and over assets that are attributable to funds derived from investors or clients of the Defendants or were fraudulently transferred by the Defendants (collectively, the "Receivership Estate"), pursuant to Local Rule 66-6 and the *Order on Appointment of a Permanent Receiver* ("Order of Appointment") entered on January 14, 2022, hereby submits this quarterly report (the "Report") for the period April 1, 2023 through June 30, 2022 (the "Second Quarter 2023"). The Report details the Receiver's activities and findings during the Second Quarter 2023 to protect and administer the receivership estate, identify new assets and lay out the Receiver's general strategy to maximize the recovery for the benefit of harmed investors.

I. **GENERAL RECEIVERSHIP UPDATE**

   A. **Settlement Activity During the Second Quarter 2023**

The Receiver previously reported that, during the First Quarter 2023, she reached three major settlements that, if approved by the Court, would yield a total of $14.35 million in settlement value for the Estate, before payment of certain administrative claims. These settlements are with the former principals of JJMT Capital, LLC ("JJMT"), which consists of two separate settlement agreements; and a law firm that represented 1inMM, the name of which the Receiver agreed to keep confidential (the "Law Firm"). The Court has since approved one of those three settlements, and the cash consideration has been fully paid to the Estate. The other two settlements are in advanced states of documentation.

During the Second Quarter 2023, the Receiver reached a settlement with a professional services firm that worked with 1inMM, the name of which the Receiver also agreed to keep confidential (the "Professional Services Firm"). The settlement with the Professional Services Firm, if approved, would yield additional cash for the Estate.

All of these settlements are significant because they simultaneously resolve

pending or threatened litigation by groups of net losing investors in 1inMM.

Although the Receiver will address these proposed settlements in greater detail in motions for their approval (which she expects to file in the coming weeks), the Receiver now explains how these hard-fought compromises came about, summarizes their basic terms and provides an update of their status through the Second Quarter 2023.

### 1. Settlement of JJMT-Related Claims

#### a. The Investor Claims and the Receiver Claims

As the Receiver discussed in each of her prior quarterly reports, several 1inMM investors commenced numerous lawsuits in courts across the country alleging claims associated with Defendants' fraudulent scheme (defined in the first quarter 2022 report as the "Investor Actions"). It quickly became apparent to the Receiver that the Investor Actions against JJMT and its organizers—all of which are pending in federal and state courts in Chicago—were the most numerous, complex and in need of immediate attention. The principals of JJMT are Joseph deAlteris ("deAlteris"), Jacob Wunderlin ("Wunderlin") and Matthew Schweinzger "Schweinzger," and collectively with deAlteris and Wunderlin, "JJ&M") and Tyler Crookston ("Crookston").[1]

The plaintiffs in the Investor Actions (collectively, the "Investor Plaintiffs") claimed tens of millions of dollars in damages on various legal theories generally asserting that JJ&M and Crookston are liable to them in connection with the 1inMM Ponzi Scheme (collectively, the "Investor Claims"). Crookston and JJ&M vigorously defended the Investor Actions, and asserted several defenses to the Investor Claims that, if sustained, may have resulted in the Investor Plaintiffs taking

---

[1] The Receiver addresses JJ&M and Crookston separately because they had separate counsel and their settlements are structured differently.

nothing. The Receiver, meanwhile, asserted that she may avoid and recover certain transfers of money from 1inMM to JJ&M and Crookston as fraudulent transfers under the California Uniform Voidable Transactions Act, Cal. Civ. Code § 3439 et seq. ("UVTA") (the "Receiver Claims").

Early on, counsel for the Investor Plaintiffs sought to work with the Receiver to the extent she had claims against the same defendants, and the Receiver entered into common interest agreements with them. At the same time, JJ&M and Crookston expressed interest in settling the Receiver's potential claims against them, but only so long as the Receiver could somehow concurrently resolve or eliminate the Investor Actions. The Receiver pursued a collaborative approach, spending several months working with the lawyers for all of those parties about ways she might help coordinate and resolve them.

