UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No.  2:21-cv-2927-CAS-PDx                              Date:  August 11, 2023

Title     *Securities and Exchange Commission v. Zachary J. Horwitz, et al.*

Present: The Honorable:  Patricia Donahue, United States Magistrate Judge

|  Isabel Verduzco  |  N/A  |
|---|---|
|  Deputy Clerk  |  Court Reporter / Recorder  |

| Attorney Present for Receiver: | Attorney Present for Movant: |
|---|---|
| N/A | N/A |

Proceedings:     **Order Granting Non-Party City National Bank's Motion to Quash Subpoena [Dkt. No. 195]**

Before the Court is non-party City National Bank's ("CNB") Motion to Quash the Subpoena served by Receiver Michele Vives ("Receiver") on CNB, in her capacity as Receiver for 1inMM Capital, LLC ("1inMM") and certain affiliated entities (collectively, "1inMM Related Clients").  [Dkt. No. 195.]

The Court has read and considered all of the documents filed [Dkt. Nos. 195-198, 202-203] and the arguments of counsel at the hearing.  For the reasons set forth herein, the Motion to Quash the Subpoena is granted.

I.     Background

On April 5, 2021, the Securities and Exchange Commission ("SEC") initiated an action against 1inMM and Zachary Horwitz ("Horowitz") alleging a Ponzi scheme in violation of federal securities laws.  [Dkt. No. 1.]  On January 14, 2022, at the SEC's request, the Court appointed Michele Vives as permanent receiver of 1inMM and 1inMM Related Clients.  [Dkt. No. 70.]  The Receivership Order granted the Receiver "full powers of an equity receiver," to identify and marshal all assets that may be available to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:21-cv-2927-CAS-PDx                                      Date:  August 11, 2023

Title      _Securities and Exchange Commission v. Zachary J. Horwitz, et al._

compensate de-frauded investors.  [_Id._ at 2.[1]]  The Receiver was given authority "to investigate and, where appropriate, to institute, pursue, and prosecute all claims and causes of action of whatever kind and nature that may now or hereafter exist as a result of the activities of present or past employees or agents of Defendant 1inMM, and its subsidiaries and affiliates." [_Id._ at 4.]

On February 22, 2022, the Court authorized the Receiver to retain Katten Muchin Rosenman LLP to assist her in discharging her duties under the Receivership Order.  [Dkt. Nos. 71, 76.]  Over the course of 2022, the Receiver sent five letters to CNB requesting account records of the 1inMM Related Clients.  [Dkt. Nos. 195-1, Joshua Hamilton Declaration ("Hamilton Decl.") at ¶¶ 2-7.]  CNB responded by providing over 2,000 documents, including monthly bank statements, copies of checks, wire transfer information, and email communications between CNB and Horwitz, consisting of over 9,100 pages.  [Hamilton Decl. at ¶¶ 8-9; Dkt. No. 203-2, Declaration of Crystal Ewell ("Ewell Decl.") at ¶¶ 5-7.]

On December 7, 2022, the Receiver moved for authorization to retain Raines Feldman LLP as conflicts counsel to advise her with respect to a "small number" of cases that "present legal or business conflicts for Katten." [Dkt. Nos. 156; 156-2.]  On January 3, 2023, the Court granted the motion authorizing Raines Feldman, upon the Receiver's instruction, to "pursue a claim or cause of action in connection with a Conflict Matter."  [Dkt. No. 166 at 3.]

On January 11, 2023, after CNB refused to enter into a tolling agreement, the Receiver served CNB with the Subpoena containing 122 document requests including subparts.  [Hamilton Decl. at ¶ 11, Ex. 6; Dkt.

---

[1] The Court uses the page numbers inserted on the pleadings by the electronic docketing system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:21-cv-2927-CAS-PDx                           Date:  August 11, 2023

Title       _Securities and Exchange Commission v. Zachary J. Horwitz, et al._

No. 197-1.]   The requested information includes CNB's banking policies and procedures and "Red Flag" alerts.  [_See id_. at 19-21.]

