1

**RAINES FELDMAN LITTRELL LLP**
Kathy Bazoian Phelps (State Bar No. 155564)
*kphelps@raineslaw.com*
1900 Avenue of the Stars, Suite 1900
Los Angeles, California 90067
Telephone: (310) 440-4100
Facsimile: (310) 691-1943

2

3

4

5

*Counsel for Michele Vives,*
*Permanent Receiver*

6

7

8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTRICT OF CALIFORNIA

10

11

SECURITIES AND EXCHANGE
COMMISSION,

Case No.: 2:21-cv-02927-CAS-PD

12

13

            Plaintiff,

**MEMORANDUM OF POINTS
AND AUTHORITIES IN
SUPPORT OF RECEIVER'S
MOTION FOR REVIEW OF
MAGISTRATE JUDGE'S
DISCOVERY ORDER (DKT. 250)
PURSUANT TO FED. R. CIV. P.
72**

14

15

      v.

16

ZACHARY J. HORWITZ, *et al*.,

17

            Defendants.

18

19

20

Date:     September 25, 2023
Time:     10:00 a.m.
Dept.:    Courtroom 8D
Place:    United States District Court
              350 West 1st Street,
              Los Angeles, CA 90012

21

22

23

Hon. Christina A. Snyder
Hon. Patricia Donahue

24

25

26

27

28

10025452.4

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................1

II.  STATEMENT OF FACTS...............................................3

     A.   Procedural History ................................................3

     B.   Background ............................................................4

          1.   Summary of ADR Provisions in Receivership Entities' Account Agreements ...........................5

          2.   The Applicable Account Agreements by Receivership Entity.........................................9

III. ARGUMENT ....................................................................13

     A.   Standard for Review.............................................13

     B.   The Court Has Broad Authority...........................13

     C.   The Discovery Order's Factual Findings Were Clearly Erroneous ..............................................14

          1.   The Discovery Order Ignores the Exclusions for California Account Holders.............................14

          2.   There is No Evidence of Assent to Arbitration Provisions........................................15

          3.   The Discovery Order Improperly Found a "Dispute"......16

     D.   Legal Conclusions in Discovery Order Were Contrary to Law .19

          1.   The Receiver Can Conduct Third Party Discovery on Horwitz and MJLZ Trust ............................20

          2.   Cases Relied Upon to Find Dispute All Involve Filed Lawsuits, Not Investigatory Subpoenas ...........................21

          3.   The Appointment of the Receiver Removed the Wrongdoer from the Scene................................22

          4.   The ADR Provision Conflicts with the Receivership Statutes.......................................23

IV.  CONCLUSION .................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Akey v. Placer Cty.,*
  No. 2:14–cv–2402, 2017 WL 1831944, at *10 (E.D. Cal. May 8, 2017) ...19

*Capitol Life Ins. Co. v. Gallagher,*
  1995 WL 66602 (10th Cir. Feb. 7, 1995) ....................................................16

*Concrete Pipe and Prod. of Cal., Inc. v. Constr. Laborers Pension Trust
  for S. Cal.,*
  508 U.S. 602 (1993) ..................................................................................13

*Crispin v. Christian Audigier, Inc.,*
  717 F. Supp. 2d 965 (C.D. Cal. 2010) ......................................................13

*F.D.I.C. v. O'Melveny & Myers,*
  61 F.3d 17 (9th Cir. 1995) ........................................................................22

*Janvey v. Alguire (Alguire III),*
  847 F.3d 231 (5th Cir. 2017) .........................................................22, 23, 24

*Moran v. Svete,*
  366 F. App'x 624 (6th Cir. 2010) ..............................................................22

*Mosier v. HSBC Bank USA, N.A.,*
  No. CV 10-3669-PSG(Ex), 2010 WL 5422550, at *4 (C.D. Cal. Dec.
  28, 2010) .................................................................................................21

*Quilling v. Grand Street Trust,*
  2005 WL 1983879, *2 (W.D.N.C. 2005) ....................................................24

*Reebok Int'l v. Marnatech Enter., Inc.,*
  970 F.2d 552 (9th Cir.1992) ......................................................................14

*S.E.C. v. Bilzerian,*
  378 F.3d 1100 (D.C. Cir. 2004) .................................................................24

*S.E.C. v. Elfindepan, S.A.,*
  169 F. Supp. 2d 420, 427 (M.D.N.C. 2001) ...............................................17

*Seaman v. Priv. Placement Cap. Notes II, LLC,*
  No. 16-CV-00578-BAS-DHB, 2017 WL 1166336, at *1 (S.D. Cal. Mar.
  29, 2017) .................................................................................................21

*SEC v. Bivona,*
  2016 WL 5899288, at *3 (N.D. Cal. Oct 11, 2016) ....................................17

*SEC v. Hardy,*
  803 F.2d 1034 (9th Cir. 1986) .........................................................13, 14, 24

MP&AS ISO MOTION FOR
                                        REVIEW OF ORDER

*SEC v. Lincoln Thrift Ass'n,*
　　577 F.2d 600 (9th Cir. 1978) ........................................................................13

*Sharp v. Duff & Phelps, LLC,*
　　No. CV 20-8069-DSF (MRWx), 2021 WL 8154951, at *1 (C.D. Cal.
　　Jan. 28, 2021) ................................................................................................21

*Shearson/Am. Express, Inc. v. McMahon,*
　　482 U.S. 220 (1987) .......................................................................................23

*Sifuentes v. Dropbox, Inc.,*
　　2022 WL 2673080, at *4 (N.D. Cal. June 29, 2022) ..............................15, 16

*Smith v. Davis,*
　　953 F.3d 582 (9th Cir. 2020) .........................................................................19

*U.S. Small Bus. Admin. v. Coqui Cap. Mgmt., LLC,*
　　No. 08-CIV-0978, 2008 WL 4735234, at *2 (S.D.N.Y. Oct. 27, 2008) .....21

