1      UNITED STATES DISTRICT COURT
       CENTRAL DISTRICT OF CALIFORNIA
2              WESTERN DIVISION

3

4    SECURITIES AND EXCHANGE   )
     COMMISSION,               )
5                              )
                 Plaintiff,    )
6                              )
            vs.                )   Case No. 2:21-CV-02927-CAS-PD
7                              )
     ZACHARY J. HORWITZ, ET AL., )     Los Angeles, California
8                              )       April 24, 2023
                 Defendants.   )
9    _____ _)

10

11

12                      HEARING

13

       BEFORE THE HONORABLE PATRICIA DONAHUE
14         UNITED STATES MAGISTRATE JUDGE

15

16   APPEARANCES:              See Next Page

17   COURT REPORTER:           Recorded, Court Smart

18   COURTROOM DEPUTY:         Isabel Verduzco

19   TRANSCRIBER:              Dorothy Babykin
                               Courthouse Services
20                             1218 Valebrook Place
                               Glendora, California  91740
21                             (626) 963-0566

22

23

24   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.
     TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
25

1

2      APPEARANCES:

3

      FOR PLAINTIFF SECURITIES AND EXCHANGE COMMISSION:
4

      U.S. SECURITIES AND EXCHANGE COMMISSION
5      BY:  KATHRYN C. WANNER
           STAFF ATTORNEY
6      444 SOUTH FLOWER STREET
      SUITE 900
7      LOS ANGELES, CALIFORNIA  90071

8      FOR MOVANT CITY NATIONAL BANK:

9      LATHAM & WATKINS LLP
      BY:  JOSHUA G. HAMILTON
10           MANUEL A. ABASCAL
           ATTORNEYS AT LAW
11      355 SOUTH GRAND AVENUE
      SUITE 100
12      LOS ANGELES, CALIFORNIA  90071

13      JEREMY MATZ
      IN-HOUSE COUNSEL AT CITY NATIONAL BANK
14

      FOR THE RECEIVER MICHELE VIVES:
15

      RAINES FELDMAN LITTRELL LLP
16      BY:  KATHY BAZOIAN PHELPS
           ATTORNEY AT LAW
17      1900 AVENUE OF THE STARS
      SUITE 1900
18      LOS ANGELES, CALIFORNIA  90067

19

20

21

22

23

24

25

1                                I N D E X

2      2:21-CV-02927-CAS-PD                                    APRIL 24, 2023

3      PROCEEDINGS:  HEARING ON MOTION TO QUASH SUBPOENA FILED
                      BY NON-PARTY CITY NATIONAL BANK
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Dorothy Babykin Courthouse Services
1218 Valebrook Place   •   Glendora, CA 91740   •   626.963.0566   •   dotnisbet@aol.com

