Attn: Michele Vives
Douglas Wilson Companies
1620 Fifth Ave. Suite 400
San Diego, CA 92101

September 5, 2023

Dear Ms. Vives,

I STRONGLY OPPOSE the proposed settlement terms dated 7/31/2023 between Joseph DeAlteris, Jacob Wunderlin, Matthew Schweinzger, JJMT Capital, LLC (the Defendants or "net winners"), and receiver on behalf of the parties they profited from via the Ponzi Scheme (collectively referred to in this letter as "the Plaintiffs", "the victims", or "net losers").

I am one of the "net losers" of the Ponzi Scheme who lost the majority of my life savings as a result of fraudulent notes underwritten by Joseph DeAlteris, Jacob Wunderlin, Matthew Schweinzger, JJMT Capital, LLC (the Defendants). While you made it very clear over the phone that you do not wish to discuss their level of culpability in the Ponzi Scheme, I find it very relevant that they actively fueled Horwitz' ability to carry out the fraud for several years. Even if you give the Defendants the benefit of doubt by ignoring their close relationship with Horwitz, by ignoring their involvement at the very outset of the scheme, or by ignoring the ultimate outcome of them being the largest "net winners", I find it impossible to overlook their gross negligence in producing fraudulent marketing materials, actively seeking investment from friends/family/colleague without proper disclosures, fabricating and relaying numerous false and misleading statements/narratives, and their failure to conduct even the most basic levels of diligence that they represented having conducted to investors and to authorities as they underwrote hundreds of millions of dollars worth of fraudulent securities over the course of several years. To make matters worse, the Defendants acted as the spokesmen for Horwitz and actively thwarted legitimate efforts by other investors to conduct due diligence that could have otherwise uncovered the fraud much sooner. In fact, it was without any assistance from the Defendants (and in spite of their attempts to thwart discovery), that the victims exposed the Ponzi Scheme.

Once the fraud was exposed, the Defendants communicated to noteholders that they had retained King and Spaulding LLP as counsel and further represented that they were working on behalf of the noteholders to pursue maximum recovery[1]. Instead, the Defendants did the exact opposite. Over a period of 2.5 years, they have spent unknown sums of victims' money and countless hours vigorously defending themselves from criminal prosecution and, later, defending their "net winnings" from going back to the victims. As evidenced by the enclosed emails[1,2] from the Defendants, they 1) misrepresented themselves as fiduciaries to noteholders and further misrepresented that they were peer investors equally damaged by the scheme as they also invested a significant portion of their own net worth (in fact, they were not damaged and were instead enriched to the tune of over $25.28M of victims' money), 2) misrepresented that they would act on the noteholders' behalf to recover the stolen money[1,2]. The Defendants failed to disclose their personal gains ("net winnings") from the Ponzi Scheme

---

[1] Email from Jacob Wunderlin to noteholders on behalf of JJMT, LLC dated March 1, 2021.
[2] Email from Jacob Wunderlin to noteholders on behalf of JJMT, LLC dated March 17, 2021
[3] Email from Alexander Loftus regarding his agreement to not charge fees on funds that the receiver remits.

and instead offered the narrative that they too were merely victims. As proven by this settlement offer, the Defendants were lying about both. They blatantly chose to act in their own self-interest by vigorously defending against the receiver/victims' claims (they do this without even disputing the fact that these are fraud proceeds!). The mere fact that there needed to be an arbitration process stems from their unwillingness to release the funds that they admittedly stole from victims. Further, they continue to accrue more and more damages to victims in the form of legal fees, further reducing the pool of assets recoverable by the receiver.

