Attn: Michele Vives
Douglas Wilson Companies
1620 Fifth Ave. Suite 400
San Diego, CA 92101


September 12, 2023


Dear Ms. Vives,


Please see below for supplemental information for the court's consideration as well as my rebuttal to your response ("Response") to my original objection:

1) The receiver claims to have provided evidence supporting the $9M settlement (Res, ¶9), but I only see a description of her findings, not any actual tangible evidence.
    a. One of the plaintiff's lawyers, Alex Loftus, revealed to me that at least one defendant is very wealthy and owns **$29M of stock options**. This does not appear in the evidence to the court in the motion to approve settlement.
    b. Another of the receiver's lawyers indicated that there are indeed other businesses / investments that were seeded during the time of fraud that continue to operate as going concerns. This does not appear as evidence in the motion to approve settlement.
    c. In footnote 4 of the Response, the receiver puts forth that I do not provide any evidence of other businesses/assets, nor did I provide proof that investments were funded with proceeds from the fraud. I contend that it is the duty of the receiver to discover the financial evidence of what assets remain as I am not privy to the extensive financial information to which she has been granted access. Further, cash is fungible, so any assets up to the amount of fraudulent transfers would be considered purchased with fraudulent funds.
    d. The proposed settlement fails to provide any accounting of the missing $15.3M of net winnings, nor does it provide any assurance that the Defendants did not transfer funds to family members, trusts, or other parties as a means to lower their personal net worth.
    e. I maintain that the Defendants are retaining $15.3M of the $24.3M (based on the Receiver's accounting), which means this proposal legitimizes $15.3M of fraudulent transfers and the "net winners" walk away with greater wealth than the creditors' whose money they are keeping.

2) The receiver claims to have support from all 150 creditors of the estate, other than myself (Res, ¶1). She interprets silence as support. I would contend that there are likely many creditors who do not support the terms of this settlement, but do not have the time, energy, or simply enough money at stake to warrant the time and effort it takes to object. Also, many want to remain

anonymous so as to avoid damages to their reputation on top of the financial damages they are already incurring.

3) The receiver stipulates that I did not file my objection with the court (Res, ¶1). This is accurate, but only because the receiver instructed me to file my objection as a letter addressed to her.

4) The receiver states that the various disputes involving JJM parties are complex and she further indicates that I agree with this assertion (Res, ¶10). I in fact <u>disagree</u> that the dispute she was engaged to handle with the JJM parties is complex. She is simply calculating the net fraudulent transfers into and out of the JJM accounts in order to arrive at a "net winnings" or "net losses" amount. While there may be a lot of fraudulent transactions, the concept of fraudulent cash in vs. fraudulent cash out is quite simple and objective. This case is further simplified by the fact that there was never a legitimate business, so legitimate transactions will not exist/comingle with the fraudulent transfer activity at JJMT.

5) The receiver states that the settlement is predicated on a multi-factor / risk-weighted calculation that includes a significant discount to what she calculates as net winnings from fraudulent transfers. She then lists "multiple defenses" as the reason for the discount, which appears to be 2 primary defenses (conduit defense and statute of limitations defense). Both of which apply only to the <u>receiver's</u> ability to avoid transfers and would not be valid defenses in lawsuits initiated by the creditors directly. For example, the conduit defense, if successful, would prevent the receiver from recovering assets, but would not prevent the individual fraud victims from recovering on their own or in a class action. If the receiver's case is truly weakened by these receiver-specific defenses such that they warrant only voiding 37% of the Defendants' net fraudulent transfers (25% after expenses), then why should the receiver handle these claims in the first place instead of allowing victims to sue as a class?

Thank you,

Jeffrey Ask