1  | LATHAM & WATKINS LLP
2  |   Joshua G. Hamilton (Bar No. 199610)
   |     *joshua.hamilton@lw.com*
3  |   Chandler S. Howell (Bar No. 325329)
   |     *chandler.howell@lw.com*
4  | 10250 Constellation Blvd, Suite 1100
   | Los Angeles, California 90067
5  | Telephone: +1.424.653.5500
   | Facsimile: +1.424.653.5501
6  |
7  | LATHAM & WATKINS LLP
   |   Manuel A. Abascal (Bar No. 171301)
8  |     *manny.abascal@lw.com*
   | 355 South Grand Avenue, Suite 100
9  | Los Angeles, California 90071-1560
   | Telephone: +1.213.485.1234
10 | Facsimile: +1.213.891.8763
11 |
   | Attorneys for Non-Party
12 | City National Bank

13 |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| SECURITIES AND EXCHANGE COMMISSION, | Case No. 2:21-cv-02927-CAS-PD |
|---|---|
| Plaintiff, | **NON-PARTY CITY NATIONAL BANK'S OPPOSITION TO RECEIVER'S MOTION FOR REVIEW OF MAGISTRATE JUDGE'S DISCOVERY ORDER (DKT. 250) PURSUANT TO FED. R. CIV. P. 72** |
| v. | |
| ZACHARY HORWITZ, et al., | |
| Defendants. | Hearing Date: October 16, 2023 |
| | Hearing Time: 10:00 a.m. |
| | Courtroom: 8D |
| | Address: 350 W. First Street, 8th Fl. Los Angeles, CA 90012 |
| | Hon. Christina A. Snyder |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-CV-02927-CAS-PD
NON-PARTY CITY NATIONAL BANK'S OPP. TO
MOT. FOR REVIEW OF DISCOVERY ORDER

# **TABLE OF CONTENTS**

Page

I.      INTRODUCTION ................................................................................ 1

II.     RELEVANT BACKGROUND ............................................................ 4

    A.  The 1inMM Related Clients Agree To Resolve Any
        Disputes With CNB Through Binding ADR. ..................................... 4

    B.  The SEC Sues 1inMM Capital, LLC And Horwitz, And
        A Receiver Is Appointed. .................................................................. 6

    C.  CNB Cooperates With The Receiver's Investigation And
        Provides Over 2,000 Documents In Response To Her
        Requests For Account Information. .................................................... 6

    D.  The Receiver Retains Conflicts Counsel. ......................................... 7

    E.  The Receiver Escalates Her Investigation Into Claims
        Against CNB By Issuing An Extremely Broad Subpoena. ................ 7

    F.  CNB Moves To Quash The Subpoena. .............................................. 8

    G.  The Magistrate Judge Grants CNB's Motion To Quash. .................. 9

III.    STANDARD OF REVIEW ............................................................... 11

IV.     ARGUMENT .................................................................................... 12

    A.  The Order's Finding That The 1inMM Related Clients
        And The Receiver Are Bound To ADR Was Not Clearly
        Erroneous. ........................................................................................ 12

        1.  The Magistrate Judge's Finding That The 1inMM
            Related Clients Are Bound To ADR Was Not
            Clearly Erroneous. ..................................................................... 12

        2.  The Magistrate Judge's Finding That The Receiver
            Is Bound To ADR Was Not Clearly Erroneous. ........................ 14

    B.  The Magistrate Judge's Finding That A Dispute Exists
        Between CNB And The Receiver Was Not Clearly
        Erroneous. ........................................................................................ 15

    C.  The Magistrate Judge's Ruling That The Receiver
        Cannot Pursue Discovery Relating To Horwitz Or MJLZ
        Trust Was Not Clearly Erroneous. ................................................. 19

    D.  The Magistrate Judge's Rejection Of The Receiver's
        Policy Arguments Was Not Clearly Erroneous. ............................. 20

V.      CONCLUSION ................................................................................ 21

i

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-CV-02927-CAS-PD
NON-PARTY CITY NATIONAL BANK'S OPP. TO
MOT. FOR REVIEW OF DISCOVERY ORDER

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5
*Asus Computer Int'l v. Round Rock Rsch., LLC,*
    2013 WL 12131285 (C.D. Cal. June 28, 2013)................................................ 11

6

7
*Capitol Life Ins. Co. v. Gallagher,*
    47 F.3d 1178 (10th Cir. 1995) ........................................................................ 17

8

9
*Diaz v. Heredia,*
    2022 WL 18278590 (C.D. Cal. Nov. 21, 2022) ......................................... 1, 11

10

11
*F.D.I.C. v. O'Melveny & Myers,*
    61 F.3d 17 (9th Cir. 1995) ..................................................................2, 14, 20

12

13
*HTG Cap. Partners, LLC v. Doe(s),*
    2015 WL 5611333 (N.D. Ill. Sept. 22, 2015)................................................ 18

14

15
*Janvey v. Alguire,*
    847 F.3d 231 (5th Cir. 2017) ......................................................................... 21

16

17
*Javitch v. First Union Secs. Inc.,*
    315 F.3d 619 (6th Cir. 2003) ......................................................................... 20

18
*Lopez v. Liberty Mut. Ins. Co.,*
    2018 WL 6137130 (C.D. Cal. Jan. 10, 2018).................................................. 15

19

20
*McIntire v. China MediaExpress Holdings, Inc.,*
    252 F. Supp. 3d 328 (S.D.N.Y. 2017) ...................................................... 2, 19

21

22
*O'Donoghue v. Super. Ct.,*
    219 Cal. App. 4th 245 (2013) ........................................................................ 12

23

24
*Oppenhiemer Fund, Inc. v. Sanders,*
    437 U.S. 340 (1978) ........................................................................................ 18

25

26
*Power Analytics Corp. v. Operation Tech., Inc.,*
    2017 WL 5473416 (C.D. Cal. July 14, 2017) ............................................... 11

27
*In re Refco Sec's. Litig.,*
    759 F. Supp. 2d 342 (S.D.N.Y. 2011) ........................................................... 18

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-CV-02927-CAS-PD
NON-PARTY CITY NATIONAL BANK'S OPP. TO
MOT. FOR REVIEW OF DISCOVERY ORDER

*Salinas v. Cornwell Quality Tools Co.*,
  2023 WL 3432234 (C.D. Cal. Feb. 17, 2023) ......................................... 11, 15, 21

*Scanlon v. County of Los Angeles*,
  2021 WL 2420163 (C.D. Cal. Jan. 29, 2021) .................................................... 11

