1    **RAINES FELDMAN LITTRELL LLP**
     Kathy Bazoian Phelps (State Bar No. 155564)
2    *kphelps@raineslaw.com*
     1900 Avenue of the Stars, Suite 1900
3    Los Angeles, California 90067
     Telephone: (310) 440-4100
4    Facsimile: (310) 691-1943

5    *Counsel for Michele Vives,*
     *Permanent Receiver*
6

7

8                **UNITED STATES DISTRICT COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10

11   SECURITIES AND EXCHANGE            Case No.: 2:21-cv-02927-CAS-PD
     COMMISSION,
12                                      **REPLY TO NON-PARTY CITY**
13              Plaintiff,              **NATIONAL BANK'S**
                                        **OPPOSITION TO MOTION OF**
14        v.                            **RECEIVER FOR REVIEW OF**
                                        **MAGISTRATE JUDGE'S**
15                                      **DISCOVERY ORDER (DKT. 250)**
16   ZACHARY J. HORWITZ, *et al.*,      **PURSUANT TO FED. R. CIV. P.**
                                        **72**
17              Defendants.
18

19                                      Date:    October 16, 2023
20                                      Time:    10:00 a.m.
                                        Dept.:   Courtroom 8D
21                                      Place:   United States District Court
                                                 350 West 1st Street,
22                                                Los Angeles, CA 90012
23
                                        Hon. Christina A. Snyder
24

25

26

27

28

---

CASE NO. 2:21-CV-02927-CAS-PD              REPLY RE MOTION FOR REVIEW OF ORDER

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................1

II.   ARGUMENT .........................................................................................4

   A.   The ADR Provision in the 2020 Amendment Does Not Require ADR Here ...............................................................4

      1.   No Factual Finding Was Made as to Which Account Agreement Applies .............................................................5

      2.   The Significance of the 2020 Agreement ...........................5

   B.   There Is No Dispute That Involves a Monetary "Claim" Here ....6

      1.   CNB's Fear That the Receiver May Someday Make a Monetary Claim Against It Does Not Make This Subpoena Dispute a "Dispute" Involving a "Claim" .........8

      2.   CNB Has the Burden to Show $250,000 Monetary Dispute ...........................................................................10

   C.   The Receiver is Not Bound by Non-Receivership Entity Contracts ................................................................................11

      1.   Not All 1inMM Related Clients Are Receivership Entities .........................................................................11

      2.   The Rules Are Different for Receivership Entities and Non-Receivership Entities ...............................................12

      3.   Only Two Receivership Entities Had Services Agreements ...................................................................12

      4.   The General and Overbroad Conclusion that an ADR Provision Applies to All 1inMM Related Clients Is Clearly Erroneous ..........................................................13

   D.   A Receiver May Serve Subpoenas for Third Party Discovery ...14

   E.   District Courts Are Charged with the Orderly Administration of Estate Assets and Use Receivers to Exercise Complete Jurisdiction and Control Over Estate Assets............................17

   F.   The Ninth Circuit Recognizes Exceptions to a Receiver "Standing in the Shoes" Argument ...........................................18

III.  CONCLUSION ....................................................................................19

# TABLE OF AUTHORITIES

**Cases**

*Ashbey v. Archstone Prop. Mgmt., Inc.*,
  785 F.3d 1320 (9th Cir. 2015) ........................................................................10

*FDIC v. O'Melveny & Myers*,
  61 F.3d 17 (9th Cir. 1995) ..............................................................................18

*Quilling v. Grand Street Trust*,
  No. 3:04 CV 251, 2005 WL 1983879, at *2 (W.D.N.C. Aug. 12, 2005).........17

*Sandquist v. Lebo Auto, Inc.*,
  1 Cal. 5th 233 (2016) .........................................................................................7

*SEC v. Abdallah*,
  No. 1:14-cv-1155, 2014 WL 12597834 at *2 (N.D. Ohio Dec. 3, 2014).........15

*SEC v. Bivona*,
  2016 WL 5899288, at *3 (N.D. Cal. Oct 11, 2016) .........................................14

*SEC v. Elfindepan, S.A.*,
  169 F. Supp. 2d 420 (M.D.N.C. 2001) ............................................................15

*SEC v. Hardy*,
  803 F.2d 1034 (9th Cir. 1986) .........................................................................16

*Terry v. June*,
  No. Civ.A. 303CV00052, 2003 WL 22125300, at *5 (W.D. Va. Sept. 12,
  2003) .................................................................................................................17

