Terence G. Banich (SBN 212173)
terence.banich@katten.com
Allison E. Yager (*pro hac vice*)
allison.yager@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661
Telephone:   (312) 902-5200
Facsimile:   (312) 902-1061

*Attorneys for the Receiver*
Michele Vives

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff,<br><br>     v.<br><br>ZACHARY J. HORWITZ; and 1inMM CAPITAL, LLC,<br><br>          Defendants. | Case No. 2:21-cv-02927-CAS-PD<br><br>**QUARTERLY REPORT OF RECEIVER MICHELE VIVES (THIRD QUARTER 2023)**<br><br>Judge:      Hon. Christina A. Snyder<br>Courtroom:  8D |

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

### **TABLE OF CONTENTS**

I.    GENERAL RECEIVERSHIP UPDATE ........................................................2

    A.    Settlement Activity During the Third Quarter 2023 ...........................2

        1.    Settlement of JJMT-Related Claims.......................................3

        2.    Settlement with the Law Firm ................................................7

        3.    Settlement with the Professional Services Firm......................9

        4.    Settlement with Breakout SPE LLC........................................9

    B.    Avoidance and Recovery of Transfers to Net Winners ....................11

    C.    Forensic Accounting Background and Update ..................................12

    D.    Asset Updates....................................................................................13

        1.    Rogue Black.........................................................................14

        2.    LayJax .................................................................................15

        3.    The Additional Investments...................................................16

        4.    Additional Film Investments .................................................16

    E.    Potential Litigation and Engagement of Conflicts Counsel .............17

II.    ACCOUNTING OF RECEIPTS AND DISBURSEMENTS ......................17

    A.    Cash Receipts....................................................................................17

    B.    Cash Disbursements..........................................................................17

    C.    Cash on Hand ....................................................................................18

III.    CONCLUSION ........................................................................................18

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Michele Vives, the duly appointed permanent receiver (the "Receiver") of 1inMM Capital, LLC and its subsidiaries and affiliates ("1inMM"), and over assets that are attributable to funds derived from investors or clients of the above-captioned defendants ("Defendants") or were fraudulently transferred by the Defendants (collectively, the "Estate"), pursuant to Local Rule 66-6 and the *Order on Appointment of a Permanent Receiver* ("Order of Appointment") entered on January 14, 2022, hereby submits this quarterly report (the "Report") for the period July 1, 2023 through September 30, 2023 (the "Third Quarter 2023"). This Report details the Receiver's principal activities during the Third Quarter 2023 to protect and administer the Estate and to identify new assets, and lays out the Receiver's general strategy to maximize the recovery for the benefit of investors harmed by the Ponzi scheme perpetrated by Defendants (the "1inMM Ponzi Scheme").

## I.   GENERAL RECEIVERSHIP UPDATE

### A.   Settlement Activity During the Third Quarter 2023

The Receiver previously reported that, during the First and Second Quarters 2023, she reached three major settlements that, if approved by the Court, would yield a total of $14.35 million in settlement value for the Estate, before payment of certain administrative claims. These settlements are with the former principals of JJMT Capital, LLC ("JJMT") (which consist of two separate settlement agreements), and a law firm that represented 1inMM, the name of which the Receiver agreed to keep confidential (the "Law Firm"). As discussed below, the Court has since approved all three of those settlements, and two new settlements are in advanced states of documentation.

All five of these settlements are significant because they simultaneously resolve pending or threatened litigation by groups of net losing investors in 1inMM. Although the Receiver has addressed the existing settlements in greater detail in the motions for their approval, the Receiver now explains how these hard-fought compromises came about, summarizes their basic terms and provides an update of

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

their status through the Third Quarter 2023. She also previews the terms of the two new settlements that came about during the Third Quarter 2023.

