UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:21-CV-02927-CAS (PDx) | Date | October 30, 2023 |
| Title | SECURITIES AND EXCHANGE COMMISSION V. ZACHARY J. HORWITZ ET AL. | | |

Present: The Honorable    **CHRISTINA A. SNYDER**

| Catherine Jeang | Laura Elias | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:
    Kathryn Wanner

Attorneys Present for Defendants:
    Not Present

Attorneys Present for Movants:
    Joshua Hamilton
    Manny Abascal

Attorneys Present for Receiver:
    Kathy Phelps

**Proceedings:**     **ZOOM HEARING** MOTION OF RECEIVER FOR REVIEW OF MAGISTRATE JUDGE'S DISCOVERY ORDER (DKT. 250) PURSUANT TO FED. R. CIV. P. 72 (Dkt. 251, filed on August 25, 2023)

## I. INTRODUCTION

On April 5, 2021, the Securities and Exchange Commission ("SEC") filed this civil enforcement action against defendants Zachary J. Horwitz ("Horwitz") and 1inMM Capital, LLC ("1inMM") (collectively, "defendants"). Dkt. 1 ("Compl."). The complaint alleges two claims for: (1) violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5(b); and (2) violation of Section 17(a) of the Securities Act of 1933 (the "Securities Act"). Compl. ¶¶ 83-93. In brief, the SEC alleges that between March 2014 and December 2019, defendants engaged in a fraudulent offering of securities which was in furtherance of a Ponzi scheme, all in violation of the federal securities laws. Compl. ¶ 4. According to the SEC, defendants misrepresented to investors that promissory notes issued by 1inMM would be repaid using the proceeds from movie licensing deals with major media companies, when, in fact, those licensing deals did not exist. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:21-CV-02927-CAS (PDx) | Date | October 30. 2023 |
| Title | SECURITIES AND EXCHANGE COMMISSION V. ZACHARY J. HORWITZ ET AL. | | |

On May 4, 2021, the United States Attorney's Office for the Central District of California filed an indictment charging defendant Horwitz with: (1) five counts of securities fraud, in violation of Section 10(b) of the Exchange Act, SEC Rule 10b-5, and 15 U.S.C. § 78ff; (2) six counts of wire fraud, in violation of 18 U.S.C. § 1343; and (3) two counts of aggravated identify theft, in violation of 18 U.S.C. § 1028A(a)(1). United States v. Horwitz, No. 2:21-cr-00214-MCS-1 (the "Criminal Action"), dkt. 25. The United States sought forfeiture as part of any criminal sentence, pursuant to 18 U.S.C. §§ 981(a)(1)(c), 982, and 1028, and 28 U.S.C. § 2461(c). In its notice of pendency of other actions or proceedings, the SEC described the allegations made in the Criminal Action as "virtually identical to the allegations of the SEC in the present action." Dkt. 42.

On February 16, 2022, defendant Horwitz pled guilty to securities fraud in violation of 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5. Criminal Action, dkt. 75. Horwitz was thereafter sentenced to a term of imprisonment of 240 months and to three-years supervised release. He was further ordered to pay to the United States a special assessment of $100 and restitution in the amount of $230,361,884. Id.

On January 14, 2022, the Court granted the SEC's motion to appoint a permanent receiver in the present action. Dkt. 70. Michele Vives of Douglas Wilson Companies (the "Receiver") was appointed as permanent receiver of 1inMM, its subsidiaries and affiliates, and over assets that are attributable to funds derived from investors or clients of the defendants, or were fraudulently transferred by the defendants (the "Subject Assets"). Id. at 2. Pursuant to the order on appointment of a permanent receiver, the Receiver has:

> . . . full powers of an equity receiver, including, but not limited to, full power over all funds, assets, collateral, premises (whether owned, leased, occupied, or otherwise controlled), choses in action, books, records, papers and other property belonging to, being managed by or in the possession of or control of Defendant 1inMM and its subsidiaries and affiliates, and over the Subject Assets, and that such receiver is immediately authorized, empowered and directed:

> A. to have access to and to collect and take custody, control, possession, and charge of all funds, assets, collateral, premises (whether owned, leased, pledged as collateral, occupied, or otherwise controlled), choses in action, books, records, papers and other real or personal property, wherever located, of or managed by Defendant 1inMM and its subsidiaries and affiliates, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:21-CV-02927-CAS (PDx) | Date | October 30, 2023 |
| Title | SECURITIES AND EXCHANGE COMMISSION V. ZACHARY J. HORWITZ ET AL. | | |

over the Subject Assets, (collectively, the "Assets"), with full power to sue, foreclose, marshal, collect, receive, and take into possession all such Assets (including access to and taking custody, control, and possession of all such Assets); . . .

