Terence G. Banich (SBN 212173)
terence.banich@katten.com
Allison E. Yager (*pro hac vice*)
allison.yager@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661
Telephone: (312) 902-5200
Facsimile: (312) 902-1061

*Attorneys for the Receiver*
Michele Vives

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ZACHARY J. HORWITZ and 1inMM CAPITAL, LLC,<br><br>Defendants. | Case No. 2:21-cv-02927-CAS-PD<br><br>**NOTICE OF MOTION AND MOTION OF RECEIVER MICHELE VIVES FOR ORDER APPROVING SETTLEMENT WITH BREAKOUT SPE LLC, DUNCAN DAVIS AND BRANDON LABRUM, AND FOR RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: December 11, 2023<br>Time: 10:00 a.m. PT<br>Judge: Hon. Christina A. Snyder<br>Courtroom: 8D |

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on December 11, 2023, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 8D, located at the United States Courthouse, 350 West First Street, Los Angeles, California 90012, Michele Vives, not individually, but solely as the federal equity receiver (the "Receiver") of defendant 1inMM Capital, LLC and its subsidiaries, affiliates and over the assets more particularly described in the *Order on Appointment of Permanent Receiver*, dated January 14, 2022 [ECF #70] (the "Receiver Order"), will and hereby does move the Court for entry of an order approving the settlement with Breakout SPE LLC, Duncan Davis and Brandon Labrum, and for related relief (the "Motion").

The Motion is based on the Memorandum of Points and Authorities below and is supported by: (a) the *Settlement Agreement and Mutual Release*, dated November 7, 2023 (the "Settlement Agreement"), copy attached as **Exhibit 1**; (b) the *Declaration of Michele Vives*, dated November 10, 2023 ("Vives Decl."), copy attached as **Exhibit 2**; (c) the *Declaration of Andrew D. Campbell*, dated November 10, 2023 ("Campbell Decl."), copy attached as **Exhibit 3**; (d) the *Declaration of David A. Rammelt*, dated November 10, 2023 ("Rammelt Decl."), copy attached as **Exhibit 4**; and (e) the *Declaration of Alexander Loftus*, dated November 10, 2023 ("Loftus Decl."), copy attached as **Exhibit 5**.

This Motion is made following the Local Rule 7-3 conference of counsel which took place on November 13, 2023. **No party requests a hearing on the Motion.**

Dated: November 13, 2023

Respectfully submitted,

**KATTEN MUCHIN ROSENMAN LLP**

By:    /s/ *Terence G. Banich*
        Terence G. Banich

*Attorneys for the Receiver*
Michele Vives

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

# <u>TABLE OF CONTENTS</u>

Table of Authorities ...................................................................................................iii

Factual Background ...................................................................................................1

    A.    The Receiver; investigation of transfers ...............................................1

    B.    The Nalpak Claims and the L&E Claims ...............................................1

    B.    The Transfers and the Receiver Claims .................................................2

    D.    The Settlement .....................................................................................3

Legal Standards ........................................................................................................5

Argument ..................................................................................................................7

I.    The Settlement is fair, equitable and in the best interests of the
Estate. ................................................................................................................7

    A.    Probability of success .........................................................................8

        1.    Receiver Claims ......................................................................8

        2.    Defenses ..................................................................................9

    B.    Collection difficulties .........................................................................12

    C.    Complexity/expense ...........................................................................12

    D.    Creditors .............................................................................................13

II.    The Court should approve the Bar Order. .........................................................13

    A.    The Court has the power to enter the Bar Order. ..................................13

    B.    The Bar Order is fair, just, equitable and in the best
interest of the Estate. ..........................................................................15

    C.    The Bar Order is necessary to the Settlement. ....................................17

III.    The Court should approve the Administrative Claim. .................................18

Notice to Creditors ..................................................................................................21

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

# TABLE OF AUTHORITIES

## Cases

*Baten v. Mich. Logistics, Inc.*, 2023 WL 2440244 (C.D. Cal. Mar. 8, 2023) ......... 18

*Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417 (B.A.P. 9th Cir. 1997) ................... 7

*Danning v. Miller (In re Bullion Reserve of N. Am.)*, 922 F.2d 544 (9th Cir. 1991) ........................................................................................................................ 10-11

*Commodity Futures Trading Comm'n v. Bluprint LLC*, 2023 WL 5109447 (S.D. Fla. Aug. 2, 2023) ............................................................................................ 14-15, 17

*Donell v. Kowell*, 533 F.3d 762 (9th Cir. 2008) ............................................... 8-9

*Donell v. Mojtahedian*, 976 F. Supp. 2d 1183 (C.D. Cal. 2013) ........................... 9

*Fed. Trade Comm'n v. Cardiff*, 2020 WL 9938072 (C.D. Cal. Mar. 10, 2020) ..... 21

*Futures Trading Comm'n v. Topworth Int'l, Ltd.*, 205 F.2d 1107 (9th Cir. 1999) ............................................................................................................................ 5

*Gaskill v. Gordon*, 942 F. Supp. 382 (N.D. Ill. 1996), *aff'd*, 160 F.3d 361 (7th Cir. 1998) ......................................................................................................................... 20

*Gill v. Blessing*, 2014 WL 12573667 (C.D. Cal. Oct. 6, 2014) .............................. 10

*Gordon v. Dadante*, 2008 WL 1805787 (N.D. Ohio Apr. 18, 2008), *aff'd*, 336 F. App'x 540 (6th Cir. 2009) ...................................................................................... 17

*Gordon v. Dadante*, 336 F. App'x 540 (6th Cir. 2009) ......................................... 5

*Grimm v. City of Portland*, 971 F.3d 1060 (9th Cir. 2020) ................................... 21

*In re Bondanelli*, 2020 WL 1304140 (B.A.P. 9th Cir. Mar. 18, 2020) ................... 13

*In re Douglas J. Roger, M.D., Inc., APC*, 393 F. Supp. 3d 940 (C.D. Cal. 2019) ............................................................................................................ 7, 21

*In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423 (E.D. Pa. 2001) ................ 20

*In re Heritage Bond Litig.*, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ............ 20

*In re Incomnet, Inc.*, 463 F.3d 1064 (9th Cir. 2006) ............................................. 10

*In re ISE Corp.*, 2012 WL 1377085 (Bankr. S.D. Cal. Apr. 13, 2012) ................... 11

*In re Lahijani*, 325 B.R. 282 (B.A.P. 9th Cir. 2005) ............................................. 7

*In re Law*, 308 F. App'x 152 (9th Cir. 2009) ....................................................... 12

*In re MGS Mktg.*, 111 B.R. 264 (B.A.P. 9th Cir. 1990) ......................................... 7

*In re Open Med. Inst., Inc.*, 639 B.R. 169 (B.A.P. 9th Cir. 2022) ............... 7, 11, 13

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

*In re Slatkin*, 525 F.3d 805 (9th Cir. 2008) ............................................................. 9

