EXECUTION COPY

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

THIS SETTLEMENT AGREEMENT AND MUTUAL RELEASE (this "Agreement") is made and entered into as of this 7th day of November, 2023 (the "Effective Date"), between and among:

(a) Michele Vives, not individually, but solely as the receiver (the "Receiver") as more particularly described in the second recital of this Agreement; and

(b) Nalpak I LP, Nalpak II LP, Nalpak Enterprises LLC and Peter Xilas (collectively, the "Nalpak Investors");

(c) The persons and entities listed on Schedule 1 represented by the law firm Loftus & Eisenberg, Ltd. (collectively, the "L&E Investors," and collectively with the Nalpak Investors, the "Investors");

on the one hand, and

(d) Breakout SPE LLC, Duncan Davis ("Davis") and Brandon Labrum ("Labrum") (collectively, the "Breakout Parties"),

on the other hand. The Receiver, the Nalpak Investors, the L&E Investors and the Breakout Parties are referred to collectively herein as the "Parties."

## Recitals

**WHEREAS**, on April 6, 2021, the Securities and Exchange Commission commenced the civil action styled *Securities & Exchange Commission v. Horwitz*, No. 2:21-cv-02927-CAS(PDx) (the "Action"), in the United States District Court for the Central District of California (the "Court") against Zachary J. Horwitz and 1inMM Capital, LLC ("1inMM," and together with Horwitz, the "1inMM Defendants"), alleging that they conducted an offering fraud and Ponzi scheme in violation of federal securities laws (the "1inMM Ponzi Scheme");

**WHEREAS**, on January 14, 2022, the Court entered the *Order on Appointment of Permanent Receiver* (the "Appointment Order") in the Action that, among other things, appointed the Receiver to be the federal equity receiver of 1inMM and its subsidiaries and affiliates, as well as over the assets that are attributable to funds derived from investors or clients of the 1inMM Defendants or were fraudulently transferred by the 1inMM Defendants (the "Receivership Estate");

**WHEREAS**, the Appointment Order authorizes the Receiver to, among other things, investigate and prosecute claims and causes of action against persons and entities who may be liable to the Receivership Estate;

**WHEREAS**, following a diligent investigation, including the review and analysis of the books and records of the 1inMM Defendants as well as documents and information provided by the Breakout Parties, the Receiver has identified transfers from the 1inMM Defendants to or for the benefit of the Breakout Parties totaling $1,335,522 (the "Transfers");

**WHEREAS**, the Receiver contends that the Transfers are subject to avoidance and recovery under the Uniform Voidable Transactions Act as enacted in California (California Civil Code §§ 3439-3439.14) ("UVTA"), and that, consequently, she has, on behalf of the Receivership Estate, causes of action against the Breakout Parties under the UVTA to avoid and recover the Transfers or their value (collectively, irrespective of how styled and inclusive of any and all claims that could have been but were not asserted against the Breakout Parties by the Receiver, the "Receiver Claims");

**WHEREAS**, the Breakout Parties have asserted various defenses to the Receiver Claims and deny that they are liable to the Receivership Estate on account of the Receiver Claims;

**WHEREAS**, the Nalpak Investors have commenced a civil action against the Breakout Parties, 1inMM and others, styled *Nalpak I LP, et al. v. Breakout SPE LLC, et al.*, No. 2020 L 004620, pending in the Circuit Court of Cook County, Illinois (the "Nalpak Litigation"), alleging that the Breakout Parties are liable to them in an amount in excess of $10,000,000 (ten million dollars) in connection with the 1inMM Ponzi Scheme (collectively, and irrespective of how styled, the "Nalpak Claims");

**WHEREAS**, the L&E Investors have threatened claims for aiding and abetting and violation of the Illinois Securities Law against the Breakout Parties claiming damages in excess of $35,000,000 (collectively, and irrespective of how styled, the "L&E Claims," and collectively with the Nalpak Claims and the Receiver Claims, the "Claims"), and entered into tolling agreements to avoid further litigation while the parties participated in mediation paid for in part by the L&E Investors;

**WHEREAS**, the Claims and the amounts that the Receiver, Nalpak and the L&E Investors could seek on account thereof all arise out of and relate to the 1inMM Ponzi Scheme;

**WHEREAS**, the Breakout Parties have asserted various defenses to the Nalpak Claims and deny that they are liable to the Nalpak Investors on account of the Nalpak Claims;

**WHEREAS**, the Breakout Parties have asserted various defenses to the L&E Claims and deny that they are liable to the L&E Investors on account of the L&E Claims; and

**WHEREAS**, the Receiver and the Investors, wishing to avoid the expense, delay, and uncertainty of litigation of the Claims, and the Breakout Parties, wishing to avoid the expense, delay and uncertainty of litigation of the Claims and other claims arising out of the 1inMM Ponzi Scheme or their alleged involvement with JJMT Capital, LLC that might be brought by other persons, have agreed to settle and resolve all claims and disputes between them arising out of or relating to the 1inMM Ponzi Scheme, the Transfers, the Receiver Claims, the Nalpak Claims, the Nalpak Litigation and the L&E Claims (collectively, the "Disputes") on the terms and conditions set forth in this Agreement.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and adequacy of which the Parties acknowledge, the Parties agree as follows:

### Agreement

1.  **Recitals Incorporated.** All of the foregoing recitals are true and correct and are incorporated herein as part of the Agreement for all purposes.

