1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SECURITIES AND EXCHANGE
COMMISSION,

          Plaintiff,

    v.

ZACHARY HORWITZ, et al.,

          Defendants.

Case No. 2:21-cv-02927-CAS-PD

**STIPULATED PROTECTIVE ORDER
AS TO RECEIVER PROCEEDING
INVOLVING NON-PARTY CITY
NATIONAL BANK**

Hon. Patricia Donahue

## I.    PURPOSES AND APPLICABILITY

**A.    Purposes.** On January 14, 2022, the Court in the above-captioned civil action entered the *Order on Appointment of a Permanent Receiver* [ECF #70] (the "<u>Receiver Order</u>") that, among other things, appointed Michele Vives to be the federal equity receiver (the "<u>Receiver</u>") of 1inMM Capital, LLC and its subsidiaries and affiliates (the "<u>1inMM Entities</u>"), as well as over the assets that are attributable to funds derived from investors or clients of Zachary J. Horwitz and 1inMM Capital, LLC or were fraudulently transferred by Zachary J. Horwitz and 1inMM Capital, LLC.    The Receiver Order, among other things, authorizes the Receiver to investigate and prosecute claims and causes of action that may exist as a result of the activities of the 1inMM Entities.    Pursuant to her authority granted by the Receiver Order, the Receiver has issued a subpoena to non-party City National Bank ("<u>CNB</u>") dated January 11, 2023 (the "<u>Subpoena</u>").    Documents or information CNB produces or provides pursuant to a CNB-Related Proceeding, as defined below, are likely to involve confidential, proprietary, and private information, including non-public financial information, for which special protection from public disclosure and from use for any purpose other than the Receiver carrying out her duties under the Receiver Order may be warranted.    Accordingly, CNB and the Receiver (the "<u>Parties</u>," and each a "<u>Party</u>") hereby stipulate to and petition the Court to enter the following Stipulated Protective Order as to Receiver Proceeding Involving Non-Party City National Bank.

**B.    Applicability.** This Protective Order applies only to any CNB-Related Proceeding, as defined below.

## II.    GOOD CAUSE STATEMENT

**A.**    Any CNB-Related Proceeding, as defined below, is likely to involve personal identifying information, personal and non-public financial information, details about lenders, investors, and/or third parties, and sensitive information regarding CNB's business.    Materials containing such confidential and proprietary

information are not otherwise generally available to the public, and may be privileged or otherwise protected from disclosure under state or federal statutes, court rules, case decisions, or common law. Accordingly, to expedite the flow of information, to facilitate the prompt resolution of disputes over confidentiality of discovery materials, to adequately protect information the Parties are entitled to keep confidential, to ensure that the Parties are permitted reasonable necessary uses of such material in preparation for and in the conduct of trial or other proceedings, to address the handling of such materials at the end of any CNB-Related Proceeding, and to serve the ends of justice, a protective order for such information is justified in this matter.  It is the intent of the Parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public manner, and there is good cause why it should not be part of the public record of this case.

**B.**    This Protective Order is being entered into to facilitate the production, exchange, and discovery of documents and information that the Parties agree merit confidential treatment.  This Protective Order shall govern the handling of documents, depositions, deposition exhibits, interrogatory responses, responses to requests for admission, responses to requests for production, and any other information or material produced or provided by CNB in a CNB-Related Proceeding.

**III.    DEFINITIONS**

In this Protective Order, the following definitions apply:

**A.**    "**CNB-Related Proceeding**" means: (1) any subpoena or informal request for Disclosure or Discovery Material issued by the Receiver to CNB pursuant to her investigatory powers under the Receiver Order or the Federal Rules of Civil Procedure; or (2) any civil action commenced by or against the Receiver, whether within or as part of the instant case, or in a different case, court, and/or venue which involves the production or use of any Disclosure or Discovery Material

3

1    produced or provided by CNB.

2       **B.**    "**Challenging Party**" means a Party or Non-Party that challenges the
3    designation of information or items under this Order.

