Terence G. Banich (SBN 212173)
terence.banich@katten.com
Allison E. Yager (*pro hac vice*)
allison.yager@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661
Telephone: (312) 902-5200
Facsimile: (312) 902-1061

*Attorneys for the Receiver*
Michele Vives

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ZACHARY J. HORWITZ and 1inMM CAPITAL, LLC,<br><br>Defendants. | Case No. 2:21-cv-02927-CAS-PD<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION OF RECEIVER MICHELE VIVES FOR ORDER APPROVING THE ENGAGEMENT AND COMPENSATION OF RESURGENCE MEDIA GROUP, LLC AS BROKER FOR THE SALE OF SUBSTANTIALLY ALL ASSETS OF ROGUE BLACK, LLC**<br><br>Date: September 9, 2024<br>Time: 10:00 a.m. PT<br>Judge: Hon. Christina A. Snyder<br>Courtroom: 8D |


Terence G. Banich (SBN 212173)
terence.banich@katten.com
Allison E. Yager (*pro hac vice*)
allison.yager@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661
Telephone: (312) 902-5200
Facsimile: (312) 902-1061

*Attorneys for the Receiver*
Michele Vives

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ZACHARY J. HORWITZ and 1inMM CAPITAL, LLC,<br><br>Defendants. | Case No. 2:21-cv-02927-CAS-PD<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION OF RECEIVER MICHELE VIVES FOR ORDER APPROVING THE ENGAGEMENT AND COMPENSATION OF RESURGENCE MEDIA GROUP, LLC AS BROKER FOR THE SALE OF SUBSTANTIALLY ALL ASSETS OF ROGUE BLACK, LLC**<br><br>Date: September 9, 2024<br>Time: 10:00 a.m. PT<br>Judge: Hon. Christina A. Snyder<br>Courtroom: 8D |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on September 9, 2024, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 8D, located at the United States Courthouse, 350 West First Street, Los Angeles, California 90012, Michele Vives, not individually, but solely as the federal equity receiver of defendant 1inMM Capital, LLC and its subsidiaries, affiliates and over the assets more particularly described in the *Order on Appointment of Permanent Receiver*, dated January 14, 2022 [ECF #70], will and hereby does move the Court for entry of an order approving the Receiver's engagement and compensation of Resurgence Media Group, LLC as broker for the sale of substantially all assets of Rogue Black, LLC, and for related relief (the "Motion").

The Motion is based on the Memorandum of Points and Authorities below and is supported by: (a) the Receiver's engagement agreement with Resurgence Media Group, LLC, copy attached as **Exhibit 1**; (b) the *Declaration of Michele Vives*, dated August 5, 2024 ("Vives Decl."), copy attached as **Exhibit 2**; and (c) the *Declaration of Michael Dwyer*, dated August 5, 2024 ("Dwyer Decl."), copy attached as **Exhibit 3**.

This Motion is made following the Local Rule 7-3 conference of counsel which took place on August 5, 2024. **No party requests a hearing on the Motion.**

Dated: August 5, 2024                Respectfully submitted,

**KATTEN MUCHIN ROSENMAN LLP**

By:   /s/*Terence G. Banich*
      Terence G. Banich

*Attorneys for the Receiver*
Michele Vives

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................. iii

I.   Preliminary Statement ..................................................................................... 1

II.  Factual Background ........................................................................................ 2

    A.   The Receiver Order ................................................................................ 2

    B.   Rogue Black ............................................................................................ 3

    C.   Resurgence and the Agreement. ............................................................. 4

III. Relief Requested .............................................................................................. 5

IV.  Basis for Relief Requested. ............................................................................. 6

Notice ....................................................................................................................... 10

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Case No. 2:21-cv-02927-CAS-PD
MOTION TO APPROVE ENGAGEMENT AND COMPENSATION
OF RESURGENCE MEDIA GROUP, LLC AS BROKER

ii

# TABLE OF AUTHORITIES

Cases

*Balakian v. Balakian*, No. CV-F-07-1011 OWW, 2008 WL 2705393 (E.D. Cal. July 8, 2008) ............................................................................................... 7-8

*Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.*, 205 F.3d 1107 (9th Cir. 1999) ............................................................................................... 6

*Drilling & Expl. Corp. v. Webster*, 69 F.2d 416 (9th Cir. 1934) ........................... 6

