Terence G. Banich (SBN 212173)
terence.banich@katten.com
Allison E. Yager (*pro hac vice*)
allison.yager@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661
Telephone: (312) 902-5200
Facsimile: (312) 902-1061

*Attorneys for the Receiver*
Michele Vives

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                    Plaintiff,<br><br>        v.<br><br>ZACHARY J. HORWITZ and 1inMM CAPITAL, LLC,<br><br>                    Defendants. | Case No. 2:21-cv-02927-CAS-PD<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION OF RECEIVER MICHELE VIVES FOR ORDER APPROVING SETTLEMENT WITH JEREMY J. SALVADOR, JAMES T. RUSSELL, GRANT WHITCHER AND MOVIE FUND, LLC AND FOR RELATED RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:          January 27, 2025<br>Time:          10:00 a.m. PT<br>Judge:         Hon. Christina A. Snyder<br>Courtroom: 8D |

*Side text:* KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

1

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2

PLEASE TAKE NOTICE THAT, on January 27, 2025, at 10:00 a.m., or as

3

soon thereafter as the matter may be heard in Courtroom 8D, located at the United

4

States Courthouse, 350 West First Street, Los Angeles, California 90012, Michele

5

Vives, not individually, but solely as the federal equity receiver (the "Receiver") of

6

defendant 1inMM Capital, LLC and its subsidiaries, affiliates and over the assets

7

more particularly described in the *Order on Appointment of Permanent Receiver*,

8

dated January 14, 2022 [ECF #70] (the "Receiver Order"), will and hereby does

9

move the Court for entry of an order approving the settlement with Jeremy J.

10

Salvador, James T. Russell, Grant Whitcher and Movie Fund, LLC, and for related

11

relief (the "Motion").

12

The Motion is based on the Memorandum of Points and Authorities below

13

and is supported by: (a) the *Settlement Agreement and Mutual Release*, dated August

14

8, 2024 (the "Principal Settlement Agreement") (**Exhibit 1**); (b) the *Settlement and*

15

*Claim Reduction Agreement*, dated August 2, 2024 (the "Receiver Settlement

16

Agreement") (**Exhibit 2**); (c) the *Declaration of Michele Vives*, dated December 20,

17

2024 ("Vives Decl.") (**Exhibit 3**); (d) the *Declaration of Christopher D. Kircher*,

18

dated December 20, 2024 ("Kircher Decl.") (**Exhibit 4**); and the *Declaration of*

19

*Gregory A. Gordillo*, dated December 20, 2024 ("Gordillo Decl.") (**Exhibit 5**).

20

This Motion is made following the Local Rule 7-3 conference of counsel

21

which took place on December 19, 2024. **No party requests a hearing on the**

22

**Motion.**

23

Dated: December 20, 2024          Respectfully submitted,

24

**KATTEN MUCHIN ROSENMAN LLP**

25

By:    /s/*Terence G. Banich*
       Terence G. Banich

26

27

*Attorneys for the Receiver*
Michele Vives

28

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

# **TABLE OF CONTENTS**

Table of Authorities ........................................................................................................ iii

Factual Background ......................................................................................................... 1

    A.    The Ponzi Scheme ................................................................................. 1

    B.    Movie Fund and the Whitcher-Russell Claims .................................... 1

    C.    The Transfers ........................................................................................ 2

    D.    The Settlement Agreements .................................................................. 3

    E.    Assessment of the Settlement ............................................................... 6

Legal Standards .............................................................................................................. 7

Argument ......................................................................................................................... 9

I.    Probability of success ......................................................................................... 10

II.    Collection difficulties ......................................................................................... 12

III.    Complexity/expense ........................................................................................... 12

IV.    Creditors ............................................................................................................. 12

Notice to Creditors ...................................................................................................... 14

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Case No. 2:21-cv-02927-CAS-PD
UNOPPOSED MOTION FOR ORDER APPROVING SETTLEMENT WITH
JEREMY J. SALVADOR, ET AL., AND FOR RELATED RELIEF

# TABLE OF AUTHORITIES

### Cases

*Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417 (B.A.P. 9th Cir. 1997) ................... 9

*Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.*, 205 F.2d 1107 (9th Cir.1999) ................................................................................................................ 8

*Fed. Trade Comm'n v. Cardiff*, 2020 WL 9938072 (C.D. Cal. Mar. 10, 2020) ....... 8

*Gordon v. Dadante*, 336 F. App'x 540 (6th Cir. 2009).............................................. 8

*Greif & Co. v. Shapiro (In re W. Funding Inc.)*, 550 B.R. 841 (B.A.P. 9th Cir. 2016)....................................................................................................... 11

*Grimm v. City of Portland*, 971 F.3d 1060 (9th Cir. 2020)..................................... 14

*In re Aguina*, 2022 WL 325579 (B.A.P. 9th Cir. Feb. 3, 2022)............................. 13

*In re Baroni*, 2021 WL 3011907 (B.A.P. 9th Cir. July 13, 2021)........................... 13

*In re Bondanelli*, 2020 WL 1304140 (B.A.P. 9th Cir. Mar. 18, 2020) ................... 13

*In re DiCostanzo*, 2008 WL 4068897 (C.D. Cal. Aug. 28, 2008), *aff'd*, 399 F. App'x 307 (9th Cir. 2010) ...................................................................................... 13

*In re Douglas J. Roger, M.D., Inc., APC*, 393 F. Supp. 3d 940 (C.D. Cal. 2019)................................................................................................................... 9

*In re Hunt*, 2019 WL 2323771 (Bankr. C.D. Cal. Feb. 19, 2019) ......................... 14

