**CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL**

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (this **"Agreement"**) is entered into as of August 8th, 2024 by and between (a) Jeremy J. Salvador, Trinity Equity Group LLC ("Trinity"), JSalvador Roth IRA LLC, JSalvador Consulting and Miod and Company LLP, a California limited liability partnership (collectively **"SALVADOR"**) on one hand and (b) Movie Fund LLC, a Nevada limited liability company (**"Movie Fund, LLC"**), James T. Russell (**"RUSSELL")**, and Grant Whitcher ("WHITCHER") (collectively **"Movie Fund"**) on the other hand. Collectively, Salvador and Movie Fund shall be referred to as the **"Parties"** and individually as a "Party."

## BACKGROUND

WHEREAS, Jeremy J. Salvador, RUSSELL, WHITCHER and two other individuals, Romik Yeghnazary and Jason Page, were the founding members of Movie Fund, LLC;

WHEREAS, SALVADOR possessed less than a two-percent (2%) membership interest in Movie Fund LLC;

WHEREAS, Movie Fund, LLC was established to provide loans to1inMM Capital, LLC for 1inMM Capital to obtain certain film rights;

WHEREAS, Movie Fund was the target and victim of a Ponzi scheme (the "**HORWITZ PONZI SCHEME**") perpetrated by Zachary Horwitz, 1inMM Capital, LLC and other Horwitz related entities (hereinafter collectively, "**HORWITZ**") with the assistance of others;

WHEREAS, Movie Fund, LLC made disproportional distributions to its members pursuant to its operating agreement;

WHEREAS, RUSSELL, as manager of Movie Fund, LLC, made the distributions to the Movie Fund, LLC members;

WHEREAS, SALVADOR at no cost worked with RUSSELL regarding the amount of particular distributions made to Movie Fund, LLC members;

WHEREAS, at RUSSELL's request and at no cost to Movie Fund, SALVADOR caused Movie Fund, LLC's tax returns to be prepared and filed, and caused Movie Fund, LLC's books to be prepared in certain periods;

WHEREAS, each of the Movie Fund, LLC members except RUSSELL and WHITCHER received distributions in total that exceeded the capital provided to Movie Fund, LLC by the individual member;

WHEREAS, after Movie Fund, LLC made the distributions to its members, the Parties learned that any monies distributed by Movie Fund, LLC greater that the contributions made by its members were distributions of monies received from the HORWITZ PONZI SCHEME;

WHEREAS, upon discovering the HORWITZ PONZI SCHEME, Movie Fund ceased business operations and is now in a revoked status as a Nevada limited liability company;

WHEREAS, Salvador and Movie Fund were unaware that the distributions made by Movie Fund, LLC greater than the contributions made by its members were as a result of the fraud committed by HORWITZ;

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

WHEREAS, the Securities and Exchange Commission ("**SEC**") commenced a legal action against Zachary Horwitz, 1inMM Capital, LLC in the United States District Court, Central District of California (the "**Federal Court**") (Case No. 2:21-CV-02927) (the "**Lawsuit**"), and the court has appointed Michele Vives as Receiver (the "**Receiver**");

WHEREAS, Jeremy J. Salvador, individually and/or through related entities and accounts in his name, including Trinity, JSalvador Roth IRA LLC and JSalvador Consulting, received distributions from Movie Fund inconsistent with Movie Fund's operating agreement and Movie Fund and SALVADOR desire to correct that error and have returned the entire sum of monies Salvador received from the Ponzi Scheme greater than the contributions he made, which net sum is $1,077,744 (hereinafter "**AMOUNT IN CONTROVERSY**");

WHEREAS, RUSSELL has lost not less than $2,667,421 as a Movie Fund member and victim of the HORWITZ PONZI SCHEME;

WHEREAS, WHITCHER has lost not less than $1,495.050 as a Movie Fund member and victim of the HORWITZ PONZI SCHEME;

WHEREAS, MOVIE FUND alleges distributions Move Fund, LLC provided to SALVADOR were inconsistent with Movie Fund's operating agreement, which distributions SALVADOR did not have involvement in approving and was wholly unaware that the distributions were allegedly inconsistent with Movie Fund, LLC's operating agreement, and Movie Fund, LLC may have potential claims against SALVADOR arising from these distributions which potential claims SALVADOR denies;

WHEREAS, the Parties desire to avoid future litigation, avoid incurring attorneys fees, costs and other expenses, and resolve current controversies between them;

WHEREAS, the Parties are simultaneously entering into that certain *Settlement and Claim Reduction Agreement* (the "**Receiver Agreement**") with the Receiver, pursuant to which the Receiver and the Parties give effect to the transactions contemplated by this Agreement for purposes of the receivership established in the Lawsuit (the "**Receivership Estate**");

NOW, THEREFORE, without the Parties admitting liability to the other, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, SALVADOR and MOVIE FUND hereby agree as follows:

## AGREED TERMS

1.    Conditional Payment. As a condition precedent prior to SALVADOR paying or being obligated to pay any sum in the future hereunder and the attached Exhibits to this Agreement shall be the Receiver providing reasonable assurances in writing to the Parties that a subsequent adverse action will not be taken against the Parties in the Lawsuit, or by the SEC, including, but not limited to, the Receiver asserting a claim to the Settlement Payment (as defined below), in whole or in part, or any other amount that has been paid by SALVADOR to Movie Fund, LLC, WHITCHER and/or RUSSELL pursuant to this Agreement, or refusing to recognize the validly or purpose of this Agreement. Approval of the Receiver Agreement by the Federal Court shall satisfy the condition precedent in this paragraph.

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

2.    Payment by SALVADOR. SALVADOR will pay to RUSSELL and WHITCHER jointly the total sum of One Million Seventy-Seven Thousand Seven Hundred Forty-Four Dollars ($1,077,744) plus interest as described below and provided herein (the "**Settlement Payment**"):

    (a)    Not later than 5 business days after satisfaction of the condition precedent in paragraph 1, SALVADOR shall pay by wire the first installment of the Settlement Payment of One Hundred Eighty-Five Thousand dollars ($185,000) pursuant to instructions provided by RUSSELL.

    (b)    Not later than 5 business days after satisfaction of the condition precedent in paragraph 1, Jeremy J. Salvador shall execute a negotiable promissory note and security agreement(s) in favor of RUSSELL that is substantially in the same form as the attached Exhibit A for the principal sum of Five Hundred Seventy Seven Thousand Two Hundred Ninety Three dollars ($577,293), plus annual interest at the rate of 5.75% (hereinafter, the "**Russell Note**"). Jeremy J. Salvador shall be obligated to provide to RUSSELL monthly, interest-only payments on the outstanding principal amount until the principal sum is satisfied in full. The principal sum of the Note ($577,293) shall be due on or before 3,650 days after satisfaction of the condition precedent in paragraph 1, which sum may be prepaid without penalty.

    (c)    Not later than 5 business days after satisfaction of the condition precedent in paragraph 1, Jeremy J. Salvador shall execute a negotiable promissory note and security agreement(s) in favor of WHITCHER that is substantially in the same form as the attached Exhibit B for the principal sum of Three Hundred Fifteen Thousand Four Hundred Fifty One dollars ($315,451), plus annual interest at the rate of 5.75% (hereinafter, the "**Whitcher Note**"). Jeremy J. Salvador shall be obligated to provide to WHITCHER and monthly, interest-only payments on the outstanding principal amount until the principal sum is satisfied in full. The principal sum of the Note ($315,451) shall be due on or before 3,650 days after satisfaction of the condition precedent in paragraph 1, which sum may be prepaid without penalty.

    (d)    Not later than 5 business days after satisfaction of the condition precedent in paragraph 1, Jeremy J. Salvador shall execute an assignment of interest in favor of RUSSELL and WHITCHER that is substantially in the same form as the attached Exhibit C, pursuant to which Jeremy J. Salvador will assign any interest in income tax refunds he may receive for the tax years 2017, 2018, 2019, 2020, 2021, 2022, and 2023, and which sum of the refund, if any, received by RUSSELL and/or WHITCHER will be credited against and reduce the principal due on the Note.

3.    Attorneys Fees. The Parties acknowledge and agree that they are solely responsible for paying any attorneys' fees and costs they incurred and that neither Party nor its attorney(s) will seek any award of attorneys' fees or costs from the other Party, except as provided herein.

4.    Covenant Not to Sue. The Parties agree that they shall not commence or institute any legal actions against any other Party or the persons and entities set forth in Section 6(c) below, including litigation, arbitration or any other legal proceedings of any kind whatsoever, in law or equity, or assert any claim, demand, action or cause of action concerning the business of Movie Fund,

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND
THEIR RESPECTIVE COUNSEL

LLC, including but not limited to distributions of monies by Movie Fund LLC, and any transaction in connection with the HORWITZ PONZI SCHEME. This paragraph shall not affect any Party's ability to defend or litigate any action brought by or against an individual or entity not a Party to this Agreement including, but not limited to HORWITZ, Romik Yeghnazary, any entity controlled by YEGHNAZARY, including but not limited to Lending Arena LLC (collectively "**YEGHNAZARY**"); The Estate of Jason Page, Laura Page, and any entity controlled by Jason Page, The Estate of Jason Page or Laura Page, including but not limited to Pure Health and Movie Matrix (collectively, "**PAGE**"). Further this paragraph shall not impair or otherwise limit in any way the ability of any Party to this Agreement to litigate any action or defend any controversy arising from this Agreement.

5.      Confidentiality of Agreement. The Parties expressly understand and agree that this Agreement and its contents (including, but not limited to, the fact of payment and the amounts to be paid hereunder) shall remain CONFIDENTIAL and shall not be disclosed to any third party whatsoever, except the Parties' counsel, accountants, financial advisors, tax professionals retained by them, any federal, state, or local governmental taxing or regulatory authority, and the Parties' management, officers, and except as required by law or order of court. Any person identified in the preceding sentence to whom information concerning this Agreement is disclosed is bound by this confidentiality provision and the disclosing party shall be liable for any breaches of confidentiality by persons to whom he/she/it has disclosed information about this Agreement in accordance with this paragraph. Nothing contained in this paragraph shall prevent any Party from stating that the Parties have "amicably resolved all differences," provided, however, that in so doing, the Parties shall not disclose the fact or amount of any payments made or to be made hereunder and shall not disclose any other terms of this Agreement or the settlement described herein. If any subpoena, order, or discovery request (the "**Document Request**") is received by any of the Parties hereto calling for the production of the Agreement, such Party shall promptly notify the other Party hereto prior to any disclosure of same. In such case, the subpoenaed Party shall: (a) make available as soon as practicable (and in any event prior to disclosure), for inspection and copying, a copy of the Agreement it intends to produce pursuant to the Document Request unless such disclosure is otherwise prohibited by law; and (b) to the extent possible, not produce anything in response to the Document Request for at least ten (10) business days following such notice. If necessary, the subpoenaed Party shall take appropriate actions to resist production, as permitted by law, so as to allow the Parties to try to reach agreement on what shall be produced. This paragraph is a material part of this Agreement. The confidentiality requirements set forth in this paragraph 5 shall not apply to the extent: (a) disclosure of some or all of the contents of this Agreement is necessary for the Federal Court to approve the Receiver Agreement; or (b) each of the Parties mutually agree in writing to the disclosure of some or all of the Agreement or its contents.

6.      Mutual Release.

(a)      Nothing in this Agreement, including but not limited to the following references to members, agents, representatives in paragraph 6(c) below, is intended by the Parties to include within the definition of "Parties" for any purpose in connection with this Agreement, HORWITZ, YEGHNAZARY, and/or PAGE.

(b)      Nothing in this Agreement, including but not limited to the following references to "members", "agents", and "representatives" in paragraph 6(c) below, is intended

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

by the Parties to include within the definition of "Parties" for any purpose in connection with this Agreement, HORWITZ, YEGHNAZARY, and/or PAGE, their heirs, executors, personal representatives, personal administrators, personal agents, insurers, predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns, and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, entity agents, employees, managers, entity representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them.