### b. The JJMT Mediation

Ultimately, the result was that the Receiver and those litigants agreed to participate in a formal mediation process with the goal of reaching a global settlement of all claims in the Investor Actions as well as any claims the Receiver may have against the same defendants (the "JJMT Mediation"). The parties selected the mediator to be Hon. Sidney I. Schenkier, United States Magistrate Judge for the Northern District of Illinois (retired), and now a neutral with JAMS. The JJMT Mediation occurred in Chicago on January 30-31, 2023, and was successful.

To prepare for the JJMT Mediation, the Receiver and her professional staff had to review and analyze tens of thousands of banking transactions and hundreds of financial records associated with 1inMM, JJMT, JJ&M, Crookston and Horwitz covering a several-year period, and then verify those transactions against the 1inMM financial transactions and banking records already in the Receiver's possession. The verification step ensured that the final net-profit liability numbers were the product of fully vetted records that reflected no material discrepancies. The Receiver's forensic accounting analysis also required a lot of back-and-forth with counsel for

JJ&M and Crookston to request banking documents, wire detail and other information. Fortunately, JJ&M. Crookston and their respective counsel were cooperative and responsive throughout and provided the Receiver with the documents necessary for her to complete this analysis.

The Receiver submitted lengthy mediation statements to Judge Schenkier that included a detailed discussion of the applicable legal principles under UVTA and explained why, in the Receiver's view, JJ&M and Crookston had several million dollars of liability to the estate under UVTA.

### c. *Settlement with Tyler Crookston*

In the week preceding the JJMT Mediation, the Receiver and the Investor Plaintiffs opened negotiations with Crookston (through his counsel) in an attempt to reach a pre-mediation settlement. Those discussions—while hard-fought and sometimes tense—were ultimately successful.

As the Receiver described in her motion to approve the settlement with Crookston [ECF #218], Crookston agreed to pay the $3.85 million to the Estate to resolve the Investor Claims and the Receiver Claims, as well as all potential claims that could be filed against him arising out of or relating to the 1inMM Ponzi Scheme. Even though part of the settlement consideration is to settle the Investor Claims, the Investor Plaintiffs agreed that the entire settlement consideration should be paid into the Estate for the benefit of all creditors. A critical component of the settlement consideration is that the Court enters a "bar order" in Crookston's favor—essentially a permanent injunction barring any other person or entity from suing him on any claim pertaining to the 1inMM Ponzi Scheme, which is a common component of these sorts of settlements. Any such claim that an allegedly aggrieved 1inMM investor might have would be channeled to the claim process that the Receiver will in the future ask this Court to approve.

As of the end of the Second Quarter 2023, the Receiver was awaiting the

Court's ruling on the Crookston settlement motion.[2]

####  d.  Settlement with JJ&M

The Investor Plaintiffs, the Receiver and JJ&M mediated their respective claims with Judge Schenkier over two marathon in-person mediation sessions in Chicago on January 30 and 31, 2023. Due in no small part to Judge Schenkier's persistence and wisdom, as well as the parties' creativity and willingness to compromise, the JJMT Mediation was a success.

Again as a result of her team's searching and thorough forensic accounting analysis, the Receiver determined that JJ&M received net profits (including commissions) as a result of the 1inMM Ponzi Scheme, which are transfers from 1inMM subject to avoidance under UVTA, in the following approximate amounts: $6.63 million (Schweinzger); $8.30 million (deAlteris); and $9.35 million (Wunderlin), for a total of about $24 million. JJ&M vigorously challenged the Receiver Claims against them on multiple grounds, raising complex and serious issues principally about the Receiver's legal ability to recover the transfers from them on a "mere conduit" theory and the potential expiration of the applicable statute of limitations, among other defensive positions. JJ&M also sharply contested their liability to the Investor Plaintiffs for a multitude of reasons. The basic terms of the settlement with JJ&M follow.