### A.  The Account Agreements Between the 1inMM Related Clients and CNB

1inMM and its subsidiaries and affiliates opened and maintained several bank accounts with CNB from 2012 to 2019.  [Dkt. Nos. 195 at 8; 195-9, Declaration of Michael Mallon ("Mallon Decl.") at ¶ 2; 203-2, Ewell Decl. at ¶ 4.]  To open each account, the 1inMM Related Client executed agreements acknowledging receipt of and an agreement to be bound by the terms of CNB's Account Agreement and Disclosures ("Account Agreement") and to further amendments or updates thereto.  [Mallon Decl. at ¶¶ 2, 4-5, Dkt. Nos. 195-10 – 195-15, 195-18 – 195-26.]  The 1inMM Related Clients also agreed to be bound by CNB's Treasury Management Services Disclosure and Agreement ("TMSDA") with regard to any of CNB's Treasury Management Services they used.  [Dkt. Nos. 195-16, 195-17.]

Since the 1inMM Related Clients began banking at CNB, they agreed to resolve any disputes in accordance with the alternative dispute resolution ("ADR") provisions of the Account Agreement and TMSDA, as applicable.  [Mallon Decl. at ¶¶ 2-6; Dkt. Nos. 195-10 – 195-17.]  In total, the 1inMM Related Clients executed six account opening contracts and two Treasury Management enrollment contracts.  [Mallon Decl. at ¶¶ 4-6.]  Each contract incorporated an agreement to be bound by the corresponding ADR provisions in the then-effective Account Agreement and TMSDA.  [Mallon Decl. at ¶¶ 2-24; Dkt. Nos. 195-10 – 195-26.]

The Account Agreement and TMSDA executed by the 1inMM Related Clients in August 2012 contained ADR provisions mandating that all "disputes" with CNB "be resolved by final and binding arbitration."  [Dkt. Nos. 195-18 at 59; 195-24 at 22.]  The Account Agreement and TMSDA stated that, "[i]f the amount in dispute involves more than the jurisdictional limit of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-2927-CAS-PDx                                              Date: August 11, 2023

Title      *Securities and Exchange Commission v. Zachary J. Horwitz, et al.*

the small claims court with proper venue … the dispute shall be resolved by binding arbitration." [*Id.*]  The Account Agreement also provided that, "the arbitration, including the selection of the arbitrators, shall be administered by the American Arbitration Association ("AAA") in accordance with the Federal Arbitration Act (Title 9, United States Code) or such Federal law as may be adopted hereafter and the then existing commercial arbitration rules of the AAA." [*Id.*]

The 2012 ADR provisions define "dispute" as "any disagreement between you and us that you and we are not able to resolve informally." [Dkt. Nos. 195-18 at 58; 195-24 at 22.]  A dispute includes "any claim or controversy of any kind that arises out of or is related to this *Account Agreement and Disclosures*" or the TMSDA and "includes claims based on broken promises or contracts, torts (injury caused by negligent or intentional conduct), breach of duty or any other wrongful action.  It includes statutory, common law and equitable claims." [*Id.*]

The 2013 Account Agreement provides that all disputes with CNB "will be resolved" in accordance with the 2013 Account Agreement's ADR provision, which defined "dispute" virtually the same as the 2012 Agreements.  [Dkt. Nos. 195-12; 195-19 at 46.]  For California account holders such as the 1inMM Related Clients, the 2013 Account Agreement requires that any dispute with CNB involving amounts greater than $50,000 be resolved in California state court—not in federal district court—through California's judicial reference program.  [*Id.*]

In 2016, 2019, 2020, and 2023 the Account Agreements and TMSDAs were updated; each of them requires ADR.  [Dkt. Nos. 195-20 at 50-51; 195-21 at 19; 195-22 at 19; 195-23 at 19-20.]

**B.     The Motion to Quash**

CNB contends that: (1) as CNB clients, 1inMM and the 1inMM Related Clients contracted to resolve any disputes or claims with CNB solely in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-2927-CAS-PDx                         Date: August 11, 2023

Title      *Securities and Exchange Commission v. Zachary J. Horwitz, et al.*

accordance with binding ADR provisions; (2) the Receiver, who was appointed to act on behalf of one or more 1inMM Related Clients, is bound by contracts entered into by the 1inMM Related Clients, including their contracts with CNB; and (3) the Receiver may not propound discovery on CNB through a federal subpoena because no such discovery is authorized under the agreed-upon alternative dispute resolution. [Dkt. No. 195.]

The Receiver argues that there is no underlying dispute; the Receiver does not stand in the shoes of Horwitz or MJLZ Trust; legal process, including a subpoena, is excepted from ADR provisions; there is no evidence of assent to arbitration provisions; the subpoena is unrelated to the TMSDAs; multiple courts have declined to compel a receiver to arbitrate; and judicial economy and equity conflict with arbitration. [Dkt. No. 202.]