*UMG Recording, Inc. v. Global Eagle Entm't, Inc.,*
　　No. 14-3466, 2015 WL 12752881 at *4 (C.D. Cal. Aug. 27, 2015) ...........13

**Statutes**

28 U.S.C. § 636(b)(1)(A) .......................................................................................13

28 U.S.C. §§ 754 and 1692 ..............................................................................3, 23

California Code of Civil Procedure, § 638 ........................................................6, 7

FRCP 72(a) ..............................................................................................1, 13

FRCP 45(a)(D) .......................................................................................................19

Michele Vives, the receiver ("Receiver") for 1inMM Capital, LLC and its subsidiaries and affiliates, and over assets that are attributable to funds derived from investors or clients of Zachary J. Horwitz and 1inMM Capital, LLC, hereby files her Motion for Review of Magistrate Judge Patricia Donahue's Discovery Order [Dkt. 250] ("Discovery Order") pursuant to Fed. R. Civ. P. 72(a) and Local Rule 72-2.1 ("Motion" or "Objections").

# I.   <u>INTRODUCTION</u>

The Receiver was appointed on January 14, 2022, in part, "to investigate . . . all claims" relating to "the activities of present or past employees or agents of Defendant 1inMM, and its subsidiaries and affiliates." Order Appointing Receiver [Dkt. 70, at 1, 3].

As part of her investigation, the Receiver served a subpoena on City National Bank ("CNB") seeking third party records relating to the banking activity of the 1inMM Capital entities plus other related parties (the "Subpoena"). CNB moved to quash the Subpoena [Dkt. 195] (the "CNB Motion"), and Magistrate Judge Patricia Donahue granted the CNB Motion by order entered on August 11, 2023 [Dkt. 250] (the "Discovery Order").

The Receiver believes that errors of both fact and law are contained in the Discovery Order. She respectfully requests that the Court reverse the Discovery Order and compel CNB to comply with the Subpoena. The Receiver's Objections are summarized as follows:

1.     The Discovery Order[1] states that "The 1inMM Related Clients entered into multiple Account Agreements and TMSDAs with CNB that contained binding *arbitration* agreements." Discovery Order at 6 (emphasis added). That conclusion is incorrect and contrary to the evidence in the record.

---

[1] The Discovery Order defined "1inMM Related Clients" in an unspecified manner as "1inMM Capital, LLC and certain affiliated entities". Discovery Order at 1. Whether this definition includes Zachary Horwitz and MJLZ Trust is unclear.

Not one of the 1inMM Related Clients is subject to an arbitration provision for at least the following reasons:

a. The Account Agreements were repeatedly amended to exclude arbitration provisions for California account holders. Other Alternative Dispute Resolution ("ADR") procedures such as judicial reference are included for California accounts, but not arbitration. The Discovery Order does not distinguish between judicial reference and arbitration;

b. The 2023 Amendment (defined below) – that inserted an arbitration provision *after* the Receiver's appointment and *after* the Subpoena was served – is not binding on the Receiver. The Discovery Order improperly concludes that "these arbitration agreements, . . . *were in place prior to the Receiver's appointment*, even though she did not sign them or manifest assent." Discovery Order at 7 (emphasis added). The version of the Account Agreement applicable at the time of the Receiver's appointment (the 2020 Amendment) excluded arbitration for California account holders. CNB amended its Account Agreement after it received the Subpoena to include an arbitration provision that would apply to California account holders. There has been no assent to this after-hours arbitration provision.

2. The Discovery Order does not distinguish between information sought as to account holders that are receivership entities and account holders that are not receivership entities. The Receiver does not stand in the shoes of all of the persons whose records are the subject of the Subpoena, and she is not bound by account agreements or any ADR provisions of those nonreceivership account holders. Horwitz and MJLZ Trust are not receivership entities and the Receiver does not stand in their shoes.

3.      The Discovery Order improperly found that an ADR-triggering event has occurred. There is no dispute here, quantifiable or otherwise. The Receiver is merely investigating potential claims.

4.      Even if the Court concludes that an investigation constitutes a dispute, the only ADR applicable is judicial reference as set forth in the 2020 Amendment, and only as to the receivership entities (which excludes Horwitz and MJLZ Trust).

5.      The Discovery Order prohibits the Receiver from doing her duties by precluding an important investigation of potentially substantial claims for the benefit of defrauded victims. Equity dictates that the Receiver should not be bound by ADR provisions. The fraudster has been removed from the contract relationships, and the Receiver should not be held to the terms of the ADR provision in the 2020 Amendment. Arbitration and judicial reference of a receiver's efforts inherently conflict with Congress's desires and the purposes underlying 28 U.S.C. §§ 754 and 1692.

## II.     **STATEMENT OF FACTS**

### A.     **Procedural History**

On April 4, 2021, the Securities and Exchanges Commission ("SEC") filed a complaint against Zachary Horwitz ("Horwitz") and 1inMM Capital, LLC ("1inMM"), alleging that Horwitz, through 1inMM, operated a Ponzi scheme in which he raised over $690 million from purporting to invest in various film productions.

On January 14, 2022, the Court appointed the Receiver as permanent receiver of 1inMM and its subsidiaries and affiliates, as well as over assets that are attributable to funds derived from investors or clients of Horwitz and 1inMM Capital, LLC [Dkt. 70] (the "Receiver Order"), with the full powers of an equity receiver.

1    The Receivership Order authorized and directed the Receiver to, among
2    other things, (a) assume full control over 1inMM and its subsidiaries and
3    affiliates; (b) take exclusive custody, control and possession of all assets of
4    1inMM and its subsidiaries and affiliates; (c) conduct such investigation and
5    discovery as may be necessary to identify and preserve other assets of 1inMM
6    and its subsidiaries and affiliates; and (d) investigate and pursue all claims and
7    causes of action existing as a result of the activities of 1inMM and its subsidiaries
8    and affiliates. *Id*. at 1-3.