1                       LOS ANGELES, CALIFORNIA; APRIL 24, 2023

2                       MR. HAMILTON:  -- GOOD MORNING, YOUR HONOR.

3                       JOSHUA HAMILTON OF LATHAM & WATKINS ON BEHALF OF CITY

4      NATIONAL BANK.

5                       MR. MATZ:  GOOD AFTERNOON.

6                       JEREMY MATZ, IN-HOUSE COUNSEL AT CITY NATIONAL BANK.

7                       THE COURT:  ALL RIGHT.  GOOD AFTERNOON, EVERYONE,

8                       WE ARE HERE PURSUANT TO THE MOTION BY CITY NATIONAL

9      BANK TO QUASH THE THIRD-PARTY SUBPOENA THAT WAS SERVED BY THE

10     RECEIVER.

11                      AND I AM INTERESTED IN HEARING ARGUMENTS FROM BOTH

12     SIDES.

13                      BUT LET ME JUST START BY SETTING FORTH WHAT I BELIEVE

14     ARE THE PARAMETERS OF THIS DISPUTE.  AND, THEN, OF COURSE, BOTH

15     SIDES PLEASE CORRECT IF I HAVE -- IF I HAVE MISUNDERSTOOD.

16                      THE DISTRICT JUDGE IN THIS CASE APPOINTED A RECEIVER TO

17     ACT ON BEHALF OF THE DEFENDANTS.  MANY OR I THINK BOTH, ALL OF

18     WHOM HAVE ACCOUNTS  -- HAD ACCOUNTS AT CITY NATIONAL BANK.

19                      THE RECEIVER SENT A NUMBER OF LETTERS TO THE BANK

20     ASKING FOR DOCUMENTS.  AND THE BANK RESPONDED TO THOSE

21     LETTERS AND PRODUCED VOLUMINOUS RECORDS TO THE RECEIVER.

22                      THE RECEIVER THEN SERVED A SUBPOENA LISTING 122

23     CATEGORIES OF MATERIALS TO BE PRODUCED.  AND THE BANK NOW

24     MOVES TO QUASH THAT SUBPOENA ESSENTIALLY ON THE GROUND THAT

25     IT IS CONTRARY TO THE LANGUAGE OF THE ALTERNATIVE DISPUTE

1    RESOLUTION PROVISION WHICH ARE SET FORTH IN THE -- ESSENTIALLY

2    THE DEFENDANTS' OR THE CUSTOMERS' AGREEMENTS WITH THE BANK.

3           SO, LET ME START BY ASKING IF THAT IS AN ADEQUATE

4    OBVIOUSLY 10,000-FOOT VIEW OF THE DISPUTE PRESENTED BY THE

5    PARTIES' RATHER VOLUMINOUS FILINGS IN THIS MATTER.

6           MR. ABASCAL:  THANK YOU, YOUR HONOR.

7           YES.  I WANT TO ADD ONE IMPORTANT POINT THAT'S NOT IN

8    THAT CHRONOLOGY.  AND THAT IS THAT THE RECEIVER WAS APPOINTED

9    IN 2021 OVER THE ASSETS AND THE ENTITIES IN ONE IN A MILLION.

10           THEN, IN JANUARY 2022, THE COURT APPOINTED A CONFLICTS

11    COUNSEL, XXX RAYNES FELDMAN.  BECAUSE THE ORIGINAL RECEIVER'S

12    COUNSEL HAD A CONFLICT.  AND THEN RAYNES FELDMAN CAME INTO THE

13    SCENE IN JANUARY, CONTACTED US, ASKED FOR A TOLLING AGREEMENT,

14    A DOCUMENT-HOLD NOTICE, AND THEN ISSUED THE SUBPOENA.

15           AND I THINK THOSE FACTS ARE IMPORTANT AND REALLY

16    RELEVANT TO THIS MOTION.

17           THANK YOU.

18           THE COURT:  ALL RIGHT.

19           MS. PHELPS:  WELL, YOUR HONOR, ONE OTHER SMALL

20    CLARIFICATION IS THE REASON WHY THE RECEIVER WAS APPOINTED.  THE

21    RECEIVER WAS APPOINTED AS A FULL EQUITY RECEIVER HERE TO

22    INVESTIGATE AND MARSHAL ALL ASSETS FOR THE BENEFIT OF THE

23    DEFRAUDED VICTIMS.

24           SO, I JUST WANTED TO MAKE THAT SLIGHT CORRECTION.

25           THE COURT:  OKAY.

1          ALL RIGHT.  THANK YOU BOTH.

2          ALL RIGHT.  SO  --

3          MR. ABASCAL:   I'LL CONTEST THAT, BUT I'LL RAISE THAT IN MY

4    ARGUMENT.

5          THE COURT:  WELL, I HAVE REVIEWED THE DISTRICT JUDGE'S

6    ORDER APPOINTING THE RECEIVER.  AND, SO, I  -- AND I DEFINITELY HAVE

7    QUESTIONS ABOUT THE SCOPE OF THAT APPOINTMENT.

8          ALL RIGHT.  HAVING READ THE UNDERLYING

9    CORRESPONDENCE, IT APPEARS THAT RIGHT NOW THE PARTIES ARE NOT

10   PRESENTING TO ME THE SPECIFIC OBJECTIONS, THE OVERBREADTH

11   OBJECTIONS AND THAT MANY OTHER OBJECTIONS THAT THE BANK HAS

12   INTERPOSED TO THE CATEGORIES IN THE SUBPOENA.

13         I'VE READ THE UNDERLYING RECORDS AND SEE THAT THERE

14   ARE 122 CATEGORIES OF DOCUMENTS REQUESTED AND PROBABLY AN

15   EQUAL NUMBER, IF NOT CLOSE, OF OBJECTIONS BASED ON NUMEROUS

16   GROUNDS.

17         MY UNDERSTANDING IS THAT THE TOP LINE ISSUE THE PARTIES

18   ARE SEEKING TO HAVE RESOLVED HERE IS THE APPLICABILITY OF THE

19   ALTERNATIVE DISPUTE RESOLUTION PROVISIONS.

20         AND TO THE EXTENT YOU ALL ARE ASKING ME TO RESOLVE

21   YOUR SPECIFIC OBJECTIONS REGARDING OVERBREADTH, PRIVILEGE, ET

22   CETERA, I THINK IT PROBABLY CANNOT COME AS A SURPRISE THAT I AM

23   GOING TO SEND YOU BACK TO MEET AND CONFER REGARDING THOSE

24   SPECIFICS – IF WE GET TO THAT POINT.

25         BUT MY UNDERSTANDING IS THE LEGAL ISSUE HERE

1    ESSENTIALLY IS THE APPLICABILITY OR THE ALTERNATIVE DISPUTE

2    RESOLUTION PROVISIONS ON THE ONE HAND AND THE SCOPE OF THE

3    RECEIVER'S APPOINTMENT ON THE OTHER.

4              IS THAT ACCURATE?

5              MR. ABASCAL:  AGREED, YOUR HONOR.

6              THE COURT:  OKAY.

7              THE SAME?

8              MS. PHELPS:  YES, YOUR HONOR.  WE DID SEEK TO MEET AND

9    CONFER ON THOSE.  THEY ASKED US TO DEFER IT TILL AFTER THIS

10   HEARING.  SO, WE HAVE WAITED.

11             THE COURT:  YES.  I READ THAT.  I THINK THAT MAKES SENSE.

12   AND WE'LL GET TO THAT IF AND WHEN WE GET TO THAT.

13             OKAY.  I WANT TO HEAR FIRST FROM THE RECEIVER.

14             I READ THE  -- READING THE PAPERS IT APPEARS THAT THE

15   ALTERNATIVE DISPUTE RESOLUTION PROVISIONS IN THOSE CUSTOMER

16   AGREEMENTS APPLY HERE.

17             I LOOKED AT THEIR OBJECTIONS TO THE DECLARATION THAT

18   YOU SUBMITTED REGARDING THE SCOPE OF THE ADR PROVISIONS.  AND

19   IT SEEMS PRETTY CLEAR THAT THE DECLARATION SELECTED SPECIFIC

20   LANGUAGE  -- I'LL PUT IT THAT WAY  -- FROM THE ADR PROVISIONS.

21             BUT IT SEEMS PRETTY CLEAR THAT THE ADR PROVISIONS DO

22   COVER THE SUBPOENA.

23             SO, I'D LIKE YOU TO ADDRESS THAT.

24             AND, THEN, ALSO, I DID NOT HAVE AN OPPORTUNITY TO READ

25   THE PLEADINGS ON THE DOCKET UNDERLYING THE APPOINTMENT OF THE

1    RECEIVER, BUT WAS THERE ANY DISCUSSION IN THE APPOINTMENT OF

2    THE RECEIVER REGARDING THE SCOPE OF THE RECEIVER'S AUTHORITY

3    AND ANY TENSION THAT MIGHT HAVE WITH THE ADR PROVISIONS IN THE

4    CUSTOMERS' AGREEMENTS WITH THE BANK?

5            MS. PHELPS:  THANK YOU, YOUR HONOR.

6            THERE'S A LOT IN THOSE QUESTIONS.

7            THE COURT:  YEP.

8            MS. PHELPS:  SO, LET ME  -- LET ME TRY TO GO THROUGH THEM

9    IN AN ORGANIZED FASHION TO HELP US ALL.

10            THERE ARE REALLY TWO ESSENTIAL DISCUSSION POINTS HERE.

11            ONE OF THEM IS CITY NATIONAL HAS ARGUED THAT THERE IS --

12    THIS SUBPOENA IS INVALID PRESUMABLY BECAUSE THE RECEIVER

13    ALLEGEDLY DOES NOT HAVE AUTHORITY TO ISSUE THE SUBPOENA.

14            AND THAT GOES TO YOUR HONOR'S QUESTION I THINK ABOUT

15    THE SCOPE OF THE ORDER.

16            THE SECOND LINE OF DISCUSSION IS REALLY IS THERE A

17    DISPUTE THAT TRIGGERS AN ARBITRATION PROVISION AND, IF SO, IS

18    THERE AN APPLICABLE ARBITRATION PROVISION.

19            SO, I REALLY WOULD LIKE TO ADDRESS BOTH OF THOSE LINES

20    OF DISCUSSION BECAUSE THEY ARE SLIGHTLY DIFFERENT.

21            AS TO THE FIRST ISSUE, THE ORDER APPOINTING THE RECEIVER

22    MAKES CLEAR HER AUTHORITY TO CONDUCT DISCOVERY IN ORDER TO

23    INVESTIGATE ASSETS OF THE ESTATE.  IT'S EXPRESSED RIGHT THERE IN

24    THE ORDER.

25            ASSETS OF THE ESTATE – OF THE ESTATE INCLUDE LITIGATION

1    CLAIMS.  THERE IS NO LITIGATION CLAIM PENDING AT THIS POINT IN TIME.

2    THERE IS NO CLAIM THAT HAS BEEN ASSERTED THAT SEEKS MONETARY

3    RELIEF OR OTHERWISE.

4            THE RECEIVER WHO IS AN OFFICER OF THE COURT IS SEEKING

5    TO COMPLY WITH HER DUTIES AND OBLIGATIONS AS SHE HAS BEEN

6    CHARGED TO DO BY THE DISTRICT COURT TO INVESTIGATE ASSETS OF

7    THE ESTATE.

8            ONE POTENTIAL CLAIM THAT SHE IS INVESTIGATING IS CITY

9    NATIONAL BANK'S ROLE IN CONNECTION WITH THE PONZI SCHEME THAT

10   WAS PERPETRATED BY THE RECEIVERSHIP DEFENDANTS HERE.

11           AGAIN, THERE IS NO CLAIM YET THAT HAS BEEN ASSERTED.

12           SHE HAS SERVED A SUBPOENA PURSUANT TO THE TERMS OF

13   THE ORDER APPOINTING HER TO CONDUCT DISCOVERY TO INVESTIGATE

14   ALL SUCH ASSETS.

15           THAT IS WHY WE WERE HERE, AND THAT IS WHY SHE SERVED

16   THE SUBPOENA.

17           THE COURT:  WELL, LET ME JUST ASK YOU.

18           THE RECEIVER SENT A LOT OF CORRESPONDENCE TO THE BANK

19   ASKING FOR A LOT OF DOCUMENTS.  AND THE BANK PRODUCED A GOOD

20   NUMBER OF RECORDS.

21           SO, WHY -- WHY NOW IS CONFLICT COUNSEL COMING IN AND

22   SERVING THIS VERY LENGTHY SUBPOENA?

23           AND IS THERE ANY OVERLAP AT ALL BETWEEN THE

24   INFORMATION REQUESTED IN THE SUBPOENA AND THE DOCUMENTS THAT

25   THE BANK ALREADY PRODUCED?

1          MS. PHELPS:  AND, YOUR HONOR, THAT'S A VERY FAIR

2     QUESTION.  THE ANSWER IS THERE'S ABSOLUTELY NONE.

3          THE RECEIVER, AND AS THE RECEIVERS CUSTOMARILY DO

4     WHEN THEY FIRST COME INTO A CASE, STANDING IN THE SHOES OF THE

5     RECEIVERSHIP ENTITIES, THEY WILL REQUEST FROM FINANCIAL

6     INSTITUTIONS ALL OF THE BANKING INFORMATION  -- THE BANK

7     STATEMENTS, THE CHECKS, THE SIGNATURE CARDS, THE WIRE

8     TRANSFERS  -- SO THAT THEY CAN BEGIN A FORENSIC ACCOUNTING TO

9     TRACE WHERE THE MONEY WENT IN THE SCHEME.

10          AND THE RECEIVER DID SO INFORMALLY.  AND CITY NATIONAL

11     BANK WAS QUITE COOPERATIVE IN PROVIDING THAT ACCOUNT