**Reasons for my opposition:**

1) The Receiver states that "the settlement represents an equitable, good-faith resolution of all claims", but provides no supporting documentation as to why $9,000,000 is the appropriate amount. This proposed settlement results in the Defendants retaining $15,284,146 of the $24,284,146 that they admitted to stealing from victims.
2) The receiver confirmed to me via a telephone on 8-18-2023 that the $9,000,000 settlement:
    a. Does not constitute all of the Defendants' assets (meaning they are allowed to keep funds that they acknowledge and the Receiver dually acknowledges, are rightfully due to the victims'), and
    b. Includes ownership of business/financial investments that the Defendants funded using fraudulently acquired money during the course of the Ponzi Scheme. Why are these investments not also collectable by the receiver?
    c. Your proposed settlement filing draws comparisons for the fraud receiver process to that of a corporate bankruptcy case. However, the first rule in corporate bankruptcy is the equity value goes to zero. How are JJMT and its owners remaining solvent through this process while also not repaying the full "net winnings" if the bankruptcy model applies?
3) Upon passing this proposed settlement, the Defendants will receive a bar order and rest comfortably knowing they will never have to repay the remaining $15.284M of net profits. The victims will be barred from seeking further damages regardless of their agreement (or disagreement) with the proposed settlement offer. In short, the victims are being told they must relinquish their claim on the known assets remaining in the Defendants' control. The thieves get to keep the stolen money!
4) The settlement proposal refers to "multiple defenses" that were asserted by the Defendants.
    a. Defense #1: The UTMA statute of limitations – effectively the receiver's failure to act timely in bringing suit.
        i. Why should the victims take a discount because a court –appointed receiver's failure to act timely?
        ii. Why are you, as receiver, not simply seeking judgment by using the overwhelming evidence available to you, plus the outright admission by the Defendants that the funds they received are completely fraudulent?
    b. The "conduit" defense is an outlandish and, quite frankly, illogical argument (inconsistent even within the Defendants' own logic)

---

[1] Email from Jacob Wunderlin to noteholders on behalf of JJMT, LLC dated March 1, 2021.
[2] Email from Jacob Wunderlin to noteholders on behalf of JJMT, LLC dated March 17, 2021
[3] Email from Alexander Loftus regarding his agreement to not charge fees on funds that the receiver remits.

      i. Simply put, JJMT had complete dominion over funds by virtue of the fact that they were issuing debt. Their entity's notes, by definition, are to fund the operations of a company for which they held equity in. Noteholders did not own equity in the company.

      ii. Further, on numerous occasions, the Defendants repaid "maturing" notes using money they received by issuing new notes, WITHOUT RECEIVING FUNDS FROM 1INMM for their maturing notes. In effect, they disguised the underlying delinquency of 1inMM cash flows by issuing new debt, thus extending the life of the fraud beyond what 1inMM could have done without their assistance. This is quite clearly dominion over the funds.

5) The proposed settlement reduces the $9M settlement by an additional $2.56M for attorneys, which includes $1.61M to **the plaintiffs' attorney who explicitly contracted with the Plaintiffs to not charge a fee on any funds collected by the receive**[3]. The proposed settlement outlines the actual receiver's fee is almost a half million dollars on top of this fee.

6) The proposal fails to recognize the full amount of damages caused by the Defendants. It only contemplates the net profits they received from their victims and gives no detail as to where the funds went or how much remains.

7) The proposed settlement completely ignores other damages caused by the Defendants:
   a. The time value of money – the victims not only lose their life savings, but all of the returns that would have been otherwise generated by their life savings over many years.
   b. Ancillary and punitive costs that the victims have incurred including attorney's fees, reputational damage, emotional and family stress that were directly and indirectly caused by the actions of the Defendants.

Please feel free to contact me if you have any questions, comments, or require any additional information/evidence.

Thank you and Regards,

*[signature]*

Jeffrey Ask

FOR SUBMISSION TO RECEIVER MICHELE VIVES – September 5, 2023

---

[1] Email from Jacob Wunderlin to noteholders on behalf of JJMT, LLC dated March 1, 2021.
[2] Email from Jacob Wunderlin to noteholders on behalf of JJMT, LLC dated March 17, 2021
[3] Email from Alexander Loftus regarding his agreement to not charge fees on funds that the receiver remits.



Jeff Ask <jeffask@gmail.com>

## Fwd: JJMT Update: 03/01/2021
4 messages

**Michael Russell** <michael.russell@ingenholdings.com>         Mon, Mar 1, 2021 at 9:29 PM
To: Jeff Ask <jeffask@gmail.com>

============ Forwarded message ============
From : Jacob Wunderlin<jwunderlin@jjmtcap.com>
To : "Jacob Wunderlin"<jwunderlin@jjmtcap.com>
Date : Mon, 01 Mar 2021 19:00:03 -0600
Subject : JJMT Update: 03/01/2021
============ Forwarded message ============

Dear JJMT Noteholders,

Unfortunately, despite its repeated promises to do so, 1inMM did not meet the previously indicated payment timeline of February 28th. As was previously communicated, we have been consulting with counsel on appropriate and necessary next steps in the event of nonpayment, and we have been prepared to act. Our primary objective is the protection of investor-noteholders. We intend to aggressively continue pursuing this objective to the greatest extent possible.