*Seaman v. Priv. Placement Cap. Notes II, LLC*,
  2017 WL 1166336 (S.D. Cal. Mar. 29, 2017) .................................................... 2

*Sharpe v. F.D.I.C.*,
  126 F.3d 1147 (9th Cir. 1997) .......................................................................... 20

*In re Shoreline Concrete Co., Inc.*,
  831 F.2d 903 (9th Cir. 1987) ............................................................................ 20

*Sifuentes v. Dropbox, Inc.*,
  No. CV 20-07908-HSG, 2022 WL 2673080 (N.D. Cal. June 29,
  2022) ................................................................................................................. 13

*United States v. Dalton*,
  2022 WL 4596660 (C.D. Cal. Aug. 26, 2022) .................................................. 12

*Williams v. Chubb Grp. of Ins. Cos.*,
  77 F.3d 491 (9th Cir. 1996) .............................................................................. 20

**Statutes**

28 U.S.C. § 636(b)(1)(A) ......................................................................................... 1, 11

28 U.S.C. § 754 ............................................................................................................. 21

28 U.S.C. §§ 754 and 1692 ......................................................................................... 21

Cal. Code Civ. Proc. §§ 638–645.1 ........................................................................... 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

1    Non-Party City National Bank ("CNB") respectfully submits its Opposition
2 to Michele Vives' ("Receiver") Motion for Review of Magistrate Judge's Discovery
3 Order (Dkt. 250) Pursuant to Federal Rule of Civil Procedure 72 (the "Motion").

4 **I.    INTRODUCTION**

5    The Magistrate Judge's careful and well-reasoned August 11, 2023 order
6 ("Order") quashing the Receiver's document subpoena to non-party CNB (the
7 "Subpoena") "is entitled to *great deference* by the district court." *Diaz v. Heredia*,
8 2022 WL 18278590, at *1 (C.D. Cal. Nov. 21, 2022) (emphasis original) (quoting
9 *United States v. Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir. 2001)).  In order to
10 overturn the Order, the Receiver must show that the Magistrate Judge's ruling was
11 "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P.
12 72(a).  The Receiver's Motion fails to come close to meeting this burden, and this
13 Court should decline to overrule the sound findings of the Magistrate Judge.

14    After a detailed analysis of the substantial evidence before her, the Magistrate
15 Judge properly made the following key factual findings:

16    • Each of the entities on whose behalf the Receiver was appointed (the
17      "1inMM Related Clients")[1] is a client of CNB who, upon opening an
18      account, agreed to be bound by the terms of CNB's Account Agreement
19      and Disclosures ("Account Agreement") and Treasury Management
20      Services Disclosure and Agreement ("Services Agreement"), and to
21      further amendments or updates thereto (Order at 3–4);

22

23

24

25 [1] The 1inMM Related Clients include One N Million Productions, LLC; 1inMM
26 Productions, LLC; 1inMM Capital, LLC; Rogue Black, LLC; and LayJax Ventures,
   LLC.  By including an entity within the definition of "1inMM Related Clients" for
   purposes of this Opposition only, CNB does not imply or concede that the Court's
27 January 14, 2022 Order On Appointment Of A Permanent Receiver (the
   "Receivership Order") in fact placed or places that entity within the scope of the
28 receivership created by the Receivership Order.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-CV-02927-CAS-PD
NON-PARTY CITY NATIONAL BANK'S OPP. TO
MOT. FOR REVIEW OF DISCOVERY ORDER

- All services that CNB rendered to the 1inMM Related Clients are governed by the Account Agreements and/or Services Agreements between CNB and the 1inMM Related Clients (*id.* at 11);

- Every CNB Account Agreement and Services Agreement, and every amendment or modification of the same, requires the parties to resolve any disputes—which include, among other things, "any disagreement" or "any claim or controversy of any kind"—through alternative dispute resolution ("ADR"), *i.e.*, **not** in federal court (*id.* at 12–13); and

- A dispute, disagreement, or controversy exists between CNB and the Receiver, thus triggering the mandatory ADR provisions (*id.* at 11–12).

To these factual findings, the Magistrate Judge correctly applied the following settled principles of law:

- The Receiver "stands in the shoes" of the 1inMM Related Clients, and is subject to all of their agreements, "including their obligation to resolve their disputes with CNB in accordance with the mandatory ADR provisions." *Id.* at 6, 11; *see F.D.I.C. v. O'Melveny & Myers*, 61 F.3d 17, 19 (9th Cir. 1995);

- The Federal Arbitration Act ("FAA") and controlling precedent requires the Court to enforce the ADR provisions, whether arbitration or judicial reference, against the Receiver.  Order at 10–11; *see Seaman v. Priv. Placement Cap. Notes II, LLC*, 2017 WL 1166336, at *7 (S.D. Cal. Mar. 29, 2017) (compelling SEC receiver to arbitration); and

- The Receiver does not possess discovery powers or rights greater than any of the 1inMM Related Clients, and therefore must pursue any discovery against CNB through ADR.  Order at 9–10; *see McIntire v. China MediaExpress Holdings, Inc.*, 252 F. Supp. 3d 328, 331 (S.D.N.Y. 2017) ("The [SEC] Receiver . . . does not have a subpoena power that exceeds that of [the receivership entity].").

2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-CV-02927-CAS-PD
NON-PARTY CITY NATIONAL BANK'S OPP. TO
MOT. FOR REVIEW OF DISCOVERY ORDER

1    The Magistrate Judge's findings of fact and conclusions of law were correct
2    across the board.

3    *First,* the Magistrate Judge unequivocally and correctly found that "[t]he
4    1inMM Related Clients at all relevant times were bound by *a* mandatory ADR
5    provision." (Order at 13 (emphasis added).)  The Motion fatally concedes this fact
6    by acknowledging that every 1inMM Related Client agreed to an ADR provision in
7    an Account Agreement with CNB.  (Mot. at 9–12.)  Nevertheless, the Motion's
8    primary argument is that the Order is "clearly erroneous" because the Order states
9    the CNB Account Agreements "contained binding arbitration agreements" when
10   some of them instead, at some times, required judicial reference for claims in
11   California (a different form of ADR available in California state court).  The Order
12   clearly reflects that the Magistrate Judge (1) understood that various forms of ADR
13   applied at different times, including judicial reference; and (2) found that *an* ADR
14   provision applied at all times, including judicial reference—a point which the
15   Receiver concedes.  More importantly, the Order does not depend on which form of
16   ADR applied at which times or to which 1inMM Related Clients.  Thus, the
17   "clarification" the Receiver requests through the Motion would not change the
18   Order's holding or outcome.