*Winkler v. McCloskey*,
  No. 22-55856, 2023 WL 6301667, at *6 (9th Cir. Sept. 28, 2023)..............4, 18

*Wuliger v. Manufacturers Life Ins. Co.*,
  567 F.3d 787 (6th Cir. 2009) ...........................................................................16

**Statutes**

11 U.S.C. § 101(5) ..............................................................................................11

28 U.S.C. § 1692................................................................................................5

28 U.S.C. § 754..................................................................................................4

Fed. R. Civ. P. 72(a) .........................................................................................1

CASE NO. 2:21-CV-02927-CAS-PD                    REPLY RE MOTION FOR REVIEW OF ORDER

Michele Vives, the receiver ("Receiver") for 1inMM Capital, LLC and its subsidiaries and affiliates, and over assets that are attributable to funds derived from investors or clients of Zachary J. Horwitz and 1inMM Capital, LLC, hereby files her Reply to the Opposition ("CNB Opposition") filed by City National Bank ("CNB") to the Receiver's Motion for Review ("Motion" or "Objections") of Magistrate Judge Patricia Donahue's Discovery Order [Dkt. 250] ("Discovery Order") pursuant to Fed. R. Civ. P. 72(a) and Local Rule 72-2.1.

## I.    **<u>INTRODUCTION</u>**

The Receiver requests de novo review of the Discovery Order.[1]

The following errors in the Discovery Order mandate reversal:

1.    **No Conclusions as to What Contract Applies.** The Discovery Order failed to identify what contract applies to the Receiver. CNB properly acknowledges this error in the Discovery Order: "[T]he Magistrate Judge never decided which Account Agreement applied." CNB Opposition at 13. Identifying the specific agreement that applies, if any, is plainly necessary to then consider whether any alternative dispute resolution ("ADR") provision in that applicable agreement actually mandates ADR in this case.

2.    **The 2020 Amendment is the Only Agreement that Applies.** The Magistrate Judge made the clearly erroneous error in not concluding that the 2020 Amendment[2] is the *only* agreement that might apply here. It was the last account

---

[1] "A judge of the court *shall* make a de novo determination of those portions of the report or specified proposed findings or recommendations *to which objection is made*." 28 U.S.C. § 636(b)(1)(C) (emphasis added). The Receiver's filing of the Objections triggered de novo review of the Magistrate Judge's findings. *See also U.S. v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). The Receiver requests de novo review of the findings of in the Discovery Order.

[2] All defined terms used in this Reply have the same meaning as set forth in the Motion.

agreement in effect prior to the Receiver's service of the Subpoena.[3]

3. **Three Conditions to Trigger ADR Were Not Met**. The Magistrate Judge also erred in concluding that the three conditions ((1) a dispute, (2) regarding a claim, and (3) involving $250,000) for ADR in the 2020 Amendment were met, and only in fact addressed one of those conditions. The 2020 Amendment required a judicial reference process only in these circumstances:

> If your account is maintained at a branch in California and *a **dispute** that involves the combined **claims** of all parties totaling **$250,000** or more arises between us with respect to the deposit account or safe deposit box, this Agreement, its enforcement or our deposit account services,* either of us may require that it be resolved by judicial reference in accordance with California Code of Civil Procedure, Sections 638, *et seq.*

Based solely on CNB's fear of a *future* claim, the Magistrate Judge found that these conditions were met, but in fact, at the present time, the Receiver makes no claims of any kind or in any amount against CNB. Rather, the Receiver is responsibly seeking to investigate *potential* claims before determining their merit and whether to pursue them.

4. **Receiver Not Bound by Horwitz and MJLZ Contracts.** The Discovery Order is also erroneously overbroad in quashing the subpoena as to the large number of documents that relate to the accounts of two account holders who are not receivership entities — Horwitz and the MJLZ Trust. Specifically, the Discovery Order erroneously concludes that the Receiver is bound by the

---

[3] The 2023 Amendment (which CNB no longer appears to be advocating applies), clearly does not bind the Receiver as it was prepared after the Subpoena was served, it was never served on the Receiver, and it inserted an arbitration provision for California account holders of which the Receiver had no notice. The Magistrate Judge made the clearly erroneous factual finding that all of "these arbitration agreements, . . . were in place *prior to the Receiver's appointment*, even though the Receiver did not sign them or manifest assent." Discovery Order at 7 (emphasis added).

ADR provisions in the account agreements between them and CNB, even though the Receiver does not stand in their shoes. There is no basis for this ruling, whether contractual or otherwise.