### 1.    Settlement of JJMT-Related Claims

#### a.    The Investor Claims and the Receiver Claims

As the Receiver discussed in each of her prior quarterly reports, several 1inMM investors commenced numerous lawsuits in courts across the country alleging claims associated with Defendants' fraudulent scheme (defined in the first quarter 2022 report as the "Investor Actions"). It quickly became apparent to the Receiver that the Investor Actions against JJMT and its organizers—all of which were pending in federal and state courts in Chicago—were the most numerous, complex and in need of immediate attention. The principals of JJMT are Joseph deAlteris ("deAlteris"), Jacob Wunderlin ("Wunderlin") and Matthew Schweinzger "Schweinzger," and collectively with deAlteris and Wunderlin, "JJ&M") and Tyler Crookston ("Crookston").[1]

The plaintiffs in the Investor Actions (collectively, the "Investor Plaintiffs") claimed tens of millions of dollars in damages on various legal theories generally asserting that JJ&M and Crookston are liable to them in connection with the 1inMM Ponzi Scheme (collectively, the "Investor Claims"). Crookston and JJ&M vigorously defended the Investor Actions, and asserted several defenses to the Investor Claims that, if sustained, may have resulted in the Investor Plaintiffs taking nothing. The Receiver, meanwhile, asserted that she may avoid and recover certain transfers of money from 1inMM to JJ&M and Crookston as fraudulent transfers under the California Uniform Voidable Transactions Act, Cal. Civ. Code § 3439 et seq. ("UVTA") (the "Receiver Claims").

---

[1] The Receiver addresses JJ&M and Crookston separately because they had separate counsel and their settlements are structured differently.

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Early on, counsel for the Investor Plaintiffs sought to work with the Receiver to the extent she had claims against the same defendants, and the Receiver entered into common interest agreements with them. At the same time, JJ&M and Crookston expressed interest in settling the Receiver's potential claims against them, but only so long as the Receiver could somehow concurrently resolve or eliminate the Investor Actions. The Receiver pursued a collaborative approach, spending several months working with the lawyers for all of those parties about ways she might help coordinate and resolve them.

### b.     The JJMT Mediation

Ultimately, the result was that the Receiver and those litigants agreed to participate in a formal mediation process with the goal of reaching a global settlement of all claims in the Investor Actions as well as any claims the Receiver may have against the same defendants (the "JJMT Mediation"). The parties selected the mediator to be Hon. Sidney I. Schenkier, United States Magistrate Judge for the Northern District of Illinois (retired), and now a neutral with JAMS. The JJMT Mediation occurred in Chicago on January 30-31, 2023, and was successful.

To prepare for the JJMT Mediation, the Receiver and her professional staff had to review and analyze tens of thousands of banking transactions and hundreds of financial records associated with 1inMM, JJMT, JJ&M, Crookston and Horwitz covering a several-year period, and then verify those transactions against the 1inMM financial transactions and banking records already in the Receiver's possession. The verification step ensured that the final net-profit liability numbers were the product of fully vetted records that reflected no material discrepancies. The Receiver's forensic accounting analysis also required a lot of back-and-forth with counsel for JJ&M and Crookston to request banking documents, wire detail and other information. Fortunately, JJ&M, Crookston and their respective counsel were cooperative and responsive throughout and provided the Receiver with the documents necessary for her to complete this analysis.

The Receiver submitted lengthy mediation statements to Judge Schenkier that included a detailed discussion of the applicable legal principles under UVTA and explained why, in the Receiver's view, JJ&M and Crookston had several million dollars of liability to the estate under UVTA.

c.     *Settlement with Tyler Crookston*

In the week preceding the JJMT Mediation, the Receiver and the Investor Plaintiffs opened negotiations with Crookston (through his counsel) in an attempt to reach a pre-mediation settlement. Those discussions—while hard-fought and sometimes tense—were ultimately successful.