D. to conduct such investigation and discovery as may be necessary to locate and account for all of the assets of or managed by Defendant 1inMM and its subsidiaries and affiliates, and to engage and employ attorneys, accountants and other persons to assist in such investigation and discovery;

E. to take such action as is necessary and appropriate to preserve and take control of and to prevent the dissipation, concealment, or disposition of any Assets; . . .

I. to investigate and, where appropriate, to institute, pursue, and prosecute all claims and causes of action of whatever kind and nature that may now or hereafter exist as a result of the activities of present or past employees or agents of Defendant 1inMM, and its subsidiaries and affiliates

J. to institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts, which (i) the receiver deems necessary and advisable to preserve or recover any Assets, or (ii) the receiver deems necessary and advisable to carry out the receiver's mandate under this Order; . . . .

Id. at 1-3. On January 11, 2023, the Receiver served a subpoena on non-party City National Bank ("CNB") with 122 requests for documents and various account records relating to 1inMM and 1inMM Related Clients. Dkt. 197. According to CNB, the subpoena further "(a) specifically identifies at least seven CNB employees by name in connection with its requests, (b) references various other non-party entities and individuals by name, including other CNB clients, and (c) requests detailed information about specific, non-public policies and procedures at CNB." Id.

  On March 15, 2023, CNB filed a motion to quash the subpoena. Dkt. 195. On March 16, 2023, the motion was assigned to the Hon. Patricia Donahue, United States Magistrate Judge (the "Magistrate Judge"). Dkt. 199. On April 3, 2023, the Receiver filed an opposition to CNB's motion to quash subpoena. Dkt. 202. On April 10, 2023, CNB filed a reply in support of its motion to quash subpoena. Dkt. 203.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:21-CV-02927-CAS (PDx) | Date | October 30. 2023 |
| Title | SECURITIES AND EXCHANGE COMMISSION V. ZACHARY J. HORWITZ ET AL. | | |

On April 24, 2023, the Magistrate Judge held a hearing on CNB's motion to quash subpoena and took the matter under submission. Dkt. 206. On August 11, 2023, the Magistrate Judge granted CNB's motion to quash the subpoena. Dkt. 250.

On August 25, 2023, the Receiver filed a motion for review of the Magistrate Judge's discovery order (dkt. 250) pursuant to Federal Rule of Civil Procedure 72. Dkt. 251. On September 25, 2023, CNB filed an opposition to the Receiver's motion for review of the Magistrate Judge's discovery order. Dkt. 271. On October 2, 2023, the Receiver filed a reply in support of her motion. Dkt. 275. On October 9, 2023, CNB filed a surreply in support of its opposition. Dkt. 281. That same day, the Receiver filed a correction to her reply. Dkt. 282.

On October 30, 2023, the Court held a hearing on the Receiver's motion for review of the Magistrate Judge's discovery order. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   BACKGROUND

### A.   The Fraudulent Scheme

In the civil case, the SEC alleges that between March 2014, and December 2019, defendants raised over $690 million from investors through a fraudulent scheme wherein defendants misrepresented that Netflix and Home Box Office ("HBO") were 1inMM's "strategic partners," and that defendants would acquire and license the "distribution rights in movies to HBO, [] Netflix," and other major media companies, and "use[] the profits from those transactions to repay investors in 1inMM's promissory notes." Compl. ¶ 5. According to the complaint, Horwitz, who is a Los Angeles based actor, was the sole principal and managing member of 1inMM throughout the relevant period. Id. ¶¶ 17-18. Defendants allegedly raised money from investors by issuing promissory notes, which Horwitz represented would fund transactions regarding the rights to specific movies. Id. ¶¶ 20-25. The SEC alleges that the promissory notes generally guaranteed investors profits of between 35 and 45 percent at maturity, and that Horwitz told investors that he and 1inMM would profit from those transactions by licensing the movie rights to HBO or Netflix for distribution, generally in Latin America, in an amount exceeding the maturity

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:21-CV-02927-CAS (PDx) | Date | October 30. 2023 |
| Title | SECURITIES AND EXCHANGE COMMISSION V. ZACHARY J. HORWITZ ET AL. | | |

payments on the promissory notes, and by retaining certain additional distribution rights. Id. ¶¶ 26-27.