*In re TBH19, LLC*, 2022 WL 16782946 (B.A.P. 9th Cir. Nov. 8, 2022) ........... 7, 12

*In re Tidwell*, 2018 WL 1162511 (Bankr. C.D. Cal. Mar. 1, 2018) ....................... 13

*In re Walldesign, Inc.*, 872 F.3d 954 (9th Cir. 2017) ............................................. 10

*In re Woodson*, 839 F.2d 610 (9th Cir. 1988) .......................................................... 6

*Jenson v. First Tr. Corp.*, 2008 WL 11338161 (C.D. Cal. June 9, 2008) .............. 20

*Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543 (6th Cir. 2006) .................... 5, 21

*Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377 (9th Cir. 1986) ....................... 6

*Matter of Munford, Inc.*, 97 F.3d 449 (11th Cir. 1996) ......................................... 14

*Mullane v. Central Hanover Trust Co.*, 339 U.S. 306 (1950) ................................ 21

*Muñoz v. United States Dep't of State*, 50 F.4th 906 (9th Cir. 2022) .................... 21

*Northpoint Commc'ns Grp., Inc.*, 2007 WL 7541001 (B.A.P. 9th Cir. Nov. 7,
2007) .................................................................................................................. 10-11

*Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508 (N.D. Cal. 2008) ....................... 21

*Rodriguez v. Seabreeze Jetlev LLC*, 2022 WL 3327925 (N.D. Cal. Aug. 11,
2022) ....................................................................................................................... 18

*RPB SA v. Hyla, Inc.*, 2021 WL 4980092 (C.D. Cal. June 24, 2021) ...................... 8

*SEC v. Aequitas Mgmt., LLC*, 2020 WL 7318305 (D. Or. Nov. 10, 2020) ............. 14

*SEC v. Adams*, 2021 WL 8016843 (S.D. Miss. Feb. 25, 2021) ....................... 15, 21

*SEC v. Alleca*, 2021 WL 4843987 (N.D. Ga. Sept. 9, 2021), *vacated on other
grounds*, 2022 WL 16631325 (11th Cir. Nov. 2, 2022) ............................... 14-15, 17

*SEC v. Cap. Consultants, LLC*, 397 F.3d 733, 745 (9th Cir. 2005) ......................... 6

*SEC v. Cap. Cove Bancorp LLC*, 2016 WL 11752897 (C.D. Cal. Dec.
15, 2016) ........................................................................................................... 11, 18

*SEC v. Champion-Cain*, 2022 WL 126114 (S.D. Cal. Jan. 13, 2022) ..................... 6

*SEC v. DeYoung*, 850 F.3d 1172 (10th Cir. 2017) ............................................. 14-17

*SEC v. Hardy*, 803 F.2d 1034 (9th Cir. 1986) .................................................... 5, 13

*SEC v. Hickey*, 322 F.3d 1123 (9th Cir. 2003) ....................................................... 13

*SEC v. Kaleta*, 530 F. App'x 360 (5th Cir. 2013) ................................... 5, 14-17

*SEC v. Nadel*, 2012 WL 12910648 (M.D. Fla. Feb. 10, 2012) ......................... 14-16

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

*SEC v. Pritzker Levine LLP*, 2022 WL 671020 (9th Cir. Mar. 7, 2022)............19-20

*SEC v. Stanford Int'l Bank, Ltd.*, 2017 WL 9989250 (N.D. Tex. Aug.
23, 2017), *aff'd sub nom. Zacarias v. Stanford Int'l Bank, Ltd.*, 945
F.3d 883 (5th Cir. 2019) ................................................................ 14, 17

*SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830 (5th Cir. 2019).............................. 6

*SEC v. Total Wealth Mgmt., Inc.*, 2019 WL 13179068 (S.D. Cal. Sept.
18, 2019) ................................................................................6-8, 12

*SEC v. Wencke*, 622 F.2d 1363 (9th Cir. 1980)..................................... 13

*Vincent v. Hughes Air W., Inc.*, 557 F.2d 759 (9th Cir.1977) ...........................18-19

*Winkler v. McCloskey*, 83 F.4th 720 (9th Cir.2023)................................................. 9

*Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883 (5th Cir. 2019)...........14, 16-17

<u>Statutes, Rules and Other</u>

Cal. Civ. Code § 3439.04 ............................................................... 2, 8

Cal. Civ. Code § 3439.07 ..................................................................... 8

Cal. Civ. Code § 3439.08 ............................................................... 3, 8

L.R. 66-8 ............................................................................................ 6

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

## MEMORANDUM OF POINTS AND AUTHORITIES

### Factual Background

**A.    The Receiver; investigation of transfers**

On April 5, 2021, the SEC commenced this action against Zachary J. Horwitz ("Horwitz") and 1inMM Capital, LLC ("1inMM"; together, "Defendants"), alleging that they committed an offering fraud and Ponzi scheme in violation of the federal securities laws ("Ponzi Scheme"). On January 14, 2022, the Court entered the Receiver Order, appointing Ms. Vives as receiver of 1inMM, its subsidiaries, affiliates and the assets that are attributable to funds derived from investors or clients of Defendants or were fraudulently transferred by Defendants (the "Estate"). The Receiver Order authorizes the Receiver, among other things, to prosecute claims.

**B.    The Nalpak Claims and the L&E Claims**

The Receiver determined that Horwitz raised investor funds mostly using certain entities that pooled large amounts of money from many individual investors or lenders for upstream loans to, or investments in, 1inMM. The largest of these entities was JJMT Capital, LLC ("JJMT"). (Vives Decl. ¶9.)

In 2016, Duncan Davis and Brandon Labrum formed Breakout SPE LLC ("Breakout," and together with Davis and Labrum, "Breakout Parties") for the purpose of investing in JJMT. (*Id.* ¶10; Rammelt Decl. ¶5.) Breakout financed its loans to JJMT by entering into a series of promissory notes with downstream investors, including Nalpak I LP, Nalpak II LP, Nalpak Enterprises LLC and Peter Xilas (collectively, "Nalpak"). (Vives Decl. ¶10; Rammelt Decl. ¶5.) In sum, Nalpak loaned funds to Breakout, which were passed upstream to JJMT and, ultimately, 1inMM. (Vives Decl. ¶10; Campbell Decl. ¶5; Rammelt Decl. ¶5.)

In April 2020, Nalpak commenced a civil action against Breakout for breach of the promissory notes it issued to Nalpak, styled *Nalpak I LP, et al. v. Breakout SPE LLC*, No. 2020-L-004620, pending in the Circuit Court of Cook County, Illinois ("Nalpak Litigation"). In April 2021, Nalpak filed an amended complaint against

Defendants, alleging various state law claims associated with Defendants' scheme. Among other things, Nalpak claimed the Breakout Parties breached their obligations to repay over $10 million in principal and interest due under a series of promissory notes issued to Nalpak in connection with Breakout's involvement with JJMT, 1inMM and the Ponzi Scheme ("Nalpak Claims"). The Breakout Parties asserted defenses that could have resulted in Nalpak taking nothing. (Campbell Decl. ¶¶6-7; Rammelt Decl. ¶6.)