2.  **Approval Order.** The validity of this Agreement, and the Parties' obligations hereunder, are subject to the condition precedent that the Court enters an order approving the material terms of the settlement documented in this Agreement, including the Bar Order described in paragraph 4 hereof (the "Approval Order," and the date that the Court enters the Approval Order on the docket of the Action, the "Approval Date"). The Breakout Parties and the Investors will support the entry of the Approval Order and will, upon the Receiver's reasonable request, submit declarations in support of, and attend any hearing on, the Approval Motion. If, however, the Court declines to approve the settlement documented by this Agreement or declines to enter a Bar Order, then this Agreement (including the releases contained in paragraphs 6-9 hereof) will be void, and the Parties will retain all of their respective rights, claims and defenses as if this Agreement never existed.

3.  **Settlement Payments.** In exchange for the Bar Order and the releases contained in paragraphs 6 and 8 of this Agreement, the Breakout Parties agree to pay the sum of $1,060,000.00 (one million sixty thousand dollars and zero cents) to the Nalpak Investors (the "Nalpak Settlement Payment")

**EXECUTION COPY**

and the sum of $840,000 (eight hundred forty thousand dollars and zero cents) to the Receivership Estate (the "<u>Receiver Settlement Payment</u>," and together with the Nalpak Settlement Payment, the "<u>Settlement Payments</u>"). The Breakout Parties shall remit the Settlement Payments in immediately available United States Dollars by wire transfer per instructions that the Receiver and the Nalpak Investors will provide. The Breakout Parties may remit the Settlement Payments in installments, as set forth in subparagraphs (a)-(d):

       (a)    No later than the 90th day after the Approval Date, the Breakout Parties must pay (i) a minimum of $265,000 to the Nalpak Investors and (ii) a minimum of $210,000 to the Receivership Estate.

       (b)    No later than the 360th day after the Approval Date, the Breakout Parties must pay (i) a minimum of $265,000 to the Nalpak Investors and (ii) a minimum of $210,000 to the Receivership Estate.

       (c)    No later than the 540th day after the Approval Date, the Breakout Parties must pay (i) a minimum of $265,000 to the Nalpak Investors and (ii) a minimum of $210,000 to the Receivership Estate.

       (d)    No later than the 630th day after the Approval Date, the Breakout Parties must pay (i) the remaining balance of the Nalpak Settlement Payment to the Nalpak Investors and (ii) the remaining balance of the Receiver Settlement Payment to the Receivership Estate (on such day, the "<u>Final Payment Date</u>").

       (e)    Notwithstanding paragraphs 3(a)-(d), the Breakout Parties may remit the entire amount of the Settlement Payments at any time prior to the 630th day after the Approval Date, in which case the date when they do so shall be the Final Payment Date.

       4.    **<u>Bar Order.</u>** The Receiver agrees to move the Court, as part of the relief requested in her motion to enter the Approval Order (the "<u>Approval Motion</u>"), to permanently enjoin and bar all persons and non-governmental units from commencing a civil action or other proceeding against the Breakout Parties in any jurisdiction alleging any claim, cause of action or request for relief arising out of or relating to the 1inMM Ponzi Scheme (a "<u>Bar Order</u>") in the form of words appearing on, or substantially similar to, <u>Schedule 2</u> hereto.

       5.    **<u>Administrative Expense.</u>**

       (a)    The Receiver agrees to move the Court, as part of the relief requested in the Approval Motion, to order that Loftus & Eisenberg, Ltd., counsel for the L&E Investors, holds an allowed administrative expense claim against the Receivership Estate in the amount of $117,000 for reasonable attorney's fees incurred in the pursuit of the L&E Claims (the "<u>Administrative Expense</u>"), which the Receiver deems to have provided benefit to the Receivership Estate, and to authorize the Receiver to pay the same.

       (b)    The Receiver will pay the Administrative Expense to Loftus & Eisenberg, Ltd. as follows: (i) $27,300 within 10 days of receiving the payment specified in paragraph 3(a)(ii); (ii) $27,300 within 10 days of receiving the payment specified in paragraph 3(b)(ii); (iii) $27,300 within 10 days of receiving the payment specified in paragraph 3(c)(ii); and (iv) $35,100 within 10 days of receiving the payment specified in paragraph 3(d)(ii). But if paragraph 3(e) applies, then the Receiver will pay the remaining balance of the Administrative Expense to Loftus & Eisenberg, Ltd. within 10 days the Final Payment Date.

       (c)    The payment to Loftus & Eisenberg, Ltd. on account of the Administrative Expense is not a distribution to the L&E Investors, which shall occur only pursuant to an order of the Court approving a claims reconciliation and allowance process.