4       **C.**    "**CONFIDENTIAL Information**" means all Disclosure or Discovery
5    Material, and all information contained therein, and other information designated as
6    "CONFIDENTIAL," that CNB reasonably and in good faith believes constitutes
7    and/or contains (i) any information or material that qualifies for protection under
8    Federal Rule of Civil Procedure 26(c) or otherwise contains information required to
9    be maintained confidential or subject to applicable privacy rights of third parties
10   pursuant to federal or state rule or statute; (ii) any confidential, proprietary, or trade
11   secret information of CNB; or (iii) Protected Financial Information (defined below).
12   In addition, CNB may designate as "CONFIDENTIAL" or redact non-public
13   personal information, other sensitive personally identifiable information (such as
14   Social Security numbers, dates of birth, home addresses, phone numbers, email
15   addresses) or other information for which applicable federal or state law requires
16   confidential treatment.

17      **D.**    "**Counsel**" means Outside Counsel of Record and House Counsel (as
18   well as their support staff).

19      **E.**    "**Disclosure or Discovery Material**" means all items or information,
20   regardless of the medium or manner in which they are generated, stored, or
21   maintained (including, among other things, documents, testimony, transcripts, and
22   tangible things), that are produced or provided by CNB in response to a subpoena or
23   discovery request in a CNB-Related Proceeding.

24      **F.**    "**Expert**" means a person with specialized knowledge or experience in
25   a matter pertinent to a CNB-Related Proceeding who has been retained by a Party or
26   its Counsel to serve as an expert witness or as a consultant in a CNB-Related
27   Proceeding.

28      **G.**    "**House Counsel**" means attorneys who are employees of a Party or

1  Non-Party. House Counsel does not include Outside Counsel of Record or any other

2  outside counsel.

3       **H.**  "**Non-Party**" means any natural person, partnership, corporation,

4  association, or other legal entity that is not a Party to, but otherwise is or becomes

5  involved as a non-party in, a CNB-Related Proceeding.

6       **I.**  "**Outside Counsel of Record**" means attorneys (including their support

7  staff) for CNB, a Party, or a Non-Party who are not employees of CNB, the Party,

8  or Non-Party (respectively), but are retained to represent or advise, as applicable,

9  CNB, the Party, or the Non-Party, regardless whether such attorneys have filed an

10  appearance in the above-captioned civil action.

11       **J.**  "**Party or Parties**" means CNB, the Receiver, or any party in a CNB-

12  Related Proceeding, including all of their respective officers, directors, employees,

13  consultants, retained experts, and Outside Counsel of Record (and their support

14  staffs) (and, in the case of the Receiver, all employees of Douglas Wilson

15  Associates).

16       **K.**  "**Privileged Communications**" means documents, communications, or

17  information that constitute, contain, or reflect information protected by the attorney-

18  client privilege or the work product doctrine.

19       **L.**  "**Prohibited Documents**" means documents, communications, or

20  information that constitute, contain, or reflect information protected by any privilege

21  or immunity from discovery (where such privilege or immunity is apart from the

22  attorney-client privilege or the work product doctrine), including prohibitions to

23  disclosure under federal and state law.

24       **M.**  "**Privileged Documents**" means Privileged Communications or

25  Prohibited Documents.

26       **N.**  "**Professional Vendors**" means persons or entities that provide

27  litigation support services (e.g., photocopying, videotaping, translating, preparing

28  exhibits or demonstrations, and organizing, storing, or retrieving data in any form or

5

medium) and their employees and subcontractors.

**O.** **"Protected Financial Information"** means any information that constitutes "nonpublic personal information" within the meaning of the Gramm-Leach Bliley Act, 15 U.S.C. § 6802, *et seq.* and its implementing regulations, and any and all similar state laws and regulations. As set forth in Section IX(G) below, this Order authorizes the disclosure of such Protected Financial Information in a CNB-Related Proceeding.

**P.** "**Protected Material**" means any Disclosure or Discovery Material that is designated as "CONFIDENTIAL" pursuant to this Protective Order.

**Q.** "**Receiving Party**" means a Party that receives Disclosure or Discovery Material from CNB.

**IV.  SCOPE**

**A.** The protections conferred by this Order cover not only Protected Material, but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts, summaries, or compilations of Protected Material; and (3) any testimony, conversations, or presentations by Parties or their Counsel that might reveal Protected Material.

**B.** Unless otherwise specified, any use of Protected Material at trial or in other legal or administrative proceedings shall be governed by the orders of the trial judge or tribunal, as applicable. This Order does not govern the use of Protected Material at trial.

**V.  DURATION**

**A.** Even after final disposition or termination of a CNB-Related Proceeding, the confidentiality obligations imposed by this Order shall remain in effect until CNB agrees otherwise in writing, a court order otherwise directs, or the Protected Material has otherwise been made public at any time as a result of publication not involving a violation of this Order.