*Fed. Trade Comm'n v. Impetus Enter., Inc.*, No. 8:18-cv-01987-JLS-KES, 2019 WL 2610972 (C.D. Cal. May 1, 2019) ............................................................ 6

*In re Danner*, No. ID-11-1315-HJUMK, 2012 WL 3205242 (B.A.P. 9th Cir. July 31, 2012) ............................................................................................... 7

*Sec. & Exch. Comm'n v. Cap. Cove Bancorp, LLC*, No. 8:15-CV-980-JLS, 2016 WL 6139939 (C.D. Cal. Mar. 23, 2016) ............................................................ 7

*Sec. & Exch. Comm'n v. Cap. Cove Bancorp, LLC*, No. 8:15-cv-00980-JLS-JCx, 2017 WL 11643416 (C.D. Cal. Mar. 16, 2017) ................................................. 7

*Sec. & Exch. Comm'n v. Comm'n Cap. Consultants, LLC*, 397 F.3d 733 (9th Cir. 2005) ............................................................................................... 7

*Sec. & Exch. Comm'n v. Credit Bancorp Ltd.*, 290 F.3d 80 (2d Cir. 2002) ............ 6

*Sec. & Exch. Comm'n v. Hardy*, 803 F.2d 1034 (9th Cir. 1986) .......................... 6

*Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830 (5th Cir. 2019) ... 7

*Sec. & Exch. Comm'n v. Total Wealth Mgmt., Inc.*, No. 15-cv-00226-BAS-RNB, 2018 WL 6326398 (S.D. Cal. Dec. 4, 2018) ........................................................ 6

*Sec. & Exch. Comm'n v. Wencke*, 622 F.2d 1363 (9th Cir. 1980) ........................ 6

Statutes, Rules and Other

11 U.S.C. § 363(b)(1) ........................................................................................... 7

LR 66-7(f) ........................................................................................................... 10

LR 66-8 ............................................................................................................... 7

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

# MEMORANDUM OF POINTS AND AUTHORITIES

Michele Vives, the duly appointed permanent receiver (the "Receiver") of 1inMM Capital, LLC and its subsidiaries and affiliates ("1inMM"), and over assets that are attributable to funds derived from investors or clients of the above-captioned defendants or were fraudulently transferred by the Defendants (collectively, the "Estate"), by and through her counsel, hereby respectfully moves this Court for an order approving the Receiver's engagement and compensation of Resurgence Media Group, LLC ("Resurgence") as broker for the sale of substantially all assets of Rogue Black, LLC ("Rogue Black"), and granting related relief as follows:

## I. Preliminary Statement

On January 14, 2022, the Court appointed the Receiver pursuant to the *Order on Appointment of Permanent Receiver*, dated January 14, 2022 [ECF #70] (the "Receiver Order"). Since her appointment, the Receiver and her retained professionals have, among other things, assumed control of the Estate (including Rogue Black), conducted a comprehensive forensic accounting analysis to identify potential sources of recovery, negotiated major settlements with several investors of the 1inMM Ponzi Scheme and other third parties, and conducted other activities required by the Receiver Order to administer and maximize the value of the Estate.[1]

The Receiver brings this Motion to approve her engagement and compensation of Resurgence as broker for the sale of substantially all assets of Rogue Black (collectively, the "Rogue Black Assets"), a film finance and production company in which Defendant Zachary J. Horwitz ("Horwitz") owned a membership interest and invested using 1inMM funds. The Receiver has engaged Resurgence to market and sell the Rogue Black Assets, the terms of which are in the agreement between the Receiver and Resurgence, dated August 5, 2024 (the "Agreement"). A

---

[1] More details regarding the Receiver's actions to date can be found in her quarterly reports filed in this matter.

copy of the Agreement, which is subject to Court approval, is annexed hereto as **Exhibit 1**.

The Receiver believes, in her reasonable business judgment, that the terms of Resurgence's engagement and compensation, as set forth herein and described in further detail in the Agreement, are warranted, reasonable and appropriate under the circumstances. Accordingly, the Receiver respectfully requests that the Court grant this Motion by entering an order approving the Receiver's engagement of Resurgence.