*In re Isom*, 2020 WL 1950905 (B.A.P. 9th Cir. Apr. 22, 2020) ............................ 12

*In re Lahijani*, 325 B.R. 282 (B.A.P. 9th Cir. 2005)............................................... 10

*In re Law*, 308 F. App'x 152 (9th Cir. 2009) ......................................................... 12

*In re Meridien Energy, LLC*, 2023 WL 6542665 (Bankr. E.D. Va. Oct. 6, 2023) ................................................................................................... 10, 13

*In re MGS Mktg.*, 111 B.R. 264 (B.A.P. 9th Cir. 1990).......................................... 10

*In re Nevada Fire Safe Council*, 2017 WL 6553395 (B.A.P. 9th Cir. Dec. 21, 2017).............................................................................................10-11

*In re Open Med. Inst., Inc.*, 639 B.R. 169 (B.A.P. 9th Cir. 2022) ........................... 9

*In re TBH19, LLC*, 2022 WL 16782946 (B.A.P. 9th Cir. Nov. 8, 2022)........... 9, 12

*In re Tidwell*, 2018 WL 1162511 (Bankr. C.D. Cal. Mar. 1, 2018)....................... 14

*In re Transcontinental Energy Corp.*, 764 F.2d 1296 (9th Cir. 1985).............. 10, 13

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Case No. 2:21-cv-02927-CAS-PD
UNOPPOSED MOTION FOR ORDER APPROVING SETTLEMENT WITH
JEREMY J. SALVADOR, ET AL., AND FOR RELATED RELIEF

iii

*In re Woodson*, 839 F.2d 610 (9th Cir. 1988) ............................................................. 9

*Liberte Cap. Grp., LLC v. Capwill*, 462 F.3d 543 (6th Cir. 2006)..................... 8, 14

*Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377 (9th Cir. 1986) ..................... 9

*Mullane v. Central Hanover Trust Co.*, 339 U.S. 306 (1950)................................ 14

*Muñoz v. United States Dep't of State*, 50 F.4th 906 (9th Cir. 2022) .................... 14

*Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508 (N.D. Cal. 2008) ....................... 14

*Sec. & Exch. Comm'n v. Adams*, 2021 WL 8016843 (S.D. Miss. Feb. 25, 2021) ............................................................................................................ 15

*Sec. & Exch. Comm'n v. Cap. Consultants, LLC*, 397 F.3d 733 (9th Cir. 2005)...... 8

*Sec. & Exch. Comm'n v. Champion-Cain*, 2022 WL 126114 (S.D. Cal. Jan. 13, 2022)................................................................................................. 8-9

*Sec. & Exch. Comm'n v. Hardy*, 803 F.2d 1034 (9th Cir. 1986) ............................ 7

*Sec. & Exch. Comm'n v. Kaleta*, 530 F. App'x 360 (5th Cir. 2013)........................ 8

*Sec. & Exch. Comm'n v. Nadel*, 2012 WL 12910648 (M.D. Fla. Feb. 10, 2012) ........................................................................................................... 15

*Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830 (5th Cir. 2019) .............................................................................................................. 8

*Sec. & Exch. Comm'n v. Total Wealth Mgmt., Inc.*, 2019 WL 13179068 (S.D. Cal. Sept. 18, 2019)........................................................................ 9

<u>Statutes, Rules and Other</u>

Cal. Civ. Code § 3439.04(a)(1) ................................................................................ 3

Cal. Civ. Code § 3439.04(b)(1)(A)........................................................................... 3

L.R. 66-8 .................................................................................................................... 8

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Case No. 2:21-cv-02927-CAS-PD
<u>UNOPPOSED</u> MOTION FOR ORDER APPROVING SETTLEMENT WITH JEREMY J. SALVADOR, ET AL., AND FOR RELATED RELIEF

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

### Factual Background

#### A.    The Ponzi Scheme

On April 5, 2021, the SEC commenced this action against Zachary Horwitz ("Horwitz") and 1inMM Capital, LLC ("1inMM"; together, "Defendants"), alleging they committed an offering fraud and Ponzi scheme in violation of the federal securities laws ("Ponzi Scheme"). On January 14, 2022, the Court appointed Ms. Vives as receiver of 1inMM, its subsidiaries, affiliates and the assets that are attributable to funds derived from investors or clients of Defendants or were fraudulently transferred by Defendants (the "Estate"). The Receiver Order authorizes the Receiver to prosecute claims.

#### B.    Movie Fund and the Whitcher-Russell Claims

The Receiver determined that Horwitz raised investor funds mostly using certain entities that pooled large amounts of money from many individual investors for upstream loans to, or investments in, 1inMM. (Vives Decl. ¶ 9.) One of these entities was Movie Fund, LLC ("Movie Fund"), of which Jeremy Salvador ("Salvador"), James Russell ("Russell"), Grant Whitcher ("Whitcher"), Jason Page ("Page") and Romik Yeghnazary ("Yeghnazary," and collectively with Movie Fund, Salvador, Russell, Whitcher and Page, the "Movie Fund Parties") were members. (*Id.*) The purpose of Movie Fund was to be a vehicle for its members to contribute and aggregate money for loans to 1inMM and profit from their transactions with 1inMM. (*Id.*; Kircher Decl. ¶ 5; Gordillo Decl. ¶ 5.)