(c)     The Parties, on behalf of themselves, their heirs, executors, personal representatives, personal administrators, personal agents, insurers, their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates, and assigns, and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, hereby release and discharge the other Party, together with their heirs, executors, personal representatives, personal administrators, personal agents, insurers predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages, medical costs, pain and suffering, mental anguish, emotional distress, expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown, which either Party has, or may have had, against the other Party, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from:

(i)      the distribution of funds by Movie Fund LLC to its members (the "**Dispute**");

(ii)     any agreement between the Parties, except this Agreement; and

(iii)    any other matter between the Parties concerning the business of Movie Fund, LLC, including but not limited to the distributions of monies by Movie Fund LLC, and the HORWITZ PONZI SCHEME.

This Agreement resolves any claim for relief that is, or could have been alleged, no matter how characterized, including, without limitation, compensatory damages, damages for breach of contract, bad faith damages, reliance damages, liquidated damages, damages for humiliation and embarrassment, punitive damages, costs, and attorneys' fees related to or arising from the Dispute.

**CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL**

7. <u>No Effect on Receivership Estate</u>. Notwithstanding anything herein to the contrary, this Agreement is not binding on the Receiver and does not impair, abridge or effect either (a) any claims the Receiver may have against a Party to this Agreement or (b) any claims any Party to this Agreement may have against the Receivership Estate. The Parties acknowledge and agree that the matters embraced by the previous sentence are governed solely by the Receiver Agreement, the effectiveness of which is subject to the condition precedent that the Federal Court approves its material terms.

8. <u>No Outstanding or Known Future Claims/Causes of Action</u>. Each Party affirms that it has not filed with any governmental agency or court any type of action or report against the other Party and currently knows of no existing act or omission by the other Party that may constitute a claim or liability excluded from the release in paragraph 6 above.

9. <u>Acknowledgment of Settlement</u>. The Parties, as broadly described in paragraph 6(c) above, acknowledge that (a) the consideration set forth in this Agreement, which includes, but is not limited to, the Settlement Payment, is in full settlement of all claims or losses of whatsoever kind or character that they have, or may ever have had, against the other Party, as broadly described in paragraph 6 above, including by reason of the Dispute and (b) by signing this Agreement, and accepting the consideration provided herein and the benefits of it, they are giving up forever any right to seek further monetary or other relief from the other Party, as broadly described in paragraph 6 above, for any acts or omissions up to and including the Effective Date, as set forth in paragraph 22, including, without limitation, the Dispute.

10. <u>No Admission of Liability</u>.

(a)    The Parties acknowledge that the Settlement Payment was agreed upon as a compromise and final settlement and that payment of the Settlement Payment is not, and may not be construed as, an admission of liability by SALVADOR and is not to be construed as an admission that SALVADOR engaged in any wrongful, negligent, tortious, or unlawful activity. SALVADOR specifically disclaims and denies (i) any liability to MOVIE FUND, (ii) engaging in any wrongful, negligent, tortious, or unlawful activity, and (iii) that there is any factual or legal basis to assert that SALVADOR engaged in any unreasonable, wrongful, negligent, tortious, or unlawful activity whatsoever as an investor, and ultimately a victim, of the HORWITZ PONZI SCHEME.

(b)    The Parties acknowledge that the Settlement Payment was agreed upon as a compromise and final settlement and that payment of the Settlement Payment is not, and may not be construed as, an admission of liability by MOVIE FUND and is not to be construed as an admission that MOVIE FUND engaged in any wrongful, negligent, tortious, or unlawful activity. MOVIE FUND specifically disclaims and denies (i) any liability to SALVADOR, (ii) engaging in any wrongful, negligent, tortious, or unlawful activity, and (iii) that there is any factual or legal basis to assert that MOVIE FUND engaged in any unreasonable, wrongful, negligent, tortious, or unlawful activity whatsoever as an investor, and ultimately a victim, of the HORWITZ PONZI SCHEME.

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND
THEIR RESPECTIVE COUNSEL

11.    <u>Special Relief Provided</u>. MOVIE FUND agrees to make any and all good faith efforts necessary to assist Jeremy J. Salvador in obtaining the maximum tax refund possible for the tax years 2017, 2018, 2019, 2020, 2021, 2022, and 2023.

12.    <u>Movie Fund Capital Account Reconciliations</u>.

(a)    Upon SALVADOR's satisfaction of his obligations pursuant to paragraph 2 (a) and (b) above, the Movie Fund Capital account for Jeremy J. Salvador shall be adjusted to a ZERO balance;

(b)    Upon SALVADOR's satisfaction of his obligations pursuant to paragraph 2 (a) and (b) above, the Movie Fund Capital account for James Russell shall be adjusted to reduce his balance by $696,923; and

(c)    Upon SALVADOR's satisfaction of his obligations pursuant to paragraph 2 (a) and (b) above, the Movie Fund Capital account for Grant Whitcher shall be adjusted to reduce his balance by $380,821.

13.    <u>Agreement is Legally Binding</u>. The Parties intend this Agreement to be legally binding upon and shall inure to the benefit of each of them and their respective successors, assigns, executors, administrators, heirs, and estates. Moreover, the persons and entities referred to in paragraph 6(c) above, but not a Party, are third-party beneficiaries of this Agreement.

14.    <u>Entire Agreement</u>. The recitals set forth at the beginning of this Agreement are incorporated by reference and made a part of this Agreement. This Agreement constitutes the entire agreement and understanding of the Parties and supersedes all prior negotiations and/or agreements, proposed or otherwise, written or oral, concerning the subject matter hereof. Furthermore, no modification of this Agreement shall be binding unless in writing and signed by each of the parties hereto.

15.    <u>New or Different Facts: No Effect</u>. Except as provided herein, this Agreement shall be, and remain, in effect despite any alleged breach of this Agreement or the discovery or existence of any new or additional fact, or any fact different from that which either Party now knows or believes to be true. Notwithstanding the foregoing, nothing in this Agreement shall be construed as, or constitute, a release of any Party's rights to enforce the terms of this Agreement.

16.    <u>Interpretation</u>. Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby and said illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement. The headings within this Agreement are purely for convenience and are not to be used as an aid in interpretation. Moreover, this Agreement shall not be construed against either Party as the author or drafter of the Agreement.

17.    <u>Choice of Law</u>.  This Agreement and all related documents including all exhibits attached hereto, and all matters arising out of or relating to this Agreement, whether sounding in contract, tort, or statute are governed by, and construed in accordance with, the laws of the State of Nevada, United States of America (including Nevada Choice of Law Statutes), without giving effect

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

to the conflict of laws provisions thereof to the extent such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the State of Nevada.

In the event of any litigation arising from this Agreement, the prevailing party will be entitled to recover its reasonable attorneys' fees and other costs of collection.

18.    Choice of Forum. The state or federal courts of Nevada located in Clark County shall be the exclusive forums for litigation concerning this Agreement. All parties to this Agreement consent to personal jurisdiction in such courts as well as service of process by notice sent by regular mail to SALVADOR at 27200 Tourney Road, Suite 290, Valencia, California 91355; and MOVIE FUND at 817 S. 7th Street, Las Vegas, Nevada 89113, or by any means authorized by Nevada law.

19.    No Third-Party Beneficiaries. Except for the persons and entities referred to in paragraph 6(c) above, this Agreement solely benefits the Parties to this Agreement and their respective successors and assigns and nothing in this Agreement, express or implied, confers on any other person any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement.

20.    Reliance on Own Counsel. In entering into this Agreement, the Parties acknowledge that they have relied upon the legal advice of their respective attorneys, who are the attorneys of their own choosing, that such terms are fully understood and voluntarily accepted by them, and that, other than the consideration set forth herein, no promises or representations of any kind have been made to them by the other Party. The Parties represent and acknowledge that in executing this Agreement they did not rely, and have not relied, upon any representation or statement, whether oral or written, made by the other Party or by that other Party's agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

21.    Counterparts. This Agreement may be executed by the Parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

22.    Authority to Execute Agreement. By signing below, each Party warrants and represents that the person signing this Agreement on its behalf has authority to bind that Party and that the Party's execution of this Agreement is not in violation of any by-law, covenants, and/or other restrictions placed upon them by their respective entities.

23.    Effective Date. The terms of the Agreement will be effective when an executed copy of this Agreement is delivered to Russell as described in paragraph 1(a) above (the **"Effective Date"**).

[SIGNATURE PAGE FOLLOWS]

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND
THEIR RESPECTIVE COUNSEL

**READ THE FOREGOING DOCUMENT CAREFULLY. IT INCLUDES A
RELEASE OF KNOWN AND UNKNOWN CLAIMS.**

**IN WITNESS WHEREOF,** and intending to be legally bound, each of the Parties hereto has caused
this Agreement to be executed as of the date(s) set forth below.

for MIOD AND COMPANY LLP

Title: _Managing Director_

Dated: _8/8/24_

JEREMY J. SALVADOR

Dated: _5/8/24_

for TRINITY EQUITY GROUP LLC

Title: _Member_

Dated: _5/8/24_

for JSALVADOR CONSULTING, sole
proprietorship

Title: _Proprietor_

Dated: _5/8/24_

for JSALVADOR ROTH IRA LLC

Title: _Beneficiary_

Dated: _8/8/24_

JAMES T. RUSSELL

Dated: _____

GRANT WHITCHER

Dated: _____

for MOVIE FUND, LLC

Title: _____

Dated: _____

9

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND
THEIR RESPECTIVE COUNSEL

**READ THE FOREGOING DOCUMENT CAREFULLY. IT INCLUDES A
RELEASE OF KNOWN AND UNKNOWN CLAIMS.**

**IN WITNESS WHEREOF,** and intending to be legally bound, each of the Parties hereto has caused
this Agreement to be executed as of the date(s) set forth below.

_____

for MIOD AND COMPANY LLP

Title: _____

Dated: _____

_____

JEREMY J. SALVADOR

Dated: _____

_____

for TRINITY EQUITY GROUP LLC

Title: _____

Dated: _____

_____

for JSALVADOR CONSULTING, sole
proprietorship

Title: _____

Dated: _____

_____

for JSALVADOR ROTH IRA LLC

Title: _____

Dated: _____

_____

JAMES T. RUSSELL

Dated: 8-10-24

_____

GRANT WHITCHER

Dated: _____

_____

for MOVIE FUND, LLC

Title: Managing Member

Dated: 8-10-24

9

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

### READ THE FOREGOING DOCUMENT CAREFULLY. IT INCLUDES A RELEASE OF KNOWN AND UNKNOWN CLAIMS.

**IN WITNESS WHEREOF,** and intending to be legally bound, each of the Parties hereto has caused this Agreement to be executed as of the date(s) set forth below.

_____
for MIOD AND COMPANY LLP
Title: _____
Dated: _____

_____
JEREMY J. SALVADOR
Dated: _____

_____
for TRINITY EQUITY GROUP LLC
Title: _____
Dated: _____

_____
for JSALVADOR CONSULTING, sole proprietorship
Title: _____
Dated: _____

_____
for JSALVADOR ROTH IRA LLC
Title: _____
Dated: _____

_____
JAMES T. RUSSELL
Dated: _____

_____
GRANT WHITCHER
Dated: ___8-12. 24___

_____
for MOVIE FUND, LLC
Title: _____
Dated: _____

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

**EXHIBIT A**

# NEGOTIABLE PROMISSORY NOTE

| $577,293 | LAS VEGAS, NEVADA |
|---|---|
|  | DATE: |

FOR VALUE RECEIVED, JEREMY SALVADOR (the "**Borrower**") hereby unconditionally promises to pay to the order of James Russell, as Trustee of the James Russell Revocable Trust (the **Noteholder**"), the principal amount of Five Hundred Seventy Seven Thousand Two Hundred Ninety Three dollars ($577,293) (the "**Loan**"), together with all accrued interest thereon, as provided in this Promissory Note (this "**Note**").

1.      Payment Dates.

        (a)      Payment Date. The aggregate unpaid principal amount of the Loan, all accrued and unpaid interest not otherwise paid in accordance with subsection (b) below, and all other amounts payable under this Note shall be due and payable on _____.

        (b)      Payment of Interest. The Borrower shall pay monthly interest payments on the Loan on or before the 30th calendar day of each month in the amount set forth in Section 2(a).

        (c)      Late Fees. If Borrower fails for any reason to satisfy all amounts due and owing on the Loan by _____, a late fee of ONE HUNDRED THOUSAND AND 00/100 dollars ($100,000) shall be added to the principal amount and become immediately due and owing for payment on _____.