As a result of the JJMT Mediation, JJ&M jointly agreed to pay the $9 million to the Estate to resolve the Investor Claims and the Receiver Claims, as well as all potential claims that could be filed against them arising out of or relating to the 1inMM Ponzi Scheme, which is more than JJ&M would have paid to resolve only the Receiver Claims. Consistent with the Crookston settlement, the Investor

---

[2] The Court granted the motion on July 5, 2023. The Receiver will report on this and related developments in her report for the third quarter 2023.

Plaintiffs again agreed that the entire $9 million of settlement consideration should be paid into the Estate for the benefit of all creditors. So the Receiver agreed to seek approval to pay certain negotiated amounts to counsel for the Investor Plaintiffs in recognition of their assistance in creating a common fund in, and for making a substantial contribution to, the Estate. In exchange, the parties will exchange mutual general releases, and the Receiver will ask this Court to enter a bar order enjoining any person or entity from commencing or continuing any claim against JJ&M arising out of or relating to the 1inMM Ponzi Scheme.

During the Second Quarter 2023, counsel for the Receiver, the Investor Plaintiffs JJ&M worked on drafting the settlement agreement and related documentation. The Receiver expects to file a motion to approve the settlement with JJ&M during the third quarter of 2023.

### 2. *Settlement with the Law Firm*

As the Receiver previously reported, during the First Quarter 2023, she and certain net losing investors in 1inMM (represented by Loftus & Eisenberg, Ltd. ("L&E"), of Chicago, Illinois, the same lawyers who also represented certain Investor Plaintiffs in the JJMT litigation discussed above) (the "Claimant Investors"), jointly reached a settlement with the Law Firm that will result in a payment of $1.5 million to the Estate. A critical component of this settlement is the Receiver's agreement to keep the identity of the Law Firm strictly confidential, so the Receiver must keep her public comments about this settlement general and brief.

the Law Firm represented 1inMM for approximately one year. The Claimant Investors asserted—in private correspondence with the Law Firm as well as its malpractice insurer—that the Law Firm is liable for their losses on theories of malpractice, negligence and aiding and abetting the 1inMM Ponzi Scheme. They threatened legal action against the Law Firm if the parties did not settle. Although the Receiver did not threaten to sue the Law Firm, the Law Firm opened negotiations with the Receiver about the Claimant Investors' potential litigation, as the Law Firm

made clear that any settlement must include a bar order enjoining any similar actions against it. Discussions between the Law Firm, its insurer and the Claimant Investors continued for the better part of a year. The parties eventually agreed to mediate before Bruce Friedman, a JAMS neutral located in Los Angeles. The mediation with Mr. Friedman took place in Los Angeles on March 15, 2023, and was successful.

The essential terms of the settlement are that the Law Firm will pay $1.5 million to the Estate to settle both the Claimant Investors' asserted claims as well as any claims that the Estate may have against the Law Firm, in exchange for mutual general releases and a bar order. The bar order would enjoin any person or entity from commencing or continuing any claim against the Law Firm arising out of or relating to the 1inMM Ponzi Scheme. And, as with the JJMT-related settlements discussed above, because the Claimant Investors have agreed that the entire amount of the settlement consideration should be paid to the Estate for the benefit of all creditors, the Receiver agreed to seek approval to pay certain negotiated amounts to L&E, as counsel for the Claimant Investors, in recognition of their assistance in creating a common fund in, and for making a substantial contribution to, the Estate.

During the Second Quarter 2023, counsel for the Receiver, the Claimant Investors and the Law Firm worked on drafting the settlement agreement and related documentation. The Receiver expects to file a motion (under seal) to approve the settlement with the Law Firm during the third quarter of 2023.