CNB replies that the Receiver has raised a dispute with it; the specific documents requested by the Receiver are irrelevant to her duty to abide by her ADR obligations; the legal process clause does not impact the ADR provisions; none of the ADR provisions allow discovery in federal court; and the Receiver's request to reject the 1inMM Related Clients' contracts is without legal basis. [Dkt. No. 203.]

## II.   Legal Standard

In light of concern for orderly administration in cases involving multiple parties and complex transactions, a district court has "broad powers and wide discretion to determine the appropriate relief in an equity receivership." *See Securities and Exchange Commission v. Lincoln Thrift Ass'n,* 577 F.2d 600, 606 (9th Cir. 1978); *see S.E.C. v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986).

A court may quash or modify a subpoena if the subpoena: (1) fails to allow a reasonable time for compliance; (2) requires a person who is not a party to travel more than 100 miles from where the person resides; (3) requires disclosure of privileged or protected matter; or (4) causes undue

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:21-cv-2927-CAS-PDx                                       Date:  August 11, 2023

Title       *Securities and Exchange Commission v. Zachary J. Horwitz, et al.*

burden.  Fed. R. Civ. P. 45(d)(3)(A).  A party may move to quash a subpoena when the subpoena infringes upon the movant's legitimate interests.  *See U.S. v. Tomison*, 969 F.Supp. 587, 596 (E.D. Cal. June 30, 1997).  The movant has the burden of persuasion under Rule 45(d)(3), but the party issuing the subpoena must in turn demonstrate that the discovery sought is relevant and material to claims in the proceedings.  *See Chevron Corp. v. Donziger*, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013).

**III.    Discussion**

    **A.    The Receiver is Bound by the ADR Provisions in the 1inMM Related Clients' Account Agreements with CNB**

The Supreme Court has long held that a receiver stands in no better place than the receivership entity for which the receiver is appointed.  *See Deitrick v. Standard Sur. & Cas. Co. of New York*, 303 U.S. 471, 479 (1938).  A receiver does not voluntarily step into the shoes of the [receivership entity]; the receiver is thrust into those shoes and "any defense good against the [receivership entity] is good against the receiver."  *See F.D.I.C. v. O'Melveny & Myers,* 61 F.3d 17, 19 (9th Cir. 1995).  Generally, a receiver "has capacity to bring only such actions as could have been brought by the entity or individual whose property is in a receivership, and thus may sue only to redress injuries to the entity in [the] receivership."  *Mosier v. Stonefield Josephson, Inc.,* 815 F.3d 1161, 1166 (9th Cir. 2016).

Receivers are bound by the contractual commitments made by the entities for whom they act. S*ee Sharp v. Duff & Phelps, LLC,* No. CV 20-8069-DSF (MRWx), 2021 WL 8154951, at *1 (C.D. Cal. Jan. 28, 2021) (court-appointed receiver stands in the shoes of the receivership entity and is bound by the terms of its contract).  The 1inMM Related Clients entered into multiple Account Agreements and TMSDAs with CNB that contained binding arbitration agreements.  [Mallon Decl. at ¶¶ 2-24; Dkt. Nos. 195-10 through 195-26.]  They are bound by the mandatory ADR provisions that preclude them from litigating any disputes, controversies, or disagreements with CNB

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-2927-CAS-PDx            Date: August 11, 2023

Title     *Securities and Exchange Commission v. Zachary J. Horwitz, et al.*

in federal court. [*Id.*] The Receiver stands in their shoes and is equally bound by these arbitration agreements, which were in place prior to the Receiver's appointment, even though she did not sign them or manifest assent. Absent defenses including *in pari delicto*, which the Receiver does not allege, a receiver is subject to the terms the receivership entity contracted. *See F.D.I.C.,* 61 F.3d at 19.

The Receiver cites *Winkler v. McCloskey*, No. CV 21-5757-FMO (AFMx), 2022 WL 4355308 (C.D. Cal. Sept. 6, 2022)[2] in support of her argument that she is not bound by the arbitration agreements. *Winkler*, like the instant case, is ancillary to an SEC enforcement action in which the court appointed a receiver for defendants alleged to have operated a Ponzi scheme. The third parties sued by the receiver moved to compel arbitration based on their arbitration agreements with the receivership entities. The district court denied the motion based on *In re EPD Inv. Co, LLC*, 821 F.3d 1146 (9th Cir. 2016). *Winkler*, 2022 WL 4355308, at * 3. *In re EPD*, 821 F.3d at 1148-49, involved a Ponzi scheme in which a bankruptcy trustee brought claims to avoid fraudulent transfers under federal and state law against the debtors' attorney and related trust, who sought to compel arbitration based on their arbitration agreements with the debtors. The Ninth Circuit affirmed the district court's denial of the motion to compel arbitration, first explaining that because the cause of action brought by the trustee was a "core bankruptcy proceeding," the bankruptcy court had discretion to weigh competing bankruptcy and arbitration interests at stake in determining whether to compel arbitration. *Id.* at 1150-51. Arbitration may be denied in order to efficiently keep all bankruptcy matters together in the bankruptcy court and protect against "piecemeal litigation." *Id.*; *See* 28 U.S.C. § 157.