9    The Receiver served the Subpoena on CNB in furtherance of her
10   investigation of claims in the receivership case.[2] CNB moved to quash the
11   Subpoena [Dkt. 195], and the Receiver opposed the CNB Motion [Dkt. 202].
12   CNB replied in support of its motion [Dkt. 203].  A hearing on the CNB Motion
13   took place on April 24, 2023 before Magistrate Judge Patricia Donahue. That
14   court granted the CNB Motion by the Discovery Order entered on August 11,
15   2023 [Dkt. 250].

16   **B.    <u>Background</u>**

17   The following receivership entities each opened accounts at CNB between
18   August 2012 and December 2019 and executed account opening agreements:
19   1inMM Capital, LLC, One N Million Productions, LLC; 1inMM Productions,
20   LLC; Rogue Black, LLC; and LayJax Ventures, LLC (the "Receivership
21   Entities"). Separately, Horwitz and his trust, MJLZ Trust (the "Nonreceivership
22   Entities"), each held accounts at CNB, and the Receiver seeks information from
23   CNB as a third party relating to those accounts.

24
25
26
27
28

---

[2] The Subpoena essentially seeks records relating to the internal communications at CNB, its due diligence files, software red flag alerts, and bank policies, which are distinct from bank records previously provided to the Receiver.

1.   **Summary of ADR Provisions in Receivership Entities' Account Agreements**

    a.   **Account Agreements**

As set forth below, CNB's Account Agreements as amended up to the date of the appointment of the Receiver did not include arbitration in the ADR provisions for California account holders.[3] The Discovery Order does not address the exclusion of arbitration for California account holders from the Account Agreements or the fact that the 2023 Amendment occurred after the Subpoena was served on CNB.

Arbitration provisions applicable to the California accounts were inserted into a revised form of Account Agreement that CNB generated *after* the Subpoena was served by the Receiver on CNB in 2023.  Each of the Receivership Entities entered into an Account Opening Agreement at different times, that acknowledged receipt of the Account Agreement in effect at that time. The Account Agreements were amended over time. The evidence in the record is that the Receiver did not receive notice of any amendments to the agreements following her appointment and prior to the service of the Subpoena. *See* Declaration of Michele Vives [Dkt. 202-2]. The Account Agreements, as amended, did not include an arbitration provision as of the time of the Receiver's appointment and at the time of the service of the Subpoena.

As a matter of both fact and law, the Receiver cannot be bound by arbitration provisions that did not exist for the actual account holders and where she did not receive notice of following her appointment. The Receiver has clearly rejected these account agreements and has not used CNB banking services since

---

[3] The account opening agreements for each account refer to the Account Agreements that were amended over time. The CNB Motion acknowledged that "Upon opening an account, each of the 1inMM Related Clients executed agreements acknowledging receipt of and an agreement to be bound by the terms of CNB's Account Agreement and Disclosures and further amendments or updates thereto. CNB Motion at 2-3.

her appointment. CNB's untimely attempt to impose an arbitration provision on the Receiver is not appropriate or lawful.

The salient facts relating to the particulars of the Account Agreements and the amendments that are not addressed in the Discovery Order are set forth as follows.

### 2007 Account Agreement

The 2007 Account Agreement, and all subsequent amendments to the agreement, had a provision for "Amendments and Changes," providing "The terms and conditions set out in this brochure and our other agreements with you may be changed by us at any time. . . . By continuing to maintain your account or to use any of our services following any amendment, you agree to the amendment." [Dkt. 195-18 (Ex. I) at 83-84].

The 2007 Account Agreement provided for "Dispute Resolution" by arbitration (*Id*. at 101) and defined "dispute" as "any disagreement between you and us that you and we are not able to resolve informally." *Id*. at 100. The definition of dispute contemplates an actual dispute: "'Dispute' includes claims based on broken promises or contracts, torts (injury caused by negligent or intentional conduct), breach of duty or any other wrongful action. It includes statutory, common law and equitable claims." *Id.*

The 2007 Account Agreement provided "Disputes eligible to be resolved in small claims court, class actions or disputes on behalf of the general public under applicable state statutes are not eligible for binding arbitration." *Id*. The Receiver acknowledges that the 2007 Account Agreement provided for arbitration – but it was subsequently and repeatedly *amended to take out the arbitration provision for California account holders*.

### 2012 Amendment

On October 1, 2012, the 2007 Account Agreement was amended (the

6

"2012 Amendment") and changed the dispute resolution section by providing for ADR by *judicial reference* for deposit accounts maintained in California pursuant to California Code of Civil Procedure, Sections 638, *et seq*. [Dkt. 195-19 (Ex. J) at 156-57]. The 2012 Amendment provided ADR for accounts in states *other than California* in the form of arbitration. *Id*. at 156. The 2012 Amendment included the same language for the definition of "dispute." *Id*.

### 2016 Amendment

On November 1, 2016, the 2012 Amendment was amended [Dkt. 195-20 (Ex. K)] (the "2016 Amendment"). It included the same language for the definition of "dispute" *Id*. at 213. The ADR section similarly included the same language for "judicial reference for deposit accounts maintained in California" *Id*. at 213-14.

### 2019 Amendment

On October 1, 2019, the 2016 Amendment was amended [Dkt. 195-21 (Ex. L)] (the "2019 Amendment") and contained the same language for the ADR section providing for "judicial reference for deposit accounts maintained in California." *Id*. at 244.

### 2020 Amendment

On September 1, 2020, the 2019 Amendment was amended [Dkt. 195-22 (Ex. M)] (the "2020 Amendment"), and the ADR section included the same provision for judicial reference for deposit accounts maintained in California. *Id*. at 266. The 2020 Amendment also provides:

> If your account is maintained at a branch in *California and a dispute that involves the combined claims of all parties totaling $250,000* or more arises between us with respect to the deposit account or safe deposit box, this Agreement, its enforcement or our deposit account services, either of us may require that it be resolved by judicial reference in accordance with California Code of Civil Procedure, Sections 638, *et seq*.

*Id*. (emphasis added). The 2020 Amendment omitted any definition of dispute

1    and only addressed dispute in the context of a monetary amount.