12     INFORMATION.

13          CITY NATIONAL BANK ALSO PROVIDED COPIES OF THEIR EMAIL

14     COMMUNICATIONS WITH MR. HORWITZ, WHO WAS THE INDIVIDUAL

15     RUNNING THE SCHEME.

16          IN REVIEWING THAT INFORMATION THERE WERE A NUMBER OF

17     CONCERNING PIECES OF INFORMATION THAT COULD BE SEEN BY THE

18     RECEIVER.  A COUPLE OF EXAMPLES OF WHICH WERE PUT IN THE

19     OPPOSITION PAPERS THAT THE RECEIVER FILED.

20          THERE WAS A SHOCKING NUMBER OF FINANCIAL TRANSACTIONS

21     THAT TOOK PLACE IN THE HUNDREDS OF MILLIONS OF DOLLARS SHOWING

22     TRANSFERS OF MONEY BY AND BETWEEN MR. HORWITZ INDIVIDUALLY

23     AND THE BUSINESS ACCOUNTS  -- HIM BORROWING TENS OF MILLIONS OF

24     DOLLARS ON A PERSONAL LINE OF CREDIT PUMPING THAT MONEY RIGHT

25     INTO THE BUSINESS.

1          THE BANK COMMUNICATING TO MR. HORWITZ THAT THEY WERE

2    SUDDENLY CHANGING THEIR BANK POLICIES TO -- FOR WHATEVER

3    REASON.

4          ALL OF  -- AND I COULD GO ON AND ON AND ON, YOUR HONOR.

5    THERE'S A LOT  --

6          THE COURT:  OKAY.  BUT THAT WAS IN THE INFORMATION THAT

7    THE BANK PROVIDED, RIGHT?

8          MS. PHELPS:  IT WAS  -- NO.  WHAT WE COULD SEE WAS THE

9    TRANSACTIONS.  WHAT WE CANNOT SEE, AND WHAT WE ARE SEEKING IS

10   WHAT WAS IN THEIR DUE DILIGENCE FILES AS THEY INVESTIGATED THIS.

11   WHAT DID THEIR ANTI-MONEY LAUNDERING RED FLAG ALERTS SHOW

12   THEM.  HOW MANY RED FLAG ALERTS WERE THERE.  WHAT WERE THEY

13   TALKING ABOUT.  WHY DID THEY CHANGE THEIR POLICIES AND NOTIFY MR.

14   HORWITZ THAT SUDDENLY THEY HAD CHANGED THEIR POLICY AND HE

15   COULD NOT BORROW MONEY ANY LONGER ON A PERSONAL LINE OF

16   CREDIT IF IT WAS TO BE USED FOR BUSINESS PURPOSES.

17          AND, AGAIN, THERE'S A LOT THAT'S IN THERE.

18          BUT, NO, THIS WAS NOT INFORMATION THAT WAS PROVIDED.

19          WE  -- THE RECEIVER IS IN -- WHAT THE RECEIVER GOT INITIALLY

20   WAS THE BANK RECORDS AND EMAIL COMMUNICATIONS.

21          WHAT WE ARE LOOKING FOR NOW IS WHAT DID THE BANK KNOW

22   AND WHEN DID THE BANK KNOW IT.  IS THERE A CLAIM TO BE PURSUED.

23          WE ARE LOOKING FOR THAT INFORMATION.  WE HAVE NOT

24   ASSERTED THAT CLAIM.  BUT THE RECEIVER FEELS OBLIGATED TO AS AN

25   OFFICER OF THE COURT TO ANALYZE POTENTIAL ASSETS AND CLAIMS OF

1     THE ESTATE TO LOOK INTO THIS.

2          SO, SHE IS LOOKING FOR A SECOND WAVE OF INFORMATION

3     THAT HAS OBVIOUSLY STRUCK A NERVE WITH CITY NATIONAL.  WE

4     RECOGNIZE THAT.  BUT IT IS INFORMATION THAT SHE'S ENTITLED TO AND

5     THAT WE BELIEVE FALLS WELL WITHIN THE SCOPE OF THE RECEIVERSHIP

6     ORDER.

7          THE COURT:  SO, WHY DO THE ADR PROVISIONS NOT APPLY

8     HERE?

9          MS. PHELPS:  SEVERAL REASONS, YOUR HONOR.  AND I'D LIKE

10    TO GO THROUGH THAT.

11         FIRST OFF, THERE IS NO DISPUTE.  THIS IS AN INVESTIGATION.

12    EVERY SINGLE CASE THAT IS CITED, EVERY SINGLE CASE THAT IS CITED

13    BY CITY NATIONAL, A COMPLAINT HAS BEEN FILED OR AN ARBITRATION

14    HAS BEEN COMMENCED.  AND THERE IS DISCOVERY AND ACTIVITIES

15    TAKING PLACE IN THIS CASE.  THERE IS A DISPUTE.

16    `      I WOULD LIKE TO GO THROUGH ACTUALLY, YOUR HONOR, IN

17    SOME DETAIL THE ARBITRATION PROVISION ISSUES HERE.

18         WELL, I ASKED  -- WELL, OKAY.  I'LL GO BACK AND WE CAN

19    ADDRESS SOME OF THE OTHER ISSUES.

20         BUT NUMBER ONE, THE QUESTION IS WHETHER THERE IS A

21    DISPUTE.  THEIR OWN ADR LANGUAGE SPECIFICALLY CONTEMPLATES

22    THAT ONE PARTY IS SUING ANOTHER PARTY AND THAT THERE IS A

23    DOLLAR AMOUNT INVOLVED.  THEY'VE ACTUALLY SET DOLLAR

24    THRESHOLDS.

25         THERE'S NO DOLLAR AMOUNT INVOLVED HERE.  THE RECEIVER

1    IS SIMPLY CONDUCTING AN INVESTIGATION.

2         MORE IMPORTANTLY, YOUR HONOR, I DON'T KNOW HOW MUCH

3    TIME THE COURT HAD TO ACTUALLY LOOK AT THE AGREEMENTS AND THE

4    MANNER IN WHICH CITY NATIONAL BANK AMENDED THEM FROM TIME TO

5    TIME.

6         AND MY ATTEMPT AT  -- AND PUTTING IN EXHIBITS, INFORMATION

7    WAS  ACTUALLY TO TRY -- IT WAS NOT IN ANY WAY, SHAPE OR FORM TO

8    EXCLUDE ANY TYPE OF AN EXPLANATION BUT WAS TO POINT OUT WHAT

9    ACCOUNT AGREEMENT WAS IN PLACE AT THE TIME A PARTICULAR

10   ACCOUNT WAS OPENED.

11        AND I THINK THAT THE EXHIBIT THAT CITY NATIONAL PREPARED

12   DID THAT ADEQUATELY AND MAYBE A LITTLE MORE EFFICIENTLY THAN I

13   DID.  SO, THAT WAS MY ONLY INTENT IN PREPARING THOSE EXHIBITS.  NOT

14   IN ANY WAY TO MISLEAD ANYBODY.

15        BUT THE 2007 ACCOUNT AGREEMENT APPLIES TO ONLY ONE

16   ENTITY, WHICH IS ONE IN A MILLION PRODUCTIONS.  THAT'S ALL SPELLED

17   OUT, WHICH IS NOT A TERRIBLY SIGNIFICANT ENTITY IN THE SCHEME OF

18   THINGS HERE.

19        THAT AGREEMENT DOES, IN FACT, HAVE ARBITRATION

20   LANGUAGE IN IT.  IT IS ARBITRATION LANGUAGE THAT APPLIES

21   PRESUMABLY TO ALL ACCOUNT HOLDERS,  AND IT PROVIDES FOR FULL

22   DISCOVERY UNDER THE FEDERAL RULES OF CIVIL PROCEDURE.

23        THAT AGREEMENT WAS SUBSEQUENTLY AMENDED THREE OR

24   FOUR OR FIVE TIMES.  AND THAT ADR LANGUAGE WAS EXPRESSLY

25   CHANGED TO SAY, IF YOU HAVE AN ACCOUNT IN CALIFORNIA, THERE IS NO

1   ARBITRATION.  PERIOD.

2          THEN, AFTER THE RECEIVER SERVED HER SUBPOENA JUST TWO

3   MONTHS AGO IN FEBRUARY 2023.  THE SUBPOENA WAS SERVED IN

4   JANUARY.  THEY TOOK THAT LANGUAGE AND THEY COMPLETELY TURNED

5   IT ON ITS HEAD.  THEY GOT RID OF THE DISTINCTION OF IN CALIFORNIA

6   AND OUT OF CALIFORNIA.  THEY ADDED ARBITRATION LANGUAGE.  THEY

7   SEVERELY RESTRICTED THE RIGHTS TO CONDUCT DISCOVERY.  AND THEY

8   REMOVED WHAT WAS IN THE EARLIER AGREEMENTS THE OPPORTUNITY

9   TO USE THE JUDICIAL REFERENCE PROCESS WHICH PROVIDES FOR FULL

10  DISCOVERY AND FOR APPELLATE REVIEW.

11         SO, IT IS CLEAR THAT WHAT HAS HAPPENED HERE IS AFTER THE

12  RECEIVER SERVED HER SUBPOENA SHE HAS IN NO WAY, SHAPE OR FORM

13  ASSENTED TO ANY CHANGE IN THE LANGUAGE IN ANY OF THE

14  AGREEMENTS.

15         CITY NATIONAL REVISED ITS AGREEMENT TO TRY TO REMOVE

16  ALL DISCOVERY OPPORTUNITY, TO TRY TO REMOVE ANY OPPORTUNITY

17  TO APPEAL ANY DECISION, AND TO CONCEAL WHATEVER IT IS THAT

18  THEY'RE TRYING VERY HARD TO CONCEAL.

19         SO, AS OF RIGHT NOW THE RECEIVER HAS NOT ASSENTED TO

20  THE FEBRUARY 2023 AGREEMENT  AND THE EARLIER AGREEMENTS ARE

21  EXPRESS THAT ARBITRATION DOES NOT APPLY TO ACCOUNT HOLDERS IN

22  CALIFORNIA, WHICH THESE ARE

23         SO, THERE SIMPLY IS NO APPLICABLE ARBITRATION PROVISION

24  HERE.  ARGUABLY THE 2007 ARBITRATION PROVISION APPLIES TO THE

25  ONE ACCOUNT HOLDER WHO SIGNED THE AGREEMENT IN EFFECT AT

1   THAT TIME, WHICH HAS IN IT FULL DISCOVERY RIGHTS.  SO, IT'S VERY

2   DIFFERENT LANGUAGE THAN THEY'RE TRYING TO ASSERT RIGHT NOW.

3            SO, IN TERMS OF THE NUTS AND THE BOLTS OF WHAT'S

4   APPLICABLE HERE, YOUR HONOR, THERE IS NO ARBITRATION PROVISION.

5            ARGUABLY THERE IS A JUDICIAL REFERENCE PROVISION IF AND

6   WHEN THERE IS A DISPUTE.  BUT THERE IS NO DISPUTE YET.  SO, THAT

7   HASN'T EVEN BEEN TRIGGERED AND THEN DOESN'T APPLY.

8            AND WE CAN VISIT THAT ISSUE DOWN THE ROAD IF AND WHEN

9   THE RECEIVER DECIDES THAT THERE IS A CLAIM HERE TO PURSUE.

10           BUT AS OF RIGHT NOW THERE'S NOT.

11           SHE NEEDS THE INFORMATION.

12           IF CITY NATIONAL DOESN'T HAVE THESE RECORDS  -- AND

13   THERE WERE NO RED FLAG ALERTS.  AND THERE'S NOTHING TO WORRY

14   ABOUT, YOU KNOW.  IT'S BEEN REPRESENTED TO ME THAT THERE IS

15   NOTHING HERE.  OKAY.  THEN, THERE IS NO DISPUTE.  THERE IS NO CLAIM.

16   AND WE'LL ALL GO HOME.

17           BUT UNTIL THE RECEIVER HAS BEEN AFFORDED THAT

18   OPPORTUNITY TO CONDUCT THIS DISCOVERY AND GET THAT

19   INFORMATION, WE DON'T KNOW.

20           AND I KNOW THAT THE SEC'S INTENT WHEN THEY APPOINTED A

21   RECEIVER, AND I BELIEVE THAT THE DISTRICT COURT'S INTENT WHEN

22   THEY APPOINTED A RECEIVER, WAS TO APPOINT A FULL EQUITY

23   RECEIVER, FEDERAL EQUITY RECEIVER, GIVING THAT EQUITY RECEIVER

24   THE RIGHTS, THE DUTIES, THE OBLIGATIONS TO MARSHAL THE ASSETS

25   FOR THE BENEFIT OF THE DEFRAUDED VICTIMS.  AND THERE ARE A FEW

1    HUNDRED MILLION DOLLARS' WORTH OF DEFRAUDED VICTIMS HERE.

2            THE RECEIVER IS SIMPLY TRYING TO DO HER JOB AND TO

3    CONDUCT AN INVESTIGATION.

4            AND WHEN WE LOOK AT ALL OF THE CASES THAT ARE CITED BY

5    CITY NATIONAL BANK -- YOU KNOW, JAVITS VERSUS FIRST UNION  -- THERE

6    WAS A DISPUTE THERE.  THE RECEIVER HAD ACTUALLY FILED A LAWSUIT

7    AGAINST FIRST UNION.  AND THERE WAS ACTUALLY AN UNEQUIVOCAL,

8    APPLICABLE ARBITRATION PROVISION.  NEITHER OF THOSE ARE THE

9    FACTS IN THIS CASE.

10           WHEN WE LOOK AT SEAMAN VERSUS PRIVATE PLACEMENT

11   CAPITAL, SAME THING, THERE WAS A DISPUTE THERE.  THE RECEIVER HAD

12   FILED A LAWSUIT.  AND IN THAT CASE ACTUALLY  -- AND IT'S BEEN

13   MISREPRESENTED WHAT THAT CASE STANDS FOR  -- THAT CASE

14   ACTUALLY STANDS FOR WHO IS TO DECIDE THE ISSUE OF ARBITRATION

15   NOT WHETHER OR NOT THE RECEIVER IS BOUND BY ARBITRATION.

16           IF WE LOOK AT CAPITAL LIFE INSURANCE VERSUS GALLAGHER,

17   SAME THING.  THE RECEIVER APPEARED IN THAT CASE IN A

18   REPRESENTATIVE CAPACITY IN A CLASS ACTION AND NOT IN THE

19   CAPACITY AS RECEIVER.  THE MOTION TO COMPEL ARBITRATION IN THAT