Very recently, as part of our ongoing efforts to address 1inMM's nonpayment, **we learned information that leads us to believe 1inMM deceived and defrauded JJMT**. This development is obviously very serious and deeply troubling. We are extremely distressed, as we expect you will be too.

We have engaged highly qualified counsel from King & Spalding to investigate and advise us regarding this matter. With their assistance, we promptly referred this matter to federal law enforcement and also confirmed that a parallel investigation is being conducted by the U.S. Securities & Exchange Commission. We are cooperating with both investigations and, if contacted, we ask that you do the same.

We are committed to exposing the extent of 1inMM's apparent deception and fraud and to doing everything possible to recover as much of JJMT's investments in 1inMM as possible. As you know, we have committed a substantial amount of our own assets to JJMT investments with 1inMM. We believe continued cooperation with law enforcement is paramount, as is refraining from doing anything that might interfere with or compromise their ongoing investigations and related efforts to protect your interests. At this time, we are still assessing the scope of potential losses that may ultimately result.

Please know that we will be reaching out to each of you directly to answer any questions you may have, and we will do our very best to provide as much information as we can under these difficult circumstances.

Additionally, if you would like to speak with our counsel at King & Spalding, we will provide you with contact information.

Regards,

JJMT Team

--
**Jake Wunderlin**
**Managing Partner**
**JJMT Capital, LLC**
jwunderlin@jjmtcap.com

---

**Jeff Ask** <jeffask@gmail.com>                                                                   Mon, Mar 1, 2021 at 9:51 PM
To: mlieber@lieberllc.com

Jeff

Begin forwarded message:

[Quoted text hidden]

---

**Jeff Ask** <jeffask@gmail.com>                                                                   Mon, Mar 1, 2021 at 9:52 PM
To: Matthew Clarkin <matthewclarkin@yahoo.com>

Jeff

Begin forwarded message:

> **From:** Michael Russell <michael.russell@ingenholdings.com>
> **Date:** March 1, 2021 at 9:29:45 PM CST
> **To:** Jeff Ask <JEFFASK@gmail.com>
> **Subject: Fwd: JJMT Update: 03/01/2021**

[Quoted text hidden]

---

**investorrelations@ingenholdings.com** <investorrelations@ingenholdings.com>      Wed, Mar 3, 2021 at 1:07 PM
To: investorrelations@ingenholdings.com
Bcc: jeffask@gmail.com

All

We received the below update from JJMT which we wanted to pass along to Ingen Noteholders.

You will notice, that in addition to confirming an active investigation into 1inMM by the SEC, JJMT also mentions referring the matter to federal law enforcement. During a call with JJMT counsel (King & Spalding) which occurred yesterday, our counsel (Freeborn) was advised by JJMT's counsel that there is an active federal criminal investigation into 1inMM. These matters are obviously highly confidential.

We will continue to be in touch with material updates as we receive them.

Thank you.

[Quoted text hidden]



Jeff Ask <jeffask@gmail.com>

## FW: JJMT Update: 03/17/2021
1 message

**InvestorRelations@ingenholdings.com** <InvestorRelations@ingenholdings.com>  Thu, Mar 18, 2021 at 12:44 PM
Cc: investorrelations@ingenholdings.com
Bcc: jeffask@gmail.com

All,

We received the below update from JJMT yesterday evening post sending our Noteholder communication and wanted to pass it along.

Please let us know if any questions.

Thanks,

Matt & Mike

**From:** Jacob Wunderlin <jwunderlin@jjmtcap.com>
**Sent:** Wednesday, March 17, 2021 9:06 PM
**To:** undisclosed-recipients:
**Subject:** JJMT Update: 03/17/2021

Dear JJMT Noteholders,

We write with an update of recent developments and our ongoing actions to protect your interests and recover your funds. We continue to maintain our belief that Zach Horwitz, 1inMM, and others perpetrated an extensive and sophisticated fraud that has victimized JJMT and its noteholders, and that warranted our referral to federal authorities.