19   *Second*, in arguing that there is no "dispute" triggering the ADR provisions,
20   the Receiver ignores the Magistrate Judge's extensive factual findings on that issue.
21   The Magistrate Judge expressly and correctly found that an ADR-triggering dispute
22   exists based on: (1) the Receiver's retention of special conflicts counsel to pursue
23   claims against CNB, (2) conflicts counsel's immediate request for a tolling
24   agreement of any claims against CNB, (3) conflicts counsel's issuance of a
25   document preservation notice to CNB, (4) the Receiver's narratives about potential
26   claims against CNB in her court-submitted invoices, and (5) the Subpoena itself
27   (which clearly seeks documents to support a potential claim against CNB).  (Order
28

3

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-CV-02927-CAS-PD
NON-PARTY CITY NATIONAL BANK'S OPP. TO
MOT. FOR REVIEW OF DISCOVERY ORDER

1    at 12.)  The Receiver has not come close to showing that this factual finding was

2    "clearly erroneous."

3        *Third*, the Receiver incorrectly argues that the Order is contrary to law

4    because the binding ADR provisions do not preclude the Receiver from pursuing

5    discovery in federal court relating to Zachary Horwitz and MJLZ Trust, who are not

6    under her receivership.  That argument fails.  What matters is who is seeking the

7    discovery, not to whom the discovery relates.  Here, in all material legal and factual

8    respects, it is the 1inMM Related Clients—acting through their Receiver—who are

9    seeking the discovery.  The Receiver had *no* authority to serve *any* subpoena on *any*

10   party except in her capacity as their Receiver.  But all of the 1inMM Related Clients

11   agreed to binding ADR for all disputes with CNB, and thereby relinquished any right

12   to serve a federal subpoena on CNB.  Because the Receiver "does not have discovery

13   powers or rights greater than those of a 1inMM Related Client on whose behalf she

14   purports to act" (Order at 10), she cannot serve a federal subpoena on CNB either.

15       *Fourth*, the Motion rehashes policy arguments for overturning the Order's

16   conclusions of law, but the Magistrate Judge's conclusion that those policy

17   arguments are inapposite and/or insufficient to defeat controlling legal authorities is

18   plainly not contrary to law.

19       In sum, the Receiver has failed to meet her burden to demonstrate that the

20   Order is clearly erroneous or contrary to law.  The Motion must be denied.

21   **II.    RELEVANT BACKGROUND**

22       **A.    The 1inMM Related Clients Agree To Resolve Any Disputes With**
23       **CNB Through Binding ADR.**

24       The Receiver concedes that between August 2012 and December 2019, each

25   of the 1inMM Related Clients opened accounts at CNB.  (Mot. at 5–8; *see also* Order

26   at 3; ECF # 195, 195-9, 203-2.)  The Receiver further admits that, upon opening an

27   account, each of the 1inMM Related Clients agreed to be bound by the terms of

28

CNB's Account Agreement and further amendments or updates thereto.[2] (Mot. at 5–8; *see also* Order at 3; ECF # 195-10–195-15, 195-18–195-26.) Lastly, the Receiver does not dispute that all the 1inMM Related Clients agreed to be bound by CNB's Services Agreement with regard to any of CNB's Treasury Management Services they used, in which at least two of the 1inMM Related Clients enrolled. (Order at 3; *see* ECF # 195-16, 195-17.)

At all times since the 1inMM Related Clients began banking at CNB, they agreed to resolve any disputes with CNB in accordance with the ADR provisions of the Account Agreement and Services Agreement, as applicable. (Order at 3–4; *see* ECF # 195-20–195-26.) For example, the 2012 ADR provision in the Account Agreement and Services Agreement executed by One N Million Productions, LLC, requires binding arbitration and defines "dispute" as "any disagreement between you and us that you and we are not able to resolve informally." (Order at 3–4; *see* ECF # 195-18, 195-24.) Similarly, the 2013 Account Agreement executed by 1inMM Capital, LLC, provides that all disputes with CNB "will be resolved" in accordance with the 2013 Account Agreement's ADR provision, which defines "dispute" virtually the same as the 2012 Agreements. (Order at 4; ECF # 195-12, 195-19.) For California account holders, the 2013 Account Agreement required any dispute with CNB involving amounts greater than $50,000 to be resolved through California's state court judicial reference program—not in federal district court. (Order at 4; ECF # 195-12, 195-19.)

As the Order described, over the past decade, CNB has occasionally updated its Account and Services Agreements. Some of these updates have amended the agreements' ADR provisions, *e.g.*, changes to the monetary threshold for invoking judicial reference. But, as the Magistrate Judge correctly found, every amendment

---

[2] The "2020 Amendment" and "2023 Amendment" as used herein refer to the Account Agreements effective as of September 1, 2020, and February 1, 2023, respectively. (*See* ECF # 195-22–195-23 (Exs. M, N).)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-CV-02927-CAS-PD
NON-PARTY CITY NATIONAL BANK'S OPP. TO
MOT. FOR REVIEW OF DISCOVERY ORDER

or modification of these contracts always required the 1inMM Related Clients to resolve disputes with CNB *exclusively through ADR, and never in federal court*. (Order at 4; ECF # 195-20–195-23.)

### B.   The SEC Sues 1inMM Capital, LLC And Horwitz, And A Receiver Is Appointed.

On April 5, 2021, the Securities and Exchange Commission ("SEC") initiated this action, alleging that 1inMM Capital, LLC and Horwitz operated a Ponzi scheme that violated various federal securities laws.  (Order at 1; ECF #1.)  The SEC alleged no wrongdoing of any kind by CNB.  (*See* ECF #1.)  On January 14, 2022, the Court appointed Michele Vives as Receiver over 1inMM Capital, LLC "and its subsidiaries and affiliates."[3]   (Order at 1; ECF # 70.)   The Receivership Order granted the Receiver "full powers of an equity receiver" and charged her to, *inter alia*, "investigate and, where appropriate, . . . institute, pursue, and prosecute all claims . . . that may now or hereafter exist as a result of the activities of present or past employees or agents of Defendant 1inMM, and its subsidiaries and affiliates." (Order at 1–2; ECF # 70.)

On February 22, 2022, the Court entered an order authorizing the Receiver to retain counsel at Katten Muchin Rosenman LLP ("Katten") to assist and advise her in her investigation and pursuit of litigation.  (Order at 2; ECF # 71, 76.)  Katten also regularly represents CNB in various unrelated matters.  (Mot. at 18-19; Order at 2.)

### C.   CNB Cooperates With The Receiver's Investigation And Provides Over 2,000 Documents In Response To Her Requests For Account Information.