5.     **Receiver is Authorized to Serve Subpoenas.** The Discovery Order erroneously held that the Receiver may only serve subpoenas to the same extent that the receivership entities can. Such a holding, if allowed to stand, would effectively prohibit receivers from issuing subpoenas to investigate the estates' assets and claims. But this Court has fully authorized the Receiver to conduct such an investigation as part of her duties. To do the job that this Court appointed her to do, therefore, the Receiver has the right and the need to subpoena third party information, documents, and records.[4]

Those errors each mandate the reversal of the Discovery Order and denial of CNB's Motion to Quash. Additionally, the Receiver identifies these other erroneous conclusions in the Discovery Order that mandate reversal and denial of the Motion.

6.     **District Court Has Exclusive Control Over Property of Receivership Entities**. The Discovery Order has the impact of depriving this Court of its exclusive authority to remedy the receivership entities' fraud for the benefit of their victims, and, in that process, to resolve CNB's objections to the Receiver's subpoena. The Discovery Order profoundly conflicts with this Court's exclusive jurisdiction and control over the proceedings before it in this case, over the conduct of the Receiver that it appointed, over the enforcement of the

---

[4] Receivers may, and commonly do, serve subpoenas to obtain third party records as part of their authority and duties to investigate the assets and claims of the receivership estate. In this case, the Receiver has served at least nine other subpoenas on third parties, and all nine responded by producing the documents requested. The CNB Opposition commends itself for voluntarily producing bank records to the Receiver, but CNB's commentary on its voluntary production of account documents is entirely irrelevant to the issues before the Court.

Subpoena issued to CNB in its name, and over the assets and claims of the receivership estate.

7.` **Ninth Circuit Recently Found Exception for Receivers, Including for Arbitration Provisions.** Very recently, the Ninth Circuit reaffirmed this equitable principle applicable in SEC enforcement proceedings: "Our conclusion that the Receiver is acting on behalf of the receivership entities does *not* establish that the Receiver is bound by the arbitration agreements . . . [T]he general rule "'[a] receiver occupies no better position than that which was occupied by the person or party for whom he acts . . . and any defense good against the original party is good against the receiver[]'" is "subject to exceptions; defenses based on a party's unclean hands or inequitable conduct do not generally apply against that party's receiver." *Winkler v. McCloskey*, No. 22-55856, 2023 WL 6301667, at *6 (9th Cir. Sept. 28, 2023) (emphasis added, quotation marks and citations omitted). The "general rule" clearly does not apply here. The unclean hands and inequitable conduct of the Receivership Entities in entering into these account agreements as part of the fraudulent scheme is the very reason why, under *Winkler*, the ADR provisions in the Account Agreements do not bind the Receiver.[5]

## II. ARGUMENT

### A. <u>The ADR Provision in the 2020 Amendment Does Not Require ADR Here</u>

As a premise to the ultimate ruling, the Discovery Order summarily states

---

[5] Relatedly, the Discovery Order erred in failing to address the Receiver's meritorious argument that she can and has lawfully rejected these account agreements and is, as a matter of equity, not bound by the ADR provisions in them. The Receiver requests that this Court find that in the best interests of the estate and its creditors, these account agreements, which were entered into in furtherance of fraud, are of no value to the estate and are properly abandoned and rejected, just as the Receiver would reject and abandon other worthless estate property.

3207947.2

**4**

that "[i]n 2016, 2019, 2020, and 2023 the Account Agreements and TMSDAs were updated; each of them requires ADR." Discovery Order at 4. Discovery Order did not, however, determine either which of those agreements is applicable to the Receiver or whether the particular ADR provision in the applicable agreement requires ADR for the Receivership Entities. That was clearly erroneous, because the result of that analysis is that the particular applicable agreement does not require ADR here.

The 2020 Agreement is the applicable agreement for all of the Receivership Entities and under that agreement: (1) no arbitration provision exists for California account holders; and (2) judicial reference only applies when "a dispute that involves the combined claims of all parties totaling $250,000 or more arises between us with respect to the deposit account or safe deposit box, this Agreement, its enforcement or our deposit account services[.]" Dkt. 195-22, p. 19. Here there is no "dispute" that "involves" a "claim" "totaling $250,000 or more." In serving a subpoena for records, the Receiver makes no "claim" of any kind or in any amount against CNB.

## 1. No Factual Finding Was Made as to Which Account Agreement Applies

CNB has agreed and acknowledged that "the Magistrate Judge never decided which Account Agreement applied." Opposition at 13. This failure alone is clearly erroneous and requires reversal. No legal conclusion can be made as to whether a motion to quash is appropriate if there is no factual determination made as to which contractual provisions apply and whether they require ADR.