As the Receiver described in her motion to approve the settlement with Crookston [ECF #218], Crookston agreed to pay the $3.85 million to the Estate to resolve the Investor Claims and the Receiver Claims, as well as all potential claims that could be filed against him arising out of or relating to the 1inMM Ponzi Scheme. Even though part of the settlement consideration is to settle the Investor Claims, the Investor Plaintiffs agreed that the entire settlement consideration should be paid into the Estate for the benefit of all creditors. A critical component of the settlement consideration is that the Court enters a "bar order" in Crookston's favor—essentially a permanent injunction barring any other person or entity from suing him on any claim pertaining to the 1inMM Ponzi Scheme, which is a common component of these sorts of settlements. Any such claim that an allegedly aggrieved 1inMM investor might have would be channeled to the claim process that the Receiver will in the future ask this Court to approve.

On May 26, 2023, the Receiver filed a motion to approve the settlement with Crookston. [ECF #218] The Securities & Exchange Commission ("SEC") filed a notice of non-opposition to the Crookston settlement motion [ECF #227], and on July 5, 2023, the Receiver filed a report that, following service of the Crookston settlement motion on the known creditors of the Estate, no creditor objected to the Crookston settlement [ECF #228]. On July 5, 2023, the Court entered an order

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

approving the settlement with Crookston. [ECF #230]. That order is now final and unappealable. Crookston has paid the entire settlement amount to the Estate.

### d.      Settlement with JJ&M

The Investor Plaintiffs, the Receiver and JJ&M mediated their respective claims with Judge Schenkier over two marathon in-person mediation sessions in Chicago on January 30 and 31, 2023. Due in no small part to Judge Schenkier's persistence and wisdom, as well as the parties' creativity and willingness to compromise, the JJMT Mediation was a success.

Again as a result of her team's searching and thorough forensic accounting analysis, the Receiver determined that JJ&M received net profits (including commissions) as a result of the 1inMM Ponzi Scheme, which are transfers from 1inMM subject to avoidance under UVTA, in the following approximate amounts: $6.63 million (Schweinzger); $8.30 million (deAlteris); and $9.35 million (Wunderlin), for a total of about $24 million. JJ&M vigorously challenged the Receiver Claims against them on multiple grounds, raising complex and serious issues principally about the Receiver's legal ability to recover the transfers from them on a "mere conduit" theory and the potential expiration of the applicable statute of limitations, among other defensive positions. JJ&M also sharply contested their liability to the Investor Plaintiffs for a multitude of reasons. The basic terms of the settlement with JJ&M follow.

As a result of the JJMT Mediation, JJ&M jointly agreed to pay the $9 million to the Estate to resolve the Investor Claims and the Receiver Claims, as well as all potential claims that could be filed against them arising out of or relating to the 1inMM Ponzi Scheme, which is more than JJ&M would have paid to resolve only the Receiver Claims. Consistent with the Crookston settlement, the Investor Plaintiffs again agreed that the entire $9 million of settlement consideration should be paid into the Estate for the benefit of all creditors. So the Receiver agreed to seek approval to pay certain negotiated amounts to counsel for the Investor Plaintiffs in

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

recognition of their assistance in creating a common fund in the Estate. In exchange, the parties will exchange mutual general releases, and the Receiver will ask this Court to enter a bar order enjoining any person or entity from commencing or continuing any claim against JJ&M arising out of or relating to the 1inMM Ponzi Scheme.

During the Second and Third Quarters 2023, counsel for the Receiver, the Investor Plaintiffs and JJ&M worked on drafting the settlement agreement and related documentation. On July 31, 2023, the Receiver filed a motion to approve the settlement with JJ&M. [ECF #235] The SEC filed a notice of non-opposition to the JJ&M settlement motion [ECF #236], and on September 6, 2023, the Receiver filed a report that, following service of the JJ&M settlement motion on the known creditors of the Estate, only one creditor objected to the JJ&M settlement [ECF #260]. That creditor filed an objection and a supplemental objection to the JJ&M settlement motion [ECF #260-1, #268], in response to which the Receiver filed replies [ECF #262, #269]. On September 27, 2023, the Court entered an order overruling the creditor's objections and approving the settlement with JJ&M. [ECF #273]. That order is now final and unappealable. JJ&M will make their first installment of settlement payment to the Estate during the fourth quarter 2023.