The SEC alleges, however, that defendants had no relationship or licensing arrangement with HBO or Netflix and, instead, "Horwitz misappropriated investor funds to pay putative returns on earlier investments" and for his personal use, including a $5.7 million home purchase. Id. ¶¶ 8-14; 56-60. The SEC alleges that defendants "did not acquire the movie rights funded by the [p]romissory [n]otes and did not sell those rights to HBO or Netflix." Id. ¶ 49. In addition, the SEC alleges that on at least three occasions, "Horwitz […] used investor funds to pay purported returns on previously issued notes" and used those payments in his efforts to induce investors to make further investments and recruit downstream investors. Id. ¶¶ 50-51, 53. The SEC alleges that in late 2019, defendants stopped making payments to investors on outstanding 1inMM promissory notes, and that defendants subsequently provided false explanations to investors as to why the payments had stopped, including by claiming that negotiations with Netflix and HBO were delayed. Id. ¶¶ 62-77.

### B. The Magistrate Judge's Discovery Order

In her August 11, 2023 order, the Magistrate Judge found that the 1inMM Related Clients entered into multiple agreements with CNB that contained mandatory Alternative Dispute Resolution ("ADR") provisions. Dkt. 250 at 6. The Magistrate Judge distinguished this case from Sifuentes v. Dropbox, Inc., No. CV 20-07908-HSG, 2022 WL 2673080, at *4 (N.D. Cal. June 29, 2022), upon which the Receiver relied, because the 1inMM Related Clients had been bound by a mandatory ADR provision "at all relevant times." Id. at 13. She explained that because the Receiver "stands in [the] shoes" of the 1inMM Related Clients—the receivership entities—the Receiver is also bound by these agreements. Id. at 7, 9. According to the Magistrate Judge, "[t]he Receiver's claim that she does not act for Horowitz or MJLZ Trust, for which she also requested documents, does not change that result because they both executed binding ADR agreements." Id. at 9.

The Magistrate Judge further found that a dispute existed between the Receiver and CNB that triggered the ADR provisions. Id. at 12. She reasoned that the Receiver was investigating potential claims against CNB, as evidenced by her invoices reflecting research into these potential claims. Id. Moreover, she explained that the Receiver may be adverse to CNB based on the retention of conflicts counsel "to pursue 'potential

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:21-CV-02927-CAS (PDx) | Date | October 30, 2023 |
| Title | SECURITIES AND EXCHANGE COMMISSION V. ZACHARY J. HORWITZ ET AL. | | |

claims' on a 'small number of cases' where her prior counsel has a conflict." Id. Further, the Receiver's conflict counsel, "before serving the Subpoena, informed CNB's counsel that the Receiver was conducting an investigation, requested that CNB enter into a tolling agreement [(which CNB declined to do)] and notified CNB of its obligation to preserve 'all documents, records, and things relating to the 1inMM and Horwitz accounts.'" Id. Therefore, the Magistrate Judge granted CNB's motion to quash the subpoena. Id. at 13.

### III. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 72(a), a party may file objections to a magistrate order's non-dispositive order within fourteen days. The party shall file a motion for review by the "assigned District Judge, designating the specific portions of the ruling objected to and stating the grounds for the objection." Local R. 72-2.1. The Court must consider timely objections and modify or set aside any part of the order that is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a); see also 28 U.S.C. § 636(b)(1)(A).[1]

### IV. DISCUSSION

The Receiver asserts that the Court has "extremely broad" powers and discretion over an equity receivership and that a common use of such powers is permitting a receiver to investigate potential claims by issuing subpoenas. Dkt. 251-1 at 13-14; see also S.E.C. v. Hardy, 803 F.2d 1034, 1037 (9th Cir. 1986).