Around the same time, multiple 1inMM investors represented by Loftus & Eisenberg, Ltd. (collectively, "L&E Investors," and collectively with Nalpak, "Investors") threatened to bring claims against the Breakout Parties for aiding and abetting and violation of the Illinois Securities Law, claiming damages in excess of $35,000,000 (the "L&E Claims"). (Loftus Decl. ¶6.)

## C.    The Transfers and the Receiver Claims

As part of the above events, the Breakout Parties and their counsel, David A. Rammelt of Benesch Friedlander Coplan & Aronoff LLP, worked cooperatively with the Receiver. The Breakout Parties produced a large volume of financial documents and related information. The Receiver identified transfers from 1inMM to or for the benefit of the Breakout Parties in connection with the Ponzi Scheme totaling $1,335,522 (collectively, the "Transfers"). (Vives Decl. ¶12.)

The Receiver asserted that she may avoid and recover the Transfers as actual fraudulent transfers pursuant to §3439.04(a)(1) of the California Uniform Voidable Transactions Act, Cal. Civ. Code §3439 *et seq.* ("UVTA") ("Receiver Claims," and collectively with the Nalpak Claims and the L&E Claims, the "Claims"). As the Receiver contended, 1inMM and Horwitz made the Transfers with the actual intent to hinder, delay, or defraud their creditors, as Horwitz pled guilty and admitted that he used 1inMM to operate a Ponzi scheme, which conclusively establishes intent for purposes of a UVTA actual fraudulent transfer claim. The Receiver argued that she could recover the Transfers from the Breakout Parties under UVTA

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

§3439.08(b)(1)(A) as their first transferee, because even though 1inMM made many of the Transfers to them indirectly through JJMT, JJMT was a mere conduit that had no dominion over the money 1inMM transferred to it. (*Id.* ¶¶14-15.) The Breakout Parties asserted several defenses (discussed *infra*).

### D. The Settlement

The Breakout Parties expressed interest in settling the Receiver Claims, but only if the Receiver could concurrently resolve or eliminate the Nalpak Claims and the L&E Claims. After months of negotiations, the Receiver and those litigants agreed to mediate, selecting retired U.S. Magistrate Judge Sidney I. Schenkier as mediator. (*Id.* ¶¶15-16.)

After formal mediation sessions on January 30-31 and March 10, 2023 and multiple further discussions that occurred in the following months, the parties reached a settlement ("Settlement") whereby the Breakout Parties agreed to pay the sum of $1,060,000 directly to Nalpak ("Nalpak Settlement Payment") and the sum of $840,000 to the Estate ("Receiver Settlement Payment"; together, the "Settlement Payments"), payable over seven quarters (630 days), to resolve all Claims. The parties will exchange mutual general releases and the Receiver will ask the Court to enter an order ("Bar Order") permanently barring and enjoining all persons and non-governmental units from suing the Breakout Parties on any claim arising out of or relating to the Ponzi Scheme. The validity of the Settlement Agreement is subject to the condition precedent that the Court approves it, including the Bar Order. Nalpak also agreed that the Nalpak Settlement Payment shall reduce, on a dollar-for-dollar basis, any claim Nalpak may file against the Estate. The Settlement is documented in the Settlement Agreement. (*Id.* ¶¶17-18.)

The Receiver believes the Settlement is in the best interest of the Estate and its creditors—the net losing investors in the Ponzi Scheme. The Receiver Settlement Payment constitutes a substantial recovery for the Estate without the expense and risk of litigation, and the Settlement represents an equitable, good-faith resolution of

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

all Claims. While the Receiver and the Investors were confident in their respective Claims, the risk of an adverse result always loomed. The Breakout Parties asserted multiple meaningful defenses that, if successful, may have resulted in the Receiver and Investors recovering nothing. The Settlement thus avoids protracted and expensive litigation, thereby avoiding litigation risk and conserving Estate resources. (*Id.* ¶¶19-20.)

The Receiver Settlement Payment also far exceeds what the Breakout Parties would have paid to resolve the Receiver Claims alone without a bar order. (*Id.* ¶21; Rammelt Decl. ¶7.) The Breakout Parties simultaneously resolved the L&E Claims, so Loftus & Eisenberg, Ltd.'s ("L&E") efforts undoubtedly enhanced the final settlement value, all of which is flowing to the Estate. (Vives Decl. ¶21.) A critical component of the settlement consideration is that the Court enters the Bar Order, which is a common component of these sorts of settlements. And because the L&E Investors agreed that the Breakout Parties should remit the entirety of the Receiver Settlement Payment to the Estate, L&E helped create a common fund from which a portion of their attorney's fees may be paid. (*Id.*)

Moreover, the Settlement resolves a particularly complex multiparty dispute. The Claims arise from a common nucleus of operative facts—the Ponzi Scheme—but the claimants' objectives were not necessarily the same. Specifically, the Investors pursued the Breakout Parties to remedy their own personal damages, while the Receiver focused on benefitting the Estate as a whole. Those goals often conflicted, resulting in disagreements between the Receiver and the Investors about settlement terms and how to proceed. (*Id.* ¶22.)

The Nalpak Claims and L&E Claims are, nonetheless, derivative of the Receiver Claims and compete with the Receiver for the Breakout Parties' assets. The Receiver and the Investors are pursuing the same parties arising out of the same transactions and occurrences involving the same actors. As such, the Investors' actions affected the Estate's assets and ultimate recoveries; every dollar the Investors

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

managed to recover from the Breakout Parties in the event of a favorable judgment was arguably a dollar the Receiver could not recover from them. (*Id.* ¶23.)

The Breakout Parties wanted to achieve finality with a settlement, which they really could only accomplish through a deal with the Receiver. At the same time, the Receiver did not think it advisable or practical to exclude the Investors from those discussions, especially considering that Nalpak is 1inMM's largest unsecured creditor, holding claims totaling approximately $9 million. The Breakout Parties, moreover, made clear that any settlement with the Receiver must include a bar order enjoining any further creditor suits against them arising from or relating to the Ponzi Scheme, so the Receiver continually focused on achieving a settlement that met the legal requirements for a bar order. These factors, among others, made the litigation complex and particularly difficult to settle on a global basis. (*Id.* ¶¶24-25.)

## Legal Standards

District courts have "extremely broad" power and "wide discretion" in overseeing the administration of a receivership. *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir.1986). The Ninth Circuit "affords 'broad deference' to the [district] court's supervisory role" in receivership cases, and "generally uphold[s] reasonable procedures instituted by the district court that serve th[e] purpose of orderly and efficient administration of the receivership for the benefit of creditors." *Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.*, 205 F.2d 1107, 1115 (9th Cir.1999) (cleaned up).