**EXECUTION COPY**

   (d)  The Breakout Parties have no obligation to pay the Administrative Expense.

  6.  **Release of the Breakout Parties by Receiver; Covenant Not to Sue.** The Receiver, on behalf of herself, the Receivership Estate and their respective agents, employees, officers, partners, managers, parents, subsidiaries, affiliates, insurers and attorneys (collectively, the "Receiver Releasing Parties"), hereby forever releases, remises and discharges the Breakout Parties as well as their respective heirs, successors, assigns, agents, employees, officers, shareholders, managers, parents, subsidiaries, affiliates, insurers and attorneys (collectively, the "Breakout Released Parties"), from any and all claims, counterclaims, actions, causes of action, lawsuits, proceedings, adjustments, offsets, contracts, obligations, liabilities, controversies, costs, expenses, attorney's fees and losses whatsoever, whether known or unknown, disclosed or concealed, asserted or unasserted, liquidated or unliquidated, contingent or absolute, accrued or unaccrued, matured or unmatured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise, whether in law, in admiralty, in bankruptcy, or in equity, and whether based on any federal law, state law, common law right of action or otherwise, from the beginning of time to the Effective Date of this Agreement arising out of or relating to the Disputes (collectively, the "Receiver Released Claims"), but specifically excluding any claims or causes of action arising out of or related to enforcement of this Agreement. The Receiver Releasing Parties hereby covenant not to sue any of the Breakout Released Parties on account of any Receiver Released Claim.

  7.  **Release of the Receivership Estate by the Breakout Parties; Covenant Not to Sue.** The Breakout Parties, on behalf of themselves and their respective heirs, successors, assigns, agents, employees, officers, partners, managers, parents, subsidiaries, affiliates, insurers and attorneys (collectively, the "Breakout Releasing Parties"), hereby forever release, remise and discharge the Receiver, the Receivership Estate as well as their agents, employees, officers, shareholders, managers, parents, subsidiaries, affiliates, insurers and attorneys (collectively, the "Receiver Released Parties"), from any and all claims, counterclaims, actions, causes of action, lawsuits, proceedings, adjustments, offsets, contracts, obligations, liabilities, controversies, costs, expenses, attorney's fees and losses whatsoever, whether known or unknown, disclosed or concealed, asserted or unasserted, liquidated or unliquidated, contingent or absolute, accrued or unaccrued, matured or unmatured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise, whether in law, in admiralty, in bankruptcy, or in equity, and whether based on any federal law, state law, common law right of action or otherwise, from the beginning of time to the Effective Date of this Agreement arising out of or relating to the Disputes (collectively, the "Breakout Released Claims"), but specifically excluding any claims or causes of action arising out of or related to enforcement of this Agreement. The Breakout Releasing Parties hereby covenant not to sue any of the Receiver Released Parties on account of any Breakout Released Claim.

  8.  **Release of the Breakout Parties by the Investors; Covenant Not to Sue.** The Investors, on behalf of themselves and their respective heirs, successors, assigns, agents, employees, officers, partners, managers, parents, subsidiaries, affiliates, insurers and attorneys (collectively, the "Investor Releasing Parties"), hereby forever release, remise and discharge the Breakout Released Parties from any and all claims, counterclaims, actions, causes of action, lawsuits, proceedings, adjustments, offsets, contracts, obligations, liabilities, controversies, costs, expenses, attorney's fees and losses whatsoever, whether known or unknown, disclosed or concealed, asserted or unasserted, liquidated or unliquidated, contingent or absolute, accrued or unaccrued, matured or unmatured, insured or uninsured, joint or several, determined or undetermined, determinable or otherwise, whether in law, in admiralty, in bankruptcy, or in equity, and whether based on any federal law, state law, common law right of action or otherwise, from the beginning of time to the Effective Date of this Agreement arising out of or relating to the Disputes (collectively, the "Investor Released Claims"), but specifically excluding any claims or causes of action arising out of or related to enforcement of this Agreement. The Investor Releasing Parties hereby covenant not to sue any of the Breakout Released Parties on account of any Investor Released Claim.

  9.  **Release of the Investors by the Breakout Parties; Covenant Not to Sue.** The Breakout Releasing Parties hereby forever release, remise and discharge the Investors as well as their respective heirs, successors, assigns, agents, employees, officers, partners, managers, parents, subsidiaries, affiliates,

insurers and attorneys (collectively, the "Investor Released Parties") from the Breakout Released Claims, but specifically excluding any claims or causes of action arising out of or related to enforcement of this Agreement. The Breakout Releasing Parties hereby covenant not to sue any of the Investor Released Parties on account of any Breakout Released Claim.

10. **Section 1542 Waiver.** The Parties acknowledge that they have read and understand section 1542 of the California Civil Code (Cal. Civ. Code § 1542), which reads as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Parties hereby expressly waive and relinquish all rights and benefits under California Civil Code section 1542 with respect to the Breakout Released Claims, the Receiver Released Claims and the Investor Released Claims.