## VI.    DESIGNATING PROTECTED MATERIAL

### A.    Burdens in Designating Material for Protection

1.    When CNB designates any Disclosure or Discovery Material "CONFIDENTIAL," CNB bears the burden of establishing the "CONFIDENTIAL" status of such Disclosure or Discovery Material in any situation in which the Challenging Party disputes the designation as described below, and nothing in this Order shall be construed to alter such burden.

2.    The Receiving Party may, at any time, notify CNB that the Receiving Party does not concur in the designation of Disclosure or Discovery Material as Confidential.   The Receiving Party and CNB shall meet and confer in good faith regarding any such disagreement over the classification of Disclosure or Discovery Material, and if CNB does not agree to change the designation of such Disclosure or Discovery Material, the Receiving Party may move the Court for an order removing the designation of such Disclosure or Discovery Material as Protected Material. Upon such a motion, CNB shall bear the burden to prove that the Disclosure or Discovery Material in question is Protected Material. If such a motion is filed, the Disclosure or Discovery Material shall be deemed Protected Material, with the same confidentiality designation as asserted by CNB, unless and until the Court rules otherwise.

3.    In order to expedite the production of voluminous materials, CNB may, but is not required to, produce materials without a detailed review for confidentiality designation and may designate collections of documents that, by their nature, contain Confidential Information as "CONFIDENTIAL," notwithstanding that some of the documents within the collection may not qualify for such designation.   CNB's "bulk" designation of documents shall not constitute waiver of any Party's rights.  Notwithstanding the foregoing, a Receiving Party may at any time challenge the designation of one or more particular documents on the grounds that the document(s) do not qualify for protection.

**B.    Manner and Timing of Designations**

1.    Except as otherwise provided in this Order or as otherwise stipulated or ordered, Disclosure or Discovery Material that qualifies for protection under this Order must be clearly so designated before the material is disclosed or produced.

2.    Designation in conformity with this Order requires the following:

a.    For information in documentary form (e.g., paper or electronic documents, but excluding transcripts of depositions or other pretrial or trial proceedings), that CNB affix at a minimum, the legend "CONFIDENTIAL" (hereinafter "CONFIDENTIAL legend"), to each page that contains Protected Material.    In the case of documents produced in native, electronic form, the confidentiality can be designated on the placeholder sheet produced along with that document, or in a confidentiality metadata field.

b.    When CNB makes original documents available for inspection, CNB need not designate them for protection until after the Receiving Party has indicated which documents it would like copied and produced.    During the inspection and before the designation, all of the material made available for inspection shall be deemed "CONFIDENTIAL."    After the inspecting Party has identified the documents it wants copied and produced, CNB must determine which documents, or portions thereof, qualify for protection under this Order.    Then, before producing the specified documents, CNB must affix the CONFIDENTIAL legend to each page that contains Protected Material.

c.    For information produced in a form other than document and for any other tangible items, that CNB affix in a prominent place on the exterior of the container or containers in which the information is stored the CONFIDENTIAL legend.    If only a portion or portions of the information warrants protection, CNB, to the extent practicable, shall identify the protected portion(s).

1           d.    All depositions shall presumptively be treated as

2    CONFIDENTIAL Information subject to this Order during the deposition and until

3    twenty-one (21) days after the final transcript of said deposition is received by

4    Counsel for each of the Parties, unless otherwise specified in writing or on the

5    record of the deposition by CNB.  At or before the end of such twenty-one (21)

6    day period, the deposition, or pages thereof, may be designated for future purposes

7    as CONFIDENTIAL Information by any Party or, where applicable, by the Non-

8    Party providing the deposition testimony.

9           e.    This Order shall not preclude Counsel for the Parties from

10   using Protected Material during any deposition in a CNB-Related Proceeding,

11   provided that prior to any such use, the Party intending to use Protected Material

12   shall: (a) provide a copy of this Order to the witness, and others to whom disclosure

13   is intended to be made; (b) explain the Order to said persons and/or cause them to

14   read the Order; and (c) obtain from said persons properly executed undertakings, in

15   the form of Exhibit A attached hereto, if such persons are not otherwise covered by

16   this Order.  Should any deponent refuse to execute the undertaking before or at the

17   deposition, Counsel for the Parties may still use the Protected Material during the

18   deposition, and the Parties agree that the use of such Protected Material during the

19   deposition shall not negate its treatment as Protected Material pursuant to this Order.