## II. Factual Background

### A. The Receiver Order

On April 5, 2021, the SEC commenced this action against Horwitz and 1inMM (together with Horwitz, the "Defendants"), alleging that they committed an offering fraud and Ponzi scheme in violation of the federal securities laws (the "Ponzi Scheme").

On January 14, 2022, the Court entered the Receiver Order, which appointed the Receiver to, among other things, "identify any significant assets that may be available to compensate investors."[2] The Receiver Order also authorized, empowered and directed the Receiver "to take such action as is necessary and appropriate to preserve and take control of and to prevent the dissipation, concealment, or disposition of any Assets," and "to choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the receiver deems advisable or necessary in the performance of the duties and responsibilities under the authority granted by [the Receiver] Order."[3]

---

[2] ECF #70, § I.

[3] *Id.* § II(E)-(F).

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

**B.     Rogue Black**

Rogue Black, a Delaware limited liability company, functioned as a special purpose entity that invested into certain motion picture assets (the "Pictures"), including, without limitation, the eight (8) motion pictures listed on Schedule 1 to the Agreement. (Vives Decl. ¶ 6.) Prior to the Court's issuance of the Receiver Order, Horwitz owned 50 percent of the membership interests in Rogue Black. (*Id.* ¶ 7.) ANLE Productions, Inc. ("ANLE") owned the other 50 percent of the Rogue Black membership interests until ANLE forfeited its equity to the Receiver following her appointment. (*Id.*)[4] As a consequence, the Receiver now wholly owns Rogue Black. (*Id.*) On September 29, 2022, the Court entered an order which, among other things, confirmed that "the Receiver is, and has succeeded to be, the sole and exclusive managing member and legal representative of Rogue Black LLC, with the sole and exclusive power and authority to manage and direct its business and financial affairs[.]"[5]

In his capacity as member, Horwitz had invested in Rogue Black using 1inMM funds. (*Id.* ¶ 8.) Ultimately, 1inMM invested approximately $21.5 million with Rogue Black, which went on to produce and complete the Pictures. (*Id.*) Accordingly, Rogue Black—as well as all right, title and interest it has in and to the Pictures (collectively, the "Rogue Black Assets")—are assets of the Estate. (*Id.*) The Receiver thus is empowered to administer the Rogue Black Assets pursuant to the Receiver Order.

The Receiver continues to collect monies owed to Rogue Black in relation to the Pictures and pursue monies that are owed but have not yet been paid. (*Id.* ¶ 9.)

---

[4] A true and correct copy of the letter from ANLE withdrawing as member and resigning as manager—which has been redacted to maintain confidentiality—is attached to the Vives Declaration as Exhibit A.

[5] ECF #131, ¶ 3.

For example, as described in her latest quarterly report, the Receiver achieved a total victory in an arbitration relating to amounts owed to Rogue Black that resulted in a significant judgment of $1,227,511.95 (plus accruing post-judgment interest) in favor of the Estate.[6] To that end, the Receiver seeks to obtain further recoveries through an eventual sale of the Rogue Black Assets—namely, Rogue Black's entire film library. (*Id.*)

### C. Resurgence and the Agreement

The Receiver seeks to maximize the monetary recovery of the Rogue Black Assets by bundling, marketing and selling the Pictures. (*Id.* ¶ 10.) In doing so, the Receiver has deemed it advisable and necessary to retain a broker to assist with that process. (*Id.*) In particular, the Receiver decided to engage Resurgence based on its general expertise as well as its familiarity with the Rogue Black Assets. (*Id.* ¶ 11.) Resurgence, a full-service distribution company that specializes in film library sales, has already consulted the Receiver in connection with all matters regarding Rogue Black since she acquired full control thereof. (*Id.*; Dwyer Decl. ¶ 6.) Through this preexisting relationship, Resurgence has gained significant knowledge regarding the Rogue Black Assets, including the Pictures and their accounting status. (Vives Decl. ¶ 11; Dwyer Decl. ¶ 6.) Accordingly, the Receiver entered into the Agreement with Resurgence to further assist with the marketing and sale process. (Vives Decl. ¶ 11.)

Pursuant to the Agreement, the Receiver engaged Resurgence as her exclusive agent with the power to arrange for the sale of the Rogue Black Assets, which may include rendering some or all of the following services (the "Services"): (a) soliciting potential buyers of the Rogue Black Assets, (b) assembling a virtual data room for purposes of facilitating reasonable due diligence requests of potential buyers, (c)

---

[6] ECF #339, § I(F)(1).