After the 1inMM Ponzi Scheme became public knowledge, and after receiving other information, the Movie Fund Parties realized that they had been investors in the 1inMM Ponzi Scheme and that all of the distributions of profits Movie Fund made to its members were likely fictitious profits. (Kircher Decl. ¶ 6; Gordillo Decl. ¶ 6.) This resulted in an inter-Movie Fund dispute between its members, including, among other things, litigation commenced by an affiliate of

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Yeghnazary and out-of-court settlement discussions between Whitcher and Russell, on the one hand, and Salvador, on the other hand. (Kircher Decl. ¶ 6; Gordillo Decl. ¶ 6.)

Whitcher and Russell contended that Salvador was liable to them because he and/or various entities he owned and controlled (namely, Trinity Equity Group LLC, JSalvador Roth IRA LLC and JSalvador Consulting (collectively with Salvador, the "Salvador Parties," and collectively with Movie Fund, Whitcher and Russell, the "Settling Parties") received distributions from Movie Fund in excess of the amounts permissible under Movie Fund's operating agreement (the "Whitcher-Russell Claims"). (Kircher Decl. ¶ 7; Gordillo Decl. ¶ 7.) Salvador, in response, claimed he did not approve the challenged Movie Fund distributions and was unaware that they were allegedly inconsistent with its operating agreement. (Kircher Decl. ¶ 7; Gordillo Decl. ¶ 7.) The Salvador Parties asserted various defenses to the Whitcher-Russell Claims and denied that they were liable to Whitcher or Russell on account of them. (Kircher Decl. ¶ 7; Gordillo Decl. ¶ 7.)

## C.    The Transfers

Because Movie Fund existed only to aggregate investments into 1inMM, the dispute between the Settling Parties necessarily implicated the Receiver's administration of the Estate. The Receiver worked closely and cooperatively with counsel for the Settling Parties, Gregory A. Gordillo of The Gordillo Law Firm LLC on behalf of Whitcher and Russell, and Christopher D. Kircher of The Kircher Law Firm PLLC on behalf of the Salvador Parties. (Vives Decl. ¶ 10.) Messrs. Gordillo and Kircher and their respective clients gathered and produced to the Receiver a large volume of financial documents and related information. (*Id.*) The Receiver then performed a forensic accounting analysis of those documents and information in conjunction with banking documents already in her possession. (*Id.*)

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Case No. 2:21-cv-02927-CAS-PD
UNOPPOSED MOTION FOR ORDER APPROVING SETTLEMENT WITH
JEREMY J. SALVADOR, ET AL., AND FOR RELATED RELIEF

2

From that analysis, the Receiver determined that the Salvador Parties received (primarily through Movie Fund) transfers from 1inMM totaling $1,077,744 (the "Transfers") and are thus net winners of the 1inMM Ponzi Scheme. (*Id.* ¶ 11.) By contrast, the Receiver determined that Whitcher and Russell are net losing investors of the 1inMM Ponzi Scheme, and thus have approximately $4,162,472.10 of claims against the Estate to recover their unrecouped investments (the "Investment Losses"). (*Id.*)

The Receiver asserted that she may avoid and recover the Transfers from the Salvador Parties as actual fraudulent transfers pursuant to § 3439.04(a)(1) of the California Uniform Voidable Transactions Act, Cal. Civ. Code § 3439 *et seq.* ("UVTA") (the "Receiver Claims," and together with the Whitcher-Russell Claims, the "Claims"). (*Id.* ¶ 12.) As the Receiver contended, 1inMM and Horwitz made the Transfers with the actual intent to hinder, delay, or defraud their creditors, as Horwitz pled guilty and admitted that he used 1inMM to operate a Ponzi scheme, which conclusively establishes intent for purposes of a UVTA actual fraudulent transfer claim. (*Id.*) The Receiver argued that she could recover the Transfers from the Salvador Parties under UVTA § 3439.08(b)(1)(A) as their first transferee, because even though 1inMM made many of the Transfers to them indirectly through Movie Fund, Movie Fund was a mere conduit that had no dominion over the money 1inMM transferred to it. (*Id.* ¶ 13.) The Salvador Parties asserted several defenses. (*See infra* Part I.A.2.)

### D.    The Settlement Agreements

Two settlement agreements resulted from months of negotiations. The Salvador Parties (plus Salvador's affiliate, Miod and Company LLP ("Miod")), Whitcher and Russell entered into that certain *Settlement Agreement and Mutual Release*, dated August 8, 2024 (the "Principal Settlement Agreement"), to resolve

Case No. 2:21-cv-02927-CAS-PD
UNOPPOSED MOTION FOR ORDER APPROVING SETTLEMENT WITH
JEREMY J. SALVADOR, ET AL., AND FOR RELATED RELIEF

3

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

the Whitcher-Russell Claims.[1] (Kircher Decl. ¶ 8; Gordillo Decl. ¶ 8.) Under the Principal Settlement Agreement, the Salvador Parties agreed to pay Whitcher and Russell the sum of $1,077,744 (i.e., 100% of the Transfers) with interest over ten years, for a total settlement payment of $1,591,071.81 (the "Salvador Settlement Payment"). (Ex. 1.)