2.      Interest.

        (a)      Interest Rate. Except as provided in Section 2(b), principal amounts outstanding under this Note shall bear interest at a rate per annum (the "**Interest Rate**") equal to 5.75%.

        (b)      Default Interest. If any amount payable hereunder is not paid when due (without regard to any applicable grace period), whether at stated maturity, by acceleration, or otherwise, such overdue amount shall bear interest at the Interest Rate plus eighteen percent (18%) per annum (the "**Default Rate**").

        (c)      Computation of Interest. All computations of interest hereunder shall be made on the basis of a year of 365/366 days, as the case may be, and the actual number of days elapsed. Interest shall begin to accrue on the Loan on the date of this Note. On any portion of the Loan that is repaid, interest shall not accrue on the date on which such payment is made.

10

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

(d)      <u>Interest Rate Limitation</u>. If at any time the interest rate payable on the Loan shall exceed the maximum rate of interest permitted under applicable law, such interest rate shall be reduced automatically to the maximum rate permitted.

3.      <u>Payment Mechanics</u>.

(a)      <u>Manner of Payment</u>. All payments shall be made in US dollars no later than 5:00 PM on the date on which such payment is due. Such payments shall be made by wire transfer of immediately available funds to the Noteholder's account at a bank specified by the Noteholder in writing to the Borrower from time to time.

(b)      <u>Application of Payments</u>. All payments shall be applied, *first*, to fees or charges outstanding under this Note, *second*, to accrued interest, and, *third*, to principal outstanding under this Note.

(c)      <u>Business Day</u>. Whenever any payment hereunder is due on a day that is not a Business Day (as defined as follows), such payment shall be made on the next succeeding Business Day, and interest shall be calculated to include such extension. "**Business Day**" means a day other than Saturday, Sunday, or other day on which commercial banks in Las Vegas, Nevada are authorized or required by law to close.

(d)      <u>Evidence of Debt</u>. The Borrower authorizes the Noteholder to record on the grid attached as Exhibit 1, or another similar form, the Loan made to the Borrower and the date and amount of each payment or prepayment of the Loan. The entries made by the Noteholder shall be *prima facie* evidence of the existence and amount of the obligations of the Borrower recorded therein in the absence of manifest error. No failure to make any such record, nor any errors in making any such records, shall affect the validity of the Borrower's obligation to repay the unpaid principal of the Loan with interest in accordance with the terms of this Note.

4.      <u>Permitted Prepayment</u>. Borrower shall have the right to prepay all or any principal portion of the Loan Amount at any time during the term of this Note without penalty *provided that* all then-owing interest and any other applicable fee or penalty payments on the date of payment have been fully satisfied.

5.      <u>Representations and Warranties</u>. The Borrower represents and warrants to the Noteholder as follows:

(a)      <u>Use of Proceeds</u>. The Borrower is seeking the Loan for commercial purposes, and more specifically, as consideration to settle a disputed claim of an LLC's distributions related to a business investment.

(b)      <u>Note as Valid Legal Obligation</u>. The Borrower represents that the Note is legal, valid, binding, and enforceable in accordance with its terms. The Borrower further represents that the Note is a legal (not moral) obligation and is not void.

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

(c)     <u>USA PATRIOT Act, OFAC and Other Regulations</u>.

(i)     Borrower represents and warrants that he has not (a) violated any Anti-Terrorism Laws or (b) engaged in any transaction, investment, undertaking or activity that conceals the identity, source or destination of the proceeds from any category of prohibited offenses designated by the Organization for Economic Co-operation and Development's Financial Action Task Force on Money Laundering.

(ii)     Borrower represents and warrants that he is not: (a) the target of any Sanctions, or (b) located, organized or resident in a country or territory that is, or whose government is, the subject of Sanctions, including, without limitation, Cuba, Iran, North Korea, Sudan and Syria. "**Sanctions**" means, sanctions administered or enforced by the US Department of the Treasury's Office of Foreign Assets Control (OFAC), US Department of State, United Nations Security Council, European Union, Her Majesty's Treasury, or other relevant sanctions authority.

(iii)     Borrower represents and warrants that he does not: (a) conduct any business or engage in making or receiving any contribution of goods, services or money to or for the benefit of any person, entity, or organization, or any country or territory, that is the target of any Sanctions, (b) deal in, or otherwise engage in any transaction related to, any property or interests in property blocked pursuant to any Anti-Terrorism Law or (c) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any Anti-Terrorism Law.

(d)     <u>Accuracy of Information Provided</u>. The Borrower represents and warrants that all information Borrower provided to Noteholder in connection with the request for this Loan and every prior Loan Borrower has obtained from Noteholder is complete and correct in all material respects and does not contain any untrue statements of a material fact or omit to state a material fact necessary in order to make the statements contained therein not misleading.

6.     <u>Events of Default</u>. The occurrence and continuance of any of the following shall constitute an "**Event of Default**" hereunder:

(a)     <u>Failure to Pay</u>. The Borrower fails to pay, within ten (10) days after such amount is due, (i) any principal amount of the Loan when due; (ii) any interest on the Loan when due; or (iii) any other amount due hereunder.

(b)     <u>Breach of Representations and Warranties</u>. Any representation or warranty made by the Borrower to the Noteholder herein contains an untrue or misleading statement of a material fact as of the date made.

(c)     <u>Bankruptcy; Insolvency</u>.

(i)     The Borrower institutes a voluntary case seeking relief under any law relating to bankruptcy, insolvency, reorganization, or other relief for debtors.

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND
THEIR RESPECTIVE COUNSEL

(ii)     An involuntary case is commenced seeking the liquidation or reorganization of the Borrower under any law relating to bankruptcy or insolvency, and such case is not dismissed or vacated within sixty (60) days of its filing.

(iii)    The Borrower makes a general assignment for the benefit of his creditors.

(iv)    The Borrower is unable, or admits in writing his inability, to pay his debts as they become due.

(v)     A case is commenced against the Borrower or his assets seeking attachment, execution, or similar process against all or a substantial part of his assets, and such case is not dismissed or vacated within sixty (60) days of its filing.

(d)     Failure to Give Notice. The Borrower fails to give the notice of Event of Default specified in this Section 6.

7.     Notice of Event of Default. As soon as possible after it becomes aware that an Event of Default has occurred, and in any event within five (5) Business Days, the Borrower shall notify the Noteholder in writing of the nature and extent of such Event of Default and the action, if any, it has taken or proposes to take with respect to such Event of Default.

8.     Remedies.

(a)     Upon the occurrence and during the continuance of an Event of Default, the Noteholder may, at his option, by ten (10) days written notice to the Borrower declare the outstanding principal amount of the Loan, accrued and unpaid interest thereon, and all other amounts payable hereunder immediately due and payable; *provided*, *however*, if an Event of Default described in Sections 6(c)(i), 6(c)(iii), or 6(c)(iv) shall occur, the outstanding principal amount, accrued and unpaid interest, and all other amounts payable hereunder shall become immediately due and payable without notice, declaration, or other act on the part of the Noteholder.

(b)     **Confession of Judgment**. Upon the occurrence of any Event of Default, Borrower authorizes and empowers Noteholder to file the Confession of Judgment executed concurrently herewith in the amount of in the principal amount of $577,293, less any amounts paid pursuant to this Note, plus interest thereon at the default rate of 18.00% per annum, plus all costs, including reasonable attorney fees, incurred by Noteholder in the course of collection of said Confession of Judgment.  Any attorney admitted to practice before any court of record in the United States to appear on behalf of Borrower and confess judgment on behalf of Borrower against Borrower in the full amount due under this Agreement plus attorneys' fees. Notwithstanding the amount of any such judgment, Noteholder agrees by accepting this Note to use reasonable efforts to obtain legal counsel who will charge Noteholder for services on an hourly basis, at his or her customary hourly rates and only for time expended and actual expenses incurred, and Noteholder agrees not to enforce a judgment for legal fees against Borrower in an amount in excess of the fees and expenses actually charged to Noteholder for services rendered by, and for actual expenses incurred by its counsel in connection with such

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

confession of judgment and the collection of all amounts owed by Borrower to Noteholder. In any action brought by Noteholder under this Agreement, Borrower consents to the exercise of personal jurisdiction over it by the courts of the State of Nevada and agrees that venue shall be proper in any County of the State of Nevada, in addition to any other court where venue may be proper. Borrower waives and releases, to the extent permitted by law, all errors and all rights of exemption, appeal, stay of execution, inquisition and extension upon any levy on real estate or personal property to which Borrower may otherwise be entitled under the laws of the United States of America now in force or which may hereafter be passed, as well as the benefit of any or every statute, ordinance, or rule of court which may be lawfully waived conferring upon Borrower any right or privilege of exemption, stay of exercise, or supplementary proceedings, or other relief from the enforcement or immediate enforcement of a judgment or related proceedings on a judgment. The authority and power to appear for and enter judgment against Borrower shall be exercisable concurrently in one or more jurisdictions and shall not be exhausted or extinguished by one or more exercises thereof, or by any imperfect exercise thereof or by any judgment entered pursuant thereto. Such authority and power may be exercised on one or more occasions, from time to time, in the same or different jurisdictions, as often as Noteholder shall deem necessary or desirable, for all of which this Agreement shall be sufficient warrant.

(c)     **Expenses.** Upon the occurrence of any Event of Default, the Borrower shall reimburse the Noteholder on demand for all reasonable out-of-pocket costs, expenses, and fees, including the reasonable fees and expenses of counsel, incurred by the Noteholder in connection with the negotiation, documentation, and execution of this Note and the enforcement of the Noteholder's rights hereunder.

9.     <u>Security Agreement.</u>  This Note is secured by the liens, assignments, and security interests created by that certain Collateral Assignment of Accounts of even date herewith more particularly described on <u>Exhibit 2</u> attached hereto and incorporated herein by reference.

10.     <u>Notices</u>. All notices and other communications relating to this Note shall be in writing and shall be deemed given upon the first to occur of (x) deposit with the United States Postal Service or overnight courier service, properly addressed and postage prepaid; (y) transmittal by facsimile or e-mail properly addressed (with written acknowledgment from the intended recipient such as "return receipt requested" function, return e-mail, or other written acknowledgment); or (z) actual receipt by an employee or agent of the other party. Notices hereunder shall be sent to the following addresses, or to such other address as such party shall specify in writing:

(a)     If to the Borrower:

Jeremy Salvador
27200 Torrey Road, #290
Valencia, CA 91355
E-mail: jeremy@miod-cpa.com

14

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

(b)    If to the Noteholder:

James Russell
817 S. 7th Street
Las Vegas, NV 89101
Attention: James T. Russell
E-mail: jimr@performancesteel.com

11.    <u>Governing Law</u>. This Note and any claim, controversy, dispute, or cause of action (whether in contract, tort, or otherwise) based on, arising out of, or relating to this Note and the transactions contemplated hereby shall be governed by and construed in accordance with the laws of the State of Nevada.

12.    <u>Disputes</u>.

(a)    <u>Submission to Jurisdiction</u>.

(i)    The Borrower irrevocably and unconditionally (A) agrees that any action, suit, or proceeding arising from or relating to this Note may be brought in the courts of the State of Nevada sitting in Clark County, and (B) submits to the jurisdiction of such courts in any such action, suit, or proceeding. Final judgment against the Borrower in any such action, suit, or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(ii)    Nothing in this Section 12(a) shall affect the right of the Noteholder to bring any action, suit, or proceeding relating to this Note against the Borrower or its properties in the courts of any other jurisdiction.

(iii)    Nothing in this Section 12(a) shall affect the right of the Noteholder to serve process upon the Borrower in any manner authorized by the laws of any such jurisdiction.

(b)    <u>Venue</u>. The Borrower irrevocably and unconditionally waives, to the fullest extent permitted by law, (i) any objection that it may now or hereafter have to the laying of venue in any action, suit, or proceeding relating to this Note in any court referred to in Section 13(a), and (ii) the defense of inconvenient forum to the maintenance of such action, suit, or proceeding in any such court.

(c)    <u>Waiver of Jury Trial</u>. THE BORROWER HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT HE MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY, WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY.