### 3. *Settlement with the Professional Services Firm*

During the Second Quarter 2023, the Receiver reached a settlement with the Professional Services Firm which, previously worked with 1inMM. The parties eventually agreed to a mediation, which took place on May 3, 2023 before Judge Schenkier of JAMS. This mediation was successful as well. As part of the settlement, it was critical to the Professional Services Firm that the Receiver keep its identity confidential, and that she agree not to disclose any of the settlement's specific financial terms in a quarterly report. Rather, the Receiver will disclose the details of

this settlement in a motion for its approval, which she expects to file in the third quarter of 2023. During the Second Quarter 2023, counsel for the Professional Services Firm worked on the basic settlement documentation.

### B. Forensic Accounting Background and Update

Throughout the duration of the Ponzi scheme, 1inMM engaged in tens of thousands of transactions totaling over $2 billion (receipts and disbursements). As there were no accounting records, the Receiver has had to reconstruct 1inMM's transaction history from scratch. To do so has required a continuous forensic accounting analysis involving the review of over 2,965 bank statements and encompassing over 24,800 transactions, to date. The Receiver and her team continue to analyze additional records as she uncovers more detail behind the Ponzi scheme and identifies other potential sources of recovery.

The forensic accounting analysis has been a fundamental element to navigating the best path towards maximizing the estate's recovery. It has provided the foundation for determining who may be liable to the Estate for receiving fraudulent transfers, identifying previously unknown assets and obtaining information about 1inMM's investors.

During the Second Quarter 2023, the Receiver and her team obtained additional records from a series of sub-aggregators – investment feeder funds that invested into other aggregators – which they then had to analyze. This process has helped identify both net winners and net losers, and will thus facilitate the recovery of additional dollars and assist the Receiver's team for the claims process.

The Receiver believes her and her team are in the final phase of the forensic accounting. Nearly all transactions of importance are believed to have been mapped, and the Receiver has initiated efforts to begin reconciling and verifying amounts invested by certain investors. This will assist with the investor claims process that is

anticipated to take place later on in the receivership.[3]

## C. Current and Pending Settlements with Transfer Recipients and Net Winners

Through the Receiver's forensic accounting, the Receiver has identified investors who were significant net winners (receiving payments far in excess of the amounts they invested) as well as various persons and entities who were transferred very large sums from 1inMM but do not appear to have been investors in the 1inMM Ponzi scheme. By identifying these recipients, the Receiver has been able to determine potential fraudulent transfers to both investors and non-investors alike, thereby increasing the pool of potential recovery to the Estate. Settlements that the Receiver reaches with such transferees have been very significant estate assets. The Receiver and her professional staff have, therefore, devoted considerable time and attention to reviewing and analyzing tens of thousands of banking transactions and associated records associated with 1inMM and Horwitz to identify those persons and entities who may have received transfers that are subject to avoidance and recovery.

### 1. Prior Settlements

As has been previously reported, the Receiver has entered into a number of settlements with net winners and various persons and entities who may have profited from the 1inMM scheme. These prior settlements, separate from those discussed in Section I. A. Settlement of JJMT-Related Claims above, include Susan Kozlowski who agreed to pay $300,000 to settle the Estate's claims, and James Dainard, who agreed to pay $353,034.17 to settle the Estate's claims. Further detail about these settlements can be found in the Receiver's prior quarterly report. The Estate received the settlement payment from Ms. Kozlowski on January 31, 2023. The Estate

---

[3] The Receiver will, at the appropriate time, propose a claims reconciliation, allowance and payment process for the Court's consideration and approval.

received the settlement payment from Mr. Dainard on March 15, 2023

### 2. *Other Net Winners and Settlement Negotiations*

As of this writing, the Receiver and her team have identified approximately 100+ net winners from the 1inMM Ponzi scheme. The Receiver has been reviewing the financial details of these identified net winners and anticipates initiating settlement conversations and potentially issuing settlement demand letters to some of these newly identified net winners.