The court then explained why the bankruptcy trustee was not bound by the arbitration agreements:

---

[2] This case is on appeal to the Ninth Circuit. *Winkler v. McCloskey*, Court of Appeal Docket 22-55856. It was argued and submitted on July 18, 2023.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-2927-CAS-PDx         Date: August 11, 2023

Title    *Securities and Exchange Commission v. Zachary J. Horwitz, et al.*

> The Trustee brought fraudulent transfer claims under 11 U.S.C. §§ 544 and 548, and California Civil Code section 3439.04. [Debtors' counsel] asserts that all of these claims are subject to the arbitration agreements that he signed with the debtors. But, under § 544, the Trustee is empowered only to bring claims that might be brought "by a creditor holding an unsecured claim." 11 U.S.C. § 554(b)(1). And California Civil Code section 3439.04(a)(1) permits a creditor to bring a claim for fraudulent transfer that a debtor made with intent to hinder, delay, or defraud a creditor of the debtor. *For the purpose of these claims, the Trustee stands in the shoes of the creditors, not the debtors.* Only the parties to an arbitration agreement are bound by it. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 625, 105 S. Ct. 3346, 87 L.Ed.2d 444 (1985). The creditors did not sign the arbitration clauses at issue here. As a result, arbitration agreements signed by the debtors cannot apply to claims under § 544 or California Civil Code section 3439.04. *See Allegaert v. Perot*, 548 F.2d 432 (2d Cir.1977) (so holding). As to these claims, then, the court had no discretion to allow arbitration.

*Id.* at 1152 (emphasis added).

In *Winkler*, 2022 WL 4355308, at * 3, the court stated that the *In re EPD* holding is not limited to the authority of a bankruptcy trustee as defined by the Bankruptcy Code, because the Ninth Circuit addressed the fraudulent transfer claims under both federal bankruptcy law and California law and held that since "[t]he creditors did not sign the arbitration clause at issue," the "arbitration agreements signed by the debtors cannot apply to claims under [11 U.S.C.] § 544 or California Civil Code [§] 3430.04." *Id.* (citing *In re EPD*, 821 F.3d at 1152.).

However, the *Winkler* court did not address the predicate – that the bankruptcy trustee stands in the shoes of the creditors, not the debtors. The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-2927-CAS-PDx             Date: August 11, 2023

Title     *Securities and Exchange Commission v. Zachary J. Horwitz, et al.*

equity receiver in this case stands in the shoes of the receivership entities – not of their creditors. As discussed above, it is well established that "[a] receiver occupies no better position than that which was occupied by the person or party for whom he acts . . . and any defense good against the original party is good against the receiver." *F.D.I.C.,* 61 F.3d at 19. *See Gill v. Blessing,* No. SACV 13-0132-AG (JPRx), 2014 WL 12573667, at *3 (C.D. Cal. Oct. 6, 2014) (court-appointed receiver in Ponzi scheme action brought by SEC stands in the shoes of the receivership entities, not other creditors). The Receiver does not point to any statute equivalent to 11 U.S.C. § 544(b)(1) that authorizes equity receivers to step into the shoes of the receivership entities' creditors and pursue claims on their behalf. *See Mosier v. HSBC Bank USA, N.A.*, No. CV 10-3669-PSG(Ex), 2010 WL 5422550, at *4 (C.D. Cal. Dec. 28, 2010) (finding no basis in federal receiver statute, 28 U.S.C. § 754 to support the view that appointment of a federal receiver may negate terms of a contract entered by the receivership entity). "[T]he authority of a court-appointed receiver is defined by the entity or entities in the receivership." *Id*. In sum, the Receiver is bound by the 1inMM Related Client's Agreements to arbitrate disputes or claims arising from their Account Agreements and TMSDAs with CNB.