2    **Intervening Receiver's Appointment and Service of Subpoena**

3    The Receiver was appointed on January 14, 2022 [Dkt. 70]. All Account

4    Agreements for all Receivership Entities as of that time included a judicial

5    reference provision for ADR and excluded arbitration provisions.

6    On January 11, 2023, counsel for the Receiver served the Subpoena on

7    CNB in furtherance of her investigation of claims in the receivership case.

8    **2023 Amendment**

9    On February 1, 2023, after the Subpoena was served, CNB amended the

10   2020 Amendment [Dkt. 195-23 (Ex. N)] (the "2023 Amendment"). The 2023

11   Amendment changed "dispute" to "Claims" in the "Dispute Resolution" section,

12   providing that all "Claims" be resolved through arbitration, with certain

13   exceptions. *Id*. at 288. The 2023 Amendment did not define "dispute," but

14   defined "Claims" as "a dispute, problem, or concern arising out of, affecting, or

15   relating to your account(s), and/or the products or services we have provided, will

16   provide, or have offered to provide to you, and/or any aspect of your relationship

17   with us." *Id.*

18   The 2023 Amendment provided: "Nothing contained in this Arbitration

19   Agreement shall prevent you or us from applying to any court of competent

20   jurisdiction for emergency, provisional, injunctive, or ancillary relief . . . [from]

21   a court having jurisdiction, or any other pre-judgment remedies." *Id*. at 289.

22   **Inapplicability of 2023 Amendment**

23   The most recent version of the Account Agreement in effect at the time the

24   Subpoena was served on CNB is the 2020 Amendment. The ADR section of the

25   2020 Amendment provides for "judicial reference for deposit accounts

26   maintained in California" [Dkt. 195-22 (Ex. M) at 266]. This applies only in the

27   event of a "dispute."

28

The Discovery Order did not address the untimely 2023 Amendment and its inapplicability to the Receiver. The Receiver requests clarification that no arbitration provision applies to the Receivership Entities or to the Receiver.

**b.  Treasury Management Services Agreements**

Only two of the Receivership Entities have a second type of agreement that was in effect at the time the Subpoena was served on CNB – the Treasury Management Services Agreements ("Services Agreements") – which applies only to 1inMM Productions and Rogue Black.[4] The applicable agreement is the 2022 Services Amendment (defined below) which included a provision for "Disputes" that stated "if you and we are not able to resolve differences informally, you agree that . . . any and all disputes between you and us, regardless of when they arose, will be resolved using the 'Dispute Resolution' provisions of the Account Agreement" (*Id*. at 350) – which at that time was the 2020 Amendment that excluded arbitration for California account holders.

The Receiver was appointed in January 2022, and the 2020 Amendment of the Account Agreement and the 2014 Services Amendment were in effect at the time she was appointed. The 2022 Services Amendment contains similar language. The agreements do not contain applicable arbitration provisions. Any ADR that may be required – if a dispute is found to exist – is limited to judicial reference.

**2.  The Applicable Account Agreements by Receivership Entity**

The specifics of each of the account holders identified in the Subpoena and the applicable ADR provisions are set forth below.

---

[4] The Discovery Order summarily concluded that "The 1inMM Related Clients also agreed to be bound by CNB's Treasury Management Services Disclosure and Agreement ("TMSDA") with regard to any of CNB's Treasury Management Services they used. [Dkt. Nos. 195-16, 195-17]." [Dkt. 250 at 3]. In fact, only two of the "1inMM Client Related Entities" signed CNB's TMSDA.

### a.    1inMM Capital

On December 13, 2013, 1inMM Capital, a California limited liability company, opened a business account at CNB [Dkt. 195-12 (Ex. C to Mallon Decl.)] ("1inMM Capital Account Opening Agreement") and acknowledged receipt of the Account Agreement in effect at the time, the 2012 Amendment. The 1inMM Capital Account Opening Agreement was governed by the 2016, 2019 and 2020 Amendments, none of which contained an applicable arbitration provision. The 2023 Amendment does not apply as it was made after the Subpoena was served, without notice to the Receiver.

### b.    One N Million Productions

On August 28, 2012, One N Million Productions, a California limited liability company, opened a business account at CNB [Dkt. 195-10 (Ex. A)] ("One N Million Account Opening Agreement") and acknowledged receipt of the Account Agreement in effect at the time dated May 29, 2007 [Dkt. 195-18 (Ex. I)] ("2007 Account Agreement"). The 2012, 2016, 2019 and 2020 Amendments to the 2007 Account Agreement are applicable and expressly exclude arbitration as a form of ADR applicable to disputes or claims.

### c.    LayJax Ventures

On November 15, 2018. LayJax Ventures, a California limited liability company, opened a business account at CNB [Dkt. 195-14 (Ex. E)] ("LayJax Account Opening Agreement") and acknowledged receipt of the Account Agreement in effect at the time, the 2016 Amendment.  The 2019 and 2020 amendments to the Account Agreement that followed, as described above, applied to the LayJax Account Opening Agreement. [Dkt. 195-14 (Ex. E) at 26)].

### d.    1inMM Productions

Two agreements were applicable to 1inMM Productions. On March 14, 2013, 1inMM Productions, a California limited liability company, opened a

business account at CNB [Dkt. 195-11 (Ex. B)] ("1inMM Productions Account Opening Agreement") and acknowledged receipt of the Account Agreement in effect at the time, which was the 2012 Amendment.  The amendments to the Account Agreement that followed, as described above, also applied, so no arbitration provision is applicable.

On July 23, 2013, 1inMM Productions also enrolled in the Business Online Banking service of CNB's Treasury Management Services [Dkt. 195-16 (Ex. G)] and acknowledged the applicability of the 2011 Services Agreement ("2011 Services Agreement") [Dkt. 195-24 (Ex. O)].

This Agreement only applied as to CNB's Treasury Management Services. These services are not at issue in the Subpoena. The Receiver believes that the Discovery Order is in error in that it did not note the inapplicability of this agreement to the documents requested in the Subpoena.