20   CASE WAS ACTUALLY DENIED.  SO, THAT CASE ISN'T TERRIBLY HELPFUL

21   TO THEM.

22           IN SBA VERSUS COKEY CAPITAL MANAGEMENT, SAME THING.

23   THERE WAS A DISPUTE.  THERE WAS A COMPLAINT THAT WAS ACTUALLY

24   FILED.  THERE WAS NO DISPUTE THAT THERE WAS AN AGREEMENT TO

25   ARBITRATE IN THAT CASE.  AND THE COURT FOUND THAT EVERYTHING

1    FELL WITHIN THAT.

2            THOSE ARE NOT THE CASE – THE FACTS HERE, YOUR HONOR.

3    THERE IS NO ARBITRATION PROVISION AND THERE IS NO DISPUTE.

4            IN <u>MORAN VERSUS SPED</u>, AGAIN  --  IN A LOT  -- ALL OF THESE

5    CASES ACTUALLY ARE NOT IN THIS JURISDICTION I MIGHT ADD.  THEY'RE

6    IN THE TENTH CIRCUIT.   THEY'RE IN NEW YORK.  THEY'RE IN THE SIXTH

7    CIRCUIT.  SO, NONE OF THESE ARE ACTUALLY EVEN BINDING ON THE

8    COURT.

9            IN <u>MORAN VERSUS SPED</u>, AGAIN, THERE WAS A DISPUTE<u>.</u>

10   THERE WAS A COMPLAINT THAT WAS ACTUALLY FILED.  THERE WERE

11   ALLEGATIONS IN THAT CASE.  THE ARBITRATION CLAUSE WAS IN A

12   CONTRACT THAT WAS A RESULT OF FRAUD OR COLLUSION.

13           THOSE ARE NOT THE FACTS IN THIS CASE.  THAT CASE IS ALSO

14   IRRELEVANT HERE.

15           WHAT WE DO HAVE IS A CASE HERE IN THE CENTRAL DISTRICT

16   OF CALIFORNIA <u>WINKLER VERSUS MC CLOSKY</u> WHERE THE COURT

17   ACTUALLY DID FIND  -- DID DECLINE TO COMPEL ARBITRATION.

18           NOW, THE FACTS ARE DIFFERENT.  AND THEY ARE DIFFERENT

19   JUST AS THE ONE OTHER CASE THAT WAS CITED BY THEM IN <u>WIAND</u>

20   <u>VERSUS SCHNEIDERMAN</u> WHERE  -- THEY'RE FRAUDULENT TRANSFER

21   COMPLAINTS  -- AGAIN, COMPLAINTS, DISPUTES THAT WERE ACTUALLY

22   FILED AND PENDING.

23           THOSE ARE NOT THE FACTS HERE, YOUR HONOR.

24           AND, SO, THIS REALLY SEEMS TO BE QUITE INAPPLICABLE.

25           THE FIFTH CIRCUIT HAS GONE THE OTHER WAY.  THE FIFTH

1    CIRCUIT IS MORE INCLINED TO CONSOLIDATE AND ALLOW A RECEIVER TO

2    PURSUE CLAIMS IN ONE FORM RATHER THAN HAVING TO FILE A TON OF

3    DIFFERENT ARBITRATION CLAUSES.  AND FOR POLICY REASONS AND

4    OTHER REASONS DID NOT COMPEL ARBITRATION THERE.

5           SO, YOUR HONOR, ALL OF THAT IS TO SAY THAT NOT ONLY IS

6    THERE NO ARBITRATION PROVISION, THERE'S NO DISPUTE.

7           AND, SO, IT  --  IT -- AND WE HAVE THE DISTRICT COURT WHO

8    HAS PRETTY EXPRESSLY AUTHORIZED THE RECEIVER TO CONDUCT

9    DISCOVERY.

10           I WILL ADD, YOUR HONOR, THAT IF THERE'S ANY AMBIGUITY ON

11    THAT -- AND I HAVE SPOKEN TO THE SEC -- I AM HAPPY TO GO BACK TO

12    THE DISTRICT COURT AND SEEK CLARIFICATION ON WHETHER OR NOT

13    SHE INTENDED TO SOMEHOW PROHIBIT THE RECEiVER FROM ISSUING

14    SUBPOENAS AND CONDUCTING DISCOVERY BECAUSE IT IS DONE AGAIN

15    AND AGAIN AND AGAIN.

16           I HAVE PERSONALLY SEEN THE EXPRESS LANGUAGE IN THE

17    ORDER APPOINTING THE RECEIVER THAT THEY CAN ISSUE SUBPOENAS.

18           I HAVE GONE BACK TO DISTRICT COURTS AND ASKED FOR THAT

19    AUTHORITY.  A RECEIVER IN MY EXPERIENCE HAS NEVER BEEN DENIED

20    THE OPPORTUNITY TO ISSUE SUBPOENAS TO CONDUCT DISCOVERY IN

21    INVESTIGATING CLAIMS IN A RECEIVERSHIP NATURE OF THIS  -- OF THIS

22    KIND.

23           SO, THIS IS A VERY DIFFERENT CIRCUMSTANCE THAN A PARTY

24    DISPUTE OR A NON-PARTY SUBPOENA.

25           I MEAN, THE RECEIVER IS NOT A STRANGER TO THE CASE.  I

1    MEAN, THE RECEIVER IS AN ARM OF THE COURT HERE AND HAS BEEN

2    ASKED BY THE COURT TO CONDUCT AN INVESTIGATION.  AND THAT IS

3    SIMPLY WHAT SHE IS TRYING TO DO.

4         WE DO UNDERSTAND AND RESPECT CITY NATIONAL BANK'S

5    SENSITIVITY TO PRODUCING WHAT IS VERY TOUCHY INFORMATION FOR

6    THEM.  WE UNDERSTAND THAT.  AND IF THERE'S NOTHING THERE, THEN,

7    THIS MATTER IS SIMPLY RESOLVED.  IF THERE IS SOMETHING THERE, AND

8    THE RECEIVER DETERMINES THAT THERE IS A CLAIM OR A DISPUTE

9    THERE, THEN, WE WILL HAVE TO ADDRESS THAT AT THE RIGHT TIME.

10        THE APPLICABLE AGREEMENT  -- IF THERE IS AN AGREEMENT

11    APPLICABLE HERE IS CERTAINLY NOT AN AGREEMENT THAT WAS THRUST

12    UPON THE RECEIVER POST-RECEIVER THAT SHE DID NOT ASSENT TO.

13        IN FACT, AGAIN, IN MY EXPERIENCE I KNOW OF NO DISTRICT

14    COURT JUDGE WHO WOULD PERMIT A RECEIVER TO ENTER INTO AN

15    ARBITRATION CLAUSE IN A NEW CONTRACT.

16        I HAVE HAD COURT AFTER COURT EXPRESSLY STRIKE THAT

17    LANGUAGE FROM VENDOR AGREEMENTS BECAUSE THE DISTRICT COURT

18    WANTS TO MAINTAIN CONTROL OVER ANY DISPUTES.

19        SO, I WOULD ASK THE COURT FOR A FINDING AT A MINIMUM

20    THAT THE FEBRUARY 2023 AGREEMENT HAS NOT BEEN AGREED TO, IS

21    NOT APPLICABLE TO THE RECEIVER OR ANY  -- THE ACCOUNT HOLDERS.

22        CITY NATIONAL BANK CERTAINLY HAD AN OPPORTUNITY IN

23    THEIR REPLY TO COME FORWARD AND SAY OH, YES.  HERE IS ASSENT TO

24    THAT CONTRACT.  THEY WERE NOTICEABLY SILENT ON THE ISSUE.  I

25    SUSPECT BECAUSE NOBODY HAS ASSENTED TO THAT CONTRACT.  SO THE

1    BEST THAT THEY HAVE AT THIS POINT IS THE JUDICIAL REFERENCE

2    PROCESS IF AND WHEN THERE IS A DISPUTE TO BE INITIATED.

3         THE COURT:  ALL RIGHT.

4         AND JUST TO BE CLEAR WHEN THE DISTRICT JUDGE IN THE

5    LITIGATION LEADING UP TO THE DISTRICT JUDGE'S APPOINTMENT OF THE

6    RECEIVER, THERE WAS NO SPECIFIC DISCUSSION OF THIS ISSUE.

7         CORRECT?  -- IN TERMS OF AN ARBITRATION, THE

8    APPLICABILITY, IF ANY, OF AN ARBITRATION AGREEMENT?

9         MS. PHELPS :  NOT TO  --

10        THE COURT:  OKAY.

11        MS. PHELPS:  -- MY KNOWLEDGE.  I DON'T BELIEVE IT WOULD

12   HAVE ARISEN UNTIL IT WAS RAISED BY CITY NATIONAL BANK.

13        THE COURT:  ALL RIGHT.

14        ALL RIGHT.  THANK YOU, COUNSEL.

15        MS. PHELPS:  THANK YOU.

16        THE COURT:  I'LL HEAR FROM THE BANK.

17        MR. ABASCAL:  YES, YOUR HONOR.  THANK YOU.

18        I THINK MS. PHELPS'S ARGUMENT CONFIRMS OUR POSITION.

19        SHE STATED VERY CLEARLY THAT THE PURPOSE OF THIS

20   SUBPOENA IS TO FIND OUT WHAT CITY NATIONAL KNEW AND WHEN IT

21   KNEW IT IN ORDER TO BRING A POTENTIAL CLAIM AGAINST CITY NATIONAL

22   BANK.  THAT'S WHAT SHE ADMITTED.

23        AND THAT'S CLEAR AND APPARENT FROM THE SUBSTANCE OF

24   THE SUBPOENA.  YOU HAVE 122 REQUESTS, ALL OF WHICH ARE FOCUSED

25   ON WHAT MS. PHELPS SAID – WHAT DOES CITY NATIONAL KNOW, WHEN

1    DID THEY KNOW IT, AND HOW DO THEY ACT.

2            TWENTY SIX OF THE REQUESTS RELATE TO THE BANK'S

3    POLICIES AND PROCEDURES.

4            FIFTEEN REQUESTS RELATE TO ITS DUE DILIGENCE.  WHAT DID

5    IT DO REGARDING THE ACCOUNT HOLDERS.  HOW DID IT REACT WHEN IT

6    SAW ACTIVITY BY THE ACCOUNT HOLDERS.

7            THERE ARE EIGHT REQUESTS RELATING TO INTERNAL

8    COMMUNICATIONS AND DOCUMENTS RELEVANT TO THE INTERNAL

9    COMMUNICATIONS.  WHO WITHIN CITY NATIONAL BANK WAS TALKING TO

10   WHOM AND WHAT HAPPENED.

11           DOCUMENTS FROM OUR COMPLIANCE DEPARTMENT,

12   DOCUMENTS REGARDING THE BANK'S SECRECY ACT, AML.  THIS IS AN

13   ADVERSARIAL SUBPOENA.  IT'S A SUBPOENA INTENDED TO BRING A CLAIM

14   AGAINST CITY NATIONAL BANK.  AND SHE ADMITTED IT HERE.

15           AND IT'S CLEAR FROM THE CHRONOLOGY THAT I POINTED OUT

16   THAT THIS IS A PARTY  -- A LAWYER WHO HAS BROUGHT BECAUSE

17   THERE'S A CONFLICT AND WHO IS INTENDING TO BRING CLAIMS.

18           NOW, THE ORDER APPOINTING RAINES FELDMAN SAID

19   SPECIFICALLY THAT THEY HAVE THE AUTHORITY TO BRING LITIGATION OR

20   ARBITRATION.  THAT'S CLEAR IN THE JANUARY 2022 PROVISION  -- OR,

21   SORRY, THE COURT'S ORDER APPOINTING RAINES FELDMAN.

22           AND IT SAYS EXPLICITLY THAT THEY HAVE THE POWER TO BRING

23   LITIGATION OR ARBITRATION.

24           SO, THE COURT DID CONTEMPLATE THAT THERE COULD BE

25   BINDING ARBITRATION IN THIS CASE.

1          AND THAT'S THE CIRCUMSTANCES UNDER WHICH SHE WAS

2     APPOINTED.

3          IT'S CLEAR THAT EVERY SINGLE ENTITY INVOLVED IN THIS CASE

4     HAS A BINDING ADR PROVISION.  AND WE'VE OUTLINED THAT IN OUR

5     DOCUMENTS.  EVERY SINGLE ENTITY THAT SHE STANDS IN THE SHOES OF

6     HAS A BINDING ADR PROVISION.

7          ONE HAS AT INCEPTION ONE THAT CALLS FOR ARBITRATION.

8     OTHERS HAD AT INCEPTION SOME THAT CALLED FOR JUDICIAL

9     REFERENCE.  AND THEN THEY WERE UPDATED.  AND THEN THE LATEST

10    ONE CALLS FOR ARBITRATION.

11         NOW, THERE IS A QUESTION OF WHETHER THE – THE NOTICE

12    WAS ADEQUATE AND WHETHER THE LATER ONE APPLIES TO CERTAIN

13    ENTITIES.  THAT DOESN'T HAVE TO BE RESOLVED HERE.  BECAUSE IT'S

14    CLEAR THAT EVERY SINGLE ENTITY HAS AN ADR PROVISION.

15         NOW, THE QUESTION OF WHETHER THERE'S A DISPUTE, THAT IS

16    BOUND  -- IS GOVERNED BY THE CONTRACT.

17         AND THE CONTRACT DEFINES DISPUTE BROADLY.  IT SAYS A

18    DISPUTE IS ANY DISAGREEMENT BETWEEN YOU AND US THAT WE ARE

19    NOT ABLE TO RESOLVE INFORMALLY.

20         THIS IS A CONTRACTUAL QUESTION.  WHAT DOES THE

21    CONTRACT  -- HOW DOES THE CONTRACT DEFINE  DISPUTE.  AND THAT

22    DEFINITION OF DISPUTE IS IN EVERY SINGLE ACCOUNT AGREEMENT.  IT'S

23    A VERY BROAD DEFINITION.

24         WE OBVIOUSLY HAVE A DISAGREEMENT THAT WE WERE NOT

25    ABLE TO RESOLVE INFORMALLY.  THAT'S APPARENT.  WE'RE HERE IN

1    COURT TODAY.

2              SO, THERE CLEARLY IS A DISPUTE.

3              AND THE CASE LAW IS VERY CLEAR, YOUR HONOR.  THERE'S

4    EIGHT CASES FROM FIVE DIFFERENT CIRCUITS.  ALL OF WHICH HAVE HELD