Since our March 1st update, we have continued our efforts to provide assistance and cooperation to the investigations commenced by federal law enforcement and the U.S. Securities & Exchange Commission (SEC) into Zach Horwitz and 1inMM. We have voluntarily provided a vast quantity of information, documents, and other materials both proactively and in response to their requests, and we continue to do so. Our primary goal has been and remains to assist federal authorities' efforts to identify, preserve, and recover noteholder funds, as well as to determine whether there was actionable misconduct by Horwitz, 1inMM, or any other party. Given the active and ongoing nature of these federal investigations, however, and in the interest of not doing anything that may risk interfering with or compromising these efforts, we are constrained in what we can share at this time. Please keep in mind we are not authorized to speak on behalf of the federal authorities, we do not control their actions, and we are not privy to details regarding the information they have gathered, their efforts, or their intentions. That being said, we are appreciative of and encouraged by the federal authorities' attention to this matter, and we have urged them to act swiftly and deliberately due to the exigencies of the current circumstances. Our counsel at King & Spalding and Varnum continue to help facilitate and advise us regarding our assistance, communication, and coordination with the federal authorities.

As we stated, our primary objective remains the protection of our noteholders' interests and the recovery of your funds, and we are aggressively doing so. All options remain on the table, including civil litigation, although our immediate focus is on assisting the federal authorities and doing everything we can to advance their investigations. We believe federal authorities are best positioned to expeditiously identify, preserve, and recover noteholder funds, and, to the extent they deem it appropriate, commence a federal enforcement and/or criminal action. Civil litigation, while it may become appropriate to pursue, is a time-intensive and costly process that is not always the most effective means to quickly recover assets; at this time, we do not want to distract attention away from the federal investigations, nor, as noted above, do anything that risks interfering with or compromising their efforts. To the extent funds are recovered, it is too soon to predict how that will unfold and what process

will be employed to distribute these funds to noteholders. We do expect that any such distribution will be controlled, managed, or under some form of supervision by the federal government and/or the courts, which may include the appointment of an independent third-party, such as a trustee or receiver, to administer the distribution of funds to all victims in a transparent, fair, and efficient manner.

There remains a significant amount of information we do not yet know, as well as a lack of control and uncertainty with regard to the timing of future developments. While patience is necessary, we will continue to communicate with you in a prompt manner regarding material developments or to otherwise keep you apprised as we learn more. Please feel free to reach out to us at any time if you have questions or concerns. We are also happy to put you in touch with our outside counsel, as well as to provide you contact information for the SEC Enforcement Division attorney leading the SEC investigation (we are not yet in a position to share contact information for the federal law enforcement authorities investigating this matter, but we will do so when able).

This is an extremely difficult and unfortunate situation, and we are ever mindful of the significant hardship and anxiety it has caused for everyone involved. We remain committed to protecting the interest of noteholders and recovering your funds, and we are working tirelessly to do so.

We will be back in touch in the near future.

Regards,
JJMT Team

--

**Jake Wunderlin**

**Managing Partner**

**JJMT Capital, LLC**

jwunderlin@jjmtcap.com

9/5/23, 12:32 AM
Case 2:21-cv-02927-CAS-PD    Document 260-1    Filed 09/06/23    Page 9 of 9    Page ID
Alex's Contact Info - jeffask@gmail.com - Gmail
#:6545

= Gmail   🔍 alex@loftusandeisenberg.com   ✕   ⚙

**Alexander Loftus** <alex@loftusandeisenberg.com>
to me

I may be able to get fees awarded somehow and want to leave the door open for that. I don't take a cut of what you get paid by the receiver.

On Mon, Jan 3, 2022 at 6:26 PM Jeff Ask <jeffask@gmail.com> wrote:
> Thanks Alex.
>
> There are also a number of things they said via text that may help.
>
> For the EL - are payments from the court appointed receiver actions excluded?  Section 2 appears to carve out until the last sentence (or is that referring to somethi

## II. Contingent Attorney Fee

As consideration for our services, you agree to pay us twenty percent (20%) of any amounts you receive by award, judgment, settlement or otherwise, in mediation, arbitration, state court, federal court, bankruptcy claim, regulatory actions, and/or prosecutorial actions without set-off for any amounts owed to third parties by way of liens, judgments, etc.

In the event attorneys' fees are awarded separately, our fee shall be the greater of twenty percent (20%) of the amount recovered by you or the total attorney fee awarded in your claim or in a related class action against Ingen, Ltd., INGENG Funding I, LLC, JJMT Capital LLC, and their principals and related entities

No contingent fee will be charged on the proceeds of any class action settlement or proceeds of any SEC action paid directly to you. Counsel reserves the right to pursue fees awarded separately from your individual recovery in relation to any class settlement.