Over the course of 2022, the Receiver sent six letters to CNB requesting certain account documents and communications pursuant to her claimed control over

---

[3]  The Receiver acknowledges that 1inMM Capital, LLC; One N Million Productions, LLC; 1inMM Productions, LLC; Rogue Black, LLC; and LayJax Ventures, LLC are receivership entities, but maintains that MJLZ Trust and Horwitz are not.  (ECF # 251-1.)

6

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-CV-02927-CAS-PD
NON-PARTY CITY NATIONAL BANK'S OPP. TO
MOT. FOR REVIEW OF DISCOVERY ORDER

the accounts of the 1inMM Related Clients.[4]  (Order at 2; ECF # 195-1–195-5, 203-2.)  These requests sought solely account records and information to which the Receiver was entitled as the Court-appointed account holder for these accounts; *i.e.,* the same type of information to which the 1inMM Related Clients would have had access as account holders.  Pursuant to the Receivership Order and the Receiver's representations, CNB cooperated with the Receiver's requests and in total produced over 2,000 documents to the Receiver, consisting of over 9,100 pages.  (Order at 2; ECF # 195-1–195-5, 203-2.)

### D.    The Receiver Retains Conflicts Counsel.

In September 2022, after CNB provided these documents to the Receiver, the Receiver began researching and investigating potential claims against CNB, as evidenced by invoices filed with this Court.  (Order at 12; ECF # 203-1, 195-1.)  On December 7, 2022, the Receiver filed a motion requesting that the Court authorize her to retain Raines Feldman LLP ("Raines Feldman") as conflicts counsel to advise her only with respect to a "small number" of cases that "present legal or business conflicts for Katten."  (Order at 2; ECF # 156, 156-2.)  Pursuing claims against CNB is one such matter, on which Katten is conflicted out of representing the Receiver. (ECF # 195; Mot. at 18–19.)  On January 3, 2023, the Court granted the motion authorizing Raines Feldman to represent the Receiver to "pursue a claim or cause of action in connection with a Conflict Matter."  (Order at 2; ECF # 166.)

### E.    The Receiver Escalates Her Investigation Into Claims Against CNB By Issuing An Extremely Broad Subpoena.

On January 5, 2023, Raines Feldman contacted counsel for CNB and requested that CNB (1) enter into a tolling agreement for any claims against CNB, and (2) preserve all documents related to the 1inMM and Horwitz accounts.  (Order

---

[4] CNB, through counsel, also worked collaboratively with the Receiver to resolve issues relating to the Rogue Black account, including obtaining the funds deposited into it that had been frozen by the Court.  Notably, the Receiver did not utilize conflicts counsel for those issues. (ECF # 142.)

at 12; ECF # 195-1, 195-7.)  CNB declined to enter into a tolling agreement.  (Order at 2; ECF # 195-1.)  Only six days later, the Receiver—through Raines Feldman—served the instant Subpoena with *122 document requests* (many with multiple subparts) to CNB.

This aggressive and adversarial Subpoena was clearly targeted at bringing a claim against CNB.  (Order at 2; ECF # 197-1.)  As the Receiver's conflicts counsel admitted at oral argument, the Subpoena is focused on "what did the bank know and when did the bank know it.  Is there a claim to be pursued."  (Declaration of Joshua Hamilton I/S/O Opp. to Mot. for Review ("Hamilton Decl."), Ex. 1 at 11:21–22; *see also id.* at 11:9–13 ("[W]hat we are seeking is what was in their due diligence files . . . what did their anti-money laundering red flag alerts show them.  How many red flag alerts were there.  What were they talking about. . . ").)  Indeed, among other things, the Subpoena contains: twenty-six requests regarding internal bank policies, procedures, training, and practices; fifteen requests regarding due diligence into client accounts; eight requests relating to internal communications amongst CNB employees; and many other document requests relating to "red flag" alerts or compliance with various banking regulations (many of which are precluded from discovery under applicable banking regulations).  (Order at 2–3; ECF # 197-1.)[5]

**F.    CNB Moves To Quash The Subpoena.**

On March 15, 2023, CNB moved to quash the Subpoena (the "Motion to Quash").  (Order at 4–5; ECF # 195.)  CNB argued that the Subpoena must be quashed because the Receiver—who stands in the shoes of the 1inMM Related Clients that are under her receivership—is bound by the 1inMM Related Clients' ADR agreements with CNB, and therefore, cannot propound discovery on CNB in federal court in support of a potential claim against CNB.  (Order at 4-5; ECF # 195.)  In

---

[5] CNB's Motion to Quash focused only on the invalidity of the Subpoena because of the binding ADR provisions.  CNB also expressly preserved all other objections to the Subpoena by timely serving its objections to the Subpoena on the Receiver.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
CENTURY CITY

opposition, the Receiver argued that she is not bound by the 1inMM Related Clients'
ADR obligations under a number of incorrect theories that are repeated in the instant
Motion.  (Order at 5; ECF # 202.)

###### G.    The Magistrate Judge Grants CNB's Motion To Quash.

On April 24, 2023, following a full briefing schedule—featuring multiple
declarations with over twenty-five exhibits—the Magistrate Judge held oral
argument that lasted over an hour.  The Magistrate Judge carefully questioned
counsel for CNB and for the Receiver.  (*See generally* Hamilton Decl., Ex. 1; ECF
# 195-198, 202-203.).)  Following the hearing, the Magistrate Judge took the Motion
to Quash under submission.  (ECF # 206.)  On August 11, 2023, the Magistrate Judge
issued a thoughtful, thirteen-page Order granting CNB's Motion to Quash.  (ECF #
250; *see generally* Order.)

*First*, the Magistrate Judge unequivocally determined that the Receiver is
bound by the ADR provisions in the Account Agreements and Services Agreements,
concluding that the 1inMM Related Clients "are bound by the mandatory ADR
provisions that preclude them from litigating any disputes, controversies, or
disagreements with CNB in federal court," and that the Receiver who "stands in [the
1inMM Related Clients'] shoes [] is equally bound by these arbitration agreements,
which were in place prior to the Receiver's appointment, even though she did not
sign them or manifest assent."  (*Id.* at 6–7.)  The Magistrate Judge correctly noted
that some Account Agreements required binding arbitration while others required
judicial reference.  (*Id.* at 4.)