## 2. The Significance of the 2020 Agreement

The failure to determine which contract applies led to a clearly erroneous conclusion that some form of ADR necessarily applies. The account agreement in place prior to service of the Subpoena — the 2020 Amendment — expressly excluded arbitration for California account holders. It also contained provisions

with a defined monetary amounts for disputes on claims — $250,000 or more.

The post-Subpoena 2023 Amendment added arbitration and completely changed the rules and definitions. The Receiver expressly asked the Magistrate Judge to find that the 2023 Amendment did not apply,[6] as this distinction is critical to a determination as to which contractual provisions apply.

But it is clear that the 2023 Amendment does not apply, because at the time of the Subpoena, there was no notice of it or assent to it. Therefore, the next earlier agreement — the 2020 Amendment — applies. That amendment expressly excludes arbitration for California account holders and only requires judicial reference for disputes involving claims in excess of $250,000.

The importance of the distinction between the 2020 and 2023 versions of the Account Agreement is significant, and lumping together the several versions of the agreements in the Discovery Order with a broad conclusion that some form of ADR applies was clearly erroneous.

CNB argues that a determination of "which specific version of the ADR provisions is operative" is a "sideshow." CNB Opposition at 13. It is not a sideshow. It is the main event, highlighted by CNB's attempt to change its ADR rules *after the Receiver served her Subpoena*. The terms of the applicable provision matter here. CNB's attempt to impose arbitration, with its restrictive discovery rules, on the Receiver after the fact should not be permitted or condoned.

### B.    There Is No Dispute That Involves a Monetary "Claim" Here

The Receiver and CNB plainly "dispute" CNB's obligation to comply with the Subpoena. But the 2020 Agreement does not require ADR for all disputes, only for disputes involving "claims" over $250,000. The Discovery Order erroneously focused exclusively on the word "dispute," erroneously concluded

---

[6] *See* Dkt. 271-1, Hamilton Decl., Ex. 1 at 22:19-21.

that *all* disputes require ADR, and erroneously ignored the express language that restricts ADR to disputes that involve "claims" of $250,000 or more.

In its conclusion that a "dispute" arose from the service of the investigatory Subpoena on CNB, the Discovery Order accomplished its erroneous result that all disputes are subject to ADR by invoking the following definition of "dispute" in the various account agreements:

> "any disagreement," "any claim or controversy of any kind" including "statutory, common law and equitable claims," and are not limited to lawsuits.

Discovery Order at 12.

That definition of "dispute" is fine as far as it goes, but under the 2020 Amendment, it is not the end of the analysis. That agreement requires further analyses of (1) whether the "dispute" involves a "claim" and then (2) whether the "claim" is for $250,000 or more.[7]

The 2020 Amendment does not define the term "claim." Where the drafter of a form contract has prepared an arbitration provision whose application to a particular dispute is uncertain, ordinary contract principles require that the provision be construed against the drafter's interpretation and in favor of the nondrafter's interpretation. *Sandquist v. Lebo Auto, Inc.,* 1 Cal. 5th 233, 248 (2016) (citation omitted).  Accordingly, the word "claim" should be given its ordinary meaning. Cal. Civ. Code § 1644. One recognized definition is in Section 101(5) of the Bankruptcy Code (11 U.S.C. § 101(5)):

(5) The term "claim" means—

---

[7] "Claim" is not defined in the 2020 Amendment but is repeatedly used in the context of a monetary right to payment. *See, e.g.*, Dkt 195-22 at p. 7 (claim to funds in account); p. 8 (claim for a credit or refund); (claims for unauthorized demand draft and unauthorized items cashed or deposited); p. 10 (refund claim); p.16 (claim to recover funds from inactive account); p. 17 (CNN limitation of liability to value of transaction); p. 19 (claims for substitute check and refund).

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Here, the parties' dispute over compliance with the Subpoena is not a dispute on a "claim" at all. The Receiver asserts here neither a "right to payment" nor "right to an equitable remedy for breach of performance [that] gives rise to a right to payment." And Receiver certainly does not assert a "claim" of any particular monetary amount, let alone "$250,000 or more." It was error for the Magistrate Judge to fail to address these issues and fail to make the conclusions that the explicit language of the 2020 Amendment requires for ADR.