### 2. Settlement with the Law Firm

As the Receiver previously reported, during the First Quarter 2023, she and certain net losing investors in 1inMM (represented by Loftus & Eisenberg, Ltd. ("L&E"), of Chicago, Illinois, the same lawyers who also represented certain Investor Plaintiffs in the JJMT litigation discussed above) (the "Claimant Investors"), jointly reached a settlement with the Law Firm that will result in a payment of $1.5 million to the Estate. A critical component of this settlement is the Receiver's agreement to keep the identity of the Law Firm strictly confidential, so the Receiver must keep her public comments about this settlement general and brief.

The Law Firm represented 1inMM for approximately one year. The Claimant

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Investors asserted—in private correspondence with the Law Firm as well as its malpractice insurer—that the Law Firm is liable for their losses on theories of malpractice, negligence and aiding and abetting the 1inMM Ponzi Scheme. They threatened legal action against the Law Firm if the parties did not settle. Although the Receiver did not threaten to sue the Law Firm, the Law Firm opened negotiations with the Receiver about the Claimant Investors' potential litigation, as the Law Firm made clear that any settlement must include a bar order enjoining any similar actions against it. Discussions between the Law Firm, its insurer and the Claimant Investors continued for the better part of a year. The parties eventually agreed to mediate before Bruce Friedman, a JAMS neutral located in Los Angeles. The mediation with Mr. Friedman took place in Los Angeles on March 15, 2023, and was successful.

The essential terms of the settlement are that the Law Firm will pay $1.5 million to the Estate to settle both the Claimant Investors' asserted claims as well as any claims that the Estate may have against the Law Firm, in exchange for mutual general releases and a bar order. The bar order would enjoin any person or entity from commencing or continuing any claim against the Law Firm arising out of or relating to the 1inMM Ponzi Scheme. And, as with the JJMT-related settlements discussed above, because the Claimant Investors have agreed that the entire amount of the settlement consideration should be paid to the Estate for the benefit of all creditors, the Receiver agreed to seek approval to pay certain negotiated amounts to L&E, as counsel for the Claimant Investors, in recognition of their assistance in creating a common fund in the Estate.

During the Second Quarter 2023, counsel for the Receiver, the Claimant Investors and the Law Firm worked on drafting the settlement agreement and related documentation. On September 1, 2023, the Receiver filed an application for leave to file under seal the motion approving the settlement with the Law Firm. [ECF #255]. On September 22, 2023, the Court held a hearing on the application [ECF #272], and on September 27, 2023 entered an order granting it [ECF #274]. The following week

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

the Receiver filed the motion to approve the settlement, which was pending at the end of the Third Quarter 2023. The Receiver will address subsequent developments in her report covering the fourth quarter 2023.

### 3.      Settlement with the Professional Services Firm

During the Second Quarter 2023, the Receiver reached a settlement with a professional services firm that worked with 1inMM, the name of which the Receiver also agreed to keep confidential (the "Professional Services Firm"). The settlement with the Professional Services Firm, if approved, would yield additional cash for the Estate.

The Receiver, the Claimant Investors and the Professional Services Firm agreed to a mediation, which took place in Chicago on May 3, 2023 before Judge Schenkier of JAMS. This mediation was successful as well. As part of the settlement, it was critical to the Professional Services Firm that the Receiver keep its identity confidential, and that she agree not to disclose any of the settlement's specific financial terms in a quarterly report. Rather, the Receiver will disclose the details of this settlement in a motion for its approval. During the Second and Third Quarters 2023, counsel for the Professional Services Firm, the Receiver and the Claimant Investors worked on the basic settlement documentation. During the fourth quarter 2023, the Receiver expects to file an application for leave to file under seal the settlement motion with the Professional Services Firm.

### 4.      Settlement with Breakout SPE LLC

During the Third Quarter 2023, the Receiver also reached a settlement with a sub-aggregator of JJMT, Breakout SPE LLC, as well as its managing members, Duncan Davis and Brandon Labrum (collectively, "Breakout").