---

[1] In Salinas v. Cornwell Quality Tools Co., the court explained that "[i]f a magistrate judge's account of the evidence is plausible in light of the record viewed in its entirety, the district court may not reverse it even if it would have weighed the evidence differently had it been sitting as the trier of fact." Salinas, No. 5:19-cv-02275-FLA-SPx, 2023 WL 3432234, at *2 (C.D. Cal. Feb. 17, 2023). This standard applies to the Court's review of the Magistrate Judge's findings of fact. Here, by contrast, the Court has determined that the contractual interpretation, which is to be determined as a matter of law, was incorrect in the discovery order. See id. at *3 ("Unlike the 'clearly erroneous' standard, the 'contrary to law' standard permits independent review of purely legal determinations by the magistrate judge." (citing Green v. Baca, 219 F.R.D. 485, 489 (C.D. Cal. 2003))).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:21-CV-02927-CAS (PDx) | Date | October 30, 2023 |
|---|---|---|---|
| Title | SECURITIES AND EXCHANGE COMMISSION V. ZACHARY J. HORWITZ ET AL. | | |

According to the Receiver, the factual findings in the discovery order were "clearly erroneous." Dkt. 251-1 at 14. First, the Receiver asserts that neither the receivership entities nor she are parties to a binding arbitration agreement because the ADR section of the 2020 Amendment to the Account Agreement expressly excluded arbitration for California account deposit holders and instead included a provision for judicial reference for claims with respect to California deposit accounts. Id. at 14-15. Second, the Receiver argues that the discovery order fails to find that the 2020 Amendment is the relevant agreement, and that the 2023 Amendment does not apply to the Receiver. Id. at 15-16; see also Sifuentes v. Dropbox, Inc., 2022 WL 2673080, at *4 (N.D. Cal. June 29, 2022). In this regard, the Receiver seeks to clarify that the 2020 Amendment controls, such that ADR would be limited to judicial reference and applies only "as to records sought relating to the Receivership Entities." Dkt. 251-1 at 16. Third, the Receiver contends that, because the subpoena "merely seeks documents for investigatory purposes – to locate all assets and pursue all claims for the benefit of the defrauded victims," no claim has been asserted that triggers the applicable ADR provision in the first instance. Id. at 16, 18. The Receiver explains that the engagement of conflicts counsel and the possibility that a claim against CNB involving $250,000 or more might arise in the future do not constitute a dispute involving a claim under the 2020 Amendment. Id. at 16, 18. She asserts that issuing a third-party subpoena to CNB is necessary for her investigation and that the subpoena "does not involve a claim for any amount." Id. at 17, 19.

The Receiver additionally contends that the Magistrate Judge's legal conclusions in the discovery order were "contrary to law." Id. at 19. First, the Receiver asserts that the discovery order fails to distinguish between her action of requesting third party records held by CNB for non-receivership entities, such as Horwitz and MJLZ, and seeking records "on behalf" of receivership entities who have agreements with CNB. Id. at 20. Second, the Receiver distinguishes the cases finding a dispute to trigger ADR cited in the discovery order from this case because the Receiver has not asserted a claim or commenced litigation against CNB. Id. at 21. Third, the Receiver argues she should not be bound to the account agreements and corresponding ADR provisions because the receivership entities had unclean hands. Id. at 22-23. Finally, the Receiver contends that she further should not be bound to the ADR provisions because such provisions conflict with the underlying purposes of the receivership statutes, 28 U.S.C. §§ 754 and 1692, and thereby harm the victims of fraudulent schemes. Id. at 23-24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:21-CV-02927-CAS (PDx) | Date | October 30. 2023 |
| Title | SECURITIES AND EXCHANGE COMMISSION V. ZACHARY J. HORWITZ ET AL. | | |

In opposition, CNB argues the Receiver's concession that the 1inMM Related Clients "executed account opening agreements" is "fatal" to her motion because those agreements have never allowed discovery in federal court and instead have required exclusive resolution through ADR proceedings. Dkt. 271 at 12 (emphasis omitted). CNB contends that while the Receiver spends pages making a "straw-man argument" that the Magistrate Judge incorrectly found the dispute should be resolved by arbitration, "the Magistrate Judge never had to, and in fact did not, opine on whether arbitration or judicial reference is applicable, or whether certain ADR provisions apply only to some kinds of records sought but not to others." Id. at 12-14. According to CNB, the Receiver does not explain "why precedent requiring a receiver to abide by a forum selection clause is not pertinent to whether she is bound by an arbitration agreement," and no precedent establishes that a case's procedural posture impacts the enforceability of an ADR provision. Id. at 14. Moreover, CNB asserts that the Receiver has failed to identify precedent "that directly contradicts" the conclusions of law in the discovery order. Id. at 15.