That broad authority to oversee the administration of a receivership extends to approving settlements. "[N]o federal rules prescribe a particular standard for approving settlements in the context of an equity receivership; instead, a district court has wide discretion to determine what relief is appropriate." *Gordon v. Dadante*, 336 F.App'x 540, 549 (6th Cir.2009) (citing *Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543, 551 (6th Cir.2006)); *see also SEC v. Kaleta*, 530 F.App'x 360, 362 (5th Cir.2013) ("because this is a case in *equity*, it is neither surprising nor

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

dispositive that there is no case law directly controlling" the district court's order approving receiver's settlement).

Local Rule 66-8 directs a receiver to "administer the estate as nearly as possible in accordance with the practice in the administration of estates in bankruptcy." District courts sitting in receivership may look to bankruptcy law for guidance about the administration of a receivership. *See, e.g., SEC v. Cap. Consultants, LLC*, 397 F.3d 733, 745 (9th Cir.2005) (bankruptcy law "analogous" and therefore persuasive in administration of receivership estates). This is largely because "the purpose of bankruptcy receiverships and equity receiverships is essentially the same—to marshal assets, preserve value, equally distribute to creditors, and, either reorganize, if possible, or orderly liquidate." *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 841 (5th Cir.2019) (internal citation and quotations omitted).

Courts in this circuit typically apply bankruptcy principles to evaluate approval of settlements in receivership cases. *SEC v. Champion-Cain*, 2022 WL 126114, at *1 (S.D.Cal. Jan. 13, 2022) (applying bankruptcy principles regarding approval of settlements in receivership case); *SEC v. Total Wealth Mgmt., Inc.*, 2019 WL 13179068, at *2 (S.D.Cal. Sept. 18, 2019) (same). Bankruptcy courts evaluate whether a compromise is "fair and equitable," considering "[a] the probability of success in litigation, [b] any difficulties that may be encountered in collection, [c] the complexity of the litigation, the expense, inconvenience, and delay necessarily attending, and [d] the interest of the receivership entities' creditors and their reasonable views." *Champion-Cain*, 2022 WL 126114, at *1 (quoting *In re Woodson*, 839 F.2d 610, 620 (9th Cir.1988)); *see also Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377, 1381 (9th Cir.1986)). "[W]hen engaging in this analysis, bankruptcy courts need not conduct a mini trial on the merits, but need only canvass

the issues." *In re TBH19, LLC*, 2022 WL 16782946, at *6 (B.A.P.9th Cir. Nov. 8, 2022).

"The analysis under these factors is holistic; the Court must canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness…[I]t is not necessary to satisfy each of these factors provided that the factors as a whole favor approving the settlement." *Total Wealth Mgmt., Inc.*, 2019 WL 13179068, at *3 (internal citations and quotations omitted); *accord In re Open Med. Inst., Inc.*, 639 B.R. 169, 185 (B.A.P. 9th Cir. 2022) ("a settlement can satisfy the *A&C Properties* test even if the evidence supporting one or more of the four factors is relatively weak"). The Court should consider these factors "as a whole, and not individually in a vacuum, to ascertain whether the settlement is a good deal compared to litigation." *Open Med. Inst.*, 639 B.R. at 185. Further, when assessing a settlement, the Court need not decide issues of disputed fact or questions of law raised in the controversies sought to be settled. *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (B.A.P.9th Cir.1997).

Ultimately, "courts generally should give deference to a [receiver's] business judgment in deciding whether to settle a matter for the benefit of the estate." *In re Douglas J. Roger, M.D., Inc., APC*, 393 F.Supp.3d 940, 961 (C.D.Cal.2019) (cleaned up); *see also In re Lahijani*, 325 B.R. 282, 289 (B.A.P.9th Cir.2005). "Approving a proposed compromise is an exercise of discretion that should not be overturned except in cases of abuse leading to a result that is neither in the best interests of the estate nor fair and equitable for the creditors." *In re MGS Mktg.*, 111 B.R. 264, 266-67 (B.A.P.9th Cir.1990).

## <u>Argument</u>

## I.    The Settlement is fair, equitable and in the best interests of the Estate.

The Receiver respectfully submits that the Settlement easily satisfies all four *A&C Properties* factors. (Vives Decl. ¶26.)

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

### A.    Probability of success

The probability of success litigating the Claims is mixed. *See, e.g., Total Wealth Mgmt.*, 2019 WL 13179068, at *3 (court must determine whether settlement amount is commensurate to litigation risk). Assessing risk here is largely a function of evaluating the Breakout Parties' asserted defenses to the Receiver Claims, which, as discussed above, arise under UVTA.

### 1.    Receiver Claims

The Receiver's potential claims against the Breakout Parties arise under UVTA, the purpose of which is "to prevent debtors from placing, beyond the reach of creditors, property that should be made available to satisfy a debt by transferring that property to others." *RPB SA v. Hyla, Inc.*, 2021 WL 4980092, at *4 (C.D.Cal. June 24, 2021) (cleaned up). UVTA enables a creditor to bring an action to avoid a fraudulent transfer of an asset to the extent necessary to satisfy its claim. UVTA §3439.07(a)(1). A transfer is fraudulent—and thus avoidable—if the debtor transferred the asset either (1) with actual intent to hinder, delay, or defraud any of its creditors (i.e., "actual fraud"), or (2) without receiving reasonably equivalent value in exchange therefor when it had unreasonably small capital or was insolvent (i.e., "constructive fraud"). *Id.* §§3439.04(a)(1)-(2). A creditor may bring an action under UVTA against the "first transferee" of the asset, the person for whose benefit the transfer was made or any subsequent transferees. *Id.* §§3439.08(b)(1)(A)-(B).

Fraudulent transfer claims are among a receiver's most important tools to recover monies lost by Ponzi-scheme investors. *Donell v. Kowell*, 533 F.3d 762, 767 (9th Cir.2008). The Ponzi-scheme operator is the "debtor" and each investor is a "creditor," although the investors who profited from the scheme on a net basis— sometimes called "net winners"—are the recipients of the Ponzi-scheme operator's fraudulent transfers, and are thus liable under UVTA. *Id.* at 767-771. An equity receiver has standing to pursue fraudulent transfer claims "to redress injuries that [the receivership entity] suffered when its managers caused [it] to commit waste and

fraud." *Id.* at 777; *see also Winkler v. McCloskey*, 83 F.4th 720, 727 (9th Cir.2023) ("[A] receiver has standing to pursue a fraudulent transfer claim because the receiver is acting on behalf of the receivership entity, seeking to claw back transfers that the perpetrator of the scheme fraudulently made to the net winners.") A receiver may assert that a transfer was actually or constructively fraudulent. *Donell*, 533 F.3d at 770. But the debtor's admission that it operated a Ponzi scheme *conclusively* establishes fraudulent intent for a UVTA actual fraud claim (*In re Slatkin*, 525 F.3d 805, 814 (9th Cir.2008)), as well as financial distress for a UVTA constructive fraud claim (*Donell*, 533 F.3d at 770-71).