11. **Effectiveness of Releases; Exclusions.**

   (a)   The releases in paragraphs 7 and 9 of this Agreement become effective on the Approval Date. The releases in paragraphs 6 and 8 of this Agreement become effective on the Final Payment Date.

   (b)   The Receiver Released Claims exclude any claims or causes of action that the Receivership Estate may have against any investor in or lender to 1inMM (through Breakout SPE LLC or otherwise) other than Brandon Labrum or Duncan Davis (collectively, "Other 1inMM Investors").

12. **Reduction of Claim.** The Nalpak Investors agree that the Nalpak Settlement Payment reduces, on a dollar-for-dollar basis, any claim they may file against the Receivership Estate in the Action (a "Proof of Claim"). The Nalpak Investors acknowledge and agree that the Receiver may disallow their Proof of Claim to the extent that it does not credit the amount of the Nalpak Settlement Payment against their claimed net losses resulting from the 1inMM Ponzi Scheme.

13. **Waiver of Claim and Distribution.** The Breakout Parties hereby waive any right to file, and covenant not to file, a Proof of Claim. If, notwithstanding the immediately previous sentence, any of the Breakout Parties files a Proof of Claim in the Action, then the Receiver may apply to or move the Court to enter an order disallowing that Proof of Claim, and the Breakout Parties hereby waive any notice or opportunity to be heard on any such application or motion. The Breakout Parties acknowledge and agree that none of them is entitled to any distributions whatsoever from the Receivership Estate.

14. **Dismissal of the Nalpak Litigation.** No later than ten calendar days after the Approval Date, the Nalpak Investors shall cause the Nalpak Litigation to be dismissed without prejudice. No later than ten calendar days after the Final Payment Date, the Nalpak Investors shall cause the Nalpak Litigation to be dismissed with prejudice, with each party to this Agreement who is also a party thereto to pay his, her or its own attorney's fees, costs and expenses associated therewith.

15. **Representations and Warranties.** The Parties warrant and represent to each other that: (a) each Party shall act in good faith seeking to accomplish the purpose of this Agreement; (b) each Party has not transferred, conveyed, released, pledged, assigned or made any other disposition of the claimed rights, interests, demands, actions or causes of action, obligations, or any other matter covered by this Agreement; (c) each Party has not relied upon any promises, agreements, representations, statements or warranties in entering into this Agreement, except those that are expressly set forth herein; (d) each

signatory to this Agreement warrants that he, she or it has the authority to execute this Agreement and to bind the persons or entities on behalf of which he, she or it signs, including, without limitation, each of the Breakout Releasing Parties, the Receiver Releasing Parties and the Investor Releasing Parties specified in paragraphs 6-9; and (e) EACH PARTY ACKNOWLEDGES THAT HE, SHE OR IT HAS READ THIS AGREEMENT IN ITS ENTIRETY AND THAT HE, SHE OR IT UNDERSTANDS AND APPRECIATES ITS CONTENTS AND SIGNIFICANCE AND HEREBY EXECUTES THE SAME AND MAKES THE RELEASE PROVIDED FOR IN THIS AGREEMENT VOLUNTARILY AND OF HIS, HER OR ITS OWN FREE WILL, HAVING FIRST HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL.

16. **Approval by L&E Investors.** Loftus & Eisenberg, Ltd., as counsel for the L&E Investors, represents and warrants that all L&E Investors have approved the terms and conditions of this Agreement and have authorized a lawyer with Loftus & Eisenberg, Ltd. to execute and deliver this Agreement on their behalf. As evidence of this representation and warranty, Loftus & Eisenberg, Ltd. has provided a declaration, attached hereto as Schedule 3.

17. **Enforcement of this Agreement.** If any Party files a motion or pleading against another Party to enforce the terms of this Agreement, in addition to any other relief to which the successful or prevailing party or parties (the "Prevailing Party") is entitled, the Prevailing Party is entitled to recover, and the non-Prevailing Party shall pay, all reasonable attorney's fees of the Prevailing Party, court costs, and expenses (even if not recoverable by law as court costs) incurred in that action, and all appellate proceedings related thereto. The Parties also agree that any dispute arising out of or related to this Agreement shall be decided only by the Court by application or motion filed in the Action. In connection with any action or proceeding to enforce, interpret or construe any provision of this Agreement, the Breakout Parties and the Investors hereby irrevocably and unconditionally (a) consent to the exercise of personal jurisdiction over her, him or it by the Court, and (b) waive any defense of improper venue or forum non conveniens. Furthermore, the Parties agree that the Court shall retain exclusive jurisdiction over all matters relating to this Agreement.

18. **Binding on Successors and Assigns.** This Agreement is and shall be binding upon: (a) the officers, directors, successors, heirs and assigns of each Party; (b) each past, present, direct or indirect parent, subsidiary, division or affiliated entity of each Party; and (c) each past or present agent, representative or shareholder of each Party. Any person executing this Agreement on behalf of a Party represents and warrants that he or she is duly authorized to enter into this Agreement on behalf of said Party.