20   Counsel shall retain copies of the signed "Exhibit A" forms until the termination of

21   a CNB-Related Proceeding.  The Parties shall act in good faith to eliminate,

22   whenever possible, the expenditure of "on the record" time to effectuate or confirm

23   compliance with this paragraph at any deposition.

24          3.    In connection with discovery proceedings as to which a Party

25   submits documents that are designated as CONFIDENTIAL, all documents and

26   chamber copies so designated that are submitted to the Court shall be filed under

27   seal pursuant to the sealing procedures outlined in Section XII(C)(1), below, and in

28   compliance with Civil Local Rule 79-5.

**C.    Inadvertent Failure to Designate**

1.    If corrected in a reasonably timely manner, an inadvertent failure to designate qualified information or items as CONFIDENTIAL does not, standing alone, waive CNB's right to secure protection under this Order for such material. Upon reasonably timely correction of a designation, the Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Order.

**VII.    CHALLENGING CONFIDENTIALITY DESIGNATIONS**

**A.    Timing of Challenges**

1.    Any Party or Non-Party may challenge a designation of confidentiality at any time that is consistent with orders entered by the Court.

**B.    Meet and Confer**

1.    The Challenging Party shall initiate the dispute resolution process under Local Rule 37.1 et seq. and consistent with the Court's practices and procedures.

**C.    Burden**

1.    The burden of persuasion in any such challenge proceeding shall be on CNB.  Frivolous challenges, and those made for an improper purpose may expose the Challenging Party to sanctions.  Unless CNB has waived or withdrawn the confidentiality designation, all parties shall continue to afford the material in question the level of protection to which it is entitled under CNB's designation until the Court rules on the challenge.

**VIII.    ACCESS TO AND USE OF PROTECTED MATERIAL**

**A.    Basic Principles**

1.    A Receiving Party may use Protected Material only for prosecuting, defending, or attempting to settle a CNB-Related Proceeding.  Such Protected Material may be disclosed only to the categories of persons and under the conditions described in this Order.  When the particular CNB-Related Proceeding

10

has been terminated, a Receiving Party must comply with the provisions of Section XIII below.

          2.        Protected Material must be stored and maintained by a Receiving Party at a location and in a secure manner that ensures that access is limited to the persons authorized under this Order.

**B.     Disclosure of "CONFIDENTIAL" Information**

          1.        Unless otherwise ordered by the Court or permitted in writing by CNB, a Receiving Party may disclose any information or item designated "CONFIDENTIAL" only to:

          a.        The Receiving Party's Outside Counsel of Record in a CNB-Related Proceeding, as well as employees of said Outside Counsel of Record to whom it is reasonably necessary to disclose the information for the CNB-Related Proceeding;

          b.        The officers, directors, and employees (including House Counsel) of the Receiving Party to whom disclosure is reasonably necessary for the particular CNB-Related Proceeding;

          c.        Experts (as defined in this Order) of the Receiving Party to whom disclosure is reasonably necessary for the particular CNB-Related Proceeding and who have signed the "Acknowledgment and Agreement to Be Bound" (Exhibit A);

          d.        The Court and its personnel;

          e.        Court reporters and their staff;

          f.        Professional jury or trial consultants, mock jurors, and Professional Vendors to whom disclosure is reasonably necessary for the particular CNB-Related Proceeding and who have signed the "Acknowledgment and Agreement to be Bound" attached as Exhibit A hereto;

g.     The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information;

h.     During their depositions, witnesses, and attorneys for witnesses, in a CNB-Related Proceeding to whom disclosure is reasonably necessary provided: (i) the deposing party requests that the witness sign the "Acknowledgment and Agreement to Be Bound"; and (ii) they will not be permitted to keep any Confidential Information unless they sign the "Acknowledgment and Agreement to Be Bound," unless otherwise agreed by CNB or ordered by the Court.  Pages of transcribed deposition testimony or exhibits to depositions that reveal Protected Material may be separately bound by the court reporter and may not be disclosed to anyone except as permitted under this Protective Order; and

i.     Any arbitrator, mediator, or settlement officer, and their supporting personnel, mutually agreed upon by any of the Parties to a particular CNB-Related Proceeding engaged in arbitration, mediation, or settlement discussions.