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

arranging for potential buyers to execute customary non-disclosure agreements as a condition precedent to accessing the data room and (d) advising the Receiver in connection with the negotiation of the terms and conditions pursuant to which 1inMM shall sell, transfer and assign some or all of the Rogue Black Assets to potential buyers (a "Transaction"). (Agr. § 1.) The Receiver would have an absolute right of approval with respect to all matters in connection with the Transaction, if any, which approval would be exercised in the Receiver's sole discretion. (Id.)

Pursuant to the Agreement, Resurgence would be entitled to receive a fee (a "Sales Fee") equal to twenty percent (20%) of any cash consideration actually received by the Receiver as consideration for a Transaction (the "Purchase Price") involving the Rogue Black Assets; provided that in no event would the Sales Fee be an amount less than $20,000. (Id. § 3.) Resurgence shall not be entitled to any compensation if no Transaction is consummated. (Id.)

The Receiver believes, in her reasonable business judgment, that the terms of the Agreement are warranted, reasonable and appropriate under the circumstances. (Vives Decl. ¶ 12.) The essential terms of the Agreement are standard and usual terms that Resurgence includes within its agreements for similar engagements. (Dwyer Decl. ¶ 10.) For the avoidance of doubt, should Resurgence negotiate an acceptable Transaction approved by the Receiver, the Receiver will file a separate motion seeking the Court's prior approval of such Transaction free and clear of all liens, claims and encumbrances. (Vives Decl. ¶ 13.)

### III. Relief Requested

By this Motion, the Receiver seeks entry of an order, substantially in the form attached hereto as **Exhibit 4** (the "Proposed Order"), that approves the Receiver's engagement and compensation of Resurgence pursuant to the terms of the Agreement, and authorizes her to perform under it.

## IV. Basis for Relief Requested

District courts have "extremely broad" power and "wide discretion" in overseeing the administration of a receivership. *Sec. & Exch. Comm'n v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986). "The power of a district court to impose a receivership or grant other forms of ancillary relief does not in the first instance depend on a statutory grant of power from the securities laws. Rather, the authority derives from the inherent power of a court of equity to fashion effective relief." *Sec. & Exch. Comm'n v. Wencke*, 622 F.2d 1363, 1369 (9th Cir. 1980). A court imposing a receivership assumes custody and control of all assets and property of the receivership, and it has broad equitable authority to issue all orders necessary for the proper administration of the receivership estate. *Sec. & Exch. Comm'n v. Credit Bancorp Ltd.*, 290 F.3d 80, 82-83 (2d Cir. 2002). The Ninth Circuit in particular "affords 'broad deference' to the [district] court's supervisory role" in receivership cases, and "generally uphold[s] reasonable procedures instituted by the district court that serve th[e] purpose of orderly and efficient administration of the receivership for the benefit of creditors." *Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1115 (9th Cir. 1999) (cleaned up).

A court's broad authority to oversee the administration of a receivership also extends to the employment and compensation of a receiver's professionals. *See, e.g., Fed. Trade Comm'n v. Impetus Enter., Inc.*, No. 8:18-cv-01987-JLS-KES, 2019 WL 2610972, at *3 (C.D. Cal. May 1, 2019) ("The court appointing the receiver has full power to fix the compensation of the receiver and the compensation of professionals employed by the receiver.") (quoting *Drilling & Expl. Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934)) (cleaned up); *accord. Sec. & Exch. Comm'n v. Total Wealth Mgmt., Inc.*, No. 15-cv-00226-BAS-RNB, 2018 WL 6326398, at *1 (S.D. Cal. Dec. 4, 2018) (entitlement to fair compensation "extends to the professionals employed by the receiver").