Whitcher and Russell, as noted above, are net losing investors of the 1inMM Ponzi Scheme and thus are entitled to file claims against the Estate to recover their Investment Losses. (Vives. Decl. ¶ 14.) But, as a result of the Principal Settlement Agreement, Whitcher and Russell will recover a significant percentage of their Investment Losses directly from the Salvador Parties. (*Id.*) It was, therefore, critically important to the Receiver that Whitcher and Russell do not double recover their Investment Losses from the Estate from a future claims process. (*Id.*) Accordingly, the Receiver insisted that Whitcher and Russell must agree that payment of the Salvador Settlement Payment to them will reduce, on a dollar-for-dollar basis, their respective Investment Losses as well as any claim they may file against the Estate in connection therewith. (*Id.*)

Thus, in conjunction with the Principal Settlement Agreement, the Receiver and the Settling Parties reached a separate, related settlement (the "Settlement") whereby, in resolution of the Receiver Claims, Whitcher and Russell agreed that their receipt of the Salvador Settlement Payment will reduce their Investment Losses on a dollar-for-dollar basis, meaning that any claims they may file against the Estate will be reduced by the same amount (the "Claim Reduction"). (*Id.* ¶ 15.) As a result of the Settlement, the total amount of Whitcher and Russell's claims against the Estate will be reduced from $4,162,472.10 to $2,571,400.29. The Settlement is

---

[1] Miod is a party to the Principal Settlement Agreement because it provided professional services to Movie Fund, and Russell, Whitcher and Movie Fund have agreed to release Miod as well.

Case No. 2:21-cv-02927-CAS-PD
UNOPPOSED MOTION FOR ORDER APPROVING SETTLEMENT WITH JEREMY J. SALVADOR, ET AL., AND FOR RELATED RELIEF

4

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

documented in that certain *Settlement and Claim Reduction Agreement*, dated August 2, 2024 (the "Receiver Settlement Agreement"). (Ex. 2.)

Recognizing that the Salvador Settlement Payment greatly exceeds the amount of the Transfers and that the Claim Reduction will considerably increase the amount available for distribution to all creditors, the Receiver agreed to release the Salvador Parties for any claims arising out of or relating to the 1inMM Ponzi Scheme. (Vives Decl. ¶ 15; Kircher Decl. ¶ 9.) For the avoidance of any doubt, however, the releases that the Receiver grants to the Salvador Parties do not extend to any other Movie Fund member, such as Yeghnazary, Page[2] or Levesque. (Vives Decl. ¶ 15.) So any claims that the Receiver may have against those other Movie Fund members and their successors and affiliates are preserved and not extinguished by the Receiver Settlement Agreement.

As recited in the Receiver Settlement Agreement, Whitcher and Russell agreed that the Receiver may apply to or move the Court to enter an order disallowing any proofs of claim Whitcher and/or Russell file in this action to the extent either does not credit the amount of the Salvador Settlement Payment against their claimed Investment Losses resulting from the 1inMM Ponzi Scheme. (*Id.* ¶ 16; Gordillo Decl. ¶ 9.) The parties also agreed that Movie Fund and the Salvador Parties do not hold a claim against the Estate, will not file any proof of claim in this action and are not entitled to any distributions from the Estate. (Vives Decl. ¶ 16; Kircher Decl. ¶ 10; Gordillo Decl. ¶ 10.) Finally, the validity of the Receiver Settlement Agreement is subject to the condition precedent that the Court approves it. (Vives Decl. ¶ 16; Kircher Decl. ¶ 11; Gordillo Decl. ¶ 11.)

---

[2] Page died on March 5, 2020.

Case No. 2:21-cv-02927-CAS-PD
UNOPPOSED MOTION FOR ORDER APPROVING SETTLEMENT WITH
JEREMY J. SALVADOR, ET AL., AND FOR RELATED RELIEF

5

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

**E.    Assessment of the Settlement**

The Receiver believes the Settlement is in the best interest of the Estate and its creditors—the net losing investors in the Ponzi Scheme. (Vives Decl. ¶ 17.)

While the Receiver, Whitcher and Russell were confident in their respective Claims, there was a significant risk of an adverse result. (*Id.* ¶ 18.) The Salvador Parties asserted meaningful defenses that, if successful, may have resulted in the Receiver, Whitcher and Russell recovering nothing. (*Id.*) The Salvador Settlement Payment resolves the Whitcher-Russell Claims as well as the Receiver Claims. (*Id.* ¶ 19.) The Settlement thus avoids protracted and expensive litigation, thereby avoiding litigation risk and conserving Estate resources. (*Id.*)

Even though the Estate will not receive cash as a result of this Settlement, the Claim Reduction constitutes a substantial benefit to the Estate more valuable than had the Receiver been entirely successful in litigation against the Salvador Parties. (*Id.* ¶ 20.) That is because the Claim Reduction is the full amount of the Transfers plus over $500,000 of interest. As a consequence, the Estate is receiving $1,591,071.81 of settlement value (i.e., reducing Whitcher and Russell's claims from $4.16 million to $2.57 million)—*$513,327 more than* the Receiver could have obtained had she received a judgment, in full, against the Salvador Parties for the Transfers alone.[3] Thus, although the Claim Reduction does not involve a direct payment of funds to the Estate, it nonetheless represents a substantial benefit to the Estate because it reduces the overall claims pool by over $1.5 million, thereby increasing the amount available to distribute to all net losing investors. (*Id.*)

Moreover, the Salvador Settlement Payment and the corresponding Claim Reduction resolve a particularly complex multiparty dispute. (*Id.* ¶ 21.) The

---

[3] The Receiver would, however, be entitled to a substantial amount of prejudgment interest.