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

13.     <u>Successors and Assigns</u>. This Note may be assigned or transferred by the Noteholder to any individual, corporation, company, limited liability company, trust, joint venture, association, partnership, unincorporated organization, governmental authority, or other entity.

14.     <u>Integration</u>. The Settlement Agreement and Mutual Release, Collateral Assignment of Accounts, and Assignment of Rights to Tax Refund Agreement, executed concurrently herewith and this Note constitute the entire contract between the Borrower and the Noteholder with respect to the subject matter hereof and supersedes all previous agreements and understandings, oral or written, with respect thereto.

15.     <u>Amendments and Waivers</u>. No term of this Note may be waived, modified, or amended, except by an instrument in writing signed by the Borrower and the Noteholder. Any waiver of the terms hereof shall be effective only in the specific instance and for the specific purpose given.

16.     <u>No Waiver; Cumulative Remedies</u>. No failure by the Noteholder to exercise and no delay in exercising any right, remedy, or power hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, or power hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, or power. The rights, remedies, and powers herein provided are cumulative and not exclusive of any other rights, remedies, or powers provided by law.

17.     <u>Severability</u>. If any term or provision of this Note is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Note or render such term or provision invalid or unenforceable in any other jurisdiction.

18.     <u>Counterparts</u>. This Note and any amendments, waivers, consents, or supplements hereto may be executed in counterparts, each of which shall constitute an original, but all of which taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page to this Note by facsimile or in electronic ("pdf" or "tif") format shall be as effective as delivery of a manually executed counterpart of this Note.

19.     <u>Electronic Execution</u>. The words "execution," "signed," "signature," and words of similar import in this Note shall be deemed to include electronic and digital signatures and the keeping of records in electronic form, each of which shall be of the same effect, validity, and enforceability as manually executed signatures and paper-based recordkeeping systems, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 U.S.C. § 7001 *et seq*.), Nevada's Uniform Electronic Transactions Act, N.R.S. Chapter 79, and any other similar state laws based on the Uniform Electronic Transactions Act.

[SIGNATURE PAGE FOLLOWS]

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

IN WITNESS WHEREOF, the Borrower has executed this Note as of _____.

JEREMY SALVADOR, individually

_____

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

**EXHIBIT 1**

**PAYMENTS ON THE LOAN**

| Date | Amount Paid | Unpaid Principal Balance | Name of Person Making Notation |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

**EXHIBIT 2**

# COLLATERAL ASSIGNMENT OF ACCOUNTS

This COLLATERAL ASSIGNMENT OF ACCOUNTS, dated as of _____ (as amended, supplemented or otherwise modified from time to time in accordance with the provisions hereof, this "**Agreement**"), made by and among Jeremy J. Salvador a resident of the State of California (the "**Grantor**") on one hand, in favor of James Russell and Grant Whitcher on the other hand (the "**Secured Parties**").

WHEREAS, the Grantor is a partner of Miod and Company LLP, a California limited liability partnership ("**Miod**") and, as a result, has rights to a capital account with Miod (the "**Capital Account**");

WHEREAS, the Grantor has the reasonable expectation that in connection with prior cash distributions made by Movie Fund LLC to Grantor before Movie Fund LLC or Grantor realized that Movie Fund had received all of its funds, that were not contributions by its members, from the Ponzi Scheme, and the subsequent discovery that Grantor received $1,077,744 from Ponzi Scheme proceeds, Grantor will submit amended tax returns for the tax years 2017 through 2023 that may result in Grantor receiving tax refunds the ("**Tax Refunds**") (which Tax Refunds together with the Capital Account shall be collectively referred to herein as the "**Accounts**");

WHEREAS, on the date hereof, the Secured Parties have made and may make loans to the Grantor in an aggregate unpaid principal amount not exceeding  Eight Hundred Ninety Two Thousand Seven Hundred Forty Four dollars ($892,744) (the "**Loans**"), evidenced by that certain Settlement Agreement and Mutual Release together with two Negotiable Promissory Notes of even date herewith (as amended, supplemented or otherwise modified from time to time, the "**Loan Agreement**") made by the Grantor and payable to the order of the Secured Parties;

WHEREAS, this Agreement is given by the Grantor in favor of the Secured Parties to secure the payment and performance of all of the Secured Obligations (as defined in Section 3); and

WHEREAS, it is a condition to the obligations of the Secured Parties to make the Loans under the Loan Agreement that the Grantor execute and deliver this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants, terms and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.      <u>Definitions</u>.

      (a)      Unless otherwise specified herein, all references to Sections herein are to Sections of this Agreement.

      (b)      Capitalized terms used but not otherwise defined herein shall have the meanings assigned to such terms in the Loan Agreement.

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

(c)     Unless otherwise defined herein, terms used herein that are defined in the UCC shall have the meanings assigned to them in the UCC. However, if a term is defined in Article 9 of the UCC differently than in another Article of the UCC, the term has the meaning specified in Article 9.

(d)     For purposes of this Agreement, the following terms shall have the following meanings:

"**Collateral**" has the meaning set forth in Section 2.

"**Secured Obligations**" has the meaning set forth in Section 3.

"**UCC**" means the Uniform Commercial Code as in effect from time to time in the State of Nevada or, when the laws of any other state govern the method or manner of the perfection or enforcement of any security interest in any of the Collateral, the Uniform Commercial Code as in effect from time to time in such state.

2.     <u>Grant of Security Interest</u>. The Grantor hereby assigns, pledges, transfers and sets over to the Secured Parties, and grants to the Secured Parties a continuing lien upon and security interest in and to, all of the Grantor's now existing or hereafter from time to time arising or acquired right, title and interest in and to the Accounts and all proceeds thereunder, including, but not limited to, (a) all rights of the Grantor to receive monies due or to become due to it thereunder or in connection therewith; (b) all rights of the Grantor to indemnification and claims for damages or other relief pursuant to or in respect of the Accounts; (c) all rights of the Grantor to perform and exercise all remedies thereunder and to require performance by the other parties to the Accounts of their obligations thereunder; and (d) all proceeds, collections, recoveries and rights of subrogation with respect to the foregoing (all of the foregoing being collectively referred to herein as the "**Collateral**").

3.     <u>Secured Obligations</u>. The Collateral secures the due and prompt payment and performance of:

(a)     the obligations of the Grantor from time to time arising under the Loan Agreement, this Agreement or otherwise with respect to the due and prompt payment of (i) the principal and interest on the Loans (including interest accruing during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding), when and as due, whether at maturity, by acceleration, upon one or more dates set for prepayment or otherwise and (ii) all other monetary obligations, including fees, costs, attorneys' fees and disbursements, reimbursement obligations, contract causes of action, expenses and indemnities, whether primary, secondary, direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, fixed or otherwise (including monetary obligations incurred during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding), of the Grantor under or in respect of the Loan Agreement and this Agreement; and

(b)     all other covenants, duties, debts, obligations and liabilities of any kind of the Grantor under or in respect of the Loan Agreement, this Agreement or any other document

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND
THEIR RESPECTIVE COUNSEL

made, delivered or given in connection with any of the foregoing, in each case whether evidenced by a note or other writing, whether allowed in any bankruptcy, insolvency, receivership or other similar proceeding, whether arising from an extension of credit, issuance of a letter of credit, acceptance, loan, guaranty, indemnification or otherwise, and whether primary, secondary, direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, fixed or otherwise (all such obligations, covenants, duties, debts, liabilities, sums and expenses set forth in Section 3 being herein collectively called the "**Secured Obligations**").

4.      <u>No Assumption of Duties.</u> This Agreement is executed only as security for the Secured Obligations and, therefore, the execution and delivery of this Agreement shall not subject the Secured Parties to, or transfer or pass to the Secured Parties or in any way affect or modify, the liability of the Grantor under the Accounts. In no event shall the acceptance of this Agreement by the Secured Parties or the exercise by the Secured Parties of any rights hereunder or assigned hereby, constitute an assumption of any liability or obligation of the Grantor to any of the other parties to the Accounts or any other Persons.

5.      <u>Perfection of Security Interest and Further Assurances</u>.

(a)      The Grantor hereby irrevocably authorizes the Secured Parties at any time and from time to time to file in any relevant jurisdiction any financing statements and amendments thereto that contain the information required by Article 9 of the UCC of such applicable jurisdiction for the filing of any financing statement or amendment relating to the Collateral, including any financing or continuation statements or other documents for the purpose of perfecting, confirming, continuing, enforcing or protecting the security interest granted by the Grantor hereunder, without the signature of the Grantor where permitted by law. The Grantor agrees to provide all information required by any Secured Party pursuant to this Section promptly to the Secured Party upon request. The Secured Parties agree to provide notice to Grantor of any such filings within three (3) business days. Grantor also accepts this Agreement as sufficient notice of any such filings made within 30 calendar days of this Agreement's effective date.

(b)      The Grantor agrees that at any time and from time to time, at the expense of the Grantor, the Grantor will promptly execute and deliver all further instruments and documents, obtain such agreements from third parties, and take all further action, that may be necessary or desirable, or that any Secured Party may reasonably request, in order to create and/or maintain the validity, perfection or priority of and protect any security interest granted or purported to be granted hereby or to enable the Secured Parties to exercise and enforce their rights and remedies hereunder or under any other agreement with respect to any Collateral.

6.      <u>Representations, Warranties and Covenants</u>. The Grantor represents, warrants and covenants with and to the Secured Parties the following (all of such representations, warranties and covenants being continuing as long as any of the Secured Obligations are outstanding):

(a)      Each of the Loan Agreements is and shall be a legal, valid and binding obligation of the Grantor enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors'

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

rights generally and subject to equitable principles (regardless of whether enforcement is sought in equity or at law).

(b)      No default or event of default under or with respect to the Accounts exists or has occurred.

(c)      The Grantor has obtained or will obtain all consents required for the valid and binding assignment of the Accounts.

(d)      The Grantor shall promptly and faithfully abide by, perform and discharge the obligations, covenants, conditions and duties which the Accounts provide are to be performed by the Grantor.

(e)      At the Grantor's sole cost and expense, the Grantor shall appear in and defend any action or proceedings affecting any Secured Party and arising under, growing out of or in any manner connected with the obligations, covenants, conditions, duties, agreements or liabilities of the Grantor pursuant to the Accounts.

(f)      The Grantor shall: (i) promptly notify the Secured Parties of each and every dispute with, proceeding or claim against, cause of action or litigation involving any Person for which the Grantor has or may have any right to indemnification or claim for damages or other relief or remedies, whether at law or in equity, arising under or in connection with the Accounts, (ii) keep the Secured Parties reasonably informed of all material circumstances bearing upon the Collateral/circumstances bearing adversely upon the Collateral, (iii) diligently enforce all rights to indemnification or claim for damages or other relief or remedies, whether at law or in equity, arising under or in connection with the Accounts and (iv) not take or permit, any action that adversely affects, in the good faith judgment of any Secured Party, the Secured Obligations or the Collateral.

(g)      The Grantor shall promptly deliver, or cause to be delivered, to the Secured Party a copy of every written notice or communication received by the Grantor regarding his rights and obligations to the Capital Account and the Tax Refunds, in the manner and at the place provided for notices contained herein.

(h)      Upon the occurrence and continuance of an Event of Default, the Grantor shall not, without the prior written consent of the Secured Parties, waive, release or discharge any of his rights or any of the obligations, duties or liabilities of any other party to the Accounts, or compromise or settle any right or any claim or dispute with respect to any of his rights to the Accounts. No such waiver, release, discharge, compromise or settlement shall be effective without the prior written consent of the Secured Parties.

(i)      The Grantor will not assign, pledge or otherwise encumber any of his rights, title or interest under, in or to any of the Accounts or any of the Collateral except for the assignment to the Secured Parties and their successors or assigns as set forth herein.

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

7.    <u>Events of Default</u>. All Secured Obligations shall become immediately due and payable, without notice or demand, at the option of any Secured Party, upon the occurrence of any Event of Default, as such term is defined in the Loan Agreement ("**Event of Default**").

8.    <u>Rights and Remedies</u>.