Exact details surrounding the negotiations of these transfers, while ongoing and in order to not jeopardize these good-faith discussions, will remain confidential from public filings. However, once a settlement is reached, the Receiver will petition the Court to approve any agreement. Further, should the Receiver determine that a lawsuit need be filed to recoup fraudulent transfer monies, the Receiver will provide additional information in future reports.

### D. Asset Updates

In addition to the cash on hand detailed in paragraph II.C. (below), the receivership assets, not including litigation claims, currently consist of: (1) Rogue Black, LLC ("Rogue Black"), (2) LayJax Ventures, LLC ("LayJax"), (3) investments made into sixteen entities controlled by Jacob Wunderlin, a principal of JJMT (the sixteen entities are referenced as the "Additional Investments") and (4) investments made in potentially eight additional films. The updated details to each of these is outlined below.

### 1. *Rogue Black*

Rogue Black was a film finance and production company in which Horwitz owned a membership interest and invested using 1inMM funds. Ultimately, 1inMM invested approximately $20 million with Rogue Black, which went on to produce and complete a total of eight films (collectively, the "Produced Films"). The Receiver continues to collect on monies owed to Rogue Black in relation to the Produced Films and pursue monies that are owed but have not yet been paid.

### a.   *Payment Dispute and Demand for Arbitration*

Through an investigation, it was discovered that Rogue Black is owed a significant amount of money related to distribution rights on one of its films. The Receiver attempted to resolve the issue through discussions with the relevant parties. However, when it became apparent those discussions were no longer making progress, the Receiver initiated a demand for arbitration as granted under the acquisition agreement entered into by the relevant parties. The Receiver decided it was best to assign the legal work associated with this project to Katten Muchin Rosenman LLP lawyers resident in its Century City office who practice in the area of entertainment law.

An arbitrator has been selected and the first arbitration management conference with the arbitrator was scheduled for July 17, 2023. Given the preliminary phase of the arbitration, and to allow for good faith negotiations to continue, the Receiver is not ready to publicly disclose additional details but will provide updates in future reports as warranted.

### 2.   **LayJax**

LayJax is an angel investment company which invested in early startup business ventures. Using 1inMM funds, Horwitz caused LayJax to invest $2.5 million with twelve separate startup business ventures that LayJax had sourced. The businesses in which LayJax invested are broad and diverse.

### a.   *Update on Recovery Potential*

As previously reported, only two or three of LayJax's twelve investments hold a moderate chance of producing a recovery. One investment, made with a company that sells skincare treatments, had been acquired on October 21, 2022. A second company, a canned adult beverage company, was recently acquired on May 20, 2023. While the skincare treatment investment brought in a sizeable recovery to the estate – approximately $450,000 – the recovery from the canned adult beverage company is much more modest. With only a 0.889 percent ownership, the

receivership estate is anticipated to initially receive approximately $40,000 from the initial purchase price of the canned adult beverage company. Over the next few years, there are additional yearly earn-out distributions that may potentially add up to a further $130,000. These future earn-out distributions are dependent upon future sales growth and may be difficult to fully exploit.

The Receiver continually monitors each investment for progress, as well as for potential opportunities to generate recoveries. Additional updates will be provided as new or meaningful activity occurs.

### 3. The Additional Investments

As a part of the Receiver's forensic accounting analysis, the Receiver identified investments of more than $5.6 million made by ZJH Enterprises, LLC ("ZJH") or 1inMM into Additional Investments, sixteen (16) investment vehicles. ZJH's sole source of funding came from 1inMM. The entities comprising the Additional Investments are each investment vehicles made for the sole purpose of investing into third party start-up companies. Importantly, however, the Additional Investments are all managed or controlled by a principal of one of the aggregators. On September 8, 2022, the Receiver's professional staff issued a letter to the managing member requesting various documents such as financial statements, agreements, and other supporting documents relating to the Additional Investments.