      The Receiver argues that she does not stand in Horwitz's or MJLZ Trust's shoes and thus is not bound by any ADR provision. [Dkt. No. 202 at 5, 9.] CNB responds that the Receiver subpoenaed CNB as the permanent receiver of "1inMM Capital, LLC … and its subsidiaries and affiliates," whose sole relationship with CNB is that of a bank and clients who have agreed to resolve their disputes through ADR. As such, the Receiver is permitted to conduct discovery only on behalf of the receivership entities and must comply with those entities' mandatory ADR agreements. [Dkt. No. 203 at 6.] The Receiver's claim that she does not act for Horowitz or MJLZ Trust, for which she also requested documents, does not change that result because they both executed binding ADR agreements. [Mallon Decl. at ¶ 4, Dkt. Nos. 195-15, 195-19.] *See McIntire v. China MediaExpress Holdings, Inc.*, 252 F. Supp. 3d 328, 331 (S.D.N.Y. 2017) ("The [SEC] Receiver, because he stands in CCME's shoes, does not have a subpoena power that exceeds that of CCME. … The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-2927-CAS-PDx                  Date: August 11, 2023

Title     *Securities and Exchange Commission v. Zachary J. Horwitz, et al.*

Special Receiver may not use his status as a court-appointed Special Receiver to flout the primacy of the arbitrator or to get a head-start on pursuing discovery of the claims that are subject to arbitration.") Like the receiver in *McIntire*, the Receiver here does not have discovery powers or rights greater than those of any 1inMM Related Client on whose behalf she purports to act.[3]

### B. The ADR Provisions are Triggered Because a Dispute is Raised

The FAA reflects a liberal and emphatic federal policy favoring alternative dispute resolution. *See KPMG LLP v. Cocchi,* 565 U.S. 18, 21 (2011); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (The FAA reaffirms the "fundamental principal that arbitration is a matter of contract."). Under the FAA, a court's role is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator. *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000). An agreement to arbitrate is a matter of contract and courts must look to the express contract terms. *See id.* at 1130. Parties that agree to be governed by the American Arbitration Association in a dispute demonstrate clear and unmistakable intent to arbitrate arbitrability. *See Brennan v. Opus Bank,* 796 F.3d 1125, 1130 (9th Cir. 2015). A contract requiring judicial reference is no different. *See Carr Bus. Enter., Inc. v. City of Chowchilla*, 166 Cal. App. 4th 25, 28 (2008) ("A judicially ordered reference to alternative dispute resolution pursuant to section 638 is a matter of contract between the parties.").

---

[3] When contracting parties stipulate that disputes will be submitted to arbitration, "they relinquish the right to certain procedural niceties which are normally associated with a formal trial" such as the right to pre-trial discovery. *See Portfolio Hotels, LLC* v. 1250 N. SD, LLC, No. CV 21-314-BAS (MSB), 2021 WL 4124224, at *7 (S.D. Cal. Sept. 9, 2021) (quoting *Burton v. Bush*, 614 F.2d 389, 390 (4th Cir. 1980)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:21-cv-2927-CAS-PDx                                          Date:  August 11, 2023

Title        *Securities and Exchange Commission v. Zachary J. Horwitz, et al.*

Courts frequently compel to arbitration, claims brought by receivers who stand in the shoes of receivership entities that are bound by an agreement to arbitrate.  *See, e.g., Seaman v. Priv. Placement Cap. Notes II, LLC*, No. CV 16-00578-BAS (DHB), 2017 WL 1166336, at *4, *7 (S.D. Cal. Mar. 29, 2017) (granting motion to compel SEC receiver to arbitrate fraudulent transfer claim based on receivership entity's agreement to arbitrate); *Capitol Life Ins. Co. v. Gallagher*, 47 F.3d 1178, 1995 WL 66602, at *2 (10th Cir. 1995) ("It is further undisputed that Gallagher, *as GSL's receiver*, may be compelled to arbitrate because a receiver 'stands in the shoes' of the insolvent insurance company." (emphasis in original)); *U.S. Small Business Admin. v. Coqui Capital Mgmt., LLC*, 2008 WL 4735234, at *2 (S.D.N.Y. Oct. 7, 2008) (unpublished) ("[A] receiver's ability to litigate claims in federal court is limited by any valid agreement, previously executed by the receivership entity, that mandates arbitration."); *Moran v. Svete*, 366 F. App'x 624, 630 (6th Cir. 2010) (Receiver is bound to arbitrate to the same extent that party would have been absent the appointment of a receiver).