The 2011 Services Agreement had an "Amendment" provision that provided "We may amend these terms and conditions from time to time. . . . Each amendment shall become effective and binding on you when you receive notice of the amendment or such later date as may be stated in our notice and as required by law" (Ex. O at 298).

In August 2014, the Services Agreement was amended (the "2014 Services Amendment") [Dkt. 195-25 (Ex. P)].  The "Standard Dispute Resolution Clause for Treasury Management" in the 2014 Services Amendment provided that "any and all disputes between you and us, regardless of when they arose, will be resolved using the 'Dispute Resolution For Accounts and Services' provisions of CNB's then current Account Agreement and Disclosures," which at that time was the 2012 Amendment.  *Id*. at 338. The 2012 Amendment, and the applicable Amendments that followed, all expressly excluded arbitration as a form of ADR for California account holders.

11
MP&AS ISO MOTION FOR REVIEW OF ORDER

In November 2022, the Services Agreement was again amended (the "2022 Services Amendment") [Dkt. 195-26 (Ex. Q)] and included a provision for "Disputes" that stated "if you and we are not able to resolve differences informally, you agree that . . . any and all disputes between you and us, regardless of when they arose, will be resolved using the 'Dispute Resolution' provisions of the Account Agreement" (*Id*. at 350) – which at that time was the 2020 Amendment.

### e.  <u>Rogue Black</u>

Two agreements were applicable to Rogue Black. On June 20, 2017, Rogue Black opened a business account at CNB [Dkt. 195-13 (Ex. D)] ("Rogue Black Account Opening Agreement") and acknowledged receipt of the Account Agreement in effect at the time, the 2016 Amendment. The Rogue Black Account Opening Agreement also provided for future amendments. Ex. D at 21. As discussed, the amendments to the Account Agreement that followed preclude arbitration for California account holders.

On November 6, 2017, Rogue Black also enrolled in the Treasury Net service of CNB's Treasury Management Services [Dkt. 195-17] (Ex. H)) ("Rogue Black Service Authorization"). The Treasury Net service included the account enhancements of account activity reporting, stop payments, and wire origination and reporting. *Id*. at 41. The Rogue Black Service Authorization included the notation "See Treasury Management Services Disclosure and Agreement." *Id*. at 40. The Services Agreement in effect at the time was the 2014 Services Amendment. As set forth above, that agreement and its amendments stated that disputes would be resolved using the "Dispute Resolution" provisions of the "Account Agreement," (*Id*. at 350) – which at that time was the 2020 Amendment.

## III.   ARGUMENT

### A.   Standard for Review

District courts "may reconsider any pretrial matter" heard by a magistrate judge. 28 U.S.C. § 636(b)(1)(A).  Reconsideration is appropriate "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id.*; *see also* Fed. R. Civ. P. 72(a) (also imposing "clearly erroneous or is contrary to law" standard.)  A finding is only considered clearly erroneous when the Court, reviewing all evidence, "is left with the definite and firm conviction that a mistake has been committed." *Concrete Pipe and Prod. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.*, 508 U.S. 602, 622 (1993) (internal punctuation omitted).  The clearly erroneous standard is "significantly deferential." *Id.* at 623. By contrast, "the contrary to law standard . . . permits independent review of purely legal determinations by the magistrate judge." *UMG Recording, Inc. v. Global Eagle Entm't, Inc.*, No. 14-3466, 2015 WL 12752881 at *4 (C.D. Cal. Aug. 27, 2015) (internal citation and punctuation omitted). The "contrary to law" standard applies to the magistrate judge's legal conclusions, which are reviewed de novo. *See, e.g., Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 971 (C.D. Cal. 2010) (granting motion for reconsideration and reversing order respecting the subpoena).

### B.   The Court Has Broad Authority

The Court's power over an equity receivership and to determine appropriate procedures for administering a receivership is "extremely broad." *SEC v. Hardy*, 803 F.2d 1034, 1037-38 (9th Cir. 1986); *see SEC v. Lincoln Thrift Ass'n,* 577 F.2d 600, 606 (9th Cir. 1978) ("[T]he district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership."). This extremely broad power and broad deference stem from the long-standing principle that the full scope of a court's equity jurisdiction should

1    be recognized and applied by the courts. *See Reebok Int'l v. Marnatech Enter.,*
2    *Inc.*, 970 F.2d 552, 561–62 (9th Cir. 1992). The primary purpose of an equity
3    receivership is to promote the orderly and efficient administration of the estate
4    for the benefit of the creditors. *See Hardy*, 803 F.2d at 1038. The *Hardy* court
5    stated that it would uphold "reasonable procedures instituted by the district court"
6    that promote the district court's orderly and efficient administration of the
7    receivership estate for the benefit of creditors. *Id.* Permitting a receiver to conduct
8    an investigation of potential claims and to do so by issuing subpoenas is a
9    common use of these equitable powers.

10        **C.    The Discovery Order's Factual Findings Were Clearly**
11             **Erroneous**

12        The Discovery Order summarily states that "[a]ny claim by the Receiver
13    against CNB would necessarily relate to the services CNB rendered to the 1inMM
14    Related Clients. Those services are all governed by the Account Agreements and
15    [Service Agreements] between CNB and the 1inMM Related Clients." Discovery
16    Order at 11. More specifically, the Discovery Order finds that "the Receiver is
17    bound by the 1inMM Related Client's Agreements to arbitrate disputes or claims
18    arising from their Account Agreements and TMSDAs with CNB." Discovery
19    Order at 9.

20        There are a number of errors and omissions in relation to these conclusions,
21    including the imbedded assumption that all of the Account Agreements are the
22    same, that the Subpoena constitutes a "claim against CNB," and that the Receiver
23    is somehow bound by a contract that Nonreceivership Entities entered into with
24    CNB. The Receiver requests review of the following issues:

25        **1.    The Discovery Order Ignores the Exclusions for**
26             **California Account Holders**

27        The ADR section of the 2020 Amendment to the Account Agreement

28

3207979.2                                    **14**

included the provision for *judicial reference* for deposit accounts maintained in California (Ex. M at 266). Arbitration is expressly excluded for California account holders. All of the bank accounts were maintained in California.

Footnote 3 of the Discovery Order highlights the precise problem with the incorrect conclusion that an arbitration provision applies here. The Discovery Order states: "When contracting parties stipulate that disputes will be submitted to arbitration, 'they relinquish the right to certain procedural niceties which are normally associated with a formal trial' such as the right to pre-trial discovery."

Neither the Receivership Entities nor the Receiver are parties to a binding *arbitration* agreement. To so find will prejudice the Receiver's rights and abilities to conduct her investigation for the benefit of the defrauded victims.

## 2. <u>There is No Evidence of Assent to Arbitration Provisions.</u>

CNB has not presented any evidence of assent to arbitration by the account holders or the Receiver. After the Receiver served the Subpoena, CNB inserted an arbitration provision in its Account Agreement in the 2023 Amendment. (Ex. N). The evidence in the record is that the Receiver did not receive such notice. *See* Vives Decl., Dkt. 202-2, ¶6. No evidence was submitted by CNB to the contrary.

The Discovery Order notes the legal standard in *Sifuentes v. Dropbox, Inc.*, 2022 WL 2673080, at *4 (N.D. Cal. June 29, 2022). Discovery Order at 13 (acknowledging that "[t]he court in *Sifuentes* denied a motion to compel arbitration where defendant failed to show that the user had notice of the later terms of service, which added an arbitration provision"). However, the Discovery Order then fails to expressly find that the 2023 Amendment is therefore inapplicable to the Receiver. This distinction is a critical one as only the 2023 Amendment contains a new arbitration provision.[5]

---

[5] The distinction between arbitration and judicial reference is crucial as CNB is clearly seeking to impose restrictive discovery limitations through its untimely

The Receiver seeks clarification that any ADR provision that may apply in the event of a dispute is limited to judicial reference as set forth in the 2020 Amendment and that only applies as to records sought relating to the Receivership Entities. The Receiver requests a finding consistent with *Sifuentes* that the 2023 Amendment does not apply to the Receiver. The summary nature of the Discovery Order overlooked these important distinctions.

### 3. The Discovery Order Improperly Found a "Dispute"

The Subpoena merely seeks documents for investigatory purposes – to locate all assets and pursue all claims for the benefit of the defrauded victims. There is no dispute or claim to which any ADR provision applies. Without a triggering event, no ADR provision applies at all.

### a. No Factual Finding of Dispute

The Discovery Order did not identify a particular dispute that would trigger an ADR provision. Rather, it speaks in generalities and hypotheticals – "Any claim by the Receiver against CNB would necessarily relate to the services CNB rendered to the 1inMM Related Clients." Discovery Order at 11.  In *Capitol Life Ins. Co. v. Gallagher*, 1995 WL 66602 (10th Cir. Feb. 7, 1995), the court denied the application to compel the receiver to arbitrate, finding that "[t]he record indicates no dispute between Capitol and GSL or Gallagher as receiver for GSL." *Id*. at *3.

Similarly, this matter does not raise a dispute that triggers any ADR provision. The Receiver may use a subpoena to investigate matters relating to the receivership. The 2020 Amendment only provides for ADR in the event of a dispute greater than $250,000—not potential or theoretical—dispute. CNB's fear

---

assertion of arbitration provisions and to also deny the Receiver any ability to overturn an adverse ruling by forcing arbitration rather than judicial reference.

3207979.2

CASE NO. 2:21-CV-02927-CAS-PD

MP&AS ISO MOTION FOR REVIEW OF ORDER

of a future dispute is not a legitimate basis for CNB to evade the Subpoena.[6]

**b.    <u>The Receiver's Investigation Is Not a Claim or Dispute</u>**

The Receiver is charged with the duty to investigate and marshal assets for the benefit of the defrauded victims in the scheme run by Horwitz and 1inMM. Issuance of a third-party subpoena by a receiver is appropriate. *See, e.g., S.E.C. v. Elfindepan, S.A.*, 169 F. Supp. 2d 420, 427 (M.D.N.C. 2001) ("The service of a subpoena to produce documents concerning [the receivership defendants] certainly constitutes a reasonable method of fulfilling her specified duties as receiver."). This relief is commonly expressly granted in the order appointing a receiver or is granted thereafter on request of the receiver.  *See, e.g., SEC v. Bivona*, 2016 WL 5899288, at *3 (N.D. Cal. Oct 11, 2016) ("The Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure.").

Analysis of the banking relationship at CNB – 1inMM's and Horwitz's primary bank – is a necessary part of the Receiver's investigation. The ability to compel production of records is an essential tool for the Receiver to accomplish the asset collection and investigation obligations imposed on her under the Receiver Order.

The Receiver requires the documents requested in the Subpoena to fulfill her duties to investigate claims and assets. (Vives Decl., Dkt. 202-2, ¶ 3). Preventing the Receiver from gathering this information will hamper the Receiver's ability to conduct the investigation that the Court has asked her to do.

**c.    <u>Investigation of "Potential Claims" Is Not a Dispute</u>**

The Discovery Order finds that "all of the ADR provisions in the Account

---

[6] For the other reasons set forth herein, even if a dispute arises in the future, the Receiver still is not subject to any *arbitration* provisions. Only judicial reference as set forth in the 2020 Amendment would be applicable.

Agreements and [Service Agreements] broadly define the disputes subject to ADR to include 'any disagreement,' 'any claim or controversy of any kind' including 'statutory, common law and equitable claims,' and are not limited to lawsuits." *Id*. at 12. The Discovery Order then concludes that "there is a dispute between the Receiver and CNB, such that the ADR provisions apply" because "the documents requested in the Subpoena suggest that the Receiver seeks information regarding whether CNB had knowledge of, or was complicit in, the Ponzi scheme – in other words, that the Receiver is investigating *potential claims* against CNB." *Id*. (emphasis added). The Discovery Order does not address the applicable agreement, the 2020 Amendment, that requires an actual dispute of over $250,000, to trigger ADR.

### d. <u>Engagement of Conflicts Counsel to Investigate a Potential Claim Is Not a Dispute</u>

The Discovery Order refers to the engagement of conflicts counsel as evidence of a "dispute," citing the Order [Dkt. 166] granting the motion seeking approval of conflicts counsel. [Dkt. 156] (the "Employment Motion"). The Discovery Order notes, "On January 3, 2023, the Court granted the motion authorizing Raines Feldman, upon the Receiver's instruction, to 'pursue a claim or cause of action in connection with a Conflict Matter.'" Discovery Order at 2 (citing Dkt. 166 at 3).

The Discovery Order concludes that "The Receiver has retained conflicts counsel to pursue 'potential claims' on a 'small number of cases' where her prior counsel has a conflict, indicating that the Receiver may currently be adverse to CNB." Discovery Order at 12.

A complete read of the Employment Motion, however, reflects that the Receiver requires conflicts counsel to investigate potential claims since the Receiver obviously cannot have general counsel with a conflict investigate

potential claims against its own client. The Employment Motion makes this point clear in stating, "The Receiver, therefore, believes it is appropriate to engage independent counsel to *evaluate and investigate* any matters in which Katten has or might have a conflict of interest." [Dkt. 156 at 4] (emphasis added). It would be imprudent and an arguable conflict of interest for the Receiver to investigate potential claims using counsel who has a direct conflict of interest in connection with the matter being investigated.

### e.   There is No Quantifiable Dispute

The Subpoena is a request for documents to a non-party—not a "dispute." FRCP 45(a)(D). Resolution by judicial reference is only available under the 2020 Amendment for a "dispute that involves the combined claims of all parties totaling $250,000 or more." (Ex. M at 266.) The Subpoena does not involve a claim for any amount, and CNB does not suggest otherwise.

All of the versions of the Account Agreements tie ADR provisions to quantifiable disputes. There is no way to quantify a "dispute" in terms of dollars because there is no dispute. The Discovery Order found a "dispute" without identifying the nature or value of any dispute or making any specific factual findings regarding a dispute.

### D.   Legal Conclusions in Discovery Order Were Contrary to Law

An order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Akey v. Placer Cty.*, No. 2:14–cv–2402, 2017 WL 1831944, at *10 (E.D. Cal. May 8, 2017) (citation and quotation marks omitted). In the Ninth Circuit, courts "must take a flexible approach in applying equitable principals" and not "create blanket, prospective rules or applications." *See Smith v. Davis*, 953 F.3d 582, 590 (9th Cir. 2020) (each case as it arises must be determined by its own particular circumstances).

The Receiver believes that the Discovery Order includes errors of law and

requests that this Court reverse the Discovery Order.

## 1.   The Receiver Can Conduct Third Party Discovery on Horwitz and MJLZ Trust

The Discovery Order defines 1inMM Related Clients as "1inMM Capital, LLC ("1inMM") and certain affiliated entities." *Id*. at 1. It is unclear whether this includes Horwitz or MJLZ Trust, who are not Receivership Entities but who are affiliated with 1inMM Capital. Since Horwitz and MJLZ Trust are not Receivership Entities, the Receiver does not stand in their shoes and is not bound by their contracts with CNB. In finding that the Receiver cannot request documents relating to Horwitz and MJLZ because those two entities have contracts with CNB, the Discovery Order states that, "the Receiver here does not have discovery powers or rights greater than those of any 1inMM Related Client on whose behalf she purports to act." Discovery Order at 10.  The Discovery Order also states that the Receiver is "permitted to conduct discovery only on behalf of the receivership entities and must comply with those entities' mandatory ADR agreements."  Discovery Order at 9.

Conducting discovery "on behalf" of an entity is not the same as requesting documents about another entity. Whether ADR limits the Receiver's ability to request information relating to the Receivership Entities is a different question from whether the Receiver may subpoena third party records of Nonreceivership Entities. The Discovery Order does not distinguish between the concepts of the Receiver being bound by account holder agreements seeking records as to those account holders and her request for third party records held by CNB for the Nonreceivership Entities.

Receivers commonly seek records from third parties that bear upon a receiver's investigation of claims in a receivership case. The request for records relating to Horwitz and MJLZ Trust are just that and the fact that Horwitz and

MJLZ Trust have account agreements with CNB is not relevant. Banks commonly (and are obligated to) respond to subpoenas for records in their custody. In response to the Receiver pointing out the legal process provisions in the Account Agreements, CNB noted in its Reply that these provisions "relate to 'legal process' initiated by a non-signatory to the Account Agreement." [Dkt. 203, at 4]. The Receiver is such a non-signatory as to Horwitz and MJLZ Trust.

### 2. <u>Cases Relied Upon to Find Dispute All Involve Filed Lawsuits, Not Investigatory Subpoenas</u>

The Receiver has not commenced litigation against CNB, nor has she asserted any type or claim or raised any dispute with CNB. No ADR provision has been triggered. All of the cases cited in the Discovery Order are distinguishable. Some of the cases were based on forum selection clauses rather than arbitration agreements. *See Sharp v. Duff & Phelps, LLC*, No. CV 20-8069-DSF (MRWx), 2021 WL 8154951, at *1 (C.D. Cal. Jan. 28, 2021) (defendant had moved to dismiss receiver's complaint for *forum non conveniens*); *Mosier v. HSBC Bank USA, N.A.*, No. CV 10-3669-PSG(Ex), 2010 WL 5422550, at *4 (C.D. Cal. Dec. 28, 2010) (motion to dismiss based on the presence of a forum selection clause).

In other distinguishable cases cited in the Discovery Order at p. 11, the receivers had commenced litigation where courts found that the receivers were bound by an agreement to arbitrate. *See, e.g.*, *Seaman v. Priv. Placement Cap. Notes II, LLC*, No. 16-CV-00578-BAS-DHB, 2017 WL 1166336, at *1 (S.D. Cal. Mar. 29, 2017) (after the Receiver filed suit, defendants filed the motion to compel arbitration); *U.S. Small Bus. Admin. v. Coqui Cap. Mgmt., LLC*, No. 08-CIV-0978, 2008 WL 4735234, at *2 (S.D.N.Y. Oct. 27, 2008) (after filing the amended complaint, "[t]he question thus turns to whether Plaintiff, as receiver, is bound to arbitrate its ALPA-related claims"); *Moran v. Svete*, 366 F. App'x

624, 625 (6th Cir. 2010) (district court had denied the motion to dismiss the complaint, which sought to compel arbitration of claims brought by the Receiver).

In this case, there has been no complaint, no claim asserted, and no dispute raised. There has been no trigger for an ADR provision. CNB is clearly concerned about a future or potential claim, but that does not meet the definition, or lack thereof, in its contract requiring any form of ADR.

### 3. The Appointment of the Receiver Removed the Wrongdoer from the Scene

The Court should not hold the Receiver to the Account Agreements. The Discovery Order makes the following statement: "Absent defenses including *in pari delicto*, which the Receiver does not allege, a receiver is subject to the terms the receivership entity contracted." Discovery Order at 7. *In pari delicto* is a defense that CNB, not the Receiver, would assert, and is a defense inapplicable to the issues raised in this matter. In any event, the Ninth Circuit has found that such a defense is not applicable to a receiver. In *F.D.I.C. v. O'Melveny & Myers*, 61 F.3d 17 (9th Cir. 1995), the Ninth Circuit held that "defenses based on a party's unclean hands or inequitable conduct do not generally apply against that party's receiver. . . . A receiver, like a bankruptcy trustee and unlike a normal successor in interest, does not voluntarily step into the shoes of the bank; it is thrust into those shoes." *Id*. at 19.

In *Janvey v. Alguire (Alguire III)*, 847 F.3d 231 (5th Cir. 2017) (per curiam), the Fifth Circuit acknowledged the receiver's "strong argument" that the "arbitration agreements [were] . . . unenforceable because they were instruments of the fraud[,]" entered into while the receivership entities were under the malignant control of the Ponzi scheme operator. *Id.* at 244 (noting that it "need not reach this issue" having already decided, on narrower grounds, that receiver

was not compelled to arbitrate).

The Receiver was thrust into the shoes of the receivership entities and would not have accepted the ADR terms. Here, the wrongdoer has been removed from the scene. The Receiver has stepped in to maximize recoveries for the benefit of the defrauded victims. The Receiver should not be held to the terms of the account agreements which include the ADR provisions at issue here. In finding that the Receiver's investigatory Subpoena is subject to ADR, the Discovery Order fails to acknowledge these relationships.

In any event, the Receiver has rejected these agreements. *See Alguire III* at 239 n.10 ("a receiver, with powers akin to those of a bankruptcy trustee, could simply reject arbitration agreements as executory contracts by commencing litigation instead of submitting to arbitration"). It is inequitable to hold an equitable receiver to such terms and require her to use arbitration or other ADR. The receivership entities had unclean hands, and the Receiver should not have to be bound to the ADR provisions in the Account Agreements. Requiring such would endorse the bad acts of the receivership entities.

### 4.    <u>The ADR Provision Conflicts with the Receivership Statutes</u>

Even if the Court finds that the Subpoena triggers any ADR provision here – which it does not – the Receiver should not be bound by any such clause in this proceeding. Arbitration and judicial reference inherently conflict with Congress's desires and the purposes underlying 28 U.S.C. §§ 754 and 1692 ("Receivership Statutes"). *See Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (enforcement of arbitration clause overridden by contrary congressional command).

The Receivership Statutes give district courts that appoint federal equity receivers ("Receivership Courts") "complete jurisdiction and control" over all

disputes involving receivership property. *See, e.g., S.E.C. v. Bilzerian*, 378 F.3d 1100, 1103 (D.C. Cir. 2004). Congress conferred those powers to allow Receivership Courts to efficiently and orderly administer the receivership estate for the benefit of defrauded investors and other creditors in one forum. *Quilling v. Grand Street Trust*, 2005 WL 1983879, *2 (W.D.N.C. 2005); *Hardy*, 803 F.2d at 1037-38. Arbitration divests Receivership Courts of those powers and conflicts with the underlying purposes of the Receivership Statutes. Arbitration also undermines receiverships and harms victims of fraudulent schemes by raising costs, which reduces investor recoveries, and introducing a likelihood of inconsistent decisions on common questions of fact and law.

The Fifth Circuit highlighted that the argument that "the underlying purpose of the federal equity receivership statute is at odds with the FAA's mandate in favor of arbitration" reflected "important concerns about undermining Congress's goal of consolidating receivership claims before" the court presiding over the receivership. *Alguire III*, 847 F.3d at 245.

## IV.   <u>CONCLUSION</u>

WHEREFORE, the Receiver respectfully requests that the Court grant the Motion and enter an order finding that:

1.   There is no claim or dispute that triggers any ADR provision that is binding on the Receiver;

2.   The 2023 Amendment is not binding on the Receiver;

3.   No arbitration provision applies to the Receiver relating to the bank accounts at CNB for One N Million Productions LLC, 1inMM Productions LLC, 1inM Capital LLC, Rogue Black LLC, and Layjax Ventures LLC;

4.   The Receiver is not bound by the account agreements between Zachary Horwitz, and MLJZ Trust, on the one hand, and CNB, on the other hand;

5.      The CNB Motion is denied;

6.      CNB is required to respond to the Subpoena; and

7.      For all other appropriate relief.

DATED: August 25, 2023        Respectfully submitted,

RAINES FELDMAN LITTRELL LLP

By:  _/s/ Kathy Bazoian Phelps_
      Kathy Bazoian Phelps

_Counsel for Michele Vives_
_Permanent Receiver_