5    THAT AN EQUITY RECEIVER IS BOUND BY ADR PROVISIONS AND BOUND BY

6    THE CONTRACT AND CANNOT REJECT THAT CONTRACT.

7              THE SECOND CIRCUIT, THE SIXTH CIRCUIT, THE NINTH CIRCUIT,

8    THE TENTH CIRCUIT, THE ELEVENTH CIRCUIT HAVE ALL HELD THAT.

9              AND LET'S GO THROUGH.  FIRST, WE'LL BEGIN WITH THE

10   SECOND CIRCUIT.  THE MACINTYRE CASE.  A CASE EXACTLY LIKE THIS

11   ONE.

12             OKAY.  IN MACINTYRE, AN SEC RECEIVER BROUGHT A

13   SUBPOENA AGAINST LOEB & LOEB, A LAW FIRM, SEEKING DOCUMENTS.

14   LOEB & LOEB SAID, HEY, OUR ENGAGEMENT LETTER HAS AN ADR

15   PROVISION.

16             AND THE COURT QUASHED THE SUBPOENA.  AND THE COURT

17   SAID YOU CANNOT RELY ON THE APPOINTMENT OF A RECEIVER AND

18   EXERCISE RULE 26 DISCOVERY WHEN YOU'RE BOUND BY AN ADR

19   PROVISION  -- THAT THE RECEIVER STANDS IN THE SHOES OF THE ENTITY

20   AND IS BOUND BY THE CONTRACT FOR THE ENTITY.

21             THIS CIRCUIT  -- MS. PHELPS SAID THAT THE CENT

22   RAL DISTRICT HASN'T REACHED THIS QUESTION OTHER THAN IN WINKLER.

23   I DISAGREE.

24             IN THE SHARP VERSUS DUFF PHELPS  CASE, WHICH WE CITE,

25   2001 WESTLAW 8154951, JUDGE FISCHER HELD THAT A RECEIVER

1    APPOINTED IN EQUITY IS BOUND BY THE FORUM SELECTION CLAUSE IN

2    THE CONTRACT.  THE RECEIVER STANDS IN THE SHOES OF THE ENTITY.

3        IN THE SOUTHERN DISTRICT OF CALIFORNIA IN THE SEAMAN

4    CASE, JUDGE BASHANT HELD AN SEC RECEIVER WAS COMPELLED TO

5    ARBITRATE.

6        NOW, THERE THE  -- THERE WERE TWO CONTRACTS

7    APPLICABLE.  ONE HAD AN ADR PROVISION.  AND ANOTHER ONE DIDN'T.

8    THERE WERE PROMISSORY NOTES THAT DID NOT HAVE AN ADR

9    PROVISION.  AND A SUBSCRIPTION AGREEMENT THAT DID.

10        AND JUDGE BASHANT HELD, WELL, YOU'RE STILL BOUND BY THE

11    CONTRACT.  YOU'RE BOUND BY THE ADR PROVISION.  AND THEY HAD TO

12    ARBITRATE.

13        THE SAME IS TRUE IN THE SMALL BUSINESS ADMINISTRATION

14    CASE THAT MS. PHELPS FOCUSED ON.  ARBITRATION WAS COMPELLED.

15    THERE THE COURT HELD AGAIN THAT THE RECEIVER STANDS IN THE

16    SHOES OF THE ENTITY AND IS BOUND BY THE CONTRACT.

17        AND THE REASON IS BECAUSE THE RECEIVER IS SEEKING TO

18    BRING A CLAIM BASED ON A RELATIONSHIP.  AND THEY CAN'T TAKE

19    ADVANTAGE OF THAT RELATIONSHIP WITHOUT BEING BOUND BY THE

20    CONTRACTS AND AGREEMENTS THAT FORM THE RELATIONSHIP.

21        AND THAT'S BEEN CONSISTENTLY HELD THROUGHOUT THE

22    CASES, THAT YOU HAVE TO  -- IF YOU'RE GOING TO SUE ON THE BASIS OF

23    A RELATIONSHIP, YOU HAVE TO BE BOUND BY THE AGREEMENTS THAT

24    FORM THE RELATIONSHIP.

25        AND I WANT TO CLARIFY ONE ISSUE, TOO, THAT MS. PHELPS

1  SAID A NUMBER OF TIMES.

2          SHE SAID, WE'RE HERE TO PROTECT THE INVESTORS OR TO

3  BRING CLAIMS ON BEHALF OF THE INVESTORS.  SHE DOES NOT STAND IN

4  THE SHOES OF THE INVESTORS.  NOTHING IN THAT ORDER STANDS –

5  PROVIDES THAT AN EQUITY RECEIVER STANDS IN THE SHOES OF THE

6  INVESTORS OR THE CREDITORS.  THAT'S BEEN MADE VERY CLEAR IN ALL

7  OF THE CASE LAW.

8          ALL OF THE CASE LAW HOLDS THAT SHE STANDS IN THE SHOES

9  OF THE ENTITY OF ONE IN A MILLION CAPITAL AND ITS SUBSIDIARIES.  SHE

10  DOES NOT STAND IN THE SHOES OF THE INVESTOR.  SHE CANNOT BRING A

11  CLASS ACTION ON BEHALF OF THE INVESTORS.  SHE DOES NOT STAND IN

12  THE SHOES OF THE CREDITOR.  SHE CANNOT BRING A CLAIM ON BEHALF

13  OF THE CREDITORS.  SHE STANDS IN THE SHOES OF THE WRONGDOER.

14          AND HER RIGHTS AND THE CLAIMS THAT SHE CAN BRING ARE

15  ONLY THOSE THAT THE WRONGDOER CAN BRING.

16          AND THOSE ARE BASED ON THE RELATIONSHIP THAT'S

17  GOVERNED BY THE CONTRACT.  AND EVERY SINGLE CONTRACT HAS AN

18  ADR PROVISION.

19          CITY NATIONAL IS NOT SEEKING ANY WINDFALL.  WE'RE NOT

20  AFRAID OF ANY LITIGATION.  WE'RE JUST TRYING TO ENFORCE THE

21  AGREEMENTS THAT THE RECEIVER IS BOUND BY.

22          AND SHE HAS A CHOICE.  SHE CAN BRING A CLAIM OR SHE

23  CANNOT.  BUT SHE DOESN'T HAVE THE RIGHT TO SEEK DISCOVERY

24  THROUGH RULE 26 PRIOR TO BRINGING AN ARBITRATION OR JUDICIAL

25  REFERENCE CLAIM.  THAT IS NOT IN ANY OF THE CONTRACTS.  IT'S NOT IN

1    THE COURT'S ORDER.  AND IT CAN'T BE IN THE COURT'S ORDER BECAUSE

2    THE CASES HAVE HELD REPEATEDLY THAT THE COURT'S ORDER

3    APPOINTING AN EQUITY RECEIVER JUST DEFINES A RECEIVER'S DUTIES

4    BUT NOT THE POWER .

5          THE POWER OF AN EQUITY RECEIVER IS DEFINED BY THE CASE

6    LAW.  AND THERE'S EIGHT CASES IN FIVE CIRCUITS THAT HAVE ALL HELD

7    CONSISTENTLY THAT THE RECEIVER STANDS IN THE SHOES OF THE

8    ENTITY AND IS BOUND BY THE ADR PROVISIONS.  ALL OF THESE --

9    CAPITAL, JAVITS, MACINTYRE, MORAN, SMALL BUSINESS ADMINISTRATION,

10   SEAMAN, SHARP, WIAND -- ALL HAVE COMPELLED  -- HAVE STATED THAT

11   THE RECEIVER MUST BE BOUND BY ANY ADR PROVISION.

12          I WANT TO POINT OUT THE WIAND CASE BECAUSE MS. PHELPS

13   MENTIONED IT.

14          WIAND REJECTED THE ARGUMENT THAT THEY MADE IN THEIR

15   BRIEF AND THAT SHE MADE TODAY.

16          SHE SAID THAT THERE'S A POLICY TO HAVE ALL CLAIMS

17   BROUGHT IN ONE COURT.  AND SHE RELIED ON THE JANVEY CASE TO CITE

18   THAT.

19          JANVEY IN THE VERY NEXT SENTENCE WHERE IT SAYS THAT IT

20   SAYS, BUT WE CAN'T BE BOUND BY THE POLICY.  WE HAVE TO FOLLOW

21   THE LAW AND WHAT THE SUPREME COURT SAYS.

22          AND IN WIAND, THE COURT SPECIFICALLY SAID THAT THIS

23   POLICY OF TRYING TO COMBINE CASES TOGETHER DOESN'T APPLY.  IT

24   REJECTED THAT VERY ARGUMENT.  THAT'S IN THE ELEVENTH CIRCUIT.

25          AND THERE THE COURT HELD THAT THE RECEIVER APPOINTED

1   IN A PONZI SCHEME CASE JUST LIKE THIS WAS COMPELLED TO ARBITRATE

2   CLAWBACK SUITS.

3          NOW, IN THAT CASE THERE WAS AN ARBITRATION THAT TOOK

4   PLACE.  AND IN THAT ARBITRATION THE RECEIVER SUED PEOPLE WHO

5   HAD BENEFITTED FROM THE PONZI SCHEME.  AND THOSE WHO

6   BENEFITTED WON.  AND, SO, THE RECEIVER DIDN'T GET A JUDGMENT.  SO,

7   THE RECEIVER THEN APPEALED AND TRIED TO UNWIND THE ARBITRATION

8   AWARD SAYING WE SHOULD HAVE BEEN COMPELLED TO ARBITRATE.  AND

9   THE COURT UPHELD THE DECISION TO ARBITRATE AND IT UPHELD THE

10   ARBITRATION AWARD SAYING THAT THE RECEIVERS ARE BOUND BY THE

11   CONTRACTS.  THEY STAND IN THE SHOES OF THE ENTITY.  AND THE ADR

12   PROVISION APPLIED.

13          SO, EVERY SINGLE CASE HAS  -- THAT HAS LOOKED AT THAT

14   ISSUE HAS HELD THAT THE RECEIVER IS BOUND BY THE ADR PROVISIONS.

15          THAT'S EVEN IN THE CASE WHERE THE AGREEMENT WITH THE

16   ADR PROVISION WAS DRAFTED BY THE WRONGDOER.  NOW, WE DON'T

17   HAVE THAT HERE.  WE HAVE CITY NATIONAL BANK'S AGREEMENTS.

18          AND I CAN TELL YOU CITY NATIONAL BANK DID NOT CHANGE ITS

19   – THE AGREEMENT THAT IT HAS FOR EVERY ONE OF ITS CUSTOMERS JUST

20   FOR THIS LITIGATION AS WAS SUGGESTED.

21          WE HAVE A BANK WITH  -- WITH MANY, MANY DIFFERENT

22   CUSTOMERS OBVIOUSLY.

23          BUT EVEN IN CASES WHERE THE WRONGDOER DRAFTED THE

24   AGREEMENT, THE COURTS HAVE ENFORCED THAT ADR PROVISION.

25          THAT WAS THE CASE IN MORAN WHERE THE PERSON WHO WAS

1    CONVICTED AND ENGAGED IN THE PONZI SCHEME HAD DRAFTED THE

2    AGREEMENT THAT HAD THE ADR PROVISION.  AND THE COURT ENFORCED

3    THAT AGREEMENT.

4           SO, THE RECEIVER HASN'T CITED ONE PUBLISHED CASE  -- NOT

5    ONE PUBLISHED CASE THAT SUPPORTS HER POSITION.  THERE'S TWO

6    CASES THAT SHE MENTIONED.  I WANT TO GO OVER THEM.

7           THE FIRST IS THE <u>JANVEY</u> CASE.  THE <u>JANVEY</u> CASE INVOLVED

8    THE STANFORD PONZI SCHEME OUT OF TEXAS, A BIG PONZI SCHEME AS

9    WE KNOW.  HUNDREDS OF MILLIONS OF DOLLARS.

10          SO, IN STANFORD THE RECEIVER SUED THE EMPLOYEES WHO

11   WORKED FOR THE ENTITY THAT ENGAGED IN THE PONZI SCHEME.

12          AND THE RECEIVER SUED ON BEHALF OF STANFORD BANK.

13          NOW, STANFORD BANK DID NOT EMPLOY ANY OF THOSE

14   EMPLOYEES.  IT WAS A DIFFERENT STANFORD ENTITY THAT EMPLOYED

15   THOSE EMPLOYEES.  AND, SO, THE EMPLOYEES SAID, LOOK, WE HAVE AN

16   ADR PROVISION.  YOU CAN'T SUE US.  AND THE RECEIVER SAID NO.  YOU

17   DON'T  -- YOU MAY HAVE AN ADR PROVISION WITH ENTITY ONE, BUT I'M

18   SUING ON BEHALF OF THE BANK.  YOU DON'T HAVE AN ADR PROVISION

19   THERE.

20          AND THE COURT REFUSED TO COMPEL ARBITRATION.  WHY?

21   BECAUSE THERE WAS NOT A BINDING ADR PROVISION.

22          THERE WAS ONLY ONE EMPLOYEE, AN EMPLOYEE NAMED JUISTI

23   WHO HAD AN ADR PROVISION WITH THE BANK.

24          AND AS TO EMPLOYEE JUISTI, THE COURT HELD WELL, YOU'VE

25   WAIVED YOUR ADR PROVISION BECAUSE YOU PARTICIPATED IN A

1   LITIGATION -- WHICH WE HAVEN'T DONE.  WE HAVE NOT PARTICIPATED --

2   THAT'S – THAT'S WHY WE'RE HERE.  YOU KNOW, WE'RE TRYING TO

3   ENFORCE THE ADR PROVISIONS.

4          SO  -- SO JANVEY IS  -- IS JUST DISTINGUISHABLE BECAUSE

5   THERE WAS NOT AN ENFORCEABLE ADR PROVISION.

6          THE ONLY OTHER CASE THAT'S REFERENCED IS THE WINKLER

7   CASE.  THAT'S AN UNPUBLISHED CASE.  IT SHOULDN'T' BE RELIED UPON.

8          THAT'S A CASE BEFORE JUDGE OLGUIN WHERE HE ORDERED  --

9   AND IT SAYS EXPLICITLY IN THE OPINION THIS IS NOT TO BE PUBLISHED.

10          AS COUNSEL SAID, IT'S A FRAUDULENT CONVEYANCE CASE.  IT

11   WAS A DIFFERENT CIRCUMSTANCE.  A DISGORGEMENT ORDER HAD

12   ALREADY BEEN ISSUED.  AND IT WAS SEEKING A FRAUDULENT

13   CONVEYANCE CASE.

14          AND THERE THE COURT MISAPPLIED THE BANKRUPTCY LAW.

15          THE COURT APPLIED THE LAW APPLICABLE TO BANKRUPTCY

16   TRUSTEES.  AND THE RECEIVER HAS TRIED TO DO THAT HERE AS WELL.

17   IN HER BRIEF SHE SAYS THAT THE RECEIVER HAS THE POWER TO REJECT

18   CONTRACTS.  RECEIVERS DO NOT  -- EQUITY RECEIVERS DO NOT HAVE

19   THE POWER TO REJECT CONTRACTS.

20          THAT POWER IS TO – IS FOR BANKRUPTCY TRUSTEES IN

21   11 USC 365.  THAT DOES NOT APPLY TO EQUITY RECEIVERS.  SHE DOES

22   NOT HAVE THE POWER TO REJECT THESE CONTRACTS.  SHE IS BOUND BY

23   THE CONTRACTS.  SHE STANDS IN THE SHOES OF THE ENTITIES AND IS

24   BOUND BY ALL OF THE ADR PROVISIONS AS IS CLEAR FROM EVERY

25   SINGLE PUBLISHED CASE THAT HAS LOOKED AT THIS ISSUE.

1              LET ME JUST CLOSE, YOUR HONOR, BY SAYING THIS.

2              WE'RE NOT SEEKING A WINDFALL.  YOU KNOW, SHE  -- ALL CITY

3     NATIONAL BANK IS ASKING IS THAT ITS AGREEMENT BE ENFORCED.

4              SHE HAS OPTIONS.  SHE CAN GO AND BRING A CLAIM.   IF SHE

5     BELIEVES A JUDICIAL REFERENCE APPLIES, SHE CAN BRING IT THERE.

6     SHE CAN  -- WE BELIEVE THE ARBITRATION APPLIES.  WE'LL SORT THAT

7     OUT.

8              THERE IS NOTHING IN THE AGREEMENTS  -- NOT A SINGLE THING

9     IN ANY OF THESE AGREEMENTS THAT ALLOW FOR RULE 26 DISCOVERY

10    PRIOR TO FILING A LAWSUIT.

11             WE CLEARLY HAVE A DISPUTE UNDER THE AGREEMENTS.  THAT

12    IS A CONTRACTUAL ISSUE.  IT'S NOT A LEGAL ISSUE -- NOT BY CASE LAW.

13    THE CONTRACTS CLEARLY DEFINE DISPUTE VERY BROADLY.

14             AND I'LL JUST POINT OUT JUST BY ONE EXAMPLE.  THE MALEN

15    DECLARATION, EXHIBIT I, PAGE 100 HAS A DEFINITION OF THE DISPUTE.

16    BUT YOU'LL SEE IT IN EVERY SINGLE ONE OF THE AGREEMENTS.  ALL OF

17    THE AGREEMENTS HAVE THAT BROAD LANGUAGE OF DISPUTE.

18             AND WE HAVE A DISPUTE.  AND THAT HAS TO BE TAKEN IN THE

19    ADR PROVISIONS.  IT CAN'T BE IN THIS COURT.

20             THANK YOU, YOUR HONOR.

21             THE COURT:  WELL, I UNDERSTAND  -- AND, OF COURSE, I'LL

22    HEAR MORE FROM THE RECEIVER – BUT I UNDERSTAND THEIR ARGUMENT

23    THAT THERE -- THERE IS  -- THEY DON'T HAVE A DISPUTE NOW WITH CITY

24    NATIONAL BANK.  THEY WOULD LIKE RECORDS FROM CITY NATIONAL

25    BANK.

1          AND AFTER THE RECEIVER REVIEWS THE RECORDS, THE

2    RECEIVER MAY OR MAY NOT HAVE A DISPUTE.  IN WHICH CASE THE TERMS

3    OF THE ARBITRATION AGREEMENT WOULD KICK IN.

4          BUT I UNDERSTAND THE RECEIVER'S ARGUMENT TO BE THAT AT

5    THIS POINT THERE IS NO DISPUTE.  THE RECEIVER WANTS TO KNOW WHAT

6    INFORMATION CITY NATIONAL BANK HAS, THAT THE RECEIVER HAS NOT

7    NECESSARILY AT THIS POINT CLAIMING HERSELF TO BE IN DISPUTE WITH

8    THE BANK.

9          MR. ABASCAL:  BUT THAT'S GOVERNED BY THE CONTRACT.

10          THE COURT:  THE CONTRACT YOU SAID DEFINES DISPUTE

11    BROADLY.  BUT MAYBE YOU CAN POINT ME TO THE LANGUAGE.

12          BUT DOES IT DEFINE DISPUTE TO INCLUDE A REQUEST FOR

13    INFORMATION?

14          BECAUSE I THINK THAT – THAT'S HOW THE RECEIVER IS

15    DEFINING IT.

16          I UNDERSTAND THERE IS A DISPUTE REGARDING WHETHER THE

17    ARBITRATION CLAUSE APPLIES.  BUT WHAT I HEAR THEM SAYING IS THAT

18    RIGHT NOW THE RECEIVER AND THE BANK ARE NOT ADVERSE.  THE

19    RECEIVER IS SIMPLY LOOKING TO GET INFORMATION FROM THE BANK.

20          MR. ABASCAL:  WELL, FIRST, YOUR HONOR, WE'RE CLEARLY

21    ADVERSE.  SHE'S ASKING FOR A TOLLING AGREEMENT.  SHE'S ASKED FOR

22    A DOCUMENT HOLD NOTICE.  SHE'S A CONFLICTS COUNSEL.

23          WE'RE ADVERSE  -- IF WE WEREN'T ADVERSE  --

24          THE COURT:  TELL ME A LITTLE BIT MORE ABOUT THAT.

25          MR. ABASCAL:  SURE.

1          THE COURT:  TELL ME WHY IS IT THAT  -- THAT – THAT YOU ARE

2    ADVERSE AT THIS POINT.  BECAUSE THEY ASKED FOR A TOLLING

3    AGREEMENT?

4          WHY ELSE?

5          MR. ABASCAL: THE –

6          THE COURT:  YOU THINK THAT  -- ESSENTIALLY YOU THINK THE

7    BANK IS THE TARGET OF AN INVESTIGATION?.

8          MR. ABASCAL:  CLEARLY.  SHE SAID THAT TODAY.

9          SHE – THE RECEIVER HIRED ONE COUNSEL, KATTEN MUCHIN.

10   AND KATTEN MUCHIN DECIDED THEY COULD NOT CONTINUE AND PURSUE

11   THIS SUBPOENA.  AND THEY DID SO BECAUSE ETHICALLY THEY WOULD BE

12   BARRED FROM BEING ADVERSE TO A CLIENT.

13         SO, THEY WENT TO COURT.  THE RECEIVER WENT TO COURT

14   AND SAID WE NEED TO HAVE RETAINED CONFLICTS COUNSEL IN ORDER

15   TO CONTINUE AND BRING CLAIMS AGAINST PEOPLE WHOM KATTEN

16   MUCHIN HAS A CONFLICT WITH.

17         SO, THE VERY PURPOSE OF RAINES FELDMAN BEING RETAINED

18   WAS BECAUSE THEY HAD A CONFLICT.

19         AND THE FIRST THING THEY  -- THEY DO WHEN THEY APPEAR IS

20   ASK FOR A TOLLING AGREEMENT, WHICH CLEARLY MEANS THEY HAVE A  --

21   INTEND TO BEING A CLAIM.  AND THEY WANT TO TOLL THE STATUTE OF

22   LIMITATIONS.

23         THEY ASKED FOR A DOCUMENT HOLD NOTICE.  WHY DO YOU

24   HAVE A DOCUMENT HOLD NOTICE.  YOU'RE ONLY OBLIGATED TO HOLD

25   DOCUMENTS IN ANTICIPATION OF LITIGATION.

1              AND THEN THE AGREEMENT SAYS A DISPUTE IS ANY

2      DISAGREEMENT BETWEEN YOU AND US.  IT DOESN'T SAY ANY CLAIM.  IT

3      DOESN'T SAY ANYTHING FILED IN COURT.  IT DOESN'T SAY ANY CAUSE OF

4      ACTION.  IT SAYS ANY DISAGREEMENT BETWEEN YOU AND US THAT WE

5      ARE NOT ABLE TO RESOLVE INFORMALLY.

6              IT INCLUDES ANY CLAIM OR CONTROVERSY OF ANY KIND THAT

7      ARISES OUT OR IS IN RELATION TO THIS ACCOUNT AGREEMENT AND

8      DISCLOSURE AND ANY SERVICE PROVIDED BY US.

9              DISPUTE INCLUDES CLAIMS BASED ON BROKEN PROMISES OR

10     CONTRACTS, TORTS, BREACH OF DUTY OR ANY WRONGFUL ACTION.

11             IT INCLUDES STATUTORY, COMMON LAW AND EQUITABLE

12     CLAIMS.

13             SHE'S AN EQUITY SEEKING DISCOVERY IN EQUITY.

14             IT'S AS BROAD A LANGUAGE AS POSSIBLE.  IT'S NOT LIMITED TO

15     CAUSES OF ACTION.  AND THIS IS IN THE MALEN DECLARATION, EXHIBIT I,

16     PAGE 100.

17             BUT IT'S IN EVERY AGREEMENT.  EVERY AGREEMENT DEFINES

18     DISPUTE BROADLY.

19             NOW, WE'D BE TALKING  -- WE'D BE HAVING A DIFFERENT

20     CONVERSATION IF DISPUTE WAS DEFINED AS A CLAIM OR AS A LAWSUIT.

21     BUT THIS IS REALLY BROAD LANGUAGE.

22             AND CERTAINLY IN THE CONTEXT OF THIS WHERE YOU HAVE

23     SOMEONE WHO IS APPOINTED BECAUSE THE EXISTING COUNSEL WAS

24     ADVERSE OR FELT THEY WERE  -- HAD A CONFLICT.  THEY COULDN'T BE

25     ADVERSE.  IT SHOWS THAT WE HAVE A DISPUTE.

1          THE COURT:  ALL RIGHT.  THANK YOU, COUNSEL.

2          ALL RIGHT.  DOES THE RECEIVER HAVE ANYTHING FURTHER?

3          MS. PHELPS:  I DO, YOUR HONOR.  THANK YOU.

4          I WOULD LIKE TO POINT OUT THAT THE  -- THE SHE HERE, I'M

5   ASSUMING IS IN REFERENCE TO MY CLIENT THE RECEIVER.  I AM MERELY

6   HER AGENT AS HER COUNSEL.

7          THE COURT:  THAT'S CERTAINLY WHAT I CONCLUDED.

8          MS. PHELPS:  OKAY.

9          A FEW THINGS, YOUR HONOR.  I HEAR ALL OF THE LANGUAGE

10   ABOUT WHAT THE CONTRACT SAYS REGARDING THE DEFINITION OF

11   DISPUTE.  BUT THAT TERM IS USED IN THE ADR PROVISIONS WITH

12   RESPECT TO DISPUTES OF CERTAIN TYPES  -- IF THEY ARE OVER $50,000,

13   IT GOES THIS WAY.  IF THEY ARE UNDER $50,000 OR $250,000, IT GOES

14   THAT WAY.  THERE'S NO DOLLAR AMOUNT AT ISSUE HERE.

15          SO, IRRESPECTIVE OF WHATEVER THE DEFINITION OF DISPUTE

16   IS  -- AND CITY NATIONAL BANK COULD PRESUMABLY SAY I OBJECT TO,

17   YOU KNOW, PRODUCING ONE LETTER.  AND THEY'VE CREATED A DISPUTE.

18   THAT'S NOT THE INTENTION BEHIND THEIR AGREEMENT.  THEIR

19   AGREEMENT IS CLEARLY INTENDED TO APPLY TO MONETARY DISPUTES

20   BECAUSE IT USES DOLLAR FIGURES TO DEFINE THE DISPUTE AND WHAT

21   ADR PROVISION APPLIES.

22          I WOULD LIKE TO ADDRESS THE COMMENT REGARDING THE

23   POWER OF THE RECEIVER BEING DECIDED BY STATE – OR CASE LAW I

24   THINK IS THE LANGUAGE THAT WAS USED.

25          I WOULD LIKE TO POINT OUT, YOUR HONOR, THAT HERE IN THE

1    NINTH CIRCUIT I THINK IT IS IMPORTANT TO LOOK AT HOW THE NINTH

2    CIRCUIT HAS ADDRESSED THESE ISSUES.  AND THERE ARE MULTITUDE OF

3    CASES THAT ARE VERY FIRM ON HOW THEY RECOGNIZE A DISTRICT

4    COURT'S POWER TO SUPERVISE AN EQUITY RECEIVERSHIP AND TO

5    DETERMINE THE APPROPRIATE ACTION TO BE TAKEN IN THE

6    ADMINISTRATION OF A RECEIVERSHIP.

7            THE COURTS USE THE SAME LANGUAGE AGAIN AND AGAIN THAT

8    THAT POWER IS EXTREMELY BROAD  -- NOT BROAD  -- EXTREMELY BROAD.

9            A COUPLE OF CASES IN THE NINTH CIRCUIT – SEC VERSUS

10   LINCOLN THRIFT ASSOCIATION.  IT'S 577 F.2D. 600 OR SEC VERSUS HARDY

11   IS 803 F2D. 1034.

12           THOSE CASES AND OTHERS  --  SEC VERSUS WENKE, 783 F 2D.

13   829 – THOSE CASES ARE CITED AGAIN AND AGAIN AS DISTRICT COURTS

14   GRANT THEIR FEDERAL EQUITY RECEIVERS VERY BROAD POWERS EVEN

15   SO MUCH SO THAT IN SOME CASES I KNOW IN ANOTHER JURISDICTION

16   THAT THE FEDERAL RULES OF CIVIL PROCEDURE THEY – THEY WILL WORK

17   AROUND THEM.

18            NOT ASKING TO DO THAT HERE, YOUR HONOR.  WE'RE SEEKING

19   TO COMPLY WITH THE FEDERAL RULES OF CIVIL PROCEDURE.

20           BUT THE DISTRICT COURT'S POWER TO SUPERVISE A RECEIVER

21   AND TO GRANT THAT RECEIVER POWERS AND DUTIES AND OBLIGATIONS

22   IS IN THE NINTH CIRCUIT EXTREMELY BROAD.

23           SO, HERE WE ARE, YOUR HONOR.   AND THE DISTRICT COURT IN

24   THIS CASE GAVE THE RECEIVER UNFETTERED UNLIMITED ABILITY AND

25   POWER AND DUTIES AND OBLIGATIONS TO CONDUCT DISCOVERY -- TO

1    INVESTIGATE ASSETS OF THE ESTATE.  THAT IS QUITE SIMPLY WHAT THE

2    RECEIVER IS DOING HERE.

3         I WOULD LIKE TO ADDRESS  -- JUST I KNOW I ADDRESSED THE

4    CASES  --

5         THE COURT:  LET ME JUST ASK YOU.

6         BECAUSE HOW IS GETTING THE BANK'S POLICIES WHICH A

7    NUMBER OF YOUR REQUESTS DO – HOW IS THAT CONDUCTING SUCH

8    INVESTIGATION AND DISCOVERY AS MAY BE NECESSARY TO LOCATE AN

9    ACCOUNT FOR THE ASSETS  --

10        MS. PHELPS:  WELL, YOUR HONOR  --

11        THE COURT:   -- LOOKING SPECIFICALLY AT THE --

12        MS. PHELPS:  -- I WILL GIVE YOU  --

13        THE COURT:   -- APPOINTMENT  --

14        MS. PHELPS:  I'LL GIVE YOU TWO EXAMPLES OF THAT JUST THAT

15    I CAN THINK OF OFF THE TOP OF MY HEAD.

16        CITY NATIONAL BANK REPEATEDLY DOZENS AND DOZENS OF

17    TIMES EXTENDED COURTESIES TO MR. HORWITZ IN PROVIDING HIM WITH

18    NOTICES OF OVERDRAFT -- TRYING TO SEND OUT A WIRE.  AND THERE'S

19    NOT ENOUGH MONEY IN YOUR ACCOUNT OR YOU'RE TRYING  -- WE'RE

20    TRYING TO CLEAR THIS CHECK.  AND THERE'S NOT ENOUGH MONEY IN

21    YOUR ACCOUNT.  THEY BENT OVER BACKWARDS TO HELP THIS

22    GENTLEMAN RUN MONEY  -- PAY MONEY – DISBURSE MONEY.

23        THEN ONE DAY IT OCCURRED TO THEM THAT WE CAN'T DO THAT

24    ANYMORE.  WE'VE CHANGED OUR POLICY.  WE'RE NOT ALLOWED TO DO

25    THAT ANYMORE.

1          I THINK THE RECEIVER IS ENTITLED TO KNOW WAS THAT A

2    CHANGE IN THE POLICY, WAS THAT AN AWARENESS THAT THE BANK HAD

3    THAT, SHOOT,  WE SHOULDN'T DO THAT ANYMORE WITH MR. HORWITZ.

4    THAT'S ONE EXAMPLE.

5          ANOTHER EXAMPLE WAS AS I MENTIONED EARLIER, THE LINE OF

6    CREDIT.  THERE WAS A 1.4 MILLION DOLLAR LINE OF CREDIT.  IT WAS A

7    PERSONAL LINE OF CREDIT.  THEY EVEN ASKED MR. HORWITZ AT ONE

8    POINT WELL, WHAT ARE YOU USING THIS MONEY FOR.  AND HE GAVE

9    THEM SOME EXPLANATION FOR, YOU KNOW, SOME PERSONAL REASONS

10   THAT MAYBE WOULD HAVE BEEN A FEW HUNDRED THOUSAND DOLLARS.

11         HE RAN OVER 60 OR $80 MILLION UP AND DOWN ON THAT LINE

12   OF CREDIT OVER A NUMBER OF YEARS WHEN HE WOULD PULL MONEY ON

13   THAT LINE OF CREDIT AND PAY IT DIRECTLY TO THE BUSINESS ACCOUNTS.

14         AGAIN, HELPING TO KEEP THIS PONZI SCHEME AFLOAT.

15         THEN ONE DAY THE BANK SAID WE'RE CHANGING OUR POLICY.

16   IF YOU'RE USING THIS FOR BUSINESS PURPOSES, THEN, IT NEEDS TO BE A

17   SECURED BUSINESS LINE OF CREDIT.  IT CAN'T BE A PERSONAL LINE OF

18   CREDIT.

19         AGAIN, YOUR HONOR, WHAT WAS THE POLICY, WHAT DID IT

20   CHANGE TO AND WHY DID IT CHANGE.  THESE ARE ALL VERY, VERY

21   IMPORTANT PIECES OF INFORMATION THAT THE RECEIVER NEEDS TO

22   EVALUATE AS TO WHAT THE BANK KNEW AND WHEN THEY KNEW IT.

23         AND WE'RE NOT HIDING THE BALL.  THERE IS NOT A CLAIM AS OF

24   RIGHT NOW.  BUT WE ARE SEEKING TO INVESTIGATE IT.  SO, I DON'T THINK

25   THAT THERE'S ANYTHING SINISTER GOING ON IN THAT REGARD.

1    THE COURT:  NO.  BUT DOESN'T THAT PROVE THEIR POINT? --

2    THAT THE RECEIVER HAS A DISPUTE WITH THE BANK.

3    MS. PHELPS:  NO, YOUR HONOR.  THERE IS NO DISPUTE.  WE ARE

4    SEEKING INFORMATION.  I DON'T  -- I DON'T KNOW THAT THERE'S A

5    DISPUTE.

6    I MEAN, THEY VERY WELL MAY SAY WE HAVE, YOU KNOW, A

7    DOZEN REASONS TO CHANGE OUR POLICY.  AND IT WAS IN THE ORDINARY

8    COURSE.  AND EVERY TWO YEARS WE CHANGE OUR POLICY.  AND WE

9    CHANGE IT FROM THIS TO THAT.  AND IT HAD NOTHING TO DO WITH YOU.

10    THAT MAY BE THE ANSWER.  THERE MAY BE NOTHING THERE AT

11    ALL.  ALTHOUGH, WE DON'T KNOW.  I'M GENUINELY ASKING FOR THE

12    INFORMATION TO UNDERSTAND IT.

13    I HAVE SUSPICIONS.  BUT MY SUSPICIONS, YOU KNOW, ARE NOT

14    THE BASIS OF THE CLAIM WHICH IS WHY WE'RE SEEKING THAT

15    INFORMATION.

16    YOUR HONOR, I KNOW THAT COUNSEL STATED THAT CASE

17    AFTER CASE SAYS THAT THE RECEIVER STANDS IN THE SHOES OF THE

18    ENTITY AND IS BOUND BY THEIR CONTRACTS.

19    I WILL NOTE THAT EVERY CASE AFTER CASE THAT THEY HAVE

20    POINTED TO – EVERY ONE  -- AGAIN, THERE IS A CLAIM ACTUALLY FILED.

21    THE REASON I THINK THAT THERE REALLY ISN'T A CASE OUT

22    THERE WHEN YOU'RE TALKING ABOUT A RECEIVER'S EQUITABLE POWERS

23    TO CONDUCT DISCOVERY IS BECAUSE NOBODY EVER FIGHTS THIS.

24    NOBODY EVER TRIES TO PUT THIS IN ARBITRATION.  IT IS  -- IT IS SO

25    OUTSIDE OF THE NORM WHAT CITY NATIONAL BANK IS TRYING TO DO

1    HERE THAT I WOULDN'T IMAGINE THERE WOULD BE A CASE BECAUSE I

2    DON'T THINK THAT MOST INSTITUTIONS WOULD BE SO BOLD AS TO TRY TO

3    CALL SOMETHING A DISPUTE WHEN IT'S NOT AND TRY TO IMPOSE AN

4    ARBITRATION AGREEMENT ON A RECEIVER WHEN THERE'S NOT EVEN A

5    DISPUTE OR FRANKLY AN APPLICABLE ARBITRATION AGREEMENT.

6         I DO WANT TO CITE SOME LANGUAGE FROM A CASE THAT THEY

7    HAVE REALLY RELIED UPON PRETTY HEAVILY.  THAT'S THE MACINTYRE

8    VERSUS CHINA MEDIA EXPRESS HOLDINGS CASE.

9         I WANT TO POINT OUT A FEW FACTS IN THAT CASE, YOUR

10   HONOR, BECAUSE I THINK IT HAS BEEN CITED FOR A GENERAL

11   PROPOSITION WHICH IS INAPPLICABLE HERE.

12        THAT IS A CASE IN WHICH A SPECIAL RECEIVER WAS APPOINTED

13   FOR ONE DISCRETE TASK, WHICH WAS TO INVESTIGATE ONE TYPE OF

14   CLAIM WHICH WAS A MALPRACTICE CLAIM AGAINST A LAW FIRM.

15        AND IN THAT THERE WAS UNDISPUTABLY AN ARBITRATION

16   CLAUSE THAT APPLIED THERE.  AND THE RECEIVER INITIATED AN

17   ARBITRATION.

18        A CLAIM WAS ACTUALLY ASSERTED IN THAT CASE.

19        WHAT HAD HAPPENED IN THAT CASE IS THAT SIX DAYS EARLIER

20   BEFORE THE RECEIVER INITIATED THE ARBITRATION, THAT RECEIVER

21   SERVED A SUBPOENA LOOKING FOR PRE-LITIGATION DISCOVERY

22   KNOWING THAT THE RECEIVER WAS ABOUT TO COMMENCE THIS ACTION

23   SIX DAYS LATER.

24        THOSE ARE NOT THE FACTS HERE, YOUR HONOR.

25        AND THE COURT ACTUALLY SAID THAT THE COURT IS

1    PERSUADED THAT THE PURPOSE OF THE SUBPOENAS IS NOT TO

2    INVESTIGATE WHETHER THE ENTITY HAS CLAIMS AGAINST LOEB BUT TO

3    OBTAIN EVIDENCE IN SUPPORT OF THOSE CLAIMS.

4         WE ARE TRYING TO DETERMINE WHETHER THERE IS A CLAIM.

5         SO, THE VERY CASE THAT CITY NATIONAL BANK IS RELYING ON

6    HERE ACTUALLY I THINK WORKS AGAINST THEM BECAUSE IT – THE COURT

7    DISTINGUISHED BETWEEN THESE TWO THINGS THAT WE'RE TALKING

8    ABOUT HERE.

9         WE ARE TRYING TO INVESTIGATE WHETHER THERE IS A CLAIM --

10   NOT TO FIND SUPPORT FOR A CLAIM THAT WE HAVE ALREADY INITIATED.

11        THOSE ARE VERY, VERY DIFFERENT FACTS.  SO, I THINK THAT

12   THAT PARTICULAR CASE IS  -- IS NOT SUPPORTIVE OF CITY NATIONAL'S

13   VIEW AT ALL

14        I WOULD ALSO POINT OUT IN SHARP VERSUS DUFF AND PHELPS

15   WHAT THEY CITED THAT JUDGE FISCHER FOUND THAT A FORUM

16   SELECTION CLAUSE APPLIED.  AGAIN, IN A  -- IN A SINGLE DISPUTE AN

17   ACTION WAS ALREADY COMMENCED.  THERE WAS A CLEAR AND

18   UNEQUIVOCAL ENGAGEMENT AGREEMENT IN WHICH THE COURT LOOKED

19   AT THAT ENGAGEMENT AGREEMENT, LOOKED AT THE PENDING DISPUTE

20   AND FOUND THAT THERE WAS AN ARBITRATION CLAUSE.  COMPLETELY

21   INAPPLICABLE HERE.

22        ANOTHER POINT THAT COUNSEL MADE WAS THAT  -- AND I'M NOT

23   SURE.  AND I APOLOGIZE.  I DO NOT RECALL WHAT MY WORDS WERE.  I  -- I

24   THINK THAT I SAID THAT THE RECEIVER IS BRINGING CLAIMS FOR THE

25   BENEFIT OF THE INVESTORS AND THE DEFRAUDED VICTIMS NOT ON

1    BEHALF OF.

2         SO, TO THE EXTENT I SAID "ON BEHALF OF," THEN, I STAND

3    CORRECTED.  I BELIEVE I SAID "FOR THE BENEFIT OF."  THERE'S A REAL

4    DISTINCTION THERE.

5         I DID NOT INTEND TO  -- TO MAKE THAT TYPE OF A STATEMENT.

6         AND THE OTHER CASES THAT ARE CITED WHICH INCLUDE

7    REALLY MANY OF THE CASES THAT ARE CITED RELATE TO FRAUDULENT

8    TRANSFER CLAIMS  -- AGAIN, CLAIMS THAT WERE ACTUALLY FILED IN

9    WHICH THE DEFENDANTS HAD ARBITRATION CLAUSES WITH THE

10   RECEIVERSHIP ENTITIES  -- AGAIN, VERY DIFFERENT FACTS.

11        AND THEN I THINK THE LAST POINT IS THE ARGUMENT

12   REGARDING REJECTION OF CONTRACTS.

13        YOU KNOW, IT'S AN ARGUMENT HERE, YOUR HONOR.  I DON'T

14   KNOW THAT WE EVEN NEED TO GET THERE.

15        BUT I WILL TELL YOU THAT THE STATEMENT THAT THE RECEIVER

16   -- THAT THE COURT MISAPPLIED BANKRUPTCY LAW  -- THE LOCAL RULES

17   IN THIS JURISDICTION, THE CENTRAL DISTRICT OF CALIFORNIA,

18   SPECIFICALLY CHARGED THE DISTRICT COURT WITH RUNNING  -- AND A

19   RECEIVER WITH RUNNING A RECEIVERSHIP AS CLOSE IN LINE WITH THE

20   BANKRUPTCY CODE AS POSSIBLE.

21        SO, THE BANKRUPTCY CODE IS MADE FULLY AVAILABLE TO

22   FEDERAL EQUITY RECEIVERS.  AND THERE ARE MANY, MANY CASES IN

23   WHICH RECEIVERS REJECT EXECUTORY CONTRACTS.

24        SO, I STRONGLY DISAGREE WITH THE REPRESENTATIONS THAT

25   WERE MADE.  AGAIN, I DON'T  -- I DON'T KNOW THAT THAT'S FRANKLY THE

1    BEST ARGUMENT OR ONE THAT WE EVEN NEED TO FIXATE GIVEN THAT

2    THERE IS NO DISPUTE.  THERE ARE NO ARBITRATION CLAUSES.

3            AND ONE -- I GUESS ONE FINAL POINT IS THAT I DO NOTE THAT

4    COUNSEL WAS VERY CAREFUL WITH HIS WORDS IN DISTINGUISHING

5    BETWEEN ARBITRATION AND ADR.  AND THAT'S A VERY IMPORTANT

6    DISTINCTION HERE THAT I WOULD ASK US ALL TO FOCUS ON.

7            ADR CAN INCLUDE JUDICIAL REFERENCE OR ARBITRATION OR

8    HOWEVER ELSE ONE MIGHT GO ABOUT RESOLVING DISPUTES.

9            YOU KNOW, COUNSEL SAID, WELL, YOU KNOW, WHETHER IT'S

10   ARBITRATION OR JUDICIAL REFERENCE, WE CAN WORRY ABOUT THAT

11   LATER.  NO, I THINK WE'RE HERE WORRYING ABOUT THAT TODAY.  AND I

12   THINK THAT THAT IS VERY RELEVANT BECAUSE I DO THINK THAT THE

13   FEBRUARY 2023 AGREEMENT WHERE THEY TRIED TO IMPOSE PRETTY

14   STRINGENT ARBITRATION RULES IS INAPPLICABLE HERE  -- THAT THE BEST

15   THAT THEY'RE GOING TO DO IF AT ALL IS JUDICIAL REFERENCE.

16           AND MAYBE WE ARE BETTER SERVED THROUGH THAT PROCESS.

17   AND I'LL CONSULT WITH MY RECEIVER IF WE DECIDE THAT THAT'S

18   SOMETHING THAT WE NEED TO OR THAT WE SHOULD COMPLY WITH IF

19   THAT WOULD MAKE THE BANK HAPPIER.

20           BUT IN THAT PROCESS THERE ARE FULL DISCOVERY RIGHTS.

21   THERE ARE FULL RIGHTS OF APPEAL.  AND THAT IS IMPORTANT HERE

22   BECAUSE IT IS CLEAR WITH THIS PROCEEDING AND WITH A 266 PAGE

23   OBJECTION TO THE SPECIFIC REQUESTS THAT THE BANK REALLY DOES

24   NOT WANT TO PRODUCE ANYTHING.  AND WE'D LIKE TO KNOW WHY.  WE'D

25   LIKE TO KNOW WHAT'S THERE.

1          THE COURT:  WHAT IS YOUR  -- WHAT DO YOU MAKE OF THE

2    ARGUMENT THAT THE CONFLICT OF INTEREST BY THE INITIAL COUNSEL

3    OR THE OTHER COUNSEL FOR THE RECEIVER IS EVIDENCE THAT THERE IS

4    A DISPUTE HERE.

5          MS. PHELPS:  YOUR HONOR, I THINK THAT THAT  -- THAT

6    ARGUMENT DOESN'T MAKE ANY SENSE TO ME IF I THINK ABOUT WHAT A

7    RECEIVER'S OBLIGATIONS ARE.

8          IF SHE'S OBLIGATED TO INVEST A CLAIM IN WHICH SHE MIGHT

9    ULTIMATELY BE ADVERSE TO A COMPANY.

10          THE MOST PRUDENT AND FRANKLY PROBABLY THE ONLY

11    COURSE OF ACTION FOR THAT RECEIVER IS TO GET AN INDEPENDENT

12    COUNSEL TO LOOK AT THAT.

13          THAT IS WHY I AM HERE.   AND THAT IS WHAT I AM LOOKING AT.

14          SHE CAN'T POSSIBLY HAVE A LAWYER WHO REPRESENTS THE

15    ENTITY THAT SHE IS EVALUATING DO THAT EVALUATION.  THERE IS AN

16    INHERENT CONFLICT OF INTEREST THERE.  SO, IN ORDER TO CONDUCT

17    THAT INVESTIGATION SHE HAS TO GET INDEPENDENT COUNSEL.

18          THE OTHER PRUDENT COURSE OF ACTION  -- AND I WILL TELL

19    YOU HAVING BEEN IN AND AROUND THIS BUSINESS FOR A VERY LONG

20    TIME  -- IS THAT THE FIRST THING YOU DO WHEN YOU ARE STARTING AN

21    INVESTIGATION IS YOU ASK FOR A TOLLING AGREEMENT.  YOU JUST TRY

22    TO FREEZE EVERYTHING WHILE YOU WORK THROUGH IT.

23          TIME AND TIME AGAIN WE HAVE TOLLING AGREEMENTS.  AND WE

24    DO NOT PURSUE CLAIMS.

25          TIME AND TIME AGAIN WE HAVE TOLLING AGREEMENTS.  AND WE

1    ULTIMATELY DO PURSUE CLAIMS.

2            AND THE OTHER THING THAT YOU DO BEING A PRUDENT

3    RECEIVER TRYING TO DO HER JOB AS A FIDUCIARY AND AN ARM OF THE

4    COURT IS YOU JUST PUT EVERYBODY ON NOTICE NOT TO DESTROY

5    ANYTHING IN THE MEANTIME WHILE WE'RE CONDUCTING THE

6    INVESTIGATION.

7            THOSE THREE THINGS, YOUR HONOR, ARE NOT EVIDENCE OF

8    ANYTHING WHATSOEVER OTHER THAN THAT THE RECEIVER IS

9    INVESTIGATING CLAIMS AND IS TRYING TO ACQUIRE INFORMATION SO

10    THAT SHE CAN MAKE A DETERMINATION AS TO WHETHER OR NOT THERE

11    IS A CLAIM TO PURSUE HERE.

12            THE COURT:  ALL RIGHT.  THANK YOU, COUNSEL.

13            MS. PHELPS:  THANK YOU.

14            THE COURT:  DOES THE BANK HAVE ANYTHING FURTHER?

15            MR. ABASCAL: YES, YOUR HONOR.

16            I THINK AGAIN THIS ARGUMENT REALLY CONFIRMS MY POINT.

17            IT'S CLEAR THAT COUNSEL HAS DONE A THOROUGH

18    INVESTIGATION OF THE DOCUMENTS PROVIDED.  SHE'S DONE RESEARCH

19    ON THEORIES OF LIABILITY.  SHE KNOWS WHICH FACTS SHE WANTS TO

20    RELY ON TO TRY TO HOLD THE BANK ACCOUNTABLE.

21            YOU HEARD THE ARGUMENT.  SHE'S DONE HER HOMEWORK.

22    AND SHE'S READY IN LOOKING AT BRINGING A CLAIM.

23            AND THAT IS WHAT SHE IS SPECIFICALLY CHARGED WITH AS

24    CONFLICTS COUNSEL.

25            IN  -- IN THE FILINGS APPOINTING THIS CONFLICTS COUNSEL,

1    WHICH WAS ORDERED IN JANUARY 2023 -- EARLIER I SAID 2022 -- IN

2    THE -- IN THE BRIEFINGS IT SAID KATTEN & MUCHIN HAS RELATIONSHIPS

3    WITH MANY DIFFERENT ENTITIES.  AND THEY CAN'T CONTINUE TO

4    PROVIDE ADVICE.  SO, THERE'S A SMALL NUMBER OF CONFLICT ISSUES

5    THAT THEY NEEDED A NEW COUNSEL FOR.  AND THAT'S HOW RAINES

6    FELDMAN CAME IN.

7            AND THEY'RE ON A CONTINGENCY FEE.  THEY'RE BEING PAID ON

8    A FLAT FEE FOR A PERIOD OF TIME AND THEN A 40 PERCENT

9    CONTINGENCY FEE.

10            SO, THEY'RE HERE TO BRING A CLAIM AGAINST CITY NATIONAL.

11            AND SHE HAS ALREADY INVESTIGATED.  SHE'S RESEARCHED IT.

12            AND WHAT THEY WANT TO DO IS SEEK THIS DISCOVERY FOR

13    THAT CLAIM.

14            AND THE CASES ARE CLEAR THAT YOU CANNOT GET DISCOVERY

15    FOR A DIFFERENT PROCEEDING.  YOU CAN'T USE THIS PROCEEDING TO

16    GET DISCOVERY FOR A DIFFERENT PROCEEDING.

17            IF SHE BRINGS A CLAIM, IT'S GOT TO BE IN JUDICIAL REFERENCE

18    OR ARBITRATION  -- WE CONTEND ARBITRATION.  SHE MAY CONTEND

19    JUDICIAL REFERENCE.  THERE'S NO CIRCUMSTANCE WHERE SHE CAN

20    COME INTO THIS COURT AND BRING A CLAIM.  NONE OF THE AGREEMENTS

21    PROVIDE FOR FEDERAL COURT JURISDICTION OF A CLAIM.

22            THEY ALL PROVIDE FOR EITHER STATE COURT THROUGH

23    JUDICIAL REFERENCE OR ARBITRATION.  THERE'S NO DISPUTE ABOUT

24    THAT.

25            THERE IS NO CIRCUMSTANCE WHERE A CLAIM CAN BE BROUGHT

1    IN THIS COURT.  BUT THEY WANT TO USE FEDERAL COURT RULE 26

2    SUBPOENA AND  -- AND PROCEDURES TO GET DISCOVERY TO BRING A

3    DIFFERENT CLAIM.

4            THERE ARE MANY SUPREME COURT CASES – <u>OPPENHEIMER</u>,

5    437, U.S. 340, 352, NOTE 17.

6            WHEN THE PURPOSE OF A DISCOVERY REQUEST IS TO GATHER

7    INFORMATION FOR USE IN PROCEEDINGS OTHER THAN THE PENDING

8    SUIT, DISCOVERY IS PROPERLY DENIED.

9            THIS IS DISCOVERY BEING SOUGHT IN FEDERAL COURT

10   THROUGH FEDERAL COURT PROCEDURES AND YOUR HONOR TO GET

11   SOMETHING THAT CAN NEVER BE BROUGHT IN FEDERAL COURT UNDER

12   ANY CIRCUMSTANCE.  AND I THINK THEY WOULD HAVE TO CONCEDE

13   THAT.

14            THE <u>MACINTYRE</u> CASE IS ON POINT.  THAT WAS A MOTION TO

15   QUASH.  THAT'S WHERE THE RECEIVER BROUGHT A SUBPOENA AGAINST

16   LOEB & LOEB.  AND IT'S THE SAME -- THE SAME CIRCUMSTANCE.  THAT

17   RECEIVER WAS APPOINTED TO PURSUE LOEB & LOEB.

18            HERE THIS RECEIVER HAS BEEN APPOINTED TO PURSUE

19   CONFLICTS ISSUES THAT KATTEN & MUCHIN CAN'T  -- CAN'T BRING.

20            SO, I THINK THAT CASE IS RIGHT ON POINT.

21            RECEIVER  -- MS. PHELPS ALSO ARGUED THAT -- THAT THIS IS A

22   RARE CIRCUMSTANCE.  THIS IS NOT A RARE CIRCUMSTANCE.  THERE'S

23   MANY CASES THAT HAVE SOUGHT TO ENFORCE AN ADR PROVISION.  I'VE

24   CITED EIGHT OF THEM.

25            BUT THERE'S NOTHING UNUSUAL ABOUT A CORPORATION

1    WANTING  -- OR ANY ENTITY WANTING TO ENFORCE THEIR AGREEMENTS.

2            THERE WAS AN AGREEMENT HERE.  MANY AGREEMENTS ALL

3    HAD ADR PROVISIONS.  SHE STANDS IN THE SHOES OF THAT ENTITY.  AND

4    WE WANT WHAT WE BARGAINED FOR – WHICH IS, IF THERE'S  -- TO BRING

5    DISPUTES  -- ANY DISPUTE, ANY DISAGREEMENT IN THOSE – IN THOSE

6    PROCEDURES THROUGH ADR.

7            AND FINALLY I'LL SAY ON THE LOCAL RULE, OF COURSE A LOCAL

8    RULE COULD NOT PROVIDE ANY POWER OR ADDITIONAL LEGAL

9    AUTHORITY TO THE RECEIVER.  SHE'S I THINK CITING TO LOCAL RULE 66

10   GOVERNING PROCEDURES  -- RECEIVERS.  THAT SAYS, "EXCEPT AS

11   OTHERWISE ORDERED BY A COURT, A RECEIVER SHALL ADMINISTER THE

12   ESTATE AS NEARLY AS POSSIBLE IN ACCORDANCE WITH THE PRACTICE IN

13   THE ADMINISTRATION OF ESTATES IN BANKRUPTCY."

14           THAT REALLY RELATES TO HOW HER  -- HOW THE RECEIVER'S

15   FEES WILL BE PAID.  WHAT DOCUMENTS WILL BE PROVIDED.

16           LOCAL RULE 66.8.1 DISCUSSES THE RECORDS  -- HOW THEY

17   HAVE TO BE ITEMIZED, ET CETERA.  THAT IN NO WAY PROVIDES

18   ADDITIONAL POWER TO USE DISCOVERY IN A  -- IN A PLACE WHERE

19   CONTRACT DOESN'T ALLOW IT.

20           THAT'S ALL I HAVE, YOUR HONOR.

21           THANK YOU.

22           THE COURT:  ALL RIGHT.

23           THANK YOU, COUNSEL.

24           THE MATTER STANDS SUBMITTED.

25           MS. PHELPS:  THANK YOU, YOUR HONOR.

1              MR. ABASCAL:  THANK YOU, YOUR HONOR.

2              THE CLERK:  COURT IS ADJOURNED.

3              (PROCEEDINGS ADJOURNED.)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                         TRANSCRIBER'S CERTIFICATE

4                               DISCLAIMER

5        THE INTEGRITY OF THIS TRANSCRIPT MAY BE ADVERSELY AFFECTED

6            DUE TO MUFFLED AND UNCLEAR AUDIO TRANSMISSION.

7            I, Dorothy Babykin, attest that the foregoing proceedings provided to me

8    electronically were transcribed by me to the best of my ability.

9                         /s/  _Dorothy Babykin_

10

11                           Dorothy Babykin

12
     Date: 9/1/2023

13

14

15

16

17

18

19

20

21

22

23

24

25