In reaching this conclusion, the Magistrate Judge expressly rejected the
Receiver's contention that she is not subject to ADR with respect to seeking
documents relating to Horwitz or MJLZ Trust, holding that "the Receiver here does
not have discovery powers or rights greater than those of any 1inMM Related Client
on whose behalf she purports to act."  (*Id.* at 9–10.)  Specifically, the Magistrate

9

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-CV-02927-CAS-PD
NON-PARTY CITY NATIONAL BANK'S OPP. TO
MOT. FOR REVIEW OF DISCOVERY ORDER

Judge reasoned that because the Receiver is permitted to conduct discovery only on behalf of the receivership entities, "whose sole relationship with CNB is that of a bank and clients who have agreed to resolve their disputes through ADR," the Receiver "must comply with those entities' mandatory ADR agreements," none of which allow for discovery in federal court. (*Id.* at 9.)

*Second*, the Magistrate Judge found the ADR provisions were triggered because a "dispute" as defined in the Account Agreements or Services Agreements exists between CNB and the Receiver. (*Id.* at 10–13.) The Magistrate Judge correctly found that the ADR provisions broadly encompass "any disagreement [the parties] are not able to resolve informally," including "any claim or controversy of any kind that arises out of or is related" to the 1inMM Related Clients' banking relationship. (*Id.* at 9, 12.) The Magistrate Judge further found that "[a]ny claim by the Receiver against CNB would necessarily relate to the services CNB rendered to the 1inMM Related Clients[,]" which "are all governed by the Account Agreements and [Services Agreements] between CNB and the 1inMM Related Clients[,]" and the Receiver is therefore bound by their "obligation to resolve their disputes with CNB in accordance with the mandatory ADR provisions." (*Id.* at 11.) Specifically, the Magistrate Judge held that a dispute existed, based on, *inter alia*, the Receiver's (1) retention of conflicts counsel shortly before issuing the Subpoena, (2) request that CNB enter into a tolling agreement, (3) issuance of a document preservation notice to CNB, and (4) court-submitted invoices showing investigation into claims against CNB. (*Id.*)

The Magistrate Judge's findings were guided by reliance on controlling legal principles, including: (a) the "liberal and emphatic federal policy favoring alternative dispute resolution," (b) the "strictly limited" role of the court in "determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator," (c) the lack of any relevant distinction between agreements requiring arbitration and those requiring judicial

10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-CV-02927-CAS-PD
NON-PARTY CITY NATIONAL BANK'S OPP. TO
MOT. FOR REVIEW OF DISCOVERY ORDER

reference, and (d) the fact that "[c]ourts frequently compel to arbitration claims brought by receivers who stand in the shoes of receivership entities that are bound by an agreement to arbitrate." (*Id.* at 10-11.)

## III.   STANDARD OF REVIEW

"A magistrate judge's decision in non-dispositive matters 'is entitled to *great deference* by the district court.'" *Diaz*, 2022 WL 18278590, at *1 (emphasis original).  Indeed, a district court may not set aside or modify a magistrate judge's non-dispositive ruling unless the ruling is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

Under the "significantly deferential" clearly erroneous standard, the district court must defer to the magistrate judge's factual findings and discretionary decisions unless it has "a definite and firm conviction that a mistake has been committed." *Asus Computer Int'l v. Round Rock Rsch., LLC*, 2013 WL 12131285, at *3 (C.D. Cal. June 28, 2013) (quoting *Concrete Pipe & Prods. v. Constr. Laborers Pension Tr.*, 508 U.S. 602, 623 (1993)); *Diaz*, 2022 WL 18278590, at *1.  Thus, "[i]f a magistrate judge's account of the evidence is plausible in light of the record viewed in its entirety, the district court may not reverse it even if it would have weighed the evidence differently had it been sitting as the trier of fact." *Salinas v. Cornwell Quality Tools Co.*, 2023 WL 3432234, at *2 (C.D. Cal. Feb. 17, 2023); *Power Analytics Corp. v. Operation Tech., Inc.*, 2017 WL 5473416, at *1 (C.D. Cal. July 14, 2017) (same).  Under this stringent standard, "[a] ruling usually cannot be clearly erroneous if there is no Ninth Circuit authority on point, or the question has not been addressed by any circuit court." *Salinas*, 2023 WL 3432234, at *3 (quoting *In re Mersho*, 6 F.4th 891, 898 (9th Cir. 2021)).

"[T]he contrary to law standard permits independent review of purely legal determinations by the magistrate judge." *Scanlon v. Cty of Los Angeles*, 2021 WL 2420163, at *2 (C.D. Cal. Jan. 29, 2021).  "A decision is contrary to law if it applies

1   an incorrect legal standard or fails to consider an element of the applicable standard."

2   *United States v. Dalton*, 2022 WL 4596660, at *1 (C.D. Cal. Aug. 26, 2022).

3   **IV.    ARGUMENT**

4       **A.    The Order's Finding That The 1inMM Related Clients And The
5             Receiver Are Bound To ADR Was Not Clearly Erroneous.**

6           **1.    The Magistrate Judge's Finding That The 1inMM Related
7                 Clients Are Bound To ADR Was Not Clearly Erroneous.**

8           The Receiver's concession that each of the 1inMM Related Clients "opened

9   accounts at CNB between August 2012 and December 2019 *and executed account*

10  *opening agreements*" is fatal to the Motion.  (Mot. at 4 (emphasis added))   The

11  Account Agreements that the 1inMM Related Clients admittedly executed—as well

12  all amendments or modifications to those agreements—have *always* required that

13  disputes with CNB be resolved exclusively through ADR.  None of them ever has

14  allowed discovery in federal court.  Pre-filing discovery is no more available in

15  judicial reference than it is in arbitration.  *See* Cal. Code Civ. Proc. §§ 638–645.1;

16  *O'Donoghue v. Super. Ct.*, 219 Cal. App. 4th 245, 265 (2013).  Thus, although CNB

17  has occasionally updated its ADR provisions over the years, the Magistrate Judge's

18  ruling that that "the 1inMM Related Clients at all relevant times were bound by a

19  mandatory ADR provision" was not clearly erroneous.  (*See* Order at 13.)

20          The Receiver spends page after page complaining that the Order occasionally

21  and generically refers to the ADR provisions as "arbitration agreements."   The

22  Receiver's incorrect, straw-man argument is that the Magistrate Judge found that the

23  Receiver's dispute must be resolved in arbitration, as opposed to in California

24  judicial reference. (Mot. at 15–17.)  But the Magistrate Judge made no such finding.

25  The Order simply found that (1) the Account and Services Agreements all contain

26  binding ADR provisions (some of which include judicial reference), (2) "the ADR

27  provisions are triggered," and (3) the federal court Subpoena must therefore be

28  quashed.  (*See* Order at 10, 13; *see id.* at 6 (holding, under the section of the Order

entitled "The Receiver is Bound by *the ADR Provisions*," that the receivership entities "are bound by *the* mandatory *ADR provisions*" (emphases added).)

Thus, the Motion criticizes "findings" that the Magistrate Judge never made, such as *which* specific form of ADR apply to *which* disputes arising out of *which* 1inMM Related Clients' nearly decade-long banking relationships, or *whether* a given 1inMM Related Client assented to a certain update to a particular ADR provision.[6]  In reaching her holding, the Magistrate Judge agreed with CNB's explanation that she did not need to resolve these issues.  (Reply to Opp. to Mot. to Quash at 4–5 ("[T]he Receiver argues at length about which specific version of the ADR provisions is operative.  This is a sideshow.  Every Account Agreement requires ADR, and therefore prohibits the Receiver from issuing and enforcing the Subpoena in federal court."); *see also* Hamilton Decl., Ex. 1 at 22:11–14 (counsel for CNB explaining that the issue of which ADR provision applies "doesn't have to be resolved here.  Because it's clear that every single entity has an ADR provision.").)

The Receiver claims that the Magistrate Judge erroneously (1) ignored an ADR amendment that excludes certain California account holders from arbitration and instead requires them to participate in judicial reference; and (2) failed to find that the latest 2023 Amendment is inapplicable to the Receiver because the Receiver supposedly did not assent to it.  (Mot. at 14-16.)  These arguments entirely miss the mark because the Magistrate Judge never decided which Account Agreement applied.

Accordingly, the Receiver's request for "clarification that any ADR provision that may apply is limited to judicial reference as set forth in the 2020 Amendment

---

[6] As the Order correctly held, the Receiver's reliance on *Sifuentes v. Dropbox, Inc.*, No. CV 20-07908-HSG, 2022 WL 2673080, at *4 (N.D. Cal. June 29, 2022) to support her argument that CNB did not provide evidence of assent to any specific ADR provision is misplaced because, "[w]hile CNB occasionally updated the ADR provisions in the Account [and Services] Agreements . . ., each of them requires ADR."  (Order at 13.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-CV-02927-CAS-PD
NON-PARTY CITY NATIONAL BANK'S OPP. TO
MOT. FOR REVIEW OF DISCOVERY ORDER

1   and that [it] only applies as to records sought relating to the Receivership Entities"

2   is an improper request for an advisory opinion from this Court.  The sole issue here

3   is whether the Magistrate Judge properly quashed the Subpoena.  In reaching that

4   holding, the Magistrate Judge never had to, and in fact did not, opine on whether

5   arbitration or judicial reference is applicable, or whether certain ADR provisions

6   apply only to some kinds of records sought but not to others.  This Court similarly

7   need not decide those issues.

8               **2.      The Magistrate Judge's Finding That The Receiver Is**
                **Bound To ADR Was Not Clearly Erroneous.**
9

10          The Magistrate Judge applied controlling precedent to hold that the Receiver

11  is bound by the same ADR provisions that bind the 1inMM Related Clients for

12  whom she acts.  Order at 11; *see O'Melveny & Myers*, 61 F.3d at 19.  The Receiver

13  argues that this ruling was contrary to law to the extent it relied on authorities that

14  are "distinguishable" because they involved "forum selection clauses, rather than

15  arbitration agreements," or involved cases after the receivers had commenced

16  litigation.  First of all, the Order *does* include multiple citations to cases compelling

17  receivers to arbitration.  Second, the Motion fails to explain why precedent requiring

18  a receiver to abide by a forum selection clause is not pertinent to whether she is

19  bound by an arbitration agreement—particularly in light of the FAA's liberal policy

20  in favor of arbitration.   The principle is exactly the same, whether the pre-

21  receivership contractual provision is an ADR agreement or a forum selection clause:

22  an equity receiver is bound by all such agreements.

23          No precedent supports the Receiver's theory that the procedural posture of a

24  case affects the enforceability of an ADR provision.  The fact that many of the cases

25  cited in the Order involved post-complaint motions to compel ADR does not mean

26  the Court is incapable of enforcing the binding ADR agreements unless and until the

27  Receiver files a complaint.  More likely, that procedural posture merely reflects the

28

                                            14

CASE NO. 2:21-CV-02927-CAS-PD
                                                              NON-PARTY CITY NATIONAL BANK'S OPP. TO
                                                              MOT. FOR REVIEW OF DISCOVERY ORDER

fact that a party bound by an ADR provision rarely tries to evade it by seeking pre-filing discovery in federal court, as the Receiver has done.

In any event, to meet the burden of showing that the Magistrate Judge's ruling was contrary to law, the Receiver must identify contrary, on-point authority within the Ninth Circuit.  *See Salinas*, 2023 WL 3432234, at *2; *see also Lopez v. Liberty Mut. Ins. Co.*, 2018 WL 6137130, at *3 (C.D. Cal. Jan. 10, 2018) (holding that magistrate judge's ruling was not clearly erroneous or contrary to law where there were no controlling cases and the magistrate judge "found one line of reasoning more applicable or persuasive than the other given the facts of this case").  The Receiver has not done so.  Indeed, notably absent from the Motion is *any* precedent—in any jurisdiction—that directly contradicts the Magistrate Judge's conclusions of law.  The Receiver has thus failed to carry her burden to show that the Order's legal conclusions were "contrary to law."

### B.    The Magistrate Judge's Finding That A Dispute Exists Between CNB And The Receiver Was Not Clearly Erroneous.

The Receiver next unpersuasively argues that the Magistrate Judge erred by finding that a dispute sufficient to trigger the parties' ADR provisions exists between CNB and the Receiver.  (Mot. at 16.)

The Receiver's claim that the Order "did not identify a particular dispute that would trigger an ADR provision," and "speaks in generalities and hypotheticals" is plainly not accurate.  (Mot. at 16.)  The Magistrate Judge correctly found that the ADR provisions (1) broadly cover any dispute under the Account and Services Agreements, including "any disagreement" and "any claim or controversy of any kind," including "statutory, common law and equitable claims," and (2) do not apply only to filed lawsuits.  (Order at 12.)  The Magistrate Judge astutely identified multiple, specific facts contained in the record that—particularly when considered together—support her conclusion that a dispute exists:

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-CV-02927-CAS-PD
NON-PARTY CITY NATIONAL BANK'S OPP. TO
MOT. FOR REVIEW OF DISCOVERY ORDER

1    • "The Receiver has retained conflicts counsel to pursue 'potential claims'
2      on a 'small number of cases' where her prior counsel has a conflict,
3      indicating that the Receiver may currently be adverse to CNB";

4    • The Receiver's conflicts counsel informed CNB it was conducting an
5      investigation;

6    • The Receiver's conflicts counsel requested that CNB enter into a tolling
7      agreement;

8    • The Receiver's conflicts counsel notified CNB of its obligation to preserve
9      "all documents, records, and things relating to the 1inMM and Horwitz
10     accounts";

11   • "The Receiver's invoices reflect research into potential claims against
12     CNB"; and

13   • "The documents requested in the Subpoena suggest that the Receiver seeks
14     information regarding whether CNB had knowledge of, or was complicit
15     in, the Ponzi scheme—in other words, that the Receiver is investigating
16     potential claims against CNB."

17   (Order at 12.)

18        The Receiver's own admissions at oral argument and in the Motion belie her
19   baseless claim that the Subpoena innocuously constituted nothing more than an
20   information-gathering exercise.  The Receiver candidly conceded that she served the
21   Subpoena to determine "what did the bank know and when did the bank know it. *Is*
22   *there a claim to be pursued*."  (Hamilton Decl., Ex. 1 at 11:21–22 (emphasis
23   added).)  In the Motion, the Receiver admits that she "obviously cannot have general
24   counsel [*i.e.*, Katten] with a conflict investigate potential claims against its own
25   client [*i.e*., CNB]." (Mot. at 18–19.)  The fact that the Receiver's conflicts counsel—
26   and not Katten—issued the Subpoena is an express admission that CNB is the target
27   of the "potential claims" that the Subpoena seeks to investigate.  The Motion also
28   ignores that before conflicts counsel had been engaged or the Subpoena was served,

16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-CV-02927-CAS-PD
NON-PARTY CITY NATIONAL BANK'S OPP. TO
MOT. FOR REVIEW OF DISCOVERY ORDER

CNB had already provided over 9,100 pages of documents to the Receiver, including account statements, checks, and wire records from the 1inMM Related Clients, as well as communications between Horwitz and CNB employees. (Order at 2; ECF # 195-1, 203-2.)  In stark contrast to the Receiver's informal requests for those records, the context and content of the Subpoena plainly evidence an effort to obtain evidence to support a claim against CNB.

The Motion misguidedly relies on *Capitol Life Insurance Co. v. Gallagher*, 47 F.3d 1178 (10th Cir. 1995) to argue that no dispute exists. (Mot. at 16.)  But that case actually undermines the Receiver's argument.  There, Gallagher (the commissioner of Florida's Department of Insurance) served in a dual role as the receiver of an insolvent insurance company ("GSL") and also a "representative party plaintiff" in a class action lawsuit against the insurance company ("Capitol") that had sold the policies to GSL.  In the *class action*, Capitol moved to compel Gallagher to arbitration based on an arbitration agreement between GSL and Capitol.  The Tenth Circuit began by reaffirming the core legal principle underlying the Magistrate Judge's Order, namely, that "Gallagher, *as GSL's receiver,* may be compelled to arbitrate because a receiver 'stands in the shoes' of the insolvent insurance company." *Id.* at *2 (emphasis original).  Contrasting Gallagher's role as receiver with his role as a class representative, the Tenth Circuit held that Gallagher was not required to arbitrate the class action against Capitol only because he "did not appear . . . in his capacity as receiver for GSL," but rather as a representative of the insureds, who had not agreed to arbitrate their disputes with Capitol.  *Id.*; *see also id.* at *5 ("Gallagher occupies two different roles.  There is no reason why those two different roles cannot be logically and legally distinct and separable.").  Here, the Receiver is a SEC equity receiver authorized to act exclusively on behalf of the 1inMM Related Clients.  As the Order correctly held, the Receiver does not hold a dual role; she is not authorized to represent the creditors or investors of the alleged

CASE NO. 2:21-CV-02927-CAS-PD
NON-PARTY CITY NATIONAL BANK'S OPP. TO
MOT. FOR REVIEW OF DISCOVERY ORDER

1    Ponzi scheme.  (*See* Order at 7–9 (distinguishing between the Receiver and a

2    bankruptcy trustee).)

3           The Motion next argues that the Order erred because it "found a 'dispute'"

4    without identifying the "nature or value of any dispute." (Mot. at 19.)  As the Order

5    described, the ADR provisions broadly define the disputes subject to them, and the

6    Court was not required to place a specific value on the potential dispute.

7           While the Receiver attempts to invoke a $250,000 threshold for judicial

8    reference in California contained in the 2020 Amendment, she failed to present any

9    evidence (or even represent to this Court) that she would seek less than $250,000 in

10   any potential claim against CNB, and she clearly could not do so in good faith.  The

11   hundreds of millions of dollars that were allegedly involved in Horwitz's Ponzi

12   scheme, and the amounts the Receiver has pursued and recovered from other non-

13   parties to date, all make clear that any potential claims against CNB would exceed

14   any potentially applicable monetary threshold for judicial reference in any Account

15   Agreements.  (*See, e.g.*, ECF # 218 (seeking approval of $3,850,000 settlement);

16   ECF # 235 (seeking approval of $9,000,000 settlement).)

17          Moreover, it was not clearly erroneous for the Magistrate Judge to conclude

18   that the Receiver is not entitled to exploit this SEC enforcement action to seek

19   discovery to support claims that she may not bring in this Court.  *See Oppenhiemer*

20   *Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n. 17 (1978) ("[W]hen the purpose of a

21   discovery request is to gather information for use in proceedings other than the

22   pending suit, discovery properly is denied."); *In re Refco Sec's. Litig.*, 759 F. Supp.

23   2d 342, 345 (S.D.N.Y. 2011) (denying discovery after concluding "the true purpose

24   of the . . . request for the [document] is to bolster claims in the arbitration"); *HTG*

25   *Cap. Partners, LLC v. Doe(s)*, 2015 WL 5611333, at *4 (N.D. Ill. Sept. 22, 2015)

26   ("The Court agrees that it would be burdensome [under Rule 45] to mandate

27   discovery for a claim that cannot be litigated in court.").

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-CV-02927-CAS-PD
NON-PARTY CITY NATIONAL BANK'S OPP. TO
MOT. FOR REVIEW OF DISCOVERY ORDER

**C.**    **The Magistrate Judge's Ruling That The Receiver Cannot Pursue Discovery Relating To Horwitz Or MJLZ Trust Was Not Clearly Erroneous**.

The Receiver asserts that because Horwitz and MJLZ Trust are not subject to her receivership, she is not bound by the contracts between CNB, on the one hand, and Horwitz or MJLZ Trust, on the other hand, and may therefore seek documents relating to those entities. This argument fails. The Receiver stands in the shoes of the 1inMM Related Clients and she had no power to serve any subpoena at all except in that capacity, and as limited by their ADR agreements with CNB.

The Order correctly concluded that because "the Receiver is permitted to conduct discovery only on behalf of the receivership entities," she "must comply with those entities' mandatory ADR agreements." (Order at 9; citing *McIntire*, 252 F. Supp. 3d at 331 ("The [SEC] Receiver, because he stands in CCME's shoes, does not have a subpoena power that exceeds that of CCME. . . . The [SEC] Receiver may not use his status as a court-appointed Special Receiver to flout the primacy of the arbitrator or to get a head-start on pursuing discovery of the claims that are subject to arbitration.").) Thus, the Order did not commit clear error by ruling that the Receiver can propound discovery against CNB only in accordance with the 1inMM Related Clients' ADR agreements, regardless of whether that discovery relates to their own accounts, or to the banking accounts of their principal (Horwitz) or his trust (MJLZ Trust).

Furthermore, the Receiver's claim that the Subpoena can be read to seek only information relating to the Horwitz and MJLZ accounts is baseless. (Mot. at 4.) The record plainly indicates that the Subpoena's focus is to pursue potential claims against CNB. *See supra* Sections II.E, IV.B. In light of this evidence, it was not clearly erroneous for the Magistrate Judge to find that "the documents requested in the Subpoena suggest that the Receiver seeks information regarding whether CNB

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-CV-02927-CAS-PD
NON-PARTY CITY NATIONAL BANK'S OPP. TO
MOT. FOR REVIEW OF DISCOVERY ORDER

1    had knowledge of, or was complicit in, the Ponzi scheme—in other words, that the

2    Receiver is investigating potential claims against CNB."  (Order at 12.)

3        ## D.    The Magistrate Judge's Rejection Of The Receiver's Policy Arguments Was Not Clearly Erroneous.

4

5        Lastly, the Receiver asks the Court to reverse the Magistrate Judge's well-

6    reasoned Order based on inapposite policy arguments and appeals to equity.  The

7    Motion cites to the Ninth Circuit's decision in *F.D.I.C. v. O'Melveny & Myers*, 61

8    F.3d 17 (9th Cir. 1995) for the unremarkable proposition that "defenses based on a

9    party's unclean hands or inequitable conduct do not generally apply against that

10   party's receiver."  (Mot. at 22.)  This proposition is irrelevant, because neither party

11   has asserted any equitable defense, nor did the Magistrate Judge find that any

12   equitable defense was relevant to CNB's Motion to Quash.

13       In any event, the "fundamental principle of equity jurisprudence" is that

14   "equity follows the law." *In re Shoreline Concrete Co., Inc.*, 831 F.2d 903, 905 (9th

15   Cir. 1987).  Courts have thus consistently recognized that receivers are categorically

16   bound by any *legal obligations*—such as a contractual obligation—that could be

17   asserted against the receivership entity.  *Javitch v. First Union Secs. Inc.*, 315 F.3d

18   619, 627 (6th Cir. 2003) (A receiver in equity "is bound to the arbitration agreements

19   to the same extent that the receivership entities would have been absent the

20   appointment of the receiver."); *see also* Order at 11 (citing cases compelling

21   receivers to arbitrate); *compare O'Melveny & Myers*, 61 F.3d at 19, *with Sharpe v.

22   F.D.I.C.*, 126 F.3d 1147, 1156–57 (9th Cir. 1997) (holding receiver was subject to

23   private contractual obligations and that permitting a receiver "to avoid its contractual

24   obligations [with a private party]. . . would raise serious constitutional issues."

25   (citations omitted)); *see also Williams v. Chubb Grp. of Ins. Cos.*, 77 F.3d 491 (9th

26   Cir. 1996) ("Here, [defendant] relies on the legal defense of concealment, not on the

27   equitable defense of estoppel, as did the defendant in *O'Melveny & Myers*").

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-CV-02927-CAS-PD
NON-PARTY CITY NATIONAL BANK'S OPP. TO
MOT. FOR REVIEW OF DISCOVERY ORDER

1   The Receiver's final argument is that compelling the Receiver to ADR
2  conflicts with Congress's purposes underlying 28 U.S.C. sections 754 and 1692.
3  (Mot. at 23.)  This argument is also meritless.  Those statutes primarily concern
4  receivership property located across multiple jurisdictions and have no bearing
5  whatsoever on whether receivers are bound by preexisting, private contracts.  (*See*
6  Order at 9 (quoting *Mosier v. HSBC Bank USA, N.A.*, 2010 WL 5422550, at *4 (C.D.
7  Cal. Dec. 28, 2010) (finding no basis in federal receiver statute, 28 U.S.C. § 754, to
8  support the view that appointment of a federal receiver may negate terms of a
9  contract entered into by the receivership entity).

10   The sole case the Receiver cites to support her policy arguments for receivers
11  being able to avoid private contracts—*Janvey v. Alguire*, 847 F.3d 231 (5th Cir.
12  2017)—directly undermines her position.  There, the Fifth Circuit expressly declined
13  to reach the receiver's similar, policy-based arguments, concluding: "*[W]e are wary*
14  *of endorsing these broad policy arguments in the absence of specific direction from*
15  *the Supreme Court*."  *Id.* at 245 (emphasis added).  The Magistrate Judge's decision
16  to reject the Receiver's broad-based policy arguments was thus fully consistent
17  with—and not contrary to—the law.  *Salinas*, 2023 WL 3432234, at *2 ("A ruling
18  usually cannot be clearly erroneous if there is no Ninth Circuit authority on point, or
19  the question has not been addressed by any circuit court.").

20  **V.**    **CONCLUSION**

21   For the foregoing reasons, the Receiver's Motion should be denied.

22

23  Dated:  September 25, 2023           Respectfully submitted,

24                                          **LATHAM & WATKINS LLP**

25                                   By  */s/ Joshua G. Hamilton*

26                                          Joshua G. Hamilton
                                            *Attorneys for Non-Party*
27                                          *City National Bank*

28

21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-CV-02927-CAS-PD
NON-PARTY CITY NATIONAL BANK'S OPP. TO
MOT. FOR REVIEW OF DISCOVERY ORDER

1

## **CERTIFICATE OF COMPLIANCE**

2          The undersigned, counsel of record for Non-Party City National Bank,

3    certifies that this brief contains less than 7,000 words, which complies with the

4    word limit of L.R. 11-6.1.

5

6    Dated:  September 25, 2023                    */s/ Joshua G. Hamilton*

7                                                 Joshua G. Hamilton

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
CENTURY CITY

CASE NO. 2:21-CV-02927-CAS-PD
NON-PARTY CITY NATIONAL BANK'S OPP. TO
MOT. FOR REVIEW OF DISCOVERY ORDER