### 1. CNB's Fear That the Receiver May Someday Make a Monetary Claim Against It Does Not Make This Subpoena Dispute a "Dispute" Involving a "Claim"

Because the Receiver asserts no right to payment from CNB, the parties' present dispute is not a dispute involving a claim. In an ultimately unsuccessful effort to elevate the parties' dispute over the Subpoena to a dispute involving a "claim," the CNB Opposition repeatedly lists the same few nonmonetary issues. *See, e.g.*, Opposition at 16. Not once does either CNB's pleadings or the Discovery Order identify either any "claim" — i.e., and right to payment — or any monetary amount or any claim.

Rather, CNB argues that unrelated, and irrelevant, settlement agreements in the receivership case suggest that if the Receiver were to sue CNB at some undetermined point *in the future*, the amount in controversy would likely be more than $250,000. But that is the epitome of speculation, and it has no place in

evaluating whether the present dispute over the Subpoena constitutes a dispute involving a "claim." As a basis to impose ADR on the Receiver, CNB's speculation should be firmly rejected.

The Magistrate Judge erroneously concluded that the matters identified below suggest a "dispute" that triggers ADR. But these matters, whether considered separately or taken together, do not suggest that the present dispute over the Subpoena is a dispute on claim And they certainly do not suggest a dispute on a claim involving any sum of money.

### a.   Retention of Conflicts Counsel

When general counsel has a conflict, the retention of conflicts counsel to investigate claims of the receivership estate is not only prudent, but mandatory under the rules of professional conduct.  When the Receiver was preparing to issue a subpoena to CNB as part of her investigation, her general counsel advised her that CNB was a client of that firm, and it was agreed to conflicts counsel should be retained to handle that aspect of the Receiver's investigation.

The Receiver's engagement of independent counsel to investigate potential claims of the estate due to her general counsel's conflict does not in any way create or even suggest a dispute on a claim, and certainly not one over $250,000.

### b.   Tolling Agreement

A request for a tolling agreement to allow time for the investigation of claims is also a prudent course of action for a Receiver to take while investigating claims. Throughout a receivership case, Receivers are presented with massive volumes of information and documentation, and commonly request individuals and entities to enter into tolling agreements so that the Receiver can conduct a thorough investigation without worry that some statute of limitations may run. The Receiver did so here, as a matter of precaution and protection for the estate. Such a request does not create a dispute on a claim, and certainly not one to which any dollar value can be attributed.

### c.    Preservation Notice

A document preservation notice to preserve all documents while an investigation is pending is also a prudent course of action. CNB served a 266-page objection to the Receiver's Subpoena and has been challenging the document request ever since. Unfortunately, financial institutions are notorious for extensive delays and obstruction in document production and, again as a matter of prudence, the Receiver, through her counsel, cautioned CNB to preserve all documents while the Receiver's investigation ensued. This notice created no dispute on a claim.

### d.    The Receiver Has Been Transparent About Her Investigation

The Subpoena does indeed seek documents necessary to evaluate a *potential* claim, and the Receiver has not hidden that fact. The Receiver has been forthcoming that she is investigating what CNB knew and when it knew it. If CNB has done nothing wrong, then the requested documents will not support a claim, and there will be no dispute. CNB is clearly worried about a future claim, but the Receiver's investigation has yet elevated into a claim against CNB.

### 2.    CNB Has the Burden to Show $250,000 Monetary Dispute

Recognizing its inability to demonstrate a dispute involving a claim of over $250,000, CNB desperately resorts to shifting the burden on this issue to the Receiver. CNB states: "While the Receiver attempts to invoke a $250,000 threshold for judicial reference in California contained in the 2020 Amendment, she failed to present any evidence (or even represent to this Court) that she would seek less than $250,000 in any potential claim against CNB, and she clearly could not do so in good faith." CNB Opposition at 18.

But CNB bears the burden of establishing that it is entitled to ADR. *See, e.g., Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015) (a party seeking to compel arbitration has the burden to show that the agreement

to arbitrate encompasses the dispute at issue).[8] And it cannot meet that burden. CNB has asserted that a dispute involving a exists, yet it has failed to identify even $1 that is the subject of a dispute on a claim. Instead, CNB *speculates* that the Receiver might later initiate a dispute. In hypothetically imagining so, CNB goes on to guess that such a future dispute would likely be more than $250,000. Those speculations and imaginings do not meet its burden.

The Receiver has repeatedly stated that she is merely investigating a potential claim and has not yet asserted one – in any amount. She cannot prove something that does not yet even exist. CNB may have its own sense of its exposure if the Receiver ultimately does bring a claim, but the Receiver is still in the investigatory phase of this matter and no dispute has yet arisen.

## C.   The Receiver is Not Bound by Non-Receivership Entity Contracts

The Discovery Order summarily states that all 1inMM Related Clients are bound by unspecified versions of the Account Agreement and Services Agreement. Discover Order at 3-4.

CNB drops a footnote in its Opposition in which it does not "concede" that any particular 1inMM Related Client is actually a Receivership Entity.  CNB Opposition at 1 n.1.

The juxtaposition of the Discovery Order's overly broad statement and CNB's distancing itself from such a broad statement highlights the following errors in the Discovery Order:

### 1.   Not All 1inMM Related Clients Are Receivership Entities

The CNB Opposition concedes that not all of the 1inMM Related Clients are actually Receivership Entities in whose shoes the Receiver may stand. Yet

---

[8] While CNB's Motion to Quash on its face was designed to thwart the Receiver's efforts at obtaining discovery, it is essentially a motion to compel arbitration/judicial reference and should be treated as such.

CNB argues that the Receiver is somehow bound by all of the 1inMM Related Clients' contracts. Because Horwitz and the MJLZ Trust are not Receivership Entities, the Receiver is not bound by their contracts with CNB.

### 2.    The Rules Are Different for Receivership Entities and Non-Receivership Entities

The Discovery Order appears to conflate the concepts of (1) the Receiver, standing in the shoes of the Receivership Entities and seeking information as an account holder; and (2) the Receiver seeking third party records as part of her duties to investigate pursuant to the order appointing her as Receiver. Discovery Order at 9. The Discovery Order reasoning reflects this error: "Horowitz or MJLZ Trust, for which she also requested documents, does not change that result because they both executed binding ADR agreements." *Id.* The Discovery Order addressed the fact that the Receiver is not a party to those ADR agreements yet reached this clearly erroneous result. Further discussion regarding the Receiver's authority to obtain discovery from third parties is set forth in Section D below.

### 3.    Only Two Receivership Entities Had Services Agreements

The Discovery Order summarily concludes that "[t]he 1inMM Related Clients also agreed to be bound by CNB's Treasury Management Services Disclosure and Agreement ('TMSDA') with regard to any of CNB's Treasury Management Services they used." *Id.* at 1 (citing Dkts. 195-16, 195-17). The Discovery Order did correctly cite to the only two applicable agreements, which applied to only two of the entities. *Id.* at 3.

The Discovery Order did not, however, engage in analysis of what ADR provisions are applicable pursuant to those two Services Agreements as to those two entities. The applicable agreement is the 2022 Services Amendment which included a provision for "Disputes" that stated "if you and we are not able to resolve differences informally, you agree that . . . any and all disputes between

1    you and us, regardless of when they arose, will be resolved using the 'Dispute
2    Resolution' provisions of the Account Agreement." Dkt. 195-26 at 350.

3        That applicable Account Agreement was the 2020 Amendment that
4    excluded arbitration for California account holders and limits the applicability of
5    judicial reference. For all of the reasons set forth herein, the ADR provisions in
6    the 2020 Amendment simply do not apply to the Receiver so the Discovery Order
7    is clearly erroneous as to the two Service Agreements.

8        **4.**    **The General and Overbroad Conclusion that an ADR**
9            **Provision Applies to All 1inMM Related Clients Is Clearly**
10           **Erroneous**

11       The Discovery Order summarily states that "While CNB occasionally
12   updated the ADR provisions in the Account Agreements and TMSDAs, each of
13   them requires ADR." Discovery Order at 13. On that basis, the Court granted
14   CNB's Motion to Quash. The Discovery Order did not finish the analysis,
15   however. The agreements only require ADR *in certain circumstances*. And those
16   circumstances do not apply here.

17       CNB summarizes the Magistrate Judge's factual findings as four points,
18   which when added up do not mandate the conclusion that any ADR provision
19   applies here:

| 1 | The 1inMM Related Clients entered into Account Agreements | True |
|---|---|---|
| 2 | The services CNB rendered are governed by the Account Agreements | True |
| 3 | The Account Agreements require parties to resolve disputes for through ADR | Only Partially True (pursuant to the 2020 Amendment, for California account holders only, only a dispute involving claims totaling over $250,000 trigger judicial reference) |

| 4 | A dispute involving claims totaling over $250,000 exists between CNB and the 1inMM Related Clients | **Not True** |
|---|---|---|

The errors in the Discovery Order are evident in the CNB Opposition's sweeping yet incomplete conclusion about what ADR provisions apply:

a. CNB states that the Account Agreements "have always required that disputes with CNB be resolved exclusively through ADR." CNB Opposition at 12. That is simply untrue. This sweeping generalization ignores the very large and significant exceptions that CNB drafted in its own agreements.

b. "None of them ever has allowed discovery in federal court." *Id.* This is also not true. Disputes on claims involving less than $250,000 can be brought in federal court if jurisdiction is otherwise appropriate.

**D.    A Receiver May Serve Subpoenas for Third Party Discovery**

The Magistrate Judge erroneously held: "[T]he Receiver here does not have discovery powers or rights greater than those of any 1inMM Related Client on whose behalf she purports to act." Discovery Order, p. 10. With that over broad conclusion, the Magistrate Judge's holding bars the Receiver from all pre-suit discovery.

The Magistrate Judge's holding is erroneous because that outcome directly conflicts with the provisions of this Court's order appointing the Receiver. That order explicitly authorized and mandated the receiver to investigate the receivership estates' assets and claims. Dkt. 70 at Sec. II(1). The Discovery Order cannot be reconciled with this Court's order appointing the Receiver.

The Receiver's ability to compel third parties to produce records is an essential discovery tool to accomplish the asset collection and investigation obligations imposed on her under the Order appointing her as Receiver. *Id*. It is

a customary tool granted to and used by receivers in these circumstances and is inherent in the Receiver's performance of her powers and duties. The right to investigate includes the right to issue subpoenas.

District courts commonly grant receivers explicit authority to conduct third party discovery in aid of their administration of the estate. *See e.g., SEC v. Bivona*, No. 3:16-cv-01386, 2016 WL 5899288, at *3 (N.D. Cal. Oct 11, 2016) ("The Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure."); *see also SEC v. Elfindepan, S.A.*, 169 F. Supp. 2d 420, 427 (M.D.N.C. 2001) (granting a receiver's motion to compel production of documents pursuant to a third party subpoena issued by the receiver, and concluding that the subpoena was a reasonable method of fulfilling her specified duties as receiver); *SEC v. Abdallah*, No. 1:14-cv-1155, 2014 WL 12597834 at *2 (N.D. Ohio Dec. 3, 2014) (finding that the receiver "is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure").

In this case, the Receiver's ability to issue subpoenas for depositions and records is essential to her investigation into the estates claims and assets. The Receiver needs to be able to issue subpoenas to compel the production of records from third parties to obtain documents not in the possession, custody, or control of one of the Receivership Entities. Third party custodians of records relevant to the Receiver's investigation may include financial institutions, brokerages, title companies, other corporate entities, and individuals who may have dealt with the Receivership Entity and its principal, Zachary Horwitz, and may hold relevant records. Third parties may have relevant communications, documents, or agreements that are not records owned or belonging to the Receivership Entities but that may nevertheless contain information relevant to transactions involving potential receivership assets not held in the name of a named Receivership Entity. The Receiver's other subpoenas in this case have yielded a volume of valuable

documentation in aid of the Receiver's investigation and administration in this case.

Here, however, CNB refuses to produce documents, arguing, "What matters is who is seeking the discovery, not to whom the discovery relates." Opposition at 4. But the Opposition offers no legal basis for this statement. Fed. R. Civ. P. 45 governs the issuance of subpoenas and does not include any limitation based on who the requesting party is.  Additionally, the Federal Rules do not require the requesting party to be bound by a contract to which it is not a party, as CNB seems to assert. Nor do the Rules provide an exception to production or basis for a motion to quash based upon the third party's unrelated contracts.

Simply put, this Court has the authority to grant to the Receiver the power to issue subpoenas pursuant to the Federal Rules of Civil Procedure and that authority is inherent in the authority granted to the Receiver to conduct her investigation into the assets of the Receivership Entities. Dkt. 70 at Sec. II(I). That authority does not limit her to request only documents held by or on behalf of the Receivership Entities but extends to any request of a custodian of records relevant to the Receiver's investigation. The Receiver is not bound by what custodian's third-party agreement might be with their own account holders. Receivers would never be able to obtain records if banks, brokers, title companies, or other record holders simply cried "dispute" and pointed to a contractual provision, to which the Receiver is not bound, to seek to avoid or delay production of documents. Such an argument defeats the entire purpose and intent of the Federal Rules of Civil Procedure, which expressly grant parties — including the Receiver — permission to issue subpoenas.

### E. District Courts Are Charged with the Orderly Administration of Estate Assets and Use Receivers to Exercise Complete Jurisdiction and Control Over Estate Assets

The power that Congress conferred on district courts to appoint a federal equity receiver is critical because "the purpose of a receiver [is] to marshal the receivership entities' assets, to which several parties assert conflicting claims, so that the assets may be distributed to the injured parties in a manner the court deems equitable." *Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 795 (6th Cir. 2009). The Ninth Circuit adds, "[A] primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986) (collecting cases).

A federal district court, through a receiver, can "in any civil proceeding involving property . . . situated in different districts," assert "complete jurisdiction and control of all such property with the right to take possession thereof." 28 U.S.C. § 754; *see also* 28 U.S.C. § 1692 (collectively, the "Receivership Statutes"). The Receivership Statutes "facilitate[s] judicial efficiency" by managing claims regarding receivership property in one forum *Quilling v. Grand Street Trust*, No. 3:04 CV 251, 2005 WL 1983879, at *2 (W.D.N.C. Aug. 12, 2005); *Terry v. June*, No. Civ.A. 303CV00052, 2003 WL 22125300, at *5 (W.D. Va. Sept. 12, 2003) ("[S]ubstantial weight must be given to the congressional policy behind the authorization of nationwide service of process," which promotes judicial efficiency by consolidating claims over receivership property "in a single forum.").

Arbitration and judicial reference divest the district courts of those critical powers, conflict with the underlying purposes of the Receivership Statutes, and undermine the goals of a receivership case. They expand the losses suffered by victims of fraudulent investment schemes by raising the cost of a receivership,

by creating barriers to the discovery of necessary information, by creating delay, and by introducing a likelihood of inconsistent decisions on common questions of fact and law.

Denying CNB's Motion to Quash is critical to the Receiver's ability to effectively and efficiently administer the estate in this case, as both this Court and Congress intended. Imposition of ADR provisions on the Receiver will divest this Court of its "complete jurisdiction and control over receivership property."

### F.    The Ninth Circuit Recognizes Exceptions to a Receiver "Standing in the Shoes" Argument

In a very recent opinion, the Ninth Circuit affirmatively acknowledged that there are exceptions to the general rule that a receiver "occupies no better position than that which was occupied by the person or party for whom he acts . . ." *Winkler v. McCloskey*, No. 22-55856, 2023 WL 6301667, at *6 (9th Cir. Sept. 28, 2023).[9] The Ninth Circuit noted that the general rule that "[a] receiver occupies no better position than that which was occupied by the person or party for whom he acts . . . and any defense good against the original party is good against the receiver" is "subject to exceptions." *Id*. (quoting *FDIC v. O'Melveny & Myers*, 61 F.3d 17, 19 (9th Cir. 1995) (per curiam) ("defenses based on a party's unclean hands or inequitable conduct do not generally apply against that party's receiver")).

Those exceptions precisely apply here. The Receiver has stepped into the shoes of the Receivership Entities who were indisputably running a massive fraudulent scheme. As the Ninth Circuit noted, "[T]here is little reason to impose the same punishment on a trustee, receiver or similar innocent entity that steps

___

[9] The Receiver notes that this case relates to the applicability of arbitration provisions to a federal equity receiver but recognizes some potentially distinguishable facts from the facts of this case regarding the nature of the contracts involved. The case is cited herein for the proposition that a receiver may be excepted from certain obligations and defenses on policy grounds.

1  into the party's shoes pursuant to court order or operation of law." *Winkler* at *6
2  (citations omitted).

3       The Magistrate Judge erroneously dismissed this issue with the irrelevant
4  statement that "Absent defenses including *in pari delicto*, which the Receiver
5  does not allege, a receiver is subject to the terms the receivership entity
6  contracted. (sic)" Discovery Order at 7. But a receiver would never assert an *in
7  pari delicto* defense. Rather, a defendant might assert the defense when sued by
8  a receiver on a tort claim.

9       *Winkler v. McCloskey* mandates the correction of this error and the reversal
10  of the Discovery Order.

11  **III.    CONCLUSION**

12       **WHEREFORE**, the Receiver respectfully requests that the Court grant
13  her motion and deny CNB's Motion to Quash. The Receiver requests all other
14  appropriate relief.

15
16  DATED: October 2, 2023          RAINES FELDMAN LITTRELL LLP

17                                  By:  /s/ *Kathy Bazoian Phelps*
18                                       Kathy Bazoian Phelps

19                                       *Counsel for Michele Vives,*
20                                       *Permanent Receiver*

21
22
23
24
25
26
27
28

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Michele Vives, Permanent Receiver, certifies that the Motion and this Reply brief each contain less than 7,000 words and comply with the word limit of L.R. 11-6.1.

DATED: October 2, 2023

_/s/ Kathy Bazoian Phelps_
Kathy Bazoian Phelps