Settling with Breakout was particularly complicated and took much of 2023 for the Receiver to achieve. Breakout's principals were not only liable to the Estate for having received transfers from 1inMM that were subject to avoidance and recovery under UVTA as fraudulent transfers, but Breakout was also embroiled in

contentious litigation pending in Illinois state court with Nalpak I LP, Nalpak II LP, Nalpak Enterprises LLC and Peter Xilas (collectively, the "Nalpak Investors"), an investor group that had lost about $9 million in the 1inMM Ponzi Scheme. On top of all that, the Claimant Investors also threatened Breakout with contributing to their losses as part of the 1inMM Ponzi Scheme. So, Breakout presented yet another three-way dispute with which the Receiver had to contend.

The Nalpak Investors—the largest net losing creditors of the Estate—were intent on vindicating their rights against Breakout and thus were not all that inclined to compromise their claims as part of a larger settlement. Confident in their claims, the Nalpak Investors preferred to continue with their litigation against Breakout to judgment. At the same time, however, Breakout was unwilling to settle with the Receiver unless she either simultaneously brokered a settlement with the Nalpak Investors or agreed to ask the Court to enter a bar order that would terminate the Nalpak Investors' litigation *and* enjoin any litigation that the Claimant Investors might commence. Those seemingly diametrically opposed objectives and interests made a settlement elusive for most of 2023, despite two separate mediation sessions with Judge Schenkier.

Fortunately, and after several months of negotiations, the parties' creativity and persistence resulted in a settlement. Under the proposed settlement, Breakout will pay a total of $1,900,000 of cash consideration, with $1,060,000 to the Nalpak Investors and $840,000 to the Estate. The payment to the Estate represents about 67% of the total transfers that the Receiver could have sued to avoid and recover under UVTA and also resolves the Claimant Investors' claims. Breakout will make its payment to the Nalpak Investors directly (i.e., outside of the Estate), so that aspect of the settlement will not require this Court's approval.

Considering, however, that the Nalpak Investors will receive that $1,060,000 outside of the Estate on account of their 1inMM Ponzi Scheme losses, the Receiver made sure that the Nalpak Investors would not double recover in a receivership

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

1    claims process. The Receiver did that by requiring the Nalpak Investors to reduce
2    their claim against the Estate on a dollar-for-dollar basis. In other words, the face
3    amount of the unsecured claim that the Nalpak Investors will eventually file against
4    the Estate for its 1inMM Ponzi Scheme losses will be reduced by the same amount
5    they are receiving from Breakout—$1,060,000.

6    Finally, as with the settlements discussed above, because the Claimant
7    Investors have agreed that the entire amount of the settlement consideration should
8    be paid to the Estate for the benefit of all creditors, the Receiver agreed to seek
9    approval to pay certain negotiated amounts to L&E, as counsel for the Claimant
10   Investors, in recognition of their assistance in creating a common fund in the Estate.

11   During the Third Quarter 2023, the parties came to terms on the settlement
12   and worked on the basic documentation. The Receiver expects to file a motion to
13   approve the Breakout settlement during the fourth quarter 2023.

14   **B.    Avoidance and Recovery of Transfers to Net Winners**

15   *1.    Overview*

16   Through the Receiver's forensic accounting, the Receiver has identified
17   investors who were significant net winners (receiving payments far in excess of the
18   amounts they invested) as well as various persons and entities who were transferred
19   very large sums from 1inMM but do not appear to have been investors in the 1inMM
20   Ponzi Scheme. By identifying these recipients, the Receiver has been able to
21   determine potential fraudulent transfers to both investors and non-investors alike,
22   thereby increasing the pool of potential recovery to the Estate. Settlements that the
23   Receiver reaches with such transferees have been very significant estate assets. The
24   Receiver and her professional staff have, therefore, devoted considerable time and
25   attention to reviewing and analyzing tens of thousands of banking transactions and
26   associated records associated with 1inMM and Horwitz to identify those persons and
27   entities who may have received transfers that are subject to avoidance and recovery.
28   As of this Report, the Receiver and her team have identified approximately

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

100+ net winners from the 1inMM Ponzi Scheme. The Receiver has been reviewing the financial details of these identified net winners and anticipates initiating settlement conversations and sending settlement demand letters to most of them.

Exact details of the Receiver's negotiations with these net winning transferees obviously must remain confidential for the time being so as not to jeopardize these good-faith settlement discussions. However, once the Receiver reaches a proposed settlement, she will petition the Court to approve any agreement. Should the Receiver determine that a lawsuit is necessary to recoup fraudulent transfers, the Receiver will proceed appropriately.

### 2.    *Specific efforts*

During the Third Quarter 2023, the Receiver began preliminary settlement discussions with two aggregators of the 1inMM Ponzi Scheme. The Receiver's forensic accounting analysis indicates that the insiders of those aggregators are significant net winners, and thus liable to the Estate under UVTA for receiving fraudulent transfers.

One of those aggregators and its insiders have agreed to a mediation with the Receiver and the Claimant Investors before Judge Schenkier, which the Receiver expects to take place in the first quarter 2024. The Receiver is engaged in more informal settlement discussions with the other aggregator, which the Receiver expects will continue in the fourth quarter 2023 and the first quarter 2024.

### C.    <u>Forensic Accounting Background and Update</u>

Throughout the duration of the Ponzi scheme, 1inMM engaged in tens of thousands of transactions totaling over $1 billion (receipts and disbursements). As there were no accounting records, the Receiver has had to reconstruct 1inMM's transaction history from scratch. To do so has required a continuous forensic accounting analysis that has thus far involved the review of over 2,965 bank statements and encompassed over 24,800 transactions. These numbers are anticipated to increase as the Receiver collects new data. The Receiver and her team

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

1    continue to analyze additional records as she uncovers more detail behind the Ponzi

2    scheme and identifies other potential sources of recovery.

3         The forensic accounting analysis is a fundamental element of maximizing the

4    Estate's recovery, as it enables the Receiver to determine who may be liable to the

5    Estate for receiving fraudulent transfers, and to identify previously unknown assets

6    and obtaining information about 1inMM's investors.

7         During the Third Quarter 2023, the Receiver and her team continued to obtain

8    and analyze additional bank records from aggregators and sub-aggregators (i.e.,

9    investment feeder funds that invested into other aggregators) which provided further

10   data down to the individual investor level. The process continues to help identify

11   both net winners and net losers, and will thus potentially help with the recovery of

12   additional dollars and assist the Receiver's team for the claims process. To date, the

13   Receiver has identified a total of 586 investors. The Receiver and her team are

14   continuing to evaluate each of their net loss or net winning positions.

15        The forensic accounting project is in the final phase and is approximately 95%

16   complete. The Receiver and her staff believe that they have mapped nearly all

17   transactions of importance, and they have begun to reconcile and verify amounts

18   invested by certain investors. This will assist with the investor claims process that is

19   anticipated to take place later on in the receivership.[2]

20        **D.    Asset Updates**

21        In addition to the cash on hand detailed in Section II.C. (below), the

22   receivership assets, not including litigation claims, currently consist of: (1) Rogue

23   Black, LLC ("Rogue Black"), (2) LayJax Ventures, LLC ("LayJax"), (3)

24   investments made into sixteen entities of an investor ("Additional Investments") and

25

26

27   _____

28   [2] The Receiver will, at the appropriate time, propose a claims filing, reconciliation, allowance and payment process for the Court's consideration and approval.

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

(4) investments made in potentially eight additional films. The updated details to each of these is outlined below.

### 1.      Rogue Black

Rogue Black was a film finance and production company in which Horwitz owned a membership interest and invested using 1inMM funds. Ultimately, 1inMM invested approximately $20 million with Rogue Black, which went on to produce and complete a total of eight films (collectively, the "Produced Films"). The Receiver continues to collect monies owed to Rogue Black in relation to the Produced Films and pursue monies that are owed but have not yet been paid. As noted below, potential further recoveries may be obtained through an eventual sale of the film library.

#### a.      Payment Dispute and Demand for Arbitration

Through an investigation, the Receiver discovered that Rogue Black is owed a significant amount of money related to distribution rights on one of its films. The Receiver attempted to resolve the issue through discussions with the relevant parties which include Iervolino & Lady Bacardi Entertainment S.p.A. ("ILBE") and Orion Releasing LLC ("Orion"). However, when it became apparent those discussions were not progressing, the Receiver demanded arbitration pursuant to the applicable agreement between the relevant parties. The Receiver decided it was best to assign the legal work associated with this project to Katten Muchin Rosenman LLP lawyers resident in its Century City office who practice in the area of entertainment law.

The parties selected an arbitrator, and attended the first arbitration management conference with the arbitrator on July 17, 2023. Subsequently, the parties have exchanged documents they intend to rely on in connection with the forthcoming hearing. Orion served document requests on both the Receiver and ILBE, to which both parties have responded. The discovery deadline has been set for December 8, 2023, and the hearing is currently set for February 6, 2024.

//

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

### b. *Anticipated Future Sale of Rogue Black's Film Library*

To maximize the monetary recovery of the estate, the Receiver intends to eventually sell Rogue Black's film library. The Receiver is in the very preliminary stages of evaluating the best format to execute such a sale, and whether the library will fetch the highest price through selling the library piecemeal or as a bundle. As additional details are determined, the Receiver will provide updates in future quarterly reports.

### 2. *LayJax*

LayJax is an angel investment company which invested in early startup business ventures. Using 1inMM funds, Horwitz caused LayJax to invest $2.5 million with twelve separate startup business ventures that LayJax had sourced. The businesses in which LayJax invested are broad and diverse.

### a. *Update on Recovery Potential*

As previously reported, only two or three of LayJax's twelve investments hold a moderate chance of producing a return. One of those investments is a company that sells skincare treatments, which company was acquired on October 21, 2022. Another LayJax investment that has produced a return is a canned adult beverage company, which was acquired on May 20, 2023. While the skincare treatment investment brought in a sizeable return to the Estate (approximately $450,000), the return on the canned adult beverage company will be much more modest. LayJax holds only a 0.889 percent equity interest in that company, so the Receiver anticipates that the Estate will initially receive approximately $40,000 from the initial purchase price. Over the next few years, there are additional yearly earn-out distributions that may potentially add up to a further $130,000. These future earn-out distributions are dependent upon future sales growth and may be difficult to fully exploit. The Estate has not yet received any cash return on this particular LayJax investment, but the Receiver anticipates that it will do so in the future.

The Receiver continually monitors each investment for progress, as well as

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

for potential opportunities to generate recoveries. The Receiver will provide additional updates as new or meaningful activity occurs.

### 3.   *The Additional Investments*

As a part of the Receiver's forensic accounting analysis, the Receiver identified investments of more than $5.6 million made by ZJH Enterprises, LLC ("ZJH") or 1inMM into Additional Investments, sixteen (16) investment vehicles. ZJH's sole source of funding came from 1inMM. The entities comprising the Additional Investments are each investment vehicles made for the sole purpose of investing into third party start-up companies. Importantly, however, the Additional Investments are all managed or controlled by a principal of one of the aggregators. On September 8, 2022, the Receiver's professional staff issued a letter to the managing member requesting various documents such as financial statements, agreements, and other supporting documents relating to the Additional Investments.

In reviewing the production of records from this request, the Receiver discovered that ZJH was the largest investor in the Additional Investments. According to bank records, ZJH invested over $5.6 million ("Invested Funds") into the Additional Investments. Additional questions remain, compelling the Receiver to continue her investigation into these entities and make additional document and information requests.

### 4.   *Additional Film Investments*

As a result of the Receiver's forensic accounting investigation, the Receiver and her staff identified five additional entities that received more than $13.1 million from 1inMM, which appear to have funded the production of an additional eight films. The Receiver continues to investigate these entities, films and the best avenue to efficiently maximize the recovery from these investments. The Receiver has begun to shift more resources to this potential asset and, pending additional investigation, continues to believe it prudent not to include any additional details on these entities and films in this report so as not to impede, jeopardize or hamper her

investigation.

### E.    Potential Litigation and Engagement of Conflicts Counsel

As noted in previous reports, the Receiver moved the Court to authorize her to engage Raines Feldman as conflict counsel, and the Court granted that motion on January 3, 2023. [ECF #166]

The Receiver continues to explore identifying potential causes of action whereby the Receiver may seek to recover funds or assets for the benefit of the estate. To that end, the Receiver has issued subpoenas to investigate potential litigation claims. A subpoena respondent filed a motion to quash the Receiver's subpoena [ECF #195]. After briefing and argument [ECF #202, #203, #206], Magistrate Judge Patricia Donahue ultimately granted the motion to quash [ECF #250]. On August 28, 2023, the Receiver filed a motion asking this Court to review Judge Donahue's order [ECF #251], which was being briefed as of the end of the Third Quarter 2023.

## II.    ACCOUNTING OF RECEIPTS AND DISBURSEMENTS

Attached as Exhibit "A" is a copy of the Standard Fund Accounting Report. Below is a summary of the cash receipts and disbursements from the estate on a cash accounting basis.

### A.    Cash Receipts

During the Third Quarter 2023, the receivership estate had cash receipts of $4,567,156. These cash receipts were comprised of (i) $3,850,000 representing the settlement funds paid by Tyler Crookston, and (ii) $24,183 related to interest income.

### B.    Cash Disbursements

During the Third Quarter 2023, cash disbursements totaled $1,290,279. These disbursements were comprised of (i) $600,000 paid to Loftus & Eisenberg as part of the agreement in the Tyler Crookston settlement, ii) $300,422 of Receiver's fees, iii) $278,492 of fees paid to Katten Muchin, the Receiver's counsel, iv) $100,000 paid

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

to Armstrong and Teasdale, LLP, as part of the agreement in the Tyler Crookston settlement, v) $4,706 of administrative expenses, vi) $2,840 of forensic account software costs, and vii) $215 of bank and other miscellaneous charges.

### C.  Cash on Hand

As of September 30, 2023, the receivership estate held an ending balance of $3,276,877.

### III.  CONCLUSION

The Receiver respectfully requests that the Court grant the motion to approve this Report and award the related relief requested therein.

Dated: November 3, 2023                    Respectfully submitted,

                                           By:   /s/*Michele Vives*
                                                 Michele Vives, Receiver

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

## PROOF OF SERVICE

**STATE OF ILLINOIS, COUNTY OF COOK**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Cook, State of Illinois. My business address is 525 W. Monroe St., Chicago, IL 60661.

On November 3, 2023, I served the following document(s) described as:

**QUARTERLY REPORT OF RECEIVER MICHELE VIVES (THIRD QUARTER 2023)**

as follows:

**[ ]      BY MAIL:** I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Katten Muchin Rosenman LLP practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**[ ]      BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused the document(s) to be sent from e-mail address terence.banich@katten.com to the persons at the e-mail addresses listed above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**[ ]      BY OVERNIGHT MAIL (FedEx):** I enclosed said document(s) in an envelope or package provided by FEDEX and addressed to the persons at the addresses listed above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FEDEX or delivered such document(s) to a courier or driver authorized by FEDEX to receive documents.

**[ ]      BY PERSONAL SERVICE:** I caused said document to be personally delivered the document(s) to the person at the addresses listed above by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office.

**[X]      E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.

Executed on November 3, 2023, at Winnetka, Illinois.

*/s/Terence G. Banich*
Terence G. Banich

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Case No. 2:21-cv-02927-CAS-PD
QUARTERLY REPORT OF RECEIVER MICHELE VIVES
(THIRD QUARTER 2023)