Further, CNB contends that the Magistrate Judge "identified multiple, specific facts" to support her finding a dispute exists between the Receiver and CNB, including that the Receiver's conflicts counsel had requested a tolling agreement and notified CNB of its obligation to preserve certain documents. Id. at 15-16. CNB asserts that the Receiver conceded that the purpose of the subpoena was to identify "what did the bank know and when did the bank know it. Is there a claim to be pursued." Id. at 16 (emphasis and citation omitted). CNB argues that, unlike in Capitol Life Insurance Co. v. Gallagher, 47 F.3d 1178 (10th Cir. 1995), on which the Receiver relies to assert there is no dispute, the Receiver does not occupy a role other than as an SEC equity receiver who "stands in the shoes" of the 1inMM Related Clients. Id. at 17. CNB also disagrees with the Receiver's assertion that the Magistrate Judge erred by failing to identify the "nature or value of any dispute," particularly because it is clear that any potential claims against CNB would exceed the monetary threshold in the account agreements for judicial reference. Id. at 18. CNB accordingly contends that "it was not clearly erroneous for the Magistrate Judge to conclude that the Receiver is not entitled to exploit this SEC enforcement action to seek discovery to support claims that she may not bring in this Court." Id.

In addition, CNB argues that the Receiver's power to serve a subpoena was limited by the ADR agreements between the 1inMM Related Clients and CNB, "regardless of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:21-CV-02927-CAS (PDx) | Date | October 30. 2023 |
| Title | SECURITIES AND EXCHANGE COMMISSION V. ZACHARY J. HORWITZ ET AL. | | |

whether that discovery relates to their own accounts, or to the banking accounts of their principal (Horwitz) or his trust (MJLZ Trust)." Id. at 19. Further, CNB contends that the Receiver's discussion of equitable defenses is irrelevant since none have been raised by either party and the Magistrate Judge did not find one to be relevant to the motion to quash. Id. at 20. CNB cites several cases to argue that "receivers are categorically bound by any legal obligations—such as a contractual obligation—that could be asserted against the receivership entity." Id. (emphasis and citations omitted). Finally, CNB contends the receivership statutes do not concern whether receivers are bound by preexisting contracts, and "[t]he Magistrate Judge's decision to reject the Receiver's broad-based policy arguments was thus fully consistent with—and not contrary to—the law." Id. at 21.

In reply, the Receiver argues that the Magistrate Judge's failure to determine the applicable agreement and whether the agreement requires ADR was clearly erroneous because the applicable 2020 Agreement does not require ADR here. Dkt. 275 at 5. She asserts she "asked the Magistrate Judge to find that the 2023 Amendment did not apply" because she neither had notice of it nor assented to it before she served the subpoena. Id. at 6. According to the Receiver, the "Discovery Order erroneously focused exclusively on the word 'dispute,' erroneously concluded that *all* disputes require ADR, and erroneously ignored the express language that restricts ADR to disputes that involve 'claims' of $250,000 or more." Id. at 7-8. The Receiver provides two definitions of "claim" and argues that the dispute regarding the subpoena is not a dispute on a "claim" pursuant to either definition. Id. at 7-8. She further argues that CNB's assertions that the amount in controversy would likely exceed $250,000 and that she does not present evidence she would seek less, do not support the existence of a present dispute on a claim and inappropriately shift the burden to her when CNB must establish it is entitled to ADR. Id. at 8-9, 10. According to the Receiver, the prudent actions of her conflicts counsel, such as requesting a tolling agreement and providing notice of document preservation, did not create a dispute. Id. at 9-10. The Receiver acknowledges she is evaluating "a *potential* claim" but argues there is no present claim. Id. at 10.

The Receiver reiterates she is not bound by contracts between non-receivership entities, such as Horwitz and MJLZ Trust, and CNB. Id. at 11-12. She contends the discovery order was "clearly erroneous as to the two Service Agreements" that apply to only two entities because the order did not analyze the applicable ADR provision, which is contained in the 2020 Amendment. Id. at 12-13. The Receiver further disagrees with the Magistrate Judge's conclusion that the Receiver's discovery powers are limited to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:21-CV-02927-CAS (PDx) | Date | October 30. 2023 |
| Title | SECURITIES AND EXCHANGE COMMISSION V. ZACHARY J. HORWITZ ET AL. | | |

those of the 1inMM Related Clients, as this conclusion bars pre-suit discovery and conflicts with the Court's order authorizing the Receiver to investigate the assets and claims of the receivership estates, which "includes the right to issue subpoenas." Id. at 14-16. The Receiver argues that, given the power of district courts over receivership assets, "[d]enying CNB's Motion to Quash is critical to the Receiver's ability to effectively and efficiently administer the estate in this case, as both this Court and Congress intended." Id. at 17-18. Moreover, the Receiver cites the recent Ninth Circuit case, Winkler v. McCloskey, No. 22-55856, 2023 WL 6301667 (9th Cir. Sept. 28, 2023), to argue that the exceptions to the rule that a receiver occupies the same position as the receivership entities applies here where the entities were conducting a fraudulent scheme. Id. at 18. Finally, the Receiver asserts that the Magistrate Judge erroneously suggested that a receiver would assert an *in pari delicto* defense, when it is a defendant who would assert this defense against a receiver in some circumstances. Id. at 19.

In its surreply, CNB argues that Winkler reversed and remanded the district court opinion relied upon by the Receiver in her "request that the Magistrate Judge 'deem the arbitration clauses rejected as an executory contract that has been repudiated.'" Dkt. 281 at 5 (citation omitted). According to CNB, the Magistrate Judge correctly declined to follow the district court's opinion, and the Ninth Circuit's opinion is consistent with her analysis. Id. at 5-6. CNB contends the Receiver asserts new arguments in her reply, e.g., that the Court should find the 2020 Amendment to be the operative agreement, which the Court must reject. Id. at 6. Finally, CNB asserts that the several defenses raised by the receiver to the arbitration agreements in Winkler "are completely absent here." Id. at 7.[2]

The Court agrees that the Receiver acts "on behalf of the receivership entities." Winkler, 83 F.4th 720, at 728. However, while the Receiver may "stand in the shoes" of the receivership entities, her right to serve a subpoena on CNB is not automatically barred by the ADR provisions in question. See id. ("Our conclusion that the Receiver is

---

[2] In surreply, CNB asserts that the Receiver improperly argues in her reply that a de novo standard of review, rather than a "clearly erroneous and contrary to law" standard, applies to the review of a magistrate judge's order. Dkt. 281 at 2-3. However, the Receiver filed a correction to her reply, agreeing with CNB that "the appropriate standard of review is the 'clearly erroneous or contrary to law' standard as set forth in 28 U.S.C. § 636(b)(1)(A)." Dkt. 282.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        'O'

| Case No. | 2:21-CV-02927-CAS (PDx) | Date | October 30, 2023 |
|---|---|---|---|
| Title | SECURITIES AND EXCHANGE COMMISSION V. ZACHARY J. HORWITZ ET AL. | | |

acting on behalf of the receivership entities does not establish that the Receiver is bound by the arbitration agreements between [the receivership entities and another entity].").

It appears to the Court that the 2020 Amendment controls here, as the Receiver served the subpoena on January 11, 2023, and the 2023 Amendment did not take effect until February 1, 2023, more than a year after the appointment of the Receiver and without notice to or assent by the Receiver. The Court agrees with the Receiver that this case does not present a "dispute" as defined under the 2020 Amendment. A "dispute that involves the combined claims of all parties totaling $250,000 or more . . . with respect to the deposit account or safe deposit box" has not arisen. Dkt. 251-1 at 7; dkt. 195-22, Exh. M. The Receiver seeks to conduct pre-dispute discovery, and nothing in the ADR provisions or the 2020 Agreement prohibits such discovery. Here, the Court has authorized the Receiver to conduct an investigation, including issuing subpoenas to the parties to investigate claims. This circumstance is different from cases holding that a party which has not initiated any proceeding and who is subject to an arbitration clause may not conduct pre-arbitration discovery. The Court finds that the Receiver served the subpoena as part of her investigation pursuant to her powers given to her by the Court, and as she asserts, "[p]reventing the Receiver from gathering this information will hamper the Receiver's ability to conduct the investigation that the Court has asked her to do." Dkt. 251-1 at 17.[3]

## V. CONCLUSION

In accordance with the foregoing, the Court GRANTS the Receiver's motion for review of the Magistrate Judge's discovery order and DENIES CNB's motion to quash the subpoena.

IT IS SO ORDERED.

|  | 00 | : | 35 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

---

[3] If and when the Receiver initiates a claim against CNB, that claim may be subject to judicial reference, but that issue is not ripe for decision now.