To determine whether a Ponzi-scheme investor is liable to the estate for receiving fraudulent transfers, courts apply the "netting rule," where "[a]mounts transferred by the Ponzi-scheme perpetrator to the investor are netted against the initial amounts invested by that individual. If the net is positive, the receiver has established liability[.]" *Donell*, 533 F.3d at 771. Generally, "innocent" investors may retain the payments they received up to the amount invested, but must disgorge the "profits" received from the Ponzi scheme as they "do not represent a return on legitimate investment activity." *Id.* at 772, 777.

## 2. Defenses

The Breakout Parties argued that most of the Receiver Claims were untimely under the UVTA limitations period. The Breakout Parties asserted, for example, UVTA's one-year discovery rule was triggered no later than January 14, 2022—the date the Receiver was appointed—because that is when she knew, or should have known, about the fraudulent nature of the Ponzi Scheme. The Receiver countered with cases holding that the one-year discovery rule for a UVTA claim does not begin to run until at least sometime after the receiver is appointed. *See, e.g., Donell v. Mojtahedian*, 976 F.Supp.2d 1183, 1188-89 (C.D.Cal. 2013). Moreover, because the Receiver stands only in the shoes of the Ponzi Scheme entities, she asserted that any potential prior knowledge on the part of the SEC or other creditors could not be

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

imputed to her. *See, e.g., Gill v. Blessing*, 2014 WL 12573667, at *3 (C.D.Cal. Oct. 6, 2014). In light of these conflicting arguments, the Receiver considered this issue a significant litigation risk factor. (Vives Decl. ¶27.)

The Breakout Parties also contested the Receiver's assertion that she could recover the Transfers 1inMM made to them indirectly because JJMT was a "mere conduit" rather than a transferee. While UVTA authorizes plaintiffs to recover an avoided transfer from the "first transferee" of the asset transferred, it does not define that term. The Ninth Circuit has observed that "'[t]ransferee' is not a self-defining term; it must mean something different from 'possessor' or 'holder' or 'agent,'" and that "treating anyone who touches the money as a 'transferee' could lead to absurd results…." *In re Walldesign, Inc.*, 872 F.3d 954, 962 (9th Cir.2017). The Ninth Circuit applies the "dominion test" to determine whether a party is a first transferee or a mere conduit. *In re Incomnet, Inc.*, 463 F.3d 1064, 1071 (9th Cir.2006). Under that test, the "minimum requirement [for] status as a 'transferee' is dominion over the money or other asset," i.e., "the *right* to put the money to one's own purposes." *Walldesign*, 872 F.3d at 962. Thus, JJMT would be deemed the first transferee if it had dominion over the money 1inMM transferred to it earmarked for the Breakout Parties on account of their investments; otherwise, JJMT was merely a conduit for 1inMM to transfer the money to the Breakout Parties, the first transferees.

The Breakout Parties asserted that JJMT had dominion over the Transfers, thereby making it the first transferee, as it had discretion to put the funds to other uses. The Receiver, however, countered that the express language from JJMT's contracts with its investors, plus JJMT's actual course of performance, showed that JJMT was contractually bound to disburse the Transfers immediately to the Breakout Parties and other investors. The Ninth Circuit has held that a recipient's contractual obligation to disburse money to another constitutes a lack of dominion. *See, e.g., Danning v. Miller (In re Bullion Reserve of N. Am.)*, 922 F.2d 544, 549 (9th Cir.1991); *Northpoint Commc'ns Grp., Inc.*, 2007 WL 7541001, at *4-5 (B.A.P.9th

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Cir. Nov. 7, 2007). The Receiver asserted that JJMT's role in receiving repayments of loans from 1inMM was akin to a bank, merely holding funds for the benefits of specific, named "depositors." *Bullion Reserve*, 922 F.2d at 549.

In light of the arguments above, the mere-conduit issue presented an important litigation risk for the Receiver, as the vast majority of the Transfers flowed from 1inMM through JJMT to the Breakout Parties. If the Court ruled that JJMT was the first transferee, then the UVTA would bar the Receiver from avoiding most of the Transfers to the Breakout Parties. Rather than risk such a ruling, the Receiver decided it was preferable to settle. (Vives Decl. ¶28.)

The Receiver believes that the Breakout Parties are liable under UVTA as net winners, but it is not guaranteed that litigation would have resulted in the Receiver avoiding and recovering *all* of the Transfers. *Cf. In re ISE Corp.*, 2012 WL 1377085, at *8 (Bankr.S.D.Cal. Apr. 13, 2012) ("the success of litigation also entails consideration of the risk of uncertainty and the desire for expediency"). The Court may have sustained some of the Breakout Parties' defenses, which would be an outcome worse than the Settlement. Rather than take that risk, the Receiver compromised. (Vives Decl. ¶29.) *See, e.g., SEC v. Cap. Cove Bancorp LLC*, 2016 WL 11752897, at *2 (C.D.Cal. Dec. 15, 2016) (approving settlement, reasoning it "provide[d] a recovery that is proportionate to the successful prosecution of this action when discounts are factored in for the risk, time, and expense of fully litigating the case, and maximize[d] the funds available for distribution to creditors"); *Open Med. Inst.*, 639 B.R. at 183-84 (same, where trustee averred the odds of success as a "coin flip" and "thought it was safer to settle").

For these reasons—and informed by Judge Schenkier's reactions to the arguments discussed above during the parties' mediations—the Receiver concluded that the Settlement appropriately takes into account the mixed probability of success on the merits. (Vives Decl. ¶30.)

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

**B.    Collection difficulties**

"Assessing the difficulties in collection is largely a bird-in-the-hand consideration that weighs the certainty of settlement against the potential uncertainty of collection even where a receiver secures a favorable judgment." *Total Wealth Mgmt.*, 2019 WL 13179068, at *3.

The Receiver understands that the Breakout Parties, collectively and/or individually, do not have assets that would be sufficient to satisfy a judgment avoiding all of the Transfers, let alone that *plus* an adverse judgment entered in favor of the Investors. (Vives Decl. ¶31.) So this factor weighs in favor of settling.

**C.    Complexity/expense**

It would be complex, expensive and time-consuming for the parties to litigate the Claims. (*Id.* ¶32.) This factor is particularly important in liquidations like here where the goal is "obtaining the best possible realization upon the available assets and without undue waste by needless or fruitless litigation." *In re Law*, 308 F.App'x 152, 153 (9th Cir.2009). For example, the Receiver's knowledge under UVTA's one-year discovery rule is a question of fact, which necessarily entails discovery and trial to resolve, along with the associated time and expense.

Given the evidence and defense arguments, the Receiver believes litigation against the Breakout Parties would be expensive and time-consuming, as it would likely require extensive discovery, retention of experts and numerous witnesses. A trial and appeal would likely take at least two years to complete and cost the Estate several hundred thousand dollars in fees and expenses. (Vives Decl. ¶33.) This factor, therefore, weighs heavily in favor of approving the Settlement. *See, e.g., TBH19*, 2022 WL 16782946, at *3 (complexity element weighed in favor of settlement where dispute would require extensive discovery, cost the estate hundreds of thousands of dollars and take years to complete).

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

### D. Creditors

"The opposition of the creditors of the estate to approval of a compromise may be considered by the court, but is not controlling and will not prevent approval of the compromise where it is evident that the litigation would be unsuccessful and costly…In short, creditors have a voice but not a veto." *In re Bondanelli*, 2020 WL 1304140, at *4 (B.A.P.9th Cir. Mar. 18, 2020). As discussed below, the Receiver is giving notice of this Motion to all known creditors of the Estate.

In sum, the Receiver believes the Settlement is fair, equitable and adequate under the circumstances to realize the value of the Estate's interest in the Transfers.[1] Litigation is, certainly, an alternative course, but "while the [Receiver] might do better in litigation, she is not likely to do so." *In re Tidwell*, 2018 WL 1162511, at *3 (Bankr.C.D.Cal. Mar. 1, 2018) (cleaned up).

## II. The Court should approve the Bar Order.

### A. The Court has the power to enter the Bar Order.

The Court's "extremely broad" power and "wide discretion" to determine the appropriate relief in an equity receivership includes the "inherent equitable authority to issue a variety of 'ancillary relief' measures in actions brought by the SEC to enforce the federal securities laws." *Hardy*, 803 F.2d at 1037; *SEC v. Hickey*, 322 F.3d 1123, 1131 (9th Cir.2003). "Ancillary relief" in SEC enforcement actions may include "injunctions to stay proceedings by nonparties against the receivership." *SEC v. Wencke*, 622 F.2d 1363, 1369 (9th Cir.1980)

---

[1] As noted above, the Breakout Parties are remitting the Nalpak Settlement Payment directly to Nalpak—that is, outside of this receivership. So the Court need not evaluate or approve that aspect of the Settlement. This arrangement will directly benefit the Estate because Nalpak has agreed to reduce its claim against the Estate on a dollar-for-dollar basis. (Ex. 1 ¶12.) The Settlement thus reduces the pool of allowed unsecured claims by $1,060,000 and increases the potential distribution to other creditors. That is yet another reason the Settlement is in the best interest of the Estate. *See, e.g., Open Med. Inst.*, 639 B.R. at 176 (reduction of pool of allowed unsecured claims resulting from claim subordination was reason to approve settlement).

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

"Courts use ancillary relief in the form of bar orders to secure settlements in receivership proceedings and…to bar claims against third parties settling with receiverships." *SEC v. Stanford Int'l Bank Ltd.*, 2017 WL 9989250, at *2 (N.D.Tex. Aug. 23, 2017), *aff'd sub nom. Zacarias v. Stanford Int'l Bank, Ltd.*, 945 F.3d 883 (5th Cir.2019) (bar orders may "foreclos[e] suit against third-party defendants with whom the receiver is also engaged in litigation"). Bar orders enable federal receivers "to curb investors' individual advantage-seeking in order to reach settlements for the aggregate benefit of investors under the court's supervision." *Zacarias*, 945 F.3d at 896. "The availability of such [bar] orders facilitates settlement, promotes equitable recoveries by creditors, and maximizes assets available to creditors in the aftermath of a Ponzi scheme." *SEC v. Aequitas Mgmt., LLC*, 2020 WL 7318305, at *1 (D.Or. Nov. 10, 2020); *see also Matter of Munford, Inc.*, 97 F.3d 449, 455 (11th Cir.1996) (recognizing "[s]everal justifications for entering bar orders in bankruptcy cases," including encouragement of pretrial settlements, avoidance of burdensome litigation costs to estate, and protection of settling defendants against co-defendants' efforts to shift losses).

Bar orders have become a common feature in settlements with receivers in cases arising from violation of the federal securities laws. *See, e.g., SEC v. DeYoung*, 850 F.3d 1172, 1183 n.5 (10th Cir.2017) (collecting cases); *SEC v. Nadel*, 2012 WL 12910648, at *1 (M.D.Fla. Feb. 10, 2012) (same). Federal courts generally require that bar orders be (1) fair, just, equitable and in the best interest of the estate, and (2) "necessary" to the proposed settlement. *See, e.g., DeYoung*, 850 F.3d at 1178, 1183; *Kaleta*, 530 F.App'x at 362-63; *Stanford*, 2017 WL 9989250, at *3; *SEC v. Alleca*, 2021 WL 4843987, at *12 (N.D.Ga. Sept. 9, 2021), *vacated on other grounds*, 2022 WL 16631325 (11th Cir. Nov. 2, 2022); *Commodity Futures Trading Comm'n v.*

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

*Bluprint LLC*, 2023 WL 5109447, at *3 (S.D.Fla. Aug. 2, 2023). The Bar Order here satisfies both elements.[2]

**B.    The Bar Order is fair, equitable and in the best interest of the Estate.**

A bar order typically meets this first element if it facilitates a higher settlement value and/or avoids protracted litigation. *See, e.g., DeYoung*, 850 F.3d at 1178; *Nadel*, 2012 WL 12910648, at *1-2; *Alleca*, 2021 WL 4843987, at *12-13; *SEC v. Adams*, 2021 WL 8016843, at *2 (S.D.Miss. Feb. 25, 2021). A bar order is in the best interest of the receivership estate if it resolves "complex claims" and "rights and obligations of parties" that "are so inextricably intertwined that resolution of the claims independently, as opposed to collectively, would be difficult and inefficient, would substantially increase costs to the [r]eceivership [e]state, and would likely reduce the ultimate recovery to the [investors]." *DeYoung*, 850 F.3d at 1178; *accord Alleca*, 2021 WL 4843987, at *13 (bar order was fair and equitable in light of amount defendants agreed to pay, as well as receiver's ability to avoid "the litigation risk…and the expenses associated with it"); *Bluprint*, 2023 WL 51099447, at *4-5 (bar order was fair and equitable where case was "extremely complex," involving "speculative" and "tenuous" claims that were interrelated with other potential claims, and it was "extremely likely" that litigation of claims would require substantial, lengthy discovery and greatly deplete estate resources). Finally, a bar order is fair to creditors if it permits enjoined claims to be channeled to the receivership's claim process. *See, e.g., Kaleta*, 530 F.App'x at 362-63; *Adams*, 2021 WL 8016843, at *2.

The Settlement meets these requirements. It avoids protracted litigation of the Claims, the outcome of which was uncertain due to the Breakout Parties' defenses.

---

[2] The Court has already approved bar orders in this case for similar reasons. [ECF #230 ¶4; ECF #273 ¶5]

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

By settling, the Estate avoided significant expenses and time associated with litigating. The Bar Order also drove a higher settlement value, as the Breakout Parties paid more to settle all Claims with a bar order than they would have paid to settle the Receiver Claims alone. (Vives Decl. ¶¶20-21.) *See, e.g., Nadel*, 2012 WL 12910648, at *1 (bar order warranted in part because it "facilitate[d] a higher settlement value and, therefore, a larger recovery for claimants tha[n] would otherwise be available without the bar order").

Moreover, the Bar Order helped resolve complex claims that would have been difficult—if not impossible—to resolve independently. (Vives Decl. ¶¶22, 35; Rammelt Decl. ¶8; Campbell Decl. ¶8.) Absent a settlement, the Receiver and the Investors would be left to litigate and, to the extent they obtained favorable judgments, compete for the Breakout Parties' assets, a result that would have "frustrat[ed] the receiver's pro rata distribution to investors—a core element of its draw upon equity." *Zacarias*, 945 F.3d at 900.

The Bar Order is also fair to those 1inMM net losing investors who would be enjoined from asserting claims against the Breakout Parties. The scope of the Bar Order is appropriately tailored because it does not enjoin "independent and non-derivative [claims] that do not involve assets claimed by the receivership." *Zacarias*, 945 F.3d at 897. Instead, the Bar Order expressly enjoins *only those claims that arise out of or relate to the Ponzi Scheme*, including the Breakout Parties' involvement with, and acts or omissions relating to, JJMT (as more fully described in the Settlement Agreement and the Bar Order). Such claims are derivative of and dependent upon the Receiver Claims. *See, e.g., Zacarias*, 945 F.3d at 897 (scope of bar order appropriate where enjoined claims were "derivative of and dependent on the receiver's claims, and their suits directly affect[ed] the receiver's assets"); *DeYoung*, 850 F.3d at 1178 (affirming bar order that limited scope of enjoined conduct to "any claims against [the settling defendants] arising out of, or in connection with, or relating to any [customer account associated with the securities

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

fraud]"); *Kaleta*, 530 F.App'x at 362-63 (scope of bar order appropriate where "investors continue[d] to retain all other putative claims against the [settling parties] that d[id] not arise from the allegedly fraudulent notes [underlying] this action"); *Stanford*, 2017 WL 9989250, at *2 (entering bar order permanently enjoining any other pending or future claims against settling defendants "arising from their relationship with [the Ponzi-scheme operator]").

The Bar Order is also fair because it channels any future claims against the Breakout Parties to the Estate's claims process, which safeguards creditors' right to be heard. *See, e.g., Zacarias*, 945 F.3d at 897 (bar order affirmed that channeled investors' claims to estate's claim process); *Kaleta*, 530 F.App'x at 362 (same).

### C.     The Bar Order is necessary to the Settlement.

A bar order is necessary if it is "essential," meaning the parties otherwise would not have resolved their dispute without it. *See, e.g., DeYoung*, 850 F.3d at 1183; *Alleca*, 2021 WL 4843987, at *12; *Kaleta*, 530 F.App'x at 362-63; *Bluprint*, 2023 WL 51099447, at *3. Here, the Bar Order is necessary because the Breakout Parties would not have settled with the Receiver without a bar order enjoining all future claims against them arising out of or relating to the Ponzi Scheme and/or JJMT. (Vives Decl. ¶36; Rammelt Decl. ¶9.); Indeed, entry of the Bar Order is a condition precedent under the Settlement Agreement. (Ex. 1 ¶2.) The Bar Order is, therefore, necessary. *See, e.g., Alleca*, 2021 WL 4843987, at *13 (bar order necessary where settling defendant "would not have agreed to settle [the dispute] without the bar order," and settlement agreement was contingent on entry of bar order); *Gordon v. Dadante*, 2008 WL 1805787, at *14 (N.D.Ohio Apr. 18, 2008) (similar), *aff'd*, 336 F.App'x 540 (6th Cir.2009); *Bluprint*, 2023 WL 51099447, at *3-4 (bar order necessary where settlement expressly stated it was "a necessary, integral, and essential" condition to agreement and that the parties' intent was to fully and finally resolve all claims relating to fraudulent scheme).

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

**III.    The Court should approve the Administrative Claim.**

The Investors' agreement that the Breakout Parties should pay the entire amount of the Receiver Settlement Payment into the Estate for the benefit of all creditors will result in the Estate having more cash for administration and creditor claims. (Vives Decl. ¶37.) In recognition of that, the Receiver agreed that L&E should hold an allowed $117,000 administrative claim in exchange for its contributions to the Estate ("Administrative Claim").[3] (*Id.*) After all, the Receiver and L&E—who functions like counsel to a creditors' committee in a bankruptcy case—are attempting to achieve the same goal of bringing as much money in the Estate as possible for the benefit of net losing investors. *Cf. Rodriguez v. Seabreeze Jetlev LLC*, 2022 WL 3327925, at *7 (N.D.Cal. Aug. 11, 2022) ("in bankruptcy cases, the debtor in possession and the committee of creditors share a duty to maximize the debtor's estate") (cleaned up).

The Settlement reflects these principles. In deciding whether to approve a settlement in a receivership, the Court is not constrained by a particular standard or set of rules but instead "has wide discretion to determine what relief is appropriate." *Cap. Cove Bancorp*, 2017 WL 11643414, at *2. So the Court could approve the Administrative Claim and associated disbursement using its discretion alone.

The Court may also do so because L&E helped create a common fund in the Estate. Under the "common fund" doctrine, "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir.1977); *accord Baten v. Mich. Logistics, Inc.*, 2023 WL 2440244, at *7 (C.D.Cal. Mar. 8,

---

[3] The Court has previously allowed L&E administrative claims for similar reasons. [ECF #230 ¶3; ECF #273 ¶6]

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

2023). The common-fund doctrine "is designed to spread litigation costs proportionately among all the beneficiaries so that the active beneficiary does not bear the entire burden alone and the 'stranger' beneficiaries do not receive benefits at no cost to themselves." *Vincent*, 557 F.2d at 769.

The Ninth Circuit recently held that where a lawyer for a creditor of an entity in receivership "undeniably caused the creation, discovery, increase, or preservation of a common fund that benefited investors," the receivership court must award the lawyer a reasonable fee under the common fund doctrine. *SEC v. Pritzker Levine LLP*, 2022 WL 671020, at *1 (9th Cir. Mar. 7, 2022). In *Pritzker*, the law firm Pritzker Levine LLP pursued certain litigation claims on behalf of a creditor that resulted in the identification of millions in assets that became part of a state court receivership. *Id.* Later, the SEC commenced a securities fraud action against the same defendants and the court appointed a federal receiver, who obtained the assets of the state receivership, including the funds realized from Pritzker's litigation efforts. *Id.* The Ninth Circuit held that because Pritzker helped create a fund that became part of the receivership estate, it should receive a reasonable fee award from the estate under the common fund doctrine, which "should be treated as an allowed administrative claim" paid "from the fund itself, as a prior charge before the beneficiaries receive it." *Id.* at *1-2.

Likewise, L&E played an essential role in increasing the amount of the Receiver Settlement Payment, all of which is coming into the Estate for eventual distribution to creditors. The three-way nature of the settlement negotiations necessitated this. On the one hand, the Breakout Parties sought finality with a settlement, which they really could only accomplish through a deal with the Receiver that would include a bar order. (Vives Decl. ¶24; Rammelt Decl. ¶10.) On the other hand, as the Receiver was unwilling to settle over the objections of the Investors, any settlement had to resolve their claims too. (Vives Decl. ¶24.)

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Case No. 2:21-cv-02927-CAS-PD
MOTION FOR ORDER APPROVING SETTLEMENT
WITH BREAKOUT PARTIES AND FOR RELATED RELIEF

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

The Investors' agreement that the Breakout Parties should make the Receiver Settlement Payment to the Estate for the benefit of all creditors was the lynchpin. (*Id.* ¶39.) It "undeniably caused the…increase" of the Estate's cash assets available for distribution to creditors beyond what the Receiver alone otherwise could have recovered. (*Id.*) *Pritzker*, 2022 WL 671020, at *1. L&E, moreover, devoted a significant amount of work to this dispute (Loftus Decl. ¶¶14-23), which was a cause-in-fact benefitting the common fund in the Estate. *Pritzker*, 2022 WL 671020, at *1 ("the common fund doctrine requires that the work of the attorney seeking an extra fee be *a* cause-in-fact of any claimed benefit to the fund, but not the *only* cause-in-fact"). This is so even if one might speculate that the Receiver might have recovered the same amount on her own. *Id.* ("The district court's speculation that the funds…might still have been recovered by the federal receiver in the absence of [Pritzker's efforts]…does not demonstrate that Pritzker's efforts were not a 'cause-in-fact' of the creation, increase, or preservation of a common fund."). Having created a common fund in the Estate, the Receiver's agreement to pay L&E approximately 14% of the Receiver Settlement Payment is reasonable and appropriate. *See, e.g., Jenson v. First Tr. Corp.*, 2008 WL 11338161, at *10-11 (C.D.Cal. June 9, 2008) (approving 33% fee award from common fund); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D.Cal. June 10, 2005) (same); *In re Gen. Instrument Sec. Litig.*, 209 F.Supp.2d 423,431,434 (E.D.Pa. 2001) (same).

"When all is said and done, the court can slice the pieces of this pie only so large. [Defendants] are to blame for the fact that the slices are so small. Had the professionals not persisted in their efforts, however, the pie would have been even smaller." *Gaskill v. Gordon*, 942 F.Supp.382, 388 (N.D.Ill. 1996) (approving 38% fee award from common fund), *aff'd*, 160 F.3d 361 (7th Cir.1998). The same is true here. Finding a way to compensate L&E for its efforts in augmenting the Estate was a hard-fought material term of the overall Settlement. The Receiver agreed to the Administrative Claim amount in the exercise of her business judgment, which she

felt was necessary to achieve a global settlement. (Vives Decl. ¶40.) That decision is entitled to deference. *See, e.g., Roger*, 393 F.Supp.3d at 961. For these reasons, the Receiver asks the Court to approve the Administrative Claim and associated disbursement. (Vives Decl. ¶41.)

## Notice to Creditors

"Creditors are entitled to 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 518 (N.D.Cal. 2008) (quoting *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950)). "[D]ue process…is not a technical conception with a fixed content unrelated to time, place and circumstances[.]" *Grimm v. City of Portland*, 971 F.3d 1060, 1065 (9th Cir.2020). Instead, "due process is flexible and calls for such procedural protections as the particular situation demands." *Muñoz v. United States Dep't of State*, 50 F.4th 906, 922 (9th Cir.2022). The Court may "exercise[] significant control over the time and manner" of any proceeding to hear a creditor's objections. *Liberte Cap. Grp.*, 462 F.3d at 552.

The Receiver will give notice of the Motion by: (a) CM/ECF to parties/interested parties; (b) email to all known creditors of the Estate (or, if represented, their counsel) with a link to this Motion and supporting exhibits; and (c) posting it on the receivership website. These communications will include instructions on how to advise the Receiver of any objections to the Motion by no later than seven days before the hearing. The Receiver will thereafter file a status report. (Vives Decl. ¶42.)

The Court should deem this notice sufficient under the circumstances. *See, e.g., Fed. Trade Comm'n v. Cardiff*, 2020 WL 9938072, at *4 (C.D.Cal. Mar. 10, 2020) (receiver's notice of settlement satisfied due process where receiver posted motion to its website and served on all parties, known creditors and interested parties); *Adams*, 2021 WL 8016843, at *2 (same, where receiver provided mail

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

notice to interested parties, publicized settlement on receivership website and gave interested parties instructions how to submit comment or objection to settlement).

**WHEREFORE**, the Receiver respectfully requests the Court enter an order: (a) granting the Motion; (b) finding notice of the Motion is sufficient under the circumstances and satisfies due process, and waiving any further notice otherwise required by Local Rule 66-7; (c) approving the terms of the Settlement memorialized in the Settlement Agreement as fair and equitable, including without limitation, the Bar Order and the Administrative Claim; (d) authorizing the Receiver to take such further actions as may be necessary to consummate the transactions in the Settlement Agreement; and (e) granting such further relief as the Court deems necessary and appropriate.

Dated: November 13, 2023          Respectfully submitted,

                              **KATTEN MUCHIN ROSENMAN LLP**

                              By:    /s/*Terence G. Banich*
                                      Terence G. Banich

                              *Attorneys for the Receiver*
                              Michele Vives

1

## __Certificate of Compliance with L.R. 11-6.2__

The undersigned, counsel of record for the Receiver, Michele Vives, certifies that this brief contains 6,990 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 13, 2023          Respectfully submitted,

_/s/ Terence G. Banich_
Terence G. Banich
Attorney for the Receiver

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

## PROOF OF SERVICE

**STATE OF ILLINOIS, COUNTY OF COOK**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Cook, State of Illinois. My business address is 525 W. Monroe St., Chicago, Illinois 60661. On November 13, 2023, I served the following document(s) described as:

**MOTION OF RECEIVER MICHELE VIVES FOR ORDER APPROVING SETTLEMENT WITH BREAKOUT SPE LLC, DUNCAN DAVIS AND BRANDON LABRUM, AND FOR RELATED RELIEF**

as follows:

**[ ]    BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Katten Muchin Rosenman LLP practice for collecting and processing correspondence for mailing.  On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**[X]    BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused the document(s) to be sent from e-mail address terence.banich@katten.com to the persons at the e-mail address(es) listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

Monte Mann – mmann@atllp.com
Andrew D. Campbell – acampbell@atllp.com
David A. Rammelt – drammelt@beneschlaw.com
Alexander Loftus – alex@loftusandeisenberg.com

**[ ]    BY OVERNIGHT MAIL (FedEx):**  I enclosed said document(s) in an envelope or package provided by FEDEX and addressed to the persons at the addresses listed above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FEDEX or delivered such document(s) to a courier or driver authorized by FEDEX to receive documents.

**[X]    E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct. Executed on November 13, 2023, at Winnetka, Illinois.

*/s/Terence G. Banich*
Terence G. Banich

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200