19. **Fair Construction.** The Parties acknowledge that this Agreement is the manifestation of direct negotiation and represents the mutual and voluntary consent and understanding of each Party. As such, this Agreement shall be deemed to be the joint work product of the Parties without regard to the identity of the draftsperson, and any rule of construction that a document shall be interpreted or construed against the drafting Party shall not be applicable.

20. **No Third-Party Beneficiaries.** Nothing in this Agreement benefits, or is intended to benefit, or confers the power to enforce or claim any benefit under this Agreement, on any third party, including without limitation, the Other 1inMM Investors.

21. **Severability.** If any provision of this Agreement is determined to be invalid or unenforceable, such invalidity or unenforceability shall not affect the remaining provisions of this Agreement.

22. **Fees and Costs.** Each of the Parties will bear her, his or its own costs and attorney's fees incurred in connection with the negotiation and delivery of this Agreement.

23. **Entire Agreement.** This Agreement constitutes the entire agreement and understanding between the Parties with regard to all matters addressed herein. This Agreement supersedes and replaces

all prior commitments, negotiations, and all agreements proposed or otherwise, if any, whether written or oral, concerning the subject matters contained in this Agreement. The Parties expressly acknowledge that they have not relied on any prior or contemporaneous oral or written representations or statements by another Party in connection with the subject matter of this Agreement, except as expressly set forth herein.

24. **No Collateral Representations.** The consideration provided herein consists of the entire consideration to which the Parties are entitled. The Parties acknowledge that none of the Parties, their agents, attorneys, insurers, representatives, successors, assigns, heirs, beneficiaries, executors, administrators, parents, subsidiaries, affiliates, current and former directors, officers, employees and representatives (as appropriate for each Party) has made any promise, representation or warranty, expressed or implied, not expressly set forth in this Agreement, which has induced any Party to execute this Agreement.

25. **Exculpation**. The Receiver is executing this Agreement solely in her representative capacity as the Receiver appointed by the Court, and the Receiver's liability hereunder shall be limited to the assets of the Receivership Estate. Neither the Breakout Parties nor any Nalpak Investor shall have or assert any claims against the Receiver in her personal capacity.

26. **Further Assurances**. The Parties will cooperate fully and execute all supplementary documents and take all additional actions that may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement.

27. **Modification.** This Agreement may only be modified by a writing signed by all Parties.

28. **Governing Law.** This Agreement and the transactions contemplated herein shall be governed by and construed in accordance with the laws of the State of California, without reference to the conflict-of-laws rules thereof.

29. **Time.** Time is of the essence as to all dates and time periods specified in this Agreement. All time periods in this Agreement shall be computed pursuant to Federal Rule of Civil Procedure 6(a).

30. **Tax Implications.** Each Party shall be responsible for seeking her, his, or its own individual tax advice and shall bear whatever tax liability she, he or it incurs in connection with the transactions contemplated by this Agreement. The Parties make no representations to each other about what tax consequences, if any, result from the transactions contemplated by this Agreement.

31. **Waiver.** No waiver of any right, obligation, or duty imposed by or under this Agreement shall be effective unless such waiver is reflected in a writing duly executed by all parties hereto. No waiver shall be effective based on conduct or oral statements. Waiver by any Party of any breach of this Agreement shall not be a waiver by such Party of any other breach of this Agreement.

32. **Counterparts.** This Agreement may be executed in two (2) or more counterparts, each of which shall be deemed an original but all of which together shall constitute one in the same instrument. Facsimile or PDF signatures shall be deemed to have the same effect as original signatures.

33. **Compromise.** The Parties agree and acknowledge that this Agreement is the result of a compromise and a decision to settle all disputes between them relating to the Disputes. The Parties expressly agree that this Agreement is a compromise of disputed claims for the purposes of avoiding the expense, delay, uncertainty and burden of litigation. This Agreement is inadmissible in any proceeding for any purpose other than to enforce its terms. The Parties further agree that executing this Agreement and making the Settlement Payment is not, and shall never be construed as, an admission by the Breakout Parties of any fact, liability, wrongdoing or violation of any law, statute or regulation.

34. **Notices.** Any and all notices under this Agreement shall be in writing, and shall be transmitted to the Parties by electronic mail or express overnight delivery service as follows:

| If to the Receiver:<br><br>KATTEN MUCHIN ROSENMAN LLP<br>Terence G. Banich<br>525 W. Monroe St.<br>Chicago, IL 60661<br>terence.banich@katten.com<br><br>with a copy to:<br><br>Michele Vives, Receiver<br>1620 Fifth Ave., Ste. 400<br>San Diego, CA 92101<br>mvives@douglaswilson.com | If to the Breakout Parties:<br><br>BENESCH FRIEDLANDER COPLAN & ARONOFF LLP<br>David A. Rammelt<br>71 S. Wacker Dr., Ste. 1600<br>Chicago, IL 60606<br>drammelt@beneschlaw.com |
|---|---|
| If to the Nalpak Investors:<br><br>ARMSTRONG TEASDALE LLP<br>Monte Mann<br>Andrew D. Campbell<br>100 North Riverside Plaza<br>Chicago, IL 60606<br>mmann@atllp.com<br>acampbell@atllp.com | If to the L&E Investors:<br><br>LOFTUS & EISENBERG, LTD.<br>Alexander N. Loftus<br>David A. Eisenberg<br>161 N. Clark St., Ste. 1600<br>Chicago, IL 60601<br>alex@loftusandeisenberg.com<br>david@loftusandeisenberg.com |

[Remainder of this page left blank]

**EXECUTION COPY**

IN WITNESS WHEREOF, the Parties hereby execute this Agreement as of the Effective Date.

| | |
|---|---|
| **MICHELE VIVES, Receiver, on behalf of herself and the Receiver Releasing Parties**<br><br>_/s/ Michele A. Vives_____ | **NALPAK ENTERPRISES LLC, on behalf of itself and its respective Investor Releasing Parties**<br><br>By: _____<br>    Marty Kaplan, as Vice President of Nalpak, Inc., the Manager of Nalpak Enterprises LLC |
| **NALPAK I LP, on behalf of itself and its respective Investor Releasing Parties**<br><br>By: _____<br>    Marty Kaplan, as Vice President of Nalpak, Inc., the General Partner of Nalpak I LP | **NALPAK II LP, on behalf of itself and its respective Investor Releasing Parties**<br><br>By: _____<br>    Marty Kaplan, as Vice President of Nalpak, Inc., the General Partner of Nalpak II LP |
| **PETER XILAS, on behalf of himself and his respective Investor Releasing Parties**<br><br>_____ | **BREAKOUT SPE LLC, on behalf of itself and its respective Breakout Releasing Parties**<br><br>By: _____<br>    Brandon Labrum, its Managing Member |
| **BRANDON LABRUM, on behalf of himself and his respective Breakout Releasing Parties**<br><br>_____ | **DUNCAN DAVIS, on behalf of himself and his respective Breakout Releasing Parties**<br><br>_____ |
| **THE L&E INVESTORS, on behalf of themselves and their respective Investor Releasing Parties**<br><br>By: _____<br><br>Its: _____ | |

9

EXECUTION COPY

IN WITNESS WHEREOF, the Parties hereby execute this Agreement as of the Effective Date.

| MICHELE VIVES, Receiver, on behalf of herself and the Receiver Releasing Parties<br><br>_____ | NALPAK ENTERPRISES LLC, on behalf of itself and its respective Investor Releasing Parties<br><br>By: _*[signature: Marty K]*_<br>Marty Kaplan, ~~as Vice President of Nalpak, Inc.,~~ the Manager of Nalpak Enterprises LLC |
|---|---|
| NALPAK I LP, on behalf of itself and its respective Investor Releasing Parties<br><br>By: _*[signature: Marty K]*_<br>Marty Kaplan, as Vice President of Nalpak, Inc., the General Partner of Nalpak I LP | NALPAK II LP, on behalf of itself and its respective Investor Releasing Parties<br><br>By: _*[signature: Marty K]*_<br>Marty Kaplan, as Vice President of Nalpak, Inc., the General Partner of Nalpak II LP |
| PETER XILAS, on behalf of himself and his respective Investor Releasing Parties<br><br>_*[signature: Pet Xi]*_<br>_____ | BREAKOUT SPE LLC, on behalf of itself and its respective Breakout Releasing Parties<br><br><br>By: _____<br>Brandon Labrum, its Managing Member |
| BRANDON LABRUM, on behalf of himself and his respective Breakout Releasing Parties<br><br>_____ | DUNCAN DAVIS, on behalf of himself and his respective Breakout Releasing Parties<br><br>_____ |
| THE L&E INVESTORS, on behalf of themselves and their respective Investor Releasing Parties<br><br><br><br>By: _____<br><br>Its: _____ | |

9

**EXECUTION COPY**

IN WITNESS WHEREOF, the Parties hereby execute this Agreement as of the Effective Date.

| **MICHELE VIVES, Receiver, on behalf of herself and the Receiver Releasing Parties**<br><br>_____ | **NALPAK ENTERPRISES LLC, on behalf of itself and its respective Investor Releasing Parties**<br><br>By: _____<br>    Marty Kaplan, as Vice President of Nalpak, Inc., the Manager of Nalpak Enterprises LLC |
|---|---|
| **NALPAK I LP, on behalf of itself and its respective Investor Releasing Parties**<br><br>By: _____<br>    Marty Kaplan, as Vice President of Nalpak, Inc., the General Partner of Nalpak I LP | **NALPAK II LP, on behalf of itself and its respective Investor Releasing Parties**<br><br>By: _____<br>    Marty Kaplan, as Vice President of Nalpak, Inc., the General Partner of Nalpak II LP |
| **PETER XILAS, on behalf of himself and his respective Investor Releasing Parties**<br><br>_____ | **BREAKOUT SPE LLC, on behalf of itself and its respective Breakout Releasing Parties**<br><br>By: /s/ Brandon Labrum<br>    Brandon Labrum, its Managing Member |
| **BRANDON LABRUM, on behalf of himself and his respective Breakout Releasing Parties**<br><br>/s/ Brandon Labrum | **DUNCAN DAVIS, on behalf of himself and his respective Breakout Releasing Parties**<br><br>_____ |
| **THE L&E INVESTORS, on behalf of themselves and their respective Investor Releasing Parties**<br><br>By: _____<br><br>Its: _____ | |

**EXECUTION COPY**

IN WITNESS WHEREOF, the Parties hereby execute this Agreement as of the Effective Date.

| MICHELE VIVES, Receiver, on behalf of herself and the Receiver Releasing Parties<br><br>_____ | NALPAK ENTERPRISES LLC, on behalf of itself and its respective Investor Releasing Parties<br><br>By: _____<br>    Marty Kaplan, as Vice President of Nalpak, Inc., the Manager of Nalpak Enterprises LLC |
|---|---|
| NALPAK I LP, on behalf of itself and its respective Investor Releasing Parties<br><br>By: _____<br>    Marty Kaplan, as Vice President of Nalpak, Inc., the General Partner of Nalpak I LP | NALPAK II LP, on behalf of itself and its respective Investor Releasing Parties<br><br>By: _____<br>    Marty Kaplan, as Vice President of Nalpak, Inc., the General Partner of Nalpak II LP |
| PETER XILAS, on behalf of himself and his respective Investor Releasing Parties<br><br>_____ | BREAKOUT SPE LLC, on behalf of itself and its respective Breakout Releasing Parties<br><br>By: _____<br>    Brandon Labrum, its Managing Member |
| BRANDON LABRUM, on behalf of himself and his respective Breakout Releasing Parties<br><br>_____ | DUNCAN DAVIS, on behalf of himself and his respective Breakout Releasing Parties<br><br>*/s/ Duncan Davis* |
| THE L&E INVESTORS, on behalf of themselves and their respective Investor Releasing Parties<br><br>By: _____<br>Its: _____ | |

9

IN WITNESS WHEREOF, the Parties hereby execute this Agreement as of the Effective Date.

| | |
|---|---|
| **MICHELE VIVES, Receiver, on behalf of herself and the Receiver Releasing Parties**<br><br>_____ | **NALPAK ENTERPRISES LLC, on behalf of itself and its respective Investor Releasing Parties**<br><br>By: _____<br>Marty Kaplan, as Vice President of Nalpak, Inc., the Manager of Nalpak Enterprises LLC |
| **NALPAK I LP, on behalf of itself and its respective Investor Releasing Parties**<br><br>By: _____<br>Marty Kaplan, as Vice President of Nalpak, Inc., the General Partner of Nalpak I LP | **NALPAK II LP, on behalf of itself and its respective Investor Releasing Parties**<br><br>By: _____<br>Marty Kaplan, as Vice President of Nalpak, Inc., the General Partner of Nalpak II LP |
| **PETER XILAS, on behalf of himself and his respective Investor Releasing Parties**<br><br>_____ | **BREAKOUT SPE LLC, on behalf of itself and its respective Breakout Releasing Parties**<br><br>By: _____<br>Brandon Labrum, its Managing Member |
| **BRANDON LABRUM, on behalf of himself and his respective Breakout Releasing Parties**<br><br>_____ | **DUNCAN DAVIS, on behalf of himself and his respective Breakout Releasing Parties**<br><br>_____ |
| **THE L&E INVESTORS, on behalf of themselves and their respective Investor Releasing Parties**<br><br>By: _*/s/ Alexander Loftus*_____<br><br>Its: _Counsel_____ | |

9

**EXECUTION COPY**

## Schedule 1

### List of L&E Investors

The L&E Investors consist of the following persons and entities:

1. AFA Marketing
2. Altgeld Groupo SPE I LLC
3. Arenson, Paul
4. Aronson, Mike
5. AVR Group, LLC
6. Balliet, Lori
7. Barry Rosenthal Revocable Trust
8. BCP, LLC
9. Benjamin Altman Trust
10. Bottini, Domenick
11. C421-Uyen Huynh
12. Carter, Jocelyn
13. Castanada, Robert
14. CD LLC
15. Codegard EV LLC
16. Cohen, Helane
17. Cowley, Shelby
18. Crandall, Bonnie
19. Cummings, Robert
20. DASH 401k Trust
21. Debra Durham
22. DiMattia, Mario
23. Dolan, Michael
24. Duffy, Joe
25. Dziurgot, Mike
26. Eggener, Brian
27. Ellustionist.com
28. Elwell, Andrew
29. Empirius
30. Fackelmayer, Harry
31. Fatemeh Pazouki
32. Fehling, Brian
33. Ferrari, Adam
34. Fiene, Christian
35. Forge Trust FBO Carl Hirsch IRA #552677
36. Forge Trust FBO Ilan Awerbuch IRA #491275
37. Frankin River, LLC
38. Friedman, Ari
39. Futoransky, Stas
40. Gardosik, Mary
41. Global Hospitality Concept
42. Gould, Michael
43. Greendot, LLC
44. Hawley, Scott
45. Heinecke, Eric
46. Hemenway, Linda
47. Henny, Robert

48. Hirsch Trust DTD 2/9/90
49. Holloway, Scott
50. Hutchinson, Gail
51. Huynh, Uyen
52. Awerbuch, Ilan
53. IRA Services Trust Company FBO Sadia Lone IRA 299509
54. IRVRU Company
55. Jahangirzadeh, Parviz
56. James D Lepak Management
57. JCE Solutions Inc.
58. Jerome Steven Franz
59. Jonker, Nicholas
60. Kalin, Carson
61. Karlander, Dan
62. Karmin, Jonathan
63. Keith, Jeff
64. Kiser, Erik
65. Kittle, Cody
66. Knoska, James
67. Lawrence Hopkins
68. Lawson, Brett
69. Lazarus, Jason
70. Leish, Nicholas
71. Lone Revocable Trust
72. Martin, Daniel
73. Mauri, Cody
74. McGrarvey, Patrick
75. MEK Investments
76. Miller, Kyle
77. Moller-Tank, Annake
78. Mouton, Brent
79. Nahid Tabai
80. Nanya Family Trust
81. Nanya, Joseph
82. NDTCO as Custodian FBO Sadia Lone HAS
83. Next Generation Investment Group
84. Pacht, Doug
85. Pak, Gene
86. Palace Court Capital, LLC
87. Peltz, Michael
88. Phillips, Chris
89. Phoenix Affordable Housing Authority, LLC
90. Prag, Stephen
91. Romanowski, Steve
92. Romanzi, Alexander
93. Ryan, Mathew
94. Ryley, James
95. Schaps, Jason
96. Schweet, Ryan
97. SerotLaz LLC
98. Southwest Investments Funds, LLC
99. Steingraber, Jonathan
100. Stoutt, Windell and Karen
101. Sutter, Jacqueline

**EXECUTION COPY**

102. The DASH Revocable Trust
103. Toner, John
104. Treven Lingren
105. Trident Asset Management, Inc.
106. Wahls, Aaron
107. Wong, Hong Ling
108. Yong, Da (Robert)
109. Zaleski, Steven

**EXECUTION COPY**

## Schedule 2

Form of Bar Order

The Receiver shall insert the following decretal language in the proposed Approval Order (which shall state that all capitalized terms not defined therein shall have the meanings ascribed to them in the Agreement and Approval Motion):

"The Court hereby PERMANANTLY BARS, RESTRAINS and ENJOINS all persons and entities (except any governmental unit, as that term is defined by 11 U.S.C. § 101(27)), as well as their respective heirs, successors, assigns, officers, directors, representatives, agents and attorneys, from commencing or continuing any civil action, administrative proceeding, arbitration or other adversarial proceeding against Breakout SPE LLC, including all of its parents, subsidiaries, affiliates, or related entities, and Brandon Labrum and/or Duncan Davis, as well as their respective heirs, successors and assigns, asserting any claim or cause of action, whether directly or derivatively, arising out of, in connection with or relating in any way to: (1) the 1inMM Ponzi Scheme; (2) acts or omissions relating to Breakout SPE LLC; (3) acts or omissions relating to the 1inMM Ponzi Scheme or the 1inMM Defendants; (4) acts or omissions relating to any investment, loan or transfer of money to JJMT Capital, LLC or 1inMM Capital, LLC and/or repayment or lack of repayment by JJMT Capital, LLC or the 1inMM Defendants (in whatever form and however denominated, a "1inMM Claim"). All 1inMM Claims are hereby channeled into the Receivership Estate's claims distribution process that the Court will establish by separate order. *Provided, however,* this order does not bar, restrain or enjoin the Receiver from asserting any claim or cause of action."

**EXECUTION COPY**

## Schedule 3

### Declaration of Alexander N. Loftus

I, Alexander N. Loftus, declare as follows:

1. I am over the age of eighteen years, am under no disability and am competent to testify to the matters set forth herein. Except as otherwise stated, all facts set forth in this declaration are based upon my personal knowledge and/or my review of documents. If called as a witness in this case, I could and would testify competently to the facts set forth in this declaration.

2. I submit this declaration pursuant to paragraph 16 of the *Settlement Agreement and Mutual Release*, dated November 7, 2023 (the "Agreement"), to which this declaration is attached as Schedule 3. Any capitalized terms not defined herein have the meanings ascribed to them in the Agreement.

3. I am an attorney at law licensed to practice in the State of Illinois and am the managing partner of Loftus & Eisenberg, Ltd. ("L&E").

4. I represent the L&E Investors listed on Schedule 1 to the Agreement.

5. All L&E Investors have approved the terms and conditions of this Agreement, including the payments of attorney's fees described in paragraph 5, and have authorized L&E to execute and deliver this Agreement on their behalf.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 7, 2023
in Chicago, Illinois

_____
Alexander N. Loftus