## IX.    PROCEDURES CONCERNING PRIVILEGED DOCUMENTS

A.     To the maximum extent permitted by law, the undersigned agree, and the Court orders, that the production of documents or provision of information by CNB shall be governed by Federal Rule of Civil Procedure 26(b)(5)(B) and Federal Rule of Evidence 502 regarding the production of documents, electronically stored information, or information protected by the attorney-client privilege, the work product doctrine, or any other privilege or protection from disclosure recognized under applicable law.  This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502.

B.     The procedure set forth below is intended to (1) provide CNB or any other party purporting to hold a privilege or protection from disclosure with an efficient method for retrieving or "clawing back" Privileged Documents that have

1   been produced, subject to resolution of any dispute over the privileged or protected

2   status of the Privileged Documents, and (2) to foreclose any argument that CNB has

3   waived any such privilege or protection.

4          1.      CNB's inadvertent disclosure in connection with a CNB-Related

5   Proceeding of one or more Privileged Documents shall not constitute a waiver with

6   respect to such Privileged Documents or generally of such privilege or immunity.  If

7   a Receiving Party receives materials that appear to be Privileged Documents, the

8   Receiving Party must refrain from further use or examination of the materials that

9   may be privileged, and shall immediately notify CNB, in writing, that he or she

10  possesses material that appears to be Privileged Documents.  In the event CNB or

11  another party discovers that CNB has disclosed Privileged Documents, CNB or the

12  other party may provide notice to the other Parties, advising of the disclosure and

13  requesting return to CNB or destruction of the Privileged Documents.  Upon such

14  notice, the Receiving Party shall make no further use or examination of the

15  Privileged Documents and shall immediately segregate them in a manner that will

16  prevent further disclosure or dissemination of their contents, and, within ten (10)

17  days of receiving such notice of production of Privileged Documents, the Receiving

18  Party shall destroy or return all original documents identified in such notice (whether

19  electronic or hard copy), shall destroy or delete any and all copies (whether

20  electronic or hard copy), and shall expunge from any other document, information

21  or material derived from the produced Privileged Documents.  To the extent the

22  Receiving Party provided any disclosed Privileged Documents to any other person,

23  the Receiving Party shall promptly make reasonable efforts to retrieve and destroy

24  such Privileged Documents and notify CNB that it has done so.  The party clawing

25  back the produced Privileged Documents will provide the Receiving Party with a

26  privilege log that reasonably identifies the basis for the assertion of privilege.

27         2.      If, based on (1) the privilege log entries provided to the

28  Receiving Party by CNB or the party claiming that material constitutes a Privileged

1   Document, or (2) the Receiving Party's review of documents that occurred prior to

2   the assertion of privilege and claw-back, there is a dispute over whether the clawed

3   back documents at issue are protected from disclosure by virtue of a privilege,

4   prohibition based in law, or immunity from discovery, the original documents shall

5   nevertheless be immediately destroyed or returned to CNB along with all copies

6   (whether electronic or hard copy) thereof.  All Counsel shall undertake reasonable

7   efforts to resolve the issue of whether the documents are privileged without court

8   intervention.  To the extent Counsel cannot resolve the issue, the Receiving Party

9   may follow the discovery dispute procedures set forth by the Court or tribunal to

10  compel production of the Privileged Documents, but may not assert as a ground for

11  compelling production the fact or circumstance that the Privileged Documents had

12  already been produced.  In conjunction with such a discovery dispute, the Receiving

13  Party may request the Court review in camera the clawed back documents at issue,

14  and, if the Court so orders, CNB shall provide the Privileged Documents under seal

15  to the Court for in-camera review.  In the event of a motion to compel production of

16  the Privileged Documents, the burden is on CNB, or the party claiming that the

17  material is a Privileged Document, to provide, in its opposition to the motion to

18  compel, information regarding the content and context of the Privileged Documents

19  sufficient to establish the applicability of any asserted privilege, prohibition based

20  in law, or immunity from discovery.

21      **C.**    Nothing in this Order prevents the Parties from meeting and conferring

22  or negotiating separate agreements regarding privilege log creation, production,

23  content, format, or related issues.  Any disputes related thereto shall be governed by

24  the dispute resolution process under Local Rule 37.1 et seq.

25      **D.**    CNB shall not produce any material or information that CNB is

26  prohibited by law from disclosing under 31 U.S.C. § 5318(g), 31 CFR 103.18(e),

27  12 CFR 510.5, or any similar law, regulation, rule, or court order.  If CNB withholds

28  any such material or information on this basis, it shall log the reason, as applicable,

for withholding the document as "31 U.S.C. § 5318, including 31 U.S.C. § 5318(g)(2)(A)(i); 12 C.F.R § 21.11(k); and 31 C.F.R. § 1020.320(e)" and include in the description that the document is prohibited from disclosure pursuant to federal law, or otherwise similarly log the applicable law, regulation, rule, or court order that serves as the basis for withholding the document.

E.    CNB shall not produce any material or information that CNB is prohibited by law from disclosing because the material or information constitutes privileged confidential supervisory information of a regulator. If CNB withholds any such material or information on this basis, it shall log the reason for withholding the document as "Bank Examiner's Privilege" and include in the description that the document contains non-public supervisory information. The Receiver reserves any right she may have to seek a waiver of any such asserted Bank Examiner's Privilege from the relevant bank examiner, and CNB reserves any rights it may have in the event the Receiver seeks such waiver.

F.    Notwithstanding the foregoing, CNB need not log any Privileged Communications created or dated on or after April 20, 2021 (the date the class action complaint was filed against CNB and other defendants in the case captioned *Whitmore v. Horwitz et al.*, Case No. 21-cv-3393 (C.D. Cal.)).

G.    To the extent any federal or state law or other legal authority governing the disclosure or use of Protected Financial Information (hereinafter, "Protected Financial Information Law") permits disclosure of such information pursuant to an order of a court, this Order shall constitute compliance with such requirement. To the extent any Protected Financial Information Law requires CNB to obtain a court-ordered subpoena or to give notice or obtain consent, in any form or manner, from any person or entity before disclosure, receipt, or use of any Protected Financial Information, the Court finds that, in the view of the protections provided for the information disclosed in this Order, the volume of documents to be produced, and the ongoing oversight of the Court, there is good cause to excuse such requirement,

15

and the Court hereby orders that CNB is exempted from obtaining a court ordered subpoena or having to notify and/or obtain consent from any person or entity prior to the disclosure of Protected Financial Information in connection with a CNB-Related Proceeding.   To the extent that any Protected Financial Information Law requires that any person or entity be notified prior to disclosure, receipt, or use of Protected Financial Information except where such notice is prohibited by court order, the Court hereby Orders, in view of the protections provided for the information disclosed in this Order, the volume of documents to be produced, and the ongoing oversight of the Court, that CNB is explicitly prohibited from providing such notice in a CNB-Related Proceeding; provided, however, that this Order shall not prohibit CNB from contacting any person or entity for any other purpose.  CNB may seek additional orders from this Court that it believes may be necessary to comply with any Protected Financial Information Law.

## X.  PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION

**A.**    If a Receiving Party or Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in a CNB-Related Proceeding as "CONFIDENTIAL," that party must:

1.    Promptly notify in writing CNB.  Such notification shall include a copy of the subpoena or court order;

2.    Promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order.  Such notification shall include a copy of this Protective Order; and

3.    Cooperate with respect to all reasonable procedures sought to be pursued by CNB whose Protected Material may be affected.

**B.**    If CNB timely seeks a protective order, the Receiving Party or Party served with the subpoena or court order shall not produce any information

16

designated in a CNB-Related Proceeding as "CONFIDENTIAL" before a determination by the Court from which the subpoena or order issued, unless the Party has obtained CNB's permission. CNB shall bear the burden and expense of seeking protection in that court of its confidential material and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party to disobey a lawful directive from another court.

## XI.    UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIAL

**A.** If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected Material it has received from CNB to any person or in any circumstance not authorized under this Protective Order, the Receiving Party must immediately, after discovery of the disclosure, (1) notify in writing CNB of the unauthorized disclosure(s) and the identity of such person(s) to whom Protected Material was disclosed, (2) use its best efforts to retrieve all copies of the Disclosure or Discovery Material containing Protected Material from the person or persons to whom unauthorized disclosures were made, (3) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (4) request such person or persons execute the "Acknowledgment and Agreement to be Bound" that is attached hereto as Exhibit A.

## XII.    MISCELLANEOUS

**A.    Right to Further Relief**

1.    Nothing in this Order abridges the right of any person to seek its modification by the Court in the future.

**B.    Right to Assert Other Objections**

1.    By stipulating to the entry of this Protective Order, no Party waives any right it otherwise would have to object to disclosing or producing any information or item on any ground not addressed in this Protective Order. Similarly, no Party waives any right to object on any ground to use in evidence of any of the material covered by this Protective Order.

17

**C.    Filing Protected Material**

1.    A Party that seeks to file under seal any Protected Material must comply with Civil Local Rule 79-5.  Protected Material may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Material at issue.  If a Party's request to file Protected Material under seal is denied by the Court, then the Receiving Party may file the information in the public record unless otherwise instructed by the Court.

**D.    No Effect on CNB's Use of Disclosure or Discovery Material**

1.    This Order has no effect upon, and shall not apply to, CNB's use of its own Disclosure or Discovery Material for any purpose.  The Receiver reserves any right she may have to assert that there has been a waiver of privilege or protection if CNB uses Privileged Documents in a proceeding in which the Receiver is a Party or CNB otherwise makes Privileged Documents public.

**XIII.  FINAL DISPOSITION**

A.    After the final disposition of a particular CNB-Related Proceeding, unless otherwise instructed by CNB, each Receiving Party must return all Protected Material to CNB or destroy such material unless such material is to be maintained by Counsel pursuant to the California Rules of Professional Conduct and other rules applicable to Counsel.  As used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations, summaries, and any other format reproducing or capturing any of the Protected Material.  Whether the Protected Material is returned or destroyed, the Receiving Party must submit a written certification to CNB within 60 days that (1) identifies (by category, where appropriate) all the Protected Material that was returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Protected Material.  Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence,

18

deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Protected Material. Any such archival copies that contain or constitute Protected Material remain subject to this Protective Order.

B. Any violation of this Order may be punished by any and all appropriate measures including, without limitation, contempt proceedings and/or monetary sanctions.

**IT IS SO STIPULATED.**

Dated: January 17, 2024                    Respectfully submitted,

                                                        **LATHAM & WATKINS LLP**

                                                        By  /s/ Joshua G. Hamilton
                                                                Joshua G. Hamilton
                                                                *Counsel for Non-Party*
                                                                *City National Bank*

Dated: January 17, 2024                    Respectfully submitted,

                                                        **RAINES FELDMAN LITTRELL LLP**

                                                        By  /s/ Kathy Bazoian Phelps
                                                                Kathy Bazoian Phelps
                                                                *Raines Feldman Littrell LLP*
                                                                *Counsel for Receiver Michele Vives*

Upon consideration of the *Stipulated Protective Order as to Receiver Proceeding Involving Non-Party City National Bank*, dated January 17, 2024 (the "Stipulation"), between Non-Party City National Bank and Michele Vives, not individually, but solely as the receiver of 1inMM Capital, LLC and its subsidiaries and affiliates and over the assets more particularly described in the *Order on Appointment of a Permanent Receiver*, dated January 14, 2022 [ECF #70]; the Court, finding that there is good cause to grant the relief provided herein; it is, pursuant to

the Court's power to supervise equity receiverships and all other powers in that behalf so enabling, hereby ORDERED:

      1.      The Stipulation is APPROVED.

      2.      The Protective Order set forth above is ENTERED and APPROVED.

Dated: _____, 2024

                                    _____
Honorable Patricia Donahue
United States Magistrate Judge

# EXHIBIT A

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, [insert name] of [insert address], declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order as to Receiver Proceeding Involving Non-Party City National Bank that was issued by the United States District Court for the Central District of California on [DATE] in the case of *Securities and Exchange Commission v. Horwitz*, No. 2:21-cv-02927-CAS-PD.  I agree to become a "Party" to the Protective Order.  I further agree to comply with and be bound by all of the terms of the Protective Order, and to produce and/or receive Disclosure or Discovery Material accordance with the terms thereof.  I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt.  I solemnly promise that I will not disclose in any manner any information or item that is subject to this Protective Order to any person or entity except in strict compliance with the provisions of this Order.  I further agree to submit to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing the terms of this Protective Order, even if such enforcement proceedings occur after termination of this civil action.  I hereby appoint [print or type full name] of [print or type full address and telephone number] as my California agent for service of process in connection with this action or any proceedings related to enforcement of this Protective Order.

Date: _____

City and State where signed: _____

Printed name: _____

Title (if applicable): _____

Signature: _____