Moreover, Local Rule 66-8 directs a receiver to "administer the estate as nearly as possible in accordance with the practice in the administration of estates in bankruptcy." District courts look to bankruptcy law for guidance about receivership administration. *See, e.g., Sec. & Exch. Comm'n v. Cap. Consultants, LLC*, 397 F.3d 733, 745 (9th Cir. 2005) (bankruptcy law "analogous" and therefore persuasive in receiverships). "[T]he purpose of bankruptcy receiverships and equity receiverships is essentially the same—to marshal assets, preserve value, equally distribute to creditors, and, either reorganize, if possible, or orderly liquidate." *Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 841 (5th Cir. 2019) (internal citation/quotations omitted). At least one court in this district has considered bankruptcy principles for guidance in connection with a receiver's retention and compensation of professionals. *See, e.g., Sec. & Exch. Comm'n v. Cap. Cove Bancorp, LLC*, No. 8:15-CV-980-JLS, 2016 WL 6139939, at *3 (C.D. Cal. Mar. 23, 2016) (citing Local Rule 66-8 and applying section 328(a) of Bankruptcy Code to receiver's motion to employ attorneys). Thus, the Court "has wide discretion [under comparable bankruptcy principles] to decide whether a proposed arrangement is or is not reasonable or appropriate under the circumstances of a particular case." *In re Danner*, No. ID-11-1315-HJUMK, 2012 WL 3205242, at *4 (B.A.P. 9th Cir. July 31, 2012).

Similarly, it is common for receivers to sell property of the receivership estate outside the ordinary course of business in a manner akin to bankruptcy law. *See, e.g.,* 11 U.S.C. § 363(b)(1) ("The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate. . . ."); *Sec. & Exch. Comm'n v. Cap. Cove Bancorp LLC*, No. 8:15-cv-00980-JLS-JCx, 2017 WL 11643416, at *1 (C.D. Cal. Mar. 16, 2017) ("it has long been recognized that under appropriate circumstances, a federal court presiding over a receivership may authorize the assets of the receivership to be sold [pursuant to section 363(b)] free and clear of liens and related claims") (citations omitted); *Balakian v. Balakian*, No.

CV-F-07-1011 OWW, 2008 WL 2705393, at *13, 17 (E.D. Cal. July 8, 2008) (authorizing receiver to sell real estate property "in the same manner as a trustee appointed under [the] Bankruptcy Code," with "the discretion to determine the best way for the sale to occur" in order to "obtain the highest and best price").

By this Motion, the Receiver seeks approval of her engagement of Resurgence to market and solicit offers for the Rogue Black Assets and broker the sale thereof. Pursuant to section II(F) of the Receiver Order, the Receiver may, upon Court order, engage and employ professionals "as the receiver deems advisable or necessary in the performance of [her] duties and responsibilities."[7] Here, the Receiver deems it advisable and necessary to engage Resurgence in order to maximize the value of the Rogue Black Assets. (Vives Decl. ¶ 14.)

Resurgence is a dynamic full-service distribution company with a collective fifty years of film library sales and distribution experience, acting as a vehicle for independent content owners to work collectively to form large and compelling packages of content and thereby maximize the return on their investment. (Dwyer Decl. ¶ 4.) Resurgence exhibits at all film and television markets worldwide, offering broadcasters, streaming platforms and distributors an opportunity to secure scalable packages of premium content with proven box-office and longevity. (*Id.*) With a library of over one thousand films, Resurgence's core catalog of iconic premium titles drives packages, enabling Resurgence to achieve maximum licensing revenue for its strategic content partners. (*Id.*) Resurgence has also represented to the Receiver that it does not hold any interest materially adverse to the Estate. (*Id.* ¶ 5; Vives Decl. ¶ 15.) As a result of its experience and familiarity with the Rogue Black

---

[7] ECF #70, § II(F).

Assets, the Receiver submits that Resurgence is best suited for marketing and brokering the sale thereof. (Vives Decl. ¶ 16.)

The Receiver requires the efforts of Resurgence to bundle, market and sell the Rogue Black Assets. (*Id.*) Resurgence has created high-quality marketing materials and developed an effective advertising campaign to attract potential buyers. (*Id.* ¶ 17; Dwyer Decl. ¶ 11.) Once potential buyers sign a non-disclosure agreement, they can receive access to a virtual data room which will provide an in-depth review of all pertinent information on the Rogue Black Assets, including, for example, a comprehensive set of subdistribution agreements pursuant to which each of the Pictures have been licensed, accounting statements from each subdistributor reporting as to the gross receipts for each Picture and any portion of which Rogue Black may be entitled to receive, and an inventory of the licensing availabilities for each Picture. (Agr. § 1(b).) Upon the Court's approval of its engagement, Resurgence will continue to market and solicit bids by specifically targeting and providing the marketing materials to potential buyers reasonably believed to be interested in purchasing the Rogue Black Assets. (Vives Decl. ¶ 17; Dwyer Decl. ¶ 11.) Resurgence will then advise the Receiver with respect to any ensuing Transaction negotiations. (Vives Decl. ¶ 17; Dwyer Decl. ¶ 11.)

Resurgence has already incurred substantial costs with respect to its efforts that will not be reimbursed but for the Sales Fee earned at the closing of a Transaction involving the Rogue Black Assets. (Vives Decl. ¶ 18; Dwyer Decl. ¶ 12.) And, again, pursuant to the Agreement, Resurgence is not entitled to receive any compensation unless and until the Receiver consummates such a Transaction and actually receives the Purchase Price. (Agr. § 3.) Consequently, the Receiver believes that Resurgence is entitled to compensation at the closing of any Transaction. (Vives Decl. ¶ 18.)

The Receiver submits that the engagement of Resurgence on the terms and conditions set forth herein and in the Agreement is necessary and appropriate, in the best interests of the Estate, and should be granted in all respects. (*Id.* ¶ 19.)

### **Notice**

Local Rule 66-7(f) requires a receiver to "give notice by mail to all parties to the action and to all known creditors of the defendant of the time and place for [the] hearing" on "[a]pplications for fees and expenses of the receiver, the attorney for the receiver and any other person appointed to aid the receiver." LR 66-7(f). The Receiver submits that it would be expensive and unnecessary to give mail notice to all creditors of the Estate regarding this Motion, which deals solely with the retention of a professional to find a buyer for the Rogue Black Assets. Should the Receiver agree to a proposed transaction to sell the Rogue Black Assets, the Receiver will give notice of the sale motion to all creditors.

Accordingly, the Receiver has given notice by CM/ECF of the hearing on this Motion to the parties who have appeared in this action (except for Rogue Black, which is now under the Receiver's control). The Receiver submits that, under the present circumstances, no further or other notice is required, and requests that the Court dispense with any additional notice requirements under Local Rule 66-7(f).

**WHEREFORE**, the Receiver respectfully requests that the Court enter an order: (a) approving the Agreement and authorizing the Receiver to perform under it; (b) finding that notice of the Motion is sufficient under the circumstances, limiting the notice of the hearing on the Motion to that given, and dispensing with any additional notice requirements under Local Rule 66-7(f); and (c) granting such other relief as is just and equitable.

//
//
//
//

Dated: August 5, 2024

Respectfully submitted,

**KATTEN MUCHIN ROSENMAN LLP**

By: /s/*Terence G. Banich*
Terence G. Banich

*Attorneys for the Receiver*
Michele Vives

**Certificate of Compliance with L.R. 11-6.2**

The undersigned, counsel of record for the Receiver, Michele Vives, certifies that this brief contains 3,006 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 5, 2024

Respectfully submitted,

*/s/ Terence G. Banich*
Terence G. Banich
Attorney for the Receiver

# PROOF OF SERVICE

**STATE OF ILLINOIS, COUNTY OF COOK**

    At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Cook, State of Illinois. My business address is 525 W. Monroe St., Chicago, Illinois 60661. On August 5, 2024, I served the following document(s) described as:

**MOTION OF RECEIVER MICHELE VIVES FOR ORDER APPROVING THE ENGAGEMENT AND COMPENSATION OF RESURGENCE MEDIA GROUP, LLC AS BROKER FOR THE SALE OF SUBSTANTIALLY ALL ASSETS OF ROGUE BLACK, LLC**

as follows:

**[ ]   BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Katten Muchin Rosenman LLP practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**[ ]   BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused the document(s) to be sent from e-mail address terence.banich@katten.com to the persons at the e-mail address(es) listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**[ ]   BY OVERNIGHT MAIL (FedEx):**  I enclosed said document(s) in an envelope or package provided by FEDEX and addressed to the persons at the addresses listed above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FEDEX or delivered such document(s) to a courier or driver authorized by FEDEX to receive documents.

**[X]   E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

    I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct. Executed on August 5, 2024, at Winnetka, Illinois.

                                 */s/Terence G. Banich*
                                 Terence G. Banich