Case No. 2:21-cv-02927-CAS-PD
UNOPPOSED MOTION FOR ORDER APPROVING SETTLEMENT WITH
JEREMY J. SALVADOR, ET AL., AND FOR RELATED RELIEF

6

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Whitcher-Russell Claims and the Receiver Claims arise from a common nucleus of operative facts—the 1inMM Ponzi Scheme—but the parties' objectives were not necessarily the same. (*Id.*) Specifically, Whitcher and Russell pursued the Salvador Parties to remedy their own personal damages, while the Receiver focused on benefitting the Estate as a whole. (*Id.*) Those goals often conflicted, resulting in disagreements between the Receiver, Whitcher and Russell about settlement terms and how to proceed. (*Id.*)

The Whitcher-Russell Claims are, nonetheless, derivative of the Receiver Claims and compete with the Receiver for the Salvador Parties' assets. (*Id.* ¶ 22.) The Receiver and Whitcher and Russell are pursuing the same parties on account of the same conduct arising out of the same transactions and occurrences involving the same actors. (*Id.*) As such, the Whitcher-Russell Claims affected the Estate's assets and ultimate recoveries; every dollar Whitcher and Russell managed to recover from the Salvador Parties was arguably a dollar the Receiver could not recover from them. (*Id.*)

The Salvador Parties wanted to achieve finality with a settlement, which they really could only accomplish through a deal with the Receiver. (*Id.* ¶ 23.) At the same time, the Receiver did not think it advisable or practical to exclude from those discussions Whitcher and Russell, who were net losing investors of the 1inMM Ponzi Scheme seeking the same recoveries from the Salvador Parties. (*Id.*) The Receiver continually focused on achieving a settlement that properly resolved all of the Claims. (*Id.* ¶ 24.) These factors, among others, made the Claims complex and particularly difficult to settle on a global basis. (*Id.*)

## **Legal Standards**

District courts have "extremely broad" power and "wide discretion" in overseeing the administration of a receivership. *Sec. & Exch. Comm'n v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986). The Ninth Circuit "affords 'broad deference' to the

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Case No. 2:21-cv-02927-CAS-PD
UNOPPOSED MOTION FOR ORDER APPROVING SETTLEMENT WITH JEREMY J. SALVADOR, ET AL., AND FOR RELATED RELIEF

7

1    [district] court's supervisory role" in receivership cases, and "generally uphold[s]

2    reasonable procedures instituted by the district court that serve th[e] purpose of

3    orderly and efficient administration of the receivership for the benefit of creditors."

4    *Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.*, 205 F.2d 1107, 1115

5    (9th Cir. 1999) (cleaned up).

6    That broad authority to oversee the administration of receivership extends to

7    approving settlements. "[N]o federal rules prescribe a particular standard for

8    approving settlements in the context of an equity receivership; instead, a district

9    court has wide discretion to determine what relief is appropriate." *Gordon v.*

10   *Dadante*, 336 F.App'x 540, 549 (6th Cir. 2009) (citing *Liberte Cap. Grp., LLC v.*

11   *Capwill*, 462 F.3d 543, 551 (6th Cir. 2006)); *see also Sec. & Exch. Comm'n v.*

12   *Kaleta*, 530 F. App'x 360, 362 (5th Cir. 2013) ("because this is a case in *equity*, it is

13   neither surprising nor dispositive that there is no case law directly controlling"

14   receiver settlements).

15   Local Rule 66-8 directs a receiver to "administer the estate as nearly as

16   possible in accordance with the practice in the administration of estates in

17   bankruptcy." District courts sitting in receivership may look to bankruptcy law for

18   guidance about the administration of a receivership. *See, e.g., Sec. & Exch. Comm'n*

19   *v. Cap. Consultants, LLC*, 397 F.3d 733, 745 (9th Cir. 2005) (bankruptcy law

20   "analogous" and therefore persuasive in receiverships). "[T]he purpose of

21   bankruptcy receiverships and equity receiverships is essentially the same—to

22   marshal assets, preserve value, equally distribute to creditors, and, either reorganize,

23   if possible, or orderly liquidate." *Sec. & Exch. Comm'n v. Stanford Int'l Bank, Ltd.*,

24   927 F.3d 830, 841 (5th Cir. 2019) (internal citation and quotations omitted).

25   Courts often apply bankruptcy principles to evaluate approval of settlements

26   in receivership cases. *Sec. & Exch. Comm'n v. Champion-Cain*, 2022 WL 126114,

27   at *1 (S.D. Cal. Jan. 13, 2022) (applying bankruptcy cases regarding approval of

28

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Case No. 2:21-cv-02927-CAS-PD
UNOPPOSED MOTION FOR ORDER APPROVING SETTLEMENT WITH
JEREMY J. SALVADOR, ET AL., AND FOR RELATED RELIEF

8

settlements in receivership cases); *Sec. & Exch. Comm'n v. Total Wealth Mgmt., Inc.*, 2019 WL 13179068, at *2 (S.D. Cal. Sept. 18, 2019) (same). Bankruptcy courts evaluate whether a compromise is "fair and equitable," considering "[a] the probability of success in litigation, [b] any difficulties that may be encountered in collection, [c] the complexity of the litigation, the expense, inconvenience, and delay necessarily attending, and [d] the interest of the receivership entities' creditors and their reasonable views." *Champion-Cain*, 2022 WL 126114, at *1 (quoting *In re Woodson*, 839 F.2d 610, 620 (9th Cir. 1988)); *see also Martin v. Kane (In re A&C Props.)*, 784 F.2d 1377, 1381 (9th Cir. 1986)). Applying those factors, "courts need not conduct a mini trial on the merits, but need only canvass the issues." *In re TBH19, LLC*, 2022 WL 16782946, at *6 (B.A.P. 9th Cir. Nov. 8, 2022).

"The analysis under these factors is holistic; the Court must canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness…[I]t is not necessary to satisfy each of these factors provided that the factors as a whole favor approving the settlement." *Total Wealth Mgmt., Inc.*, 2019 WL 13179068, at *3 (internal citations and quotations omitted); *accord In re Open Med. Inst., Inc.*, 639 B.R. 169, 185 (B.A.P. 9th Cir. 2022) ("a settlement can satisfy the *A&C Properties* test even if the evidence supporting one or more of the four factors is relatively weak"). The Court should consider these factors "as a whole, and not individually in a vacuum, to ascertain whether the settlement is a good deal compared to litigation." *Open Med. Inst.*, 639 B.R. at 185. Further, when assessing a settlement, the Court need not decide disputed facts or legal questions raised in the controversies sought to be settled. *Burton v. Ulrich (In re Schmitt)*, 215 B.R. 417, 423 (B.A.P. 9th Cir.1997).

Ultimately, "courts generally should give deference to a [receiver's] business judgment in deciding whether to settle a matter for the benefit of the estate." *In re Douglas J. Roger, M.D., Inc., APC*, 393 F. Supp. 3d 940, 961 (C.D. Cal. 2019)

Case No. 2:21-cv-02927-CAS-PD
UNOPPOSED MOTION FOR ORDER APPROVING SETTLEMENT WITH
JEREMY J. SALVADOR, ET AL., AND FOR RELATED RELIEF

9

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

1    (cleaned up); *see also In re Lahijani*, 325 B.R. 282, 289 (B.A.P. 9th Cir. 2005).

2    "Approving a proposed compromise is an exercise of discretion that should not be

3    overturned except in cases of abuse leading to a result that is neither in the best

4    interests of the estate nor fair and equitable for the creditors." *In re MGS Mktg.*, 111

5    B.R. 264, 266-67 (B.A.P. 9th Cir. 1990).

### **Argument**

6        The Receiver believes the Settlement is fair, equitable and in the best interests

7    of the Estate and thus satisfies the *A&C Properties* test. (Vives Decl. ¶ 25.)

## I.    Probability of success

9        The Salvador Settlement Payment—which is far more than the total amount

10   of the Transfers—exceeds any result that the Receiver could have obtained had she

11   entirely prevailed in litigation against the Salvador Parties. (*Id.* ¶ 26.)

12       Where, as here, a settlement surpasses the best possible result that a receiver

13   could have achieved in litigation, the probability of success factor is effectively

14   irrelevant. *See, e.g., In re Nevada Fire Safe Council*, 2017 WL 6553395, at *4

15   (B.A.P. 9th Cir. Dec. 21, 2017) (finding that proposed settlement, which included

16   claim reduction, "would provide a better outcome for creditors than could be

17   obtained through litigation," such that "a finding regarding the probability of success

18   in the litigation would have added nothing of substance"); *In re Meridien Energy,*

19   *LLC*, 2023 WL 6542665, at *8 (Bankr. E.D. Va. Oct. 6, 2023) (finding "probability

20   of success" element to be a non-factor where proposed settlement involving

21   substantial reduction in settling parties' claims provided "value to the bankruptcy

22   estate close to the Debtor's $800,000 estimate of its maximum potential recovery"

23   while avoiding time and expense of further litigation); *In re Transcontinental Energy*

24   *Corp.*, 764 F.2d 1296 (9th Cir. 1985) (approving settlement where creditor agreed

25   to reduce face value of its claim against estate, and estate would also "receive the

26   benefit of seven years of inflation").

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Case No. 2:21-cv-02927-CAS-PD
UNOPPOSED MOTION FOR ORDER APPROVING SETTLEMENT WITH
JEREMY J. SALVADOR, ET AL., AND FOR RELATED RELIEF

10

In *Nevada Fire Safe Council*, for instance, a major component of a court-approved settlement was the settling party's agreement to waive and release claims totaling approximately $9.6 million against a chapter 7 estate. 2017 WL 6553395, at *1. An opposing creditor challenged the bankruptcy court's refusal to make a finding regarding the "probability of success" factor, arguing that such refusal was fatal to approval of the settlement. *Id.* at *4. The Ninth Circuit Bankruptcy Appellate Panel deemed this argument as "not persuasive," as the *A&C Properties* test "does not require an explicit finding as to each factor." *Id.* More to the point, the objecting creditor did not dispute that litigation of the claims would be expensive and that "the settlement would provide a better outcome for creditors than could be obtained through litigation." *Id.* Indeed, "the settlement resulted in a recovery that was $400,000 greater than what the [t]rustee had initially expected to receive," so "a finding regarding the probability of success in the litigation would have added nothing of substance." *Id.* Therefore, even without an express finding regarding the probability of success in litigation, "the record as a whole" supported "the bankruptcy court's ultimate conclusion that the settlement was fair and in the best interest of creditors" because it "compared favorably with the expected rewards of litigation." *Id.* (quoting *Greif & Co. v. Shapiro (In re W. Funding Inc.)*, 550 B.R. 841, 852 (B.A.P. 9th Cir. 2016)) (cleaned up).

Just so here. The Receiver could not have achieved a better outcome in litigation, as the Settlement *exceeds the total value of the Transfers by over $500,000*. Plus, as described in greater detail below, the Claim Reduction is in the best interest of all creditors because it will reduce the overall claims pool in the same amount as the Settlement (i.e., $1,591,071.81) and avoid any further litigation costs. While this factor is neutral, if anything it weighs in favor of the Settlement considering the expected costs of litigation against the Settling Parties.

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Case No. 2:21-cv-02927-CAS-PD
UNOPPOSED MOTION FOR ORDER APPROVING SETTLEMENT WITH JEREMY J. SALVADOR, ET AL., AND FOR RELATED RELIEF

11

## II.    Collection difficulties

When collectability is "not of particular concern to either side," this factor is "neutral." *TBH19*, 2022 WL 16782946, at *7; *In re Isom*, 2020 WL 1950905, at *7 (B.A.P. 9th Cir. Apr. 22, 2020). It is unclear whether the Salvador Parties would have had sufficient assets to satisfy an adverse judgment entered in favor of Whitcher, Russell and/or the Receiver (Vives Decl. ¶ 27.) So, this factor is also neutral.

## III.    Complexity/expense

It would be complex, expensive and time-consuming for the parties to litigate the Claims. (*Id.* ¶ 28.) This factor is particularly important in liquidations like this one, where the goal is "obtaining the best possible realization upon the available assets and without undue waste by needless or fruitless litigation." *In re Law*, 308 F. App'x 152, 153 (9th Cir. 2009). The Salvador Parties' defenses present questions of fact necessarily requiring discovery and trial to resolve.

Given her review of the available evidence, the Receiver believes litigation against the Salvador Parties would be expensive and time-consuming, as it would likely require extensive discovery, retention of multiple experts and the testimony of numerous witnesses. (Vives Decl. ¶ 29.) Discovery, trial and an appeal would likely take at least two years to complete and cost the estate at least several hundred thousand dollars in fees and expenses. (*Id.*) This factor, therefore, weighs heavily in favor of approving the Settlement. *See, e.g., TBH19*, 2022 WL 16782946, at *3 (complexity element weighed in favor of settlement under similar circumstances).

## IV.    Creditors

"The opposition of the creditors of the estate to approval of a compromise may be considered by the court, but is not controlling and will not prevent approval of the compromise where it is evident that the litigation would be unsuccessful and costly…In short, creditors have a voice but not a veto." *In re Bondanelli*, 2020 WL

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Case No. 2:21-cv-02927-CAS-PD
UNOPPOSED MOTION FOR ORDER APPROVING SETTLEMENT WITH
JEREMY J. SALVADOR, ET AL., AND FOR RELATED RELIEF

12

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

1304140, at *4 (B.A.P. 9th Cir. Mar. 18, 2020). As discussed below, the Receiver is giving notice of this Motion to all known creditors of the Estate.

Moreover, courts in this circuit hold that settlements involving a claim reduction/waiver are in the best interests of creditors because they increase ultimate recoveries for other creditors and avoid further litigation costs. *See, e.g., In re Aguina*, 2022 WL 325579, at *4-7 (B.A.P. 9th Cir. Feb. 3, 2022) (affirming settlement pursuant to *A&C Properties* test where settling creditor's waiver of $1.3 million in claims against bankruptcy estate was "more than enough consideration to support" settlement); *In re Baroni*, 2021 WL 3011907, at *6-7 (B.A.P. 9th Cir. July 13, 2021) (same, where 50% reduction in settling creditor's claim was "the very essence of the compromise" and the "overall impact" of the reduction allowed the bankruptcy estate to retain additional funds while avoiding litigation costs); *In re DiCostanzo*, 2008 WL 4068897 (C.D. Cal. Aug. 28, 2008), *aff'd*, 399 F. App'x 307 (9th Cir. 2010) (finding settlement involving withdrawal of claims to be "an excellent solution" in best interests of estate under *A&C Properties* test given that bankruptcy trustee had the "responsibility to marshal assets [and] to develop funds for the creditors"); *cf. Transcontinental Energy Corp.*, 764 F.2d at 1299 (holding that compromise "benefited the estate" by "reduc[ing] the face value of [the creditor's] claim against the estate" and allowing the estate to avoid bearing litigation expenses or the risk of an adverse decision).

The Receiver believes the Claim Reduction is in the best interests of the Estate. (Vives Decl. ¶ 30.) In particular, the Claim Reduction will "reduce the overall claims pool and minimize the time, cost, and uncertainty associated with litigating" the Claims. *Meridien Energy*, 2023 WL 6542665, at *3 (approving settlement involving approximately $800,000 in claim reductions). Because Whitcher and Russell have effectively agreed to reduce the claims pool by over $1.5 million, all creditors will receive higher distributions than they otherwise would have received

Case No. 2:21-cv-02927-CAS-PD
UNOPPOSED MOTION FOR ORDER APPROVING SETTLEMENT WITH
JEREMY J. SALVADOR, ET AL., AND FOR RELATED RELIEF

13

without the Settlement. (Vives Decl. ¶ 30.) The Claim Reduction will also allow the Receiver to avoid litigating the Claims, thereby preserving additional Estate funds. (*Id.*) Therefore, the "net effect" of the Claim Reduction will be to augment distributions to *all* creditors. *In re Hunt*, 2019 WL 2323771, at *2 (Bankr. C.D. Cal. Feb. 19, 2019).

In sum, the Receiver believes the Settlement is fair, equitable and adequate under the circumstances to realize the value of the Claims. (Vives Decl. ¶ 31.) Litigation is, certainly, an alternative course, but "while the [Receiver] might do better in litigation, she is not likely to do so." *In re Tidwell*, 2018 WL 1162511, at *3 (Bankr. C.D. Cal. Mar. 1, 2018) (cleaned up).

### <u>Notice to Creditors</u>

"Creditors are entitled to 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 518 (N.D. Cal. 2008) (quoting *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950)). "[D]ue process…is not a technical conception with a fixed content unrelated to time, place and circumstances[.]" *Grimm v. City of Portland*, 971 F.3d 1060, 1065 (9th Cir. 2020). Instead, "due process is flexible and calls for such procedural protections as the particular situation demands." *Muñoz v. United States Dep't of State*, 50 F.4th 906, 922 (9th Cir. 2022). The Court may "exercise[] significant control over the time and manner" of any proceeding to hear a creditor's objections. *Liberte Cap. Grp.*, 462 F.3d at 552.

The Receiver will give notice of the Motion by: (a) CM/ECF to parties/interested parties; (b) email to all known creditors of the Estate (or, if represented, their counsel) with a link to this Motion and supporting exhibits; and (c) posting it on the receivership website. (Vives Decl. ¶ 32.) These communications will include instructions on how to advise the Receiver of any objections to the

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Case No. 2:21-cv-02927-CAS-PD
<u>UNOPPOSED</u> MOTION FOR ORDER APPROVING SETTLEMENT WITH JEREMY J. SALVADOR, ET AL., AND FOR RELATED RELIEF

14

1    Motion by no later than seven days before the hearing. (*Id.*) The Receiver will

2    thereafter file a status report. (*Id.*)

3        The Court should deem this notice sufficient under the circumstances. *See,*

4    *e.g., Fed. Trade Comm'n v. Cardiff*, 2020 WL 9938072, at *4 (C.D. Cal. Mar. 10,

5    2020) (receiver's notice of settlement satisfied due process where receiver posted

6    motion to its website and served on all parties, known creditors and interested

7    parties); *Sec. & Exch. Comm'n v. Adams*, 2021 WL 8016843, at *2 (S.D. Miss. Feb.

8    25, 2021) (same, where receiver provided mail notice to interested parties,

9    publicized settlement on receivership website and gave interested parties

10   instructions how to submit comment or objection to settlement); *Sec. & Exch.*

11   *Comm'n v. Nadel*, 2012 WL 12910648, at *1 (M.D. Fla. Feb. 10, 2012 (same, where

12   receiver published notice once in two newspapers).

13       **WHEREFORE**, the Receiver respectfully requests that the Court enter an

14   order: (a) granting the Motion; (b) finding notice of the Motion is sufficient under

15   the circumstances and satisfies due process, and waiving any further notice

16   otherwise required by Local Rule 66-7; (c) approving the terms of the Settlement

17   memorialized in the Receiver Settlement Agreement as fair and equitable; (d)

18   authorizing the Receiver to take such further actions as may be necessary to

19   consummate the transactions in the Receiver Settlement Agreement, including,

20   without limitation, administering the Claim Reduction; and (e) granting such further

21   relief as the Court deems necessary and appropriate.

22   //

23   //

24   //

25   //

26

27

28

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Case No. 2:21-cv-02927-CAS-PD
UNOPPOSED MOTION FOR ORDER APPROVING SETTLEMENT WITH
JEREMY J. SALVADOR, ET AL., AND FOR RELATED RELIEF

1    Dated: December 20, 2024       Respectfully submitted,

2                                   **KATTEN MUCHIN ROSENMAN LLP**

3                                   By:    /s/*Terence G. Banich*

4                                             Terence G. Banich

5                                   *Attorneys for the Receiver*
                                      Michele Vives

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

Case No. 2:21-cv-02927-CAS-PD
UNOPPOSED MOTION FOR ORDER APPROVING SETTLEMENT WITH
JEREMY J. SALVADOR, ET AL., AND FOR RELATED RELIEF

16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200

### **Certificate of Compliance with L.R. 11-6.2**

The undersigned, counsel of record for the Receiver, Michele Vives, certifies that this brief contains 4,605 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 20, 2024          Respectfully submitted,

*/s/ Terence G. Banich*
Terence G. Banich
Attorney for the Receiver

1

## PROOF OF SERVICE

2

**STATE OF ILLINOIS, COUNTY OF COOK**

3

4

    At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Cook, State of Illinois. My business address is 525 W. Monroe St., Chicago, Illinois 60661. On December 20, 2024, I served the following document(s) described as:

5

6

7

**UNOPPOSED MOTION OF RECEIVER MICHELE VIVES FOR ORDER APPROVING SETTLEMENT WITH JEREMY J. SALVADOR, JAMES T. RUSSELL, GRANT WHITCHER AND MOVIE FUND, LLC AND FOR RELATED RELIEF**

8

as follows:

9

10

11

12

**[ ]    BY MAIL:**  I enclosed the document(s) in a sealed envelope or package addressed to the persons at the addresses listed above and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Katten Muchin Rosenman LLP practice for collecting and processing correspondence for mailing. On the same day that the correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

13

14

15

**[X]    BY E-MAIL OR ELECTRONIC TRANSMISSION:**   I caused the document(s) to be sent from e-mail address terence.banich@katten.com to the persons at the e-mail address(es) listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

16

17

    Gregory A. Gordillo (greg@gordillolawfirm.com)
    Christopher D. Kircher (CDK@kircherlawfirm.com)

18

19

20

**[ ]    BY OVERNIGHT MAIL (FedEx):**  I enclosed said document(s) in an envelope or package provided by FEDEX and addressed to the persons at the addresses listed above. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of FEDEX or delivered such document(s) to a courier or driver authorized by FEDEX to receive documents.

21

22

**[ ]    BY PERSONAL SERVICE:**   I caused said document to be personally delivered the document(s) to the person at the addresses listed above by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office.

23

24

**[X]    E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

25

26

    I declare under penalty of perjury under the laws of the State of Illinois that the foregoing is true and correct.

27

    Executed on December 20, 2024 at Winnetka, Illinois.

28

            _/s/Terence G. Banich_
            Terence G. Banich

KATTEN MUCHIN ROSENMAN LLP
525 W. MONROE ST.
CHICAGO, IL 60661
(312) 902-5200