(a)    At any time an Event of Default exists or has occurred and is continuing, the Secured Parties shall have all rights and remedies under this Agreement, the UCC and other applicable law, and shall have the absolute right, but not the obligation, to enforce, in its name, any and all rights to indemnification or claim for damages or other relief or remedies, whether at law or in equity, arising under or in connection with the Accounts, or otherwise and apply the proceeds thereof to the Secured Obligations in such order or manner as the Secured Parties shall determine.

(b)    In order to effectuate the foregoing, the Grantor hereby appoints each of the Secured Parties and each officer and employee thereof the Grantor's attorney-in-fact, with full authority in the place and stead of the Grantor and in the name of the Grantor or otherwise, from time to time during the continuance of an Event of Default in the Secured Party's discretion to take any action and to execute any instrument which the Secured Party may deem necessary or advisable to accomplish the purposes of this Agreement (but the Secured Party shall not be obligated to, and shall have no liability to the Grantor or any third party for failure to, do so). This appointment, being coupled with an interest, shall be irrevocable. The Grantor hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof.

(c)    No failure to exercise, and no delay in exercising on the part of the Secured Party any right, power or privilege under this Agreement, the Loan Agreement, any of the other Loan Documents or other documents referred to herein or therein shall operate as a waiver thereof; nor shall any single or partial exercise of any right, power or privilege hereunder or thereunder preclude any other or further exercise thereof or the exercise of any other right, power and privilege. The rights and remedies of the Secured Party under this Agreement, the other Loan Documents or applicable law, are cumulative and not exclusive and all such rights and remedies may be exercised alternatively, successively or concurrently.

(d)    The Grantor, Miod, the United States Department of Treasury, and the United States Internal Revenue Service are hereby authorized to recognize, and the Grantor hereby does recognize, the Secured Parties' claim and rights hereunder without investigating any reason for any action taken by the Secured Parties or the validity or the amount of the obligations under the Loan Agreement and the Loan Documents or the existence of any default thereunder.

9.    <u>Indemnification</u>.

(a)    The Grantor shall indemnify and hold the Secured Parties, agents and counsel, harmless from and against any and all losses, claims, damages, liabilities, costs or expenses imposed on, incurred by or asserted against any of them in connection with any litigation, investigation, claim or proceeding commenced or threatened related to the negotiation,

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND
THEIR RESPECTIVE COUNSEL

preparation, execution, delivery, enforcement, performance, or administration of this Agreement, any other Loan Documents, or any undertaking or proceeding related to any of the transactions contemplated within this Agreement or any act, omission, event or transaction related or attendant thereto, including amounts paid in settlement, court costs, and the fees and expenses of counsel. To the extent that the undertaking to indemnify, pay and hold harmless set forth in this Section may be unenforceable because it violates any law or public policy, the Grantor shall pay the maximum portion which it is permitted to pay under applicable law to the Secured Party in satisfaction of indemnified matters under this Section 9. The foregoing indemnity shall survive the termination of this Agreement and the termination of the Loan Agreement.

(b)      Nothing in Section 9(a) is intended by the parties to provide any duty to indemnify any individual member of Movie Fund LLC except for James Russell and Grant Whitcher related to the matters set forth therein.  In addition, nothing in Section 9(a) shall include a duty or obligation by Grantor to indemnify and hold harmless the Secured Parties from any losses, claims, damages, liabilities, costs or expenses imposed on, incurred by or asserted against any of them by: (1) Zachary Horwitz, 1inMM Capital, LLC and other Horwitz related entities; (2) Romik Yeghnazary, any entity controlled by Romik Yeghnazary, including but not limited to Lending Arena LLC; (3) The Estate of Jason Page, Laura Page, and any entity controlled by Jason Page, The Estate of Jason Page or Laura Page, including but not limited to Pure Health and Movie Matrix.

10.      Reasonable Care. The Secured Parties shall have no duty with respect to the care and preservation of the Collateral beyond the exercise of reasonable care. The Secured Parties shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral in its possession if the Collateral is accorded treatment substantially equal to that which the Secured Parties accords their own property, it being understood that the Secured Parties shall not have any responsibility for (a) ascertaining or taking action with respect to any claims, the nature or sufficiency of any payment or performance by any party under or pursuant to any agreement relating to the Collateral or other matters relative to any Collateral, whether or not the Secured Parties have or are deemed to have knowledge of such matters, or (b) taking any necessary steps to preserve rights against any parties with respect to any Collateral.

11.      Amendments. None of the terms or provisions of this Agreement may be amended, modified, supplemented, terminated or waived, and no consent to any departure by the Grantor therefrom shall be effective unless the same shall be in writing and signed by the Secured Parties and the Grantor, and then such amendment, modification, supplement, waiver or consent shall be effective only in the specific instance and for the specific purpose for which made or given.

12.      Addresses For Notices. All notices and other communications provided for in this Agreement shall be in writing and shall be given in the manner and become effective as set forth in the Loan Agreement, and addressed to the respective parties at their addresses as specified on the signature pages hereof or as to either party at such other address as shall be designated by such party in a written notice to each other party.

13.      Continuing Security Interest; Further Actions. This Agreement shall create a continuing lien and security interest in the Collateral and shall (a) subject to Section 14, remain in full

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

force and effect until payment and performance in full of the Secured Obligations, (b) be binding upon the Grantor, his successors and assigns, and (c) inure to the benefit of the Secured Parties and their successors, transferees and assigns; *provided,* that the Grantor may not assign or otherwise transfer any of his rights or obligations under this Agreement without the prior written consent of the Secured Parties. Without limiting the generality of the foregoing clause (c), any assignee of any Secured Party's interest in any agreement or document which includes all or any of the Secured Obligations shall, upon assignment, become vested with all the benefits granted to the Secured Party herein with respect to such Secured Obligations.

14.    <u>Termination; Release</u>. On the date on which all Secured Obligations have been paid and performed in full, the Secured Parties will, at the request and sole expense of the Grantor, execute and deliver to the Grantor a proper instrument or instruments acknowledging the satisfaction and termination of this Agreement.

15.    <u>Governing Law</u>. This Agreement and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Agreement and the transactions contemplated hereby shall be governed by, and construed in accordance with, the laws of the State of Nevada.

16.    <u>No Third-Party Beneficiaries</u>. This Agreement benefits solely the parties to this Agreement and their respective successors and assigns and nothing in this Agreement, express or implied, confers on any other Person any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement. This Agreement expressly excludes Romik Yeghnazary, any entity controlled by Yeghnazary, including but not limited to Lending Arena LLC; The Estate of Jason Page, Laura Page, and any entity controlled by Jason Page, The Estate of Jason Page or Laura Page, including but not limited to Pure Health and Movie Matrix from receiving any benefit hereunder.

17.    <u>Miscellaneous</u>. This Agreement and any amendments, waivers, consents or supplements hereto may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Agreement. This Agreement and the Loan Agreement constitute the entire contract among the parties with respect to the subject matter hereof and supersede all previous agreements and understandings, oral or written, with respect thereto. If any provision of this Agreement is held to be invalid or unenforceable, such invalidity or unenforceability shall not invalidate this Agreement as a whole but this Agreement shall be construed as though it did not contain the particular provision or provisions held to be invalid or unenforceable and the rights and obligations of the parties shall be construed and enforced only to such extent as shall be permitted by law.

[SIGNATURE PAGE FOLLOWS]

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

Jeremy Salvador, as Grantor

_____

James Russell, as Secured Party

_____

Grant Whitcher, as Secured Party

_____

Miod and Company LLP hereby consents and agrees to the provisions of this Agreement as of this ___ day of _____, 2024.

Miod and Company LLP

By: _____

Name: _____

Title: _____

Address for Notices: _____

_____

26

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

# Exhibit B

# NEGOTIABLE PROMISSORY NOTE

| $315,451 | LAS VEGAS, NEVADA |
|---|---|
| | DATE: |

FOR VALUE RECEIVED, JEREMY SALVADOR (the "**Borrower**") hereby unconditionally promises to pay to the order of Grant Whitcher, as Trustee of the Grant Whitcher Living Trust (the "**Noteholder**"), the principal amount of Three Hundred Fifteen Thousand Four Hundred Fifty One dollars ($315,451) (the "**Loan**"), together with all accrued interest thereon, as provided in this Promissory Note (this "**Note**").

       1.    <u>Payment Dates</u>.

       (a)    <u>Payment Date</u>. The aggregate unpaid principal amount of the Loan, all accrued and unpaid interest not otherwise paid in accordance with subsection (b) below, and all other amounts payable under this Note shall be due and payable on _____.

       (b)    <u>Payment of Interest</u>. The Borrower shall pay monthly interest payments on the Loan on or before the 30th calendar day of each month in the amount set forth in Section 2(a).

       (c)    <u>Late Fees</u>. If Borrower fails for any reason to satisfy all amounts due and owing on the Loan by _____, a late fee of ONE HUNDRED THOUSAND AND 00/100 dollars ($100,000) shall be added to the principal amount and become immediately due and owing for payment on _____.

       2.    <u>Interest</u>.

       (a)    <u>Interest Rate</u>. Except as provided in Section 2(b), principal amounts outstanding under this Note shall bear interest at a rate per annum (the "**Interest Rate**") equal to 5.75%.

       (b)    <u>Default Interest</u>. If any amount payable hereunder is not paid when due (without regard to any applicable grace period), whether at stated maturity, by acceleration, or otherwise, such overdue amount shall bear interest at the Interest Rate plus eighteen percent (18%) per annum (the "**Default Rate**").

       (c)    <u>Computation of Interest</u>. All computations of interest hereunder shall be made on the basis of a year of 365/366 days, as the case may be, and the actual number of days elapsed. Interest shall begin to accrue on the Loan on the date of this Note. On any portion of the Loan that is repaid, interest shall not accrue on the date on which such payment is made.

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND
THEIR RESPECTIVE COUNSEL

(d)    <u>Interest Rate Limitation</u>. If at any time the interest rate payable on the Loan shall exceed the maximum rate of interest permitted under applicable law, such interest rate shall be reduced automatically to the maximum rate permitted.

3.    <u>Payment Mechanics</u>.

(a)    <u>Manner of Payment</u>. All payments shall be made in US dollars no later than 5:00 PM on the date on which such payment is due. Such payments shall be made by wire transfer of immediately available funds to the Noteholder's account at a bank specified by the Noteholder in writing to the Borrower from time to time.

(b)    <u>Application of Payments</u>. All payments shall be applied, *first*, to fees or charges outstanding under this Note, *second*, to accrued interest, and, *third*, to principal outstanding under this Note.

(c)    <u>Business Day</u>. Whenever any payment hereunder is due on a day that is not a Business Day (as defined as follows), such payment shall be made on the next succeeding Business Day, and interest shall be calculated to include such extension. "**Business Day**" means a day other than Saturday, Sunday, or other day on which commercial banks in Las Vegas, Nevada are authorized or required by law to close.

(d)    <u>Evidence of Debt</u>. The Borrower authorizes the Noteholder to record on the grid attached as Exhibit 1, or another similar form, the Loan made to the Borrower and the date and amount of each payment or prepayment of the Loan. The entries made by the Noteholder shall be *prima facie* evidence of the existence and amount of the obligations of the Borrower recorded therein in the absence of manifest error. No failure to make any such record, nor any errors in making any such records, shall affect the validity of the Borrower's obligation to repay the unpaid principal of the Loan with interest in accordance with the terms of this Note.

4.    <u>Permitted Prepayment</u>. Borrower shall have the right to prepay all or any principal portion of the Loan Amount at any time during the term of this Note without penalty *provided that* all then-owing interest and any other applicable fee or penalty payments on the date of payment have been fully satisfied.

5.    <u>Representations and Warranties</u>. The Borrower represents and warrants to the Noteholder as follows:

(a)    <u>Use of Proceeds</u>. The Borrower is seeking the Loan for commercial purposes, and more specifically, as consideration to settle a disputed claim of an LLC's distributions related to a business investment.

(b)    <u>Note as Valid Legal Obligation</u>. The Borrower represents that the Note is legal, valid, binding, and enforceable in accordance with its terms. The Borrower further represents that the Note is a legal (not moral) obligation and is not void.

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

(c)    USA PATRIOT Act, OFAC and Other Regulations.

(i)    Borrower represents and warrants that he has not (a) violated any Anti-Terrorism Laws or (b) engaged in any transaction, investment, undertaking or activity that conceals the identity, source or destination of the proceeds from any category of prohibited offenses designated by the Organization for Economic Co-operation and Development's Financial Action Task Force on Money Laundering.

(ii)    Borrower represents and warrants that he is not: (a) the target of any Sanctions, or (b) located, organized or resident in a country or territory that is, or whose government is, the subject of Sanctions, including, without limitation, Cuba, Iran, North Korea, Sudan and Syria. "**Sanctions**" means, sanctions administered or enforced by the US Department of the Treasury's Office of Foreign Assets Control (OFAC), US Department of State, United Nations Security Council, European Union, Her Majesty's Treasury, or other relevant sanctions authority.

(iii)    Borrower represents and warrants that he does not: (a) conduct any business or engage in making or receiving any contribution of goods, services or money to or for the benefit of any person, entity, or organization, or any country or territory, that is the target of any Sanctions, (b) deal in, or otherwise engage in any transaction related to, any property or interests in property blocked pursuant to any Anti-Terrorism Law or (c) engage in or conspire to engage in any transaction that evades or avoids, or has the purpose of evading or avoiding, or attempts to violate, any of the prohibitions set forth in any Anti-Terrorism Law.

(d)    Accuracy of Information Provided. The Borrower represents and warrants that all information Borrower provided to Noteholder in connection with the request for this Loan and every prior Loan Borrower has obtained from Noteholder is complete and correct in all material respects and does not contain any untrue statements of a material fact or omit to state a material fact necessary in order to make the statements contained therein not misleading.

6.    Events of Default. The occurrence and continuance of any of the following shall constitute an "**Event of Default**" hereunder:

(a)    Failure to Pay. The Borrower fails to pay, within ten (10) days after such amount is due, (i) any principal amount of the Loan when due; (ii) any interest on the Loan when due; or (iii) any other amount due hereunder.

(b)    Breach of Representations and Warranties. Any representation or warranty made by the Borrower to the Noteholder herein contains an untrue or misleading statement of a material fact as of the date made.

(c)    Bankruptcy; Insolvency.

(i)    The Borrower institutes a voluntary case seeking relief under any law relating to bankruptcy, insolvency, reorganization, or other relief for debtors.

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND
THEIR RESPECTIVE COUNSEL

       (ii)     An involuntary case is commenced seeking the liquidation or reorganization of the Borrower under any law relating to bankruptcy or insolvency, and such case is not dismissed or vacated within sixty (60) days of its filing.

       (iii)    The Borrower makes a general assignment for the benefit of his creditors.

       (iv)    The Borrower is unable, or admits in writing his inability, to pay his debts as they become due.

       (v)     A case is commenced against the Borrower or his assets seeking attachment, execution, or similar process against all or a substantial part of his assets, and such case is not dismissed or vacated within sixty (60) days of its filing.

       (d)    <u>Failure to Give Notice.</u> The Borrower fails to give the notice of Event of Default specified in this Section 6.

     7.    <u>Notice of Event of Default.</u> As soon as possible after it becomes aware that an Event of Default has occurred, and in any event within five (5) Business Days, the Borrower shall notify the Noteholder in writing of the nature and extent of such Event of Default and the action, if any, it has taken or proposes to take with respect to such Event of Default.

     8.    <u>Remedies</u>.

       (a)    Upon the occurrence and during the continuance of an Event of Default, the Noteholder may, at his option, by ten(10) days written notice to the Borrower declare the outstanding principal amount of the Loan, accrued and unpaid interest thereon, and all other amounts payable hereunder immediately due and payable; *provided*, *however*, if an Event of Default described in Sections 6(c)(i), 6(c)(iii), or 6(c)(iv) shall occur, the outstanding principal amount, accrued and unpaid interest, and all other amounts payable hereunder shall become immediately due and payable without notice, declaration, or other act on the part of the Noteholder.

       (b)    **Confession of Judgment**. Upon the occurrence of any Event of Default, Borrower authorizes and empowers Noteholder to file the Confession of Judgment executed concurrently herewith in the amount of in the principal amount of $315,451, less any amounts paid pursuant to this Note, plus interest thereon at the default rate of 18.00% per annum, plus all costs, including reasonable attorney fees, incurred by Noteholder in the course of collection of said Confession of Judgment.  Any attorney admitted to practice before any court of record in the United States to appear on behalf of Borrower and confess judgment on behalf of Borrower against Borrower in the full amount due under this Agreement plus attorneys' fees. Notwithstanding the amount of any such judgment, Noteholder agrees by accepting this Note to use reasonable efforts to obtain legal counsel who will charge Noteholder for services on an hourly basis, at his or her customary hourly rates and only for time expended and actual expenses incurred, and Noteholder agrees not to enforce a judgment for legal fees against Borrower in an amount in excess of the fees and expenses actually charged to Noteholder for services rendered by, and for actual expenses incurred by its counsel in connection with such

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

confession of judgment and the collection of all amounts owed by Borrower to Noteholder. In any action brought by Noteholder under this Agreement, Borrower consents to the exercise of personal jurisdiction over it by the courts of the State of Nevada and agrees that venue shall be proper in any County of the State of Nevada, in addition to any other court where venue may be proper. Borrower waives and releases, to the extent permitted by law, all errors and all rights of exemption, appeal, stay of execution, inquisition and extension upon any levy on real estate or personal property to which Borrower may otherwise be entitled under the laws of the United States of America now in force or which may hereafter be passed, as well as the benefit of any or every statute, ordinance, or rule of court which may be lawfully waived conferring upon Borrower any right or privilege of exemption, stay of exercise, or supplementary proceedings, or other relief from the enforcement or immediate enforcement of a judgment or related proceedings on a judgment. The authority and power to appear for and enter judgment against Borrower shall be exercisable concurrently in one or more jurisdictions and shall not be exhausted or extinguished by one or more exercises thereof, or by any imperfect exercise thereof or by any judgment entered pursuant thereto. Such authority and power may be exercised on one or more occasions, from time to time, in the same or different jurisdictions, as often as Noteholder shall deem necessary or desirable, for all of which this Agreement shall be sufficient warrant.

(c)    **Expenses.** Upon the occurrence of any Event of Default, the Borrower shall reimburse the Noteholder on demand for all reasonable out-of-pocket costs, expenses, and fees, including the reasonable fees and expenses of counsel, incurred by the Noteholder in connection with the negotiation, documentation, and execution of this Note and the enforcement of the Noteholder's rights hereunder.

9.    <u>Security Agreement.</u>  This Note is secured by the liens, assignments, and security interests created by that certain Collateral Assignment of Accounts of even date herewith more particularly described on <u>Exhibit 2</u> attached hereto and incorporated herein by reference.

10.    <u>Notices</u>. All notices and other communications relating to this Note shall be in writing and shall be deemed given upon the first to occur of (x) deposit with the United States Postal Service or overnight courier service, properly addressed and postage prepaid; (y) transmittal by facsimile or e-mail properly addressed (with written acknowledgment from the intended recipient such as "return receipt requested" function, return e-mail, or other written acknowledgment); or (z) actual receipt by an employee or agent of the other party. Notices hereunder shall be sent to the following addresses, or to such other address as such party shall specify in writing:

(a)    If to the Borrower:

Jeremy Salvador
27200 Torrey Road, #290
Valencia, CA 91355
E-mail: jeremy@miod-cpa.com

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND
THEIR RESPECTIVE COUNSEL

    (b)    If to the Noteholder:

        Grant Whitcher
        817 S. 7th Street
        Las Vegas, NV 89101
        Attention: Grant Whitcher
        E-mail: steelpro2@aol.com

    11.    <u>Governing Law</u>. This Note and any claim, controversy, dispute, or cause of action (whether in contract, tort, or otherwise) based on, arising out of, or relating to this Note and the transactions contemplated hereby shall be governed by and construed in accordance with the laws of the State of Nevada.

    12.    <u>Disputes</u>.

    (a)    <u>Submission to Jurisdiction</u>.

        (i)    The Borrower irrevocably and unconditionally (A) agrees that any action, suit, or proceeding arising from or relating to this Note may be brought in the courts of the State of Nevada sitting in Clark County, and (B) submits to the jurisdiction of such courts in any such action, suit, or proceeding. Final judgment against the Borrower in any such action, suit, or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

        (ii)    Nothing in this Section 12(a) shall affect the right of the Noteholder to bring any action, suit, or proceeding relating to this Note against the Borrower or its properties in the courts of any other jurisdiction.

        (iii)    Nothing in this Section 12(a) shall affect the right of the Noteholder to serve process upon the Borrower in any manner authorized by the laws of any such jurisdiction.

    (b)    <u>Venue</u>. The Borrower irrevocably and unconditionally waives, to the fullest extent permitted by law, (i) any objection that it may now or hereafter have to the laying of venue in any action, suit, or proceeding relating to this Note in any court referred to in Section 13(a), and (ii) the defense of inconvenient forum to the maintenance of such action, suit, or proceeding in any such court.

    (c)    <u>Waiver of Jury Trial</u>. THE BORROWER HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT HE MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY RELATING TO THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREBY, WHETHER BASED ON CONTRACT, TORT, OR ANY OTHER THEORY.

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

13.    <u>Successors and Assigns</u>. This Note may be assigned or transferred by the Noteholder to any individual, corporation, company, limited liability company, trust, joint venture, association, partnership, unincorporated organization, governmental authority, or other entity.

14.    <u>Integration</u>. The Settlement Agreement and Mutual Release, Collateral Assignment of Accounts, and Assignment of Rights to Tax Refund Agreement, executed concurrently herewith and this Note constitute the entire contract between the Borrower and the Noteholder with respect to the subject matter hereof and supersedes all previous agreements and understandings, oral or written, with respect thereto.

15.    <u>Amendments and Waivers</u>. No term of this Note may be waived, modified, or amended, except by an instrument in writing signed by the Borrower and the Noteholder. Any waiver of the terms hereof shall be effective only in the specific instance and for the specific purpose given.

16.    <u>No Waiver; Cumulative Remedies</u>. No failure by the Noteholder to exercise and no delay in exercising any right, remedy, or power hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, or power hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, or power. The rights, remedies, and powers herein provided are cumulative and not exclusive of any other rights, remedies, or powers provided by law.

17.    <u>Severability</u>. If any term or provision of this Note is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability shall not affect any other term or provision of this Note or render such term or provision invalid or unenforceable in any other jurisdiction.

18.    <u>Counterparts</u>. This Note and any amendments, waivers, consents, or supplements hereto may be executed in counterparts, each of which shall constitute an original, but all of which taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page to this Note by facsimile or in electronic ("pdf" or "tif") format shall be as effective as delivery of a manually executed counterpart of this Note.

19.    <u>Electronic Execution</u>. The words "execution," "signed," "signature," and words of similar import in this Note shall be deemed to include electronic and digital signatures and the keeping of records in electronic form, each of which shall be of the same effect, validity, and enforceability as manually executed signatures and paper-based recordkeeping systems, to the extent and as provided for under applicable law, including the Electronic Signatures in Global and National Commerce Act of 2000 (15 U.S.C. § 7001 *et seq*.), Nevada's Uniform Electronic Transactions Act, N.R.S. Chapter 79, and any other similar state laws based on the Uniform Electronic Transactions Act.

[SIGNATURE PAGE FOLLOWS]

**CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND
THEIR RESPECTIVE COUNSEL**

IN WITNESS WHEREOF, the Borrower has executed this Note as of _____.

JEREMY SALVADOR, individually


_____

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

## EXHIBIT 1

## PAYMENTS ON THE LOAN

| Date | Amount Paid | Unpaid Principal Balance | Name of Person Making Notation |
|------|-------------|--------------------------|-------------------------------|
|      |             |                          |                               |
|      |             |                          |                               |
|      |             |                          |                               |
|      |             |                          |                               |
|      |             |                          |                               |
|      |             |                          |                               |
|      |             |                          |                               |
|      |             |                          |                               |
|      |             |                          |                               |
|      |             |                          |                               |
|      |             |                          |                               |

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND
THEIR RESPECTIVE COUNSEL

**EXHIBIT 2**

# COLLATERAL ASSIGNMENT OF ACCOUNTS

This COLLATERAL ASSIGNMENT OF ACCOUNTS, dated as of _____, 2024 (as amended, supplemented or otherwise modified from time to time in accordance with the provisions hereof, this "**Agreement**"), made by and among Jeremy J. Salvador a resident of the State of California (the "**Grantor**") on one hand, in favor of James Russell, and Grant Whitcher on the other hand (the "**Secured Parties**").

WHEREAS, the Grantor is a partner of Miod and Company LLP, a California limited liability partnership ("**Miod"**) and, as a result, has rights to a capital account with Miod (the "**Capital Account**");

WHEREAS, the Grantor has the reasonable expectation that in connection with prior cash distributions made by Movie Fund LLC to Grantor before Movie Fund LLC or Grantor realized that Movie Fund had received all of its funds, that were not contributions by its members, from the Ponzi Scheme, and the subsequent discovery that Grantor received  $1,077,744 from Ponzi Scheme proceeds, Grantor will submit amended tax returns for the tax years 2017 through 2023 that may result in Grantor receiving tax refunds the ("**Tax Refunds"**) (which Tax Refunds together with the Capital Account shall be collectively referred to herein as the "**Accounts**");

WHEREAS, on the date hereof, the Secured Parties have made and may make loans to the Grantor in an aggregate unpaid principal amount not exceeding Eight Hundred Ninety Two Thousand Seven Hundred Forty Four dollars ($892,744) (the "**Loans**"), evidenced by that certain Settlement Agreement and Mutual Release together with two Negotiable Promissory Notes of even date herewith (as amended, supplemented or otherwise modified from time to time, the "**Loan Agreement**") made by the Grantor and payable to the order of the Secured Parties;

WHEREAS, this Agreement is given by the Grantor in favor of the Secured Parties to secure the payment and performance of all of the Secured Obligations (as defined in Section 3); and

WHEREAS, it is a condition to the obligations of the Secured Parties to make the Loans under the Loan Agreement that the Grantor execute and deliver this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants, terms and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

     1.     Definitions.

        (a)    Unless otherwise specified herein, all references to Sections herein are to Sections of this Agreement.

        (b)    Capitalized terms used but not otherwise defined herein shall have the meanings assigned to such terms in the Loan Agreement.

36

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

      (c)     Unless otherwise defined herein, terms used herein that are defined in the UCC shall have the meanings assigned to them in the UCC. However, if a term is defined in Article 9 of the UCC differently than in another Article of the UCC, the term has the meaning specified in Article 9.

      (d)     For purposes of this Agreement, the following terms shall have the following meanings:

      "**Collateral**" has the meaning set forth in Section 2.

      "**Secured Obligations**" has the meaning set forth in Section 3.

      "**UCC**" means the Uniform Commercial Code as in effect from time to time in the State of Nevada or, when the laws of any other state govern the method or manner of the perfection or enforcement of any security interest in any of the Collateral, the Uniform Commercial Code as in effect from time to time in such state.

      2.     <u>Grant of Security Interest</u>. The Grantor hereby assigns, pledges, transfers and sets over to the Secured Parties, and grants to the Secured Parties a continuing lien upon and security interest in and to, all of the Grantor's now existing or hereafter from time to time arising or acquired right, title and interest in and to the Accounts and all proceeds thereunder, including, but not limited to, (a) all rights of the Grantor to receive monies due or to become due to it thereunder or in connection therewith; (b) all rights of the Grantor to indemnification and claims for damages or other relief pursuant to or in respect of the Accounts; (c) all rights of the Grantor to perform and exercise all remedies thereunder and to require performance by the other parties to the Accounts of their obligations thereunder; and (d) all proceeds, collections, recoveries and rights of subrogation with respect to the foregoing (all of the foregoing being collectively referred to herein as the "**Collateral**").

      3.     <u>Secured Obligations</u>. The Collateral secures the due and prompt payment and performance of:

      (a)     the obligations of the Grantor from time to time arising under the Loan Agreement, this Agreement or otherwise with respect to the due and prompt payment of (i) the principal and interest on the Loans (including interest accruing during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding), when and as due, whether at maturity, by acceleration, upon one or more dates set for prepayment or otherwise and (ii) all other monetary obligations, including fees, costs, attorneys' fees and disbursements, reimbursement obligations, contract causes of action, expenses and indemnities, whether primary, secondary, direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, fixed or otherwise (including monetary obligations incurred during the pendency of any bankruptcy, insolvency, receivership or other similar proceeding, regardless of whether allowed or allowable in such proceeding), of the Grantor under or in respect of the Loan Agreement and this Agreement; and

      (b)     all other covenants, duties, debts, obligations and liabilities of any kind of the Grantor under or in respect of the Loan Agreement, this Agreement or any other document

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND
THEIR RESPECTIVE COUNSEL

made, delivered or given in connection with any of the foregoing, in each case whether evidenced by a note or other writing, whether allowed in any bankruptcy, insolvency, receivership or other similar proceeding, whether arising from an extension of credit, issuance of a letter of credit, acceptance, loan, guaranty, indemnification or otherwise, and whether primary, secondary, direct or indirect, absolute or contingent, due or to become due, now existing or hereafter arising, fixed or otherwise (all such obligations, covenants, duties, debts, liabilities, sums and expenses set forth in Section 3 being herein collectively called the "**Secured Obligations**").

4.    <u>No Assumption of Duties.</u> This Agreement is executed only as security for the Secured Obligations and, therefore, the execution and delivery of this Agreement shall not subject the Secured Parties to, or transfer or pass to the Secured Parties or in any way affect or modify, the liability of the Grantor under the Accounts. In no event shall the acceptance of this Agreement by the Secured Parties or the exercise by the Secured Parties of any rights hereunder or assigned hereby, constitute an assumption of any liability or obligation of the Grantor to any of the other parties to the Accounts or any other Persons.

5.    <u>Perfection of Security Interest and Further Assurances</u>.

(a)    The Grantor hereby irrevocably authorizes the Secured Parties at any time and from time to time to file in any relevant jurisdiction any financing statements and amendments thereto that contain the information required by Article 9 of the UCC of such applicable jurisdiction for the filing of any financing statement or amendment relating to the Collateral, including any financing or continuation statements or other documents for the purpose of perfecting, confirming, continuing, enforcing or protecting the security interest granted by the Grantor hereunder, without the signature of the Grantor where permitted by law. The Grantor agrees to provide all information required by any Secured Party pursuant to this Section promptly to the Secured Party upon request. The Secured Parties agree to provide notice to Grantor of any such filings within three (3) business days. Grantor also accepts this Agreement as sufficient notice of any such filings made within 30 calendar days of this Agreement's effective date.

(b)    The Grantor agrees that at any time and from time to time, at the expense of the Grantor, the Grantor will promptly execute and deliver all further instruments and documents, obtain such agreements from third parties, and take all further action, that may be necessary or desirable, or that any Secured Party may reasonably request, in order to create and/or maintain the validity, perfection or priority of and protect any security interest granted or purported to be granted hereby or to enable the Secured Parties to exercise and enforce their rights and remedies hereunder or under any other agreement with respect to any Collateral.

6.    <u>Representations, Warranties and Covenants</u>. The Grantor represents, warrants and covenants with and to the Secured Parties the following (all of such representations, warranties and covenants being continuing as long as any of the Secured Obligations are outstanding):

(a)    Each of the Loan Agreements is and shall be a legal, valid and binding obligation of the Grantor enforceable in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors'

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

rights generally and subject to equitable principles (regardless of whether enforcement is sought in equity or at law).

(b)    No default or event of default under or with respect to the Accounts exists or has occurred.

(c)    The Grantor has obtained or will obtain all consents required for the valid and binding assignment of the Accounts.

(d)    The Grantor shall promptly and faithfully abide by, perform and discharge the obligations, covenants, conditions and duties which the Accounts provide are to be performed by the Grantor.

(e)    At the Grantor's sole cost and expense, the Grantor shall appear in and defend any action or proceedings affecting any Secured Party and arising under, growing out of or in any manner connected with the obligations, covenants, conditions, duties, agreements or liabilities of the Grantor pursuant to the Accounts.

(f)    The Grantor shall: (i) promptly notify the Secured Parties of each and every dispute with, proceeding or claim against, cause of action or litigation involving any Person for which the Grantor has or may have any right to indemnification or claim for damages or other relief or remedies, whether at law or in equity, arising under or in connection with the Accounts, (ii) keep the Secured Parties reasonably informed of all material circumstances bearing upon the Collateral/circumstances bearing adversely upon the Collateral, (iii) diligently enforce all rights to indemnification or claim for damages or other relief or remedies, whether at law or in equity, arising under or in connection with the Accounts and (iv) not take or permit, any action that adversely affects, in the good faith judgment of any Secured Party, the Secured Obligations or the Collateral.

(g)    The Grantor shall promptly deliver, or cause to be delivered, to the Secured Party a copy of every written notice or communication received by the Grantor regarding his rights and obligations to the Capital Account and the Tax Refunds, in the manner and at the place provided for notices contained herein.

(h)    Upon the occurrence and continuance of an Event of Default, the Grantor shall not, without the prior written consent of the Secured Parties, waive, release or discharge any of his rights or any of the obligations, duties or liabilities of any other party to the Accounts, or compromise or settle any right or any claim or dispute with respect to any of his rights to the Accounts. No such waiver, release, discharge, compromise or settlement shall be effective without the prior written consent of the Secured Parties.

(i)    The Grantor will not assign, pledge or otherwise encumber any of his rights, title or interest under, in or to any of the Accounts or any of the Collateral except for the assignment to the Secured Parties and their successors or assigns as set forth herein.

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

7.    <u>Events of Default</u>. All Secured Obligations shall become immediately due and payable, without notice or demand, at the option of any Secured Party, upon the occurrence of any Event of Default, as such term is defined in the Loan Agreement ("**Event of Default**").

8.    <u>Rights and Remedies</u>.

(a)    At any time an Event of Default exists or has occurred and is continuing, the Secured Parties shall have all rights and remedies under this Agreement, the UCC and other applicable law, and shall have the absolute right, but not the obligation, to enforce, in its name, any and all rights to indemnification or claim for damages or other relief or remedies, whether at law or in equity, arising under or in connection with the Accounts, or otherwise and apply the proceeds thereof to the Secured Obligations in such order or manner as the Secured Parties shall determine.

(b)    In order to effectuate the foregoing, the Grantor hereby appoints each of the Secured Parties and each officer and employee thereof the Grantor's attorney-in-fact, with full authority in the place and stead of the Grantor and in the name of the Grantor or otherwise, from time to time during the continuance of an Event of Default in the Secured Party's discretion to take any action and to execute any instrument which the Secured Party may deem necessary or advisable to accomplish the purposes of this Agreement (but the Secured Party shall not be obligated to, and shall have no liability to the Grantor or any third party for failure to, do so). This appointment, being coupled with an interest, shall be irrevocable. The Grantor hereby ratifies all that said attorneys shall lawfully do or cause to be done by virtue hereof.

(c)    No failure to exercise, and no delay in exercising on the part of the Secured Party any right, power or privilege under this Agreement, the Loan Agreement, any of the other Loan Documents or other documents referred to herein or therein shall operate as a waiver thereof; nor shall any single or partial exercise of any right, power or privilege hereunder or thereunder preclude any other or further exercise thereof or the exercise of any other right, power and privilege. The rights and remedies of the Secured Party under this Agreement, the other Loan Documents or applicable law, are cumulative and not exclusive and all such rights and remedies may be exercised alternatively, successively or concurrently.

(d)    The Grantor, Miod, the United States Department of Treasury, and the United States Internal Revenue Service are hereby authorized to recognize, and the Grantor hereby does recognize, the Secured Parties' claim and rights hereunder without investigating any reason for any action taken by the Secured Parties or the validity or the amount of the obligations under the Loan Agreement and the Loan Documents or the existence of any default thereunder.

9.    <u>Indemnification</u>.

(a)    The Grantor shall indemnify and hold the Secured Parties, agents and counsel, harmless from and against any and all losses, claims, damages, liabilities, costs or expenses imposed on, incurred by or asserted against any of them in connection with any litigation, investigation, claim or proceeding commenced or threatened related to the negotiation,

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

preparation, execution, delivery, enforcement, performance, or administration of this Agreement, any other Loan Documents, or any undertaking or proceeding related to any of the transactions contemplated within this Agreement or any act, omission, event or transaction related or attendant thereto, including amounts paid in settlement, court costs, and the fees and expenses of counsel. To the extent that the undertaking to indemnify, pay and hold harmless set forth in this Section may be unenforceable because it violates any law or public policy, the Grantor shall pay the maximum portion which it is permitted to pay under applicable law to the Secured Party in satisfaction of indemnified matters under this Section 9. The foregoing indemnity shall survive the termination of this Agreement and the termination of the Loan Agreement.

(b)    Nothing in Section 9(a) is intended by the parties to provide any duty to indemnify any individual member of Movie Fund LLC except for James Russell and Grant Whitcher related to the matters set forth therein.  In addition, nothing in Section 9(a) shall include a duty or obligation by Grantor to indemnify and hold harmless the Secured Parties from any losses, claims, damages, liabilities, costs or expenses imposed on, incurred by or asserted against any of them by: (1) Zachary Horwitz, 1inMM Capital, LLC and other Horwitz related entities; (2) Romik Yeghnazary, any entity controlled by Romik Yeghnazary, including but not limited to Lending Arena LLC; (3) The Estate of Jason Page, Laura Page, and any entity controlled by Jason Page, The Estate of Jason Page or Laura Page, including but not limited to Pure Health and Movie Matrix.

10.    Reasonable Care. The Secured Parties shall have no duty with respect to the care and preservation of the Collateral beyond the exercise of reasonable care. The Secured Parties shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral in its possession if the Collateral is accorded treatment substantially equal to that which the Secured Parties accords their own property, it being understood that the Secured Parties shall not have any responsibility for (a) ascertaining or taking action with respect to any claims, the nature or sufficiency of any payment or performance by any party under or pursuant to any agreement relating to the Collateral or other matters relative to any Collateral, whether or not the Secured Parties have or are deemed to have knowledge of such matters, or (b) taking any necessary steps to preserve rights against any parties with respect to any Collateral.

11.    Amendments. None of the terms or provisions of this Agreement may be amended, modified, supplemented, terminated or waived, and no consent to any departure by the Grantor therefrom shall be effective unless the same shall be in writing and signed by the Secured Parties and the Grantor, and then such amendment, modification, supplement, waiver or consent shall be effective only in the specific instance and for the specific purpose for which made or given.

12.    Addresses For Notices. All notices and other communications provided for in this Agreement shall be in writing and shall be given in the manner and become effective as set forth in the Loan Agreement, and addressed to the respective parties at their addresses as specified on the signature pages hereof or as to either party at such other address as shall be designated by such party in a written notice to each other party.

13.    Continuing Security Interest; Further Actions. This Agreement shall create a continuing lien and security interest in the Collateral and shall (a) subject to Section 14, remain in full

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND
THEIR RESPECTIVE COUNSEL

force and effect until payment and performance in full of the Secured Obligations, (b) be binding upon the Grantor, his successors and assigns, and (c) inure to the benefit of the Secured Parties and their successors, transferees and assigns; *provided,* that the Grantor may not assign or otherwise transfer any of his rights or obligations under this Agreement without the prior written consent of the Secured Parties. Without limiting the generality of the foregoing clause (c), any assignee of any Secured Party's interest in any agreement or document which includes all or any of the Secured Obligations shall, upon assignment, become vested with all the benefits granted to the Secured Party herein with respect to such Secured Obligations.

14.    <u>Termination; Release</u>. On the date on which all Secured Obligations have been paid and performed in full, the Secured Parties will, at the request and sole expense of the Grantor, execute and deliver to the Grantor a proper instrument or instruments acknowledging the satisfaction and termination of this Agreement.

15.    <u>Governing Law</u>. This Agreement and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Agreement and the transactions contemplated hereby shall be governed by, and construed in accordance with, the laws of the State of Nevada.

16.    <u>No Third-Party Beneficiaries</u>. This Agreement benefits solely the parties to this Agreement and their respective successors and assigns and nothing in this Agreement, express or implied, confers on any other Person any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement. This Agreement expressly excludes Romik Yeghnazary, any entity controlled by Yeghnazary, including but not limited to Lending Arena LLC; The Estate of Jason Page, Laura Page, and any entity controlled by Jason Page, The Estate of Jason Page or Laura Page, including but not limited to Pure Health and Movie Matrix from receiving any benefit hereunder.

17.    <u>Miscellaneous</u>. This Agreement and any amendments, waivers, consents or supplements hereto may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Agreement. This Agreement and the Loan Agreement constitute the entire contract among the parties with respect to the subject matter hereof and supersede all previous agreements and understandings, oral or written, with respect thereto. If any provision of this Agreement is held to be invalid or unenforceable, such invalidity or unenforceability shall not invalidate this Agreement as a whole but this Agreement shall be construed as though it did not contain the particular provision or provisions held to be invalid or unenforceable and the rights and obligations of the parties shall be construed and enforced only to such extent as shall be permitted by law.

[SIGNATURE PAGE FOLLOWS]

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

Jeremy Salvador, as Grantor

_____

James Russell, as Secured Party

_____

Grant Whitcher, as Secured Party

_____

Miod and Company LLP hereby consents and agrees to the provisions of this Agreement as of this __ day of _____, 2024.

Miod and Company LLP

By: _____

Name: _____

Title: _____

Address for Notices: _____

_____

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND
THEIR RESPECTIVE COUNSEL

**EXHIBIT C**

# Assignment of Rights to Tax Refund Agreement

This Assignment Agreement ("**Agreement**") dated as of _____, 2024 ("**Effective Date**"), is
entered into by and among Jeremy J. Salvador, a resident of the State of California ("**Assigning Party**")
on one hand and Movie Fund LLC, a Nevada limited liability company, James Russell, and Grant
Whitcher (collectively the "**Assuming Party**") on the other hand.

WHEREAS, Assigning Party desires to assign to Assuming Party all of his rights to any tax refunds
from any taxing authority, including but not limited to the United States Internal Revenue Service, the
State of California, and any California local taxing authority for any and all of the years 2017, 2018,
2019, 2020, 2021, 2022, and 2023 (collectively "**Tax Refunds**");

NOW, THEREFORE, in consideration of the mutual covenants, terms and conditions set out herein, and
for other good and valuable consideration, the receipt and sufficiency of which are hereby
acknowledged, the parties agree as follows:

    1.    <u>Assignment and Assumption</u>. Assigning Party irrevocably sells, assigns, grants, conveys and
transfers to Assuming Party all of Assigning Party's right, title and interest in and to the Tax Refunds.

    2.    <u>Representations and Warranties</u>. Assigning Party represents and warrants as follows:

        (a)    He has the full right, power, and authority to enter into this Agreement and to
perform his obligations hereunder.

        (b)    When executed and delivered by it, this Agreement will constitute the legal,
valid, and binding obligation of Assigning Party, enforceable against him in accordance with
its terms and not subject to defenses.

        (c)    He is the sole legal and beneficial owner of the all the rights under the Tax
Refunds on the Effective Date, free and clear of any lien, security interest, charge, or
encumbrance.

        (d)    There are no material disputes pending or, to his knowledge, threatened related
to any rights or obligations transferred by this Agreement.

        (e)    He is in full compliance and has satisfied all of his tax obligations to all taxing
authorities for every tax year before the tax year ending December 31, 2021.

    3.    <u>Miscellaneous</u>.

    3.1    <u>Further Assurances</u>. On the other party's reasonable request, each party shall, at its
sole cost and expense, execute and deliver all such further documents and instruments, and take all
such further acts, necessary to give full effect to this Agreement.

    3.2    <u>Interpretation</u>. For purposes of this Agreement: (a) the words "include," "includes,"
and "including" is deemed to be followed by the words "without limitation"; (b) the word "or" is not
exclusive; and (c) the words "herein," "hereof," "hereby," "hereto," and "hereunder" refer to this

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

Agreement as a whole. Unless the context otherwise requires, references in this Agreement: (x) to sections, schedules, and exhibits mean the sections of, and schedules and exhibits attached to, this Agreement; (y) to an agreement, instrument, or other document means such agreement, instrument, or other document as amended, supplemented and modified from time to time to the extent permitted by the provisions thereof; and (z) to a statute means such statute as amended from time to time and includes any successor legislation thereto and any regulations promulgated thereunder. The parties drafted this Agreement without regard to any presumption or rule requiring construction or interpretation against the party drafting an instrument or causing any instrument to be drafted. The schedules and exhibits referred to herein are an integral part of this Agreement to the same extent as if they were set out verbatim herein.

3.3    Headings. The headings in this Agreement are for reference only and do not affect the interpretation of this Agreement.

3.4    Severability. If any term or provision of this Agreement is invalid, illegal, or unenforceable in any jurisdiction, such invalidity, illegality, or unenforceability does not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction. On such determination that any term or other provision is invalid, illegal, or unenforceable, the parties to this Agreement shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in a mutually acceptable manner in order that the transactions contemplated hereby be consummated as originally contemplated to the greatest extent possible.

3.5    Entire Agreement. This Agreement, together with all related exhibits and schedules, is the sole and entire agreement of the parties to this Agreement regarding the subject matter contained herein and therein, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, regarding such subject matter.

3.6    Amendment and Modification. No amendment to this Agreement is effective unless it is in writing, identified as an amendment to this Agreement and signed by each party to this Agreement.

3.7    Waiver.

(a)    No waiver under this Agreement is effective unless it is in writing, identified as a waiver to this Agreement, and signed by the party waiving its right.

(b)    Any waiver authorized on one occasion is effective only in that instance and only for the purpose stated and does not operate as a waiver on any future occasion.

(c)    None of the following is a waiver or estoppel of any right, remedy, power, privilege, or condition arising from this Agreement:

(i)    any failure or delay in exercising any right, remedy, power, or privilege or in enforcing any condition under this Agreement; or

(ii)    any act, omission, or course of dealing between the parties.

45

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

3.8     <u>No Third-Party Beneficiaries</u>. This Agreement benefits solely the parties to this Agreement and their respective successors and assigns and nothing in this Agreement, express or implied, confers on any other Person any legal or equitable right, benefit, or remedy of any nature whatsoever under or by reason of this Agreement. This Agreement expressly excludes Romik Yeghnazary, Lending Arena LLC, the Estate of Jason Page, Laura Page, Movie Matrix, and Pure Health from receiving any benefit hereunder.

3.9     <u>Choice of Law</u>. This Agreement, and all matters arising out of or relating to this Agreement, are governed by, and construed in accordance with, the laws of the State of Nevada.

3.10     <u>Choice of Forum</u>. Each party irrevocably and unconditionally agrees that it will not commence any action, litigation, or proceeding of any kind whatsoever against the other party in any way arising from or relating to this Agreement, and exhibits and schedules attached hereto, and all contemplated transactions, including, but not limited to, contract, equity, tort, fraud, and statutory claims, in any forum other than The courts of the State of Nevada sitting in Clark County Nevada, and any appellate court from any thereof. Each party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation, or proceeding only in the courts of the State of Nevada sitting in Clark County, Nevada. Each party agrees that a final judgment in any such action, litigation, or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

3.11     <u>WAIVER OF JURY TRIAL</u>. EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS AGREEMENT, INCLUDING EXHIBITS AND SCHEDULES ATTACHED TO THIS AGREEMENT, IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES AND, THEREFORE, EACH SUCH PARTY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY ABOUT ANY LEGAL ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT, INCLUDING ANY EXHIBITS OR SCHEDULES ATTACHED TO THIS AGREEMENT, OR THE TRANSACTIONS CONTEMPLATED HEREBY.

3.12     <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which is deemed an original, but all of which together is deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail, or other means of electronic transmission is deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

[SIGNATURE PAGE FOLLOWS]

CONFIDENTIAL DOCUMENT FOR THEY EYES OF ONLY THE PARTIES, MICHELE VIVES AS RECEIVER, AND THEIR RESPECTIVE COUNSEL

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

JEREMY SALVADOR

_____

MOVIE FUND LLC

By_____
Name: James Russell
Title: Managing Member

JAMES RUSSELL

_____

GRANT WHITCHER

_____