In reviewing the production of records from this request, the Receiver discovered that ZJH was the largest investor in the Additional Investments. According to bank records, ZJH invested over $5.6 million ("Invested Funds") into the Additional Investments. Additional questions remain, compelling the Receiver to continue her investigation into these entities and make additional document and information requests. With the forensic accounting project wrapping up and achieving multiple settlements, the Receiver is now able to focus on making further progress on this potential asset.

### 4. Additional Film Investments

As a result of the Receiver's forensic accounting investigation, the Receiver and her staff identified five additional entities that received more than $13.1 million from 1inMM. These entities are believed to have funded the production of an additional eight films. The Receiver continues to investigate these entities, films and the best avenue to efficiently maximize the recovery from these investments. The Receiver has begun to shift more resources to this potential asset and, pending additional investigation, continues to believe it prudent not to include any additional details on these entities and films in this report so as not to impede, jeopardize or hamper her investigation.

### E.   Potential Litigation and Engagement of Conflicts Counsel

As noted in previous reports, the Receiver moved the Court to authorize her to engage Raines Feldman as conflict counsel, and the Court granted that motion on January 3, 2023. [ECF #166]

The Receiver continues to explore identifying potential causes of action whereby the Receiver may seek to recover funds or assets for the benefit of the estate. To that end, the Receiver has issued subpoenas to investigate potential litigation claims. A subpoena respondent filed a motion to quash, which is now fully briefed and awaiting decision by Magistrate Judge Patricia Donahue. [ECF #206]

## II.   ACCOUNTING OF RECEIPTS AND DISBURSEMENTS

Attached as Exhibit "A" is a copy of the Standard Fund Accounting Report. Below is a summary of the cash receipts and disbursements from the estate on a cash accounting basis.

### A.   Cash Receipts

During the Second Quarter 2023, the receivership estate had cash receipts of $21,517.41. These cash receipts were comprised of (i) $17,842 related to a Rogue Black film receivable, and (ii) $3,676 related to interest income.

### B.   Cash Disbursements

During the Second Quarter 2023, cash disbursements totaled $738,500. These

disbursements were comprised of (i) $343,662 of attorney's fees, (ii) $363,724 of Receiver's fees, (iii) $16,672 of consulting fees for Rogue Black, (iv) $7,134 of travel costs for mediation, (v) $4,020 of court and research costs, (vi) $3,110 of tax and related fees, and (vi) $273 of bank and other miscellaneous charges.

### C. Cash on Hand

As of June 30, 2023, the receivership estate held an ending balance of $692,973.

## III. CONCLUSION

The Receiver respectfully requests that the Court grant the motion to approve this Report and award the related relief requested therein.

Dated: August 2, 2023                    Respectfully submitted,

                                         By:    /s/*Michele Vives*
                                                Michele Vives, Receiver

# PROOF OF SERVICE

**STATE OF ILLINOIS, COUNTY OF COOK**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Cook, State of Illinois. My business address is 525 W. Monroe St., Chicago, IL 60661.

On August 2, 2023, I served the following document(s) described as:

**QUARTERLY REPORT OF RECEIVER MICHELE VIVES (SECOND QUARTER 2023)**

as follows:

**[ ]    BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Katten Muchin Rosenman LLP practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**[ ]    BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused the document(s) to be sent from e-mail address terence.banich@katten.com to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**[ ]    BY OVERNIGHT MAIL (FedEx):** I enclosed said document(s) in an envelope or package provided by FEDEX and addressed to the persons at the addresses listed above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FEDEX or delivered such document(s) to a courier or driver authorized by FEDEX to receive documents.

**[ ]    BY PERSONAL SERVICE:** I caused said document to be personally delivered the document(s) to the person at the addresses listed above by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office.

**[X]    E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.

Executed on August 2, 2023, at Winnetka, Illinois.

*/s/Terence G. Banich*
Terence G. Banich