Any claim by the Receiver against CNB would necessarily relate to the services CNB rendered to the 1inMM Related Clients.  Those services are all governed by the Account Agreements and TMSDAs between CNB and the 1inMM Related Clients.  The Receiver "steps into the shoes" of the 1inMM Related Clients and assumes all their rights and obligations — including their obligation to resolve their disputes with CNB in accordance with the mandatory ADR provisions. *See Eberhard v. Marcu*, 530 F.3d 122, 132 (2nd Cir. 2008) ("[T]he authority of a [SEC] receiver is defined by the entity or entities in the receivership. [T]he plaintiff in his capacity of receiver has no greater rights or powers than the corporation itself would have." (internal quotations omitted)).  Once the moving party has met this initial burden to show that the agreement exists and that its terms bind the other party, the party opposing arbitration bears the burden of establishing that the arbitration agreement does not apply.  *See Bernsley v. Barclays Bank Del.*, No. CV 22-7592-SVW (MAA), 2023 WL 2291251, at *2 (C.D. Cal. Feb. 24, 2023).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No.  2:21-cv-2927-CAS-PDx                               Date:  August 11, 2023

Title      *Securities and Exchange Commission v. Zachary J. Horwitz, et al.*

      The Receiver argues that the Subpoena does not trigger the ADR provisions because "there is no present or actual dispute between the Receiver and CNB [and] CNB's fear of a future dispute is not a legitimate basis for CNB to evade the Subpoena."  [Dkt. No. 202 at 10.]  CNB responds that all of the ADR provisions in the Account Agreements and TMSDAs broadly define the disputes subject to ADR to include "any disagreement," "any claim or controversy of any kind" including "statutory, common law and equitable claims," and are not limited to lawsuits.  [Dkt. Nos. 195 at 10-12; 195-10 – 195-17; 203 at 4.]  The Receiver has retained conflicts counsel to pursue "potential claims" on a "small number of cases" where her prior counsel has a conflict, indicating that the Receiver may currently be adverse to CNB.  [Dkt. Nos. 203 at 4; 156.]  The Receiver's new conflicts counsel before serving the Subpoena, informed CNB's counsel that the Receiver was conducting an investigation, requested that CNB enter into a tolling agreement, and notified CNB of its obligation to preserve "all documents, records, and things relating to the 1inMM and Horwitz accounts."  [Dkt. No. 203 at 5; Hamilton Decl., Ex. 6.]  Further, the Receiver's invoices reflect research into potential claims against CNB.  [Dkt. No. 203-1, Jamie Marr Declaration ("Marr Decl.") at ¶ 4, Ex. 4.]  Additionally, the documents requested in the Subpoena suggest that the Receiver seeks information regarding whether CNB had knowledge of, or was complicit in, the Ponzi scheme – in other words, that the Receiver is investigating potential claims against CNB.  Consequently, there is a dispute between the Receiver and CNB, such that the ADR provisions apply.

      The Receiver further argues that legal process (a subpoena) is excepted from the ADR provisions.  [Dkt. No. 202 at 6.]  CNB responds that the Account Agreements' recognition that CNB "may accept and comply with legal process" initiated by a non-client is irrelevant to whether CNB is obligated to respond to a Subpoena served by a client who agreed to ADR.  [Dkt. No. 203 at 7.]  The Court agrees with CNB.  The parties' arbitration agreements are not waived or invalidated by the "legal process" provisions in the Account Agreements.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. 2:21-cv-2927-CAS-PDx | Date: August 11, 2023 |

Title    *Securities and Exchange Commission v. Zachary J. Horwitz, et al.*

The Receiver cites *Sifuentes v. Dropbox, Inc.*, No. CV 20-07908-HSG, 2022 WL 2673080, at *4 (N.D. Cal. June 29, 2022) in support of her argument that CNB did not provide evidence that any account holder assented to an applicable arbitration provision. [Dkt. No. 202 at 13.] The court in *Sifuentes* denied a motion to compel arbitration where defendant failed to show that the user had notice of the later terms of service, which added an arbitration provision. Unlike *Sifuentes*, the 1inMM Related Clients at all relevant times were bound by a mandatory ADR provision. While CNB occasionally updated the ADR provisions in the Account Agreements and TMSDAs, each of them requires ADR. [Mallon Decl. at ¶¶ 2-24; Dkt. Nos. 195-10 – 195-26.]

## IV.    Conclusion

For the reasons stated above, CNB's Motion to Quash the Subpoena is granted.

IT IS SO ORDERED.: